**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

HONG KONG CLUB BUILDING, 12TH FLOOR
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
(212) 373-3165

WRITER'S DIRECT FACSIMILE
(212) 492-0165

WRITER'S DIRECT E-MAIL ADDRESS
bbirenboim@paulweiss.com

December 13, 2019

**By ECF**

The Honorable Gregory H. Woods
United States District Judge
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 2260
New York, NY 10007

*Kaloma Cardwell* v. *Davis Polk & Wardwell LLP,* et al.
19-cv-10256-GHW

Dear Judge Woods:

     Pursuant to this Court's November 5, 2019 Order and Rule 2.B of Your Honor's Individual Rules of Practice in Civil Cases, the parties respectfully submit this joint letter in advance of the pretrial conference scheduled for December 20, 2019.

     David Jeffries and Martin Restituyo represent plaintiff, Kaloma Cardwell ("Plaintiff"). Paul, Weiss, Rifkind, Wharton & Garrison LLP represents defendants Davis Polk & Wardwell LLP ("Davis Polk" or "the Firm") and Thomas Reid, John Bick, William Chudd, Sophia Hudson,

Harold Birnbaum, Daniel Brass, and Brian Wolfe (the "Individual Defendants," and, together with Davis Polk, the "Defendants") in the above-captioned matter.

I. **Nature of the Case**

    A.     Plaintiff's Statement:

Plaintiff is an African-American male who was employed as an associate at Davis Polk from September 15, 2014 through August 10, 2018. As a result of actions committed by Davis Polk and certain Firm partners during Plaintiff's tenure at the Firm, Plaintiff suffered racially based discrimination and retaliation (among other unlawful treatment) in violation of local, state, and federal laws. On February 8, 2018, Defendants informed Plaintiff that they were terminating his employment, a decision that was made within days and months of Plaintiff making legally protected complaints, including Plaintiff's filing of a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

Plaintiff alleges that Defendants discriminated against him on the basis of his race and retaliated against him in response to a series of interactions where Plaintiff raised concerns about racial bias and disparate treatment at the Firm. As Plaintiff's complaints regarding bias escalated, Defendants engaged in a systematic process of isolating Plaintiff by depriving him of substantive deal work; reducing his opportunities for advancement by, among other actions, effectively cutting his billable hours to zero for months on end; and assigning him to "mentors" who (i) refused to communicate with Plaintiff and (ii) were central to the unlawful treatment Plaintiff had experienced and complained about. Moreover, certain Individual Defendants explicitly threatened to alter Plaintiff's standing and employment if Plaintiff didn't drop his complaints and requests for investigations. Ultimately, Defendants terminated Plaintiff's employment in connection with and in response to unlawful factors, including Plaintiff's complaints to and filings with the EEOC.

    B.     Defendants' Statement:

Defendants deny each and every claim in the Complaint.

Davis Polk hired Plaintiff in the hopes that he would succeed and make the transition from law student to skilled attorney. These hopes were disappointed. Despite significant efforts by the Firm to assist his professional development, Plaintiff simply was not able to perform at the level expected of a Firm associate.

From the outset, Plaintiff's work was notably uneven, and by the end of 2016, his second year at the Firm, senior lawyers in three different practice groups had observed—and documented—troubling problems with Plaintiff's performance. He neglected the tasks that were assigned to him. He missed deadlines, in some instances requiring that others be staffed in his stead, or jeopardizing the timely delivery of work to clients. His work product was frequently substandard, marred by errors, and had to be redone by others. He was often unresponsive to inquiries and requests from colleagues. He made mistakes unacceptable for an associate at even the most junior level. In sum, Plaintiff's work was deficient in multiple, serious respects, and he

was repeatedly told by supervising attorneys and in multiple formal reviews that he needed to substantially improve his performance.

Plaintiff's shortcomings in performing his work became more problematic for the Firm as time progressed. In law firms such as Davis Polk, associate attorneys are expected, as they advance in seniority, to take on work that is increasingly challenging. Plaintiff's difficulties in consistently meeting the Firm's expectations became increasingly apparent as the tasks he was assigned became more demanding. His record of poor performance came to be known within his assigned practice group, and, as a result of those performance shortfalls, the lawyers within that group found it increasingly difficult to staff him on the more challenging matters, consistent with the Firm's obligations of care with respect to its clients. Plaintiff's continuing deficiencies in the performance of his work—which became increasingly problematic as he became more senior—explain his frustration in not obtaining choice assignments, not any race-based discrimination or retaliation.

The Firm devoted significant, senior-level resources to helping Plaintiff improve his performance. At the beginning of 2017, Plaintiff was told at his annual review, based on consolidated feedback from partners, that he needed to make significant improvements to his performance. This evaluation was consistent with messages he had received in three prior performance reviews. The Firm offered Plaintiff a variety of resources to address his performance problems, including personal coaching by several partners. Moreover, to an extraordinary degree, the Firm's senior leadership—including the then-managing partner (an individual defendant) and multiple members of his practice group—took an interest in Plaintiff's success and expended considerable personal efforts throughout 2017 to improve his professional development.

Despite these sustained efforts by the Firm to give Plaintiff yet another chance to improve his work to the level expected of an associate at his seniority level, and despite second chances, attempted performance coaching, and meaningful real-time feedback and numerous opportunities to improve, Plaintiff's performance deficiencies persisted. Eventually, the Firm concluded that Plaintiff's deficient performance made him unsuitable for the work expected of an associate of his seniority. In early 2018, the Firm informed Plaintiff that it was time for him to seek alternative employment, supported by three months' full salary (a term the Firm later extended, at Plaintiff's request, to six months), use of the Firm's facilities, and independent job placement services funded by the Firm. Plaintiff continued to draw a full salary (the same as his peers) for those six months, and departed the Firm in August 2018.

No discrimination or retaliation happened here. The Firm at no time treated Plaintiff any less favorably because of his race or because of his purported raising of any concerns relating to race. The evidence will show that the Firm's actions with respect to its treatment of Plaintiff as an employee, and its ultimate decision to ask him to pursue alternate employment, were legitimate, were not discriminatory, and were not pretextual.

**II.      The Basis of Subject Matter Jurisdiction and Venue**

Plaintiff contends that this Court has original federal question jurisdiction over this matter pursuant to Plaintiff's claims under Title VII of the Civil Rights Act of 1964 (as amended, 42 U.S.C. §§ 2000e *et seq.*) ("Title VII"). Plaintiff further contends that this Court has supplemental

jurisdiction over the New York Human Rights Law claims, as they are so related that they form part of the same case or controversy, under Article III of the United States Constitution. Notably, the claims within Plaintiff's federal complaint were presented to the New York State Division of Human Rights ("NYSDHR") which issued a Notice of Dismissal for Administrative Convenience. On the basis of the NYSDHR determination Plaintiff is free to pursue a civil claim in a court of competent jurisdiction. Plaintiff contends that venue is proper within this District because the unlawful actions complained of all occurred within this District.

Defendants respond that while this Court has jurisdiction to hear claims arising under Title VII, this Court lacks jurisdiction to hear Plaintiff's state and city claims, because those claims are barred by Plaintiff's election of remedies in choosing to pursue his claims before the NYSDHR.

### III.     Motions and Other Applications

       A.     Motions to be Filed

            1.     *Plaintiff's Statement*:

None at this time.

            2.     *Defendants' Statement*:

Defendants' present intention is to move to dismiss certain claims and parties pursuant to Rule 12(b) and/or 12(c) by the date set forth in the parties' joint stipulation to extend the time to respond to the Complaint, to be submitted in the near term to the Court. Defendants may also answer the Complaint.

Defendants anticipate the principal grounds in support of their Rule 12 motion will include:

- The Title VII claims should be dismissed against the Individual Defendants because Title VII does not create liability for individuals as a matter of law.

- Many of Plaintiff's Title VII claims extend beyond the limitations period (300 days prior to filing a charge of discrimination). In addition, many of Plaintiff's claims against the Individual Defendants are time-barred because of Plaintiff's failure to name the Individual Defendants in his administrative charges.

- Defendants also reserve the right to argue that all state and city claims against all Defendants should be dismissed because Plaintiff's election of remedies—his 2017 administrative filing with the NYSDHR and New York City Commission on Human Rights ("NYCCHR")—bars him from relitigating these claims in federal court as a matter of law, pending the resolution of certain procedural matters before the NYSDHR.

       B.     Pending Motions

There are no pending motions at this time.

      C.      <u>Other Applications at Status Conference</u>

At the upcoming status conference, Defendants intend to request that the discovery deadlines set forth in the Civil Case Management Plan and Scheduling Order filed herewith be stayed, consistent with the procedures for limited early discovery in counseled employment cases subject to referral to the Southern District's mandatory mediation program, until the later of (i) resolution of the parties' mediation pursuant to the Southern District's mandatory mediation program (or resolution of the matter by a private mediator prior to referral to the mandatory mediation program) or (ii) the Court's ruling on Defendants' anticipated Rule 12 motion, except for those categories of information slated to be exchanged pursuant to the rules governing mandatory mediation in this District. This proposed stay would not impact any discovery independently required by the mediation procedures.

The parties have met and conferred with respect to this proposal and are attempting to negotiate a good-faith proposal with respect to a stay. Defendants believe that discovery in this action will require, among other things, careful attention to matters including protection of the Firm's client confidential information, and have proposed a timeline to accommodate this concern; the parties have not yet reached an agreement with respect to discovery dates.

**IV.**     **<u>Brief Description of Completed or Contemplated Discovery</u>**

No discovery has yet been taken.

Plaintiff contemplates taking fact and expert discovery necessary to prosecute discrimination- and retaliation-related claims, including but not limited to depositions, interrogatories, document requests, requests for admissions and any other relevant items revealed during discovery that are related to (i) the events alleged in the Complaint; (ii) items generated by Defendants related to Plaintiff's employment; (iii) items generated by Defendants in relation to Plaintiff's administrative proceeding; (iv) items generated by Defendants in relation to Plaintiff's cause of action that are not subject to attorney-client privilege; and (v) the administrative record stemming from Plaintiff's prosecution of this matter with the NYSDHR and/or other federal, state, and local agencies.

Defendants contemplate taking fact and expert discovery appropriate to defend a discrimination and retaliation case, including, but not limited to, document requests, interrogatories, requests for admission, and depositions related to (i) the events alleged in the Complaint and (ii) the administrative record stemming from Plaintiff's prosecution of this matter with the NYSDHR and/or other federal, state, and local agencies.

Separately, the parties note that this case is subject to the Southern District's mandatory mediation program for counseled employment cases. Accordingly, pursuant to the Administrative Order for Counseled Employment Cases, M10-468 (Oct. 1, 2015), unless otherwise ordered by this Court, within 30 days of the filing of an Answer, the parties must produce the information specified in the Pilot Discovery Protocols for Counseled Employment Cases.

### V.     Calculation of Damages Claimed

Plaintiff contends that as a result of Defendants' actions, Plaintiff has suffered economic losses, including, but not limited, to salary, bonuses and other monetary benefits, impairment to his name and reputation, and emotional harm and psychological trauma, with associated physical symptoms.  The full extent of Plaintiff's damages has yet to be determined.

### VI.    Statement Describing Settlement Discussions/Conference

The parties have not engaged in any settlement discussions following the filing of the Complaint in this action.  The parties do not request a settlement conference at this time, but intend to follow applicable court rules related to mandatory mediation at the appropriate time.

### VII.   Other Information

The parties have no further information for the Court

*     *     *

The parties look forward to discussing these issues at the upcoming conference.


Respectfully submitted,


| DAVID JEFFRIES ATTORNEY AT LAW LAW OFFICES OF MARTIN E. RESTITUYO, P.C. | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |
|---|---|
| By:  /s/ David Jeffries | By:  /s/ Bruce Birenboim |
| *Counsel for Plaintiff, Kaloma Cardwell* | *Counsel for Defendants, Davis Polk & Wardwell LLP, Thomas Reid, John Bick, William Chudd, Sophia Hudson, Harold Birnbaum, Daniel Brass, and Brian Wolfe* |