JCKLCARC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  KALOMA CARDWELL,

4              Plaintiff,

5         v.                        19 Civ. 10256 (GHW)

6  DAVIS POLK and WARDWEL LLP, et
   al.,
7

8                                   Conference
   ------------------------------x
9                                   New York, N.Y.
                                    December 20, 2019
10                                  3:30 p.m.

11 Before:

12                  HON. GREGORY H. WOODS,

13                                      District Judge

14                      APPEARANCES

15 LAW OFFICES OF MARTIN E. RESTITUYO, P.C.
        Attorneys for Plaintiff
16      MARTIN RESTITUYO
        DAVID JEFFRIES
17
   PAUL WEISS, RIFKIND, WHARTON & GARRISON, LLP
18      Attorneys for Defendants
   BY:  JEH JOHNSON
19      BRUCE BIRENBOIM
        MARISSA DORAN
20      SUSANA BUERGEL

21

22

23

24

25

JCKLCARC

1          (Case called)

2          MR. RESTITUYO:  For the plaintiff, Martin Restituyo.

3          MR. JEFFRIES:  David Jeffries, for the plaintiff, your

4     Honor.

5          Good afternoon.

6          THE COURT:  Thank you.  Good afternoon.

7          MR. JOHNSON:  Jeh Johnson, from Paul, Weiss, Rifkind,

8     Wharton & Garrison, with my colleagues, Bruce Birenboim, Susana

9     Buergel, and Marissa Doran.

10         THE COURT:  Thank you.

11         Thank you all for being here today.  I scheduled this

12    as an initial pretrial conference with respect to this matter.

13    My agenda is as follows:

14         First, I will give each of the parties the opportunity

15    to describe any legal or factual issues that they'd like to

16    bring to my attention in connection with the case.  I've

17    reviewed all the materials that have been submitted on the

18    docket today.  Still if there's anything you would like to draw

19    to my attention, you'll have the opportunity to do that.

20         Second, I hope to discuss the process that we'll be

21    using to litigate this case going forward.  In connection with

22    that portion of the conference, I expect to discuss the

23    anticipated motion to dismiss and also the parties' proposal

24    with respect to the case management plan and scheduling order

25    of which I expect I will use as a framework for that

JCKLCARC

1    conversation.  And lastly, I hope to discuss anything I can do

2    to help.  That's my agenda for this conference.

3              Counsel, before we proceed, is there anything any of

4    you would like to add to or ensure that we include in that

5    agenda?

6              Counsel for plaintiff?

7              MR. RESTITUYO:  No, your Honor.

8              THE COURT:  Thank you.

9              So with that established, counsel for plaintiff, what

10   would you like to tell me about the case?

11             MR. JEFFRIES:  Your Honor, I'd like to begin with a

12   very brief recitation of the facts.  I believe that as

13   your Honor has indicated, you're familiar with everything.  But

14   just to encapsulate our position, Judge, in a lot of regards

15   this boils down to a case of buyer's remorse.  The plaintiff

16   was a top-tier law student.  He was recruited heavily by the

17   defendant.  During the recruitment process, there was an

18   ongoing conversation about the plaintiff's dedication to social

19   advocacy, specifically matters of racial disparity and uneven

20   treatment with respect to African Americans overall and within

21   the actual legal system.

22             Without reiterating every aspect of the 86-page

23   complaint that was filed, I would just like to draw

24   your Honor's attention to the following:

25             The fact that it was under those tenets that

JCKLCARC

1    Mr. Cardwell accepted a position with defendant's law firm in

2    2014 as a law associate.  And within the confines of that

3    ongoing conversation about racial inclusion and social justice,

4    specifically with regard to African Americans within the legal

5    system, that Mr. Cardwell raised certain issues that had come

6    before him within his employment during the firm, not in a

7    hypothetical sense but in a real direct sense, things that had

8    happened to him, things that he flagged to management, things

9    that he flagged to people that were understood overall both

10   implicitly within the firm and by virtue of their position in

11   the firm as being the people that can actually take care of the

12   issues that were raised by Mr. Cardwell.

13          Your Honor, those complaints which centered on uneven

14   racial discriminatory behavior to him, experienced firsthand

15   within the firm, were ignored.  Mr. Cardwell was isolated, and

16   he was deprived from work.  On the tail-end of that and while

17   that was going on, Mr. Cardwell attempted to make his

18   frustrations known by using every channel available,

19   person-to-person conversations with management, including the

20   managing attorney, by flagging the behavior that he witnessed

21   to the director of personnel, by reaching out to other

22   individuals in a position to address the things that were in

23   realtime happening to him with respect to his experience at the

24   firm.  And when he did that, when it became clear that not only

25   was he going to observe and identify those issues but actually

JCKLCARC

1   vocalize them, Mr. Cardwell was retaliated against deliberately

2   and directly.

3           The retaliation took the form of a precipitous drop in

4   his workload that under no theory can be rationalized within

5   the context of a big law firm.  Beyond that specific instance,

6   there were reviews and other corresponding items generated

7   during the course of his employment that were weaponized,

8   your Honor.  They were weaponized and deployed in a fashion to

9   make Mr. Cardwell's stay unwelcome and to make it clear that he

10  did not have an opportunity to advance within the firm.

11  Your Honor, Mr. Cardwell utilized the opportunities available

12  to him to address these issues, specifically making a claim

13  with the EEOC.  That was met with further retaliation,

14  your Honor.  Ultimately Mr. Cardwell's employment was

15  terminated in 2018.

16          I wanted to take this opportunity to simply bring to

17  bear some of the issues that are the most salient with respect

18  to our complaint and which we believe would be carried forward

19  and addressed in any of the other aspects of this conference

20  and the case overall.

21          THE COURT:  Thank you.  Good.

22          Counsel for defendants, what would you like to tell me

23  about the case?

24          MR. BIRENBOIM:  Good afternoon, your Honor.

25          We will be very brief.  Our position is set fort in

JCKLCARC

the letter, which your Honor has reviewed.  I would just

summarize Davis Polk's position as follows:

            This is a case of Davis Polk having an associate who

it very much wanted to succeed and to whom Davis Polk gave

every opportunity to succeed over a period of years.  The facts

will show that over that period of time he simply did not

perform at the very high level that an M&A associate in the

third or fourth, or fifth year at Davis Polk is expected to

perform.  And that is the reason why he was ultimately

terminated after giving him second, third, fourth, and fifth

chances.  And the evidence will show that that is, in fact, the

case and that none of this is causally related to the issues

that plaintiff's counsel is discussing.

            And the fact is, your Honor, that it is not unusual in

any way for an associate at his level to be told at some point

that they their performance is not sufficient to continue at

the firm.  So he was treated no differently than any other

associates.  None of the treatment of Mr. Cardwell was based on

his race.  He was terminated for performance reasons.

            Thank you, your Honor.

            THE COURT:  Good.  Thank you very much.

            So, counsel, I'd like to discuss the process that

we'll be using to litigate the case going forward.  The

parties' joint letter -- and as I understand, the defendants

anticipate requesting leave to file a motion to dismiss the

JCKLCARC

1    case in connection with a number of matters which are outlined

2    in this letter.

3          Counsel, as you're aware, in accordance with my

4    individual rules of practice, the parties are required to

5    submit a premotion conference request letter prior to filing a

6    motion to dismiss.

7          Counsel for defendants, do you intend your component

8    of the joint letter submitted here to be treated as your

9    premotion conference request letter?

10          MR. BIRENBOIM:  Yes, your Honor.

11          And I'm certainly happy to spend a minute on it if

12    your Honor pleases, or we will submit a separate letter if

13    your Honor wishes.

14          THE COURT:  Thank you.  I'll be happy to discuss this

15    potential motion on the basis of the statements in the joint

16    letter that was submitted to me.

17          Counsel, let me hear counsel for defendants regarding

18    the bases for the anticipated motion to dismiss.

19          Counsel for defendants?

20          MR. BIRENBOIM:  Yes, your Honor.

21          Again, I'll be brief.  There are three basic

22    arguments.  First, as your Honor knows, Davis Polk, in a series

23    of individuals, at Davis Polk, or formerly Davis Polk, were

24    named in the complaint.  The law is crystal clear under Title 7

25    that only the employer can be a defendant; individuals cannot

JCKLCARC

1    be a defendant.  And we have the case cites, of course.  But we

2    think that's crystal clear, that the individual defendant

3    should be dismissed from the Title 7 claim.

4          Secondly, your Honor, it's a somewhat complicated

5    history of this case in the administrative proceedings.  But

6    the short of it is that Mr. Kaloma filed a complaint with the

7    EEOC and with the New York State Division of Human Rights.  He

8    filed a complaint that has the New York State Division of Human

9    Rights caption.  We put in a response.  They put in a reply.

10   There were supplemental submissions.  So the matter was

11   litigated -- or being litigated before the New York State

12   Division of Human Rights.  And the cases support the

13   proposition that with respect to the state and city claims, if

14   a claimant chooses his remedy as pursuit of it in the

15   administrative agency, then you cannot then pursue the same

16   causes of action in court.

17         THE COURT:  Thank you.

18         In the letter you say that the bars from -- that

19   litigated these claims in federal court "pending the resolution

20   of certain procedural matters before the NYSDHR."

21         What are you referring to?

22         MR. BIRENBOIM:  Your Honor, if you'll bear with me for

23   a minute.

24         The claim was filed with the New York State Division

25   of Human Rights.  There were submissions.  A long period of

JCKLCARC

1    time followed.  And then, in August of this year, we understand

2    that the EEOC issued a right-to-sue letter that said that it

3    was basing its right to sue letter on a finding of no probable

4    cause by the state agency.  We had not received that finding.

5    We asked counsel for the plaintiffs.  They couldn't locate it.

6    We could not locate it anywhere else.  We had several

7    conversations with the EEOC and with the New York State

8    Division of Human Rights to try and untangle what happened.

9    And as a result of those conversations, two things happened:

10   The EEOC issued an amended right-to-sue letter very recently

11   that said, in effect:  We made a mistake.  We issued the

12   right-to-sue letter not because of a prior finding by the state

13   agency but because of a request from plaintiff's counsel.

14          On the state side, the state sua sponte issued a

15   dismissal of Mr. Cardwell's claims in the state agency for

16   administrative convenience, which we believe is inappropriate

17   on these facts, and we've made a submission to the state agency

18   requesting that that be reversed.  And that's presently under

19   consideration.  So it's a little bit muddled, but our hope is

20   by the time we make the motion, these issues will be clear.  We

21   believe we still have a motion no matter how that turns out,

22   your Honor.

23          THE COURT:  Thank you.

24          MR. RESTITUYO:  Your Honor, may I address that point?

25          THE COURT:  First, Counsel, I'll ask you to please

JCKLCARC

1    stand.  Please bear with me for one moment.  I'd like to ask

2    counsel for defendants one question.

3           Counsel, assuming that the situation remains as it

4    currently stands before the state division of human rights, is

5    it your position that the defendants will still have a motion

6    on this issue?

7           MR. BIRENBOIM:  Yes, your Honor.

8           THE COURT:  Thank you.  Why?

9           MR. BIRENBOIM:  And, your Honor, we have one more

10   basis for the motion --

11          THE COURT:  I'm sorry.  Do you still have a

12   potentially viable motion on the grounds related to the pursuit

13   of his rights before the NYSDHR?

14          MR. BIRENBOIM:  Correct.

15          THE COURT:  Why?

16          MR. BIRENBOIM:  So we have a motion directed to the

17   Title 7 claim with individuals.  We have a motion directed to

18   the election of remedies, which is what we were just

19   discussing.  And then with respect to the individuals, there

20   are certain statutes of limitations --

21          THE COURT:  I'm sorry.  Let me just pause you here.

22          MR. BIRENBOIM:  Yes.

23          THE COURT:  To the extent that the State Division of

24   Human Rights' determination that the proceedings there remain

25   terminated as a matter of administrative convenience, do you

JCKLCARC

1   still have a viable claim to dismiss the New York City and New

2   York State law claims on the basis of election of remedies?

3                MR. BIRENBOIM:  We believe we do, your Honor.  But we

4   also understand that the motion is a lot less clear if the

5   dismissal for administrative convenience stands.

6                THE COURT:  Thank you.  Please proceed.

7                MR. BIRENBOIM:  The final ground for the motion,

8   your Honor, is there are a series of defendants in this case

9   who are alleged to have done different things at different

10  times.  Some, fewer acts are alleged than others.  And the

11  individual defendants were not named in the prior state and

12  EEOC proceedings.  And, therefore, the statute of limitations

13  was running with respect to them.  So we will likely have a

14  third ground with respect to individual defendants.  And there

15  will be different arguments with respect to each one.  But we

16  believe some or all of the claims may be able to be dismissed

17  on statute of limitations grounds with respect to some or all

18  of these individuals.

19                THE COURT:  Thank you.  Good.

20                So, counsel for plaintiff, this is not oral argument

21  on the motion itself.  I expect that I would review the motion

22  on the basis of the parties' submissions.  It still can be

23  helpful for me to hear from the parties regarding any arguments

24  you may expect to put before me in connection with your

25  opposition to anticipate a motion.

JCKLCARC

1          If there's anything that you'd like to present to me

2     now, you're welcome to do so.

3          MR. RESTITUYO:  No, your Honor.  I'm happy with saving

4     everything for oral argument and on the papers.

5          I did want to clear up the procedural history that

6     counsel laid out, wherein things happened in a very particular

7     order.  But I think your Honor got to the crux of it, which is

8     ultimately the cases were dismissed by the EEOC and the New

9     York Division of Human Rights for administrative convenience,

10    and I do not think that precludes us from proceeding in this

11    venue.

12         THE COURT:  Thank you.  Counsel, can I ask.

13         Is the plaintiff pursuing Title 7 claim against the

14    individual defendants?

15         MR. RESTITUYO:  Your Honor, I suspect that those will

16    have to be withdrawn at some point.

17         THE COURT:  Thank you.  Let me suggest that the

18    parties discuss that issue to the extent that it would obviate

19    the need for briefing on that topic.  I think it would be

20    efficient for all parties and for the Court.  So I'm going to

21    invite you to discuss the prospect of -- stipulating to the

22    dismissal of any claims against the individual defendants

23    pursuant to to Title 7.

24         Counsel for defendants, I'd like to talk about the

25    timing for this motion.  I understand that the parties have

JCKLCARC

1    stipulated to a deadline for the answer to the complaint.

2            Is it correct that you anticipate that you'll be

3    filing this potential motion on the date that you discussed

4    with plaintiff?

5            And, second, to what extent does the ongoing

6    discussions regarding the dismissal of the state claims have an

7    impact on the timing of the anticipated motion?

8            Counsel?

9            MR. BIRENBOIM:  Your Honor, as I suggested, I'll

10   answer your second question first.

11           I think our expectation is that the state record will

12   be clarified by the time we make our motion.  We would hope

13   that that's the case.  And if it's not the case, we may be

14   asking for a bit more time.  But our expectation is that that

15   will happen, because there is a pending motion before the New

16   York State Division of Human Rights about whether to strike

17   this dismissal for administrative convenience or not, and we

18   expect that will get decided fairly promptly.

19           THE COURT:  Good.  Thank you very much.

20           MR. BIRENBOIM:  And then with respect to your first

21   question, your Honor, we would be making our motion on the due

22   date, subject to any discussion about mediation, which is

23   something we may wish to discuss with the Court.  But I'm not

24   sure we should -- I don't know if the Court wants us to discuss

25   that, but we may have an issue with that, your Honor.

JCKLCARC

1          THE COURT:  Fine.  Thank you.  Good.

2          So I anticipate seeing the anticipated motion to

3   dismiss by the date agreed upon.  To the extent that there's an

4   application to extend that deadline, please submit it by joint

5   letter in accordance with my rules.

6          Counsel for plaintiff.

7          MR. BIRENBOIM:  Your Honor?

8          THE COURT:  Yes.

9          MR. BIRENBOIM:  I'm sorry.  Just with respect to that,

10  we don't actually formally have a stipulation yet extending

11  time.  We accepted service in exchange for time, and we have

12  been going back and forth on exactly what date that is.  But we

13  think we can work that out with plaintiff.

14         THE COURT:  Thank you.  Let's make that date concrete

15  now.

16         What's the defendant's position regarding the due date

17  for your answer under the response to complaint?

18         MR. BIRENBOIM:  We would like the beginning of

19  February, your Honor.  That will ensure us that we clarify

20  things with the New York state division.

21         THE COURT:  Thank you.

22         Counsel for plaintiff, what's your view with respect

23  to that issue?  I should say as an introductory comment with

24  respect to this discussion that you should not predicate your

25  briefing schedule with the expectation that I'll necessarily

JCKLCARC

1    stay discovery pending resolution of the motion.

2          Counsel for plaintiff, what's your view regarding the

3    defendant's proposal regarding the timing for the submission of

4    the motion?

5          MR. RESTITUYO:  Your Honor, we very much oppose.  We

6    did have initial conversations with the defendants and agreed

7    to what we thought was a generous January 17th date.  To be

8    clear, there were conversations that were being had or requests

9    being made to New York Division of Human Rights that we only

10   recently became ware of.  And so we now understand why their

11   interest in sort of delaying matters in order to seek a

12   re-evaluation from the New York Division of Human Rights.  But

13   we had in good faith agreed to a 60-day timeline of ending on

14   January 17th, and we would hope that we can agree to that date.

15         THE COURT:  Thank you.

16         I'm sorry.  Counsel, I don't see on the docket or

17   record that the plaintiffs have filed proof of service or

18   waiver of service.

19         Has that been filed on the docket?  And if not, can I

20   ask what is the parties' representation regarding the date of

21   service or waiver?

22         MR. BIRENBOIM:  Your Honor, if I may --

23         THE COURT:  I'm sorry.  Counsel for plaintiff, have

24   you filed an affidavit of service?

25         MR. RESTITUYO:  We have not, your Honor, because once

JCKLCARC

1   we -- once -- basically what happened is, the complaint was

2   filed, we were approached by defendant's counsel, they agreed

3   to accept service and agreed to a stip.  And then part of

4   what's been holding up that stipulation wherein they're

5   accepting service is this back and forth with respect to dates.

6              THE COURT:  Thank you.

7              Counsel for defendants?

8              MR. BIRENBOIM:  We have not been served.  And our

9   understanding was that we would enter into a stip for a date to

10  respond that we agreed with in exchange for accepting service

11  on behalf of all the defendants.  And, your Honor, just to be

12  clear, part of this request for a week or two more than we had

13  originally discussed is based on hoping that the administrative

14  record will be cleared up.  Part of it is just, frankly, for

15  professional convenience because of the holidays.  If the Court

16  requires us to respond earlier, we, of course, will.  This is

17  really not a significant extension at all.  I think the 60 days

18  are what you get automatically under the rules for accepting

19  service.  So we haven't really asked for more than a week or

20  two that would automatically be --

21             THE COURT:  Thank you.  Good.

22             So assuming that the defendants are properly served,

23  I'm happy to establish a deadline that would require that the

24  motion to dismiss be filed no later than February 10, 2020.

25             Counsel for plaintiff, any opposition to that motion

JCKLCARC

1    will be due no later than three weeks following service of the

2    motion.  Any reply would be due no later than one week

3    following service of the opposition.

4            Good.  So, Counsel, I'd like to take up the process

5    that we'll be using to litigate the case going forward.

6    Counsel, as I observed as we began the discussion with

7    scheduling the motion to dismiss, while the parties for post

8    case management plan seem to anticipate that discovery will be

9    stayed pending the briefing and the resolution of the

10   anticipated motion to dismiss, that is not the default rule in

11   this court.  I'd be happy to hear argument with respect to an

12   application to stay discovery pending the briefing and

13   resolution of the motion, but I note that it appears that even

14   if fully successful, the motion will not be dispositive of the

15   issues raised in this case.  So I would expect to inquire

16   regarding -- I will call it -- the benefit of deferring

17   discovery.

18           So with that, let me hear first from counsel for

19   plaintiff.  I'm interested in hearing what your expectations

20   are regarding the scope and nature of discovery in the case and

21   the amount of time required to complete discovery in order to

22   form my assessment of the parties' proposals for the discovery

23   deadlines here.

24           Counsel?

25           MR. RESTITUYO:  Yes, your Honor.

JCKLCARC

1        So we were not in favor of a stay in discovery.  I

2   think we made that very clear, the parties had differing

3   positions.  We do not see a need to divert from the Court's

4   proposed schedule with respect to discovery deadlines.

5        We understand that this case is subject to mandatory

6   mediation.  We have no problem with proceeding on, in essence,

7   a dual track, which is continuing with our litigation and

8   seeing if a resolution can be achieved in mediation.  We have

9   made certain -- in order to advance the possibility of perhaps

10  meeting defendants halfway, and understanding that they have a

11  fair amount of faith in the mediation process -- perhaps more

12  than we do -- we have agreed to -- we made some demands, or

13  initial demands, as to what our scope of discovery would look

14  like.  And given that broad scope of discovery, if they were to

15  agree to it, which is beyond what's automatically required by

16  the pilot program, then we might consider at least a partial

17  stay, in other words, not asking for those document or

18  documents beyond what they've agreed to produce, which is

19  beyond what's required in the mediation, but maybe not the

20  total sum and substance of absolutely everything that we would

21  be entitled to under a regular discovery schedule.

22        If, in fact, we could reach some agreement, you know,

23  as to these broad strokes, then maybe plaintiffs would be

24  inclined to at least a partial stay, giving mediation a fair

25  chance but not prejudicing our ourselves with respect to the

JCKLCARC

1    continuing litigation.

2            THE COURT:  Thank you.

3            Let me draw you back.  Can you tell me, assuming that

4    the case is fully litigated what you expect the discovery in

5    this case will look like?  In other words, can you tell me, for

6    example, about any issues that you anticipate with respect to

7    the collection of -- can you give me sense of any third-party

8    discovery that may be necessary here, a sense of the number of

9    depositions, or other matters that may inform my judgment

10   regarding appropriate amount of time to allocate to parties?

11           MR. RESTITUYO:  Fair enough.

12           So, your Honor, first we anticipate demanding, and we

13   have demanded, Mr. Cardwell's full file, which is all of his

14   employment records, all communications related to his

15   performance.  And there's varying distinctions as to what may

16   be in his employment file.  Some of it may be just summaries

17   of, you know, performance evaluation, some of it goes to

18   individuals that would have submitted information to help

19   create those summaries, and then there are individuals that

20   would have made comments and determined his assignments along

21   the way.  We want the full breath of that.

22           In addition, because Mr. Cardwell does not function in

23   a vacuum, we would like to see what his New York 2014 class of,

24   you know, associates, what their performance evaluations and

25   how they were treated along the way, since we're claiming that,

1    you know -- the defense would claim that Mr. Cardwell was a

2    particularly poor performer, we'd like to see how that really

3    did measure across at least his class that year.

4           We do expect, in addition to seeing their performance

5    reviews and their evaluations and their work assignments, then

6    we do at some point do expect to have expert testimony.  We do

7    expect to reach out to an expert.  I suspect that they will as

8    well.

9           And as far as depositions, certainly we expect to be

10   able to depose at least the people that directly evaluated him,

11   the people that determined his assignments.  And there's a

12   number of people named in the complaint that were assigned to

13   be his -- quote, end quote -- "mentors" but then subsequently

14   never communicated with him, to get a sense of what they

15   understood their relationship to him and what they understood

16   their responsibility or their duties to him were in the context

17   of sort of his progression at the firm.

18           THE COURT:  Thank you.

19           Can you give me a sense of the aggregate number of

20   depositions the plaintiff anticipates taking here?

21           MR. RESTITUYO:  Your Honor, that might be tough.  If

22   we're talking about expert witnesses, I mean, we expect them to

23   have at least one, and we expect to have at least four to five

24   defendants to be deposed at a minimum, your Honor.

25           THE COURT:  Thank you.  You alluded to the prospect of

JCKLCARC

1    expert discovery here.

2              What's the nature of the expert testimony that you

3    anticipate soliciting in connection with this case?

4              MR. RESTITUYO:  Well, your Honor, it's tough because,

5    in the context of big law, there's a pretty cut-throat

6    environment.  And so we would have to have an expert speak to

7    the fact that, you know, the cultural nuances that are not just

8    nuances but then lead to discrimination.  And you're going to

9    hear from defendants along the way that this is just how big

10   law firm is and, you know, there are these cultural nuances and

11   some people make it and some people don't.  And so we need an

12   expert to help us glean out "what is culture" versus "what is

13   discrimination."

14             THE COURT:  Thank you.

15             Counsel, have the parties discussed issues related to

16   production of the VSI, in particular custodians search terms

17   and the like?

18             MR. RESTITUYO:  We have not yet, your Honor.

19             THE COURT:  Thank you.

20             Counsel, I take no position at this point regarding

21   the scope of discovery on any issues that will be brought to my

22   attention during the course of the litigation; however, the

23   parties' letter and your comments suggest the prospect that

24   certain of the information that you'll be requesting may be

25   covered by the privilege.

JCKLCARC

1    What's your view regarding how that issue should be

2    handled?

3    MR. RESTITUYO:  Well, it's a standard nondisclosure

4    agreement.  We've agreed that we'll be signing off

5    nondisclosure attorneys-eyes-only agreements for whatever they

6    produce.

7    THE COURT:  Thank you.  Fine.

8    Let me turn to counsel for defendants.  Counsel, I

9    have the same basic question for you:

10    What's the nature of the discovery and scope of

11    discovery we can expect in connection with this case?  I ask

12    you to help me.

13    MS. BUERGEL:  Good afternoon, your Honor.  Susana

14    Buergel.

15    One -- my partner, Mr. Birenboim alluded to this a

16    moment ago.  From our perspective and part of the reason that

17    we have proposed that full-blown discovery await further

18    proceedings relates to this district's mandatory mediation

19    program for counsel employment cases.  Judge Preska has issued

20    an order that outlines the discovery that parties in counsel

21    employment cases should undertake in aid of that mediation

22    process.  And we, as we've discussed with counsel for

23    Mr. Cardwell, have indicated we are prepared to interpret those

24    requirements broadly.  We are interested in the requirement

25    that the parties mediate.  And so we anticipate that at least

JCKLCARC

1    the initial phase of discovery should focus on what that

2    program requires.  As Judge Preska's order states, the

3    discovery should be targeted and focused on aiding that

4    mediation process.  And that includes information like the

5    plaintiff's personnel file and performance reviews and the

6    like.  And as I said, we're prepared to interpret that broadly

7    to aid that process.

8            So we believe discovery should focus in the first

9    instance on that program and the requirements of the program.

10   I'm happy to turn to what we think discovery would look like if

11   the case is fully litigated.

12           THE COURT:  Thank you.  Please do.

13           MS. BUERGEL:  Thank you.

14           In that case, we actually think it's straightforward

15   in terms of the information that will need to be exchanged but

16   complicated as to how to go about that exchange of information

17   due to the privilege and client-confidentiality issues.  We

18   have not fully candidly resolved how all of this is going to

19   play out.  And we have not had a complete discussion with

20   plaintiff about how to address all of those issues.  We do

21   think there will have to be some specific attention paid to

22   redacting certain information:  Client names, potential

23   confidential information of certain clients, and certain

24   relationships and matters that Mr. Cardwell or others may have

25   worked on during his time at the firm.  We do not think that a

JCKLCARC

1    protective order alone will solve those issues.  But as I said,

2    we haven't fully worked through them.  And that was largely the

3    motivating factor for the dates that we have proposed in the

4    case management plan, to allow us enough room for the types of

5    review that we will need to do.

6         And we anticipate this will be not just in the

7    underlying email record, the ESI, but even in the performance

8    review that likely will be subject to discovery here.  There's

9    often discussion in performance reviews to specific matters,

10    whether the plaintiff in this matter was able to address

11    certain assignments properly.  There's often discussion of the

12    underlying privilege relationship and client information in

13    that context.

14         THE COURT:  Good.  Thank you.

15         So let me just say a few words about the scheduling.

16    First, I appreciate that there may be some complications with

17    respect to handling materials in connection with the discovery

18    in this case.  I understand, too, that the parties may wish to

19    focus on the potential for resolving the case amicably through

20    the auspices of the Court's mediation program.  Nonetheless, my

21    expectation is to set a set of clear deadline for the parties

22    to complete fact and expert discovery in the case, assuming

23    that the case is fully litigated.  I'm happy to set deadlines

24    that will provide some breathing room for the parties to focus

25    on an amicable resolution of the case at the outset, but I do

JCKLCARC

1   not expect the deadlines that I'll be establishing to govern

2   the conduct of the parties -- and to find your deadline -- as

3   you complete this litigation in the event that it is not

4   resolved for mediation here.

5          So I'm happy to hear further argument from counsel for

6   defendants with respect to the suggestion that the discovery

7   periods be bench-marked against the discovery start date if

8   you'd like to offer any.

9          Counsel for defendants, any additional arguments that

10  you'd like to present regarding why I should implement a

11  floating commencement date for discovery here?

12         MS. BUERGEL:  Your Honor, what we think the critical

13  staging point should be is the effort to mediate.  And we are

14  prepared to proceed with that very promptly.  We've already had

15  an exchange with counsel for the plaintiff about potential

16  mediators.  We are trying to move that along.  It is not an

17  effort for delay.  So from our perspective, discovery of the

18  start date should be triggered after the conclusion of the

19  mediation, which, again, we're prepared to move through that

20  process simultaneous with preparing the motion that my partner

21  discussed earlier and otherwise responding to the complaint and

22  doing that as part of that process, of course.  And under Judge

23  Preska's order, the information that will be exchanged will be

24  a lot of core information about the plaintiff, his personnel

25  file, performance reviews and the like.  And that becomes part

JCKLCARC

1   of the form of discovery record.  So discovery will be

2   proceeding in that form, but we think it should really commence

3   with the conclusion of the mediation process.

4             THE COURT:  Thank you.

5             Counsel for plaintiff?

6             MR. RESTITUYO:  Your Honor, we vehemently oppose.  We

7   disagree with that wholeheartedly.  We do think it's an attempt

8   to delay.  We do not see why discovery cannot happen in

9   accordance, you know, with your Honor's preset rules.  It will

10  not delay mediation, it will not detract from mediation.  And

11  certainly, while Judge Preska's rules do indicate that there

12  should be an exchange of information, that exchange is, from

13  our perspective, quite limited.

14            Among the things -- for example, even if you read --

15  so one of the things that must be exchanged is the plaintiff's

16  personnel file.  Even if you read that in the broadest scope

17  possible, you can't possibly know how Mr. Cardwell was treated

18  in relation to his colleagues, to the same class, unless you

19  actually get to look at the group of individuals that, you

20  know, commenced with him and that, you know, were evaluated at

21  the same time as him and then, you know, continued their career

22  at the same time.

23            So to say, you know, we're going to offer you his

24  personnel file without being able to look at the broader scope

25  of how things went is really not very helpful for us either in

JCKLCARC

1    mediation or as part of the regular overall litigation.  And so

2    to stay those aspects of discovery really just means that we're

3    going to be sitting on our hands until after mediation falls

4    through and then we can, you know, start the case then.  I

5    don't see a reason for doing that, your Honor.

6              THE COURT:  Thank you.

7              MS. BUERGEL:  Your Honor, may I be heard very briefly

8    in response?

9              THE COURT:  Please.

10             MS. BUERGEL:  Chief Judge Preska's order clearly

11   describes that the discovery protocols that we're required to

12   engage in as part of a mediation process proceed -- and then

13   the order goes on to say that in the event the case is not

14   promptly resolved through mediation, the protocols are intended

15   to assist the parties with further discovery.  And under that

16   order, it's an attempt to strike the right balance between the

17   full-blown discovery.  Of course, a mandatory mediation program

18   is intended to, among other things, hopefully make the case

19   more efficient for all parties.  And the personnel file, the

20   performance reviews and the like are the types of materials

21   contemplated.

22             Regardless, if we proceed through litigation and we're

23   in full-grown discovery, we do expect to oppose a request that

24   all other members of the plaintiff's incoming class at Davis

25   Polk be subject to discovery.  And the case law in this Circuit

JCKLCARC

1    -- and this is not the point to argue the point.  But the case

2    law in this Circuit does put very clear and strict limitations

3    on comparator information and how broad that discovery can be.

4    And it simply will not be the case that every other associate

5    in that incoming class and all their records, performance,

6    assignments they were given and the like would be subject to

7    discovery.  It must be limited to others who are similarly

8    situated, which, again, cases in the Circuit describe as folks

9    who were subject to the same supervision within the same group,

10   etc.

11        So it would be a much narrower set of discovery that

12   we anticipate on that front yet to be determined.  And

13   obviously we're happy to discuss it in good faith with our

14   adversaries.  But to be clear, we disagree that discovery is

15   going to involve that broad scope as far as everyone else who

16   joined the firm with Mr. Cardwell.

17        THE COURT:  Thank you.

18        MR. RESTITUYO:  Just to be clear, with regard to the

19   mandatory mediation order, your Honor, to be clear, mandatory

20   mediation according to that order does not have to happen until

21   60 days after there's an answer in the pleading; which, in this

22   case that pleading will not show up till February 10th, to say

23   the least.  And so we're talking about two months beyond that.

24   So we're talking about four months from today at least before

25   any additional disclosure.

JCKLCARC

1          And while opposing counsel does mention the fact that

2     there's going to be a dispute with respect to how broad a

3     discovery beyond the mediation letter we're entitled to, the

4     fact is that we are entitled to some and we will be seeking

5     definitely information beyond what we're entitled to in the

6     mediation order.  And so we'd rather, if we're going to have

7     that fight, have it sooner rather than later, your Honor.

8          THE COURT:  Thank you.  Good.

9          Thank you counsel for your arguments with respect to

10    this issue.  I appreciate the positions of each of the parties.

11         MR. BIRENBOIM:  Your Honor, may I clarify one thing

12    about the calendar?

13         THE COURT:  Yes.  Please feel free.

14         MR. BIRENBOIM:  Counsel is correct that mandatory

15    mediation under the Southern District rules must begin 30 days

16    after the answer.  But there's nothing that prevents it from

17    starting earlier.  And we are prepared to select a mediator and

18    pursue mediation right away and not wait for the filing of that

19    answer.

20         THE COURT:  Good.  Thank you very much.

21         So, Counsel, thank you very much for your arguments

22    with respect to this issue.  I appreciate the positions of both

23    sets of parties with respect to it.  I'm going to set a

24    schedule that will provide for concrete deadlines for

25    completion of fact and expert discovery.  That will be summed

JCKLCARC

1    down to a time from now.  I'm happy to work with the parties'

2    initial proposal and perhaps to add some additional time to the

3    extent necessary to permit the parties to add time to focus on

4    mediating the dispute at the outset.  But I do want to set a

5    series of clear deadlines.

6         A standing order with respect to employment mediation

7    issues most pointedly does not stay discovery pending the

8    mediation, and provides a helpful framework to focus the

9    parties with respect to mediation.  It does not establish a

10    default discovery stay in these matters.  My hope is that we

11    will set a schedule now that will establish adequate time for

12    the parties to complete work here, assuming that the case is

13    fully litigated, and that will also provide some time in with

14    which the parties can focus on the exchange of information in

15    accordance with standing order or otherwise.

16         So, Counsel, when I refer to the initial proposal by

17    the parties, I'm referring to the 240-day deadline from the

18    discovery start date.  By my math, that would be August 20th of

19    2020, which is an extended period of time to complete discovery

20    in this case, but perhaps an extended period that would be

21    warranted given the parties hope to focus on a mediation at the

22    outset of the case.

23         Counsel, I'd like to hear any arguments regarding

24    whether to what extent that's the appropriate end date for

25    completion of fact discovery.  I believe it's more than

JCKLCARC

1    adequate to permit the parties to do the work here and focus on

2    early mediation.

3              So, counsel for plaintiff, let's hear you.

4              MR. JEFFRIES:  May I, your Honor?

5              THE COURT:  Please.

6              MR. JEFFRIES:  Just with respect to your Honor

7    instituting an August 2020 date for the discovery, I would

8    simply supplement what cocounsel has said with respect to our

9    client's belief about mediation, your Honor.

10             Yes, it is mandatory mediation.  And, yes,

11   Mr. Cardwell understands his obligation to participate.  And I

12   think that that's kind of where the agreement begins and ends,

13   because Mr. Cardwell, by virtue of the backdrop of this case,

14   and by virtue of the things that have happened in a continuous

15   fashion, does not share our expectation and belief that

16   mediation will provide a favorable outcome.  He has experienced

17   firsthand actions on behalf of the defendants that paint them

18   in the light of bad actors.  He has, since the date of his

19   claim being put in with EEOC, been subject to reputational

20   harms, and been subject to economic harms, and for all intents

21   and purposes, been looked at as an outcast.

22             Mr. Kaloma's position is that, although it doesn't

23   reconcile with the actual scheduling put forth by the Court and

24   the actual scheduling that relies on the legal system, but

25   Mr. Kaloma's position is that in as far as his time to make

1    this case and to have this case be heard, he's in overtime.

2    He's been through an extensive administrative proceeding.  He

3    is now within the rigors of discovery.  And he wants it to be

4    clearly communicated that the goal is to get in front of a

5    jury, and that there will be the attempts made to settle this

6    through mediation.  But based off of the position of the actors

7    involved so far, that does not look like a balance about to be

8    struck.  And so I'd like your Honor to consider that when

9    looking toward the extended time frame in this case, that of

10   August 2020.  It simply puts Mr. Kaloma in a position where he

11   is continuing to have his life placed on hold as this matter

12   lingers.

13             THE COURT:  Thank you.  Good.

14             Let me hear from counsel for defendant.

15             MS. BUERGEL:  Your Honor, just very briefly.

16             I would note as it relates to the timing of this

17   matter and where we find ourselves.  By our calculation,

18   Mr. Cardwell was entitled to seek a right-to-sue letter from

19   the EEOC 180 days after he filed his complaint.  He did not do

20   so.  He waited over a year, plus longer, to do so.  So the fact

21   that we find ourselves at the end of 2019 appearing before a

22   Judge for the first time is really stemming from choices made

23   by the plaintiff.

24             All that said, as we've said many times now this

25   afternoon, we are prepared to proceed with the mediation in

JCKLCARC

1    good faith.  We are eager to do so.  We're also prepared,

2    hearing your Honor, to begin the discovery process.  We would

3    just ask that your Honor consider in setting an August

4    deadline.  Perhaps we could have something in September.  We

5    all know as a practical matter, depositions wind up toward the

6    end of the period.  And scheduling depositions in August in New

7    York in my experience tends to be a bit of a challenge.  But,

8    otherwise, we have heard your Honor and we will accept the

9    schedule that you set.

10              THE COURT:  Yes.  Fine.  Thank you.  Good.

11              So let's begin with the deadline for completion of

12   fact discovery.  Here, agreeing with counsel for defendants,

13   August is often a less effective time to take discovery here.

14   I think that's a justification for pushing out the completion

15   date for discovery till mid September.  I appreciate the

16   arguments raised by counsel for plaintiff, but given the scope

17   and all of the discovery that's anticipated here, this is a

18   reasonable period of time in which the parties can complete

19   their work.

20              The deadline for completion of fact discovery will be

21   September 16 of 2020.  That does not give you must extra time,

22   but it gives you some extra time in September to complete that

23   work.

24              I'd like to propose that initial request for

25   production of documents and interrogatories be no later than

JCKLCARC

1   March 2nd, 2020.  Depositions, I propose to be consistent with

2   the defendants' proposal if you completed them later than the

3   last date as specified in the completion of fact discovery.

4   The request is maybe due in approximately 30 days prior to the

5   date scheduled for completion of fact discovery.

6           Here, with respect to expert testimony, I take no

7   position regarding whether and to what extent this category of

8   expert testimony suggested by plaintiff will ultimately be

9   admissible in the case.  Still I recognize that there is a

10   desire potentially to do these expert testimonies in connection

11   with this matter.  And I'd like to establish a period of time

12   for the parties to do that work.

13           Counsel for plaintiff, why are you proposing -- or why

14   has it been proposed to the Court that your expert disclosures

15   not be made until the date that's 20 days after the close of

16   fact discovery?

17           Can you not provide those disclosures by the default

18   date provided for under my proposed case management plan and

19   scheduling order?

20           MR. RESTITUYO:  We can, your Honor.

21           THE COURT:  Good.  Thank you.

22           Counsel for defendants, why are you proposing that you

23   need two months to file any expert disclosures with respect to

24   any experts that may be called by defendants in response to any

25   plaintiff's experts or otherwise?

JCKLCARC

1          Counsel?

2          MS. BUERGEL:  What's proposed here, we understand is

3   an exchange of the full expert reports, and that's why we have

4   asked for the time.

5          THE COURT:  Thank you.  Can you do it in a more

6   expedited basis such as 30 days after the disclosures of the

7   parties are in?

8          MS. BUERGEL:  We can, your Honor.

9          THE COURT:  Good.  Thank you.

10         So the deadline then for completion of expert

11  discovery will be as follows:

12         The deadline for party proponents' disclosures will be

13  the same date as the close of fact discovery.  Any parties'

14  opponent disclosures will be due no later than 30 days

15  following the disclosures by the parties.  All expert discovery

16  will be completed no later than 30 days.  In other words,

17  you'll have a month to complete depositions with respect to

18  each of your respective experts following the defendants'

19  disclosures.  The motion for summary judgment will be due no

20  later than 30 days following the close of expert discovery.

21         So, Counsel, I'll issue an order setting forth these

22  deadlines.  Let me just note a few things about the deadlines

23  that I'm establishing pursuant to the case plan and scheduling

24  order.

25         First, these are relatively extended deadlines.  I've

JCKLCARC

1    established deadlines with the focus of the parties on

2    mediating the case, which we'll discuss momentarily, and also

3    recognizing the types of issues related to privilege and

4    confidentiality that we've discussed regarding the potential

5    information that would be provided by the defendants in this

6    case.  So I established an extended period for completion of

7    discovery.

8           With that in mind, please think of these as your

9    deadlines.  They are real deadlines.  They are deadlines for

10   the completion of fact discovery and expert discovery, where

11   the case manager says that fact or expert discoveries to be

12   completed by a date -- I recognize that that's the product of a

13   potential word choice by me or perhaps my expectation that you

14   will have completed discovery by the relevant date.  That means

15   that there will be no more of it after that date.  There are a

16   corollaries that flow from that general rule.  You can

17   extrapolate them yourselves.  I want to highlight just a few of

18   them right now.

19          First, to the extent that there are any disputes

20   regarding the advocacy of your adversary's production of any

21   discover or any third-party responses to your requests, do not

22   forward or sit on those discovery disputes until the end of

23   much less after the close of fact discovery.  That's because

24   this is, again, the deadline for completion of discovery.  If

25   you sit on or hoard a discovery dispute until late in the

JCKLCARC

discovery period, you may find that I will take the position

that you've waived the opportunity to ask the Court to call for

production of documents and materials, because it's the

deadline for completion of fact discovery, not the date for

commencement of litigation about discovery.  So be mindful of

that.

Similarly, be mindful of the fact that this is a

deadline for completion of discovery as you're making requests

for production of materials, and taking depositions, and

scheduling them.  To put it very simply:  If you wait until

late in the process to take a deposition or request for

information, you will have less time to come back to follow up

discovery with respect to any information that you may glean

during the course of the deposition or from the materials that

have been produced.  So please keep that in mind.

And now, all of these are real deadlines, but if you

want to highlight paragraph 18C, those will require that

parties provide all of their expert disclosures pursuant to

20(e) and all about disclosures required under the rules.  Not

just your experts' name, but her report and all the other

things that are required under the rules.  If you fail to

provide all of the requisite disclosures, you should not expect

that your expert will be permitted to provide testimony or

other evidence in the case.

So, Counsel, I will grant extensions of these

JCKLCARC

1    deadlines, but only for good cause shown and only if the

2    application is made timely and consistent with the case

3    management plan itself and my individual rules.  Be mindful

4    that I do scrutinize requests to the ensure that there is good

5    cause for an application for extension of the deadlines.  The

6    fact that the parties may have agreed upon an extension, you

7    should not expect it necessarily, because I'll be looking for

8    justification for request of an extension.  In that regard,

9    please be mindful that my expectation is that the parties will

10   make professional judgments about the amount of resources they

11   want to invest in the case, and that you should not expect that

12   I'll necessary find good cause in the fact that you chose to

13   focus on something else rather than this matter.

14          Similarly, while I'm about to talk to you about the

15   prospect of settling the case, be mindful that my expectation

16   is that you'll be working to resolve and/or litigate the case

17   fully.  You should not expect that I'll find good cause because

18   the parties failed do the necessary work to litigate this case

19   on basis of a hope or expectation that the case would resolve

20   itself.

21          Plaintiff's counsel, I'm not sure that that would be a

22   viable argument.

23          So, counsel, please be mindful of that.  There's one

24   thing we did not specifically discuss that I'd like to come

25   back to, which is the deadline for initial disclosures under

JCKLCARC

1    26(a).

2            Counsel for plaintiff, what's your proposal for

3    initial disclosures in paragraph five of the case management

4    plan?

5            The default --

6            MR. RESTITUYO:  Yes.  It's two weeks.  The default,

7    we've explained, we have no problems with doing it.

8            THE COURT:  Thank you.

9            Counsel for defendant?

10           MS. BUERGEL:  Your Honor, we understand that Judge

11   Preska's order does, in fact, supersede the parties'

12   obligations under 26(a).

13           THE COURT:  Thank you.

14           That's a standing order, which I can and will now

15   override.

16           So what's your position?

17           MS. BUERGEL:  We'd like 30 days if we can, your Honor,

18   given the number of defendants, and we need to reach out of to

19   all those folks and coordinate the effort with the holidays.

20           THE COURT:  Good.  Thank you.  I'm happy to embrace

21   that initial disclosure under 26(a)(1) and will be due in

22   approximately 30 days from today, January 2020.

23           Good.

24           MS. BUERGEL:  Thank you, your Honor.

25           May I raise one other issue about the schedule?

JCKLCARC

1          THE COURT:  Yes.  Please feel free.

2          MS. BUERGEL:  We will request one additional deadline

3   as it relates to experts, given what you've heard today and

4   what may be surrounded by the subject of expert testimony.  We

5   would request 30 days before plaintiffs are required to

6   disclose their expert's report, and identity, and the like,

7   that they identify for us the subject matters on which they'll

8   be providing expert testimony, so we have an opportunity, given

9   to short turnaround for our responsive reports, to consider

10  those topics and potentially identify experts for our own use.

11         THE COURT:  Counsel for plaintiff, what's your

12  position regarding that request?

13         MR. RESTITUYO:  Your Honor, I'd almost rather give

14  them a little bit more time on the back end rather than the

15  front end, because that, in essence, forces us to have an

16  expert evaluate certain testimony before even our deadline in

17  order to give them the appropriate time.  So, in essence, what

18  it does is it cuts our discovery deadline short by at least 30

19  days.

20         THE COURT:  Thank you.

21         I understand the request is that I require you to

22  provide notice regarding the anticipated topics for expert

23  discovery.  If you prefer, I could have add this time to their

24  opposition deadline.  Part of the reason why I adopted the 30

25  rather than a 60-day period was the response to the plaintiff's

JCKLCARC

1  argument that you wanted to get to trial sooner.  If you prefer

2  that I embrace that approach, please let me know.

3          MR. RESTITUYO:  Yeah.  We're okay with that,

4  your Honor.

5          THE COURT:  Thank you.  That's fine.

6          So I modified the proposed case management plan to

7  provide the defendants 60 days to respond to the expert reports

8  that are provided by the plaintiff or party proponent.  The

9  remaining days will move back for a shorter period of time.

10  Thank you.

11          Good.  So, Counsel, so I'd like to just say a few

12  words about the prospect for resolving the case.  I strongly

13  urge you to talk about resolving the case amicably here.  I

14  direct these comments to all of you.  I understand the

15  plaintiff's concerns as expressed here.  Remember that going

16  into this mediation does not mean that you're agreeing to

17  settle.  It doesn't mean that you're going into it with an open

18  mind, with the expectation they are going to be working with

19  people who are working to resolve the case in good faith.  So I

20  ask you to take that position as you're going into the

21  mediation itself, which I understand you'll be scheduling

22  promptly.

23          As counsel for defendants stated, you need not wait

24  until after an answer is filed in order to schedule the

25  mediation in a case such as this, given the burden associated

JCKLCARC

```
1    with it from all sides, and the plaintiff's desire for an early

2    resolution of a matter in which he's been involved for a

3    substantial period of time already.  It may make sense for you

4    to try to work together collectively to establish a mediation

5    date that would be much sooner than the default rule.  So I

6    strongly encourage you to do that.

7              Is there anything else that I can do to help the

8    parties resolve the case amicably, counsel for plaintiff?

9              MR. RESTITUYO:  Not at this point, your Honor.

10              I think we've been having conversations with

11    defendants' counsel and we are, one, outlining certain

12    parameters, which I guess each side has had candid

13    conversations with their clients about, and also we are, in the

14    meantime, negotiating with respect to the process.  They have

15    provided us with a list of their potential desired mediators.

16    I think there's some -- to the extent that the Court can be

17    helpful, it would be whether we, you know, put us in or force

18    us into the mandatory court mediation process so that, if we

19    aren't able to reach an agreement with respect to a proposed

20    mediator, we at least have a default that, you know, rather

21    than have to come back to court and request that that be

22    assigned.

23              THE COURT:  Thank you.

24              Bear with me for just one moment, please.

25              (Pause)
```

JCKLCARC

```
 1              THE COURT:  So two comments with respect to that:
 2              First, Counsel, please feel free to write me if you
 3     think it would be helpful for me to refer you to the Court
 4     annex mediation program.  The other thing that I'd remind you
 5     of also is that I'd be happy to assign you to the magistrate
 6     judge.  In this case it's Judge Aaron.  If you wish, I can
 7     refer you to a resource.  If you want me to refer you either to
 8     the mediation program or to Judge Aaron for a mediation session
 9     or sessions, please write me sufficiently in advance of the
10     date you wish to hold the mediation.  District judges'
11     schedules are relatively congested.
12              Anything else that I can do in this regard for
13     defendants?
14              Counsel?
15              MR. JOHNSON:  Not from defendants, your Honor.
16              THE COURT:  Good.  Thank you very much.
17              Anything else before we adjourn, first counsel for
18     plaintiff?
19              MR. RESTITUYO:  No, your Honor, thank you.
20              MR. JEFFRIES:  No, your Honor.  Thank you.
21              THE COURT:  Counsel for defendants?
22              MR. BIRENBOIM:  No.  Thank you, your Honor.
23              THE COURT:  Thank you very much.
24              This proceeding is adjourned.
25                              * * * * * *
```