**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

KALOMA CARDWELL,

                                   *Plaintiff*,

        v.

DAVIS POLK & WARDWELL LLP,
THOMAS REID, JOHN BICK, WILLIAM
CHUDD, SOPHIA HUDSON, HAROLD
BIRNBAUM, DANIEL BRASS, and BRIAN
WOLFE,

                                   *Defendants*.

---

19 Civ. 10256 (GHW)

# DEFENDANTS' MEMORANDUM OF LAW IN
# <u>SUPPORT OF THEIR PARTIAL MOTION TO DISMISS</u>

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel.: (212) 373-3000
Fax: (212) 757-3990

*Attorneys for Defendants*

Dated:   February 10, 2020

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS ................................................................................... 4

    A.    The Parties ......................................................................................... 4

    B.    Plaintiff's Tenure at the Firm............................................................ 5

    C.    Administrative Proceedings ............................................................... 8

ARGUMENT ...................................................................................................... 9

    A.    Applicable Law .................................................................................. 9

    B.    The Federal Claims Against All Individual
           Defendants Should Be Dismissed Because Individuals
           Cannot Be Held Liable Under Title VII ............................................ 10

    C.    The State and City Claims Against the
           Other Individual Defendants Should Be
           Dismissed On the Pleadings................................................................ 11

           1.    Applicable Law.................................................................... 11

           2.    The State and City Claims Against
                  Chudd Should Be Dismissed ................................................ 13

           3.    The State and City Claims Against
                  Brass Should Be Dismissed .................................................. 15

           4.    The State and City Claims Against
                  Hudson Should Be Dismissed............................................... 17

           5.    The State and City Claims Against
                  Birnbaum and Wolfe Should Be Dismissed ........................... 20

           6.    None of the Generalized Allegations Against
                  "Defendants" Save the Deficient Pleadings
                  with Respect to the Other Individual Defendants ..................... 23

    D.    All Claims Should Be Dismissed to the Extent
           That They Are Based Upon Discrete Discriminatory
           Acts Outside the Statute of Limitations Period................................... 24

           1.    All Title VII Claims Should Be Dismissed as
                  Time-Barred to the Extent That They Are Based
                  Upon Discrete Acts Prior to October 7, 2016 .......................... 24

           2.    The NYSHRL and NYCHRL Claims Against
                  All Individual Defendants Should Be Dismissed
                  as Time-Barred to the Extent  That They Are Based
                  Upon Discrete Acts Prior to November 4, 2016 ....................... 26

E.      Plaintiff's State Law Harassment Claim Should
        Be Dismissed Because Plaintiff Has Failed
        Adequately To Allege Harassment ........................................................................ 27

**CONCLUSION** ................................................................................................................. **28**

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Akinde* v. *N.Y.C. Health and Hosp. Corp.*,
  2019 WL 4392959 (S.D.N.Y. Sept. 13, 2019).........................................................................11

*Almazan* v. *Almazan*,
  2015 WL 500176 (S.D.N.Y. Feb. 4, 2015)......................................................................10, 19

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009).................................................................................................9, 16, 22

*Atuahene* v. *City of Hartford*,
  10 F. App'x 33 (2d Cir. 2001) .................................................................................................23

*Baraliu* v. *Vinya Capital, L.P.*,
  2009 WL 959578 (S.D.N.Y. Mar. 31, 2009) ...................................................................10, 19

*Bell Atl. Corp.* v. *Twombly*,
  550 U.S. 544 (2007)....................................................................................................................9

*Bliss* v. *MXK Rest. Corp.*,
  220 F. Supp. 3d 419 (S.D.N.Y. 2016)....................................................................................12

*Callahan* v. *Consol. Edison Co. N.Y., Inc.*,
  187 F. Supp. 2d 132 (S.D.N.Y. 2002)...............................................................................19, 20

*Cetina* v. *Longworth*,
  583 F. App'x 1 (2d Cir. 2014) ................................................................................................24

*Chung* v. *City Univ. of N.Y.*,
  605 F. App'x 20 (2d Cir. 2015) ..............................................................................................13

*Daniels* v. *City of N.Y.*,
  2019 WL 251511 (S.D.N.Y. Jan. 17, 2019) ..........................................................................22

*Danieu* v. *Teamsters Local 264*,
  2011 WL 1259839 (W.D.N.Y. Mar. 31, 2011)...............................................................14, 23

*Diaz* v. *City Univ. of N.Y.*,
  2014 WL 10417871 (S.D.N.Y. Nov. 10, 2014).....................................................................25

*Dimitracopoulos* v. *City of N.Y.*,
  26 F. Supp. 3d 200 (E.D.N.Y. 2014) .....................................................................................27

*Donlon* v. *Bd. of Educ. of Greece Cent. Sch. Dist.*,
  2007 WL 108470 (W.D.N.Y. Jan. 12, 2007) .........................................................................25

**Page(s)**

*Erasmus* v. *Deutsche Bank Am. Holding Corp.*,
2015 WL 7736554 (S.D.N.Y. Nov. 30, 2015) ........................................................................11

*Falcon* v. *City Univ. of N.Y.*,
263 F. Supp. 3d 416 (E.D.N.Y. 2017) ...................................................................................10

*Fleurentin* v. *N.Y.C. Health and Hosp. Corp.*,
2020 WL 42841 (E.D.N.Y. Jan. 3, 2020) ..............................................................................25

*Flores* v. *N.Y.C. Human Res. Admin.*,
2011 WL 3611340 (S.D.N.Y. Aug. 16, 2011) ............................................................25, 26, 27

*Henry* v. *N.Y.C. Health & Hosp. Corp.*,
18 F. Supp. 3d 396 (S.D.N.Y. 2014) ............................................................................. passim

*Henry-Offor* v. *City Univ. of N.Y.*,
2012 WL 2317540 (S.D.N.Y. June 15, 2012) .................................................................25, 26

*Johnson* v. *Morrison & Foerster LLP*,
2015 WL 845723 (S.D.N.Y. Feb. 26, 2015) .................................................................16, 18, 21

*Kassner* v. *2nd Ave. Delicatessen, Inc.*,
496 F.3d 229 (2d Cir. 2007) ...................................................................................................24

*Kimball* v. *Vill. of Painted Post*,
737 F. App'x 564 (2d Cir. 2018) ............................................................................................24

*LeeHim* v. *N.Y.C. Dep't of Educ.*,
2017 WL 5634128 (S.D.N.Y. Nov. 21, 2017) ................................................................ passim

*Lovell* v. *Staten*,
2019 WL 4601665 (S.D.N.Y. Sept. 30, 2019) ................................................................24, 25

*Mira* v. *Argus Media*,
2017 WL 1184302 (S.D.N.Y. Mar. 29, 2017) .......................................................................13

*Moore* v. *Verizon*,
2016 WL 825001 (S.D.N.Y. Feb. 5, 2016) ................................................................12, 19, 28

*Presbyterian Healthcare Servs.* v. *Goldman Sachs and Co.*,
2017 WL 1048088 (S.D.N.Y. Mar. 17, 2017) .........................................................................9

*SEC* v. *Rio Tinto plc*,
2019 WL 1244933 (S.D.N.Y. Mar. 18, 2019) .......................................................................19

*Rogers* v. *Fashion Inst. of Tech.*,
2016 WL 889590 (S.D.N.Y. Feb. 26, 2016) ....................................................................21, 22

<u>Page(s)</u>

*Roman-Malone* v. *City of N.Y.*,
  2013 WL 3835117 (S.D.N.Y. July 25, 2013) ........................................................26

*Romero* v. *Howard Johnson Plaza Hotel*,
  1999 WL 777915 (S.D.N.Y. Sept. 29, 1999) ........................................................24

*Royal Park Invs. SA/NV* v. *Deutsche Bank Nat'l Trust Co.*,
  2016 WL 439020 (S.D.N.Y. Feb. 3, 2016) ................................................8, 10, 17, 19

*Sirisena* v. *City Univ. of N.Y.*,
  2019 WL 1493220 (E.D.N.Y. Mar. 31, 2019) ........................................................26

*Vega* v. *Hempstead Union Free Sch. Dist.*,
  801 F.3d 72 (2d Cir. 2015) ........................................................24

*Vera* v. *Donado Law Firm*,
  2019 WL 3306117 (S.D.N.Y. June 19, 2019) ........................................................11, 17

*Ward* v. *Shaddock*,
  2016 WL 4371752 (S.D.N.Y. Aug. 11, 2016) ................................................14, 18, 23

*Weir* v. *Montefiore Med. Ctr.*,
  2018 WL 1033238 (S.D.N.Y. Feb. 22, 2018) ................................................12, 14, 28

*Williams* v. *Victoria's Secret*,
  2017 WL 1162908 (S.D.N.Y. Mar. 28, 2017) ........................................................19

*Wynder* v. *McMahon*,
  565 F. App'x 11 (2d Cir. 2014) ........................................................11

*Zoulas* v. *N.Y.C. Dep't of Educ.*,
  400 F. Supp. 3d 25 (S.D.N.Y. 2019) ........................................................ passim

## STATUTES

42 U.S.C. § 2000e ........................................................ passim

N.Y. Exec. L. § 296, *as amended by* L. 2019, ch. 160 ........................................................ passim

N.Y.C. Admin. Code § 8-107 ........................................................ passim

## OTHER AUTHORITIES

Fed. R. Civ. P. 12 ........................................................ passim

Davis Polk & Wardwell LLP ("Davis Polk" or the "Firm"), Thomas Reid and John Bick (the "Management Committee Defendants"), and William Chudd, Sophia Hudson, Harold Birnbaum, Daniel Brass, and Brian Wolfe (the "Other Individual Defendants"; together with Davis Polk and the Management Committee Defendants, the "defendants") respectfully submit this memorandum of law in support of their motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss in part the Complaint filed on November 4, 2019 by plaintiff, Kaloma Cardwell (ECF 1, the "Complaint").

For the reasons set forth below, (i) the Title VII claims against the Management Committee Defendants and the Other Individual Defendants (the "individual defendants") should be dismissed because individuals are not subject to liability under Title VII; (ii) all remaining claims against the Other Individual Defendants should be dismissed because plaintiff has failed properly to allege discrimination, harassment, or retaliation by them; (iii) the harassment claim under New York state law should be dismissed as to all defendants for failure to satisfy the pleading standard; and (iv) all claims against all defendants should be dismissed to the extent they are based upon discrete acts outside the limitations periods.

## PRELIMINARY STATEMENT

Davis Polk hired plaintiff as a full-time corporate associate in 2014. As they do with all associates, the Firm and its partners invested enormous time and effort in recruiting and training plaintiff and trying to develop his legal skills. By 2016, however, senior lawyers in three independent practice groups within the Firm had observed—and documented—similar, and increasingly troubling, problems with plaintiff's performance. Plaintiff failed to complete the work required; he neglected the tasks assigned to him; he failed to meet deadlines; he failed to respond to his supervisors for protracted periods when tasks needed to be completed; he failed to identify fundamental legal issues and came to incorrect legal conclusions, including in certain

instances introducing changes that, if accepted, would have been adverse to the client's interests. Senior lawyers on plaintiff's matters repeatedly were required to do, or redo, his work or to find replacement staffing to ensure that deadlines were met.

By the end of 2017, despite repeated efforts by the Firm to help him, plaintiff's performance problems had not been cured, and it was clear that plaintiff—by then a fourth-year associate in the M&A group—was not performing at the level expected of a mid-level Davis Polk associate. In keeping with this reality, in early 2018, plaintiff was told during his annual review that he was not meeting the standards expected of an associate at his level and that his repeated poor performance made it increasingly challenging to assign him to Firm matters. As a result, the Firm told plaintiff it was time for him to seek alternative employment. The Firm made clear— consistent with Firm practice when non-performing lawyers are asked to seek alternate employment—that plaintiff should and could take time to find another job, that he would be paid his full salary as he did so, and that he could use Firm resources and job placement services paid for by the Firm for three months while pursuing other opportunities. At plaintiff's request, the Firm extended this period to six months. Plaintiff's employment ended in August 2018.

Notwithstanding these realities, plaintiff now brings this action, claiming that it was his race and purported raising of issues relating to race that caused the Firm to terminate his employment. As set forth above, the facts tell an entirely different story. The evidence—*e.g.*, performance evaluations, contemporaneous email records, and work product, among other things—will demonstrate that plaintiff was not able to perform at the level expected of a Davis Polk associate and that his performance was the only reason he was asked to seek other employment.

On this motion, consistent with the Court's obligation to accept well-pleaded facts as true, defendants address only the legal pleading deficiencies in plaintiff's Complaint, notwithstanding that the evidence will show beyond any dispute that *all* of plaintiff's claims against *all* defendants are factually false and meritless and should be dismissed.[1]

First, plaintiff cannot, as a matter of law, bring Title VII claims against any of the individual defendants: the statute does not create individual liability.

Second, none of the Other Individual Defendants has any place in this action, because none of the allegations against them properly pleads a legal claim.

Conspicuously absent from the Complaint is any allegation that any of the Other Individual Defendants took any adverse employment actions against plaintiff, or that they did so with discriminatory animus, as is legally required to sustain the claims against them. Indeed, as plaintiff concedes, the Other Individual Defendants—whom plaintiff did not name when he filed his underlying administrative charge in 2017—played virtually no role in the events at issue. The Complaint—spanning 87 pages and 287 numbered paragraphs—asserts only a handful of allegations against each of the Other Individual Defendants, none of which plausibly alleges discriminatory intent, nearly all of which fall outside the statute of limitations, and the most sensational of which are indisputably false, as established by documents integral to the Complaint and properly considered on this motion. Plaintiff has failed to allege even "minimal evidence" of

---

[1] Specifically, defendants are seeking to dismiss all claims against the Other Individual Defendants at this preliminary pleading stage based on the inadequacy of the allegations of the Complaint and the applicable statutes of limitations. Defendants are not moving at this time to dismiss all claims against the Firm and the Management Committee Defendants as a pleading matter, but will demonstrate at the appropriate juncture that the Management Committee Defendants acted at all times as leaders of the Firm to support fully an associate facing significant performance problems. The facts will show unequivocally that none of the Firm, the Management Committee Defendants or the Other Individual Defendants engaged in any discrimination, harassment, or retaliation or otherwise treated plaintiff less favorably because of his race or because of his purported raising of any concerns related to race.

intentional discrimination, harassment, or retaliation by the Other Individual Defendants.  The claims against them therefore should be dismissed.

Finally, the Complaint suffers from additional core deficiencies.  Plaintiff's harassment count—which fails to identify the factual basis for the claim, with the exception of one reference in one paragraph to conduct that cannot be imputed to the Firm—is legally deficient.  And the remainder of plaintiff's claims can only proceed to the extent based on events within the limitations period (post-fall 2016), thus further narrowing the claims and allegations properly at issue.

## STATEMENT OF FACTS

### A.    The Parties

Plaintiff was employed by the Firm as a summer associate in 2013 and as an associate from September 2014 to August 2018.  ¶¶  4, 17, 45–46.[2]  As a junior associate in the Corporate Department, plaintiff rotated through the Credit, Capital Markets, and Mergers & Acquisitions ("M&A") groups; from April 2016, he worked in M&A.  ¶¶  4, 106, 111, 150.

Davis Polk is a global law firm registered as a limited liability partnership under the laws of the State of New York, with its principal place of business at 450 Lexington Avenue, New York, New York 10017.  ¶ 6.

The individual defendants were partners in the Corporate Department during some or all of plaintiff's tenure at the Firm.  ¶¶ 7–13, 106.[3]   The Management Committee Defendants, Reid and Bick, were members of the Firm's Management Committee; Reid was the Firm's Managing Partner and Bick the head of the Corporate Department.  ¶¶ 7, 8.  The Other Individual

---

[2] Unless otherwise noted, all citations to "¶" refer to the Complaint.  All citations to "Ex. __" refer to the exhibits attached to the accompanying declaration of Susanna Buergel, dated February 10, 2020.

[3] Wolfe, Birnbaum, and Brass became partners in 2015, 2016, and 2017, respectively.

Defendants were practicing lawyers within the Firm's Corporate Department, but with no Firm management responsibilities. ¶¶ 7–13, 106.  Hudson was a partner in the Capital Markets group, through which plaintiff rotated from October 2015 to March 2016. ¶¶ 9, 106–107.  Brass, an associate for part of the relevant period, later became a partner in the M&A group. ¶ 12.  Birnbaum and Wolfe, also associates when plaintiff began at the Firm, later became M&A partners and served at times as junior M&A staffing coordinators. ¶¶ 11, 13.  Chudd was the M&A partner assigned to deliver an annual review to plaintiff in December 2015. ¶¶ 10, 78.

### B.    Plaintiff's Tenure at the Firm

The gravamen of plaintiff's Complaint is that, while he was an associate at the Firm, (i) his "professional development and opportunities" were limited because of his race, (ii) he was "depriv[ed] . . . of all billable work" for four months because of his race and purported raising of concerns related to race, and (iii) he was "retaliated against" for raising those concerns. ¶¶ 1, 2.  Plaintiff does not dispute that his reviews contained critiques of his performance but asserts, without support, that the Firm "falsif[ied his] performance reviews" by "retroactively creat[ing]" them, in order to submit them to the Equal Employment Opportunity Commission ("EEOC"). *E.g.*, ¶¶ 1, 2, 77.[4]  Plaintiff contends that the Firm terminated him not because of his actual performance but because of his purported raising of race issues.

Plaintiff first brought his claims in an administrative action filed with the New York State Division of Human Rights ("NYSDHR") and the EEOC.  Ex. A, B.  In the charges he submitted to those agencies, plaintiff asserted claims only against the Firm; at no time prior to the filing of this action did plaintiff assert claims against any of the individual defendants.  Plaintiff

---

[4] As described at footnote 12, no reviews were created retroactively; plaintiff erroneously appears to be referring to a *print* date.

now asserts his claims against both the Firm and seven individuals, based on a series of allegations

that predate the fall of 2016 and thus are time-barred, and on others that occurred after the fall of

2016.[5]  **Part D**, *infra*.

Thus, for example, plaintiff claims that, between the fall of 2014 and the fall of

2016, he was subjected to certain purportedly "discriminatory interactions," that he "flagged" acts

of discrimination, and that he was punished for doing so.  *E.g.*, ¶¶ 52–58, 60–61, 64–66.  He

contends, for instance, that in May 2015, he "flagged" situations in which attorneys were "not

making eye contact" with colleagues of color, ¶¶ 52–58; that in 2015, he was "left off email[s]"

and not invited to a "conference call," ¶¶ 60–61; and that, in September 2015, he "flagged" being

"excluded from staffing-related opportunities" and did not receive "follow[]-up."  ¶¶ 64–66.

The majority of plaintiff's claims against the Other Individual Defendants are based

upon acts solely within this early period.  As to these individuals, the Complaint alleges that:

- **Chudd** delivered plaintiff's annual performance review in December 2015, including "positive feedback" and "suggestions," and wrote his own review, ¶¶ 77–78;

- **Hudson** corrected plaintiff's grammatical error in December 2015, ¶ 107; that she had "virtually no communications" with plaintiff after they "stopped working together" at the "end of 2015/beginning of 2016," ¶ 108; that her 2016 performance reviews contained "negative conclusions" that he perceived to be inaccurate, ¶¶ 105–106; and that in July 2016, she asked plaintiff "if he could recommend a Black restaurant that is in Harlem," ¶ 108;

- Over the course of three hours in July 2016, plaintiff was staffed on an M&A team, and then told by **Brass**, then an associate, that he could "stand down" because the team was "ok[ay] for the near future," ¶ 126; *see also* ¶¶ 125–28, 130–34; and

- **Birnbaum** and **Wolfe**, as the "two most junior M&A partners," "served as M&A staffing coordinators," ¶¶ 111, 151, but allegedly did not staff plaintiff on any matters in 2016, ¶¶ 151–52, and did not send plaintiff individualized emails in the ensuing months, "notwithstanding group emails to practice groups and other listservs" and regular "one-on-one" in-person communications.  ¶¶ 152, 154–55, 186.

---

[5] The limitations periods run to October 7, 2016 (for federal claims) and November 4, 2016 (for state and city claims), as explained below.

Plaintiff's remaining pre-November 2016 allegations (not specific to the Other Individual Defendants) fall generally into three categories:  that he (i) was staffed on undesirable assignments, *e.g.*, ¶¶ 116–23, 142–50; (ii) received negative performance reviews (notwithstanding the inconsistency between this allegation and the contention that these reviews were created *later*, in connection with plaintiff's 2017 administrative action), *e.g.*, ¶¶ 78–81, 85–93, 105–06; and (iii) was ignored at times by certain individuals, *e.g.*, ¶¶ 94–95, 124, 129, 136–41.

Plaintiff also outlines allegedly discriminatory and retaliatory acts post-November 2016.  **Part D**, *infra*.  Plaintiff alleges that, for example, from the fall of 2016 forward, he experienced a decline in billable hours allegedly attributable to discrimination or retaliation, as opposed to declining demand for his work in light of performance issues.  *See, e.g.*, ¶¶ 150, 156–57, 159, 185.  Although plaintiff attempts to minimize the contemporaneous performance critiques he received, he concedes, as he must, that multiple reviewers flagged concerns with his performance and "negative conclusions" about his work, over multiple years, including a "pattern of missing deadlines" and drafting errors and deficiencies.  *See, e.g.*, ¶ 78 (2015), ¶¶ 85, 87, 89–90, 105–06, 175–76 (2016), ¶¶ 240, 242 (2018).  Plaintiff also contends that he raised a series of issues related to race in the post-November 2016 period, *see, e.g.*, ¶ 204 (requesting discussion about a then-former Firm client from which he believed the Firm should not accept future assignments, if requested) and, ultimately, that he was terminated on the basis of his race.  *See, e.g.*, ¶ 251.  Plaintiff concedes that he was told to seek alternate employment in February 2018, ¶ 248, and departed in August 2018, ¶ 253; there is no allegation that plaintiff was not paid fully in this period (he was), notwithstanding that the Firm could no longer bill for his work.  ¶¶ 248, 253.

There are virtually no allegations with respect to the Other Individual Defendants from the post-fall 2016 time period, save allegations that:

- **Chudd** did not personally email plaintiff in 2017, ¶ 186 (there is no allegation that Chudd was working with, or had any duty to email, plaintiff in this period);

- **Hudson** submitted "negative conclusions" about his work "to the EEOC," ¶ 105; and

- Plaintiff was told that "certain M&A partners," including **Brass**, "collectively decided to terminate" him, ¶ 248.

### C.  Administrative Proceedings

On August 4, 2017, plaintiff filed a "Charge of Discrimination" against Davis Polk with the EEOC and the NYSDHR.  Exs. A, B.  The NYSDHR, not the EEOC, investigated plaintiff's claims.  *E.g.*, Ex. C.  Plaintiff submitted a version of the charge bearing an NYSDHR caption in October 2017, Ex. B at 5, and Davis Polk and plaintiff submitted briefing and evidence. *E.g.*, Exs. C, D.  None of the defendants appeared before, or submitted briefing to, the EEOC.[6] Plaintiff filed this lawsuit on November 4, 2019, but named seven individual defendants not named—and in three cases, not even mentioned—in the agency action.[7]  *E.g.*, Ex. B at 5.  On November 27, 2019, after the filing of this lawsuit, the NYSDHR dismissed the matter for administrative convenience.[8]

---

[6] The Court "'need not accept'" as true plaintiff's assertion that documents were submitted to the EEOC, because the administrative record "'contradict[s]'" this claim; documents were submitted to the NYSDHR, not the EEOC. *Royal Park Invs. SA/NV* v. *Deutsche Bank Nat'l Trust Co.*, 2016 WL 439020, at *1 (S.D.N.Y. Feb. 3, 2016) (quotation omitted).

[7] ¶¶ 259–85 (alleging discrimination and retaliation under Title VII, 42 U.S.C. § 2000e, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296(1)(a)&(e), and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107, and harassment under the NYSHRL, N.Y. Exec. L. § 296(1)(h)). Plaintiff's administrative charge made no mention of Chudd, Hudson, or Wolfe.

[8] The NYSDHR asked the parties for their views on this issue.  The Firm submitted a response taking the position that given plaintiff's election to litigate his claims before the NYSDHR, the NYSDHR action was improperly dismissed.  The Firm is not at present aware of further action by the NYSDHR.  Defendants reserve all rights with respect to arguments related to the viability of the non-federal claims asserted herein.

**ARGUMENT**

Plaintiff's claims should be dismissed in their entirety as to certain defendants and substantially narrowed with respect to others in light of the Complaint's legal errors and core deficiences.  The Title VII claims against the individuals should be dismissed outright:  Title VII does not permit individual liability.  All remaining claims against the Other Individual Defendants should be dismissed because plaintiff has failed plausibly to allege that they violated state or city laws.  All claims should be dismissed to the extent that they are based upon time-barred discrete acts prior to October 7, 2016 (for all Title VII claims) or November 4, 2016 (for the NYSHRL and NYCHRL claims against all individuals).  Finally*,* the NYSHRL harassment claim should be dismissed because plaintiff has failed to satisfy the minimum pleading standards.

**A.      Applicable Law**

When considering a motion under Rule 12(b)(6), this Court must accept as true the well-pleaded factual allegations in the Complaint, but need not accept as true legal conclusions, assertions or conclusions unsupported by the facts, or unwarranted inferences.  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555–56 (2007).  A mere "conclusory statement[]" that a plaintiff has satisfied an element of a cause of action "do[es] not suffice."  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must plead "enough facts to state a claim for relief that is plausible on its face," not merely "conceivable," *Twombly*, 550 U.S. at 570; this standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  Where a complaint "pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12 motion, the court may consider "'documents incorporated by reference in the complaint.'"  *Presbyterian Healthcare Servs.* v. *Goldman Sachs and Co.*, 2017

WL 1048088, at *5 (S.D.N.Y. Mar. 17, 2017) (quotation omitted).  "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint.'" *Almazan* v. *Almazan*, 2015 WL 500176, at *4 (S.D.N.Y. Feb. 4, 2015) (quotation omitted); *Baraliu* v. *Vinya Capital, L.P.,* 2009 WL 959578, at *4 (S.D.N.Y. Mar. 31, 2009) ("defendant may proffer . . . [a] document" that "plaintiff chooses not to attach to the complaint").  If a document so considered "'contradict[s] allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true.'"  *Royal Park*, 2016 WL 439020, at *1 (quotation omitted).  Likewise, courts may take judicial notice of NYSDHR filings on a Rule 12 motion.  *Falcon* v. *City Univ. of N.Y.*, 263 F. Supp. 3d 416, 424 (E.D.N.Y. 2017) (court "may take judicial notice of the records of state administrative procedures"; considering "EEOC filings" and "paperwork supplied by [defendant]" because plaintiff "ha[d] notice of those documents because she submitted them and received them").

By contrast, the court may not consider events occurring outside the relevant limitations periods when determining whether a plaintiff's claims have satisfied the pleading standard.  Acts outside those periods—here, October 7, 2016, for the federal claims and November 4, 2016, for the state and city claims—are time-barred.  *Zoulas* v. *N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 49–50 (S.D.N.Y. 2019) (Woods, J.) (dismissing discrimination and retaliation claims as time-barred to the extent based on "alleged acts [that] occurred" outside the limitations period).

**B.     The Federal Claims Against All Individual Defendants Should Be Dismissed Because Individuals Cannot Be Held Liable Under Title VII**

As an initial matter, plaintiff has impermissibly sued the individual defendants for discrimination and retaliation under Title VII.  ¶¶ 259–66.  It is black-letter law, as "recognized on

several occasions" by the Second Circuit, "that individuals are not liable in Title VII cases." *Wynder* v. *McMahon*, 565 F. App'x 11, 12 (2d Cir. 2014); *Akinde* v. *N.Y.C. Health and Hosp. Corp.*, 2019 WL 4392959, at *8 (S.D.N.Y. Sept. 13, 2019) (Woods, J.).  The Title VII claims against the individual defendants should be dismissed with prejudice.

### C.    The State and City Claims Against the Other Individual Defendants Should Be Dismissed On the Pleadings

All state and city law claims against the Other Individual Defendants should be dismissed because plaintiff has not plausibly alleged that they engaged in unlawful conduct.

#### 1.    Applicable Law

Plaintiff has not met his burden to plausibly allege discrimination, harassment, and retaliation by the Other Individual Defendants.  Absent any plausible and cognizable allegations that the Other Individual Defendants "personally engaged" in unlawful acts, the state and city claims against them should be dismissed.  *Vera* v. *Donado Law Firm*, 2019 WL 3306117, at *9 (S.D.N.Y. June 19, 2019) (dismissing claims against individual).[9]

To satisfy his obligation under state and city law, plaintiff must put forth "facts plausibly indicating" (i) "conduct amounting to an adverse employment action" that (ii) "occurred under circumstances evincing discriminatory animus."  *Henry* v. *N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 409 (S.D.N.Y. 2014) (Title VII and NYSHRL); *LeeHim* v. *N.Y.C. Dep't of Educ.*, 2017 WL 5634128, at *9 (S.D.N.Y. Nov. 21, 2017) (requiring "sufficiently adverse" mistreatment and "discriminatory motive" under city law).  Adverse employment actions are "materially adverse change[s] in the terms and conditions of employment"; allegations of "mere inconvenience[s] or []

---

[9] In addition, Brass, Birnbaum, and Wolfe are not liable under the NYSHRL for acts that occurred when they were associates, not partners, because they then had no "ownership interest" in the Firm, and the Firm reserves personnel decisions for those outside associate ranks.  *Erasmus* v. *Deutsche Bank Am. Holding Corp.*, 2015 WL 7736554, at *8 (S.D.N.Y. Nov. 30, 2015) (quotation omitted) (no direct liability under the NYSHRL for individuals without an "ownership interest or any power to do more than carry out personnel decisions made by others.").

alteration[s] of job responsibilities" do not suffice. *Henry*, 18 F. Supp. 3d at 404 (quotation omitted). Plaintiffs must show that the "adverse employment action was *because of* race," *id.* at 407; both state and city law require "discriminatory motive." *LeeHim*, 2017 WL 5634128, at *9 (dismissing state and city claims against individual).

To plead harassment under the NYSHRL, plaintiff must plausibly allege that, because of race, he has been subjected to "inferior terms, conditions or privileges of employment." N.Y. Exec. L. § 296(1)(h), *as amended by* L. 2019, ch. 160. Plaintiff also must plausibly allege both that he "subjectively perceive[d] the work environment to be abusive," and that "a reasonable person would find it hostile or abusive." *Weir* v. *Montefiore Med. Ctr.*, 2018 WL 1033238, at *8 (S.D.N.Y. Feb. 22, 2018) (quotation omitted) (dismissing claims where conduct, viewed "objectively," did not "effect a change in the conditions of [plaintiff's] employment").[10]

Finally, a plausible allegation of retaliation requires "(1) participation in a protected activity *known to the defendant*; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Henry*, 18 F. Supp. 3d at 411 (emphasis added) (internal citation omitted) (quotation omitted); *Bliss* v. *MXK Rest. Corp.*, 220 F. Supp. 3d 419, 424-25 (S.D.N.Y. 2016) (quotation omitted). Merely alleging temporal proximity without "even a modicum of specificity" does not satisfy this standard, nor do "allegations of disparate treatment [that] are conclusory." *Henry*, 18 F. Supp. 3d at 412.

For the reasons that follow, the state and city claims against each of the Other Individual Defendants fail to satisfy these standards and should be dismissed.

---

[10] These requirements survive a recent amendment to the NYSHRL. And even were courts to look to the "more liberal NYCHRL standard" to interpret the NYSHRL, courts nevertheless dismiss NYCHRL claims where, for example, the employee has not demonstrated a link between an "unpleasant office environment and discriminatory behavior based on race." *Moore* v. *Verizon*, 2016 WL 825001, at *13 (S.D.N.Y. Feb. 5, 2016).

2.      The State and City Claims Against Chudd Should Be Dismissed

Plaintiff's Complaint contains a mere three allegations with respect to Chudd:  that (i) in December 2015, he delivered plaintiff's "first annual face-to-face review," over the course of "a few minutes," including both "positive feedback" and "suggestions," ¶ 78; (ii) he submitted his own review of plaintiff's performance as part of the 2015 review cycle stating that he had had "limited" contact with plaintiff, ¶ 77; and (iii) he did not send plaintiff any emails, "notwithstanding group emails to practice groups and other listservs," in "all of 2017."  ¶ 186.

These facts do not even cursorily, much less plausibly, allege discrimination, harassment, or retaliation by Chudd under state or city law.  Moreover, the allegations with respect to the 2015 performance reviews are allegations of discrete acts outside the limitations period, are therefore time-barred, and cannot form the basis of a discrimination claim against Chudd, as described further at **Part D**, *infra*.  Even were they not, plaintiff has failed to allege, as he must, at least two of the elements of a discrimination claim: that he "suffered an adverse employment action" attributable to Chudd or that he has even "minimal evidence suggesting an inference" that Chudd "acted with discriminatory motivation."  *LeeHim*, 2017 WL 5634128, at *3 (quotation omitted).  The fact that Chudd delivered plaintiff's annual performance review in the ordinary course cannot establish a claim of intentional discrimination by Chudd.  Delivering a mixed performance review—particularly an ordinary-course review reflecting consensus feedback—is not an adverse employment action.  Even entirely negative performance reviews "do not qualify as adverse employment actions," *Mira* v. *Argus Media*, 2017 WL 1184302, at *4 n.5 (S.D.N.Y. Mar. 29, 2017), particularly where, as here, there is no allegation of "tangible consequences resulting from the evaluation." *Chung* v. *City Univ. of N.Y.*, 605 F. App'x 20, 22 (2d Cir. 2015) (affirming denial of motion to amend).  Plaintiff's assertions that he felt "a bit frustrated" and "confused and uncomfortable" following his 2015 review establish neither a subjective nor

13

objective belief that the review was discriminatory or harassing.  ¶ 81; *Weir*, 2018 WL 1033238, at *8.

Even assuming that delivery of a review with both "positive feedback" and "suggestions" could constitute an adverse employment action, ¶ 78, plaintiff does not, nor could he, plausibly allege that Chudd delivered this feedback "because of [plaintiff's] race."  *Henry*, 18 F. Supp. 3d at 407.  Chudd was appointed by the M&A group to deliver plaintiff's reviews based on what plaintiff concedes was feedback from multiple reviewers.  ¶¶ 78, 97; *cf.* ¶ 209.  And irrespective of whether plaintiff discussed with other associates "whether" Chudd "would or had" made similar comments to white associates, ¶ 81, there is no allegation that Chudd *in fact* "acted with discriminatory motivation" here, as is required to sustain claims against him.  *LeeHim*, 2017 WL 5634128, at *3.[11]

The allegation that Chudd did not send plaintiff any emails in "all of 2017" "notwithstanding group emails to practice groups and other listservs" does not save plaintiff's claims against him.  ¶ 186.  There is no allegation that Chudd had any reason, much less any duty, to email plaintiff in 2017, nor is there any allegation that Chudd's lack of individualized email contact with plaintiff was motivated by discriminatory or retaliatory intent.  Even if there were, allegations that Chudd ignored plaintiff by not emailing him still would be inadequate to plead an adverse employment action.  *Ward* v. *Shaddock*, 2016 WL 4371752, at *6 n.4 (S.D.N.Y. Aug. 11, 2016) (allegation that supervisor "refused to directly communicate or acknowledge" plaintiff "fail[ed] to satisfy the threshold for adverse employment action"); *see also Danieu* v. *Teamsters Local 264*, 2011 WL 1259839, at *9 (W.D.N.Y. Mar. 31, 2011).  Finally, absent any allegation

---

[11] In addition to delivering plaintiff's review, ¶ 78, and summarizing the results thereof, ¶ 97, Chudd submitted his own review of plaintiff's performance, ¶ 77.  Nonetheless, whether or not Chudd had direct knowledge of a junior associate's performance says nothing about whether he was competent to discuss "the submitted performance reviews" of others, ¶ 97, as plaintiff concedes is Firm practice.  *Id.*

that plaintiff engaged in any protected activity "known to" Chudd, or that he suffered a "materially adverse action" directed by Chudd, plaintiff has not plausibly alleged retaliation by Chudd.[12]  None of the generalized allegations against all "Defendants" save the direct claims against Chudd.  **Part C**, *infra*.  Chudd should be dismissed from the case.

3.     The State and City Claims Against Brass Should Be Dismissed

The claims against Brass likewise should be dismissed.  Plaintiff puts forth a mere two allegations with respect to Brass:  that (i) over the course of three hours in July 2016, when Brass was an "associate" at Davis Polk, ¶ 126, plaintiff was staffed on an M&A deal and then told by Brass that the team was "ok[ay] for the near future," and "abrupt[ly] removed" from the deal ¶¶ 126–27; and (ii) circa February 8, 2018, plaintiff was told by an M&A partner other than Brass that "certain M&A partners," including Brass and others, "collectively decided" to terminate plaintiff.  ¶ 248.

The July 2016 staffing allegation concerns a discrete act outside the limitations period, is therefore time-barred, and cannot form the basis of a claim against Brass.  **Part D**, *infra*.  Furthermore, because Brass was an associate in July 2016, he was not then an "employer" for purposes of the NYSHRL, barring direct liability.  *See* footnote 9, *supra*.

Regardless, the July 2016 allegations are insufficient to sustain the claims against Brass: plaintiff has failed to allege, as he must, that his purported "removal" from the deal

---

[12] The record clearly refutes plaintiff's allegations that documents Chudd or other defendants prepared in the 2015 or 2016 review cycles were "retroactively created" and submitted to the EEOC, ¶¶ 77, 105.  Chudd's summary of the annual review is marked "Submitted on 12/22/2015, 10:47 a.m.," (¶ 78; Ex. C at 2 (Firm's NYSDHR Br. Ex. 11)), and shows that Chudd's individual review was submitted prior to that date (*see* Ex. C at 4 item 2; ¶ 77).  Plaintiff appears to be referring to the date a copy was *printed* (2017), as shown in the footer of Ex. C (Firm's NYSDHR Br. Ex. 11).  No documents were submitted to the EEOC.

Defendants move, pursuant to Fed. R. Civ. P. 12(f), to strike the allegations that they—all members of the Bar— "retroactively created" reviews "after Plaintiff engaged litigation," ¶ 77 (as to Chudd), and that they "submitted false statements and characterizations to the EEOC," ¶ 105 (as to Reid, Bick, Hudson, and the Firm).

constituted a material "adverse employment action" or that it was done with discriminatory intent. A plaintiff's dissatisfaction with work "not assigned" to him "by his supervisor[] is insufficient to make out an adverse employment action." *Johnson* v. *Morrison & Foerster LLP*, 2015 WL 845723, at *5 (S.D.N.Y. Feb. 26, 2015) (granting motion to dismiss); *Henry*, 18 F. Supp. 3d at 405 (being "removed from the roll call and sent home on a single occasion" not a "materially adverse change").  In any case, plaintiff concedes that he was staffed on the deal for less than three hours, ¶ 126, and that his monthly billable hours in fact *increased* after his "removal," from 146.4 in July to 160.5 and 234.7 in August and September.  ¶ 156.  Nor is there any allegation that the July 2016 action was taken "because of race."  *Henry*, 18 F. Supp. 3d at 407.  Nothing in plaintiff's sole communication with Brass, ¶ 126, nor plaintiff's unsupported assertions that Brass's action was not "typical[]" or was "weird," ¶¶ 127, 133, supplies the "minimal evidence suggesting an inference" of discrimination necessary to support a claim against Brass.  *LeeHim*, 2017 WL 5634128, at *3.  Plaintiff has offered nothing more than the "sheer possibility" that Brass's actions were motivated by anything other than the need to ensure that the deal was appropriately staffed. *Iqbal*, 556 U.S. at 678.

Finally, plaintiff has failed to "connect the dots" between his "membership in a protected class" and any role purportedly played by Brass in the termination.  *Henry*, 18 F. Supp. 3d 396 (quotation omitted).  Plaintiff puts forth no evidence that Brass had anything more than a single interaction with plaintiff two years before his termination, ¶ 126, nor any evidence that Brass had any "motivation" to act against him because of any allegedly protected acts, none of which plaintiff alleges were "known to" Brass.  And there is no allegation that Brass was in a Firm or M&A group management role at the time plaintiff was terminated; Brass, in this way, is not situated differently from any other Firm partner.  Allegations against others cannot sustain an

16

individual action against Brass. *Vera*, 2019 WL 3306117, at *9 (denying relief absent failure to allege that individual "personally engaged in any discriminatory act").  Brass, too, should be dismissed from the case.

4.    <u>The State and City Claims Against Hudson Should Be Dismissed</u>

The claims against Hudson likewise should be dismissed.  Plaintiff's claims against Hudson are time-barred, and in any event fail to state claims for discrimination or retaliation under state or city law.  First, plaintiff does not allege that Hudson was personally involved in his purported decline in workload, the decision to terminate his employment, or any other adverse employment action.  *See Vera*, 2019 WL 3306117, at *9.  Indeed, plaintiff makes only four allegations as to Hudson: that (i) in December 2015, she corrected his admittedly "incorrect[] us[e] [of] the word 'I' instead of 'me'" in an email, ¶ 107; (ii) she had "virtually no communications" with him after "they stopped working together at the end of 2015/beginning of 2016," ¶ 108; (iii) after his Capital Markets rotation ended in March 2016, Hudson created reviews, which were "later submitted to the EEOC," that "did not fully or accurately capture" his work or "the real-time assessments" he received in 2015 and 2016, ¶¶ 105–107;[13] and (iv) in July 2016, she asked plaintiff "if he could recommend a Black restaurant that is in Harlem," ¶ 108.  These allegations are discrete acts outside the limitations period, are therefore time-barred, and cannot form the basis of a claim against Hudson.  **Part D**, *infra*.

Second, even if they were not time-barred, these allegations fall far short of stating

---

[13] The allegation that Hudson "submitted to the EEOC" false or "negative conclusions about plaintiff's work," ¶ 105, is proven false by the administrative record.  None of the defendants submitted documentation to the EEOC at any time.  *See, e.g.*, Ex. C (Firm's NYSDHR Br.).  Hudson also was not a party to the EEOC proceeding, and her name did not even appear in plaintiff's 2017 charge.  *E.g.*, Exs. A, B at 5.  Hudson, as a non-party, would have had no reason to "submit[]" any documentation to the EEOC, ¶ 105, and did not do so.  *See Royal Park*, 2016 WL 439020, at *1 (court "need not accept" "contradict[ed]" allegations as true).  The only remaining allegations as to Hudson are discrete acts that occurred prior to November 4, 2016 and are thus time-barred.  **Part D**, *infra*

17

a discrimination claim against Hudson.  Plaintiff fails to allege that he "suffered an adverse employment action" attributable to Hudson or facts giving rise to an "inference" that Hudson "acted with discriminatory motivation." *LeeHim*, 2017 WL 5634128, at *3.  The fact that Hudson "had virtually no communications with Plaintiff" after they "stopped working together," ¶ 108, does not constitute an adverse employment action, particularly absent any plausible allegation that Hudson had a reason, much less a duty, to email plaintiff after he completed his rotation through her group and was "permanently assigned to [the] M&A group," of which Hudson was not a member, ¶ 106, 111. *See Ward*, 2016 WL 4371752, at *6 n.4.  Hudson's two performance reviews with "negative conclusions" that "did not," from plaintiff's perspective, "fully or accurately capture" his work, ¶ 105, also "do not constitute adverse employment actions," as plaintiff does not allege that the reviews "trigger[ed] other negative consequences in the terms and conditions of [his] employment." *Zoulas*, 400 F. Supp. 3d at 53 (quotation omitted) ("[Ne]gative performance evaluations do not, without more, constitute adverse employment actions.").  Nor does the fact that Hudson corrected an admitted grammatical mistake supply a basis for claims against her; a supervisor's mere "[c]riticism of an employee" is "not an adverse employment action."  *LeeHim*, 2017 WL 5634128, at *4 (quotation omitted).

Plaintiff also fails to plead any facts to support an inference that Hudson "acted with discriminatory motivation." *LeeHim*, 2017 WL 5634128, at *9.  Plaintiff does not allege that Hudson's performance reviews, grammatical correction, or lack of communications with plaintiff after they "stopped working together," ¶ 108, was motivated by race.  *See Johnson*, 2015 WL 845723, at *5.  The only allegation relating to race in any way is plaintiff's claim that Hudson asked for a "recommend[ation] [for] a Black restaurant that is in Harlem."  ¶ 108.  Yet this allegation "incorporate[s] by reference" an email that completely refutes plaintiff's claim.

*Almazan*, 2015 WL 500176, at *4; *Baraliu*, 2009 WL 959578, at *4.  The exchange was as follows:[14]

> Hudson:      *Hi Kaloma, A client just asked me for a recommendation for a restaurant near the Apollo.  I remembered our ride up to the [Columbia Law School] dinner this spring and wondered if you have any ideas? thoughts? Thanks! Sophia*
>
> Plaintiff:      *Hi Sophia, Definitely.  A few suggestions:* <u>Red Rooster</u>*[;]* <u>Angel of Harlem</u>*[;]* <u>The Cecil</u>*[.][15]  Most of my friends would suggest Red Rooster (as a safe bet) but I've heard good things about the other restaurants.*
>
> Hudson:      *Awesome - thanks!*

This "document, not the allegations, control[s]." *Royal Park*, 2016 WL 439020, at *1.[16]  Hudson's exchange with plaintiff had nothing to do with race, and cannot support an inference of discrimination.[17]

Third, plaintiff's retaliation claims also fail, as plaintiff does not allege that Hudson had any "knowledge of [his] protected activity."  *Callahan* v. *Consol. Edison Co. N.Y., Inc.*, 187 F. Supp. 2d 132, 138 n.39 (S.D.N.Y. 2002).  Plaintiff's four allegations as to Hudson concern conduct in 2015 and 2016, during which time plaintiff allegedly "flagged" five instances of discrimination.  Two of these complaints were made to M&A "staffing coordinator[s]" about

---

[14] This email exchange is attached hereto as Ex. E.

[15] Plaintiff included hyperlinks to each restaurant.  Columbia Law School is located about 9 blocks from the Apollo and about 15 to 20 blocks from plaintiff's residence at the time.

[16] The Court may consider documents "plaintiff knew about and relied upon."  *SEC* v. *Rio Tinto plc*, 2019 WL 1244933, at *6 (S.D.N.Y. Mar. 18, 2019).  Plaintiff concedes he "knew about" the performance reviews he references in his Complaint; he received them as part of the Firm's NYSDHR brief.  Ex. C; ¶ 77 n. 4.  Plaintiff also "knew about" the above email; he sent and received it, and conceded in his January 20 Initial Disclosures that he has retained "[c]opies of relevant interoffice email communications."

[17] Notwithstanding that plaintiff's suggestions regarding this communication are entirely refuted by the incorporated email, the allegation is nothing other than a "non-actionable stray remark[]."  *Moore*, 2016 WL 825001, at *9.  Plaintiff does not allege that the purported remark "ar[ose] in a context at all related to" an employment decision, *id.*, or had any "causal nexus" to an adverse employment action, *Williams* v. *Victoria's Secret*, 2017 WL 1162908, at *8–9 (S.D.N.Y. Mar. 28, 2017).  This "stray remark[]" thus cannot "raise an inference of discriminatory motivation."  *Id.*

plaintiff's work in the M&A department, ¶¶ 131, 144, of which Hudson was not a member.

Plaintiff alleges that he "flagged" three other issues during meetings and communications with

Reid, the Firm's "Director," the Diversity Committee, and the Black Attorney Group, ¶¶ 52–53,

64, 70, but does not allege that Hudson was involved in, or aware of, these meetings or

communications.  Absent any allegations that Hudson was aware of any purportedly protected

activity, plaintiff also fails to allege a "causal connection between [his] complaints and any adverse

employment action" attributable to Hudson.  *Callahan*, 187 F. Supp. 2d at 138 n.39 (dismissing

NYCHRL retaliation claim).  Plaintiff's retaliation claims as to Hudson thus fail, and she should

be dismissed from the case.

5.     The State and City Claims Against<br><u>Birnbaum and Wolfe Should Be Dismissed</u>

The remaining claims against Birnbaum and Wolfe likewise should be dismissed.[18]

The principal allegation against them—aside from a claim that they did not email plaintiff in

specific periods, addressed below—is that, beginning around "September 2016," as the "two most

junior M&A partners," ¶¶ 111, 151, they "served as M&A staffing coordinators," ¶ 111, with

"exclusive and primary control," along with Bick, over plaintiff's staffing, ¶ 157, but "did not staff

plaintiff on *any* matters in 2016," ¶ 152 (emphasis in original).  Plaintiff contends that "there [wa]s

a stark difference between the months" in which these partners "staff[ed] plaintiff" and those in

which a non-lawyer staffing coordinator did so.  ¶ 157.

For reasons plaintiff himself identifies, this allegation is both inconsistent with

plaintiff's other allegations and otherwise insufficient to sustain a claim against Birnbaum or

Wolfe.  As an initial matter, plaintiff concedes that Birnbaum and Wolfe "did not have complete,

---

[18] Claims against Birnbaum and Wolfe are time-barred to the extent based on pre-November 2016 "discrete acts."

independent control over staffing," and that "because [of this, they] . . . were often in constant communication with Mr. Bick *and other, more senior M&A partners* about how third-year and more senior associates should be staffed to meet Firm needs (and policies) and partners' preferences." ¶ 111 (emphasis added).  Staffing decisions, as plaintiff concedes, are made by networks of individuals; Birnbaum and Wolfe were not decision makers with respect to his staffing. ¶¶ 111, 151–52.

Irrespective of whether Birnbaum and Wolfe "staff[ed] Plaintiff on . . . matters in 2016," ¶ 152, the fact is that plaintiff *was* staffed on matters throughout 2016.  *See, e.g.*, ¶ 156. This fact—and plaintiff's concession that he billed more hours in the three months *after* Birnbaum and Wolfe assumed a role with respect to his staffing (416.7 hours) than in the three months prior (406.6 hours), ¶ 156—rebuts any inference of discrimination attributable to Birnbaum and Wolfe's assumption of responsibilities in September 2016.  Indeed, in no month in all of 2016 did plaintiff bill as many hours—234.7—as he did in September.  *See* ¶ 156.

It is well established that a plaintiff's "[s]ubjective personal disappointment" "with the work assigned" to him does not constitute an "adverse employment action," nor does a plaintiff's "dissatisfaction" with work "not assigned" to him by supervisors.  *Johnson*, 2015 WL 845723, at *5.  But even if plaintiff had alleged that Birnbaum and Wolfe's own actions—as opposed to his own performance or actions of others—had resulted in a "negative change in the terms and conditions of [his] employment," *Henry*, 18 F. Supp. 3d at 405 (quotation omitted), the Complaint lacks any allegation of animus.  Nothing at all indicates that it was race, as opposed to plaintiff's history of poor performance, that motivated Birnbaum and Wolfe.  *Rogers* v. *Fashion Inst. of Tech.*, 2016 WL 889590, at *6 (S.D.N.Y. Feb. 26, 2016) (being assigned only three hours of work per week did "not plausibly support even a minimal inference of discriminatory motive").

Allegations in equipoise do not cross the plausibility threshold. *Iqbal*, 556 U.S. at 678.

       Likewise, neither plaintiff's alleged observation that "other members of his practice group remained continuously staffed," nor his contention that, after April 2016, "*Davis Polk* did not staff [him] on deals at the same rate as his White peers," is sufficient to sustain a direct claim against *individual* defendants Birnbaum and Wolfe.  ¶ 150, 183 (emphasis added).[19]  Neither allegation is directed at them.  Plaintiff does not allege that Birnbaum and Wolfe staffed the "other members," ¶ 183, or that the alleged "peers" were in M&A.  ¶ 150.  The Complaint has not raised "sufficient factual allegations . . . plausibly demonstrating that" those he contends were comparators were in fact "similarly situated" to him.  *Rogers*, 2016 WL 889590, at *6.  He has put forth no "details," as he must, with respect to the "peers'" "responsibilities, qualifications or quality of their work."  *Daniels* v. *City of N.Y.*, 2019 WL 251511, at *4–5 (S.D.N.Y. Jan. 17, 2019) (dismissing "Complaint [that] lacks sufficient information to conclude that [plaintiff was] treated less well than [his] alleged comparators because of race").  There are no plausible allegations that Birnbaum or Wolfe treated plaintiff less well than similarly-situated others, much less that they did so because of his race.

       The allegation that Birnbaum and Wolfe did not send plaintiff any emails, "notwithstanding group emails to practice groups and other listservs" for periods of time, ¶¶ 154–55, fails for the reasons set forth above.  There is no allegation that they had any reason or duty to contact plaintiff by the means he identifies—individual emails—as opposed to those he ignores (his monthly "interactions" with Birnbaum, for example, ¶ 152, or the "group emails" he chooses

---

[19] To be clear, although not germane at this procedural juncture, at no time did plaintiff's or others' race result in a decision not to staff them on deals.

not to count, ¶¶ 154–55).[20]  In any event, allegations that partners ignored or isolated plaintiff by not emailing him are insufficient to plead an adverse employment action.  *Ward*, 2016 WL 4371752, at *6 n.4; *Danieu*, 2011 WL 1259839, at *9.  Finally, because there is no allegation of protected activity "known to" Birnbaum and Wolfe, nor of any adverse action in response thereto, the retaliation claims against them fail.  Birnbaum and Wolfe should be dismissed from the case.

6.    None of the Generalized Allegations Against "Defendants" Save the Deficient Pleadings with Respect to the Other Individual Defendants

Plaintiff's blanket allegations—without specification—against all "Defendants," "Davis Polk," or "the partners," are improperly pleaded as to the Other Individual Defendants and cannot save plaintiff's claims against them.  *See, e.g.*, ¶¶ 109 ("Defendants found ways to keep Plaintiff off deals"), 153 ("Defendants' discriminatory actions . . . were intentional and blatant"), 1, 76–77, 105–06, 148–50, 159, 182–83, 185, 188–90, 195–97, 218, 226–27, 239–47, 251.

The federal pleading standard "requires, at a minimum, that a complaint give *each defendant* fair notice of what the plaintiff's claim is and the ground upon which it rests."  *Atuahene* v. *City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (emphasis added).  This Circuit affirms decisions dismissing race discrimination claims where, as here, a plaintiff "fail[s] to differentiate among the defendants, alleging instead violations by 'the defendants.'"  *Id.*  Allegations that "lump[] all the defendants together" do not "satisfy this minimum standard"; the presence of generalized allegations here thus cannot save otherwise deficient pleadings with respect to the Other Individual Defendants.  *Id.*  Because the allegations that identify these individuals fail to state claims against them, the Other Individual Defendants should be dismissed from the case.

---

[20] This is particularly so with respect to the period prior to September 2016 (when plaintiff was not a third-year associate, ¶¶ 111, 147, and when Birnbaum and Wolfe thus played no role in his staffing), and as to Birnbaum, the period prior to July 1, 2016 (when Birnbaum was not yet a partner and bears no liability under the NYSHRL).

**D.      All Claims Should Be Dismissed to the Extent That They Are Based Upon Discrete Discriminatory Acts Outside the Statute of Limitations Period**

Plaintiff's Title VII claims against the Firm should be dismissed to the extent that they are based upon discrete acts prior to October 7, 2016, 300 days before plaintiff commenced his agency action. *Cetina* v. *Longworth*, 583 F. App'x 1, at *2 (2d Cir. 2014) (citing 42 U.S.C. § 2000e).[21]   Plaintiff's state and city claims should be dismissed as to all individual defendants remaining in the case following this motion to the extent that they are based upon discrete acts prior to November 4, 2016, because plaintiff named no individual defendants in his administrative charge, and claims against them were not tolled. *Kassner* v. *2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (three-year statute of limitations for NYS- and NYCHRL claims); *Kimball* v. *Vill. of Painted Post*, 737 F. App'x 564, 572–73 (2d Cir. 2018) (no tolling of claims against individual defendant not named); *Romero* v. *Howard Johnson Plaza Hotel*, 1999 WL 777915, at *8 (S.D.N.Y. Sept. 29, 1999).

1.      All Title VII Claims Should Be Dismissed as Time-Barred to the Extent That They Are Based Upon Discrete Acts Prior to October 7, 2016

Plaintiff's Title VII claims against the Firm should be dismissed to the extent that they are based upon discrete acts prior to October 7, 2016.  Under federal, state, and city law, timeliness is clocked from the date of the alleged "practice," meaning the "'discrete act or single occurrence.'" *Vega*, 801 F.3d at 79 (quotation omitted).

Courts routinely dismiss with prejudice, as time-barred, those portions of Title VII claims based on events outside the limitations period.  *See, e.g.*, *Lovell* v. *Staten*, 2019 WL 4601665, at *4 (S.D.N.Y. Sept. 30, 2019).

---

[21] The 300-day clock counts from August 3, 2017; the limitations period was tolled as to the Firm pending agency process.  *Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015); Ex. A.

On a Rule 12 motion, courts decline to consider time-barred events in determining whether a plaintiff has met his pleading burden.  For example, in *Zoulas*, this Court did "not consider" "alleged acts [that] occurred more than 300 days before [plaintiff] filed her [NY]SDHR complaint"—for example, the claim that defendants "excluded her from participating in" a school program—in determining whether plaintiff had plausibly alleged discrimination or retaliation, and permitted claims to proceed only to the extent based upon alleged acts within 300 days of the date on which plaintiff had filed her administrative complaint.  400 F. Supp. 3d at 50, 53–56.[22]

In this action, plaintiff's claims are based on allegations of serial, but discrete, acts, not of a single continuing violation.[23]  Plaintiff's Title VII claims thus should be permitted to proceed only to the extent that they are based upon acts within the 300-day limitations period. *Zoulas*, 400 F. Supp. 3d at 50.  Courts in this Circuit have found that the types of allegations asserted here are "discrete acts" subject to the time bar.  For example:

- Receipt of "**less desirable work assignments**" is a discrete act.  *Flores* v. *N.Y.C. Human Res. Admin.*, 2011 WL 3611340, at *2, 6 (S.D.N.Y. Aug. 16, 2011).  Plaintiff's pre-fall 2016 allegations that he was staffed on, for example, "non-deal" and "research" matters are thus time-barred.  *See, e.g.*, ¶¶ 117–18, 120–23, 125, 130, 142–46.

---

[22] *See also Lovell*, 2019 WL 4601665, at *4 (dismissing portions of discrimination and retaliation claims "based on events in 2008 and 2013," including a claim that a supervisor called a plaintiff "insubordinate").

[23] Applications of the continuing violations exception to the time bar are "heavily disfavored in the Second Circuit," and even when "discrete unlawful acts . . . are part of a serial violation," the continuing violations exception "does not apply" to exempt them from the time bar.  *Henry-Offor* v. *City Univ. of N.Y.*, 2012 WL 2317540, at *3 (S.D.N.Y. June 15, 2012) (courts are "loath to apply" continuing violations exception); *Fleurentin* v. *N.Y.C. Health and Hosp. Corp.*, 2020 WL 42841, at *3 (E.D.N.Y. Jan. 3, 2020) (dismissing claims).  This is especially true with respect to plaintiff's allegations against the individual defendants, which by their nature are discrete, individualized acts not tethered to firm-wide policy or acts of others.  *See, e.g.*, *Diaz* v. *City Univ. of N.Y.*, 2014 WL 10417871, at *11 (S.D.N.Y. Nov. 10, 2014) ("long history of discrete unsatisfactory dealings with numerous individual defendants," absent "any facts that would plausibly show the existence of a policy that linked" time-barred and non-time-barred allegations, not a "continuing violation"), *report and recommendation adopted in relevant part*, 2015 WL 5577905 (S.D.N.Y. Sept. 22, 2015); *Donlon* v. *Bd. of Educ. of Greece Cent. Sch. Dist.*, 2007 WL 108470, at *4 (W.D.N.Y. Jan. 12, 2007) ("separate evaluations" over "four-year period" by "distinct individuals" not a continuing violation).

- "**Discontinuance of a particular job assignment**" or "**reductions in responsibility**" are "paradigmatic examples" of "discrete act[s] that cannot form the basis of a continuing violation claim." *Roman-Malone* v. *City of N.Y.*, 2013 WL 3835117, at *3 (S.D.N.Y. July 25, 2013); *Henry-Offor*, 2012 WL 2317540, at *3.   Plaintiff's pre-fall 2016 allegations as to removal from assignments are time-barred. *See, e.g.*, ¶¶ 126–128, 131–33, 148–49.

- "**[N]egative performance reviews**" and "**unwarranted criticism**" are "discrete acts." *See Roman-Malone*, 2013 WL 3835117, at *2; *Zoulas*, 400 F. Supp. 3d at 50.   Plaintiff's pre-fall 2016 allegations as to reviews and criticisms are time-barred. *See, e.g.*, ¶¶ 77–81, 84–92, 105–06.

- "**Denial of preferred job assignments**" is "a prototypical example of a discrete act that is not subject to the continuing violations doctrine." *Sirisena* v. *City Univ. of N.Y.*, 2019 WL 1493220, at *5 (E.D.N.Y. Mar. 31, 2019); *Zoulas*, 400 F. Supp. 3d at 50.   Plaintiff's pre-fall 2016 allegations with respect to, for example, being "kept off deals" are time-barred. *See, e.g.*, ¶¶ 109, 121–35, 150.

- Denials of opportunities to "**attend meetings . . . which provided exposure which can help lead to promotion**" are discrete acts. *Flores*, 2011 WL 3611340, at *2, 6 (S.D.N.Y. Aug. 16, 2011).   Plaintiff's pre-fall 2016 allegations of such acts are time-barred. *See, e.g.*, ¶¶ 59–61.

- Acts of exclusion, "**ostracism and isolation**" are "barred as untimely to the extent they occurred prior to" the limitations date. *Flores*, 2011 WL 3611340, at *6; *Zoulas*, 400 F. Supp. 3d at 49.   Plaintiff's allegations that, for example, individuals would "walk by [him] in the hallways without . . . acknowledgment," ¶ 95, and that partners ignored his emails, ¶¶ 94–95, 124, 129, 136–41, or did not email him, **Part C**, *supra*, are discrete and time-barred.

- Other single pre-fall 2016 "discriminatory interactions" are by nature discrete acts and time-barred. *See, e.g.*, ¶¶ 52–58, 64–66, 82, 107–08.

Plaintiff's Title VII claims should be narrowed to exclude all discrete acts, including, without limitation, allegations consistent with those described above, occurring prior to October 7, 2016.

        2.       The NYSHRL and NYCHRL Claims Against All Individual
                    Defendants Should Be Dismissed as Time-Barred to the Extent
                    That They Are Based Upon Discrete Acts Prior to November 4, 2016

For similar reasons, plaintiff's state and city claims against all individual defendants—Reid, Bick, and the Other Individual Defendants—should be dismissed as time-barred to the extent that they are based upon discrete acts occurring prior to November 4, 2016.[24]

---

[24] Whether or not a plausible allegation of harassment might constitute a continuing violation, plaintiff has failed to allege even the bare elements of such a claim. **Part E**, *infra*.  And even if the NYCHRL invites a more lenient

As described at **Part C**, *supra*, the core allegations against Chudd, Brass, and Hudson are time-barred and not properly considered in determining whether plaintiff has met his burden at this stage. For example:

- **Chudd's** 2015 reviews are time-barred discrete acts.  ¶¶ 77–81.
- **Brass's** 2016 removal of plaintiff from a deal is a time-barred discrete act.  ¶¶ 126–28.
- **Hudson's** 2016 reviews and restaurant request are time-barred discrete acts.  ¶¶ 105–09.

Allegations against Reid, Bick, Birnbaum, and Wolfe, and generalized allegations against all individual defendants cast as allegations against all "Defendants," "Davis Polk," or "the partners," are subject to the same time bar.  **Part C**, *supra*; *Flores*, 2011 WL 3611340, at *2, 6 ("undated and unspecified incidents of disparate treatment" outside limitations period time-barred); *see, e.g.*, ¶¶ 82 (as to Reid); ¶¶ 84–95, 120, 124, 129 (as to Bick).

### E.    Plaintiff's State Law Harassment Claim Should Be Dismissed Because Plaintiff Has Failed Adequately To Allege Harassment

Plaintiff's harassment claim under the NYSHRL should be dismissed as inadequately pleaded because plaintiff has failed to identify the basis for his claim.  Plaintiff offers no support for his allegation of harassment.  The word "harassment" appears in only one paragraph outside the Counts, ¶ 173, and the only "harassment" plaintiff alleges is that certain unnamed partners "walked by Plaintiff while knowing that they were not going to staff Plaintiff on any assignments," knowing that it would be "virtually impossible for an associate to go throughout his or her day without encountering multiple lawyers and colleagues who would ask" what he was working on, ¶ 172, and knowing that interactions like "constantly being asked what type of legal matters one is working on would become a form of harassment and humiliation."  ¶ 173.

---

analysis, plaintiff has not alleged that, as the NYCHRL requires, any of the individual defendants subjected him to a "pattern of discriminatory conduct" that began before and extended beyond November 4, 2016.  *Dimitracopoulos* v. *City of N.Y.*, 26 F. Supp. 3d 200, 212 (E.D.N.Y. June 4, 2014) ("[l]ater evaluations . . . by separate individuals [were] not part of the same continuing pattern of discriminatory conduct by" a principal).

These are not plausible allegations that plaintiff was subjected to "inferior terms, conditions or privileges of employment" *because of* his race, either objectively or subjectively. N.Y. Exec. L. § 296(1)(h)*, as amended*; *Weir*, 2018 WL 1033238, at *8; *cf. LeeHim*, 2017 WL 5634128, at *4–6. The harassment claim, in addition to being unsupported, suffers from multiple deficiencies. For one, plaintiff does not allege that there was in fact questioning of him. Moreover, if questions by "multiple lawyers and colleagues" about workload were, as plaintiff concedes, a routine part of Firm life, ¶ 173, there is not and cannot be support for the notion that an "objective" or "reasonable person" would perceive the questions as "hostile or abusive," or perceive the questions to constitute, standing alone, a "change in the conditions" of plaintiff's employment. *Weir*, 2018 WL 1033238, at *8. (In this way, the allegation that a purported drop in plaintiff's hours constituted a "change in the conditions" of plaintiff's employment must be considered separately from the allegation that being asked *questions* about his staffing constituted a "change in the conditions" of his employment.) Mere allegations that a workplace has become subjectively "unpleasant" for an employee whose services are no longer in high demand do not support harassment claims. *Moore*, 2016 WL 825001, at *1, 11. The harassment claim is implausibly pleaded and should be dismissed.

## CONCLUSION

For the reasons set forth above, defendants respectfully request that the Court dismiss (i) the Title VII claims against all individual defendants with prejudice; (ii) all claims against Chudd, Brass, Hudson, Birnbaum, and Wolfe; (iii) all claims to the extent that they are based upon time-barred discrete acts, with prejudice; and (iv) the harassment claim under New York state law.

Dated:       February 10, 2020
              New York, New York

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: /s/ Bruce Birenboim
    Bruce Birenboim
    Jeh C. Johnson
    Susanna M. Buergel
    Marissa C.M. Doran

1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
bbirenboim@paulweiss.com
jjohnson@paulweiss.com
sbuergel@paulweiss.com
mdoran@paulweiss.com
*Attorneys for Defendants*