**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KALOMA CARDWELL,

*Plaintiff*,

v.

DAVIS POLK & WARDWELL LLP,
THOMAS REID, JOHN BICK, WILLIAM
CHUDD, SOPHIA HUDSON, HAROLD
BIRNBAUM, DANIEL BRASS, BRIAN
WOLFE, and JOHN BUTLER,

*Defendants*.

19 Civ. 10256 (GHW)

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019–6064
Tel.: (212) 373–3000
Fax: (212) 757–3990

*Attorneys for Defendants*

Dated: April 30, 2020

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ................................................................................................. 3

    A.    The Parties .............................................................................................. 3

    B.    Plaintiff's Tenure at the Firm................................................................. 4

ARGUMENT ....................................................................................................................... 7

    A.    Applicable Law ...................................................................................... 7

    B.    All Claims Against the Additional Defendants Should Be Dismissed ................. 9

        1.    Plaintiff's Allegations Against the Additional Defendants Fail To Establish Any Adverse Employment Action (or Discriminatory Animus).................................................................................................. 14

        2.    The Remainder of Plaintiff's Allegations Against the Additional Defendants Do Not Establish Any Protected Activity Known to the Additional Defendants (or Retaliatory Animus) ................ 20

    C.    All Claims Against All Defendants Should Be Dismissed to the Extent Based Upon Discrete Acts Barred by the Statute of Limitations......................... 24

    D.    Plaintiff's Hostile Work Environment and Harassment Claims Should Be Dismissed ........................................................... 28

    E.    Plaintiff's Section 1981 Aiding and Abetting Claims Should Be Dismissed ...................................................................... 32

CONCLUSION.................................................................................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Almazan* v. *Almazan*,
  2015 WL 500176 (S.D.N.Y. Feb. 4, 2015).........................................................................8, 19

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009)..........................................................................................................7, 18

*Atuahene* v. *City of Hartford*,
  10 F. App'x 33 (2d Cir. 2001) ................................................................................................10

*Baraliu* v. *Vinya Capital, L.P.*,
  2009 WL 959578 (S.D.N.Y. Mar. 31, 2009) ..........................................................................19

*Bell Atl. Corp.* v. *Twombly*,
  550 U.S. 544 (2007)..........................................................................................................7, 18

*Bliss* v. *MXK Rest. Corp.*,
  220 F. Supp. 3d 419 (S.D.N.Y. 2016)......................................................................................9

*Callahan* v. *Consol. Edison Co. N.Y., Inc.*,
  187 F. Supp. 2d 132 (S.D.N.Y. 2002)..............................................................................21, 22

*Cetina* v. *Longworth*,
  583 F. App'x 1 (2d Cir. 2014) ................................................................................................24

*Chung* v. *City Univ. of N.Y.*,
  605 F. App'x 20 (2d Cir. 2015) ..............................................................................................16

*Colliton* v. *Cravath, Swaine & Moore LLP*,
  2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008),
  *aff'd*, 356 F. App'x 535 (2d Cir. 2009)..............................................................................8, 15

*Cornwell* v. *Robinson*,
  23 F.3d 694 (2d Cir. 1994)......................................................................................................27

*Daniels* v. *City of N.Y.*,
  2019 WL 251511 (S.D.N.Y. Jan. 17, 2019) ..........................................................................18

*Danieu* v. *Teamsters Local 264*,
  2011 WL 1259839 (W.D.N.Y. Mar. 31, 2011).......................................................................15

*Davis-Molina* v. *Port Auth. of N.Y. & N.J.*,
  2011 WL 4000997 (S.D.N.Y. Aug. 19, 2011)........................................................................30

*Diaz* v. *City Univ. of N.Y.*,
  2014 WL 10417871 (S.D.N.Y. Nov. 10, 2014)......................................................................25

*Donlon* v. *Bd. of Educ. of Greece Cent. Sch. Dist.*,
2007 WL 108470 (W.D.N.Y. Jan. 12, 2007) .......................................................25

*Dozier* v. *Deutsche Bank Trust Co. Americas*,
2011 WL 4058100 (S.D.N.Y. Sept. 1, 2011) ..........................................................8

*Erasmus* v. *Deutsche Bank Am. Holding Corp.*,
2015 WL 7736554 (S.D.N.Y. Nov. 30, 2015) .......................................................11

*Falcon* v. *City Univ. of N.Y.*,
263 F. Supp. 3d 416 (E.D.N.Y. 2017) ....................................................................8

*Fincher* v. *Depository Tr. & Clearing Corp.*,
604 F.3d 712 (2d Cir. 2010).................................................................................30

*Fleming* v. *MaxMara USA, Inc.*,
371 F. App'x 115 (2d Cir. 2010) ..........................................................................30

*Fleming* v. *Verizon N.Y., Inc.*,
419 F. Supp. 2d 455 (S.D.N.Y. 2005)...................................................................28

*Fleurentin* v. *N.Y.C. Health and Hosp. Corp.*,
2020 WL 42841 (E.D.N.Y. Jan. 3, 2020) .............................................................25

*Flores* v. *N.Y.C. Human Res. Admin.*,
2011 WL 3611340 (S.D.N.Y. Aug. 16, 2011) ...........................................25, 26, 28

*Fried* v. *LVI Servs., Inc.*,
2011 WL 2119748 (S.D.N.Y. May 23, 2011) ..................................................10, 16

*Geffner* v. *Quanta Servs., Inc.*,
2018 WL 6807388 (S.D.N.Y. Dec. 27, 2018) .......................................................10

*Green* v. *Jacob Co. Watches, Inc.*,
248 F. Supp. 3d 458 (S.D.N.Y. 2017)...................................................................28

*Haggood* v. *Rubin & Rothman, LLC*,
2014 WL 6473527 (E.D.N.Y. Nov. 17, 2014) ...........................................13, 21, 23

*Harris* v. *NYU Langone Med. Ctr.*,
2013 WL 3487032 (S.D.N.Y. July 9, 2013), *rep't & rec. adopted*,
2013 WL 5425336, at *4 (S.D.N.Y. Sept. 27, 2013) .............................................31

*Henry* v. *N.Y.C. Health & Hosp. Corp.*,
18 F. Supp. 3d 396 (S.D.N.Y. 2014).......................................................... *passim*

*Henry-Offor* v. *City Univ. of N.Y.*,
2012 WL 2317540 (S.D.N.Y. June 15, 2012) ..................................................25, 26

*Hughes* v. *Xerox Corp.*,
    37 F. Supp. 3d 629 (W.D.N.Y. 2014) ...................................................................29

*Johnson* v. *Long Island Univ.*,
    58 F. Supp. 3d 211 (E.D.N.Y. 2014) ...................................................................29

*Johnson* v. *Morrison & Foerster LLP*,
    2015 WL 845723 (S.D.N.Y. Feb. 26, 2015) .......................................................17

*Kassner* v. *2nd Ave. Deli., Inc.*,
    496 F.3d 229 (2d Cir. 2007) ...............................................................................27

*Kimball* v. *Vill. of Painted Post*,
    737 F. App'x 564 (2d Cir. 2018) ........................................................................27

*LeeHim* v. *N.Y.C. Dep't of Educ.*,
    2017 WL 5634128 (S.D.N.Y. Nov. 21, 2017) ............................................. *passim*

*Littlejohn* v. *City of N.Y.*,
    795 F.3d 297 (2d Cir. 2015)....................................................................28, 29, 30

*Long* v. *Marubeni Am. Corp.*,
    2006 WL 547555 (S.D.N.Y. Mar. 6, 2006) ........................................................32

*Lovell* v. *Staten*,
    2019 WL 4601665 (S.D.N.Y. Sept. 23, 2019).............................................24, 25

*Lue* v. *JPMorgan Chase & Co.*,
    2018 WL 1583295 (S.D.N.Y. Mar. 27, 2018) ....................................................32

*McPhee* v. *N.Y.C. Health and Hosps. Corp.*,
    2008 WL 3930089 (S.D.N.Y. Aug. 25, 2008) ....................................................26

*Mira* v. *Argus Media*,
    2017 WL 1184302 (S.D.N.Y. Mar. 29, 2017) ...............................................16, 17

*Mirasol* v. *Gutierrez*,
    2006 WL 871028 (S.D.N.Y. Apr. 5, 2006)..........................................................25

*Moore* v. *Verizon*,
    2016 WL 825001 (S.D.N.Y. Feb. 5, 2016).............................................20, 30, 31

*Parekh* v. *Swissport Cargo Serv., Inc.*,
    2009 WL 290465 (E.D.N.Y. Feb. 5, 2009)..........................................................29

*Presbyt. Healthcare Servs.* v. *Goldman Sachs and Co.*,
    2017 WL 1048088 (S.D.N.Y. Mar. 17, 2017) .................................................7, 8

*Robles* v. *Goddard Riverside Community Ctr.*,
    2009 WL 1704627 (S.D.N.Y. June 17, 2009) .....................................................24

*Rogers* v. *Fashion Inst. of Tech.*,
   2016 WL 889590 (S.D.N.Y. Feb. 26, 2016)................................................*passim*

*Roman-Malone* v. *City of N.Y.*,
   2013 WL 3835117 (S.D.N.Y. July 25, 2013) ...............................................25, 26

*Royal Park Invs. SA/NV* v. *Deutsche Bank Nat'l Trust Co.*,
   2016 WL 439020 (S.D.N.Y. Feb. 3, 2016)........................................8, 20, 22, 27

*SEC* v. *Rio Tinto plc*,
   2019 WL 1244933 (S.D.N.Y. Mar. 18, 2019) .......................................................20

*Schoolcraft* v. *City of N.Y.*,
   81 F. Supp. 3d 295 (S.D.N.Y. 2015)....................................................................27

*Sirisena* v. *City Univ. of N.Y.*,
   2019 WL 1493220 (E.D.N.Y. Mar. 31, 2019) ......................................................25

*Sosa* v. *Medstaff, Inc.*,
   2013 WL 6569913 (S.D.N.Y. Dec. 13, 2013) ......................................9, 15, 21, 23

*TufAmerica* v. *Diamond*,
   968 F. Supp. 2d 588 (S.D.N.Y. 2013)....................................................................8

*Vega* v. *Hempstead Union Free Sch. Dist.*,
   801 F.3d 72 (2d Cir. 2015).................................................................................24

*Vera* v. *Donado Law Firm*,
   2019 WL 3306117 (S.D.N.Y. June 19, 2019) ................................................10, 16

*Ward* v. *Shaddock*,
   2016 WL 4371752 (S.D.N.Y. Aug. 11, 2016) ......................................................15

*Weir* v. *Montefiore Med. Ctr.*,
   2018 WL 1033238 (S.D.N.Y. Feb. 22, 2018) .................................................30, 31

*White* v. *Bridge Inc.*,
   2019 WL 4805896 (S.D.N.Y. Sept. 30, 2019) ......................................................31

*Williams* v. *Victoria's Secret*,
   2017 WL 1162908 (S.D.N.Y. Mar. 28, 2017) ......................................................20

*Woods* v. *Enlarged City Sch. Dist. of Newburgh*,
   473 F. Supp. 2d 498 (S.D.N.Y. 2007),
   *aff'd*, 288 F. App'x 757 (2d Cir. 2008)................................................................31

*Yan* v. *Ziba Mode Inc.*,
   2016 WL 1276456 (S.D.N.Y. Mar. 29, 2016) .................................................13, 20

*Zoulas* v. *N.Y.C. Dep't of Educ.*,
    400 F. Supp. 3d 25 (S.D.N.Y. 2019)............................................................. *passim*

**STATUTES**

42 U.S.C. § 1981 ............................................................................................. *passim*

42 U.S.C. § 2000e ...................................................................................................5

N.Y. Exec. L. § 296 .....................................................................................5, 30, 31

N.Y.C. Admin. Code § 8–107.................................................................................5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12 ...................................................................................1, 7, 22, 24

Davis Polk & Wardwell LLP ("Davis Polk" or the "Firm"), Thomas Reid and John Bick (the "Management Committee Defendants"), and William Chudd, Sophia Hudson, Harold Birnbaum, Daniel Brass, Brian Wolfe, and John Butler (the "Additional Defendants," and, together with Davis Polk and the Management Committee Defendants, "defendants") respectfully submit this memorandum of law in support of their motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss in part the amended complaint filed on March 2, 2020 by plaintiff, Kaloma Cardwell (ECF 37, the "Amended Complaint").

For the reasons set forth below, defendants seek dismissal of: (i) all claims against the Additional Defendants, (ii) all claims to the extent that they are barred by the relevant statutes of limitations, (iii) the hostile work environment and harassment claims, and (iv) the aiding and abetting claims under 42 U.S.C. § 1981 ("Section 1981").

## PRELIMINARY STATEMENT

Davis Polk hired plaintiff as a full-time corporate associate in 2014. As with all associates, the Firm and its partners invested enormous time and effort to train plaintiff and develop his legal skills. During the course of his first three years at the Firm, however, senior lawyers in three Firm practice groups observed similar, and increasingly troubling, problems with his performance. Plaintiff neglected tasks assigned to him; failed to complete required work and meet deadlines; disappeared for protracted periods when tasks needed to be completed; failed to recognize basic points; reached incorrect conclusions; and advanced positions that would, if carried out, have been contrary to client interests. Senior lawyers on plaintiff's matters repeatedly were required to do, or redo, his work, or to find replacement staffing to ensure that deadlines were met and client interests not compromised.

By late 2017, despite repeated efforts to help him, his performance problems persisted and worsened, and it became clear that plaintiff—by then a fourth-year associate in the

M&A group—was not performing at the level required of a Davis Polk associate. In early 2018, plaintiff was told that he was not meeting the standards of an associate at his level, that his repeated poor performance made it increasingly challenging to assign him to matters, and that he should seek alternative employment. The Firm made clear—consistent with Firm practice when non-performing lawyers are asked to look for alternative employment—that plaintiff should take up to three months, at full salary, to find another job, availing himself of Firm resources and job placement services. At plaintiff's request, the Firm extended this period to six months. Plaintiff's employment ended in August 2018.

In this lawsuit, plaintiff asserts that his race and his alleged airing of issues of racial bias, not his poor performance and inability to progress to meet the high standards of a Davis Polk associate, caused the Firm to terminate his employment. The facts tell an entirely different story. The contemporaneous documentary evidence—performance evaluations, email records, work product—will show uniformly that plaintiff's deficient performance was the only reason he was asked to seek other employment.[1]

At this juncture and notwithstanding the meritlessness of this action in all respects, the applicable pleading standards compel dismissal of plaintiff's claims against the Additional Defendants in their entirety as a matter of law. As with his original complaint, there are no plausible allegations of unlawful acts or discriminatory animus on the part of any of the Additional

---

[1] On this motion, consistent with the Court's obligation to accept well-pleaded facts as true, defendants address only the pleading deficiencies in plaintiff's Amended Complaint, notwithstanding that the evidence will show that *all* of plaintiff's claims against *all* defendants are factually false, legally meritless, and should be dismissed. In particular, defendants are not moving to dismiss all claims against the Firm and the Management Committee Defendants as a legal pleading matter, but will demonstrate at the appropriate juncture that all defendants at all times acted lawfully, fully supported plaintiff, communicated regularly with him, and never engaged in any discrimination, harassment, retaliation, or created a hostile work environment. Defendants will demonstrate at the appropriate juncture that the Management Committee Defendants acted at all times as leaders of the Firm to support fully an associate facing significant performance problems. The facts will show unequivocally that none of the Firm, the Management Committee Defendants, or the Additional Defendants treated plaintiff less favorably because of his race or because of his purported raising of any concerns related to race.

Defendants, and thus the claims against them should now be dismissed.

The Amended Complaint is also infected with several additional core deficiencies. First, much of the complaint focuses on discrete acts far in the past for which the statute of limitations has long since expired. All of plaintiff's claims should be dismissed to the extent that they are based upon such time-barred acts. Second, plaintiff's Title VII claim for hostile work environment should be dismissed for failure to exhaust administrative remedies. Third, plaintiff's Title VII and Section 1981 hostile work environment claims should be dismissed for failure to allege the type of conduct required under the applicable legal standard ("severe and pervasive" "discrimination, intimidation, ridicule, and insult"); the harassment claim likewise fails under state law. And plaintiff's Section 1981 aiding-and-abetting claims should be dismissed because there is no Section 1981 aiding-and-abetting liability as a matter of law.

## STATEMENT OF FACTS

### A.     The Parties

Plaintiff was employed by the Firm as a summer associate in 2013 and as an associate from September 2014 to August 2018. ¶¶ 4, 18, 46–47.[2]  As a junior associate in the Corporate Department, plaintiff rotated through the Credit, Capital Markets, and Mergers & Acquisitions ("M&A") groups; from April 2016 forward, he worked in M&A. ¶ 4.

Davis Polk is a global law firm registered as a limited liability partnership under the laws of the State of New York, with its principal place of business at 450 Lexington Avenue, New York, New York 10017. ¶ 6.

The individual defendants were partners in the Corporate Department during some

---

[2]     Unless noted, citations to "¶" refer to the Amended Complaint, ECF 37.  Citations to "Orig. Compl." are to ECF 1.  Citations to "Ex." refer to the exhibits to the declaration of Susanna Buergel, dated April 30, 2020.

or all of plaintiff's tenure at the Firm. ¶¶ 7–14.[3] Reid and Bick were members of the Firm's Management Committee; Reid was the Managing Partner, and Bick the head of the Corporate Department. ¶¶ 7, 8. The Additional Defendants were lawyers in the Firm's Corporate Department, but had no management responsibilities during the relevant period. ¶¶ 9–14. Hudson was a partner in the Capital Markets group, through which plaintiff rotated from October 2015 to March 2016. ¶¶ 9, 120–21. The remaining Additional Defendants were members of the M&A group, to which Plaintiff was "permanently assigned" in April 2016. ¶¶ 126, 168. Brass, an associate for much of the relevant period, became an M&A partner in 2017. ¶¶ 12, 279. Birnbaum and Wolfe, also associates when plaintiff began at the Firm, became M&A partners in 2016 and 2015, respectively, and served at times as junior M&A staffing coordinators. ¶¶ 11, 13. Chudd was an M&A partner assigned to deliver an annual review to plaintiff in December 2015. ¶¶ 10, 88. Butler was an M&A partner assigned with Bick in 2017 as one of plaintiff's career advisors. ¶¶ 14, 210.

B.  **Plaintiff's Tenure at the Firm**

The gravamen of plaintiff's Amended Complaint is that, while he was an associate at the Firm, (i) his "professional development and opportunities" were limited, (ii) he was "depriv[ed] . . . [of] all billable work" for four months, and (iii) he was "retaliated against"—either because of his race or because he raised concerns related to race, culminating in his dismissal from the Firm. ¶¶ 1, 2. Plaintiff does not dispute that his reviews criticized his performance, but asserts, without support, that the Firm "chang[ed] [its] conclusions" and "falsif[ied his] performance reviews" by "retroactively creat[ing]" them, in order to submit them or "conclusions" about them to the New York State Division of Human Rights ("NYSDHR"). ¶¶ 1, 2, 84, 118.[4] Plaintiff

---

[3]  Wolfe, Birnbaum, and Brass became partners in 2015, 2016, and 2017, respectively. ¶¶ 11–13.

[4]  As described at note 18, no reviews were created retroactively; plaintiff erroneously refers to a *print* date.

contends that the Firm terminated him not because of his performance but because he raised issues concerning race.

Plaintiff first brought his claims against the Firm in an administrative action filed with the NYSDHR and the EEOC in August 2017, while he was an associate. Exs. A, B. Plaintiff did not assert claims against any individuals. The NYSDHR made no finding against the Firm and ultimately dismissed plaintiff's claims, upon the filing of plaintiff's federal lawsuit, for "Administrative Convenience." ¶¶ 16, 84 n.6. Plaintiff filed this suit on November 4, 2019, naming seven individual defendants who were not named—and in three instances not even mentioned—in his administrative charge. ECF 1; Ex. B (not mentioning Chudd, Hudson, or Wolfe in full text). On March 2, 2020, in response to defendants' original motion to dismiss, plaintiff filed an Amended Complaint, adding an eighth individual defendant (Butler, after the Court-ordered deadline to add additional defendants), a new statute (Section 1981), nine new counts, 42 additional pages, and 94 new paragraphs. ECF 1, 37.[5]

Plaintiff asserts a litany of claims against defendants based on (i) a series of allegations that predate the fall of 2016 and thus are time-barred as to all state and city claims and the Title VII claims against the Firm, and (ii) other allegations beginning in the fall of 2016. **Part C**, *infra*.

With respect to the pre-fall 2016 period, plaintiff claims that he was subjected to certain purportedly "discriminatory interactions," that he "flagged" acts of discrimination, and that he was punished for doing so. *E.g.*, ¶¶ 54–64, 67–69. The bulk of plaintiff's claims against the Additional Defendants are based upon acts solely within this pre-fall 2016 period, including allegations that:

---

[5]    *Compare* ECF 1 ¶¶ 259–85 (bringing seven claims under 42 U.S.C. § 2000e ("Title VII"), the New York State Human Rights Law, N.Y. Exec. L. § 296, *as amended by* L. 2019, ch. 160 ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8–107 ("NYCHRL")) *with* ECF 37 ¶¶ 313–379.

- **Chudd** delivered plaintiff's annual performance review in December 2015, including "positive feedback" and "suggestions," and also wrote his own review, ¶¶ 84, 88;

- **Hudson** corrected an admitted grammatical error by plaintiff in December 2015, ¶ 121; had "virtually no communications" with plaintiff after they "stopped working together at the end of 2015/beginning of 2016," ¶ 124; rated plaintiff "behind" his class in her June and September 2016 performance reviews, ¶¶ 119–20; and in July 2016, supposedly asked plaintiff "if he could recommend a Black restaurant that is in Harlem," ¶ 124;

- Over the course of three hours in July 2016, plaintiff was asked to assist an M&A team, told by **Brass** (then an associate) that he could "stand down" because the team was "ok[ay] for the near future," ¶ 139, and later "replaced" with a white associate, ¶ 146; and

- **Birnbaum** and **Wolfe**, as the "two most junior M&A partners," "served as M&A staffing coordinators," ¶¶ 126, 169, but allegedly did not staff plaintiff on any matters in 2016, ¶¶ 169–70, and did not send plaintiff emails for several months "notwithstanding group emails to practice groups and other listservs." ¶¶ 174–75.

Plaintiff's remaining pre-fall 2016 claims generally assert that he was (i) staffed on undesirable assignments, *e.g.*, ¶¶ 131–36; (ii) given mixed or negative performance reviews, *e.g.*, ¶¶ 88–94, 102–06, 119; and (iii) ignored at times by certain individuals, *e.g.*, ¶¶ 109–10, 137, 142, 149–54.

With respect to the period beginning in the fall of 2016, plaintiff alleges that, beginning in or about October 2016, ¶¶ 164 n.21, 172, he experienced a decline in billable hours attributable to discrimination or retaliation (as opposed to declining demand for his work in light of performance issues). *See, e.g.*, ¶¶ 168, 176–77, 206. He concedes that multiple reviewers flagged concerns with his performance over multiple years, including a "pattern of missing deadlines" and drafting deficiencies, although he attempts to minimize the significance of these issues. *See, e.g.*, ¶¶ 98, 102–06, 119, 195 (2016); 282, 285 (2018). Plaintiff also contends that he raised race-related issues in the fall 2016 period and after, *see, e.g.*, ¶ 229 (noting a then-former client from which he believed the Firm should not accept future work), and ultimately that he was allegedly terminated for raising these issues, *e.g.*, ¶ 300.

Notably, there are virtually no allegations with respect to the Additional Defendants from the fall of 2016 and thereafter, other than a few stray allegations that:

- **Chudd** did not personally email plaintiff in 2017 "notwithstanding group emails to

practice groups and other listservs," ¶ 207 (there is no allegation that Chudd was working with plaintiff in this period);

- **Hudson** "submitted to the NYSDHR" reviews that "directly contradicted" her "real-time, written and verbal statements," ¶¶ 118–20;

- **Butler** "create[d] a roadblock" between plaintiff and other partners, ¶ 211, and did not communicate with plaintiff about the Career Advisor Program, notwithstanding his appointment as one of Cardwell's advisors, ¶¶ 214–16;

- In the 28-day period between January 11 and February 8, 2018, **Brass**—who had allegedly "replaced" Wolfe as a junior staffing partner "for the M&A group" in July 2017—did not personally staff plaintiff on any matters, ¶¶ 279, 295; and

- Plaintiff was told that certain M&A partners, including **Birnbaum, Wolfe,** and **Brass,** "collectively decided to terminate" him, ¶ 296.

## ARGUMENT

Plaintiff's claims should be dismissed in their entirety as to the Additional Defendants, and substantially narrowed as to all other defendants, in light of core deficiencies in the pleadings.

### A. Applicable Law

When considering a motion under Rule 12(b)(6), this Court must accept as true the well-pleaded factual allegations in the complaint, but need not accept legal conclusions, assertions unsupported by the facts, or unwarranted inferences. *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555–56 (2007). A mere "conclusory statement[]" that a plaintiff has satisfied an element of a claim "do[es] not suffice." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," not merely "conceivable." *Twombly*, 550 U.S. at 570. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678; where a complaint "pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

On a Rule 12 motion, the court may consider "documents incorporated by reference in the complaint," *Presbyt. Healthcare Servs.* v. *Goldman Sachs and Co.*, 2017 WL 1048088, at

*5 (S.D.N.Y. Mar. 17, 2017) (quotation omitted), and documents "integral to the complaint," meaning documents upon whose "terms and effect" the "complaint relies heavily." *Almazan* v. *Almazan*, 2015 WL 500176, at *4 (S.D.N.Y. Feb. 4, 2015) (quotation omitted). If a document so considered "'contradict[s] allegations in the complaint, the document, not the allegations, control[s], and the court need not accept the allegations in the complaint as true.'" *Royal Park Invs. SA/NV* v. *Deutsche Bank Nat'l Trust Co.*, 2016 WL 439020, at *1 (S.D.N.Y. Feb. 3, 2016) (quoting *TufAmerica, Inc*. v. *Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013)). Courts also may take judicial notice of NYSDHR filings. *Falcon* v. *City Univ. of N.Y.*, 263 F. Supp. 3d 416, 424 (E.D.N.Y. 2017) (considering state administrative records because plaintiff "ha[d] notice of those documents because she submitted them and received them").

Particularly relevant here, courts may not consider events occurring outside the relevant limitations periods in determining whether a plaintiff has satisfied the pleading standard. *Zoulas* v. *N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 49–50 (S.D.N.Y. 2019) (Woods, J.) (dismissing discrimination and retaliation claims to the extent based on "alleged acts occurr[ing]" outside the limitations period).

Finally, courts are not required to "accept as true" facts alleged in an amended pleading that "conflict with a plaintiff's prior allegations." *Dozier* v. *Deutsche Bank Trust Co. Americas*, 2011 WL 4058100, at *2 (S.D.N.Y. Sept. 1, 2011). Opportunistic amendments that are inconsistent with prior allegations cannot defeat an otherwise meritorious motion to dismiss. Thus, where a plaintiff "changes his statement of the facts in order to respond to [a] motion to dismiss . . . [and] directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true." *Colliton* v. *Cravath, Swaine & Moore LLP*, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) (internal quotation marks omitted), *aff'd*, 356 F. App'x 535 (2d Cir. 2009).

**B.     All Claims Against the Additional Defendants Should Be Dismissed**

All claims against the Additional Defendants should be dismissed because plaintiff has not plausibly alleged that any of them engaged in unlawful conduct.[6]

Discrimination.   To plead actionable discrimination under federal, state, or city law, plaintiff must allege—as to *each* defendant—"facts plausibly indicating" (i) "conduct amounting to an adverse employment action," which (ii) "occurred under circumstances evincing discriminatory animus." *Henry* v. *N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 409 (S.D.N.Y. 2014) (NYSHRL); *LeeHim* v. *N.Y.C. Dep't of Educ.*, 2017 WL 5634128, at *9 (S.D.N.Y. Nov. 21, 2017) (NYCHRL); *Sosa* v. *Medstaff, Inc.*, 2013 WL 6569913, at *4 n.4 (S.D.N.Y. Dec. 13, 2013) (Title VII and § 1981).   Adverse employment actions are "materially adverse change[s] in the terms and conditions of employment"; allegations of "mere inconvenience[s] or [] alteration[s] of job responsibilities" do not suffice. *Henry*, 18 F. Supp. 3d at 404 (quotation omitted).   Plaintiff must show that the "adverse employment action was *because of* race," *id.* at 407; *accord LeeHim*, 2017 WL 5634128, at *9 (dismissing state and city claims against individuals).

Retaliation.   A plausible claim of retaliation under federal, state, and city law requires allegations of "(1) participation in a protected activity *known to* the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Henry*, 18 F. Supp. 3d at 411 (quotation omitted) (emphasis added) (NYSHRL); *Bliss* v. *MXK Rest. Corp.*, 220 F. Supp. 3d 419, 424–25 (S.D.N.Y. 2016) (NYSHRL and NYCHRL); *Sosa*, 2013 WL 6569913, at *4 n.4 (Title VII and § 1981).   Merely alleging temporal proximity without "even a modicum of specificity" does not

---

[6]     In addition, Butler should be dismissed from the case because plaintiff failed to move to "join" him as an "additional part[y]" by this Court's January 20, 2020 deadline.   ECF 27 at ¶ 4.

satisfy this standard. *Henry*, 18 F. Supp. 3d at 412; *Rogers* v. *Fashion Inst. of Tech.*, 2016 WL 889590, at *7 (S.D.N.Y. Feb. 26, 2016) ("consisten[t] complain[ts] about race discrimination" two years before an adverse action fail to establish causation).

> Aiding and Abetting Discrimination, Retaliation, Hostile Work Environment, and Harassment. To plead an actionable claim for aiding and abetting under state or city law (no such cause of action exists under Section 1981, as set forth at **Part E**), a plaintiff must plausibly allege "direct, purposeful participation," sharing "the intent or purpose of the principal actor." *Fried* v. *LVI Servs., Inc.*, 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011); *Vera* v. *Donado Law Firm*, 2019 WL 3306117, at *8 (S.D.N.Y. June 19, 2019). The standard under which courts analyze aiding-and-abetting claims under the NYSHRL and the NYCHRL—that the individual "actually participated" in the discriminatory or retaliatory conduct—overlaps with that used to evaluate direct liability claims. *Vera*, 2019 WL 3306117, at *8 ("[I]n order for aider-and-abettor liability to be established [under NYSHRL], the defendant must be found to have actually participated in the conduct giving rise to the claim of discrimination.") (quotation omitted); *see also Geffner* v. *Quanta Servs., Inc.*, 2018 WL 6807388, at *5 (S.D.N.Y. Dec. 27, 2018) (discussing individual liability under NYCHRL).

> The claims against the Additional Defendants fail to meet these standards and should be dismissed.

> First, plaintiff has engaged in prohibited group pleading. Plaintiff consistently refers to all "Defendants," "Davis Polk," or "the partners." *See, e.g.*, ¶¶ 1, 83, 87, 120, 166–67, 219, 253, 263–64, 282–90. The pleading standard "requires, at a minimum, that a complaint give *each defendant* fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene* v. *City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (emphasis added) (quotation omitted). This Circuit will not allow race discrimination claims to proceed where, as

here, a plaintiff "fail[s] to differentiate among the defendants, alleging instead violations by 'the defendants.'" *Id.* Allegations that "lump[] all the defendants together" do not "satisfy this minimum standard." *Id.*

Second, allegations of discrete acts that occurred outside the applicable limitations periods cannot form the basis of claims against any of the Additional Defendants and cannot be considered for purposes of deciding this motion to dismiss. Most of the allegations against the Additional Defendants, and all of the allegations against Hudson, are time-barred for purposes of state and city law. *See generally* **Part C** (time bar).[7]

But even if the clearly time-barred allegations were taken into account (and they should not be), the Amended Complaint still lacks the detailed allegations required in this Circuit to establish race discrimination or retaliation claims against an individual. Plaintiff asserts four legally irrelevant allegations against each of Chudd and Hudson and three legally inconsequential allegations against each of Birnbaum, Brass, Butler, and Wolfe. These allegations against the Additional Defendants fall into four categories: (i) the Additional Defendants ignored plaintiff by failing to email or communicate with him for periods of time; (ii) plaintiff received unfavorable assignments, an assignment was taken away from him, or he was not assigned to matters *by them*, notwithstanding having received assignments from others; (iii) plaintiff perceived his performance reviews to be inconsistent with other contemporaneous feedback, and (iv) three junior partners— none of whom is plausibly alleged to have harbored any discriminatory or retaliatory animus towards plaintiff—were part of a "group" that "collectively decid[ed] to terminate" his employment. ¶ 296.

---

[7]     In addition, Messrs. Birnbaum, Brass, and Wolfe are not directly liable under the NYSHRL for acts that occurred when they were associates, *see* ¶¶ 11–13, because they had no "ownership interest" in the Firm, and the Firm reserves "power" to make "personnel decisions" for those outside associate ranks. *Erasmus* v. *Deutsche Bank Am. Holding Corp.*, 2015 WL 7736554, at *8 (S.D.N.Y. Nov. 30, 2015) (quotation omitted).

The chart below lists the entirety of the allegations asserted against each of the Additional Defendants, by category:

*All Allegations Against Additional Defendants*
**BY CATEGORY**
(TIME-BARRED ALLEGATIONS (UNDER STATE & CITY LAW & TITLE VII (AS TO THE FIRM)) APPEAR IN ***BOLD ITALICS***)

| DEF. | IGNORED PLAINTIFF | STAFFING ALLEGATIONS | REVIEW ALLEGATIONS | OTHER ALLEGATIONS |
|---|---|---|---|---|
| **Brass** | None. | • ***As an associate, over 3 hours in 2016, "abrupt[ly] remov[ed]" plaintiff from deal, and at unknown later date, "replaced" him with a white associate. ¶¶ 139–40, 146.***<br>• Did not staff plaintiff for 28 days in 2018. ¶¶ 279, 295. | None. | • Part of a "group" that "collectively decided to terminate" plaintiff's employment. ¶ 296. |
| **Butler** | • Did not email plaintiff "in all of 2017," including emails about the Career Advisor Program. ¶¶ 207, 216.<br>• Created "a roadblock between Mr. Cardwell and Davis Polk partners." ¶¶ 211, 216–18. | None. | None. | • Did not respond to a routine thank-you email to a staffing coordinator, on which he (and Bick) were copied, purportedly flagging complaint but not requesting any response. ¶¶ 214–15 ***(time-barred (state/city))***. |
| **Chudd** | • Did not email plaintiff in "all of 2017." ¶ 207. | None. | • ***Delivered Firm's 2015 annual review containing "suggestions." ¶ 88.***<br>• ***Went "out of his way to not document positive conclusions" in his own 2015 review. ¶ 85.***<br>• Later "shifted" his "conclusions" about his review "in response to" complaints and potential litigation. ¶ 87. | None. |
| **Hudson** | • ***Had "virtually no communications" with plaintiff after "they stopped working together" in early 2016. ¶ 124.*** | None. | • ***Corrected an admitted grammatical error in Dec. 2015. ¶ 121.***<br>• ***Created "dishonest conclusions" in her 2016 reviews that "directly contradicted" her "real-time" statements and later "submitted [them] to NYSDHR." ¶¶ 118–20.*** | • ***Supposedly asked plaintiff in 2016 "if he could recommend a Black restaurant that is in Harlem" after they stopped working together. ¶ 124.*** |
| **Birnbaum & Wolfe** | • Did not email plaintiff for periods of time. ¶¶ 174–75, 207. | • Did not staff plaintiff on any matters in 2016. Ensured he was "underutilized" by not staffing him "at the same rate or in the same way" as his peers and in response to his complaints. ¶¶ 126–27, 147, 168–77, 193, 203–06, 295 ***(time-barred in part)***. | None. | • Part of a "group" that "collectively decided to terminate" plaintiff's employment. ¶ 296. |

These allegations, even if true, do not come close to plausibly alleging unlawful acts by any of the Additional Defendants. There is no plausible allegation of an "adverse employment action" attributable to the Additional Defendants, which is fatal to plaintiff's discrimination *and* retaliation claims. There is no plausible allegation that plaintiff engaged in protected activity "known to" them, which is fatal to plaintiff's claim of retaliation. *Henry*, 18 F. Supp. 3d at 411. Finally, there is not even "minimal evidence" of discriminatory or retaliatory animus by any of the Additional Defendants. *LeeHim*, 2017 WL 5634128, at *3 (quotation omitted) (dismissing NYS- and NYCHRL claims); *Yan* v. *Ziba Mode Inc.*, 2016 WL 1276456, at *3 (S.D.N.Y. Mar. 29, 2016) (dismissing § 1981 claims); *Haggood* v. *Rubin & Rothman, LLC*, 2014 WL 6473527, at *15 (E.D.N.Y. Nov. 17, 2014) (retaliation).

The chart below sets forth the same allegations by principal pleading deficiency:

**By Principal Pleading Deficiency**
(Time-Barred Allegations Appear in ***Bold Italics***)

| DEF. | FAILURE TO ALLEGE ADVERSE EMPLOYMENT ACTION (OR DISCRIMINATORY ANIMUS) | FAILURE TO ALLEGE KNOWLEDGE OF ANY PROTECTED ACTIVITY (OR RETALIATORY ANIMUS) |
|---|---|---|
| **Brass** | • ***As an associate, over 3 hours in 2016, "abrupt[ly] remov[ed]" plaintiff from deal, and at unknown later date, "replaced" him with a white associate.  ¶¶ 139–40, 146.***<br><br>• Did not staff plaintiff for 28 days in 2018.  ¶¶ 279, 295. | • Part of a "group" that "collectively decided to terminate" plaintiff's employment.  ¶ 296. |
| **Butler** | • Did not email plaintiff "in all of 2017," including emails as to the Career Advisor Program.  ¶¶ 207, 216.<br><br>• Created "a roadblock between Mr. Cardwell and Davis Polk partners."  ¶¶ 211, 216–18. | • Did not respond to a routine thank-you email to a staffing coordinator, on which he (and Bick) were copied, purportedly flagging complaint but not requesting any response.  ¶¶ 214–15 ***(time-barred (state/city))***. |
| **Chudd** | • ***Went "out of his way to not document positive conclusions" in his own 2015 review.  ¶ 85.***<br><br>• ***Delivered Firm's 2015 annual review containing "suggestions." ¶ 88.***<br><br>• Did not email plaintiff in "all of 2017," after they stopped working together.  ¶ 207. | • Later "shifted" his "conclusions" about his 2015 review "in response to" complaints and potential litigation.  ¶ 87. |
| **Hudson** | • ***Corrected an admitted grammatical error in Dec. 2015.  ¶ 121.***<br><br>• ***Created "dishonest conclusions" in her 2016 reviews that "directly contradicted" her "real-time" statements and later "submitted [them] to NYSDHR."  ¶¶ 118–20.***<br><br>• ***Had "virtually no communications" with plaintiff after "they stopped working together" in early 2016.  ¶ 124.***<br><br>• ***Supposedly asked plaintiff in 2016 "if he could recommend a Black restaurant that is in Harlem" after they stopped working together.  ¶ 124.*** | |
| **Birnbaum & Wolfe** | • Did not email plaintiff for periods of time.  ¶¶ 174–75, 207.<br><br>• Did not staff plaintiff on any matters in 2016.  Ensured he was "underutilized" by not staffing him "at the same rate or in the same way" as his peers and in response to his complaints. ¶¶ 126–27, 147, 168–77, 193, 203–06, 295 ***(time-barred in part)***. | • Part of a "group" that "collectively decided to terminate" plaintiff's employment.  ¶ 296. |

1.      Plaintiff's Allegations Against the Additional Defendants Fail To
        <u>Establish Any Adverse Employment Action (or Discriminatory Animus)</u>

Plaintiff's allegations fail, as a matter of law, to establish any adverse employment

action taken by the Additional Defendants or the required discriminatory animus.

(a)    *Plaintiff's Complaint That He Was Ignored Does Not Establish Any Adverse Employment Action or Show Discriminatory Animus*

The complaint that defendants Birnbaum, Butler, Chudd, Hudson, and Wolfe ignored plaintiff is insufficient to establish the required "adverse employment action," and fails to state a claim. *Ward* v. *Shaddock*, 2016 WL 4371752, at *6 n.4 (S.D.N.Y. Aug. 11, 2016) (supervisor's "refus[al] to directly communicate or acknowledge" plaintiff did not "satisfy the threshold for adverse employment action"); *accord Sosa*, 2013 WL 6569913, at *5. Even "isolation," "ostracism," and "silent treatment" do not constitute "adverse employment actions." *Danieu* v. *Teamsters Local 264*, 2011 WL 1259839, at *8–9 (W.D.N.Y. Mar. 31, 2011). Plaintiff's allegations that Birnbaum, Butler, Chudd, and Wolfe failed to send him emails "notwithstanding group emails to practice groups and other listservs"[8] do not amount to an adverse employment action. Nor is there any allegation that these Additional Defendants had any reason, much less a duty, to contact plaintiff through individual emails.[9] Plaintiff's allegation that Hudson "had virtually no communications with [him]" after they "stopped working together at the end of 2015/beginning of 2016," ¶ 124,[10] also does not constitute an adverse employment action, particularly absent any plausible allegation that Hudson had any reason or duty to contact plaintiff after he completed his rotation through her group (Capital Markets) and was "permanently assigned to [the] M&A group," of which Hudson was not a member, ¶¶ 120, 126. *Ward,* 2016 WL 4371752, at *6 n.4.

---

[8]    ¶¶ 207; 216 (Butler); 207 (Chudd); 174–75 (Birnbaum and Wolfe).

[9]    Plaintiff's admitted interactions with many other partners, *see, e.g.,* ¶¶ 258, 263, including concessions that he "once a month[] had one-on-one interactions with Mr. Birnbaum (in Mr. Birnbaum's office)," Orig. Compl. ¶ 152, renders implausible his allegation that Butler "create[d] a roadblock" between him and partners, ¶ 211; *Colliton*, 2008 WL 4386764 at *6, as does the fact that he worked directly with partners on at least four matters in this period. ¶¶ 262, 275; Ex. E (and exhibits thereto).

[10]    This allegation as to Hudson is also time-barred for purposes of the state and city claims (and the Title VII claims against the Firm).

(b)     *Plaintiff's Complaints Concerning His Performance
Reviews Do Not Establish an Adverse Employment
Action or Show Discriminatory Animus*

Allegations that Hudson and Chudd submitted performance evaluations or critiques

that were not "positive," or that contained "suggestions," or whose content "directly contradicted"

other "real-time" feedback plaintiff contends he received, fail to state a claim for relief.  ¶¶ 85, 88

(Chudd); 118–20 (Hudson).[11]

Even negative performance reviews—much less mixed ones—"do not constitute

an adverse employment action," particularly absent allegations, missing here, that there were

"tangible consequences resulting from the evaluation." *Chung* v. *City Univ. of N.Y.*, 605 F. App'x

20, 22 (2d Cir. 2015).  Plaintiff does not allege that Chudd's or Hudson's reviews "trigger[ed]"

other negative consequences in the terms and conditions of [his] employment." *Zoulas*, 400 F.

Supp. 3d at 53 ("[N]egative performance evaluations do not, without more, constitute adverse

employment actions."); *see also Mira* v. *Argus Media*, 2017 WL 1184302, at *4 n.5 (S.D.N.Y.

Mar. 29, 2017).  There is also no allegation that Chudd or Hudson were involved in plaintiff's

termination or the alleged diminution of his responsibilities, all of which are alleged to have

occurred after plaintiff and Chudd stopped working together and after plaintiff rotated out of

Hudson's group, and was "permanently assigned to Davis Polk's M&A group."  ¶¶ 126; *see also*

173, 295—96.  *Fried*, 2011 WL 2119748, at *8; *Vera*, 2019 WL 3306117, at *9 (dismissing

claims).  Ordinary-course "[c]riticism of an employee," like Hudson's correction of an admitted

grammatical error, ¶ 121, is likewise "not an adverse employment action."  *LeeHim*, 2017 WL

5634128, at *4 (quotation omitted).

Moreover, even allegations of reviews that "seemed out of context or exaggerated"

---

[11]     Allegations as to Chudd's 2015 reviews and Hudson's 2016 reviews and performance critique are also time-barred for purposes of state and city claims (and the Title VII claims against the Firm).  ¶¶ 84–94; 120–24.

cannot sustain a claim absent a nexus to a protected trait or activity ("discriminatory motivation"). *Mira*, 2017 WL 1184302, at *2, 5 (dismissing claim lacking criticism of "performance in ethnically degrading terms"); *LeeHim*, 2017 WL 5634128, at *9; *Johnson* v. *Morrison & Foerster LLP*, 2015 WL 845723, at *5 (S.D.N.Y. Feb. 26, 2015). Plaintiff does not allege that Chudd drafted his own review, or delivered plaintiff's consolidated review, "because of race,"[12] nor are there any plausible allegations that Hudson's feedback was motivated by race. *Henry*, 18 F. Supp. 3d at 407; *LeeHim*, 2017 WL 5634128, at *3.

(c)     *Plaintiff's Complaints About Staffing Do Not Establish an Adverse Employment Action or Show Discriminatory Animus*

Allegations that Brass, as an associate, removed plaintiff from a single assignment over the course of three hours in 2016, or that Birnbaum and Wolfe (and, for 28 days in 2018, Brass) failed personally to staff plaintiff on matters (or "ensured" that he was not "staffed" or was "underutilized"), likewise are insufficient to sustain claims against them. ¶¶ 139-40, 147, 259, 295.

A plaintiff's "[s]ubjective personal disappointment" "with the work assigned" to him does not constitute an "adverse employment action"; nor does a plaintiff's "dissatisfaction" with work "not assigned" to him by supervisors. *Johnson*, 2015 WL 845723, at *5 (quotation omitted). But even if plaintiff had alleged, as is required to plead an adverse employment action, facts plausibly indicating that Brass, Birnbaum, and Wolfe's actions resulted in a "negative change in the terms and conditions of [his] employment," the Amended Complaint still lacks any allegation of animus on their part, as is also required. *Henry*, 18 F. Supp. 3d at 405 (quotation omitted). There is no allegation that it was race, as opposed to poor performance, that motivated

---

[12]     Plaintiff concedes that it was "not uncommon" for partners to "communicate" "such feedback" to "junior or mid-level . . . associates," ¶ 89, and was Firm practice for partners to deliver "submitted performance reviews" of others, ¶¶ 88, n.10, 112, rebutting any inference of discriminatory intent.

Birnbaum, Wolfe, or Brass when making staffing decisions.  *Rogers*, 2016 WL 889590, at *6 (being assigned only three hours of work per week did "not plausibly support even a minimal inference of discriminatory motive"); *Iqbal*, 556 U.S. at 678 ("sheer possibility" of unlawful act "'stops short of the line between possibility and plausibility of entitlement to relief'" (quoting *Twombly*, 550 U.S. at 557)).

The allegation that Brass "abrupt[ly] remov[ed]" plaintiff from a deal three hours after plaintiff was told he would be assigned to the team, ¶¶ 139–40, does not establish any adverse employment action.[13]  *Henry*, 18 F. Supp. 3d at 405, 411 (being "removed from the roll call and sent home" not a "materially adverse change").  The mere assertion that an unnamed white associate "replaced" plaintiff on the deal at an unknown point in the next two weeks (between July 22 and August 4), ¶ 146, is insufficient plausibly to establish that Brass's alleged action was taken "because of race."  *Henry*, 18 F. Supp. 3d at 407.  There is no allegation that Brass was motivated by anything other than the legitimate need to ensure that the deal was staffed appropriately at all points.  *See Iqbal*, 556 U.S. at 678.  Moreover, plaintiff concedes that his billable hours *increased* after his purported "removal," rebutting any claim of adverse impact.  ¶ 176.

As to Birnbaum and Wolfe, plaintiff has failed to put forth any facts, much less "sufficient factual allegations . . . plausibly demonstrating that" the "non-Black associates" he contends "remained continuously staffed" were in fact "similarly situated" to him.  *Rogers*, 2016 WL 889590, at *6; ¶¶ 168, 204.  The Amended Complaint offers no "details" with respect to the alleged peers' "responsibilities, qualifications, or quality of their work," nor any "factual amplification" or specific examples that Birnbaum or Wolfe treated him less well than similarly-situated others for any reason, much less that they did so because of race.  *Daniels* v. *City of N.Y.*,

---

[13]    This allegation is also time-barred for purposes of state and city law (and the Title VII claim against the Firm).
**Part C**.  Brass was also not then an "employer," for purposes of the NYSHRL, barring direct liability.  Note 7.

2019 WL 251511, at *4–5 (S.D.N.Y. Jan. 17, 2019); *Henry*, 18 F. Supp. 3d at 408, 412 ("generic allegation[s] of disparate treatment related to an unspecified class of Caucasian persons" fail under *Twombly*).

Moreover, plaintiff's own pleadings show that his staffing-related allegations against Birnbaum, Wolfe, and Brass are implausible. Plaintiff concedes that staffing decisions are made by networks of individuals. ¶¶ 126, 271. And irrespective of whether Birnbaum and Wolfe personally "staff[ed] Plaintiff on . . . matters in 2016," ¶ 170, plaintiff concedes that he *was* staffed on matters throughout 2016. *E.g.*, ¶ 176 (chart). Plaintiff's concession that he billed more in the three months *after* Birnbaum and Wolfe assumed a role with respect to his staffing (416.7) than in the three months prior (406.6), ¶ 176, further rebuts any inference of discrimination attributable to Birnbaum and Wolfe's assumption of responsibilities in September 2016. Indeed, in no month in 2016 did plaintiff bill as many hours—234.7—as he did in September. ¶ 176.[14]

> (d)      *Plaintiff's Complaint Concerning the Restaurant Request Does Not Establish an Adverse Employment Action or Show Discriminatory Animus*

Plaintiff's claim that Hudson asked Cardwell to a "recommend a Black restaurant that is in Harlem" ("Mr. Cardwell obliged"), ¶ 124, which is the only allegation as to Hudson that in any way concerns race, is not actionable. As set forth in defendants' initial motion, the Amended Complaint "incorporate[s] by reference" an email that completely refutes plaintiff's allegation, and any contention that the exchange was discriminatory. *Almazan*, 2015 WL 500176, at *4; *Baraliu* v. *Vinya Capital, L.P.*, 2009 WL 959578, at *4 (S.D.N.Y. Mar. 31, 2009). The email reads:

> Hudson:      *Hi Kaloma, A client just asked me for a recommendation for a restaurant near the Apollo. I remembered our ride up to the [Columbia Law School]*

---

[14]   Plaintiff's concessions that he took extended leave in 2017 (*e.g.*, ¶ 256 (April), ¶¶ 266, 278 (May, June)), and was staffed on a series of matters from May to September 2017 (*see, e.g.*, ¶¶ 258–59, 262–63, 275; Ex. E (and exhibits 27–30 thereto)), likewise rebut any inference that might be drawn from the allegations that Birnbaum and Wolfe "effectively went an entire year without" personally staffing him. ¶¶ 168–69. The 2018 staffing allegations as to Brass are discussed further below.

> *dinner this spring and wondered if you have any ideas - thoughts? Thanks!*
> *Sophia*

> *Plaintiff:* *Hi Sophia, Definitely. A few suggestions:* <u>*Red Rooster*</u>*[;]* <u>*Angel of*</u>
> <u>*Harlem*</u>*[;]* <u>*The Cecil*</u>*[.] Most of my friends would suggest Red Rooster (as*
> *a safe bet) but I've heard good things about the other restaurants.*

> *Hudson:* *Awesome - thanks!*[15]

This "document, not the allegations, control[s]." *Royal Park*, 2016 WL 439020, at *1.[16] The

exchange cannot support an inference of discrimination under Section 1981 or state or city law.

Notwithstanding that plaintiff's allegations concerning this communication are

entirely refuted by the incorporated email, the allegation, even accepted as true, is a "non-

actionable stray remark[]." *Moore* v. *Verizon*, 2016 WL 825001, at *9 (S.D.N.Y. Feb. 5, 2016).

Plaintiff does not allege that the purported remark "ar[ose] in a context at all related to" an

employment decision, or had any "causal nexus" to an adverse employment action. *Williams* v.

*Victoria's Secret*, 2017 WL 1162908, at *8–9 (S.D.N.Y. Mar. 28, 2017). This "stray remark[]"

thus cannot "raise an inference of discriminatory motivation" as a matter of law. *Id.*; *accord Yan*,

2016 WL 1276456, at *4–5 (dismissing § 1981 claim).

> 2. The Remainder of Plaintiff's Allegations Against the
> Additional Defendants Do Not Establish Any Protected Activity
> <u>Known to the Additional Defendants (or Retaliatory Animus)</u>

Plaintiff's remaining allegations (of retaliation) against the Additional Defendants

fail absent any plausible allegation of "protected activity known to" them. *Henry*, 18 F. Supp. 3d

---

[15]  This email exchange is attached hereto as Ex. G. Columbia Law School is located about 9 blocks from the
Apollo and about 15 to 20 blocks from plaintiff's residence at the time. Plaintiff included hyperlinks to each
restaurant. This allegation is also time-barred for purposes of state and city law (and the Title VII claim
against the Firm).

[16]  The Court may consider documents "plaintiff knew about and relied upon." *SEC* v. *Rio Tinto plc*, 2019 WL
1244933, at *6 (S.D.N.Y. Mar. 18, 2019). Plaintiff concedes he was "aware of" the performance reviews he
references in his Amended Complaint; he received them as part of the Firm's NYSDHR brief. Ex. C; ¶¶ 84
n.6, 115. Plaintiff also was "aware of" the above email; he sent and received it, and conceded in his January 20
Initial Disclosures that he has retained "[c]opies of relevant interoffice email communications."

at 411 (NYSHRL); *Sosa*, 2013 WL 6569913, at *7 (§ 1981).

*First,* the allegation that Butler should have known that a January 2017 reply email from plaintiff on which Butler was "cc'd" referred to "discriminatory acts," ¶¶ 214-15, presumably in furtherance of a retaliation claim, fails to state a claim because there is no corresponding allegation of any adverse employment action, retaliatory or otherwise.[17] Even if there were, the email—which states that plaintiff "look[ed] forward to learning how the Career Advisor Program" would supplement "experiences and conversations" plaintiff had "regarding DPW interactions, opportunity/assignments, and career development," ¶ 214—makes no reference to negative experiences, much less unlawful ones. If "nothing in the substance" of a communication "suggests that the complained-of activity is, in fact, unlawfully discriminatory," a complaint cannot be said to have "put an employer on notice of a protected complaint" for purposes of the antiretaliation laws. *Haggood*, 2014 WL 6473527, at *14 (citing Circuit precedent).

*Second,* to the extent plaintiff alleges that the Firm's conclusions about certain performance reviews "shifted" over time, or that reviews by Chudd or Hudson were "weaponized" and "submitted to NYSDHR," ¶¶ 86–87, 118–20, neither allegation can sustain retaliation claims against Chudd or Hudson, because plaintiff does not allege that Chudd or Hudson had "knowledge of [his] protected activity," and there can be no "causal connection" between that alleged activity and any "adverse employment action" by either of them (there was none). *Callahan* v. *Consol. Edison Co. N.Y., Inc.*, 187 F. Supp. 2d 132, 138 n.39 (S.D.N.Y. 2002) (dismissing claims). This dooms plaintiff's retaliation claims against Chudd and Hudson. Plaintiff purports to have "flagged" five instances of discrimination in 2015 and 2016, the period relevant to his claims against Chudd and Hudson: plaintiff alleges that he "flagged" two of these instances during

---

[17]  This allegation is also time-barred, for purposes of the state and city claims.

meetings and communications with Reid and the Firm's "Executive Director," and the remaining three instances to the Diversity Committee, Black Attorney Group, and "staffing coordinator[s]" in M&A. ¶¶ 55–57, 67–68, 74, 76–77, 81, 144-45, 159, 164. But neither Chudd nor Hudson were allegedly members of any of these groups, and plaintiff does not allege that Chudd or Hudson were involved in, or aware of, his complaints. Absent any allegations that Chudd or Hudson were aware of any purportedly protected activity, plaintiff also fails to allege a "causal connection" between that alleged activity and any "adverse employment action" by either of them (there was none). *Callahan*, 187 F. Supp. 2d at 138 n.39.[18]

*Third*, to the extent plaintiff alleges that Brass, Birnbaum, and Wolfe—then first-, second- and third-year partners, respectively, ¶¶ 11–13—were part of a "group" that "collectively decid[ed]" to terminate plaintiff for allegedly retaliatory reasons, these allegations likewise fail to support an actionable claim. ¶ 296.

As to Brass, Plaintiff alleges no facts suggesting more than a single interaction with him two years prior to the termination (the three-hour staffing allegation from 2016). ¶¶ 139–40. Absent temporal proximity, which a two-year gap does not establish as a matter of law, there can

---

[18] The claim that Chudd "shifted" his "conclusions about" the review he prepared in September 2015 in response to alleged "complaints and the possibility of litigation" is conclusory and not fact-based: it cites to a chart making no reference to Chudd. ¶¶ 84, 87, n.9, 306. Moreover, the record refutes plaintiff's allegations that documents Chudd or others prepared in the 2015 or 2016 review cycles were "retroactively created" and submitted to the NYSDHR, ¶¶ 84, n.7, 87. Chudd's summary review is marked "Submitted on 12/22/2015, 10:47 a.m.," (¶ 88; Ex. C (Firm's NYSDHR Br. Ex. 11)), and shows that his individual review was submitted prior to that date (*see* Ex. C at 4 item 3; ¶ 84). Plaintiff appears to be referring to the date a copy was *printed* (2017), as shown in the footer of Ex. C (Firm's NYSDHR Br. Ex. 11).

Defendants move, pursuant to Fed. R. Civ. P. 12(f), to strike the allegations that they—all members of the Bar—"retroactively created" reviews "after [plaintiff] engaged litigation," ¶ 84 (as to Chudd), or that they "knowingly falsified and shifted their conclusions" about plaintiff's performance and "submitted false statements" "to the NYSDHR," ¶ 118 (as to Reid, Bick, Hudson, and the Firm).

Further, plaintiff fails to identify or allege with any specificity the non-Firm "defendants" for whom "contemporaneous documentation [] makes it plain" that "false statements" were submitted to the NYSDHR. ¶ 118. No individuals were parties to the NYSDHR action; non-parties would have had no reason to "submit[]" any documentation to the NYSDHR, ¶ 118, and did not do so, as plaintiff now appears to acknowledge. ¶ 176, n.24; *e.g.*, Ex. C (Firm's NYSDHR Br.); *Royal Park*, 2016 WL 439020, at *1 (court "need not accept" "contradict[ed] allegations" as true).

be no inference of retaliation.  *Rogers*, 2016 WL 889590, at *7.

As to Birnbaum and Wolfe, plaintiff alleges no facts supporting an inference that either knew of plaintiff's purportedly protected activities.  *Henry*, 18 F. Supp. 3d at 411 (NYSHRL); *Sosa*, 2013 WL 6569913, at *7 (§ 1981).  Plaintiff alleges that Birnbaum and Wolfe "refus[ed] to staff [him]" in retaliation for three purportedly protected activities, but none can support a claim.  ¶¶ 164 n.21, 203, 295.  As to the first—an alleged conversation with a "Junior Staffing Coordinator," on September 8, 2016, about an assignment in the Credit group, ¶¶ 155–64—plaintiff alleges no facts supporting an inference that the conversation (which took place outside Birnbaum and Wolfe's "group" (M&A) only "days" after they had assumed any responsibilities with respect to plaintiff's class) was "known" to them.  ¶¶ 155, 163 n.19, 169.  As to the second, no facts support the allegation that Birnbaum or Wolfe knew of plaintiff's purported "inquiry," to a now-former litigation partner outside their corporate department, about a then-former client.  ¶¶ 199, 202.  Even if these episodes constituted protected activity—which plaintiff has not plausibly alleged, *Haggood*, 2014 WL 6473527, at *13—there can be no viable retaliation claim against Birnbaum and Wolfe absent plausible allegations that these episodes were "known to" them.  *Henry*, 18 F. Supp. 3d at 411.  The third—an allegation that Birnbaum and Brass (but not Wolfe) were retaliating (by failing to staff or moving to terminate) against plaintiff for filing a January 2018 rebuttal statement with the NYSDHR—fails because that filing was not known to any defendants until after a November 2019 FOIL request by the Firm.  ¶¶ 295–96; Ex. F (requesting copies of "any briefs or replies filed by Mr. Cardwell, if any were ever filed").

Finally, the claims for hostile work environment and harassment should be dismissed entirely, as to all defendants, as set forth at **Part D**, and the aiding and abetting claims should be dismissed against all Additional Defendants because, absent any facts indicating that they shared "intent" with others, and there are none, there can be no well-pleaded allegations of

"direct, purposeful participation" by them. *Robles* v. *Goddard Riverside Community Ctr.*, 2009 WL 1704627, at *3 (S.D.N.Y. June 17, 2009) (dismissing claims against directors alleged to have participated in termination).[19]

Plaintiff has failed entirely to set forth plausible allegations of (i) discriminatory or retaliatory animus on the part of any of the Additional Defendants, (ii) any adverse employment action by them, or (iii) any protected activity known to them.

The Additional Defendants should be dismissed from the case.

**C.      All Claims Against All Defendants Should Be Dismissed to the Extent Based Upon Discrete Acts Barred by the Statute of Limitations**

Plaintiff's federal, state, and city claims against all defendants should be dismissed to the extent that they are based upon discrete acts outside the limitations period.

<u>Title VII</u>.  Plaintiff's Title VII claims (which are only asserted against the Firm) should be dismissed to the extent that they are based upon discrete acts prior to October 7, 2016, 300 days before plaintiff commenced his agency action.  *Cetina* v. *Longworth*, 583 F. App'x 1, 2 (2d Cir. 2014).[20]  Under Title VII (and state and city law), timeliness is measured from the date of the alleged "practice," meaning the "discrete act or single occurrence."  *Vega*, 801 F.3d at 79 (quotation omitted).  Courts routinely dismiss with prejudice, as time-barred, claims based on events outside the limitations period.  *E.g.*, *Lovell* v. *Staten*, 2019 WL 4601665, at *4 (S.D.N.Y. Sept. 23, 2019).

On a Rule 12 motion, courts will not consider time-barred events in determining whether a plaintiff has met his pleading burden.  For example, in *Zoulas*, this Court did "not

---

[19]    Plaintiff brings no aiding and abetting claims against Chudd under any statute; against Brass under state or city law; or against Hudson on the harassment count.  ¶¶ 328, 334, 339, 347, 355, 363, 371, 378.

[20]    The 300-day limitations period runs from August 3, 2017, the day plaintiff filed his agency action; the limitations period was tolled only as to the Firm pending the agency process.  *Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015).

consider" "alleged acts [that] occurred more than 300 days before [plaintiff] filed her [NY]SDHR complaint" in determining whether plaintiff had plausibly alleged discrimination or retaliation, and permitted claims to proceed only to the extent that they were based upon alleged acts within 300 days of the filing of the administrative complaint. 400 F. Supp. 3d at 50, 53–56.[21]

In this action, plaintiff's claims are based on allegations of serial, discrete acts—not of a single continuing violation, the latter of which is "heavily disfavored in the Second Circuit."[22] *Flores* v. *N.Y.C. Human Res. Admin.*, 2011 WL 3611340, at *3 (S.D.N.Y. Aug. 16, 2011) (dismissing claims). Courts in this Circuit have found that the types of allegations asserted here are "discrete acts" subject to the time bar:

- Receipt of "**less desirable work assignments**" is a discrete act. *Flores*, 2011 WL 3611340, at *2, 6. Plaintiff's pre-fall 2016 allegations that he was staffed on "non-deal" and "research" matters are time-barred. *E.g.*, ¶¶ 131, 133–36, 138, 143, 155–60.

- "[**D**]iscontinuance of a particular job assignment" or "**reductions in responsibility**" are "paradigmatic examples of discrete acts" that "cannot form the basis of a continuing violation claim." *Roman-Malone* v. *City of N.Y.*, 2013 WL 3835117, at *3 (S.D.N.Y. July 25, 2013); *Henry-Offor*, 2012 WL 2317540, at *3. Plaintiff's pre-fall 2016 allegations as to removal from assignments are time-barred. *E.g.*, ¶¶ 139–46, 166–67.

- "[**D**]enial of preferred job assignments" is "a prototypical example of a discrete act that is not subject to the continuing violations doctrine." *Sirisena* v. *City Univ. of N.Y.*, 2019 WL 1493220, at *5 (E.D.N.Y. Mar. 31, 2019) (citation omitted); *Zoulas*, 400 F. Supp. 3d at 50. Plaintiff's pre-fall 2016 allegations with respect to being kept off deals are time-

---

[21] *See also Lovell*, 2019 WL 4601665, at *4 (dismissing portions of discrimination and retaliation claims "based on events in 2008 and 2013").

[22] Even when "discrete unlawful acts . . . are part of a serial violation," the exception "does not apply" to exempt them from the time bar. *Fleurentin* v. *N.Y.C. Health and Hosp. Corp.*, 2020 WL 42841, at *3 (E.D.N.Y. Jan. 3, 2020); *Henry-Offor* v. *City Univ. of N.Y.*, 2012 WL 2317540, at *3 (S.D.N.Y. June 15, 2012) (courts are "loath to apply" continuing violations exception). This is especially true with respect to plaintiff's allegations against all individual defendants (the Management Committee Defendants and the Additional Defendants), which by their nature are discrete, individualized acts not tethered to Firm-wide policy. *See, e.g.*, *Diaz* v. *City Univ. of N.Y.*, 2014 WL 10417871, at *11 (S.D.N.Y. Nov. 10, 2014) ("long history of discrete unsatisfactory dealings with numerous individual defendants," absent "any facts that would plausibly show the existence of a policy that linked" time-barred and non-time-barred allegations, not a "continuing[ ]violation"), *rep't & rec. adopted in rel. pt.*, 2015 WL 5577905 (S.D.N.Y. Sept. 22, 2015); *Donlon* v. *Bd. of Educ. of Greece Cent. Sch. Dist.*, 2007 WL 108470, at *4 (W.D.N.Y. Jan. 12, 2007) ("separate evaluations" over "four-year period" by "distinct individuals" not a continuing violation). "[C]ourts in this circuit have consistently rejected attempts to save otherwise time-barred claims by conclusory allegations that a series of related discrete acts constituted a pattern or practice." *Mirasol* v. *Gutierrez*, 2006 WL 871028, at *4 (S.D.N.Y. Apr. 5, 2006) (dismissing claims).

barred. *E.g.*, ¶¶ 134–48, 168.

- "**[N]egative performance reviews**" and "**unwarranted criticism**" are "discrete acts." *Zoulas*, 400 F. Supp. 3d at 50; *Henry-Offor*, 2012 WL 2317540, at *3. Plaintiff's pre-fall 2016 allegations as to reviews and criticisms are time-barred. *E.g.*, ¶¶ 84–94, 97–106, 120.

- Denials of chances to "**attend meetings**" "**provid[ing] exposure which can help lead to promotion**" are discrete acts. *Flores*, 2011 WL 3611340, at *2, 6 (S.D.N.Y. Aug. 16, 2011). Plaintiff's pre-fall 2016 allegations of such acts are time-barred. *E.g.*, ¶¶ 62–64.

- Acts of exclusion, "**ostracism**" and isolation are "barred as untimely to the extent they occurred prior to" the limitations date. *Flores*, 2011 WL 3611340, at *6. Allegations that individuals would "walk by [plaintiff] in the hallways without . . . acknowledgment," ¶ 110, or ignore his emails, ¶¶ 109–10, 137, 142, 149–54, are discrete and time-barred.

- Other single pre-fall 2016 "discriminatory interactions" are by nature discrete acts and time-barred. *See, e.g.*, ¶¶ 55–61, 67–69, 95, 121–24.

Plaintiff's Title VII claims against the Firm should exclude all these discrete acts (and allegations consistent with those described above) occurring prior to October 7, 2016. *Zoulas*, 400 F. Supp. 3d at 50.

Plaintiff's allegations of hostile work environment under Title VII likewise are insufficient, for two reasons. First, they attempt to "recast" discrete or "serial" acts, and should be dismissed entirely, as set forth at **Part D**. Second, claims of "continuing violation" are subject to dismissal unless "clearly asserted both in the EEOC filing and in the complaint." *McPhee* v. *N.Y.C. Health and Hosps. Corp.*, 2008 WL 3930089, at *4 (S.D.N.Y. Aug. 25, 2008) (quotation omitted) (dismissing claims). Here, plaintiff failed to allege such a claim in his administrative action: his "charge particulars" (position statement) made no mention of hostile work environment, and his "charges of discrimination" do not check the box for "continuing action." Exs. A, B, D. The Title VII hostile work environment claim thus also may not be based on acts occurring before October 7, 2016.

Section 1981. Plaintiff's claims under Section 1981 are subject to the same principle, *Roman-Malone*, 2013 WL 3835117, at *3, and should be dismissed to the extent that they are based upon discrete acts prior to November 4, 2015, *Rogers*, 2016 WL 889590, at *9 (4-

26

year limitations period).[23]

        <u>State and City Claims</u>.  For similar reasons, plaintiff's state and city claims against all individual defendants—the Additional Defendants and the Management Committee Defendants—should be dismissed as time-barred to the extent that they are based upon discrete acts occurring prior to November 4, 2016 (March 2, 2017, as to Butler[24]), because plaintiff named no individual defendants in his administrative charge, and claims against them therefore were not tolled.  *Kassner* v. *2nd Ave. Deli., Inc.*, 496 F.3d 229, 236-38 (2d Cir. 2007) (3-year statute of limitations for NYS- and NYCHRL claims); *Kimball* v. *Vill. of Painted Post*, 737 F. App'x 564, 572–73 (2d Cir. 2018) (no tolling against individual defendant not named).  As discussed at **Part B**, core allegations against each of the Additional Defendants are time-barred for purposes of state and city law.  For instance:

- **Chudd's** 2015 reviews are time-barred discrete acts.  ¶¶ 84–94.
- **Brass's** 2016 removal of plaintiff from a deal is a time-barred discrete act.  ¶¶ 139–41.
- All allegations against **Hudson** are time-barred under state and city law.  ¶¶ 118–24.[25]
- **Butler's** alleged lack of response to a January 2017 email is time-barred.  ¶ 214-15.

Allegations against the Management Committee Defendants, and generalized allegations against them or the Additional Defendants cast as allegations against all "Defendants," "Davis Polk," or

---

[23]    Except as to the hostile work environment claim, which is limited to events forming part of the same "actionable practice" (and thus to events beginning in October 2016 at the earliest), and as to Butler, for whom the period runs beginning March 2, 2016 for Section 1981 claims.  Plaintiff was aware of Butler's alleged role when he filed his original complaint in November 2019, and his decision not to name him "must be considered a matter of choice."  *Schoolcraft* v. *City of N.Y.*, 81 F. Supp. 3d 295, 301 (S.D.N.Y. 2015) (citing *Cornwell* v. *Robinson*, 23 F.3d 694, 705 (2d Cir. 1994)).  Where "failure to name" a defendant in an original complaint "was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity," the limitations period is keyed to the Amendment adding the new defendant—here, March 2, 2020— not the original complaint.  *Id.*; ECF 1 at ¶ 189.

[24]    *See* note 23, *supra.*

[25]    As discussed *supra* at note 18, the allegations that Reid, Bick, Hudson, and the Firm "knowingly falsified and shifted their conclusions" about plaintiff's performance and "submitted false statements" "to the NYSDHR," ¶ 118, and that Chudd "retroactively created" reviews "after [plaintiff] engaged litigation," ¶ 84, are proven false by the administrative record and therefore "need not [be] accept[ed]" as true, *Royal Park*, 2016 WL 439020, at *1.  The only remaining allegations against Hudson are discrete acts that occurred prior to November 4, 2016 and are thus time-barred under state and city law.

"the partners," are subject to the same time bar. *Flores*, 2011 WL 3611340, at *6 ("undated and unspecified incidents of disparate treatment" outside limitations period time-barred); *see, e.g.*, ¶¶ 95 (as to Reid); ¶¶ 97–110, 133, 137, 142 (as to Bick).[26]

### D. Plaintiff's Hostile Work Environment and Harassment Claims Should Be Dismissed

<u>Hostile Work Environment</u>. As described above, plaintiff failed to allege hostile work environment or any continuing violation in his administrative charge (or his original complaint). **Part C**; Exs. A, B. Accordingly, plaintiff's Title VII hostile work environment claim against the Firm should be dismissed for failure to exhaust administrative remedies. *Fleming* v. *Verizon N.Y., Inc.*, 419 F. Supp. 2d 455, 464 (S.D.N.Y. 2005) (dismissing claim); *Green* v. *Jacob Co. Watches, Inc.*, 248 F. Supp. 3d 458, 467 (S.D.N.Y. 2017) (same).

Plaintiff's Section 1981 hostile work environment claim against all defendants (and analogous Title VII claim, if not otherwise dismissed), also should be dismissed as inadequately pleaded. To plead hostile work environment under Section 1981 or Title VII, "plaintiff must allege facts plausibly demonstrating that 'the workplace [wa]s permeated with discriminatory intimidation, ridicule, and insult that [wa]s sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment'" and that this happened "because of" race. *Rogers*, 2016 WL 889590, at *8 (quoting *Littlejohn* v. *City of N.Y.*, 795 F.3d 297, 320–21 (2d Cir. 2015) (dismissing Title VII and § 1981 claims)). This standard, too, has "'objective and subjective components.'" *Id.*

Plaintiff has not alleged any such facts. Plaintiff uses the phrase "hostile [work]

---

[26] Plaintiff has failed to allege even the bare elements of an NYSHRL harassment claim, as set forth below. But even if harassment could constitute a continuing violation, the only "harassment" plaintiff alleges is that, as his workload declined, he felt embarrassed by questions about workload. ¶ 192-93. Thus to the extent plaintiff's claim can be based on events outside the limitations period, the claim can only be based on events after October 1, 2016, the point to which plaintiff keys his drop in hours. **Part B** (Facts), *infra*.

environment" in only two paragraphs outside the Counts, ¶¶ 272, 276, and his claim of an actionable hostile work environment practice is based on only one allegation: that he was not staffed "on a[n] M&A deal for . . . periods of time" beginning in October 2016 at the earliest.[27] ¶ 276. This allegation is manifestly insufficient to support a claim for hostile work environment under federal law.

  *Rogers* is instructive. In that case, the court held that allegations concerning an employer's "failure to offer [certain] assignments to Plaintiff, its failure to promote Plaintiff, and its imposition of other obstacles to his professional advancement—which largely recast his timely and time-barred claims of disparate treatment—do not suggest the sort of objective hostility necessary to support a hostile work environment claim." *Id.* at \*8 (collecting cases[28]). The court noted that "a hostile work environment claim 'is a wholly separate cause of action designed to address other types *of work place* behavior, like constant jokes and ridicule or physical intimidation,'" and that the "episodic instances of disparate treatment alleged . . . do not plausibly suggest harassment of sufficient regularity to state a hostile work environment claim." *Id.* (citation omitted) (citing *Johnson* v. *Long Island Univ.*, 58 F. Supp. 3d 211, 225–26 (E.D.N.Y. 2014) (dismissing claim predicated on isolated acts spread over two years)). The court held that the plaintiff's allegations were insufficient to state a claim for hostile work environment. *Id.* at \*9; *accord Littlejohn*, 795 F.3d at 321 (dismissing Title VII and § 1981 claims).[29] Plaintiff's

---

[27] Plaintiff concedes that this "practice" began after he "became a third-year associate" in September 2016, ¶¶ 165, 169, and concedes that his hours remained within the Firm "average" in July and August, and well above average in September 2016 (243.7 hours). ¶ 176, nn. 25, 33.

[28] *See, e.g., id.* (citing *Hughes* v. *Xerox Corp.*, 37 F. Supp. 3d 629, 646–48 (W.D.N.Y. 2014) (dismissing claim predicated principally on facially neutral allegations of disparate treatment over three years, including exclusion from meetings, loss of work duties, derision regarding career advancement, denial of promotional opportunities, and unfair targeting, because such allegations did not evince a sufficient degree of objective hostility); *Parekh* v. *Swissport Cargo Serv., Inc.*, 2009 WL 290465, at \*5 (E.D.N.Y. Feb. 5, 2009) (concluding that plaintiff's complaints, including of "shift changes," "failure to promote, and his termination" did not sufficiently suggest the degree of hostility or offensiveness required to withstand a motion to dismiss)).

[29] Plaintiff's allegation of "failure to investigate" his staffing claims, *e.g.* ¶¶ 273, 173 n. 24, "does not 'contribute[] to or constitute[] a hostile work environment,' for such inaction does not 'alter the terms and

allegations here are, as a matter of law, analogous to those in *Rogers* and warrant dismissal.

        <u>Harassment</u>. Finally, plaintiff's claim of harassment under the NYSHRL against all defendants should be dismissed for failure plausibly to allege harassment. To plead harassment under the NYSHRL, a plaintiff must plausibly allege that he was subjected, because of race, to "inferior terms, conditions or privileges of employment." N.Y. Exec. L. § 296(1)(h)*, as amended*. Plaintiff also must plausibly allege both that he "subjectively perceive[d] the work environment to be abusive," and that "a reasonable person would find it hostile or abusive." *Weir* v. *Montefiore Med. Ctr.*, 2018 WL 1033238, at \*8 (S.D.N.Y. Feb. 22, 2018) (quotation omitted).[30]

        Here, notwithstanding an opportunity to amend in response to defendants' motion to dismiss, plaintiff has failed to identify any basis in "fact[]" for this claim. *E.g.*, *Henry*, 18 F. Supp. 3d at 402 n.3. The word "harass[ment]" appears in only four paragraphs outside the Counts, ¶¶ 193, 272, 311, *cf.* 302, and the only "harassment" plaintiff alleges is that certain unnamed partners "walked by Mr. Cardwell while knowing that they were not going to staff Mr. Cardwell on any assignments," knowing that it would be "virtually impossible for an associate to go throughout his or her day without encountering multiple lawyers and colleagues who would ask" what he was working on, ¶ 192, and that interactions like "constantly being asked what type of

---

conditions of . . . employment.'" *Rogers*, 2016 WL 889590, at \*8 (quoting *Fincher* v. *Depository Tr. & Clearing Corp.*, 604 F.3d 712, 724 (2d Cir. 2010)).

Construing plaintiff's claim to allege hostile work environment from "isolation" or "lack of direct communication," ¶¶ 218, 222, likewise would not save the claim. *Littlejohn*, 795 F.3d at 321 (dismissing claim and citing holding that "'diminished [job] responsibilities,' 'exclu[sion] from staff meetings,' deliberate 'avoid[ance],' 'yell[ing] and talk[ing] down to,' and an increased workload of menial tasks, among other factors, was not enough to show that defendants' conduct was sufficiently severe or pervasive") (quoting *Davis-Molina* v. *Port Auth. of N.Y. & N.J.*, 2011 WL 4000997, at \*11 (S.D.N.Y. Aug. 19, 2011)); *Fleming* v. *MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (no hostile work environment where "defendants wrongly excluded [the plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her").

[30]    These requirements survive a 2019 amendment to the NYSHRL. Even were courts to look to the "more liberal NYCHRL standard" to interpret the revised NYSHRL, courts nevertheless dismiss NYCHRL claims where, for example, the employee has not demonstrated a link between an "unpleasant office environment and discriminatory behavior based on race." *Moore*, 2016 WL 825001, at \*13.

legal matters one is working on [] would become a form of harassment and humiliation." ¶ 193. Plaintiff alleges that the individual defendants "caused" him to "experience a constant barrage of inquiries about staffing." *Id.*

These allegations are manifestly insufficient to sustain a claim that plaintiff was subjected to "inferior terms, conditions or privileges of employment" *because of* his race, either objectively or subjectively. N.Y. Exec. L. § 296(1)(h)*, as amended*; *Weir*, 2018 WL 1033238, at *8; *cf. LeeHim*, 2017 WL 5634128, at *4–6. Plaintiff's concession that such questions were a routine part of firm life, ¶ 192, rebuts any inference that defendants "caused" the questioning. And if questions by "multiple lawyers and colleagues" about workload were, as plaintiff concedes, a routine part of firm life, ¶ 192, there is not and cannot be support for the notion that an "objective" or "reasonable person" would perceive the questions as "hostile or abusive," or perceive the questions to constitute, standing alone, a "change in the conditions" of plaintiff's employment. *Weir*, 2018 WL 1033238, at *8. Mere allegations that a workplace has become subjectively "unpleasant" for an employee whose services are no longer in high demand do not support harassment claims. *Moore*, 2016 WL 825001, at *1, 13. Nor has plaintiff alleged, as he must, any "facts tending to show that" that the alleged inquiries he faced about staffing were directed at him "because of" his race. *Harris* v. *NYU Langone Med. Ctr.*, 2013 WL 3487032, at *27 (S.D.N.Y. July 9, 2013) (noting that the "law does not allow the Plaintiff to dispense with linking his claim of hostility to some attitude that the law forbids"), *rep't & rec. adopted*, 2013 WL 5425336, at *4 (S.D.N.Y. Sept. 27, 2013).[31]

---

[31]    *See also White* v. *Bridge Inc.*, 2019 WL 4805896, at *4 (S.D.N.Y. Sept. 30, 2019) (noting, in hostile work environment case, that "even repeated questioning about retirement is insufficient to plausibly allege discriminatory motivation"); *cf. Woods* v. *Enlarged City Sch. Dist. of Newburgh*, 473 F. Supp. 2d 498, 520–21 (S.D.N.Y. 2007), *aff'd*, 288 F. App'x 757 (2d Cir. 2008) (finding, on summary judgment, that plaintiff was not "intimidated, ridiculed or insulted because of her race," where, of 200 instances of alleged harassment, "only one ha[d] any racial overtones whatsoever").

**E.      Plaintiff's Section 1981 Aiding and Abetting Claims
         Should Be Dismissed**

To the extent plaintiff purports to bring claims against Reid, Bick, Hudson, Birnbaum, Brass, Wolfe, and Butler for aiding and abetting discrimination, retaliation, and hostile work environment under Section 1981 (Counts 4, ¶¶ 328–29; 5, ¶¶ 334–35; 6, ¶¶ 339–40), these claims should be dismissed. Aiding and abetting is "not a viable claim" under Section 1981. *Lue* v. *JPMorgan Chase & Co*., 2018 WL 1583295, at *10 (S.D.N.Y. Mar. 27, 2018); *accord Long* v. *Marubeni Am. Corp.*, 2006 WL 547555, at *4 n.4 (S.D.N.Y. Mar. 6, 2006) (collecting Supreme Court and circuit precedent).

## CONCLUSION

For the reasons set forth above, defendants respectfully request that the Court dismiss with prejudice: (i) all claims against the Additional Defendants; (ii) all claims to the extent that they are barred by the applicable statutes of limitations; (iii) the hostile work environment and harassment claims against all defendants; and (iv) all aiding and abetting claims under Section 1981.


Dated:      April 30, 2020
         New York, New York

              Respectfully submitted,


              PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP


              By: /s/ Bruce Birenboim
                  Bruce Birenboim
                  Jeh C. Johnson
                  Susanna Buergel
                  Marissa C.M. Doran

              1285 Avenue of the Americas
              New York, New York 10019-6064
              Telephone: (212) 373-3000
              bbirenboim@paulweiss.com
              jjohnson@paulweiss.com
              sbuergel@paulweiss.com
              mdoran@paulweiss.com
              *Attorneys for Defendants*