**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **KALOMA CARDWELL,** | |
| Plaintiff, | |
| **v.** | |
| **DAVIS POLK & WARDWELL LLP, Thomas Reid, John Bick, William Chudd, Sophia Hudson, Harold Birnbaum, Daniel Brass, Brian Wolfe, and John Butler,** | 1:19-cv-10256-GHW |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO MODIFY THE COURT'S SCHEDULING ORDER

Dated: July 13, 2020

David Jeffries, Esq.
1345 Avenue of the Americas, 33rd Floor
New York, New York 10105
Tel: 212-601-2770
djeffries@jeffrieslaw.nyc

*Attorney for Plaintiff*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ………………...…………………………...……………1

FACTUAL BACKGROUND …………………...…………………………….…..….…..2

    A.    The December 20, 2019 Scheduling Order……………...…..……….…..…2

        1.    Fact Discovery Deadlines Were Set…………………….…….…....…2

        2.    Plaintiff's History of Compliance with the Court's Orders ………...…2

    B.    The Unprecedented Coronavirus Public Health Emergency Impacted
Communication and Workflows……………………………….…………….......3

        1.    An Unprecedented Health Emergency and Unchartered Territory……..…3

    C.    The Amended Complaint and Discovery Requests Were Due
on March 2, 2020……………………………….……..…….…….…....…4

        1.    The Discovery Deadline Was Missed…….…………......................5

        2.    Plaintiff Receives and Responds to April 30 Letter….………..……...…5

    D.    Cardwell Made Discovery Proposal While Sheltering In Place,
Which Defendants Rejected….……………….……….………….……….....6

        1.    Proposal Alerted Defendants of Missed Deadline for Plaintiff's
Requests……………………….……………….…….……..….6

        2.    The Parties Met and Conferred and Filed Joint Letter Upon
Reaching Impasse……………………………………..........…7

LEGAL STANDARD……..…….………………………………………….……..…...7

ARGUMENT…………….………………………………………………………….....8

    A.    Good Cause Exists And Plaintiff Was Diligent in Seeking Modification
of the Order …………………………………………………….…….…......8

        1.    The Public Health Crisis Impacted Communication and
Workflows and Was Reasonably Unforeseeable at the
Time of the Scheduling Order ……………….…….……..……….…8

        2.    Plaintiff Was Reasonably Diligent and Acted in Good Faith in
Seeking a Modification of the Order ..................................……10

    B.    Other Factors Exist to Demonstrate Good Cause  ………..…….…..…………11

        1.    The Objected-to Discovery Is Essential to Cardwell's Claims
and Ability to Rebut Defendants' Defenses ……………………...……11

        2.    Cardwell Has Not Yet Had an Adequate Opportunity for
Discovery, Trial Is Not Imminent, and Fact Discovery Is Ongoing….…...12

    C.    Incurable Prejudice Will Not Inure to Defendants …………….……..…….…13

        1.     As a Practical Matter, Defendants Possess Relevant, Non-Privileged Documents That Can Be Produced Before the Current Fact Discovery Deadline ...………...………..…………..…...…..…..…13

        2.     Any Prejudice Associated with the Production of Additional Relevant, Non-Privileged Documents Can be Cured by Amending the Case Management Plan …………...………..………………………...…..14

D.     The Requested Sanction Is Disproportionate to the Offense …………………..…15

        1.     Default Is Not an Appropriate Remedy Even if No Good Cause Is Found Because It Would Significantly Impair Cardwell's Ability to Prove His Case …...………...………..……..…….……...…..15

        2.     Even If This Court Finds the Missed Default Unjustifiable, Default Should Not Result.………….…………..…………………………...…….....…..16

CONCLUSION …………….………..…………..………..…..…..…………..…………16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Davis v. City of New York*,
   No. 86 Civ. 6345(SWK), 1988 WL 42189 (S.D.N.Y. Apr. 28, 1988)…....………………16

*Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*,
   304 F.R.D. 170 (S.D. N.Y. 2014)…..……………….…………………………………….12

*Genova v. City of Glen Cove*,
   No. 13-CV-4088, 2015 WL 6143718 (E.D.N.Y. Oct. 19, 2015)………..……………….......8

*In City of Almaty, Kazahkstan v. Ablyazov*,
   No. 15CV05345AJNKHP, 2018 WL 2148430 (S.D.N.Y. May 10, 2018)………..………....11

*In re Bank of Am. Corp. Sec., Derivative, & Employment Ret. Income Sec. Act (ERISA) Litig.*,
   No. 09 MDL 2058 (DC), 2009 WL 4796169 (S.D.N.Y. Nov. 16, 2009)...……….………… 14

*Kassner v. 2nd Ave. Delicatessen, Inc.*,
   496 F.3d 229 (2d Cir. 2007)…..……………….…………………………………………7

*Kolerski v. United States*,
   No. 06CV422S, 2007 WL 2325856 (W.D.N.Y. Aug. 13, 2007)………..……………...…...14

*LaFlamme v. Carpenters Local No. 370 Pension Plan*,
   220 F.R.D. 181 (N.D.N.Y. 2003)………..……………….…………………………………...8

*Lopez v. Burris Logistics Co.*,
   No. 3:12-CV-1039 CSH, 2013 WL 5962100 (D. Conn. Nov. 6, 2013)...…………………..12

*Lory v. Gen. Elec. Co.*,
   179 F.R.D. 86 (N.D.N.Y. 1998)………..……………….…………………………….......15

*Lurch v. City of New York*,
   No. 19CV4350PAEJLC, 2020 WL 2029589 (S.D.N.Y. Apr. 27, 2020)...…………..………10

*New Falls Corp. v. Soni*,
   No. CV182768ADSAKT, 2020 WL 2836790 (E.D.N.Y. May 29, 2020) ..…………….....10

*Pettway v. American Cast Iron Pipe Corp.*,
   411 F.2d 998 (5th Cir. 1969)..………...….……………….………………………….....12

*Robinson v. T.J. Maxx, Inc.*,
   148 F.R.D. 490 (N.D.N.Y. 1993) ………...….……………….………………………….11

*Rodal v. Massachusetts Mut. Life Ins. Co.*,
   No. CV191960JMAAKT, 2020 WL 3448278 (E.D.N.Y. Apr. 23, 2020)....................10

*Rubik's Brand Ltd. v. Flambeau, Inc.*,
   329 F.R.D. 55 (S.D.N.Y. 2019)…..…………..…………………..………………..7, 13

*Waldman v. Wachovia Corp.*,
    No. 08 CIV. 2913(SAS), 2009 WL 86763 (S.D.N.Y. Jan. 12, 2009)…..……………..….14

*Walls v. Comm'r of Soc. Sec.*,
   No. 3:17 CV 1669 (RMS), 2020 WL 3026462 (D. Conn. June 5, 2020)..…………..….……10

*Young v. Sw. Airlines Co.*,
   No. 14CV1940LDHRLM, 2016 WL 3257008 (E.D.N.Y. May 4, 2016)…………………….7

## Statutes, Rules, and Other Authorities

Fed. R. Civ. P. 16(b)(4) ………..…………….…..…..………………………………1, 7

Fed. R. Civ. P. 37(a)(1) …………………….....…………………………………....11

Susan K. Grebeldinger, *How Can a Plaintiff Prove Intentional Employment Discrimination If She Cannot Explore the Relevant Circumstances*, 74 DENV. U. L. REV. 159 (1996)………….12

Plaintiff Kaloma Cardwell ("Cardwell") respectfully submits this memorandum of law and accompanying declarations in support of his motion, pursuant to Fed. R. Civ. P. 16(b)(4), to modify the Court's Scheduling Order (the "Order") to propound document requests and interrogatories on Davis Polk & Wardwell LLP ("Davis Polk" or the "Firm") and named defendants Thomas Reid, John Bick, William Chudd, Sophia Hudson, Harold Birnbaum, Daniel Brass, Brian Wolfe, and John Butler (the "Davis Polk Partners," and, together with Davis Polk, "Defendants").

## PRELIMINARY STATEMENT

On November 4, 2019—after filing a complaint with the Equal Employment Opportunity Commission (EEOC) and New York State Division of Human Rights (NYSDHR) as an associate and risking that his protected complaints might cause further retaliation—Cardwell exhausted a two-year long administrative process and commenced the instant action in federal court, asserting claims against Defendants for unlawful race-based discrimination and retaliation suffered while at Davis Polk. At an initial pre-trial conference held on December 20, 2019, a Scheduling Order was entered.  That Order instructed, among other things, that plaintiff serve certain written discovery requests by March 2, 2020. Unknown at the time of entry, that day would also become the deadline for Plaintiff to file an amended complaint and would fall within the global disruption caused by the ongoing pandemic. The Amended Complaint was timely filed but the  written discovery requests were not.  Ultimately, Cardwell was personally impacted by the COVID-19 pandemic and subsequently constrained in his ability to meet certain discovery deadlines. As reflected in a June 30, 2020 joint letter to the Court (ECF No. 57), the parties were unable to resolve the resultant discovery dispute that preceded the July 7, 2020 pre-motion conference. During the conference, Plaintiff received permission from the Court to make the instant motion seeking an extension of time to serve document requests and interrogatories.

1

For the reasons stated herein, including Plaintiff's desire for a resolution of the claims on their merits, Plaintiff respectfully submits that good cause exists to amend the Order and therefore asks that Plaintiff be permitted to serve document requests and interrogatories on Defendants.

## FACTUAL BACKGROUND

### A.  The December 20, 2019 Scheduling Order

#### 1.  Fact Discovery Deadlines Were Set by the Court

On December 20, 2019, counsel for Cardwell and Defendants appeared before Your Honor and were assigned a series of dates governing when each phase of this litigation was to be completed. Jeffries Decl. ¶ 5.   These dates were incorporated into the current Civil Case Management Plan and Scheduling Order (ECF No. 27).   Central to this motion was the establishment of March 2, 2020 as the date by which each party was to serve initial requests for the production of documents and Rule 33.3(a) interrogatories (*id.* ¶ 7b and ¶ 7c). The Order called for fact discovery in its entirety to be completed by September 16, 2020 (*id.* ¶ 7a).

#### 2.  Cardwell's History of Compliance with the Court's Orders

Before and after the Order was entered, Plaintiff complied with the following Orders:

- November 5 order (ECF No. 19) directing the parties to file (i) a pretrial conference letter regarding the status of the case, which was timely filed on December 13 (ECF No. 25), and (ii) a proposed case management plan, which was timely submitted on December 13;

- November 5 order (ECF No. 19) directing the parties to appear at the pretrial conference on December 20, which the parties did on December 20;

- May 19 order (ECF No. 48) permitting Cardwell to file his opposition to Defendants' partial motion to dismiss by June 4, which was timely filed on June 4 (ECF No. 51).

However, for the reasons set forth *infra*, Plaintiff did not comply with the portion of the Scheduling Order requiring the service of written discovery requests by March 2, 2020.

2

**B. The Unprecedented Coronavirus Public Health Emergency Impacted Communication and Workflows**

### 1. An Unprecedented Health Emergency and Unchartered Territory

As stated *supra*, in January 2020, the first U.S. case of the novel coronavirus ("COVID-19") was confirmed, marking the start of a public health emergency with the potential to spread rapidly, unpredictably, and weeks before there were any signs of its presence and impact. Around that time, it was widely reported that COVID-19 was largely unknown to the global medical and scientific community, highly contagious, and possibly the type of airborne virus to trigger unprecedented health crises. As a result of this unfolding reality, a number of unprecedented steps were taken that month and thereafter, including China's decision to lock down a city of 11 million people (a move the World Health Organization ("WHO") then-described  as "unprecedented in public health history")[1] and President Trump's decision to suspend entry into the United States by any foreign nationals who traveled to China within the past 14 days.[2] Cardwell monitored these and other unfolding events. Cardwell Decl. ¶ 2.

On March 1, New York reported its first case of COVID-19 (a concern that Cardwell feared would materialize).[3] Cardwell Decl. ¶ 3.  By that time, New York City residents had begun panic buying, leaving many pharmacies without critical supplies.[4] Cardwell Decl. ¶ 9.  On March 3, officials reported the second confirmed local case of COVID-19, which suggested that community spread had already occurred. Cardwell Decl. ¶ 3.  On March 7, New York's Governor declared a State disaster emergency.[5] On March 10, he ordered the nation's first containment zone in New

---

[1]       https://www.reuters.com/article/us-china-health-who-idUSKBN1ZM1G9
[2]       https://www.nytimes.com/2020/01/31/business/china-travel-coronavirus.html
[3]       https://www.nytimes.com/2020/03/01/nyregion/new-york-coronvirus-confirmed.html
[4]       https://www.nytimes.com/2020/03/01/nyregion/new-york-city-coronavirus.html
[5]       https://www.governor.ny.gov/news/no-202-declaring-disaster-emergency-state-new-york

Rochelle, NY (another development that concerned Cardwell).[6]  Cardwell Decl. ¶¶ 3-4.  On March 11, the WHO declared COVID-19 a global pandemic.[7] On March 13, the President of the United States declared the pandemic a national emergency effective March 1, 2020, warranting an emergency declaration for all U.S. states.[8] The same day, the Chief U.S. District Judge of the Southern District of New York issued a standing order that noted "the Centers for Disease Control and Prevention and other public health authorities have advised the taking of precautions to reduce the possibility of exposure . . . and slow the spread of the disease."[9] By March 15, New York State courts ordered a moratorium on new trials and "postpone[ed] all 'nonessential' services as officials move[d] to slow a growing . . . outbreak."[10]  On March 18, New York's Governor "ordered all non-essential retailers and businesses to close, and for residents across the state to stay home as much as possible in an effort to stop the spread of the novel coronavirus"[11] and did not permit certain reopenings until June 8. Cardwell monitored and responded to these types of developments, weighed evacuating the City on short notice, and ultimately left New York City to shelter in place with family in North Carolina.  Cardwell Decl. ¶¶ 3-4, 8, 10, 11, 12.

In just a few short months, roughly 32,000 New York residents have died due to coronavirus complications, with about 22,000 occurring among New York City residents alone.[12]

## C.  The Amended Complaint and the Parties' Discovery Requests Were Due March 2, 2020

### 1.  Discovery Deadline Missed by Plaintiff's Counsel

---

[6]      https://www.nytimes.com/2020/03/10/nyregion/coronavirus-new-rochelle-containment-area.html
[7]      https://time.com/5791661/who-coronavirus-pandemic-declaration/
[8]      https://www.cnbc.com/2020/03/13/trump-will-hold-a-press-conference-at-3-pm-et-to-discuss-coronavirus-response.html
[9]      https://www.nysd.uscourts.gov/sites/default/files/2020-03/20%20MISC%20154a%20(002)%20-%20In%20Re%20Coronavirus-COVID-19%20Pandemic.pdf
[10]     https://www.law.com/newyorklawjournal/2020/03/15/ny-courts-to-end-nonessential-services/
[11]     https://ny.curbed.com/2020/3/20/21187022/coronavirus-new-york-shutdown-shelter-in-place
[12]     https://www.nytimes.com/interactive/2020/us/new-york-coronavirus-cases.html

The deadline for Plaintiff to serve written discovery requests was March 2, 2020. That deadline was not met. Jeffries Decl. ¶ 9. Admittedly, Cardwell was not made aware of such deadline until May 8, and did not appreciate the relevance of the deadline until that time. Jeffries Decl. ¶ 10; Cardwell Decl. ¶ 7. In the weeks preceding the filing, Cardwell and Jeffries worked around the clock to file the Amended Complaint, which shared the same March 2 deadline. Jeffries Decl. ¶ 8, Cardwell Decl. ¶ 6. It was within this unprecedented period of disruption and uncertainty for Jeffries and Cardwell (Jeffries Decl. ¶ 11), along with Cardwell's own experience with and concerns about COVID-19 (Cardwell Decl. ¶ 5), and their joint efforts to prosecute this case, that Plaintiff missed the at-issue discovery date.

### 2.      Plaintiff Receives and Responds to Defendants' April 30 Letter

On April 30, 2020, Defendants sent a letter asserting that Plaintiff failed to serve responses and objections to ***their*** March discovery requests on April 2, 2020, while acknowledging "the serious disruptions caused by the present crisis." ECF No. 57-1. Notably, the letter did not ask when Plaintiff would serve reciprocal requests, which were also due that day. *Id.* Cardwell did not receive contemporaneous knowledge of this correspondence. Cardwell Decl. ¶¶ 16-17. However, at the time the letter was sent, Cardwell was sheltering in place in North Carolina and had experienced COVID-19 like symptoms for several weeks. Cardwell Decl. ¶¶ 5, 8, 10-11, 13.

On May 8, 2020, Jeffries requested Cardwell's approval of a draft response to the April 30 letter. Cardwell Decl. ¶ 13. Once the missed deadline was realized and appreciated, a potential plan was developed to address the outstanding discovery responses and objections (the issue Defendants raised), and Plaintiff's own written discovery requests (to which Defendants had been silent). Cardwell Decl. ¶ 17. Cardwell had just lost a family member two days prior, and spent the next several days planning for and attending their funeral. Cardwell Decl. ¶¶ 15-16.

**D.  Plaintiff Made Proposal While Sheltering In Place, Which Defendants Rejected**

    **1.  Proposal Alerted Defendants of Missed Deadline for Plaintiff's Requests**

On May 18, 2020, Plaintiff made a proposal to Defendants designed to rectify the at-issue deficiencies.  Cardwell Decl. ¶ 18.  In it, Plaintiff voluntarily acknowledged that the March 2 deadline to serve document requests and interrogatories had also been missed—which Defendants' prior correspondence did not address.  *See* ECF No. 57.  Plaintiff cited the pandemic's impact and offered to serve outstanding discovery by July 4, 2020.  *Id.*  In two separate communications on May 18, Defendants stated that they "need[ed] to discuss the issues . . . with our client" will "circle back" likely "end of the week/next week."  Jeffries Decl. ¶ 16; Cardwell Decl. ¶ 19.

Defendants' response came nearly 19 days later, on June 5, 2020, accompanied by a request to a meet and confer.  Cardwell Decl. ¶ 19.  Plaintiff reminded Defendants of the prior May 18, 2020 proposal and agreed to meet and confer to discuss it, in the hopes of promptly revolving any of Defendants' concerns.

    **2.  The Parties Met and Conferred and Filed a Joint Letter Upon Reaching Impasse**

On June 10, 2020, the parties met and conferred regarding the May 18, 2020 proposal.  Jeffries Decl. ¶  20.  That day, Defendants' rejected the proposal but explicitly stated that they would take it back to their clients for further consideration.  *Id.*  Not receiving a response, Plaintiff followed up on June 17, 2020, acknowledging, *inter alia*, "the pandemic's impact on discovery."  *Id.* ¶ 21.  In their June 22, 2020 response, Defendants rejected the proposal and stated that this time they would not be reconsidering their position.  Jeffries Decl. ¶  22.  Cardwell returned to New York City the following day.   Cardwell Decl. ¶ 11.

On June 25, 2020, despite Defendants' rejection of the proposal, and even while the parties contemplated  filing  a  joint  discovery  dispute  letter,  Plaintiff  informed  Defendants  that

"[c]onsistent with our [proposal] we are in the process of responding to your interrogatories and document requests" and "working to exceed the July 4th target date."  Jeffries Decl. ¶ 23.  The parties held a final meet and confer on June 26, 2020 and, unable to resolve this dispute, the parties filed their Joint Letter to the Court on June 30, 2020 (ECF No. 57).  Jeffries Decl. ¶ 24.

## LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 16(b)(4), "[a] court-ordered discovery schedule may be modified with the court's consent, for good cause shown."  *Rubik's Brand Ltd. v. Flambeau, Inc.*, 329 F.R.D. 55, 58 (S.D.N.Y. 2019).  Because "Rule 16 does not set forth a definition of 'good cause,'" courts in this district "have considered varying factors in determining whether a party has established good cause sufficient to justify modification of a Rule 16(b) scheduling order."  *Id.* "Factors differ based upon the posture of the case and the particular type of relief sought – for example, an extension of the discovery schedule, leave to file an untimely amended pleading, or a 'reopening' of discovery.'"  *Id.*

In the context of a motion to amend a scheduling order, the Second Circuit has stated that the primary factor in evaluating good cause is the moving party's diligence with respect to the modification sought. *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (explaining that diligence is the primary but not the sole consideration).[13]

"Good cause may be established if the moving party can demonstrate that . . . reasonably unforeseeable events occurring after the entry of the scheduling order precluded compliance with

---

[13]   However, in the specific context of a motion to reopen discovery, courts in this jurisdiction have also considered the following six factors when determining whether good cause exists: "1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence."  *Young v. Sw. Airlines Co.*, No. 14CV1940LDHRLM, 2016 WL 3257008, at *2 (E.D.N.Y. May 4, 2016) (citations omitted) (finding "these factors weigh[ed] in favor of reopening discovery for a limited purpose").

the deadlines in the [scheduling order]." *LaFlamme v. Carpenters Local No. 370 Pension Plan*, 220 F.R.D. 181, 186 (N.D.N.Y. 2003).

A district court "has broad discretion in deciding whether good cause exists to amend the scheduling order[.]" *Genova v. City of Glen Cove*, No. 13-CV-4088, 2015 WL 6143718, at *3 (E.D.N.Y. Oct. 19, 2015); *see also Lopez v. Ramos*, No. 11-cv-7790, 2013 WL 6912692, at *2 (E.D.N.Y. Dec. 30, 2013) ("A district court has broad discretion to direct and manage the pre-trial discovery process.") (internal quotation omitted).

## ARGUMENT

### A.  GOOD CAUSE EXISTS AND PLAINTIFF WAS DILIGENT IN SEEKING MODIFICATION OF THE SCHEDULING ORDER

As stated *supra*, "[g]ood cause may be established if the moving party can demonstrate that . . . reasonably unforeseeable events occurring after the entry of the scheduling order precluded compliance with the deadlines in the [scheduling order]." *LaFlamme*, 220 F.R.D. at 186.  During the five intervening months between when the Scheduling Order and the instant motion were been filed, a drastically different state of affairs exists for the parties, their counsel, and this Court.  For the reasons set forth *infra*, all of which were "reasonably unforeseeable" in December 2020, Plaintiff respectfully requests that the Court find good cause to modify the scheduling order to permit Plaintiff to serve written discovery requests.[14]

### 1.  The Public Health Crisis Impacted Communication and Workflows and Was Reasonably Unforeseeable at the Time of the Scheduling Order

The public health emergency caused disruptions to virtually every facet of society, including the legal profession.  Jeffries Decl. ¶¶ 11, 14.  Both parties recognized this reality at

---

[14]     As explained further in the Cardwell Declaration, the Court of the full set of explanations for why the March 2, 2020 deadline was not met has been complicated in certain respects, and impeded in others,  by the sudden withdrawal of co-counsel on June 19, 2020—before the July 7, 2020 pre-motion conference.  As a result, this Motion does not address why such counsel was not able to comply with the at-issue deadline, or any unforeseeable events that Plaintiff could not anticipate at the time of the December Scheduling Order.

various points over the past few months, beginning in March 2020.[15]   One consequence of this reality is that it has disrupted, and at times, severely delayed, attorney-client communications between Cardwell and Jeffries.  Cardwell Decl. ¶ 16; Jeffries Decl. ¶ 14.  There is no precedent in this case of such lengthy periods of non-communication.  Cardwell's relocation also prevented him from accessing documents that would inform the outstanding discovery—documents that he did not regain access to until June 23, 2020.  Jeffries Decl. ¶¶ 13, 21.  Certainly, at the time the Scheduling Order was entered, neither Cardwell nor Jeffries could have anticipated the pandemic, or the impact it would have on their ability to continue with discovery—including through stay-at-home or shelter-in-place orders, the necessity of self-quarantine, and need to be in proximity with and support family members during this critical time.   These are all factors that were unforeseeable at the time of the Scheduling Order.  *LaFlamme*, 220 F.R.D. at 186.

Within the last few months, courts have recognized the disruptions caused by the global pandemic in cases wherein similar relief was sought. For example, in a decision that issued on April 23, 2020, a sister court in this district explained in response to a request to extend certain discovery deadlines, that:

> Although the Court previously stated that there would be no further extensions of discovery deadlines, the global pandemic has substantially impacted the practice of law in this District and many others. As a result, ***cases have been affected in ways no one could have imagined.*** Consequently, the Court will extend the deadlines at issue, as set forth below.

*Rodal v. Massachusetts Mut. Life Ins. Co.*, No. CV191960JMAAKT, 2020 WL 3448278, at *1 (E.D.N.Y. Apr. 23, 2020) (emphasis added).   The Southern District acknowledged the same in granting a request to stay discovery for 90 days in light of the pandemic.  *Lurch v. City of New*

---

[15]     *See, e.g.*, Defendants' March 24, 2020 letter (ECF No. 41) seeking an extension of their time to answer the amended complaint "in light of the difficulties resulting from the COVID-19 pandemic" (*id.* at 1), which was granted on March 24 (ECF No. 42).

*York*, No. 19CV4350PAEJLC, 2020 WL 2029589, at *2 (S.D.N.Y. Apr. 27, 2020) ("Given the current and ongoing disruptions caused by COVID-19 and that this is the [moving party's] first request for a stay, the request to stay this case for 90 days is hereby granted[.]").[16]

Lastly, standing orders from this District have weighed in on the pandemic's impact, noting that "[i]ndividual judges presiding over civil and criminal proceedings may take such actions consistent with this order as may be lawful and appropriate to ensure the fairness of the proceedings and preserve the rights of the parties"[17] and "[c]ompliance with all trial-specific deadlines in civil and criminal cases shall be at the discretion of the presiding judge."[18]

### 2. Plaintiff Was Reasonably Diligent and Acted in Good Faith in Seeking a Modification of the Order

As soon as Cardwell and Jeffries realized that the March deadline was missed, they immediately began discussing how to cure the deficiency. Cardwell Decl. ¶¶ 16-17. Such discussions culminated in a proposal to Defendants on May 18, 2020—one that is consistent with, and designed to ensure compliance with, the September 16, 2020 fact discovery deadline.[19] Cardwell Decl. ¶ 18. Although Defendants immediately acknowledged receipt of the proposal, Plaintiff stated that a response would be forthcoming after consultation with their clients. Jeffries

---

[16]    *See also Walls v. Comm'r of Soc. Sec.*, No. 3:17 CV 1669 (RMS), 2020 WL 3026462, at *3 (D. Conn. June 5, 2020) (noting that although counsel offered no explanation for his "delay in filing the pending motion, during the time period at issue, all parties involved were subject to Stay-at-Home Orders due to the Covid-19 pandemic. Even if the circumstances posed by the pandemic did not exist, however, the Court, "like other courts in this Circuit, . . . [would still] exercise its discretion and allow [the] plaintiff's counsel to file . . . outside the . . . filing deadline."); *New Falls Corp. v. Soni*, No. CV182768ADSAKT, 2020 WL 2836790, at *6 (E.D.N.Y. May 29, 2020) (extending deposition deadline sua sponte after "tak[ing] into account the complications raised by the COVID-19 pandemic").
[17]    https://www.nysd.uscourts.gov/sites/default/files/2020-03/20%20MISC%20154a%20(002)%20-%20In%20Re%20Coronavirus-COVID-19%20Pandemic.pdf.
[18]    https://www.nysd.uscourts.gov/sites/default/files/pdf/covid-19/Standing%20Order_%20This%20Matter%20Relates%20to_%20Extension%20of%20Time%20Under%20The%20Speedy%20Trial%20Act%20_%2020%20MISC%20196.pdf.
[19]    Through its proposal, Plaintiff intended to reach agreement with Defendants to, *inter alia*, extend the deadline to serve outstanding discovery in accordance with 7.g of the Scheduling Order, which states that: "Any of the deadlines in paragraphs 7(b), (c), (e), and (f) [including the deadline for serving written discovery] may be extended by the written consent of all parties without application to the Court, provided that all fact discovery is completed by the date set forth in paragraph 7(a)." That was precisely the nature of Plaintiff's proposal.

Decl. ¶ 16; Cardwell Decl. ¶ 19.  Plaintiff waited nearly three weeks for Defendants' response. Jeffries Decl. ¶ 18.

When Defendants responded, they rejected Plaintiff's proposal.  Jeffries Decl. ¶ 20.  The parties then complied with and satisfied Fed. R. Civ. P. 37(a)(1)'s "meet and confer" require.  At all relevant times, Cardwell sought a modification of the schedule in good faith, and as soon as the parties' reached impasse they complied with Individual Rules Section 2.C.ii in order to promptly seek a pre-motion conference and raise the instant dispute.  *See generally* ECF No. 57 (June 30, 2020 Joint Discovery Letter).  In cases where, like here, discovery extensions are not sought as a "stalling" tactic, courts have granted requests to extend pre-trial orders.  *See, e.g.*, *Robinson v. T.J. Maxx, Inc.*, 148 F.R.D. 490, 492 (N.D.N.Y. 1993) (granting Rule 16 deadline extension even where the court "has already allowed numerous extensions," citing that "there is no evidence in this particular case to suggest that [certain] extensions [were sought] as a stalling technique").

## B.  OTHER FACTORS EXIST TO DEMONSTRATE GOOD CAUSE

### 1.  The Objected-to Discovery Is Essential to Cardwell's Claims and Ability to Rebut Defendants' Defenses

The written discovery that Plaintiff seeks is essential to his claims and ability to pursue a resolution of such claims on their merits.  In *City of Almaty, Kazahkstan v. Ablyazov*, No. 15CV05345AJNKHP, 2018 WL 2148430, at *3 (S.D.N.Y. May 10, 2018), the Court granted a limited request to reopen fact discovery, despite "extensive" discovery having already been conducted, on the basis that "the [] discovery is needed to fairly resolve [plaintiff's] claims so they can be presented on their merits."  *Id.* at *2, 3.  Notwithstanding a failure to meet the March 2 deadline, a resolution of Plaintiff's claims on the merits requires—at a minimum—Plaintiff's ability to serve written discovery requests targeted to the full universe of claims and allegations set forth in the Amended Complaint.  That has not yet happened.

11

Moreover, "courts routinely state that discovery in employment discrimination litigation is special. An individual plaintiff suing 'a huge industrial employer' creates a 'modern day David and Goliath confrontation.' [H]e needs ample discovery, because 'the nature of the proofs required to demonstrate unlawful discrimination may often be indirect or circumstantial.'"   Susan K. Grebeldinger, *How Can a Plaintiff Prove Intentional Employment Discrimination If She Cannot Explore the Relevant Circumstances,* 74 DENV. U. L. REV. 159, 179 (1996) (quoting *Pettway v. American Cast Iron Pipe Corp.*, 411 F.2d 998, 1005 (5th Cir. 1969)).  Where Plaintiff is foreclosed from serving written discovery, after failing to do so by a scheduling order deadline, "the interest[s] of justice" may not be served and a "resolution by procedural default" may follow.  *Lopez v. Burris Logistics Co.*, No. 3:12-CV-1039 CSH, 2013 WL 5962100, at *3 (D. Conn. Nov. 6, 2013).

## 2.   Cardwell Has Not Yet Had an Adequate Opportunity for Discovery, Trial Is Not Imminent, and Fact Discovery Is Ongoing

In cases—like this one—that were "relatively early in the discovery process," where "the parties ha[d] neither taken nor scheduled any depositions," "they ha[d] not identified experts or exchanged expert reports," "ha[d] not made motions for summary judgment," "there [was] no trial date set," fact discovery was ongoing, and discovery was not set to conclude for a few months, courts have extended discovery deadlines in case management plans over the objecting party's assertions of prejudice.  *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 176-77 (S.D.N.Y. 2014).

Likewise, in *Rubik's Brand Ltd. v. Flambeau, Inc.*, 329 F.R.D. 55 (S.D.N.Y. 2019), the Court granted a request to serve written discovery requests after the deadline to serve such discovery under the scheduling order had expired, over the defendant's objections.  In so doing, the Court noted that "it has granted only one extension of the discovery schedule," "expert

discovery has not yet ended," and "no trial date has been set and thus the additional proposed discovery will not impact the timing on a final resolution of this case." *Id.* at 60.

Taken together, and where fact discovery is ongoing and not set to close until September 2020, depositions have not been noticed or scheduled, experts have not been identified, and trial is not imminent, Plaintiff believes that any arguable prejudice can be mitigated through a modest extension of certain dates in the Scheduling Order. *Lopez*, 2013 WL 6912692, at *2.

## C.  INCURABLE PREJUDICE WILL NOT INURE TO DEFENDANTS

### 1.  As a Practical Matter, Defendants Possess Relevant, Non-Privileged Documents That Can Be Produced Before the Current Fact Discovery Deadline

On December 5, 2017, Defendants submitted a 25-page brief to the New York State Division of Human Rights ("NYSDHR") in connection with Plaintiff's agency filing, after conducting various internal investigations (between 2015-2017) and collecting, reviewing, and organizing documents. *Id.*  Because Plaintiff has not received—at a minimum—a full set of documents submitted in connection with these proceedings, at least one discrete category of discovery that Plaintiff would seek exists that could ostensibly be produced by the September deadline.  Similarly capable of production before the cutoff are any non-privileged emails and documents that Defendants reviewed in connection with, *inter alia*, its internal investigation of Plaintiff's claims and their written submissions in connection with the agency proceedings.

Courts have held that producing parties would not be prejudiced by requests seeking documents and information already collected and reviewed; and, thus, such materials can (and should) be produced by the current fact discovery cut-off in response to a timely request (if Plaintiff's motion is granted). *See, e.g.*, *In re Bank of Am. Corp. Sec., Derivative, & Employment Ret. Income Sec. Act (ERISA) Litig.*, No. 09 MDL 2058 (DC), 2009 WL 4796169, at *3 (S.D.N.Y. Nov. 16, 2009) (ordering the production of documents that were "already collected, reviewed, and

organized the documents for production in other proceedings," and thus, "the burden of making [a] copy for plaintiffs here will be slight"); *Waldman v. Wachovia Corp.*, No. 08 CIV. 2913(SAS), 2009 WL 86763, at *2 (S.D.N.Y. Jan. 12, 2009) (noting "that [the] burden [of production] is slight when a defendant has 'already found, reviewed and organized the documents'") (citation omitted). Here, the burden should also be "slight" and conducive to meeting the September fact discovery cutoff at least for certain categories of discovery.  *In re Bank of Am.*, 2009 WL 4796169, at *3.

### 2.  Any Prejudice Associated with the Production of Additional Relevant, Non-Privileged Documents Can be Cured by Amending the Case Management Plan

Given the posture of this action, Defendants have advocated that "either a significant extension or modification of the schedule is needed or . . . a discovery stay . . . while th[e] motion to dismiss was determined." July 17, 2020 Hrg. Tr. at 22:11-14.  Particularly where fact discovery is proceeding against the backdrop of public health crisis, Plaintiff supports a slight modification of the schedule so the requested written discovery can be served, responded to, and any resulting disputes (including with respect to Defendants' privilege assertions) are briefed with the Court. *See Kolerski v. United States*, No. 06CV422S, 2007 WL 2325856, at *5 (W.D.N.Y. Aug. 13, 2007) (denying preclusion where "[t]he availability of an extension of the Scheduling Order (sought by all parties) ultimately cures any prejudice defendant may have due to the delay").

 If permitted, this would be the parties' first request to extend any of the various dates set forth in the Case Management Plan and Scheduling Order.  *Lurch*, 2020 WL 2029589, at *2 ("Given the current and ongoing disruptions caused by COVID-19 and that this is the [moving party's] first request for a stay [discovery], the request to stay . . . is hereby granted[.]").

### D.  THE REQUESTED SANCTION IS DISPROPORTIONATE TO THE OFFENSE

### 1.  Default Is Not an Appropriate Remedy Even if No Good Cause Is Found Because It Would Significantly Impair Cardwell's Ability to Prove His Case

Even where a moving party seeking to extend a discovery schedule or deadline had failed to show good cause, courts nonetheless grant such requests where "precluding [the moving party from doing so] would significantly impair his ability to prove his case." *Lory v. Gen. Elec. Co.*, 179 F.R.D. 86, 89 (N.D.N.Y. 1998). The court in *Lory* went on to state that "where the noncompliance will not cause an adjournment of either the deadline for filing dispositive motions or the scheduled trial date, and where [the opposing party] suffered no prejudice from the noncompliance, preclusion . . . would sanction too greatly [the moving [party's] noncompliance with the [scheduling order]." *Id.*

As stated *supra*, neither a trial date has been set nor will the requested extension affect any deadlines for dispositive motions (which are now fully briefed and before the Court). Moreover, Defendants are the only available source for the requested discovery; the documents and information to be provided during discovery in this action rests solely with Defendants and cannot be obtained elsewhere or through other sources.[20] Accordingly, where the Court has discretion to impose a sanction other than waiver under these circumstances, Plaintiff respectfully requests that the Court exercise such discretion to afford Plaintiff one final opportunity to serve document requests and interrogatories so that he has a meaningful opportunity to prosecute his case.

### 2. Even If This Court Finds the Missed Deadline Unjustifiable, Default Should Not Result

Fed. R. Civ. P. 16(f) provides that "[i]f a party or party's attorney fails to obey a scheduling or pretrial order . . . , the judge . . . may make such orders with regard thereto as are just[.]." It is for this reason that courts in this district have stated that "the protections and sanctions found in

---

[20]     Thus, as a practical matter—if Defendants' request for waiver is granted—it is unclear to Plaintiff how the depositions of the Davis Polk Partners, or any relevant third-parties, can be taken by the September 2020 deadline if Defendants do not produce *any* documents to Plaintiff prior to the close of fact discovery. As Defendants represented to this Court, Defendants do not intend to produce *any* documents until no less than 30 days after service of their Answer to the Amended Complaint. Because the timeline for such productions are unclear, Plaintiff seeks guidance from the Court as to the productions to be made by Defendants and the timelines associated therewith.

the discovery rules are not absolute and contemplate the use of judicial discretion." *Davis v. City of New York*, No. 86 Civ. 6345(SWK), 1988 WL 42189, at *2 (S.D.N.Y. Apr. 28, 1988).  As such, courts may but are not required to impose a sanction for a violation of the Rules, although a court would be well within its wide range of discretion to do so.

Based on the record before this Court, Plaintiff does not believe that the harsh sanction of default or waiver is appropriate.  Among other considerations, such drastic remedy is not required to serve as a deterrent to missing future deadlines, or to encourage Plaintiff's participation in the pre-trial process, particularly where (i) Jeffries and Cardwell are now keenly aware of the schedule, by which they fully intend to abide (or intend to make timely requests for any extensions to these deadlines); and (ii) the Court has already instructed the parties to "review the case management plan and scheduling order itself, and potentially to review [the Court's] comments from the initial pretrial conference" to "frame your understanding of the case" and associated deadlines.  July 17, 2020 Hrg. Tr. at 26:2-5.  Plaintiff has certainly heeded this Court's instruction and intends to fully comply with all current and future orders.  Cardwell Decl. ¶ 28.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the instant motion, modify the Case Management Plan and Scheduling Order to allow Cardwell to propound document requests and interrogatories, and grant such other and further relief as may be just and proper.