UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KALOMA CARDWELL,<br><br>                             Plaintiff,<br><br>v.<br><br>DAVIS POLK & WARDWELL LLP, Thomas Reid, John Bick, William Chudd, Sophia Hudson, Harold Birnbaum, Daniel Brass, Brian Wolfe, and John Butler,<br><br>                             Defendants. | 1:19-cv-10256-GHW |

### DECLARATION OF KALOMA CARDWELL

I, Kaloma Cardwell, declare pursuant to 28 U.S.C. § 1746 as follows:

### A Public Health Crisis and Pandemic Hit New York

1. I am a resident of New York City, and have lived in New York City since 2014.

2. Beginning in January/February 2020, I followed news stories reporting that the government of China had imposed a lockdown in certain cities in an effort to control an outbreak of a novel coronavirus disease. At the time, I believed that such a lockdown raised significant human rights concerns and had begun analyzing factors that could contribute to a government's decision to take such drastic measures.

3. From February through early March 2020, I became increasingly concerned about the possibility of a similar outbreak and lockdown occurring in New York City, given the structure of the city's social and medical systems, the race and class makeup of its residents, and the possibility that this country's federal response would be inadequate (particularly after it was reported that President Trump had fired the government's entire pandemic response chain of command, including White House Management infrastructure, in 2018).

1

4. During this period, I had three primary concerns in connection with the developing public health crisis: *First*, I was uncomfortable with the prospect of being on lock down in NYC, for a potentially indefinite period of time, and away from my then 16-month old daughter (who resides in another state). *Second*, I believed it would be best to shelter in place with my family members—all of whom live outside of New York State—given the uncertainty and threat posed by the virus. Relatedly, I also believed that the public health infrastructure and other key resources in New York City, and my neighborhood in particular, were unprepared to meet the needs of a massive public health crisis. *Third*, by sheltering in place with family in North Carolina, I could decrease the likelihood that my mother, who has an underlying health condition, would be unnecessarily exposed to COVID-19.

5. Between late February and March 2, 2020, I experienced symptoms that—at the time—were believed to be consistent with COVID-19, namely a cough, respiratory irregularities, and certain flu-like symptoms like body aches. During this time, I noticed an unusual breathing sensation that became increasingly noteworthy (and, at times, concerning)—particularly when the first confirmed case of COVID-19 in New York State was reported on March 1, 2020.

**Cardwell Drafts and Prepares to File the Amended Complaint**

6. Against this backdrop, and despite these symptoms, my current counsel, David Jeffries, and I worked tirelessly for countless days to draft, prepare, and file the Amended Complaint that was submitted via ECF on March 2, 2020.

7. At the time the Amended Complaint was filed, I was not aware of the March 2, 2020 discovery deadline set forth in the case management plan and scheduling order. Had I known about this deadline, I would have ensured that, between myself and my counsel, we either would

have complied with the Court's order or sought an extension to comply (consistent with Your Honor's Individual Rules).

### **Cardwell Begins Evacuation Plan and Temporarily Relocates**

8. As soon as the Amended Complaint was filed, I continued to monitor my symptoms and news reports detailing the worsening nature of the outbreak. I began taking precautions to not infect any neighbors in the event that I contracted COVID-19, and weighed the decision to shelter in place in North Carolina or in a state where I could access my daughter on short notice.

9. At this time, panic-buying had already begun and I started to order basic supplies (e.g., a water filter and first aid kit) and necessities (e.g., a thermometer) in the event of an immediate lockdown order.

10. On or around March 9, 2020, I decided to shelter in place in North Carolina.

11. On March 13, 2020, I left New York and sheltered in North Carolina until June 23, 2020.

12. Given news reports concerning the rising rate of infection in New York, and the likelihood of transmission by symptomatic and asymptomatic individuals, I self-quarantined upon reaching North Carolina (which included a weeklong stint with my closest cousin and his wife).

13. My COVID-19 symptoms progressed to eventually include a rash and shortness of breath. These symptoms periodically fluctuated and lasted throughout roughly all of March.

### **Defendants File Partial Motion to Dismiss and Assert Discovery Waiver**

14. On April 30, 2020, Defendants filed partial motion to dismiss the Amended Complaint. Unknown to me at the time, Defendants also sent my counsel correspondence (ECF No. 57-1) asserting that because I failed to serve responses and objections to their discovery requests on or around April 2 (four weeks prior), I waived my objections.

15. On May 6, 2020, my cousin's wife suddenly passed away at the age of 37 years old. Given the untimely nature of her passing, my oldest brother and I stayed with my cousin that night, and helped him navigate with that tragic reality. I attended her funeral on May 16, 2020. I also helped to coordinate certain funeral arrangements for my cousin during that ten-day period, given the sudden nature of his wife's passing and concerns around socially distancing, particularly where so many family members wanted to but couldn't gather in large numbers.

16. On May 8, 2020, approximately one week before the funeral, my current counsel emailed me to request approval of a draft response to Defendants' April 30 letter (ECF No. 57-1). His communication arrived in the midst of my family's preparations for the funeral, and other preparations designed to keep us safe in light of the deadly pandemic.

17. This communication was the first time that I was made aware of Defendants' April 30 letter, or that the March 2, 2020 deadline existed and had been missed. As soon as I learned of the missed deadline, I informed my counsel of the need to promptly engage with Defendants to resolve the dispute, and seeki Court intervention as needed.

## Proposal Made to Address Outstanding Discovery

18. On May, 18, 2020, after fully bringing me up to speed and getting my input, my current counsel responded to the April 30 letter, including by making a proposal that would not compromise the parties' ability to complete fact discovery by the September deadline. ECF No. 57-2. As the request stated, had Defendants given us their position on the proposal, we would have immediately apprised the Court of their position (i.e., so we could inform the Court and/or seek Court approval for an extension).

19. On May 18, 2020, in two separate emails, Defendants responded: "We need to discuss the issues you raise regarding discovery with our client; we will do so, and circle back"

4

and "we will come back to you on discovery, likely end of the week/next week." To my knowledge, Defendants did not get back to my current counsel regarding our proposal until June 5, 2020 (about 19 days later), one day after we opposed to their partial motion to dismiss was filed.

20. On May 19, 2020, my current counsel requested a 14-day extension from May 21, 2020 to June 4, 2020 to respond to Defendants' partial motion to dismiss. The request specifically noted: "This is [Cardwell's] first request for an extension and it is made in response to the unparalleled level of disruption stemming from the COVID-19 pandemic." ECF No. 47.

21. On June 10, 2020, Defendants' rejected the proposal made on May 18, 2020 (which offered to produce responses and objections to the outstanding discovery by July 4, 2020 and would have given me enough time to tend to my family and safely return to New York).

22. On June 22 and 26, 2020, the parties met and conferred and my understanding is that the parties were unable to reach an agreement as to the discovery dispute.

23. On June 30, 2020, the parties filed a joint discovery dispute letter with Your Honor, wherein I sought the Court's permission to serve written discovery requests and respond to the outstanding discovery requests by July 18, 2020.

### Inability to Get Relevant Information from Former Counsel

24. On June 10, 2020, my former counsel indicated to me, for the first time, that he (i) no longer wanted to serve as co-counsel and (ii) sought my consent to withdraw. The request came just hours before my former counsel and my current counsel were expected to meet and confer with Defendants about the March 2 deadline. Despite this, my former counsel urged me that he was "not needed in this matter" and that my current counsel and I were "doing fine without [him]." I disagreed with his assessment, and thus withheld my consent to withdraw and reminded him that he was needed for current and future workstreams. He agreed to reconsider.

25. On June 15, 2020, my former counsel informed me that I could either (i) sign a stipulation of withdrawal; or (ii) agree to (a) a new fee structure entitling him to a 7.5% contingency fee at the conclusion of the case, on top of an hourly billing rate, *and* (b) sign an undated stipulation of withdrawal. I was explicitly told that "[n]one of the[se] terms [were] up for negotiation." I declined both options; four days later, a motion to withdraw was filed on June 19, 2020 (ECF Nos. 54-55).

26. Only after I declined these options did my former counsel claim non-payment, presumably for the roughly 10 hours that he billed me between December 24 and June 19, 2020.

27. Because my relationship with my former counsel ended before I was allowed to make this motion, I am unable to get answers from him about his role and responsibility for missing the March 2 deadline, or any other discovery-related deficiencies that Defendants assert.

## Conclusion

28. I fully understand that Defendants have not received any outstanding document requests, and thus, have not produced any documents. If permitted to serve the requested discovery, I will have a chance to continue to pursue a resolution of my claims on the merits. To the best of my ability, I have pursued that outcome for over four years, and wish to continue doing so during the pendency of this lawsuit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: New York, New York
July 13, 2020

_____
Kalóma Cardwell