**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**KALOMA CARDWELL,**

                              Plaintiff,

**v.**

**DAVIS POLK & WARDWELL LLP, Thomas Reid,**            1:19-cv-10256-GHW
**John Bick, William Chudd, Sophia Hudson, Harold**
**Birnbaum, Daniel Brass, Brian Wolfe, and John**
**Butler,**

                              Defendants.

---

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO MODIFY THE COURT'S SCHEDULING ORDER

Dated: July 20, 2020                    David Jeffries, Esq.
                                        1345 Avenue of the Americas, 33rd Floor
                                        New York, New York 10105
                                        Tel: 212-601-2770
                                        djeffries@jeffrieslaw.nyc


                                        *Attorney for Plaintiff*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT …………………...….…………………………...……………1

ARGUMENT…………..……..………………….………………….…………….………….....2

    A.    Plaintiff Has Demonstrated Good Cause Sufficient to Justify Modifying the
Scheduling Order……………………….…….……………..……….........2

        1.    It was Reasonably Unforeseeable in December 2019 That Plaintiff
Would Be Unable to Comply with the Expedited Schedule Sought…..….3

        2.    Plaintiff Was Reasonably Diligent and Acted in Good Faith to Seek a
Modification of the Order ................................………..3

        3.    Defendants Rely on Cases That Support Plaintiff's Request to
Modify the Scheduling Order.................................………..4

    B.    Even If Good Cause Is Not Found, the Court Should Exercise Its Discretion
to Grant the Requested Schedule Modification ………..….…..…..……….…7

        1.    The Objected-to Discovery Is Essential to Cardwell's Ability to
Prove His Claims and Rebut Defendants' Defenses……………....……..7

        2.    Even If This Court Finds the Missed Deadline Unjustifiable, Neither a
Procedural Default Nor Sanctions of Fees and Costs Is Warranted…..…..8

    CONCLUSION …………….…….……….……….….……….………….……….…..8

Plaintiff Kaloma Cardwell ("Cardwell") respectfully submits this memorandum of law and accompanying declaration in support of his motion, pursuant to Fed. R. Civ. P. 16(b)(4), to modify the Court's Scheduling Order (the "Order") to propound document requests and interrogatories on Davis Polk & Wardwell LLP ("Davis Polk" or the "Firm") and named defendants Thomas Reid, John Bick, William Chudd, Sophia Hudson, Harold Birnbaum, Daniel Brass, Brian Wolfe, and John Butler (the "Named Defendants," and, together with Davis Polk, "Defendants").

## PRELIMINARY STATEMENT

In a case about racial discrimination, where a core allegation is that Davis Polk and its partners actively concealed individual and institutional racism that harmed Plaintiff and others,[1] Davis Polk and its partners are arguing that Plaintiff should not be allowed by way of a procedural default to conduct discovery into their conduct. Davis Polk and the Named Defendants—with assistance from the largest law firm in New York[2]—are pushing for an outcome that is not required by law, does not serve the interests of justice,[3] and punishes a financially-disadvantaged plaintiff for a single, unintentional ***mistake*** (i.e., failing to track and comply with what is undoubtedly an important discovery deadline).   This case—and all racial discrimination cases, quite frankly— deserves a better outcome than that.

The elephant in the room is that this case involves a significant power and resource imbalance between Plaintiff and Defendants.  And yet, despite that imbalance, Davis Polk and its counsel, Paul Weiss, are pushing to win a racial discrimination case based on a non-merit based technicality, while simultaneously asserting to the press that "***all*** of the claims in this lawsuit are

---

[1]     *See* Amended Complaint (ECF No. 37).
[2]     Davis Polk is reportedly the second largest law firm in New York. https://abovethelaw.com/2020/07/the-100-largest-law-firms-in-new-york-2020/
[3]     Notably, Defendants' memorandum of law ignores Plaintiff's entire argument (and supporting caselaw) put before this Court, namely that granting the relief they request would undermine the interests of justice, given the severity of the claims and allegations at issue in this action.

meritless," the "claims . . . are **_flatly contradicted_** by the _facts_" and "[t]he **_contemporaneous documentary evidence_** . . . will show uniformly that plaintiff's **_deficient performance was the only_** reason he was asked to seek other employment."[4]  Now, on account of a discovery failing, Defendants seek to have it both ways—asserting waiver and default, in an attempt to keep Plaintiff and the public from the very "facts" and "contemporaneous documentary evidence" that they publicly invoke to undermine the factual and legal sufficiency of this case.[5]

As explained in Plaintiff's memoranda of law and accompanying affidavits, an unintended mistake and a simultaneous March 2 deadline undoubtedly contributed to Plaintiff's request for Court assistance.  No one wishes that this deadline was met more than Plaintiff, who has pursued a ruling on the merits for over four years, as well as Plaintiff's counsel, a solo practitioner with no paid staff and who has agreed to litigate this case since 2018 entirely for free—and regardless of the outcome.  Surely, Plaintiff and his current counsel are litigating this action with ample skin in the game.

Accordingly, for the reasons stated in Plaintiff's memoranda of law and in light of the fact that Your Honor has the ability to move the parties closer to an outcome that is fair and just, Plaintiff respectfully asks the Court (i) to find that good cause exists; and/or (ii) to modify the Scheduling Order to allow Plaintiff to serve document requests and interrogatories on Defendants.

## **ARGUMENT**

### A.  PLAINTIFF HAS DEMONSTRATED GOOD CAUSE SUFFICIENT TO JUSTIFY MODIFYING THE SCHEDULING ORDER

---

[4]      https://www.law.com/newyorklawjournal/2020/05/01/davis-polk-doubles-down-against-ex-associate-in-race-bias-suit-citing-deficient-performance/

[5]      For his part, on July 18, 2020, pursuant to your Honor's Order, Plaintiff served (i) responses and objections to Defendants' First Set of Interrogatories, (ii) responses and objections to  Defendants' First Set of Document Requests, (iii) a categorical privilege log, and (iv) a document production consisting of roughly 477 files spanning **_2,088 pages_** of discovery materials.  Plaintiff respectfully requests that he be given an opportunity to receive reciprocal discovery from Defendants to ensure that the at-issue claims are fully and fairly resolved on the merits.

1. **It Was Reasonably Unforeseeable in December 2019 That Plaintiff Would Be Unable to Comply with the Expedited Schedule That Was Sought**

Defendants do not dispute that "[g]ood cause may be established if the moving party can demonstrate that . . . reasonably unforeseeable events occurring after the entry of the scheduling order precluded compliance with the deadlines in the [scheduling order]." *LaFlamme*, 220 F.R.D. at 186. As the Motion demonstrates, and as discussed with the Court during the July 7, 2020 hearing, a constellation of factors—none "reasonably []foreseeable" in December 2019— prevented compliance with the March 2 deadline. Rather than attempt to apportion blame between the filing of the Amended Complaint and bracing for a looming public health crisis, Plaintiff has demonstrated that both events occupied tremendous time and resources for Plaintiff and Plaintiff's counsel. Despite their diligence and tireless work on the Amended Complaint, compliance with the deadline simply was not feasible for two attorneys alone to meet—one a former transactional associate at Davis Polk with less than four years of practicing experience, and the other a solo practitioner. Cardwell Decl. at 6.

2. **Plaintiff Was Reasonably Diligent and Acted in Good Faith to Seek a Modification of the Order**

In May 2020—upon realizing that the discovery deadline was missed—Plaintiff's counsel attempted to cure the deficiency and made a proposal to Defendants on May 18, 2020 that would do so. Mot. at 6. As their papers are conspicuously silent on this point, Defendants do not deny that, after explicitly stating that they would provide Plaintiff with a response "likely end of the week/next week," they ***failed*** to respond to the proposal or engage with Plaintiff at all until June 5, 2020 (nearly ***three*** weeks later).[6]

---

[6] Defendants' repeated assertion of a "four-and-a-half-month delay attributable to plaintiff's discovery failings" (Opp. at 7) is disingenuous, as it includes time attributable to ***Defendants' own delays*** in responding to Plaintiff's May 18 proposal. Noticeably, neither the May 18 proposal, nor Defendants' weeks-long delay are mentioned in Defendants' memorandum of law or their supporting affidavit. *See, e.g.*, Buergel Decl. at ¶¶ 4-5 (ECF

Insofar as the Court is inclined to deny Plaintiff's request to modify the Scheduling Order, Plaintiff respectfully asks that the Court's approach be commensurate with the **two-month** delay between the discovery deadline and when Plaintiff alerted Defendants to its lapse (and attempted in good faith to address it by requesting an extension that would forego a need for Court intervention or any disruption to the agreed-upon schedule).

Further, the assertions that Plaintiff had "two separate lawyers in this case" ignores the fundamental reality that Plaintiff provided a sworn affidavit to this Court explaining that—without any prior notice, consent, or approval—one of his attorneys effectively withdrew from the case *months* before he formally petitioned this Court to withdraw as counsel.[7,8]

### 3. Defendants' Rely on Cases That Support Plaintiff's Request to Modify the Scheduling Order

None of the cases that Defendants cite involve a request for scheduling order modification at the early stages of discovery, where Plaintiff or Plaintiff's counsel have complied with all other relevant case deadlines in furtherance of the litigation.[9]  Instead, Defendants rely on inapposite cases detailing egregious discovery-related misconduct—where, even on such indefensible

---

No. 63) (omitting any reference to the parties' April or May interactions or Defendants' belated June 5 response to the May 18 proposal).

[7]      In a display of backwards logic, Defendants' arguments ignore Plaintiff's May 18 proposal, which were based on communications with Plaintiff, to elevate an out-of-context, June 10 two word quotation attributed to Mr. Restituyo—someone who had *no* communications with Plaintiff about discovery or Plaintiff's sheltering-in-place (and who had attempted to take himself off the case earlier that morning). Mot. 2.

[8]      *See* Cardwell Decl. at ¶¶ 24-27 (affirming that Plaintiff was billed for approximately 10 hours of work between December 2019, the time of the case management conference, and June 2020, when his motion to withdraw was granted, despite time-intensive workflows including the discovery deadlines in the Scheduling Order, the filing of the Amended Complaint on March 2, and Plaintiff's opposition to Defendants' partial motion to dismiss on June 4.

         Moreover, for the avoidance of doubt, Plaintiff provides this Court with an invoice with former counsel demonstrating (contrary to statements made at the June 23 hearing) Plaintiff paid 100% of his outstanding legal fees for work billed between November 2018 (i.e., the signing of the retainer agreement) and December 23, 2020 (the first invoice that Plaintiff received from former counsel after signing the agreement). *See* Jeffries Decl. Ex. A.

[9]      Plaintiff wishes to apprise the Court that its Rule 26 initial and amended disclosures were timely served on January 20 and January 21, 2020, consistent with the Scheduling Order.  That is the only other discovery deadline in the Scheduling Order besides the March 2 deadlines that have not passed, and that deadline was met.

records, courts in this District were *still willing* to grant the requested extensions. Plaintiff's request arrives to the Court against a dramatically different (and far less culpable) backdrop.

In *Carr*, cited by Defendants in the context of analyzing good cause, the Court noted that not only did plaintiff fail to fully respond to document requests for approximately *sixteen* months, plaintiff met "*none* of the deadlines set" in a subsequent court order following counsel's representations that it would meet certain deadlines that were also missed. *Carr v. Queens-Long Island Med. Grp., P.C.*, 2003 WL 169793, *5 (S.D.N.Y. Jan. 24, 2003) (emphasis added). The Court also noted that plaintiff failed to provide responses to interrogatories—all of which evidenced a "pattern of disregard for discovery obligations" and "bad faith in delaying discovery and multiplying the costs of the litigation." *Id*. Notably, despite these facts, the court still granted a modification to the schedule, permitting plaintiff to complete fact discovery. Given the far less egregious conduct that brings the instant motion before this Court, Plaintiff respectfully submits that a modification of the Scheduling Order allowing Plaintiff to serve document requests and interrogatories is appropriate.

Next, Defendants invoke *Rosario-Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998), a case from outside of this District, to assert that Plaintiff's counsel "failed to comply with [their] duty, [and thus] he and his client must now live with the consequences." Opp. at 5. Not quite. There, the First Circuit affirmed a district court denial of the request to consider an untimely-filed motion for summary judgment on the basis that the untimely motions (i) were filed "after the (twice-extended) deadline for filing dispositive motions had expired," (ii) "proffered no compelling explanation for their delinquency," and (iii) were filed "without first seeking leave of court." *Rosario-Diaz*, 140 F.3d at 315. Ultimately, the court affirmed the district court's refusal to "consider whether good cause existed to modify its scheduling order" because the moving

5

party's "show of indifference sealed off this avenue of relief." *Id.* No such "indifference" exists anywhere in the record before this Court.

*Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962) also misses the mark. There, the Supreme Court dismissed a case with prejudice based on findings at the district court level that (i) plaintiff's counsel had "an unexplained absence from a pretrial conference," which the court considered "in light of 'the history of this litigation' and 'of all the circumstances surrounding counsel's action[s] in the case.'" *Id*. This dispute is not about an unexplained absence from a pretrial conference. Unlike in *Link*, there is no such a pattern or evidence of delays throughout the course of this action—and thus does not compel such outcome based on materially dissimilar facts.

Next, Defendants rely on *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 667 (2d Cir. 1980), in support of their contention that Mr. Cardwell ought to be held accountable as a lawyer. There, however, the moving party-attorney was chargeable "with his lawyers' neglect" in part because he "had earlier *litigation* experience" and was "listed as 'on [a] brief'" (i.e., as counsel) in another action. *Id.* (emphasis added). Here, no such thing can be said about Mr. Cardwell. As Defendants well know, he was a junior *transactional* associate before Davis Polk terminated him. He does not have *any* litigation experience as a practicing attorney, has never been listed as an attorney for another's litigation, and had never heard of or seen a case management plan prior to this case. In *Chira*, the Second Circuit went on to emphasize that (i) "[plaintiff and his counsel] did absolutely nothing at all to move their case to trial" and such "indolence . . . runs deeper, for beyond [the moving party's] failure to comply with the district court's specific directions for the prosecution of his suit, [he] failed to take any other action to move his case to trial." *Id.* Unlike in *Chira*, Mr. Cardwell and counsel have litigated this case and moved it to trial in all respects outside of the inadvertently missed March 2 deadline.

Lastly, Defendants cite *Jackson v. Federal Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) for the proposition that "plaintiff in [a] discrimination suit [was] bound by discovery failures of counsel." Notably, however, the Second Circuit noted that the requested relief (i.e., to reopen discovery) was "filed *nine months* after the close of discovery and well past the scheduling order's deadlines," "the motion was futile," "a fully briefed motion for summary judgment was pending," and "[a] reopening under those circumstances would seriously undermine [those] motions." *Id.* (emphases added). The only similarity Plaintiff shares with the moving party in *Jackson* are the broad claims at issue; it cannot be disputed that fact discovery is ongoing, summary judgment is months away, and the only dispositive motion before this court does not hinge on the requested discovery. *Jackson* could not be more disanalogous from this case.

## B. EVEN IF GOOD CAUSE IS NOT FOUND, THE COURT SHOULD EXERCISE ITS DISCRETION TO GRANT THE REQUESTED SCHEDULE MODIFICATION

Tellingly, Defendants give no consideration to and fail to distinguish any of the arguments or cases cited in Plaintiff's moving papers that support the exercise of this Court's discretion to permit the requested discovery. *See generally* ECF No. 62. Where certain discovery is essential to a moving party's claims and ability to rebut the objecting party's defenses, fact discovery is ongoing, and certain other pre-trial deadlines have not yet been set, there is ample precedent in this jurisdiction to justify amending the Scheduling Order, particularly where doing so serves the interests of justice and prevents a "resolution by procedural default." *Lopez v. Burris Logistics Co.*, No. 3:12-CV-1039 CSH, 2013 WL 5962100, at *3 (D. Conn. Nov. 6, 2013).

### 1. The Objected-to Discovery Is Essential to Cardwell's Ability to Prove His Claims and Rebut Defendants' Defenses

Importantly, even where a moving party ***fails to show good cause***, courts still make deadline adjustments where "precluding [the moving party from obtaining the requested

discovery] would significantly impair his ability to prove his case." *Lory v. Gen. Elec. Co.*, 179 F.R.D. 86, 89 (N.D.N.Y. 1998).  Defendants unwillingness to engage with this possibility does not make that reality any less apparent or the requested remedy any less appropriate or available to Plaintiff.[10]

Worse yet, that Defendants objected to Plaintiff's May 18 corrective proposal—after evaluating it for ***several weeks***—appears designed to capitalize on an honest mistake, and strategically use that mistake as a mechanism to preclude "the [very] discovery . . . needed to fairly resolve [plaintiff's] claims . . . on their merits." *City of Almaty, Kazahkstan v. Ablyazov*, No. 15CV05345AJNKHP, 2018 WL 2148430, at *3 (S.D.N.Y. May 10, 2018).[11]

Far from rewarding a purported "failure to prosecute this case"—a position that Defendants assert, devoid of any supporting facts or proofs as a matter of law—granting Plaintiff's request (and denying the calculated relief that Defendants seek) will ensure that this Court does not work an injustice upon Plaintiff that undermines his ability to finally have his day in court.

### 2. Even If This Court Finds the Missed Deadline Unjustifiable, Neither a Procedural Default Nor Sanctions of Fees and Costs, Is Warranted

The parties agree that this Court may "make such orders with regard [to the failure to obey a scheduling order] as are just[.]."  Fed. R. Civ. P. 16(f).  However, achieving a "just" outcome in light of the current circumstances seems to lend itself to two differing interpretations.

Remarkably, and for its part, Defendants urge this Court to impose the discretionary sanction of ***attorneys' fees*** on one of its ***former employees*** as a penalty for a discovery

---

[10]     Defendants likewise do not wrestle with the fundamental reality that Defendants are the only available source for the requested discovery; the documents and information to be provided during discovery in this action rests solely with Defendants and cannot be obtained elsewhere or through other sources.  Mot. at 15.
[11]     Plaintiff need look no further than Defendants' opposition brief to demonstrate the strategic advantages they seek to gain through the instant dispute—including, *inter alia*, Defendants' attempt to foist onto the discovery process so-called "appropriate limitations on the scope of written discovery in light of plaintiff's default."  Opp. at 7. As Defendants have not offered a single case to support such an extraordinary sanction, Plaintiff respectfully requests that such unilaterally imposed restrictions on discovery be denied.

deficiency—in a lawsuit alleging that ***Defendants*** engaged in unlawful acts of racial discrimination, retaliation, and harassment—acts that have no doubt marred Plaintiff's legal career, eviscerated his financial stability, and, if Defendants have their way, threaten to permanently handicap his future for the so-called "discovery failures of counsel."  Opp. at 6.

Importantly, courts recognize and have held that "the protections and sanctions found in the discovery rules are not absolute and contemplate the use of judicial discretion." *Davis v. City of New York*, No. 86 Civ. 6345(SWK), 1988 WL 42189, at *2 (S.D.N.Y. Apr. 28, 1988).  To avoid the many manifest injustices that Defendants' requests and one-sided proposals would surely create, Plaintiff asks this Court to exercise its discretion in a way that is just, equitable, and fair on account of the full set of facts and circumstances presented.[12]

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion, modify the Case Management Plan and Scheduling Order to allow Plaintiff to serve document requests and interrogatories, and grant such other and further relief as may be just and proper.

---

[12]      If permitted, Plaintiff requests a period of two-weeks following the Court's ruling on the Motion, as such period would be sufficient for Plaintiff to serve its written discovery requests.  Plaintiff rejects Defendants' notion that a meet and confer is necessary to address so-called "appropriate limitations on the scope of written discovery," a position that was not contemplated by the parties or the Court during the July 7 hearing where these very issues were discussed.  In fact, Your Honor expressed that a ruling would issue "very promptly after [the Motion is] fully briefed."  July 7, 2020 Hrg. Tr. at 33:12.