# DEFENDANTS' EXHIBIT 1

(August 18, 2020 Letter from S. Buergel to D. Jeffries)

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K. GARRISON   (1946-1991)
RANDOLPH E. PAUL    (1946-1956)
SIMON H. RIFKIND    (1950-1995)
LOUIS S. WEISS      (1927-1950)
JOHN F. WHARTON     (1927-1977)

WRITER'S DIRECT DIAL NUMBER
(212) 373-3553

WRITER'S DIRECT FACSIMILE
(212) 492-0553

WRITER'S DIRECT E-MAIL ADDRESS
sbuergel@paulweiss.com

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

HONG KONG CLUB BUILDING, 12TH FLOOR
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W. ABBOTT
EDWARD T. ACKERMAN
JACOB A. ADLERSTEIN
JUSTIN ANDERSON
ALLAN J. ARFFA
JONATHAN H. ASHTOR
ROBERT A. ATKINS
DAVID J. BALL
SCOTT A. BARSHAY
PAUL M. BASTA
J. STEVEN BAUGHMAN
LYNN B. BAYARD
CRAIG A. BENSON
MARK S. BERGMAN
DAVID M. BERNICK
JOSEPH J. BIAL
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
ROBERT BRITTON
DAVID W. BROWN
SUSANNA M. BUERGEL
JESSICA S. CAREY
DAVID CARMONA
GEOFFREY R. CHEPIGA
ELLEN N. CHING
WILLIAM A. CLAREMAN
LEWIS R. CLAYTON
YAHONNES CLEARY
RACHAEL G. COFFEY
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
THOMAS V. DE LA BASTIDE III
MEREDITH DEARBORN*+
ARIEL J. DECKELBAUM
KAREN L. DUNN
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
HARRIS FISCHMAN
ANDREW J. FOLEY
ANDREW J. FORMAN*
HARRIS B. FREIDUS
CHRISTOPHER D. FREY
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
NEIL GOLDMAN
MATTHEW B. GOLDSTEIN
ROBERTO J. GONZALEZ*
CATHERINE L. GOODALL
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRIAN S. GRIEVE
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
ALAN S. HALPERIN
CLAUDIA HAMMERMAN
BRIAN S. HERMANN
MICHELE HIRSHMAN
ROBERT E. HOLO
DAVID S. HUNTINGTON
AMRAN HUSSEIN
LORETTA A. IPPOLITO
WILLIAM A. ISAACSON*
JAREN JANGHORBANI
BRIAN M. JANSON
JEH C. JOHNSON
MEREDITH J. KANE
JONATHAN S. KANTER
BRAD S. KARP
PATRICK N. KARSNITZ

JOHN C. KENNEDY
BRIAN KIM
KYLE J. KIMPLER
ALEXIA D. KORBERG
ALAN W. KORNBERG
DANIEL J. KRAMER
CAITH KUSHNER
DAVID K. LAKHDHIR
JOHN E. LANGE
GREGORY F. LAUFER
BRIAN C. LAVIN
XIAOYU GREG LIU
LORETTA E. LYNCH
JEFFREY D. MARELL
MARCO V. MASOTTI
DAVID W. MAYO
ELIZABETH R. MCCOLM
JEAN M. MCLOUGHLIN
ALVARO MEMBRILLERA
MARK F. MENDELSOHN
CLAUDINE MEREDITH-GOUJON
WILLIAM B. MICHAEL
JUDIE NG SHORTELL*
CATHERINE NYARADY
JANE B. O'BRIEN
ALEX YOUNG K. OH
BRAD R. OKUN
KELLEY D. PARKER
LINDSAY B. PARKS
ANDREW M. PARLEN
JESSICA E. PHILLIPS*
VALERIE E. RADWANER
JEFFREY J. RECHER
CARL L. REISNER
LORIN L. REISNER
JEANNIE S. RHEE*
WALTER G. RICCIARDI
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JUSTIN ROSENBERG
JACQUELINE P. RUBIN
CHARLES F. "RICK" RULE*
RAPHAEL M. RUSSO
ELIZABETH M. SACKSTEDER
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JOHN M. SCOTT
BRIAN SCRIVANI
KYLE T. SEIFRIED
KANNON K. SHANMUGAM*
AUDRA J. SOLOWAY
SCOTT M. SONTAG
SARAH STASNY
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
BRETTE TANNENBAUM
RICHARD C. TARLOWE
MONICA K. THURMOND
DANIEL J. TOAL
LAURA C. TURANO
CONRAD VAN LOGGERENBERG
LIZA M. VELAZQUEZ
MICHAEL VOGEL
RAMY J. WAHBEH
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
LINDSEY L. WIERSMA
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
AUSTIN WITT
MARK B. WLAZLO
JULIA TARVER MASON WOOD
JENNIFER H. WU
BETTY YAP*
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
TAURIE M. ZEITZER
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR
+ADMITTED TO THE CALIFORNIA BAR

August 18, 2020

**BY ELECTRONIC MAIL**

David Jeffries, Esq.
1345 Avenue of the Americas, 33rd Floor
New York, NY 10105

*Cardwell* v. *Davis Polk & Wardwell LLP,* et al.
(1:19-cv-10256-GHW)

Dear David:

    We write further to our July 27, 2020 letter regarding plaintiff's July 18, 2020 document production (the "Production") in the above-captioned action and the two meet-and-confer calls we had on August 4 and 6, in which we discussed at length the issues raised in our letters and those you sent on July 31 and August 6, 2020.

    We have had difficulty, despite meeting and conferring for nearly three hours, securing clear or straightforward answers to the questions we have posed. As you know, we have a third meet and confer call scheduled for later today. We hope this letter facilitates a productive discussion. We have taken account of the materials you sent yesterday afternoon in providing this response.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

David Jeffries, Esq. 2

We outline below the issues we expect to discuss today and about which we are seeking definitive clarification. We incorporate by reference the examples, illustrations, and case citations we have transmitted (in writing and by phone).

We reserve the right, as granted by the Court (*see* July 7, 2020 Court Conf. Tr. at 27), to seek an order that you have waived the right to object to our discovery requests. *First*, and setting that to the side, your objections (even if deemed timely) are insufficient. *See, e.g.*, Fed. R. Civ. P. 34(b)(2)(C) (specifying that "an objection must state whether any responsive materials are being withheld on the basis of that objection") and *Fisher* v. *Forrest*, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017) (Peck, J.) (describing specificity requirement). We cannot discern, from the face of your objections, whether (i) Mr. Cardwell has withheld responsive information on the basis of objections, and (ii) for example, were we to move to compel production or a response, your response would be that no additional responsive information exists to be produced. (For instance, and as we have explained, Mr. Cardwell has objected to certain requests or interrogatories on the basis that they seek information for certain time periods; we have asked whether Mr. Cardwell has merely lodged this objection or whether he has instead withheld information from other time periods. We have asked this question as to each of the objections Mr. Cardwell has lodged, but have not been able to secure clarification.) Our aim, in meeting and conferring with you, is to clarify these issues in the hopes of avoiding the need for further judicial intervention.

*Second*, we have explained that many of the issues of concern to us have nothing to do with the issue of objections (for example, whether Mr. Cardwell's review and production were sufficiently thorough, whether he produced responsive information from platforms he used and for custodians with whom he exchanged responsive information, and whether documents were imaged in ways that cut off or obscure text). These issues are the types of mechanical and procedural issues about which parties routinely confer; we need to make progress on these issues today, as set forth below.

The list of issues we would like to discuss once again today is as follows:

**I.     Interrogatory Responses**

    **A.**     **Please confirm whether or not you have declined to provide any responsive information in light of any objection**, including without limitation:

        1.     Any General Objection, including General Objection 17, or confirm that you have not done so; and

        2.     Any Specific Objection, or confirm that you have not done so.

    **B.**     **Please provide a substantive response to Interrogatory No. 5** *(identities of persons with knowledge of alleged impairment to name and reputation)* or identify, no later than today's call, any outstanding issues about which you would like to "meet and confer to attempt to clarify the Interrogatory

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

David Jeffries, Esq. 3

and narrow its scope." R&O No. 5. We note that we have previously discussed, and offered to answer all questions about, this Interrogatory. Your August 17, 2020 Supplemental Objections and Responses to Defendants' First Set of Interrogatories ("Supplemental R&Os to the Rogs") do not cure this issue or satisfy the specificity requirement.

C. **Please provide a substantive response to Interrogatory No. 10 (*computation of damages*). Please also amend your Rule 26(a) disclosures, including with respect to damages**. We note that we have previously discussed, and offered to answer all questions about, this Interrogatory and disclosure item, and have given you case citations by phone relating to this issue, but your August 17, 2020 Supplemental R&Os to the Rogs and Second Amended Initial Disclosures reflect no edits to these items. As we have noted:

1. Rule 26(a) requires parties to submit, in their initial disclosures, a "'computation' [of damages], supported by documents." *Design Strategy, Inc.* v. *Davis*, 469 F.3d 284, 295 (2d Cir. 2006) (quoting Fed. R. Civ. P. 26(a)(1)(A)(iii)). Like other initial disclosures, this disclosure must be made "based on the information then reasonably available to [the disclosing party]," and the requirement "is not excused because the disclosing party has not fully investigated the case." *U.S. Bank Nat'l Ass'n* v. *PHL Variable Ins. Co.*, 2013 WL 5495542, at *2 (S.D.N.Y. Oct. 3, 2013) (internal quotations omitted). These disclosures must be supplemented under Rule 26(e) if the disclosing party learns they are incorrect or incomplete. *Id.* Courts in the Southern District have required parties who fail to provide even "ball park figures" of the amount of damages they intend to seek, or the evidence on which that amount would be based, to furnish their damages computations and the basis for those damages. *See U.S. Licensing Associates, Inc.* v. *Rob Nelson Co.*, 2012 WL 1447165, at *5 (S.D.N.Y. Apr. 26, 2012). Parties are not relieved of their 26(a)(1)(A)(iii) obligation to provide a computation of damages claimed and the documentary support for those damages simply because they depend on expert testimony. *U.S. Bank*, 2013 WL 5495542, at *3. Defendants are entitled to initial disclosures sufficient to "provide [an] assessment of damages in light of the information currently available . . . in sufficient detail so as to inform the defendants of the contours of their potential exposure." *Hesco Parts, LLC* v. *Ford Motor Co.*, 2007 WL 2407255, at *2 (W.D. Ky. Aug. 20, 2007) (cited in *U.S. Bank*, 2013 WL 5495542, at *3).

2. Plaintiff must provide a substantive response, under Rule 33 and in keeping with the above, to Interrogatory No. 10.

       3.      We also note that in the more than three years since plaintiff first filed his administrative complaint—and notwithstanding that the only relief to which he would be entitled, were there a judgment in his favor, is monetary—plaintiff has at no time articulated a monetary demand. We note further that mediation is mandatory, in the Southern District, for counseled employment cases, and that an articulation by plaintiff of the relief to which he claims he is entitled would be a necessary component of any such mediation.

    D.    **As to your response to Interrogatory No. 11 (***identities of persons with whom plaintiff has exchanged communications concerning the subject matter of this litigation***)**, please confirm whether you have withheld any responsive information on the basis of any of the objections set forth in your August 17, 2020 Supplemental R&Os to the Rogs.

    E.    **Please provide a substantive response to Interrogatory No. 13 (***email addresses and social media accounts/names used/controlled by plaintiff***)** or identify, no later than today's call, any outstanding issues about which you would like to "meet and confer in a good faith effort to better understand how this Request [sic] relates to the claims or defenses asserted in this action." R&O No. 13. We note that the parties discussed the relevance of this Interrogatory on our call, and that we understood from you that you understood the relevance of this Interrogatory. Your August 17, 2020 Supplemental R&Os to the Rogs do not cure this item or satisfy the specificity requirement.

    F.    **As to your response to Interrogatory No. 14 (***phone numbers/service providers used by plaintiff in relevant period***)**, we remain unclear, from the face of your August 17, 2020 Supplemental R&Os to the Rogs, whether you have declined to provide responsive information in response to this item. Please clarify whether Mr. Cardwell has a reasonable belief that he may have had responsive communications, from his first date of employment at Davis Polk to the present, using any email address or phone number/carrier other than those provided.

    G.    ***As to Interrogatory No. 15 (***login credentials and passwords for plaintiff's Davis Polk-issued devices***)**, we request that plaintiff provide his best available recollection of the passwords he may have used, or confirm whether he transmitted his passwords to his lawyers at or about the time at which he left the Firm.

II.    **Production**

In our July 27 letter, we set forth examples of a number of apparent problems in plaintiff's Production that, taken together, cause us to question whether plaintiff has made a reasonable search for responsive information in his possession,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

David Jeffries, Esq. 5

custody, or control, as is his burden. Based on these data, the Production appears to be critically deficient.

We have asked for representations (i) that Mr. Cardwell has made a reasonable search of information in his possession, custody, or control, and (ii) as to whether Mr. Cardwell has withheld material on the basis of any objection. We have also asked that where documents were produced in incomplete form, or without necessary identifiers (like sender, recipient, date, and time), those deficiencies be cured.

We have posed the questions below on our meet and confer calls but have not secured responses. We are seeking definitive clarification on today's call.

A. **Objections**

1. Has Mr. Cardwell withheld any responsive materials on the basis of any general or specific objection? What materials and which objections?

B. **Platforms**

1. Has Mr. Cardwell searched for and produced responsive messages from all <u>email</u> accounts in his possession, custody, or control?

2. Has Mr. Cardwell searched for and produced responsive messages from all <u>text messaging</u> accounts in his possession, custody, or control?

3. Has Mr. Cardwell searched for and produced responsive messages and posts from all <u>social media</u> accounts in his possession, custody, or control?

4. Has Mr. Cardwell searched for and produced responsive messages from all <u>Signal or other messaging accounts</u> in his possession, custody, or control?

C. **Individuals**

1. In responding to Interrogatory No. 11, which seeks the identities of "all persons to or from whom Plaintiff, or anyone acting on Plaintiff's behalf. . . has sent or received communications concerning the subject matter of this litigation," plaintiff has incorporated by reference, among others, "the individuals identified in his . . . Second Amended Initial Disclosures." Plaintiff's Second Amended Initial Disclosures include <u>more than 1,900 names</u> of individuals. The production contains <u>no responsive communications</u> with the vast majority of these individuals, and no communications with various of the individuals Mr. Cardwell

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

David Jeffries, Esq.                                                                                                                6

        identifies by name in response to various Interrogatories, including family members and other colleagues.

        (a)      Has Mr. Cardwell searched for and produced responsive communications with all individuals identified in his initial disclosures, R&Os to defendants' written discovery, pleadings and briefs?  With others with whom he believes he may have had responsive communications?

        (b)      For which individuals has he not done so?

2.      <u>Other than the documents</u> Mr. Cardwell has promised are forthcoming subsequent to the entry of a protective order:

        (a)      Has Mr. Cardwell withheld any responsive communications with any of these individuals <u>on the basis of any objection or claim</u> (e.g., that the material constitutes impeachment material)?

        (b)      <u>What objection or claim</u>?

3.      Please confirm that Mr. Cardwell is prepared to produce unredacted versions of text messages subsequent to entry of a protective order.

**D.**    **Completeness**

1.      As we have explained, it is customary for parties to agree to complex ESI protocols that require production of metadata alongside documents.  We are willing to make reasonable modifications here, but—as we have also discussed—will require sender, recipient, date, and time of email and text (and other digital) messages.  Mr. Cardwell has produced some messages by taking images of his cellphone; such images do not contain the necessary information set forth above.  When will Mr. Cardwell be in a position to update the productions he has made to ensure that they include this information?

2.      You have objected several times to our characterizations of certain documents as incomplete.  We are setting forth below two examples of the types of documents to which we are referring.  If continuations of these communications exist in the production, they are not sequential; please produce them with families, in groups, with the information we describe above.  To avoid similar issues in an updated production, we suggest that Mr. Cardwell's text messages and emails be collected from iCloud or a similar platform containing metadata, reviewed for responsiveness, and produced.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

David Jeffries, Esq. 7

 (a) Illustrative Example 1:



 (b) Illustrative Example 2:



**E.** **Timing of Supplemental Production**

 1. When will Mr. Cardwell produce (i) the unproduced responsive documents and you promised to send in your August 6th letter, and (ii) the materials for which Mr. Cardwell agreed, in your letters, to make another search?

**III.** **Protective Order**

We wish to secure entry of a protective order in the near term, so that plaintiff may complete the production he was ordered to complete by July 18, 2020.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

David Jeffries, Esq. 8

We sent you a draft protective order on July 31, 2020. As we have explained on our calls, the draft uses Judge Woods's standard protective order as a starting point and proposes modifications to solve for two problems particular to this matter. We hope to have a constructive discussion on both issues today.

### A. Privilege

This matter will involve the production of documents containing Firm and client confidences. The Firm cannot risk a finding, in this or any future litigation, that it or its clients have waived the privilege, or have violated ethical obligations, because of the manner in which documents were produced in this litigation. Any protective order must solve for this problem. We wish to identify a solution that will deliver to you and to Mr. Cardwell the documents to which he is entitled while not inviting these risks.

We have studied cases involving lawyers and law firms in search of precedents for how to proceed here. The law in this area is complex and uncertain. Even if there might be an argument that certain material (for example, on cases on which Mr. Cardwell worked while a lawyer at the Firm) could be shown to Mr. Cardwell without risk of waiver, documents cannot realistically be produced only to Mr. Cardwell and not to you (his counsel).[1] Unlike Mr. Cardwell, you never had an attorney-client relationship with the Firm's clients, and for this reason, any production would create risk of a finding of waiver or violation of ethical obligations, absent effective safeguards. (We have considered the fact that you and Mr. Cardwell are in a privileged relationship, but absent clear authority addressing this issue, do not have a definitive basis to conclude that production of privileged materials to you without safeguards, notwithstanding your own privileged relationship, would not be deemed a waiver.)

We reviewed, in the absence of meaningful guidance in the case law, a number of protective orders from cases involving lawyers and law firms in search of guidance. Only one of the precedents we have found contemplates unconditional production of client confidential/privileged material. For the reasons set forth above, we do not think that the model set forth in that order alone provides sufficient protection against a finding of inadvertent waiver or ethics violation, and we have not been able to identify what else was done in that matter to solve for this problem.

That said, the authorities we have seen suggest that whereas "failure to have made a reservation of privilege may be deemed to have constituted a *definitive forfeiture with respect to subsequent parties*," *see, e.g.*, 1 Edna Selan Epstein, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE 539 (2017), a model wherein a party is producing information pursuant to a court order creates, or at least arguably creates, the equivalent of a standing protection against a later claim of waiver. The protective order from *Young* v. *Covington & Burling, LLP*, 09-464, ECF No. 40 (D.D.C. Dec. 18, 2009) appears to be an example of this structure. The *Young* order contemplates production of

---

[1] It is our understanding that Mr. Cardwell no longer has an active registration with the New York bar; please confirm whether this is accurate or if he has an active registration with the bar of any state.

"Confidential Client Information"—defined to include all client confidential information—but *only* "[i]n the event that the Court enters an order requiring Defendant to produce any Confidential Client Information." The edits in our proposed draft reflect the view that adopting a variation of such an approach here would protect against a claim that the Firm failed to take reasonable efforts to maintain client confidences and privilege, because the protective order itself could function as a standing order from the Court to produce information bearing this designation.[2]

### B.  Attorneys' Eyes Only Information

The other category of changes we have proposed to the protective order attempts to create a reasonable and efficient mechanism for (i) protecting sensitive information (*e.g.* information relating to employee privacy) and (ii) avoiding unnecessary and wasteful motion practice.

On August 11, 2020, Mr. Cardwell served 212 requests for production, several dozen of which call for the production of materials relating to the performance and employment history of, *inter alia*, other current and former Davis Polk associates.

As you know, information relating to individual employment history can be highly sensitive. (For instance, we note that Judge Woods's Individual Rules specify that among the categories of information "that should be treated with caution and may warrant a motion for approval of sealed or redacted filing" is information relating to "employment history." *See* Individual Rules of Practice in Civil Cases, Rule 4(A)(i) (Woods, J.)) The Firm cannot risk a finding that it failed to take reasonable steps to protect the privacy of its employees and former employees, many of whom had no connection to any of the events at issue in this case.

We wish to identify a solution that will deliver to you and to Mr. Cardwell the documents to which he is entitled while not inviting undue risks in these areas. We are setting forth an example of a problem for which we attempted to solve through edits to the protective order, in the hopes that this provides common footing for a discussion today.

- Assuming, for instance, that Mr. Cardwell were to seek, and be granted the right to procure, certain performance reviews or files relating to allegedly similarly-situated associates, it may be necessary to redact or anonymize certain personally identifying information—*e.g.* by using labels like "Associate 1," "Associate 2," much as Mr. Cardwell has done in his pleadings and briefs—or to redact information, like names of clients or matters, that might result in inadvertent disclosure of the same.

- The Firm wishes to minimize unnecessary motion practice. In the event that Mr. Cardwell is unclear as to whether he has been deprived of information to

---

[2] We note that the *Young* order further provided that such information could be shared with plaintiff's attorneys, but not with the plaintiff.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

David Jeffries, Esq. 10

which he is entitled—for example, because a document contains redactions—the Firm has endeavored to create, in the draft protective order, a mechanism whereby contested documents or information could be shared with you, as Mr. Cardwell's lawyer, on an attorneys' eyes only basis, rather than (i) leaving, as the only mechanism for dispute resolution, a motion before the Court, or (ii) failing to craft a mechanism for sharing such information until a dispute arises. If this mechanism fails to resolve disputes, the parties would retain the right to move to compel production of material designated attorneys' eyes only.

To reiterate: with our edits to the draft protective order, we have attempted to solve for the two problems we outline above. We are happy to discuss other proposed solutions to each, but cannot agree to a protective order that leaves these concerns unaddressed.[3]

### IV. Return of Firm Information

Separately, as we have mentioned previously, Mr. Cardwell's Production makes clear that he has retained Firm confidential information. As Mr. Cardwell is aware, Firm policy requires that such information be returned to the Firm prior to the departure of any employee. We have previously requested return of this material, including in connection with plaintiff's departure from the Firm, and have informed you that we continue to seek return of the material to the Firm or safekeeping of the material with the Court. The Firm is unwilling to invite a holding, in this or any future litigation, that it has waived privilege because this material remains in Mr. Cardwell's possession. *See, e.g.*, *Bowles* v. *Nat'l Ass'n of Home Builders*, 224 F.R.D. 246, 259–60 (D.D.C. 2004) (corporation waited more than a year to seek judicial action to recover privileged documents it knew plaintiff, a former employee, had in her possession and therefore waived privilege to all documents dealing with the same subject matter).

Please propose a plan for the prompt return or safekeeping, with the Court, of all Firm and client confidential information in Mr. Cardwell's possession, custody, or control on today's meet and confer call.

---

[3] We also reserve the right to object to your assertion, in your responses and objections to defendants' written discovery, that your responses shall be deemed "Confidential" under any protective order. (Plaintiff's Supplemental Objections and Responses to Defendants' First Set of Interrogatories, at 2.)

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

David Jeffries, Esq.     11

\*    \*    \*

       Defendants reserve all rights, including to take any and all steps to address the above deficiencies or others arising out of further review of the responses or additional information discovered through the meet and confer process or otherwise.

       Sincerely,

       /s/  Susanna Buergel

       Susanna Buergel