Plaintiff's Exhibit H

Plaintiff's August 6, 2020 Letter to Defendants
(S. Buergel) Re: Defendants' Mischaracterizations of
Plaintiff's Production

August 6, 2020

**VIA E-MAIL**

Susanna Buergel
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Re: *Cardwell* v. *Davis Polk & Wardwell LLP,* et al. (1:19-cv-10256-GHW)

Dear Susanna:[1]

  I write on behalf of Plaintiff Kaloma Cardwell ("Plaintiff") in response to our August 4 teleconference (the "Teleconference") and your July 27, 2020 correspondence (the "July 27 Letter") sent on behalf of Defendants Davis Polk & Wardwell LLP, Thomas Reid, John Bick, William Chudd, Sophia Hudson, Harold Birnbaum, Daniel Brass, Brian Wolfe, and John Butler's (collectively, "Defendants").

  This letter is an updated version of Plaintiff's July 31 Letter to Defendants. Unless otherwise noted in this letter, and because Defendants did not provide Plaintiff with a comprehensive or specific response to Plaintiff's letter as requested, Plaintiff's prior July 31 Letter continues to reflect Plaintiff's current position on all relevant issues.[2]

  As an initial matter, and as noted in Plaintiff's July 28, 2020 email, it is difficult to construe your July 27 Letter as a good-faith attempt to meet and confer about any purported "deficiencies," particularly where they were raised in conclusory fashion on the eve of a teleconference with the Court, where Defendants unilaterally demanded to meet and confer on less than 24 hours' notice, and threatened to use such conclusory views (and incorrect assertions) as a basis for "inform[ing] the Court of plaintiff's continuing failure to abide by his discovery obligations." (Ltr. at 2.)[3]

---

[1] Comments in blue are included in this letter to address certain subjects discussed in our August 4 Teleconference, and to make it easy for the parties to track the negotiations, proposals, and issues that have been resolved or require resolution.

[2] On the August 4 Teleconference, for the first time, Defendants brought to counsel's attention that Plaintiff's responses and objections did not include a certification with Plaintiff's counsel's signature. As outlined in this letter, pursuant to F.R.C.P 26(g)(2) requirement that the signature be promptly provided once it is brought to the attorney's or party's attention, Plaintiff's counsel will provide his certification to Defendants.

[3] Defendants' use of needlessly accusatory language in its correspondence violates the spirit of any good-faith attempt to resolve discovery disputes. Baseless accusations that Plaintiff, for example, "selectively produced portions of responsive messaging chains, by photographing certain communications and concealing others" (Ltr. at 1) are not well-taken. While Plaintiff hopes that future correspondence and meet and confers do not include such unsubstantiated and unproductive attacks, Plaintiff reserves all rights to seek appropriate relief as needed.

In fact, in many instances, your July 27 Letter blanketly and confusingly asserts deficiencies that simply do not exist, such as those instances where Defendants accuse Plaintiff of failing to provide requested information "without basis." Troublingly, nowhere in the July 27 Letter do Defendants acknowledge (i) Plaintiff's Objections and Responses to Defendants' First Set of Requests for Production ("Plaintiff's RFP Responses") and (ii) Plaintiff's Objections and Responses to Defendants' First Set Of Interrogatories ("Plaintiff's Rog Responses")—both of which explicitly contain general and specific objections for almost every document request and interrogatory, and make clear that Plaintiff's document production reflected such positions.[4]

Nevertheless, in the interest of providing greater clarity around Plaintiff's document production and discovery responses, and to put the parties on a path to resolve any purported disputes, I address the subjects raised in your July 27 Letter below.

I. **PLAINTIFF'S GENERAL OBJECTIONS**

As noted above, your July 27 Letter asserts deficiencies without ***any*** recognition that both (i) Plaintiff's RFP Responses and (ii) Plaintiff's Rog Responses explicitly noted, *inter alia*, that:

1. The "General Objections form a part of and are specifically incorporated into each of Plaintiff's responses" and that a "[f]ailure to refer specifically to any of these General Objections in any specific response should not be construed as a waiver of same."

2. "Notwithstanding the specific response to any [Request or Interrogatory], Plaintiff does not waive any of his general objections."

3. "Plaintiff may repeat a general objection . . . for emphasis or for some other reason, and the failure to repeat a general objection shall not be construed as a waiver of any general objection to the [Requests or Interrogatories]."

Further, with respect to Plaintiff's Rog Responses, Plaintiff expressly noted that "[a]ny responses to the Interrogatories are made without waiver of, or prejudice to, any objections Plaintiff may raise now or in the future, and all such objections are hereby expressly preserved." Plaintiff continues to reserve such rights.

Ultimately, however, because Defendants' July 27 Letter makes no mention of Plaintiff's General Objections, it is unclear what general objections, if any, Defendants dispute or believe are insufficient to qualify as a valid objection to certain documents requests or interrogatories.

Plaintiff remains willing to meet and confer with Defendants concerning any ***specific*** issues that Defendants identify concerning any of Plaintiff's General Objections. Those positions, however, must first be asserted and clearly articulated by Defendants.

---

[4] With so many blanketed and factually inconsistent assertions about Plaintiff's production and responses, it is difficult to construe your July 27 Letter as a good-faith attempt to meet and confer about any purported deficiencies in Plaintiff's document production and responses.

As noted herein and on the Teleconference, Plaintiff requests that Defendants state which objections they are challenging. As a reminder, Defendants repeated argument on the Teleconference that Plaintiff cannot serve objections and has waived the right to serve objections is directly contracted by the Court's clear instructions to Defendants and Defendants own representations to the Court. As noted in the transcript of the July 7 remote teleconference with the Court:

> **Mr. Birenboim**: *Your Honor . . . Just to clarify, is [July 18] a date by which plaintiffs would serve written responses and objections, or is that a date by which plaintiff would produce the documents he intends to produce and answer the interrogatories he intends to answer?*
>
> **The Court**: *It's a date by which he must provide complete comprehensive responses to all of the pending requests. I'm not precluding him from raising appropriate objections at this time. Step D of this protocol would give you the opportunity to let me know if you want to bring a motion for me to determine that he has waived any right to object to the pending discovery request.*
>
> **Mr. Birenboim**: *Understood. We are fine with that process. We will, of course, seek to minimize any motion practice.*

It is unclear why Defendants have categorically taken the position that none of Plaintiff's objections are appropriate and that Plaintiff cannot serve objections, but such an approach belies any meaningful attempt to minimize motion practice. Consistent with the Court's instructions, if Defendants want to challenge Plaintiff's ability to serve objections, Defendants must make the proper motion before the Court.

## II.   PLAINTIFF'S SPECIFIC OBJECTIONS & RESPONSES

### a.   Documents Produced Subject to Plaintiff's Objections

Plaintiff made clear in each RFP response the precise scope of what Plaintiff is willing to search for and produce and what Plaintiff is not, supported by reference to specific objections. Because Defendants' July 27 Letter also makes no mention of Plaintiff's specific objections, it is unclear what specific objections, if any, Defendants dispute or believe are insufficient to qualify as a valid objection to certain RFPs.  Plaintiff remains willing to meet and confer to discuss any particular RFPs for which Defendants still have any concerns; if so, please identify them on a request-by-request basis.

As captured in this letter, and because there is a significant gap in Defendants' characterization of Plaintiff's production and responses and Plaintiff's actual production and responses, it would be most helpful if Defendants provided Plaintiff with a request-by-request list outlining any issues. As we have made clear below, Plaintiff is willing to provide specific responses and clarification on any perceived or actual issues related to any particular RFPs or interrogatories.

August 6, 2020 Ltr. to S. Buergel
Page 4 of 12

      For the sake of clarity, Plaintiff has not and does not withdraw any of his objections. Unless otherwise noted herein or in Plaintiff's RFP Responses, Plaintiff has not produced documents in response to certain RFPs, on the grounds stated in those objections. We believe that the reasons for such non-production are self-evident in Plaintiff's objections and responses, to which we direct you.

### b. Documents Publicly Available and/or Equally Available to Defendants

      Plaintiff made clear in each response the scope of what Plaintiff is willing to search for and produce and what Plaintiff is not. *See* Plaintiff's Responses to RFP Nos. 1-8, 10-12, 15-31.

### c. Relevance, Overbreadth, and Burden

      Plaintiff has made clear in its objections that particular RFPs are (i) overly broad, unduly burdensome, (ii) do not appear relevant to the claims or potential defenses asserted or to be asserted in this action, and/or (iii) not proportional to the needs of the case. For example, and as specifically noted in certain objections, Plaintiff objected to certain requests for "all documents" because Defendants failed to provide a reasonable or appropriate time limitation, or Defendants have failed to demonstrate how certain categories of discovery are relevant to the claims or potential defenses. If Defendants intend to narrow the scope of such RFPs, or demonstrate how such discovery is relevant to certain claims and/or potential defenses, we are willing to meet and confer on a properly narrowed or articulated Request.

#### i. Relevance

      On the issue of relevance, note that the burden of demonstrating relevance is on the party seeking discovery. *Mandell v. The Maxon Co.,* No. 06 Civ. 460 (RWS), 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007) (burden of demonstrating relevance is on party seeking discovery); *Great Am. Ins. Co. of N.Y. v. TA Operating Corp.*, No. 06 Civ. 13230 (WHP) (JCF), 2008 WL 1848946, at *5 (S.D.N.Y. Apr. 24, 2008) ("[T]he party seeking discovery must demonstrate a need for it").  During the Teleconference, Defendants speculated that certain post-termination date communications and information may reveal information related to Plaintiff's emotional state, but it does not and cannot explain what bearing any such questions—which would long post-date not only the allegations at issue but the filing of the Complaint—may have on Plaintiff's claims or Defendants' potential defenses. On the question of relevance and temporal scope, it is unclear whether Defendants are also arguing that Defendants' emails, text messages, phone numbers, social media accounts, resumes, and cover letters that follow Plaintiff's termination date, to give but a few examples, are all similarly discoverable for a period that runs through the present.

      In any event, and in connection with other points raised in this letter, for each question that asks for information or communications after August 10, 2018—that is the date Defendants' terminated Plaintiff's employment—please explain for such question or request what bearing such potential information and communications have on the claims and potential defenses in this action.

August 6, 2020 Ltr. to S. Buergel
Page 5 of 12

        ii.    *Overbreadth*

Relevant caselaw related to overly broad interrogatories is below.

   **d.  Document-Specific Responses**

Though the July 27 letter mainly asserts purported deficiencies in categorical fashion, rather than specify each document purported to be deficient, the letter does include a limited number of documents for which Defendants have articulated specific concerns. We address such concerns below. However, for the avoidance of doubt, all explanations set forth in this letter are subject to the objections, caveats, and reservation of rights noted in Plaintiff's Objections and Responses.

        i.    *Defendants' Incorrect Assertions That "Plaintiff ... improperly redacted responsive content"*

- CARDWELL000514: Based on our investigation, this document is a printout of a 2015-2016 internal Davis Polk email chain (an unredacted copy of which should be in Defendants' possession, custody, or control). To be clear, this document was not redacted in connection with Plaintiff's July 18, 2020 production. The only parts that are redacted relate to provisions of agreements that belong to non-Davis Polk third-parties and were provided to Davis Polk in connection with an M&A deal.

- CARDWELL000540: Based on our investigation, this document is a printout of a 2016 internal Davis Polk email chain (an unredacted copy of which should be in Defendants' possession, custody, or control). To be clear, this document was not redacted in connection with Plaintiff's July 18, 2020 production. The redacted parts relate to communications that appear to be emails from non-Davis Polk third parties who were communicating with Davis Polk attorneys prior to Plaintiff being assigned to work on the matter.

- CARDWELL000570: Based on our investigation, this document is a printout of a 2015 internal Davis Polk email chain (an unredacted copy of which should be in Defendants' possession, custody, or control). To be clear, this document was not redacted in connection with Plaintiff's July 18, 2020 production. The only parts that are redacted relate to a draft list of due diligence questions that were provided by a Firm client in connection with an M&A deal.

- CARDWELL001179. Contrary to Defendants' assertions, this page was not redacted. Based on our investigation, this appears to be a blank page that existed in the original file that was subsequently Bates stamped and produced to Defendants.

        ii.    *Defendants' Assertions That "Plaintiff has failed to produce full document families, including from personal email accounts"*

- CARDWELL00052: This Bates number and document does not exist. Please provide the correct Bates number that Defendants intended to reference.

- CARDWELL000521: Based on our investigation, this document is a printout of a 2016 internal Davis Polk email chain between Plaintiff and a then-Davis Polk associate. This email and any referenced attachments or work product are in Defendants' possession, custody, or control.

- CARDWELL000580: Based on our investigation, this document is a printout of a 2016 internal Davis Polk email chain between Plaintiff and a then-Davis Polk associate. This email and any referenced attachments or work product are in Defendants' possession, custody, or control.

- CARDWELL000695: Based on our investigation, we believe the entire email chain and any corresponding attachments were produced to Defendants. However, we are willing to double check and will provide any yet-to-be-produced emails or attachments, if applicable.[5]

- CARDWELL000708: Based on our investigation, we believe the entire email chain and any corresponding attachments were produced to Defendants. However, we are willing to double check and will provide any yet-to-be-produced emails or attachments, if applicable.

- CARDWELL001440: Based on our investigation, this document is a June 2017 email chain between Plaintiff and Davis Polk's Director of Human Resources. These communications and any related attachments are in Defendants' possession, custody, or control.

- CARDWELL001753: Based on our investigation, this document is a photograph of an email communication between Plaintiff and a Black Davis Polk attorney who was then an associate and is now counsel at Davis Polk. This picture was not taken in preparation for Plaintiff's July 18, 2020 production. Defendants are in possession of the underlying email communications and the equipment used to transmit such communications. We believe that all pictures related to this communication were produced to Defendants. However, we are willing to double check and will provide any yet-to-be produced pictures of this particular set of communications, if applicable.

- CARDWELL000675: Based on our investigation, this document is an August 2017 email communication that included a copy of Plaintiff's EEOC Charge. Plaintiff's EEOC Charge is undoubtedly in Defendants' possession. However, we are

---

[5] To be clear, Plaintiff continues to reject Defendants' unilaterally set deadlines, including the August 3, 2020 deadline that Defendants purport to set in its July 27 Letter for any subsequent productions that Plaintiff may make in response to the issues raised in your July 27 Letter. *See* Ltr. at 4 ("Defendants further demand that plaintiff cure all failures to comply with the Court's July 7, 2020 order not later than August 3, 2020."). We ask that Defendants refrain from making such unproductive "demand[s]" on Plaintiff going forward. Plaintiff expressly reserves all rights.

August 6, 2020 Ltr. to S. Buergel
Page 7 of 12

- CARDWELL000680: Based on our investigation, this document is an email communication between Plaintiff and one of his law school professors. Because it follows Plaintiff's termination in 2018, Plaintiff would like to understand how any communications or subsequent communications related to this email are relevant to the claims and defenses in this action.

    iii.   *Defendants' Assertion That "Plaintiff has produced only selective screenshots of responsive text- and social media message chains"*

- CARDWELL001225: Based on our investigation, this document is a screenshot of a text message between a Black Davis Polk attorney who was then an associate and is now counsel at Davis Polk. We are willing to double check and will provide any yet-to-be produced screenshots of this particular set of communications, if applicable.[6]

- CARDWELL001246: Based on our investigation, this document is a screenshot of a set of responsive text messages between Plaintiff and Black Davis Polk attorneys, one of whom was then an associate and is now counsel at Davis Polk and the other was then an associate and is now a partner at Davis Polk. We are willing to double check and will provide any yet-to-be produced screenshots of this particular set of communications, if applicable.[7]

- CARDWELL002062, CARDWELL002063, CARDWELL002070, CARDWELL002076: Based on our investigation to date, and contrary to Defendants' baseless assertions, these communications involve screenshots that represent a full set of such communications in Plaintiff's possession. Since these communications document Plaintiff's real-time description of Defendants' unlawful actions, Plaintiff surely has no incentive to cherry-pick such documents for production. Nonetheless, we are willing to double check and will provide any yet-to-be produced screenshots of this particular set of communications, if applicable.

    iv.   *Defendants' Assertion That "Plaintiff has failed to produce text messages with any of the individuals identified at Interrogatory Nos. 6, 7, or 8."*

- With respect to the individuals identified in Interrogatory Nos. 6-7: As a general matter, Plaintiff does not have any text messages with five of the ten individuals

---

[6] However, as Defendants are well-aware, text messages are often a continuation of face-to-face communications, as was the case with this particular set of text messages and was often the case with this particular attorney. Therefore, it is not proper to look at a particular set of text messages and assert that Plaintiff has produced documents *selectively* or *improperly*. Relatedly, Plaintiff is not attempting to "cherry-pick" communications between Plaintiff and any Black Davis Polk attorneys. To be sure, Plaintiff's communications with such attorneys confirms that they often received Plaintiff's complaints of discrimination and retaliation in real-time.

[7] *Id.*

August 6, 2020 Ltr. to S. Buergel
Page 8 of 12

that Plaintiff identified who are named defendants and other Davis Polk leaders. Regarding the other individuals, *see* Plaintiff's objections, which includes the objection that the "the Interrogatory is overly broad, indefinite as to time, and without reasonable limitation in its scope." If Defendants intend to tailor the scope of these Interrogatories, we are willing to meet and confer on a properly narrowed request.

- With respect to the individuals identified in Interrogatory No. 8: As a general matter, Plaintiff does not have any text messages with five of the ten individuals that Plaintiff identified who are named defendants and other Davis Polk leaders. Regarding the other individuals, *see* Plaintiff's objections, which includes objections (i) "on the grounds and to the extent that [the interrogatory] seeks information already in the possession of or equally accessible to Defendants" and (ii) as to "the temporal scope of this request, including because it seeks information from July 1, 2012 through the present." If Defendants intend to tailor the scope of this Interrogatory, we remain willing to meet and confer on a properly narrowed request.

     v.    *Defendants' Assertion That "Plaintiff directed his contacts to use … Signal, … but has failed to produce responsive Signal messages"*

- CARDWELL000675: This is an August 2017 email communication. The email clearly (i) lists the recipients of the email; (ii) informs the recipients that Plaintiff has filed an EEOC charge against Defendants; (iii) informs the recipients of the email that "[t]here's not much that I want or need you to do at the moment" and that "[f]or now, simply reading the EEOC charge would be helpful…"; (iv) notes that Plaintiff sent the email "mostly as an fyi"; and (v) ultimately gave recipients the options of discussing his EEOC Charge "face-to-face," through the Signal app, or by "giv[ing him] a call…." Moreover, Plaintiff's Responses and Objections clearly indicate that "Plaintiff objects to the Requests to the extent they seek, [*inter alia*,] information without limitation to a particular time period relevant to this action."

     vi.    *Defendants' Assertion That "Plaintiff has improperly redacted the names of his correspondents in social media communications"*

- CARDWELL002035 – CARDWELL002088: Plaintiff has not improperly redacted such documents. Plaintiff's Responses and Objections clearly note that "Plaintiff objects to the Requests . . . to the extent they require the disclosure of confidential commercial, business, financial, proprietary, personal, or particularly sensitive information. Plaintiff will produce documents containing such material only pursuant to the terms of a suitable protective order entered between the parties or by the Court." That has not changed.  Once a suitable protective order is negotiated and so-ordered by the Court, Plaintiff is willing to provide unredacted versions of these communications.

As noted in a separate communication, Plaintiff has provided Defendants with a draft protective order that is virtually identical to Judge Wood's model protective order. If Defendants are willing and able to agree to that protective order, Plaintiff will quickly

provide unredacted copies of these communications.

   vii. *Defendants' Assertion That "Scanned pages are cut off throughout the production, obscuring text"*

- CARDWELL000046; CARDWELL000062; CARDWELL000266: Defendants' assertion applies to the same batch of a particular type of scanned document, all of which clearly show virtually all of the words on their respective pages, but can be rescanned to ensure full margin-to-margin coverage. If Defendants specify which pages they believe were not sufficiently scanned and would like us to rescan, we will rescan the requested pages and make a supplemental production of those documents to Plaintiff.

   viii. *Defendants' Assertion That "Certain documents were only partially printed and produced"*

- CARDWELL000530: Based on our investigation, this document is a printout of a February 2017 internal Davis Polk email chain between Plaintiff and a Davis Polk staffing coordinator. This document is in Defendants' possession, custody, or control. In any event, Defendants are mistaken about the relevant documents being partially produced. The "missing" part of CARDWELL000530-CARDWELL000531 appears at CARDWELL000532.

   ix. *Defendants' Assertion That "Certain documents have no content"*

- CARDWELL001520; CARDWELL001521: As the production makes plain, these files are recordings, not physical or electronic documents. It is unclear why Defendants are claiming that such files "have no content."

   x. *Defendants' Assertion That "Plaintiff failed to produce documents on which he relied in drafting his complaint and … thus known to be in his possession."*

- Here, Defendants ground their assertions on the fact that Plaintiff has previously quoted from certain performance reviews, certain letters, and Defendants' NYSDHR Brief. To be clear, Plaintiff has not been able to confirm that he has seen the full set of documents that Defendants submitted in connection with the NYSDHR proceedings, documents that are undoubtedly in Defendants' possession, custody, or control.[8] Plaintiff is willing to work with Defendants if Defendants want to confirm whether Plaintiff has received the full set of documents that Defendants' submitted in connection with the NYSDHR proceedings.

  **e. Plaintiff's Interrogatory Responses are Subject to Plaintiff's Objections**

In what are unmistakable contradictions to Plaintiff's Interrogatory Responses, your July 27 Letter frequently asserts that Plaintiff failed to identify or provide certain information

"without basis." (Ltr. at 3.) Nonetheless, Plaintiff addresses the Interrogatories for which Defendants have articulated specific concerns. As stated *supra*, all explanations set forth in this letter are subject to the objections, caveats, and reservations of rights noted in Plaintiff's Objections and Responses. Plaintiff remains willing to meet and confer to discuss any particular Interrogatory for which Defendants still have any concerns; if so, please identify any such Interrogatory.

### i. Objections for Overbreadth and Improper Temporal Scope

Plaintiff properly stated his objections to interrogatories that seek "'all' documents and/or communications on the grounds that the scope of any such Interrogatory is overly broad, unduly burdensome, and oppressive." Plaintiff also properly objected to the "Interrogatories to the extent they seek information without limitation to a particular time period relevant to this action." *See* objections to Interrogatory Nos. 5, 11,[9] 13, and 14. For each of the aforementioned interrogatories, Defendants demanded that Plaintiff identify "every person" (No. 5), "all persons" (No. 11), "all email addresses" (No. 13), and "each phone number" (No. 14)—either without any time limitation or from July 2012 through the present. In light of Defendants' demand for information covering "all," "each," and "every" instance, and because the aforementioned interrogatories are not limited to any relevant time frame, Plaintiff objected to these Interrogatories as overly broad.

To give but one example of the unduly, overly broad, and impractical nature of Defendants Interrogatories, Interrogatory No. 14 asks Plaintiff "[i]dentify each phone number and phone service provider that plaintiff has used" between July 1, 2012 and the present. Defendants are asking and expecting Plaintiff to identify every phone number used over an eight-year period? If Defendants intend to tailor the scope of these Interrogatories, we remain willing to meet and confer on a properly narrowed request.

Here, we note that courts have required Defendants to narrow similarly overly broad interrogatories. *See Campbell v. Facebook Inc.*, 2015 WL 3533221 at *6 (N.D. Cal. June 3, 2015) ("Courts can and regularly do modify language of . . . interrogatories to seek the material or principal facts, instead of 'all facts . . .'"); *see also, e.g., Anderson v. United Parcel Serv., Inc.*, 2010 WL 4822564, at *3 (D. Kan. Nov. 22, 2010) (sustaining "[p]laintiff's overly broad and unduly burdensome objections" to interrogatory that "all facts" or "all discussions" and requiring responding party to provide the "principal or material facts" instead); *Haggerty v. Wells Fargo Bank, N.A.*, 2012 WL 4113341, at *2 (N.D. Cal. Sept. 18, 2012) (construing the "terms 'all,' 'any,' and 'each' used in Defendant's written [interrogatories] . . . as "all material," "any material," and "each material"); *Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 528 (D.S.C. 2018).

---

[9] Similarly, not only are Defendants unduly asking Plaintiff to "identify all persons" in Interrogatory No. 11, among other interrogatories, Defendants' Interrogatories also provided the following instruction for such interrogatories: "In each case where plaintiff is asked to 'identify' a person, plaintiff is asked to state, with respect to each such person, the following: (a) full name; (b) current business address and telephone number; and (c) current residence address and telephone number, if known." For the reasons noted in this letter, Plaintiff is simply asking Defendants' to provide reasonably tailored, appropriate, relevant, and nonburdensome interrogatories.