# EXHIBIT 16

Published Client Memo that Cardwell Co-Authored

**Davis Polk**

CLIENT MEMORANDUM

# Just How Iron-Clad are Contractual Rights to Payment On Preferred Stock of a Solvent Company?

June 6, 2017

Minority equity investments in public companies are on the rise. These are often structured as an investment in convertible preferred stock to give the investor a senior position to other equity while preserving equity upside through the ability to convert to common stock.

This trend is likely sparked by a search for higher yield than is afforded by an investment in debt in a low interest rate environment, less appetite for "big ticket" full buyouts, and the attractiveness to issuers of not using up their permitted debt baskets or leveraging their balance sheet.

While the investor is willing to give up the seniority of a debt position, it is still keenly focused on optimizing its right to receive repayment of its preferred investment on the contractually stipulated redemption date and to receive its contractually stipulated dividends on each dividend payment date.

## But, Preferred Stock is Equity and, Unlike Debt, in Some Circumstances, Even a Clear Contractual Right to Preferred Payments is Subject to "Legal Overrides"

At the outset, all investors must understand that preferred stock is equity and will always be subordinate to debt.

Further, Delaware courts (in cases such as *ThoughtWorks, Tradingscreen and ODN Holding*) have held that contractual rights to have preferred stock redeemed on a specified redemption date and to payment of dividends are subject to:

- the *statutory* requirement that the company have sufficient surplus (as required by §§ 160 and 170 of the DGCL), meaning that the fair value of the company's assets must exceed its liabilities at the time of the payment; and

- the *common law* requirement that the company must be solvent and be able to pay its debts as they become due and continue as a going concern before and after giving effect to the payment.

These legal requirements apply whether or not stipulated in the contractual terms of the preferred stock and cannot be "contracted out of".

## Fiduciary Duty Overrides?

What is less well understood is the extent to which, in situations where a company has sufficient surplus and its solvency and viability as a going concern would not be jeopardized, the directors can exercise their fiduciary duties as an "out" to avoid satisfying the contractual payment obligations on the preferred stock.

The Delaware court in the *ODN Holding* case in April 2017 sought to explain how the company's contractual obligations to the preferred stock and the directors' fiduciary duties to the common stock should be reconciled, as follows:

- The company's obligations to the preferred stock are contractual, and do not stem from director fiduciary duties.

- The directors' fiduciary duties are owed to the holders of the residual equity claims – i.e., the common stock.

**Davis Polk**

- The Board should pursue the best interests of the corporation and its *common* stockholders, if that can be done in a manner that is consistent with complying with the contractual promises owed to the preferred stock.

- Where there is discretion in complying with the contractual terms of the preferred stock, the Board in its good faith judgment should prefer the interests of the common stock to those of the preferred stock.

- The *ODN Holding* court recognized though that "the fiduciary status of directors does not give them Houdini-like powers to escape from valid contracts."

- But, where the payment covenant to the preferred stock is subject to a contractual standard or a condition such as "subject to legally available funds" that is susceptible to interpretation, the directors in the exercise of their fiduciary duties will be empowered to interpret that standard so as to balance the contractual obligation and the fiduciary duties to the common stock, including by delaying payment to the preferred stock and taking actions to make preferred payments over time consistent with legally available funds. This ability to delay would be relevant for example where the company does not have available cash for the payment and would need to take actions such as selling assets to make funds available. (As it happens, in *ODN Holding* the investor controlled the company, and the Court was particularly troubled by the Board's conduct in shifting the company from a growth strategy to effectively liquidating the company to make funds available for redemption of the preferred stock, rather than seeking to balance the fiduciary duties to the common stock with the contract rights of the preferred by making funds available for redemption over time.)

- The Court recognized that, for a solvent company with available cash, there could be an "iron-clad contractual obligation" that is not subject to a contractual condition such as "legally available funds" and that breach of such a covenant would result in damages.

- Unfortunately, however, by commenting *in dicta* on a scenario not at issue in the case – namely, an "iron-clad contractual obligation" not subject to a contractual condition such as "legally available funds" -- the Court went on to introduce fiduciary uncertainty around the *enforceability* of an unconditional payment covenant by stating that the directors, in the exercise of their fiduciary duties, still have room to exercise discretion to refuse compliance with the contractual covenant because of the doctrine of efficient breach, *i.e.*, where the most advantageous course is to breach and pay damages. In the Court's view, this could be a viable alternative for directors, for example, where the preferred terms do not provide for cumulative dividends.

**Key Takeaways Regarding the Enforceability of Contractual Rights to Payment of Preferred Stock**

- Recognize that there is no way for preferred stock to be treated like debt. There is no way to take a security interest to secure preferred payments.

- Preferred payments (dividends or on redemption) cannot be made if there is inadequate surplus or if the company would be rendered insolvent by the payment or have its going concern status jeopardized.

- Make the language of the contractual covenants very clear so that, for a solvent company, there is an "iron-clad" contract obligation that would, at a minimum, give rise to a damages claim in the case of breach. The contractual standard should be "unless prohibited by law" or "unless prohibited by §160 or §170 of the DGCL". Avoid standards like "subject to legally available funds" or "when, as and if declared by the Board", which will provide a degree of discretion to the Board regarding whether to delay the payments and out of what funds payments should be sourced.

**Davis Polk**

- No Delaware case has ruled on the enforceability against a solvent company of an "iron-clad" contractual covenant to redeem preferred stock on a specified date or to pay preferred dividends or, inversely, on the Board's discretion to exercise fiduciary duties to avoid complying with the covenant. However, in light of *dicta* such as in the *ODN Holding* case, a Board may feel empowered in the exercise of its fiduciary duties to "evaluate the corporation's alternatives in a world where the contract is binding", including whether to breach and pay damages.

- Make it far less attractive for a Board to opt for an "efficient breach" by making damages and penalties for non-payment meaningful. Appropriate penalties and incentives for the company to comply with the contractual covenants include escalating dividend rates, making dividends cumulative, and "springing" class approval rights for the preferred stock.

If you have any questions regarding the matters covered in this publication, please contact any of the lawyers listed below or your regular Davis Polk contact.

| | | |
|---|---|---|
| **John D. Amorosi** | 212 450 4010 | john.amorosi@davispolk.com |
| **John A. Bick** | 212 450 4350 | john.bick@davispolk.com |
| **Ron Cami** | 650 752 2008 | ron.cami@davispolk.com |
| **Kaloma Cardwell** | 212 450 3078 | kaloma.cardwell@davispolk.com |
| **William J. Chudd** | 212 450 4089 | william.chudd@davispolk.com |
| **Michael Davis** | 212 450 4184 | michael.davis@davispolk.com |
| **Louis Goldberg** | 212 450 4539 | louis.goldberg@davispolk.com |
| **Lee Hochbaum** | 212 450 4736 | lee.hochbaum@davispolk.com |
| **Mark M. Mendez** | 212 450 4829 | mark.mendez@davispolk.com |
| **Richard D. Truesdell, Jr.** | 212 450 4674 | richard.truesdell@davispolk.com |

© 2017 Davis Polk & Wardwell LLP | 450 Lexington Avenue | New York, NY 10017

This communication, which we believe may be of interest to our clients and friends of the firm, is for general information only. It is not a full analysis of the matters presented and should not be relied upon as legal advice. This may be considered attorney advertising in some jurisdictions. Please refer to the firm's **privacy policy** for further details.