PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS   NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

HONG KONG CLUB BUILDING, 12TH FLOOR
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
(212) 373-3553

WRITER'S DIRECT FACSIMILE
(212) 492-0553

WRITER'S DIRECT E-MAIL ADDRESS
sbuergel@paulweiss.com

November 19, 2020

**Via ECF**

The Honorable Gregory H. Woods
United States District Court
Southern District of New York
500 Pearl Street, Room 2260
New York, NY 10007

*Cardwell* v. *Davis Polk & Wardwell LLP*, et al.
19-cv-10256-GHW (S.D.N.Y.)

Dear Judge Woods:

In accordance with the Court's instruction at the November 13, 2020 conference, I write on behalf of defendants, pursuant to Rule 4.A(ii) of Your Honor's Individual Rules of Practice in Civil Cases, to explain why the sealing of certain confidential information in plaintiff's Second Amended Complaint is appropriate in light of the Second Circuit's decision in *Lugosch* v. *Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006).

***The Factual Context and the Information Defendants Seek to Seal***

On November 18, 2020, in an effort to cure deficiencies in his prior pleading, plaintiff filed a Second Amended Complaint containing new allegations and attaching 19 new exhibits. ECF 99; ECF 100. These new allegations and exhibits contain confidential information, which defendants request that the Court seal. Defendants' targeted and narrowly tailored requests fall into three categories:[1]

*First*, defendants seek to seal two exhibits containing confidential proprietary business information of third-party consultants who were hired by Davis Polk

---

[1] Pursuant to Your Honor's Individual Rules of Practice, the parties met and conferred in effort to narrow the scope of defendants' requests.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Gregory H. Woods  2

to provide diversity and inclusion training to the Firm's lawyers. ECF 99-5, 99-7; ECF 100-5, 100-7.

*Second*, defendants seek to seal two exhibits revealing client confidences and attorney-client privilege. ECF 99-9, 99-11; ECF 100-9, 100-11. Exhibit 9 contains, in plaintiff's words, his "analysis and research," as counsel to Davis Polk's client, which was later incorporated into a draft memorandum to that client. *See* ECF 85-9 at 4, ECF 100-9. This is one of the very same documents defendants previously sought protection for, and which the Court ordered filed under seal on November 4, 2020. *See* ECF 73 (defendants' motion); ECF 74-3 at 4 (showing defendants' proposed redaction); ECF 82 (Order). Plaintiff filed Exhibit 9 publicly without consulting defendants notwithstanding defendants' prior privilege claim, defendants' prior request for sealing, and the Court's prior order granting defendants' request. *See* ECF 88-9. Exhibit 11 reflects a discussion, among counsel, of the form and substance of the Firm's work for the same client, contains a description of the advice provided to that client, and identifies, by name, clients throughout. ECF 99-11; ECF 100-11. In this litigation, Plaintiff produced two versions of the email in Exhibit 11 to defendants with a "Confidential" ledger, one of which had client names and information redacted. He elected to attach unproduced versions of both Exhibit 9 and Exhibit 11 to his Second Amended Complaint. Buergel Decl. ¶¶ 5–9.

*Third*, defendants request that the Court permit the redaction of client names and certain targeted text in the Second Amended Complaint that purports to disclose the state of the Firm's relationship with a specific client. Second Am. Compl. ¶¶ 249–252, 254, 258, 260 (naming and purporting to disclose the state of the Firm's relationship with a specific client).

***Applicable Legal Standard***

In *Lugosch*, the Second Circuit enumerated three steps that courts should follow to determine whether a document may be sealed. First, the court must determine whether the materials are "judicial documents" to which a presumption of public access attaches. *Lugosch*, 435 F.3d at 119. Second, if the materials are "judicial documents," the court determines the weight of the presumption of access by examining "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* Third, after determining the weight of the presumption of access, the court must "balance competing considerations against it." *Id.* at 120; *Mirlis* v. *Greer*, 952 F.3d 51, 59 (2d Cir. 2020) ("[T]he court must identify all of the factors that legitimately counsel against disclosure of the judicial document, and balance those factors against the weight properly accorded the presumption of access.").

"[T]he right to inspect . . . judicial records is not absolute." *Nixon* v. *Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). "Documents may be sealed if specific on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Nov. 4, 2020 Hr'g Tr. at 40:2–5 (quoting *Lugosch*, 435 F.3d at 120). "Higher values that may justify the sealing of documents include national security concerns, attorney-client privilege, law enforcement interests, or the privacy interests of third parties. *Id.* at 40:5–10 (citing *E.E.O.C.* v. *Kelley Drye &*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Gregory H. Woods    3

*Warren LLP*, 2012 WL 691545, at *2 (S.D.N.Y. Mar. 2, 2012)). District courts have discretion to order records sealed or material redacted in accordance with the court's inherent "equitable powers . . . over their own process, to prevent abuses, oppression, and injustices." *Int'l Prods. Corp.* v. *Koons*, 325 F.2d 403, 408 (2d Cir. 1963) (quoting *Gumbel* v. *Pitkin*, 124 U.S. 131, 144 (1888)).

***Defendants' Narrowly Tailored Requests Are Consistent with* Lugosch**

The Second Amended Complaint and exhibits are judicial documents entitled to a presumption of access. But the presumption of access to the particular material defendants seek to seal is not strong. Under *Lugosch*, the public's right of access to judicial documents is based on the need for the federal courts "to have a measure of accountability and for the public to have confidence in the administration of justice" because "professional and public monitoring" of the courts "is an essential feature of democratic control." *Lugosch*, 435 F.3d at 119 (quoting *United States* v. *Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). The weight of the presumption of access "is governed by the role of the material [at] issue and the exercise of the Article III power" not "the degree of the public interest in the information." Nov. 4, 2020 Hr'g Tr. 42:23–43:2. Here, the specific material defendants seek to redact plays little or no role in the exercise of Article III power. The limited, narrow sealing and redactions defendants seek will not impede the public's ability to monitor or understand the issues in this case.

Even if the documents were entitled to a strong presumption of access, this presumption is not absolute and yields to the countervailing and higher values that necessitate narrowly tailored sealing here. *See, e.g.*, *Cooksey* v. *Digital*, 2016 WL 316853, at *3 (S.D.N.Y. Jan. 26, 2016) (permitting redaction of complaint despite a strong presumption of access).

    A.    **The Court Should Seal Exhibits 5 and 7**

Protecting the confidential business information of nonparties in Exhibits 5 and 7 outweighs the public interest in access to that information. Courts in the Second Circuit recognize an exception to the presumption of public access where disclosure of confidential business information could cause competitive harm. *Playtex Prod., LLC* v. *Munchkin, Inc.*, 2016 WL 1276450, at *11 (S.D.N.Y. Mar. 29, 2016) ("[B]ecause Plaintiffs' privacy interests and the likely harm they may suffer if this 'highly proprietary material' is revealed to their competitors outweigh the presumption of public access, the Court authorizes the sealing of the redacted statements."); *GoSMiLE, Inc.* v. *Dr. Jonathan Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 650 (S.D.N.Y. 2011) (sealing "highly proprietary material" because the privacy interests outweighed the presumption of public access); *Gelb* v. *AT&T Co.*, 813 F. Supp. 1022, 1035 (S.D.N.Y. 1993) (sealing "potentially valuable commercial information which . . . could alter [Defendant's] competitive position in the telecommunications market"); *see also* Fed. R. Civ. P. 26(c)(1)(G) (stating that "the court may, for good cause, issue an order . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way").

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
The Honorable Gregory H. Woods   4

Exhibits 5 and 7 contain confidential business information of nonparties VallotKarp and The Vernā Myers Company, both of which were retained by Davis Polk to provide trainings to the Firm's lawyers and required confidential treatment of their intellectual property. The content of their trainings is integral to the services these entities provide. VallotKarp "partners with organizations to develop sustainable diversity and inclusion initiatives" and "focuses on creating inclusive environments where people can work together more effectively."[2] The Vernā Myers Company helps "create more equitable workplaces by delivering dynamic individual online training" in effort to "help[] organizations erase barriers based on race, ethnicity, gender, sexual orientation and other differences with the aim of establishing a new, more productive and just status quo."[3]

Courts often look to the six-factor test for trade secrets under New York law to determine whether information should be sealed, although "business information need not be a 'trade secret' in order to remain sealed or redacted." *Kelley Drye*, 2012 WL 691545, at *3. Several of these factors support sealing here: (i) these non-party trainings are not publicly available; (ii) developing training modules is at the heart of the businesses offered by the nonparties; (iii) the information is valuable and would be valuable to competitors; and (iv) Davis Polk retained the nonparties to provide services using the materials the third parties developed. *See id.*; *cf. United States v. Anthem, Inc.*, 2016 WL 11164046, at *4 (D.D.C. Nov. 16, 2016) (sealing nonparties' business information, including presentations, and noting that "[w]here a third party's property and privacy rights are at issue the need for minimizing intrusion is especially great."). Because the non-party presentation materials contained in Exhibits 5 and 7 are at the heart of the services provided by these companies, public access could cause competitive harm. When balanced against the fact that these materials are not essential to any request to the Court to exercise its power, particularly because defendants do not seek to redact from the Complaint plaintiff's quotations to the materials themselves, defendants submit that the proprietary exhibits should be sealed under *Lugosch*.

    B.    **The Court Should Seal Exhibits 9 and 11**

Protecting privileged and confidential information in Exhibits 9 and 11 outweighs the public interest in access to that information. It is well established that preservation of attorney-client confidentiality is "precisely the kind of countervailing concern that is capable of overriding the general preference for public access to judicial records." *Diversified Grp., Inc. v. Daugerdas*, 217 F.R.D. 152, 160 (S.D.N.Y. 2003) (quoting *Siedle v. Putnam Invs.*, 147 F.3d 7, 11 (1st Cir. 1998)); *see also Kelley Drye*, 2012 WL 691545 at *4 ("The preservation of attorney-client confidentiality is a well-recognized exception to the presumption of access"); *Travelers Indemnity Co. v. Excalibur*

---

[2] Who We Are, VallotKarp, https://www.vallotkarp.com/who-we-are/ (last visited Nov. 19, 2020); VallotKarp Home Page, https://www.vallotkarp.com/ (last visited Nov. 19, 2020).

[3] Mission and Vision, The Vernā Myers Company, https://www.vernamyers.com/company/mission-and-vision/ (last visited Nov. 19, 2020).

*Reinsurance Corp.*, 2012 WL 13029602, at *5 (D. Conn. May 10, 2012) ("[I]t is well-settled within the Second Circuit that the attorney-client privilege may be a sufficiently compelling reason to defeat the public's right of access."); *Lugosch*, 435 F.3d at 125 (stating that attorney-client privilege "might well be . . . a compelling reason" to overcome the presumption of access); Nov. 4, 2020 Hr'g Tr. 43:11-14 ("Privilege[d] materials are regularly recognized as having substantial weight and are entitled to protection against public disclosure even in circumstances such as this.").

Exhibit 9 contains an attorney's "analysis and research" undertaken for a memorandum prepared at the behest of a Davis Polk client and is one of the very same documents that this Court previously held was properly filed under seal. *See* ECF 73 (defendants' motion); Nov. 4, 2020 Hr'g Tr. at 41:18–24 (finding that defendants' proposed redactions were "accurately described by counsel for defendants . . . in the October 13 submission to the Court" as covering "draft memorandum prepared on the behest of Davis Polk client" and "images of the plaintiff's analysis and research."); *accord* Tr. 45:4–7 (stating that "the information that describes attorney work product -- and what appears to be attorney work product -- were attorney-client communications, is properly sealed."); ECF 82 (Order). Exhibit 11 reflects a discussion, among counsel, of the form and substance of the Firm's work for the same client, including a description of the specific nature of the services provided to the client that reveals the motive for the client in seeking representation. The document identifies multiple clients by name and includes discussion regarding strategic issues. ECF 100-11. These exhibits contain precisely the sort of information that is subject to attorney-client privilege, reflect client confidences, and is otherwise subject to New York Rule of Professional Conduct 1.6, which plaintiff himself has an obligation to protect and maintain as confidential. *See, e.g.*, *Resol. Tr. Corp.* v. *Diamond*, 773 F. Supp. 597, 601 (S.D.N.Y. 1991) (finding that "legal advice, opinion or strategy memoranda generated by in-house and outside counsel," "and drafts of documents prepared by counsel" were "absolutely privileged."); *Bretillot* v. *Burrow*, 2015 WL 5306224, at *25 (S.D.N.Y. June 30, 2015) ("[C]orrespondence . . . which also reveal[s] the motive of the client in seeking representation, litigation, or the specific nature of the services provided, such as researching particular areas of the law, fall[s] within the privilege." (citation omitted)); N.Y. R. Prof. Conduct 1.6(a).

The Court previously granted defendants' request to protect client confidences and attorney-client privilege under *Lugosch*. The Court should reach the same conclusion now.

C. **The Court Should Permit Narrow Targeted Redaction of Client Names and Information in the Second Amended Complaint**

Defendants seek limited redactions to protect the name of a former client, and other client-identifying information implicating attorney-client privilege. Second Am. Compl. ¶¶ 249–252, 254, 258, 260. Such redactions are entirely consistent with Second Circuit precedent. *Kelley Drye*, 2012 WL 691545, at *4 (granting request for redactions in order to "conceal client names and other client-identifying information implicating the attorney-client privilege"). The specific name of the former client plays no role in the

exercise of the Court's power in this matter, and, as such, the weight of the public access presumption in these circumstances is outweighed by the strong considerations against it.

*   *   *

The redactions defendants request are narrow and consistent with Second Circuit precedent and this Court's individual rules. The motion should be granted.

Respectfully,

/s/ Susanna M. Buergel

Susanna M. Buergel

cc: All Counsel of Record (via ECF)