**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**KALOMA CARDWELL,**

                                        Plaintiff,

**v.**

**DAVIS POLK & WARDWELL LLP, Thomas Reid,**          **1:19-cv-10256-GHW**
**John Bick, William Chudd, Sophia Hudson, Harold**
**Birnbaum, Daniel Brass, Brian Wolfe, and John H.**
**Butler,**

                                        Defendants.

---

<u>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**</u>
<u>**MOTION TO REDACT AND FILE PLAINTIFF'S SECOND AMENDED**</u>
<u>**COMPLAINT UNDER SEAL**</u>

Dated: November 24, 2020                David Jeffries, Esq.
                                        1345 Avenue of the Americas, 33rd Floor
                                        New York, New York 10105
                                        Tel: 212-601-2770
                                        djeffries@jeffrieslaw.nyc


                                        *Attorney for Plaintiff*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................. 1

LEGAL STANDARD........................................................................................................... 4

ARGUMENT ...................................................................................................................... 6

    I.    The Complaint and Exhibits Are Judicial Documents Under the First
          Amendment Right of Access and Common Law Right of Access .............................. 6

    II.   The Weight of the Presumption of Access Is Strong.................................................. 7

    III.  There Is No Extraordinary Circumstance That Overcomes the Presumption of Access
          That Attaches to the Complaint……………………………………………………...10

          A. Context for the Purportedly Privileged Documents and Information...........10

          B. The Complaint Does Not Contain Traditionally Private Information .........11

          C. The Complaint Does Not Contain Confidential Information ...................12

              1. Davis Polk's Representation of the For-Profit Prison and Other Clients
                  Mentioned in the Complaint Is Public Knowledge ……………..……12

          D. The Complaint Does Not Contain Information That Is Protected by Attorney-
              Client Privilege or That Violates Professional Rules of Conduct..............13

              1. Attorney-Client Privilege Elements Are Not Met or If They Are
                  Present, Defendants Waived the Privilege ...............................14

              2. The Fact of Representation Is Not Protected ...........................15

              3. The Attorney-Client Privilege Doctrine and Defendants' Subjective
                  Beliefs About "Client Confidences" Are Not Co-Extensive ...........16

    IV.  Defendants Have Not Demonstrated Closure is Essential to Preserve
          a Higher Value That Overcomes the Presumption of Access...........................17

          A. Exhibits 5 and 7 Should Not Be Redacted or Kept Under Seal…………...18

          B. Exhibit 9 Should Not Be Redacted or Kept Under Seal……………..……19

          C. Exhibit 11 Should Not Be Redacted or Kept Under Seal……………….…22

CONCLUSION...................................................................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Accent Delight International Ltd. v. Sotheby's*,
    394 F. Supp. 3d 399 (2019) ................................................. 18

*Alcon Vision, LLC v. Lens.com*,
    2020 WL 3791865 (E.D.N.Y. 2020)................................................. 19

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
    814 F.3d 132 (2d Cir. 2016)................................................. 4, 13

*Bernsten v. O'Reilly*,
    307 F. Supp. 3d 161 (S.D.N.Y. 2018)................................................. *passim*

*Carte Blanche (Singapore) PTE, Ltd. v. Diners Club Int'l, Inc.*,
    130 F.R.D. 28 (S.D.N.Y. 1990) ................................................. 22

*Delta Air Lines, Inc. v. Bombardier, Inc.*,
    2020 WL 2614704 (S.D.N.Y. May 22, 2020) ................................................. 4, 5

*DiRussa v. Dean Witter Reynolds Inc.*
    121 F.3d 818 (2d Cir. 1997)................................................. 5

*E.E.O.C. v. Kelley Drye & Warren LLP*,
    2012 WL 691545 (S.D.N.Y. Mar. 2, 2012) ................................................. 6

*Fischman v. Mitsubishi Chemical Holdings America, Inc.*,
    2019 WL 3034866 (S.D.N.Y. July 11, 2019) ................................................. 15, 16

*Gambale v. Deutsche Bank AG*,
    377 F.3d 133 (2d Cir. 2004)................................................. 13

*Hansen v. Rhode Island's Only 24 Hour Truck & Auto Plaza, Inc.*,
    863 F. Supp. 2d 122 (D. Mass. 2012) ................................................. 13

*In re Document Technologies Litigation*,
    282 F. Supp. 3d 743 (S.D.N.Y. 2017)................................................. 13, 22

*In re Grand Jury Investigation*,
    399 F.3d 527 (2d Cir. 2005) ................................................. 14

*In re Grand Jury Proceedings*,
    219 F.3d 175 (2d Cir. 2000)................................................. 14

*In re Shargel*,
  742 F.2d 61 (2d Cir. 1984)..................................................................................... 16

*In re Omnicom Grp., Inc. Sec. Litig.*,
  No. 02 CIV. 4483 RCC/MHD, 2006 WL 3016311 (S.D.N.Y. Oct. 23, 2006)...................... 6

*Joy v. North*,
  692 F.2d 880 (2d Cir. 1982)................................................................................... 10

*Kenford Co. v. County of Erie*,
  55 A.D.2d 466 (4th Dep't 1977) ............................................................................ 22

*King Pharm., Inc. v. Eon Labs, Inc.*,
  No. 04–CV–5540 (DGT), 2010 WL 3924689 (E.D.N.Y. Sept. 18, 2010) .......................... 13

*Lugosch v. Pyramid Co. of Onondaga*,
  435 F.3d 110 (2d Cir. 2006).......................................................................*passim*

*Nycomed U.S., Inc. v. Glenmark Generics, Inc.*,
  No. 08–CV–5023 (CBA), 2010 WL 889799 (E.D.N.Y. Mar. 8, 2010)............................... 12

*Saint-Jean v. Emigrant Mortgage Company*,
  2016 WL 11430775 (E.D.N.Y. 2016) ....................................................................... 19

*SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC*,
  No. 01 Civ. 9291 (JSM), 2002 WL 1455346 (S.D.N.Y. July 3, 2002) ............................... 21

*Trump v. Vance*,
  140 S. Ct. 2412 (2020)........................................................................................... 4

*Under Seal v. Under Seal*,
  273 F. Supp. 3d 460 (S.D.N.Y. 2017)...................................................................... 18

*United States v. Amodeo*,
  71 F.3d 1044 (2d Cir. 1995)............................................................................. 5, 12

*United States v. Davis*,
  132 F.R.D 12 (S.D.N.Y. 1990) .............................................................................. 21

  21 F.3d 24 (2d Cir. 1994) ...................................................................................... 5

Plaintiff Kaloma Cardwell ("Plaintiff" or "Cardwell") respectfully submits this memorandum of law in opposition to the motion filed by Davis Polk & Wardwell LLP ("Davis Polk" or the "Firm") and named defendants Thomas Reid, John Bick, William Chudd, Sophia Hudson, Harold Birnbaum, Daniel Brass, Brian Wolfe, and John H. Butler (the "Named Defendants," and, together with Davis Polk, "Defendants") ("Defendants' Motion") (ECF 103), to redact Plaintiff's Second Amended Complaint (ECF 99) ("SAC") and certain exhibits thereto (ECF 99-5, 99-7, 99-9, and 99-11) ("Exhibits") and to file such documents under seal.

## PRELIMINARY STATEMENT

Defendants' Motion reflects a consistent pattern in this case: Defendants want to have it both ways. While infusing into the record and making public statements to the media that evidence the Firm's good deeds and strategically beneficial facts about the Firm and its partners, Defendants have simultaneously attempted to use their power and resources to muzzle the very facts and allegations that support Plaintiff's claims of racial discrimination and workplace retaliation—this time under the purported guide of privilege.

For example, while Davis Polk publicly and currently promotes on its website that it has represented a certain for-profit prison company implicated by Plaintiff's allegations,[1] Defendants take the position in the context of the instant dispute that the mere fact of such representation is protected by "attorney-client privilege" and thus must be redacted from Cardwell's public filings.

Their position is strategic but it is not rooted in the principles or caselaw that govern the attorney-client privilege: After Cardwell emailed Carey Dunne[2]—then a Davis Polk partner and the current general counsel of the Manhattan District Attorney's Office—about this client, where

---

[1] References to the for-profit prison client/company refer to company listed in ¶ 249 of the Complaint.
[2] As described in the Complaint, Plaintiff worked with Dunne on a pro bono matter in 2015 and followed up with him because he was the supervising attorney on the pro bono matter in which the potential conflict of interest related to the for-profit prison client was discovered.  ECF 99 ¶ 252.

he asked Davis Polk to drop the client given its role in harming Black Americans and immigrants and the Firm's then-ongoing and increasing efforts to serve immigrant pro bono clients, the Firm's M&A partners gutted the Firm's staffing and antiretaliation policies, and refused to staff Cardwell on billable matters for the next four months.

At the time, Cardwell did not know that Len Kreynin, an M&A partner in Cardwell's practice group, was the relationship partner for that client; but he later discovered that certain Davis Polk M&A partners collectively retaliated against Cardwell with knowledge of and in response to Cardwell's questions about Davis Polk's representation of such client and other protected complaints.

Shortly after, Thomas Reid—then managing partner and current chief legal officer of a Firm client—told Cardwell that Reid talked to Kreynin and the Firm leadership about his questions and complaint, and that Kreynin and Firm leadership agreed to not represent that for-profit prison client going forward.  But this about face came at a price to Cardwell: Kreynin and the Firm's M&A partners shifted their assessments of Cardwell, altered his performance reviews, and in the following performance review cycle decided as a group to terminate Cardwell's employment.

And yet, despite the fact that these and other allegations related to this client already appear in *numerous* documents and filings,[3] Defendants continue to proclaim to this Court, in motions that are both time and resource consuming for Plaintiff, that this "former client plays no role in the exercise of the Court's power in this matter...." Defendants' Motion, ECF 103 at 5.

Defendants ask this Court to reward them for taking the same approach regarding the Firm's pro bono relationships.  But their request suffers from the same fatal flaw: While Davis

---

[3] *See, e.g.*, Cardwell's August 2017 EEOC Charge (ECF 99-1 ¶¶ 17-18);  January 2018 NYSDHR Response to Davis Polk's NYSDHR Brief (ECF 99-3 at 7); November 2019 Complaint (ECF 1 ¶¶ 179-183, 204-06); March 2020 FAC (ECF 37 ¶¶ 57, n.3; 198-209; 228-31; 245; 251]); Plaintiff's Opposition to Defendants' Motion to Dismiss (ECF 51 at n.49); and November 2020 SAC (ECF 99).

Polk seeks to improve its public perception within the legal community by publicly promoting such representations, relationships, and the type of work performed these such clients, Defendants claim that Cardwell's references to those clients and the Firm's work warrant the highest levels of secrecy—despite the absence of a single client communication, any legal advice, or confidential information.

Plaintiff hopes that this Court sees what is becoming an obvious pattern during the discovery phase of this case: Defendants are labeling documents and information as protected by attorney-client privilege and seeking to have documents filed under seal in an attempt to sanitize the record. Defendants' should not be able to repeatedly create barriers to public disclosure and the public's ability to monitor and understand this case merely because they do not want integral yet unfavorable facts and allegations to form part of the public record.[4]

During the November 4, 2020 teleconference, this Court informed the parties of this very reality and emphasized the following:

> One thing that is of particular note is that, as my template order says, and as the law requires, a confidentiality designation of any sort in the protective order does not mean that the information that's provided subject to the confidentiality designation will be filed under seal. To the contrary, my form protective order in the version that's proposed by defendants here specifically notes that the designation of information as confidential, highly confidential, or attorney's eyes only does not mean that it will be filed under seal…. So I'm somewhat concerned that there may be some conflation between the confidentiality designation and the sealing of those records when presented to the Court or used in the Court procedures.

Nov. 4, 2020 Hr'g Tr at 18.

---

[4] In response to this Court's invitation that the parties attempt to resolve some of these issues privately, Plaintiff informed Defendants that he would be amenable to foregoing Exhibits 9 and 11 to the Complaint if Defendants were willing to drop their requested redactions to the body of the Complaint. Defendants rejected Plaintiff's proposal and maintained that the names of any Davis Polk's client must be redacted from the Complaint.

Thus, for the reasons noted herein, Plaintiff respectfully requests that Defendants' Motion be denied, consistent with the long-recognized presumption of access to judicial documents.

To avoid wasting judicial resources with similar motion practice, Plaintiff also seeks a ruling that clarifies for the parties whether Defendants can assert attorney-client privilege for and/or redact  (i) the fact of representation of clients, namely the for-profit prison company referenced in the Complaint and Exhibits, (ii) facts and information that are public knowledge, or (iii) communications/documents that did not involve any client.[5]

## **LEGAL STANDARD**

"In our judicial system, the public has a right to every man's evidence." *Trump v. Vance*, 140 S. Ct. 2412, 2420 (2020) (citation omitted). "This legacy of open justice is as old as America itself." *Delta Air Lines, Inc. v. Bombardier, Inc.*, 2020 WL 2614704, at *1 (S.D.N.Y. May 22, 2020) (Woods, J.) (internal quotations omitted). As such, "[t]here is a long-established general presumption in favor of public access to judicial documents." *Id.*

To determine whether the presumption attaches to a particular record, the Second Circuit uses a three-step inquiry. *See generally Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006). *First*, a court must determine whether the documents at issue are judicial documents. *Id.* "The Second Circuit has defined 'judicial documents' as [those] filed with a court that are 'relevant to the performance of the judicial function and useful in the judicial process[.]'" *Delta*, 2020 WL 2614704 at *1 (quoting *Lugosch*, 435 F.3d at 119). *Second*, once a

---

[5] Contrary to Defendants' assertion, Plaintiff understands this Court's prior ruling on Defendants' prior motion to redact and seal to relate to exhibits where the presumption of access was low and documents that were largely categorically different than those contemplated now, as some exhibits at issue in prior motion included a document that was sent to the pro bono client and a document that explicitly mentioned or referenced Firm clients and such clients' instructions to Davis Polk's attorneys. Consistent with this reality, Plaintiff's counsel explicitly sought clarification and asked this Court at the end of the November 4, 2020 teleconference if "the Court [was] holding that all of the information that they have argued is privilege -- is indeed privileged at this point?" The Court responded: "No." Nov. 4, 2020 Hr'g Tr at 45.

document is deemed "judicial," the court must determine the weight of the presumption of access. *See generally Lugosch*, 435 F.3d at 119. "The presumption of access is 'based on the need for federal courts ... to have a measure of accountability and for the public to have confidence in the administration of justice.'" *Delta*, 2020 WL 2614704, at *1 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). *Third*, after determining the weight of the presumption, the court must "balance competing considerations against it." *Lugosch*, 435 F.3d at 120.

"Applications to seal documents must therefore be 'carefully and skeptically review[ed] ... to ensure that there really is an extraordinary circumstance or compelling need' to seal the documents from public inspection." *Delta*, 2020 WL 2614704 at *1 (quoting *Video Software Dealers Ass'n v. Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994)); *see also* Judge Gregory H. Woods, Civil Practice Rules at 6 (noting same). "Documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120; *see also Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016) (requiring specific, rigorous findings before sealing a document or otherwise denying public access).

"The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action[.]" *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997). "To meet its heavy burden, the moving party 'must offer specific facts demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Delta*, 2020 WL 2614704 at *2.

"Any such application must address and overcome the presumption of public filing that finds its twin sources in the common law right of public access to judicial documents and the qualified First Amendment right to attend judicial proceedings. The two are entirely

complementary." *In re Omnicom*, 2006 WL 3016311, at *1. Notably, the Second Circuit has "never expressly held—that protection of the attorney-client privilege is a 'higher value' under the First Amendment that may rebut the presumption of access." *Bernstein*, 814 F.3d at 145.[6]

## ARGUMENT

### I. Plaintiff's Complaint and Exhibits Are "Judicial Documents" Under the First Amendment Right of Access and Common Law Right of Access

The parties agree that the Complaint and Exhibits are judicial documents under the First Amendment right of access and common law right of access and thus are entitled to a presumption of access. *Id.* at 140 ("A complaint, which initiates judicial proceedings, is the cornerstone of every case, the very architecture of the lawsuit, and access to the complaint is almost always necessary if the public is to understand a court's decision.") (citation omitted); Defendants' Motion, ECF 103 at 3 ("The Second Amended Complaint and exhibits are judicial documents entitled to a presumption of access."). The Complaint and Exhibits invoke this Court's jurisdiction and the parties' substantive legal rights and duties, including the parties' obligation to preserve evidence. *See Bernstein*, 814 F.3d at 140 (holding same). Notably, "[c]omplaints have historically been publicly accessible by default, even when they contain arguably sensitive information." *Bernstein*, 814 F.3d at 141.

---

[6] Defendants cite *E.E.O.C. v. Kelley Drye & Warren LLP*, 2012 WL 691545, at *2 (S.D.N.Y. Mar. 2, 2012) for the proposition that "[t]he preservation of attorney-client confidentiality is a well-recognized exception to the presumption of access" (ECF 103 at 5) and "redactions to protect the name of a former client and other client-identifying information implicating attorney-client privilege . . . are entirely consistent with Second Circuit Precedent" (*id.*). *Kelley Drye* is a district court case that preceded the Second Circuit's ruling in *Bernstein* by four years and is inapposite. First, this case did not uphold redactions for client names that were publicly disclosed and public knowledge. The court also noted that "the parties entered a stipulation allowing documents to be filed under seal in connection with [a] motion for partial summary judgment"; "not all of the documents filed under seal in the instant action are . . . deemed judicial documents"; many of the documents under seal were not "judicial documents to which the First Amendment presumption of access attaches"; "the judicial documents are only those upon which the Court relied in deciding the . . . motion for partial summary judgment"; "the motion for partial summary judgment addressed [defendant's] affirmative defense, which sought a setoff of any damages." None of these material facts and factors are present in this case and, unlike *Kelley Drye*, the client names at issue in this case were publicly disclosed by Davis Polk and are public knowledge.

## II.    THE WEIGHT OF THE PRESUMPTION OF ACCESS IS STRONG

Forced to concede that the SAC and exhibits are judicial documents, Defendants instead argue that "the specific material defendants seek to redact plays little or no role in the exercise of Article III power." ECF 103 at 3.  Defendants' position makes little sense.

The very documents and information that Defendants seek to redact and keep under seal were added to the Complaint and Exhibits in connection with this Court's ruling on Defendants' motion to dismiss and leave that the Court granted to re-plead certain claims.[7] These documents and allegations impact, among other things, whether Sophia Hudson, William Chudd, and John Butler remain as named defendants in this case.

There can be no denying that the information that Defendants seek to redact and/or keep under seal, directly relate to Cardwell's allegations and claims, including the following:

- "On December 5, 2016, Mr. Cardwell asked then-Davis Polk partner, Carey Dunne, the current general counsel of the Manhattan District Attorney's office, if Davis Polk would consider ending its relationship with [name of for-profit prison company]." ECF 99 ¶ 251;

- "Mr. Cardwell's December 5 email triggered a Firm policy that expressly 'prohibit[ed] any form of retaliation against any individual who raises any question concerning legal compliance or professional ethics in good faith[]'" *Id*. ¶ 253;

- "After Mr. Cardwell's inquiry with Mr. Dunne about a racially harmful Davis Polk client and related discrimination, Mr. Bick, Mr. Birnbaum, Mr. Wolfe, and Davis Polk did not staff Mr. Cardwell on any billable assignments for the next four months (i.e., from December 2016 through April 2017)." *Id*. ¶ 257;

- "As a result of this December 5, 2016 complaint, as well as the discrimination complaint that Mr. Cardwell made on September 8, 2016, Mr. Bick, Mr. Wolfe, and Mr. Birnbaum did not staff Mr. Cardwell on any matters from December 2016 through April 2017." *Id*. ¶ 259;

- "Mr. Bick, Mr. Wolfe, and Mr. Birnbaum's decision to not staff Mr. Cardwell from December 2016 through April 2017 was a violation of the antiretaliation

---

[7] Relatedly, Defendants' counsel has indicated to Plaintiff that they might seek to dismiss claims that they did not previously move to dismiss, a reality that surely impacts the parties' substantive legal rights and duties.

policy that protected Mr. Cardwell's questions about the Firm's representation and conflicts involving [name of for-profit prison company], as they were questions concerning legal compliance and professional ethics. *Id*. ¶ 260;

- "In a March 3, 2017 email to Sharon Katz, Davis Polk's Special Counsel for Pro Bono, Mr. Cardwell again raised the issue of the Firm's relationship with a private for-profit prison and immigrant detention company whose policies and practices disproportionately discriminated against and dehumanized Blacks and other marginalized groups." *Id*. ¶ 286;

- "Unknown to Plaintiff at the time, Plaintiff's December 5, 2016 email directly implicated Davis Polk's M&A partners, including revenue the Firm's M&A partners generated for themselves and the Firm. In March 2017, Thomas Reid informed Plaintiff that M&A partner Len Kreynin was the relationship partner for the for-profit prison client that Plaintiff asked the Firm to end its relationship with." ECF 85-9 ¶ 7.

- "Prior to Mr. Cardwell's March 9, 2017 meeting with Mr. Reid, however, Mr. Reid or Mr. Bick accessed and revised (or authorized the access and revision of) Mr. Cardwell performance reviews on March 6, 2017, just one business day after Mr. Cardwell made a complaint on March 3, 2017 that triggered a Davis Polk-specific anti-retaliation policy." ECF 99 ¶ 288;

- "Mr. Reid described Mr. Cardwell's staffing issues as "not [Mr. Cardwell's fault]" because Mr. Reid had knowledge that Mr. Reid, Mr. Wolfe, and Mr. Birnbaum, along with the other Davis Polk M&A partners, were already working together to not staff Mr. Cardwell on any assignments because of Mr. Cardwell's September 2016 and December 5, 2016 complaints, both of which triggered Davis Polk's anti-retaliation policies." *Id*. ¶ 296;

- "Mr. Reid's message that if Mr. Cardwell did not 'drop' his inquiries into 'whatever mistakes the Firm made in the past and move forward, [he] would be 'out of the game' and 'off the field'' was clear in its intent to halt Mr. Cardwell's complaints and reasonable search for answers. Mr. Reid's message was per se retaliation, as it was delivered to chill and halt Mr. Cardwell's protected activity." *Id*. ¶ 326;

- "At the direction of and in coordination with Mr. Bick or Mr. Reid (or someone acting at their direction or approval), Ms. Hudson retroactively created her June 2016 and September 2016 performance reviews to help Davis Polk respond to Mr. Cardwell's August 2017 EEOC Filing and terminate Mr. Cardwell's employment." *Id*. ¶ 450;

- "Notably, Davis Polk allowed the same M&A partners who Mr. Cardwell (i) accused of engaging in racial discrimination and retaliation or (ii) directly implicated in Mr. Cardwell's August 2017 EEOC Filing and NYSDHR

complaints to have exclusive or enormous influence over the Firm's decision to terminate Mr. Cardwell's employment." *Id.* ¶ 469;

- "If Mr. Cardwell did not file his complaint with the EEOC and NYSDHR, Davis Polk, Mr. Reid, Mr. Bick Mr. Birnbaum, Mr. Wolfe, Mr. Chudd, Mr. Butler, Mr. Brass, and Ms. Hudson would not have terminated Mr. Cardwell's employment." *Id.* ¶ 468;

Undoubtedly, these allegations are related to the EEOC Filing, which asserted:

- "On December 5, 2016, I emailed Carey Dunne, a longtime DPW partner, about the Firm's representation of a DPW client in an industry especially harmful to racial minorities and suggested that the Firm distance and ultimately end its relationship with that client." EEOC Complaint, ECF 99-1 ¶ 17;

- "After raising my concerns to Mr. Dunne, my assignments and corresponding hours dropped precipitously…. In stark contrast, from January through March 2017, I billed a total of only 5.9 hours. From at least the week of January 23rd forward, my weekly capacity form indicated that I had 100% availability to take on new assignments, yet the Firm did not staff me on any matters." *Id.*; and

- "In a March 3, 2017 email to Sharon Katz, Special Counsel for Pro Bono, I again raised the issue of the Firm's relationship with a client whose business negatively and disproportionately exploited and harmed racial minorities. At Ms. Katz's request, I later met with her and Mr. Reid on March 9th, in which Mr. Reid gave me a verbal commitment that the Firm would not represent the aforementioned client." *Id.* ¶ 20.

And, finally, related allegations from the Response to Davis Polk's NYSDHR Brief:

- "Davis Polk's argument is additionally weakened by the fact that Mr. Cardwell's purported 'performance issues' did not impact his assignment to matters generating over 100 billable hours a month before he complained to Mr. Carey Dunne on December 5, 2016. It was only after he made protected complaints that the Firm subsequently gutted his workload to 5.9 hours total from January through March 2017, marking Mr. Cardwell's fourth consecutive month without being staffed on any billable assignments." Plaintiff's EEOC Rebuttal, ECF 99-3 at 7.

The information and documents that Defendants seek to shield from the public record will undoubtedly be considered by the Court in assessing the parties' substantive legal rights and duties. Contrary to Defendants' assertions, the information and documents that Defendants seek to redact are highly relevant to the exercise of Article III judicial power and the public's ability to monitor the work of the federal courts. Thus, the presumption of access that attaches to the Complaint and

Exhibits are at its "zenith," entitling them to a strong presumption of access that should only be overcome if Defendants presents extraordinary circumstances and the most compelling reasons. *See Bernstein,* 814 F.3d at 142. "[O]nly the 'most compelling reasons can justify' sealing." *Id*. (quoting *Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982)).

No such extraordinary circumstance or compelling reason exists in this case. If this Court permits the name of the for-profit prison company to be redacted and kept under seal, among Defendants' other requested redactions, the public's ability to monitor or understand the issues in this case will be materially and permanently damaged and undermined.[8]

## III.   There Is No Extraordinary Circumstance That Overcomes the Presumption of Access That Attaches to the Complaint

### A.   Context for the Purportedly Privileged Documents and Information

Defendants argue in conclusory fashion that any mention or allegation related to a Firm client, including the for-profit prison company, "implicat[es] attorney-client privilege." ECF 103 at 5. As addressed *infra*, this implicit (and sometimes explicit) argument that allegations and documents related to this company triggers or implicates attorney-client privilege protections is detached from the black letter law that governs the privilege.

It is troubling that Defendants assert that such privilege applies to wholesale communications that occurred during and after December 2016 when (i) Cardwell's work on the matter involving the pro bono client[9] concluded in September of 2015, more than a year prior to the emails and communications Defendants' seek to redact in the Complaint, (ii) Davis Polk argued

---

[8] As previously noted for this Court, prior to the filing of the Complaint, LAW360.COM, covered the very client-related allegations and information that Defendants now seek to keep from the public.  Specifically, it reported that Plaintiff "alleged that in one instance, he wasn't given any billable assignments for four months after raising concerns about the firm's connections with a private for-profit prison and its disproportionate effects on minorities." Emma Cueto, *Ex-Davis Polk Associate Says Bias Claims Are Timely*, LAW360.COM, June 5, 2020, https://www.law360.com/articles/1280295/ex-davis-polk-associate-says-bias-claims-are-timely.

[9] References to the "pro bono client" refers to the client listed in the first paragraph on page 4 of Exhibit 11. As a reminder, the name of this client does not appear in the Complaint.

to the NYSDHR in 2017 that Cardwell's inquiries about the for-profit prison came at a time when Davis Polk "was then not working for the entity and did not intend to do so in the future" (Davis Polk's NYSDHR Brief, ECF 99-2 at 13), and (iii) at no point did Cardwell ever work on a matter where the for-profit prison company was the Firm's client.

As the redacted communications makes clear, at all relevant times, Cardwell's complaints and allegations related to Davis Polk's business practices—i.e., how representing a company with a reputation for harming and discriminating against Blacks and immigrants implicated the Firm's pro bono, professional ethics, and legal compliance policies, practices, and obligations; and how the Firm would address conflicts that arose from Davis Polk simultaneously representing (i) for-profit prison companies that target and incarcerate Blacks and immigrants and (ii) pro bono clients that are incarcerated because they were targeted by racist and xenophobic policies and practices.

The Complaint and associated Exhibits, which Defendants attempt to shield from the public under the guise of attorney-client privilege, have nothing to do with confidential communications that came from a Firm client or for which a Firm client sought confidential treatment.

### B.  The Complaint and Exhibits Do Not Contain Traditionally Private Information

"In examining privacy interests, 'courts should first consider the degree to which the subject matter is traditionally considered private rather than public.'" *Id.* (citing *Amodeo*, 71 F.3d at 1050-51). It is beyond dispute that the Complaint and Exhibits do not disclose traditionally private information or subjects, such as "medical or psychological information," information that "pertain[s] to a minor child," "bank account numbers, social security numbers [or] information the disclosure of which could raise a personal safety issue," or information where "innocent third parties [and their] intimate relations may … be disclosed." *Nycomed U.S., Inc. v. Glenmark Generics, Inc.*, No. 08–CV–5023 (CBA), 2010 WL 889799, at *2 (E.D.N.Y. Mar. 8, 2010) (collecting cases that itemize subject matters traditionally deemed private).

11

### C.  The Complaint Does Not Contain Confidential Information

####      1.      *Davis Polk's Representation of the For-Profit Prison and Other Certain Clients Are Public Knowledge, Not Confidential*

Davis Polk's representation of this client is not private information or confidential; indeed, that fact is public knowledge, currently listed on Davis Polk's website (i.e., Len Kreynin's public attorney profile),[10] and is not protected by any applicable law, rules, or order.  Indeed, this Court's so-ordered Protective Order does not allow publicly disclosed engagements to be deemed confidential, noting that if "the Party's role in that engagement was disclosed publicly,  . . . the existence of the engagement would not be confidential." Protective Order, ECF 89 at 3.

The Protective Order is consistent with Second Circuit cases, which would preclude Defendants from selectively claiming the mere fact of representation is confidential in light of their own disclosure of such relationship. *See, e.g.*, *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) ("[H]owever confidential [such information] may have been beforehand, subsequent to publication it was confidential no longer" and thus the court "simply do[es] not have the power … to make what has thus become public private again."); *In re Document Technologies Litigation*, 282 F. Supp. 3d 743, 750 (S.D.N.Y 2017) (finding same and noting that party seeking redactions "ha[d] not previously treated this sort of information as if it were confidential" and "[t]hus with regard to the identities of [their] clients, generally, the proverbial cat is out of the bag and [their] request for redaction is thus moot") (internal citation omitted); *King Pharm., Inc. v. Eon Labs, Inc.*, 2010 WL 3924689, at *10 (E.D.N.Y. Sept. 18, 2010) (denying redaction request for "already public" information); *Hansen v. Rhode Island's Only 24 Hour Truck & Auto Plaza*,

---

[10] *See* "Notable Representations" at https://www.davispolk.com/professionals/leonard-kreynin/ (last visited Nov. 24, 2020).

*Inc.*, 863 F. Supp. 2d 122, 123 (D. Mass. 2012) ("[I]t is inappropriate to redact general facts and allegations or the names of individuals involved in the dispute[.]").[11]

Here, there is no legitimate basis to redact the information that appears in ¶¶ 249-52, 254, 258, and 260, including the name of the for-profit prison company that appears therein. Plaintiff requests that the Court order this information be unredacted and publicly filed on the docket.[12]

Likewise, Davis Polk's representation of the client mentioned in ¶ 568 n. 94 of the Complaint is public knowledge, currently listed on Davis Polk's website[13] and widely publicized on the internet, and is not protected by any applicable law, rules, or order.[14] The allegation that Thomas Reid plays a role in funneling business back (or allowing business to flow) to Davis Polk is based upon public facts and information and belief, not confidential information.[15] As such, there is no legitimate basis to redact that information and Plaintiff requests that the Court order that this information be unredacted and publicly filed on the docket.

**D.  The Complaint Does Not Contain Information that Is Protected by Attorney-Client Privilege or That Violates Professional Rules of Conduct**

---

[11] Defendants' argument that the name of the for-profit prison client plays no role in such allegations and the exercise of this Court's power contradicts Defendants' prior motion to redact (ECF 73). In that motion, Defendants sought to redact former Davis Polk partner Carey Dunne's name and other names from the parties' November 2020 Joint Letter precisely because of Cardwell's allegations related to the for-profit prison and its name. Defendants explicitly argued that this Court should consider "the nature and degree of injury, which in part entails consideration of the sensitivity of the information and the subject" and that "redaction is appropriate in cases where [d]isclosure carries the risk of significant reputational and professional repercussions for those referenced in the documents." ECF 73 at 3 (internal quotation marks omitted). Experience, both parties' filings, and logic leave no doubt that it is the for-profit prison company's *name*, as well as its publicly documented reputation, that led Defendants to argue that they should have been permitted redact information that Defendants believed was "sensitiv[e]" and "carrie[d] the risk of reputational and professional repercussions for those referenced in the documents." *Id.*

[12] As stated *supra*, the proposed redactions are about subjects that have already been made public in media coverage.

[13] *See* "International Human Rights" at https://www.davispolk.com/pro-bono-practices (last visited Nov. 24, 2020).

[14] Plaintiff redacted this information at Defendants' request; however, the name of this client appears in the FAC, which was filed on March 2, 2020. Any argument that the SAC cannot name of this client, when Defendants have gone the last eight months without seeking to redact this information is further proof that Defendants seek redactions for reasons that have little to do with their purported confidentiality or privilege (or at minimum, have waived such protections).

[15] *See* https://www.davispolk.com/search?keyword=comcast (last visited Nov. 24, 2020).

1.      *Attorney-Client Privilege Elements Are Not Met or If They Are Present, Defendants Waived the Privilege*

"To invoke the attorney-client privilege, a party must demonstrate that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). "[S]ince the privilege has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose. Accordingly, it protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976); *see also In re Grand Jury Investigation*, 399 F.3d 527, 531 (2d Cir. 2005) (noting that the privilege "applies only where necessary to achieve its purpose") (internal quotation marks omitted). "It is well settled that [t]he burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it." *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) (internal quotation marks omitted).

Plaintiff's allegations and descriptions set forth in ¶¶ 249-52, 254, 258, and 260 of the Complaint are not protected by the attorney-client privilege. At the threshold, Plaintiff has never worked on a matter at Davis Polk where the for-profit prison company was a client of the Firm's, and Davis Polk submitted statements to the NYSDHR that claimed the for-profit prison company was not a Firm client at the time that Cardwell emailed Carey Dunne on December 5, 2016.

Defendants cannot plausibly demonstrate that these allegations, or Cardwell's December 5, 2016 email to Carey Dunne, are communications between a client and counsel, that were intended to be kept confidential by a client, and were made for the purpose of obtaining or providing legal advice. Regarding the pro bono client that Cardwell did work for, their name is never mentioned in the Complaint (*see* ¶ 254)—despite the fact that Davis Polk's representation

14

of such client and the type of work and research done for this pro bono client are public knowledge and currently disclosed on both Davis Polk's and the pro bono client's websites (See Exhibit C).[16]

Lastly, the descriptions that appear in ¶¶ 254 and 286 of the Complaint—including of Cardwell's December 5, 2016 email to Carey Dunne and March 3, 2017 email to Sharon Katz—appeared in the Initial Complaint (ECF 1 at ¶¶ 179, 204; FAC (ECF 37 at ¶¶ 200, 229), and have been a part of the public record *for over a year* without Defendants asserting such privilege or protection. Thus, Defendants have waived any arguments of attorney-client or work product privilege with respect to the content of these communications.

### 2. *The Fact of Representation Is Not Protected*

Beyond the fact that this information is already public knowledge, the Complaint's allegations are not shielded by attorney-client privilege and do not violate applicable professional rules of conduct. Courts in this district routinely hold that "client confidential information does not generally include 'the fact of representation.'" *Fischman v. Mitsubishi Chemical Holdings America, Inc.*, 2019 WL 3034866 (S.D.N.Y. July 11, 2019) (quoting *Bernstein*, 814 F.3d at 145). "The identification of … clients … neither discloses nor implies a confidential communication." *In re Shargel*, 742 F.2d 61, 62 (2d Cir. 1984).

"We consistently have held that, absent special circumstances, client identity and fee information are not privileged." *In re Grand Jury Subpoena Served Upon Doe*, 781 F.2d at 247. No special circumstances exist in this case, and Defendants have not presented this Court with any "specific, on the record findings" indicating that any special circumstances are sufficiently present to warrant sealing any client's identity that is at issue in Defendants' Motion.

---

[16] However, as explained *supra*, even if the Complaint did specify the name of the pro bono client, such information would not be protected by the attorney-client privilege.

Moreover, the allegations in the Complaint, as well as the documents described in ¶¶ 249-52, 254, 258, and 260, reflect narratives of events and interactions. But "narratives of events, rather than communications, … are not subject to attorney-client privilege." *Id.*   Because these allegations merely disclose the fact of representation and narratives of events and interactions, the Court should deny Defendants' requested redact on these grounds alone, as such disclosures are not protected by the attorney-client privilege.

3.      ***The Attorney-Client Privilege Doctrine and Defendants' Subjective Beliefs About "Client Confidences" Are Not Co-Extensive***

With no cases to support its cause, Defendants' Motion attempts to elevate "client confidences" and "client-identifying information" to a level that inherently triggers attorney-client privilege sufficient to overcome the presumption of access. But the Second Circuit has expressly rejected these types of arguments. Specifically, it has held that "[t]he attorney-client privilege and the duty to preserve client confidences and secrets are 'not co-extensive.'" *Bernstein,* 814 F.3d  at 145 (rejecting defendants' argument that "the protection of 'confidential client information' is a 'higher value' superseding the First Amendment right of access and should have 'equal status' to the attorney-client privilege"). So, too, should this outcome result here.

Moreover, similar to the defendants in *Bernstein*, without any supporting caselaw, Defendants nakedly suggest that Plaintiff is at risk of running afoul of the New York Rule of Professional Conduct 1.6.[17] But nothing in the Complaint or the Exhibits related to the for-profit prison (i.e., Exhibits 9 and 11) contains "confidential information" as defined by New York Rule of Professional Conduct 1.6. Consistent with this reality, the declaration that Defendants' counsel

---

[17] New York Rule of Professional Conduct 1.6 states that "[c]onfidential information" is "information gained during or relating to the representation of a client, whatever its source, that is (a) protected by the attorney-client privilege, (b) likely to be embarrassing or detrimental to the client if disclosed, or (c) information that the client has requested be kept confidential." "Confidential information" does not ordinarily include (i) a lawyer's legal knowledge or legal research or (ii) information that is generally known in the local community or in the trade, field profession to which the information relates."

submitted does not claim that the information described in the Complaint or Exhibits 9 and 11 involves information that the pro bono "client ha[d] requested be kept confidential"—nor could it, as Cardwell's complaints and allegations (and the information Defendants seek to redact) are about Cardwell's employment and rights being impacted by his questions about *Davis Polk's business practice* of simultaneously representing (i) for-profit prison companies that target and incarcerate Blacks and immigrants and (ii) pro bono clients who are incarcerated in connection with racist and xenophobic policies and practices that targeted them.

Conflating the standard, Defendants' request attempts to address how Cardwell's allegations might cause *Defendants* embarrassment, but similar to the Second Circuit's analysis of Rule 1.6 in *Bernstein*, "the complaint does not include information . . . 'likely to be embarrassing or detrimental *to the client if disclosed*.'"[18] *Id*. (emphasis added). Relatedly, the court in *Bernstein* was keenly aware of the same factors that animate Defendants' requests here, emphasizing that "information that may be seriously embarrassing to *counsel*" is fundamentally different than information that would be embarrassing "*to the client*." *Id*. (emphases added.) Further, the court recognized that "for the purpose of applying the ethical rule, the Court does not presume that the attorney's request for confidentiality signifies the *client's* **desire**." *Id.* (emphasis added).

It is for these reasons that Cardwell seeks a ruling consistent with Second Circuit precedent and that rejects Defendants' attempts to treat the attorney-client privilege doctrine and so-called "client confidences" as if the two are co-extensive (they are not).

**IV.     Defendants Have Not Demonstrated Closure Is Essential to Preserve a Higher Value That Overcomes the Presumption of Access That Attaches to Exhibits 5, 7, 9, and 11**

---

[18] Notably, *Bernstein's* guidance also applies to the Exhibits that Defendants challenge.

## A. Exhibits 5 and 7 Should Not Be Redacted or Kept Under Seal[19]

"[T]he preservation of ... bargained-for confidentiality does not overcome the presumption of access to judicial documents." *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 471 (S.D.N.Y. 2017). "That [e]ach redaction discloses private information . . .  the details of which it is obligated to keep confidential, . . .  does not, without more, justify redaction." *Accent Delight International Ltd. v. Sotheby's*, 394 F. Supp. 3d 399, 416 (2019).

Defendants have not provided sufficient support to demonstrate that unsealing Exhibits 5 and 7 would result in competitive harm to any parties, nor have they explained how diversity and inclusion concepts and statistics (which are largely based on public research or are currently outdated, in any event) would result in competitive harm more than four years after their creation. Defendants' purported concerns over proprietary information are stale and cannot overcome the public's strong interest in disclosure, particularly where Exhibits 5 and 7 (i) reveal that Defendants were on notice of and understood that certain behaviors and biases constituted discrimination; and (ii) relate to Cardwell's claims alleging discrimination against Davis Polk, Thomas Reid, John Bick, Harold Birnbaum, Brian Wolfe, and Daniel Brass. SAC, ¶¶ 591-640; *see also Alcon Vision, LLC v. Lens.com*, 2020 WL 3791865, at *8 (E.D.N.Y. 2020) (holding same); *Saint-Jean v. Emigrant Mortgage Company*, 2016 WL 11430775, at *7 (E.D.N.Y. 2016) (denying motion to

---

[19] Defendants produced Exhibits 5 and 7 without any redactions. Prior to making their document production, they required Plaintiff to consent to their documents being subject to the model protective order and expressly claimed that they did not intend to change any designations with these documents even if this Court's ruling on the then-disputed protective order could later give them an option to do so. Davis Polk's challenge of the filing of Exhibits 5 and 7 suggests that Defendants are claiming these documents are not public use versions. Defendants' position is troubling, as this argument means that Defendants sent Plaintiff unredacted versions of Exhibits 5 and 7 along with documents that were partly redacted. This means Defendants made a production with an unstated belief that the documents they produced (including Exhibits 5 and 7) inherently required another layer of redactions before Plaintiff could use them in public filings. Thus, Defendants position prior to submitting Defendants' Motion was effectively that they either had no obligation to provide Plaintiff with public use versions of Exhibit 5 and 7 or they never provided Plaintiff with public use versions of Exhibit 5 and 7. In either scenario, Defendants' production did not comply with Section 3 of the model protective order, which is what they asked Plaintiff to consent to. Thus, as a factual matter, it cannot be said that Defendants "designated" Exhibit 5 and 7 as "Confidential" in accordance with this Court's model protective order or the so-ordered protective order.

seal, in part, because "supposedly competitive information dates from [years] earlier, and concerns . . . practices most of which have long since been discontinued"). For these reasons, Plaintiff requests that the Court deny Defendants' request to keep Exhibits 5 and 7 under seal.

**B. Exhibit 9 Should Not Be Redacted or Kept Under Seal**[20]

There can be no genuine dispute that Plaintiff owns and produced this document, which directly relates to (i) Plaintiff's complaints about ***Davis Polk's business practice*** of simultaneously representing a for-profit prison that targeted and incarcerated Blacks and immigrants alongside pro bono clients incarcerated as a result of racist and xenophobic policies and practices that targeted them; (ii) whether Plaintiff's questions about that client triggered a Davis Polk anti-retaliation policy that Plaintiff alleged Defendants violated, and (iii) allegations that Defendants responded to his questions by subsequently manipulating his reviews, submitting false statements to the NYSDHR, and terminating his employment. *See* ECF 99 ¶¶ 249-60, 288-91.

Contrary to Defendants' assertions, the question of sealing the Complaint and Exhibits are fundamentally different than Defendants' prior motion to redact and seal. Because the documents covered by their prior request were submitted in connection with ***a discovery dispute***, the Court stated that "the weight of the presumption of access to the redacted information ***in this context*** is **relatively low**," and that the Court "ha[s] to consider the factors that counsel against disclosure of the relevant document and ***balance those factors against the weight that's properly accorded the***

---

[20] Plaintiff seeks clarification as to whether the Court has ruled that this entire document is indeed protected by attorney-client privilege.  At the end of the  November 4, 2020 teleconference, counsel for Plaintiff asked if "the Court [was] holding that all of the information that they have argued is privilege -- is indeed privileged at this point?" This Court answered: "No." Nov. 4, 2020 Hr'g Tr at 45.

Specifically, Plaintiff seeks to understand how a communication that was not sent to a client, that does not include legal advice, that only includes public facts, that does not mention or refer to any client, that was not specifically requested by a client, and that was prepared by a single attorney without the assistance of any other firm attorneys, is protected by attorney-client privilege. Your Honor's clarification will significantly impact the type and breadth of documents that Defendants and Plaintiff might label as protected by the attorney-client privilege in this action.

***production of access***." (emphases added). Nov. 4, 2020 Hr'g Tr at 45. Here, Exhibit 9 is attached

to the Complaint.  Because the First Amendment right of access attaches to the Complaint and

Exhibits (a point Defendants do not challenge) and the presumption of access is arguably at its

highest (e.g., following a partially granted motion to dismiss), it should not remain under seal.[21]

Although the Second Circuit has "never expressly held—that protection of the attorney-

client privilege is a 'higher value' under the First Amendment that may rebut the presumption of

access" (*Bernstein*, 814 F.3d at 145), Defendants still maintain that Exhibit 9 must be kept under

seal due to privilege but do not offer a legally supported basis for this extraordinary measure.

Plaintiff, quite frankly, does not understand how the information in Exhibit 9 could be

protected. At no point during the Firm's representation of the pro bono client did that client request

or instruct Davis Polk to produce any research or analysis related to prisons, let alone the prison-

related information that appears in Exhibit 9. It was Cardwell, not the client or another Davis Polk

attorney, who came up with the idea of identifying facts and research related to for-profit prisons.

All of the "analysis and research" in Exhibit 9 relates to Cardwell's personal opinions (not legal

advice), public facts, general research, and information generally known in the legal community,[22]

which is "ordinarily" not considered "[c]onfidential" under the New York Rule of Professional

Conduct 1.6. The research reflected in Exhibit 9 is entirely consistent with the type of research that

both Davis Polk and the pro bono client have publicly disclosed (and are currently disclosing on

their websites) as pro bono research that is routinely created through their strategic partnership.

---

[21] As noted, Defendants have suggested that they might move to dismiss claims that they chose not to challenge in their first motion to dismiss, a position that adds weight to the importance of these exhibits.

[22] This document references two landmark cases: "*Dred Scott v. Sandford*" and "*Brown v. Board of Education*"— cases where the information referenced was generally known to Plaintiff and most people in the communities and professions who study American civil and human rights.

Likewise, Exhibit 9 does not contain legal advice or client confidences; no information related to any client appears in it—not even "client-identifying" information. The summary in Exhibit 9 was never sent to any client and it was created by Cardwell and sent to his personal email address. That said, some of the *facts* in Exhibit 9 were subsequently included in a *draft* memo that Davis Polk sent to the client. But courts in the Second Circuit have repeatedly held that "neither the attorney-client nor the work product privilege protects underlying facts," *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC*, No. 01 Civ. 9291 (JSM), 2002 WL 1455346, at *4 (S.D.N.Y. July 3, 2002), and that "factual data … transmitted through an attorney does not mean that it takes on a confidential character," *United States v. Davis*, 132 F.R.D 12, 15 (S.D.N.Y. 1990) (holding that documents merely discussing facts and reporting on conclusions were not privileged).

Defendants claim that because certain facts in Exhibit 9 were later included in a draft communication to a client, that the entire exhibit triggers the attorney-client privilege. However, courts in this district have held the exact opposite, noting that unless the communication by the attorney to the client or vice versa contains **some legal advice** regarding those facts, any factual information gathered and reported to the client is **not protected by the attorney-client privilege**.[23] *Carte Blanche (Singapore) PTE, Ltd. v. Diners Club Int'l, Inc.*, 130 F.R.D. 28, 33 (S.D.N.Y. 1990) (holding "the privilege gives way when the attorney merely communicates information obtained from independent sources"); *see also Kenford Co. v. County of Erie,* 55 A.D.2d 466, 469 (4th Dep't 1977) ("It has long been settled that information received by the attorney from other persons and sources while acting on behalf of a client does not come within the attorney-client privilege.").

---

[23] Because of a Davis-Polk perceived conflict with the for-profit prison client, Davis Polk removed a section on for-profit prisons from a soon-to-be finalized memo and finalized the memo for the Davis Polk pro bono client without the for-profit prison section included. Either way, it is unclear what "legal advice" related to for-profit prisons Defendants are claiming were reported to the Client, because Plaintiff has been unable to identify in the draft memo such "legal advice" related to the for-profit prison section and the final memo did not include the for-profit prison section of the memo (let alone any information about prisons, or the specific information in Exhibit 9).

Finally, Defendants cannot plausibly assert that the information in Exhibit 9 is sensitive client information or could be harmful to the pro bono client, as Davis Polk decided, without the involvement or consent of the client, to remove research about for-profit prisons from the final version of the memo.[24] Ultimately, the client received a "final" memo omitting the very information present in Exhibit 9. As such, Exhibit 9 is not protected by the attorney client privilege and, even if it were, it is not the type of information that overcomes the presumption of access.

### C. Exhibit 11 Should Not Be Redacted or Kept Under Seal

Plaintiff also owns and produced this document, which directly relates to (i) Plaintiff's complaints about Davis Polk's business practice of simultaneously representing a for-profit prison company that targeted and incarcerated Blacks and immigrants and pro bono clients who were incarcerated in connection with racist and xenophobic policies and practices that targeted them; (ii) whether Plaintiff's complaints questions about the Firm's for-profit prison clients triggered a particular Davis Polk's anti-retaliation policy that Plaintiff alleged Defendants violated, and (iii) Cardwell's allegations that Defendants responded to his questions about the Firm's representation of this client by subsequently manipulating his reviews, submitting false statements to the NYSDHR, and terminating his employment. *See* ECF 99 at ¶¶ 249-60, 288-91.

None of the information in Exhibit 11 is protected by the attorney-client privilege. Again, virtually all of the information in Exhibit 11 appeared in the Initial Complaint (ECF 1 ¶¶ at 179, 204), and FAC (ECF 37 at ¶¶ 200, 229), and have been a part of the public record *for over a year*. The face of Exhibit 11 makes it clear that Cardwell did not send these communications to a Firm

---

[24] *See In re Document Techs. Litig.*, 282 F. Supp. 3d at 750 (denying redaction request even though it described work performed for client because the party seeking redaction did not explain how the information could be harmful and the work performed hardly seemed like sensitive client information). But even if certain information could cause harm, "this … information is relevant to understanding the instant dispute." *Id*.

client or while Mr. Cardwell was representing any clients referenced in the documents. Exhibit 11 does not contain legal advice or client confidences and was never sent to any Firm client.

Though Exhibit 11 mentions the name of the for-profit prison in the context of the fact of representation, no legal advice or client confidences related to the for-profit prison client appears in Exhibit 11. Similarly, and with respect to name of the pro bono client that appears in Exhibit 11, no legal advice or client confidences related to the pro bono client client appears in Exhibit 11.

Lastly, and because the communications in Exhibit 11 relate to questions and concerns that Cardwell had about the firm's business practices and ethical and legal compliance obligations, Defendants cannot plausibly assert that the information in Exhibit 11 is sensitive client information or could be harmful to the pro bono client referenced in the document.

Thus, there is no legitimate basis for why this information should be redacted and sealed, over a year later, from the public record. There is no compelling reason why the names of the client's that appear in this Exhibit must be kept out of the public record. For these reasons, Plaintiff requests that the Court deny Defendants' request to keep Exhibits 11 under seal.

## <u>CONCLUSION</u>

Litigants should not be allowed structure the public record based on belated and selective concerns for reputational risks, including through (as is the case here) loose invocation of the attorney-client privilege doctrine. Because Defendants have failed to carry their burden of demonstrating that the Complaint and Exhibits should remain redacted and under seal, Plaintiff respectfully seeks an order (i) denying Defendants' Motion; and (ii) requiring Plaintiff to re-file these materials without redactions. *See Lugosch*, 435 F.3d at 126 (emphasizing that this district's "public access cases . . . emphasize the importance of [providing] immediate access where a right to access is found").

DATED:         November 24, 2020                    Respectfully submitted,

                                                    /s/ David Jeffries

                                                    David Jeffries

                                                    *Attorney for Plaintiff*


cc (via ECF):

Jeh C. Johnson
Bruce Birenboim
Susanna M. Buergel
Marissa C.M. Doran

*Attorneys for Defendants*