**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **KALOMA CARDWELL,** | |
| Plaintiff, | |
| **v.** | |
| **DAVIS POLK & WARDWELL LLP, Thomas Reid, John Bick, William Chudd, Sophia Hudson, Harold Birnbaum, Daniel Brass, Brian Wolfe, and John H. Butler,** | **1:19-cv-10256-GHW** |
| Defendants. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES

Dated: December 2, 2020

David Jeffries, Esq.
1345 Avenue of the Americas, 33rd Floor
New York, New York 10105
Tel: 212-601-2770
djeffries@jeffrieslaw.nyc

*Attorney for Plaintiff*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................................1

RELEVANT FACTUAL BACKGROUND...........................................................................3

ARGUMENT ......................................................................................................................5

I.     DEFENDANTS' DISCOVERY REQUESTS SEEK IRRELEVANT
INFORMATION, ARE OVERBROAD, UNDULY BURDENSOME, AND FAIL
TO SATISFY THE PROPORTIONALITY TEST UNDER RULE 26(B)(1) ...................5

     A.     Defendants Fail to Demonstrate Document Request Related Deficiencies
and Plaintiff's Objections to these Requests Have Not Been Waived....................8

          1.     None of Defendants' Positions Are Supported by Caselaw .....................12

               i.     Issue #1: Defendants Assert Plaintiff's Failed to Set Forth
Objections with Particularity and Thus Has Waived the
Right to Lodge Objections ............................................................12

               ii.     Issue #2: Defendants Assert That Plaintiff "Fail[ed] to
Produce Responsive Materials Absent 'Better
Understanding'"............................................................................13

               iii.     Issue #3: Defendants Assert That Plaintiff "Fail[ed] to
Produce Responsive Materials Absent 'Narrowing'"....................13

               iv.     Issue #4: Defendants Assert That Plaintiff "Fail[ed] to
Produce Promised Documents Despite Entry of a Protective
Order" ...........................................................................................14

               v.     Issue #5 Defendants Assert "Technical Deficiencies and
Incompleteness"............................................................................15

          2.     Courts Routinely Deny Requests for "All" Documents ...........................16

II.     DEFENDANTS ARE NOT ENTITLED TO A REPRODUCTION OF
PLAINTIFF'S DOCUMENTS WITH BELATEDLY SOUGHT METADATA .............17

     A.     This Untimely Request for Metadata, Made After Plaintiff Produced
Documents and After Plaintiff Requested Metadata from Defendants,
Should Be Denied ..................................................................................................17

     B.     Defendants Have Waived Their Ability to Seek Metadata After the Fact ............18

i

C.    Defendants Have Not Shown Such Reproduction Is Necessary and Relevant to this Action, and Such Reproduction Would Be Unduly Burdensome ..................................................................................................19

     1.    The Metadata Defendants Belatedly Seek Is Not Necessary and Relevant ........................................................................................19

     2.    "Sender" and "Recipient" and "Date" Information Already Appear on the Face of a Vast Majority of Documents ...........................................20

III.    THE TEMPORAL SCOPE OF THE DISCOVERY REQUESTS IS OVERBROAD, UNDULY BURDENSOME, AND FAILS TO SATISFY THE PROPORTIONALITY TEST UNDER FEDERAL RULE 26(B) ....................................22

IV.    DEFENDANTS' MANUFACTURED DISPUTE CONCERNING THE RETURN OF SO-CALLED FIRM MATERIALS IS PREMATURE AND NEEDLESSLY WASTES JUDICIAL RESOURCES ......................................................24

V.    AFFIRMATIVE ARGUMENTS THAT DEFENDANTS COULD HAVE MADE IN THEIR MOTION TO COMPEL, BUT CHOSE NOT TO, ARE DEEMED WAIVED ..................................................................................................25

CONCLUSION.............................................................................................................26

# **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Aguilar v. Immigration & Customs Enforcement Div. of U.S. Dep't of Homeland Sec.*,
255 F.R.D. 350 (S.D.N.Y. 2008) ............................................................. 22

*Am. Express Travel Related Servs. Co. v. Allegis Grp., Inc.*,
No. 00CIV.5781LTSFM, 2001 WL 1661917 (S.D.N.Y. Dec. 28, 2001)............................. 23

*Armstrong Pump, Inc. v. Hartman*,
No. 10-CV-446S, 2016 WL 7208753 (W.D.N.Y. Dec. 13, 2016) ........................... 6

*Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*,
248 F.R.D. 556 (N.D. Ill. 2008) ............................................................. 19

*Badr v. Liberty Mutual Group, Inc.*,
No. 3:06CV1208, 2007 WL 2904210 (D. Conn. Sept. 28, 2007) ........................... 16

*Caputi v. Topper Realty Corp.*,
No. 14-CV-2634 JFB SIL, 2015 WL 893663 (E.D.N.Y. Feb. 25, 2015) ................. 6

*Cohen v. City of N.Y.*,
No. 05 CIV 6780(JCF), 2010 WL 1837782 (S.D.N.Y. May 6, 2010)................... 10

*Fischer v. Forrest*,
2017 WL 773694 (S.D.N.Y. Feb. 28, 2017)...................................................... 9, 10

*Fisher v. Kanas*,
487 F. Supp. 2d 270 (E.D.N.Y. 2007) .......................................................... 25

*Ford Motor Co. v. Edgewood Props., Inc.*,
257 F.R.D. 418 (D.N.J. 2009)................................................................... 18

*Gaetano & Assocs., Inc. v. N.L.R.B.*,
183 F. A'ppx 17 (2d Cir. 2006) .............................................................. 25

*Giacchetto v. Patchogue–Medford Union Free School District, CV*,
11–6323, 293 F.R.D. 112 (E.D.N.Y.2013) ................................................. 7

*Gonzalez v. Int'l Bus. Machs. Corp.*,
236 A.D.2d 363 (2d Dep't 1997) ............................................................ 11

*Henry v. Morgan's Hotel Group, Inc.*,
15 Civ. 1789, 2016 WL 303114 (S.D.N.Y. Jan. 25, 2016)................................ 16

*Hui Qin Wang v. Jian Ping Yao*,
No. 11 Civ. 5637 (EBT), 2013 WL 2304180 (E.D.N.Y. May 17, 2013) ............................... 22

*Iyoha v. Attorney General of the U.S.*,
226 F. A'ppx 78 (2d Cir. 2007) ................................................................................................ 25

*Kingsway Financial Services, Inc. v. Price Waterhouse Coopers LLP*,
2008 U.S. Dist. LEXIS 105222 (S.D.N.Y. Dec. 31, 2008) ..................................................... 20

*Mandell v. Maxon Co.*,
No. 06 Civ. 460(RWS), 2007 WL 3022552 (S.D.N.Y. Oct. 16, 2007) ............................ 10, 11

*McCarthy v. SEC*,
406 F.3d 179 (2d Cir. 2005)..................................................................................................... 25

*Nuskey v. Lambright*,
251 F.R.D. 3 (D.D.C. 2008)...................................................................................................... 23

*Ocean Partners, LLC v. North River Ins. Co.*,
546 F. Supp. 2d 101 (S.D.N.Y. 2008)...................................................................................... 25

*Perkins v. Chelsea Piers Mgmt.*,
No. 11 CIV. 8998(JCF), 2012 WL 4832814 (S.D.N.Y. Oct. 10, 2012) .................................. 10

*Rosenbaum v. Becker & Poliakoff, P.A.*,
No. 08-CV-81004, 2010 WL 623699 (S.D. Fla. Feb. 23, 2010) .............................................. 23

*Sarkees v. E.I. DuPont de Nemours & Co.*,
2019 WL 1375088 (W.D.N.Y. Mar. 27, 2019)........................................................................ 6,

*Futreal v. Ringle*,
2019 WL 137587 (E.D. N.C. 2019)............................................................................................ 9

*SEC v. Collins & Aikman Corp.*,
256 F.R.D. 403 (S.D.N.Y. 2009) ............................................................................................. 23

*Sook Yoon v. Celebrity Cruises, Inc.*,
97 Civ. 3808, 1999 WL 135222 (S.D.N.Y. Mar. 12, 1999) .................................................... 15

*Thomas v. Roach*,
165 F.3d 137 (2d Cir. 1999)...................................................................................................... 25

*Trilegiant Corp. v. Sitel Corp.*,
272 F.R.D. 360 (S.D.N.Y. 2010) ............................................................................................. 10

*Viacom Intern. Inc. v. Youtube Inc.*,
253 F.R.D. 256 (S.D.N.Y. 2008) ............................................................................................. 15

*Wiwa v. Royal Dutch Petroleum Co.*,
  96 Civ. 8386, 2006 WL 2637836 (S.D.N.Y. Sept. 12, 2006)................................................. 15

*U.S. v. Yousef*,
  327 F.3d 56 (2d Cir. 2003)........................................................................................... 25

*Zanowic v. Reno*,
  97 Civ. 5292, 2000 WL 1376251 (S.D.N.Y. Sept. 25, 2000)................................................. 10

*Zubulake v. UBS Warburg LLC*,
  217 F.R.D. 309 (S.D.N.Y. 2003) ................................................................................... 23

## **Rules**

Fed. R. Civ. P. 26(b)(1)......................................................................................... passim

Fed. R. Civ. P. 26(b)(2)(C) ...................................................................................... 23, 24

Fed. R. Civ. P. 26(c)(1).......................................................................................... 23

Plaintiff Kaloma Cardwell ("Plaintiff" or "Cardwell") respectfully submits this memorandum of law in opposition to Defendants' motion to compel production of certain documents and interrogatory responses (ECF 102) (the "Motion" or "MTC"), as filed by Davis Polk & Wardwell LLP ("Davis Polk" or the "Firm") and named defendants Thomas Reid, John Bick, William Chudd, Sophia Hudson, Harold Birnbaum, Daniel Brass, Brian Wolfe, and John H. Butler (the "Named Defendants," and, together with Davis Polk, "Defendants").

## PRELIMINARY STATEMENT

With virtually zero authorities to support their positions, not only does Defendants' motion to compel reveal their blatant disregard for relevance, proportionality, and other foundational principles of the Federal Rules, but also the extraordinary lengths to which they will go to manufacture disputes that carry the threat of sanctions.  Against this unfortunate backdrop, it is hard not to view Defendants' motion as anything other than an abuse of motion practice, a waste of Plaintiff's and the Court's resources, and a bullying tactic intended to create disputes and grind down Plaintiff's ability to prosecute this case.  For these reasons alone, the MTC should be denied.

On July 18, 2020, after undertaking a proportional search for discovery materials, Plaintiff produced more than 470 documents to Defendants spanning more than 2,088 pages.[1]  In total, Plaintiff produced over 780 documents and over 6,118 pages to Defendants—all in electronic format in compliance with in their Document Requests.[2]  As Defendants are well aware, Plaintiff's production was made subject to a corresponding set of responses and objections, which the Court

---

[1] After Defendants claimed during a meet and confer that they could not access Plaintiff's work-issued laptop, which has been in their possession since August 2018, Plaintiff voluntarily withdrew an objection that he was withholding documents already in Defendants' possession, custody, or control.  This resulted in the production of an additional 316 documents spanning 4,030 pages, and service of supplemental objections and responses (ECF 85-7).

[2] By contrast, Defendants have produced a paltry *900* pages since the start of discovery, a discrepancy that (i) would make more sense if Defendants, not Plaintiff, were the victims of racial discrimination and retaliation, and (ii) belies any claim that it is Plaintiff's production that suffers from glaring deficiencies. In order to narrow the scope of any disputes concerning these issues, a deficiency letter regarding Defendants' insufficient document production and responses and objections to Plaintiff's Document Requests is forthcoming.

permitted Plaintiff to assert.  Rather that engage meaningfully when Plaintiff raised valid concerns

with the form and substance of Defendants' Requests (through timely-served objections),

Defendants pointed the finger at Plaintiff, refused to acknowledge such objections (which squarely

contradicts this Court's orders),[3] and then accused Plaintiff of failing to comply with Court orders

and misapprehending unspecified and undisclosed Southern District of New York "practices."[4]

Their motion reveals that Defendants remain steadfast in their refusal to meaningfully

engage with virtually any of Plaintiff's positions on the disputed issues—failing to consider nearly

all arguments, cases, and positions that Plaintiff has asserted, both in Plaintiff's portion of the Joint

Letter and in various letters sent in the **four months** since the challenged responses and objections

were served.   But, as this opposition described in painstaking detail, Defendants are not entitled

to every piece of paper or record that Plaintiff generated for nearly eight years, or a belated

production of metadata *weeks after* Plaintiff produced documents, and various other objected-to

forms of discovery simply because they desire them.

Rather, an examination of any purported deficiencies in Plaintiff's production or discovery

responses must begin with the language (and scope) of the Requests themselves, and the nature of

Plaintiff's objections.  *See* Exs. 1 and 2. As Plaintiff demonstrates *infra*, compliance with the

Discovery Requests as written, including an instruction that "responsive items set forth in any

request should not be construed to limit the scope of the request,"[5] would require Plaintiff to first

manually inspect every email and document maintained by Plaintiff over an eight-year period to

---

[3] *See* July 7, 2020 Hr'g Tr at 31 ("I'm not precluding [Plaintiff] from raising appropriate objections at this time.").
[4] While recognizing that this Court granted Plaintiff the right to make objections, Defendants took a materially different position on this issue (among other issues) during subsequent meet and confers. This pattern of advancing arguments in meet and confers that are inconsistent with the Court's orders and guidance accounts for a vast majority of the time spent meeting and conferring on these disputes. In order to address this practice, Plaintiff began, as early as July 31, 2020, (i) flagging that Defendants' communications violated with good faith meet-and-confer requirements and (ii) asking Defendants to detail and specify their concerns or positions in writing. ECF 85-15.
[5] *See* Ex. 1 ¶ 14 at 7.

determine whether responsive information exists. But Plaintiff need not do so in order to challenge the propriety of this approach, as the Requests on their face make clear that responsive information is unlikely to exist across the sprawling, eight-year period for which such documents are sought.

Short on authorities to support their position, and refusing to respond to Plaintiff's own-cited authorities (which informed Plaintiff's objections in the first instance), Defendants' motion underscores that they fail to demonstrate, *inter alia*, the relevance or propriety of seeking (i) "all" documents and communications from Plaintiff,[6] for a period that pre-dates Plaintiff's employment at Davis Polk, and post-dates Plaintiff's termination (at the earliest) or the filing of the Complaint; and (ii) a reproduction of Plaintiff's *entire document productions* to satisfy Defendants' belated request for metadata.  Because Defendants have indisputably failed to carry their burden regarding their requests for additional discovery, their motion should be denied.

## RELEVANT FACTUAL BACKGROUND

On March 2, 2020, Defendants served their First Set of RFPs ("Document Requests") and First Set of Interrogatories ("Interrogatories," together with "Document Requests," the "Discovery Requests").  Importantly, those Requests *did not call for the production of metadata*.[7]  Consistent with the Court's order, Plaintiff served responses and objections and produced responsive documents subject to those objections on July 18, 2020.  On July 27, 2020, Defendants sent a purported deficiency letter to Plaintiff.  That letter *did not mention or call for the production of metadata*, but did raise other so-called "issues."  In the intervening months, Plaintiff attempted to

---

[6] Defendants' position is hard to square with their identical objection to "all" documents and communications as overbroad, unduly burdensome, and not proportional to the needs of the case.  *See, e.g.*, Ex. 3 ¶ 15 at 6 ("Defendants object to the Requests to the extent that they call for the production of … "all" documents or communications as overbroad, unduly burdensome, and not proportional to the needs of this case….); *id.* ¶ 16 ("Defendants object to Instruction No. 5 as unduly burdensome, overbroad, and not proportional to the needs of the case, to the extent it purports to seek "all" responsive documents in Defendants' possession, custody, or control).

[7] In fact, the third instruction in the Document Requests unambiguously states "[a]ll documents shall be produced in a format agreed upon by the parties to this litigation or as otherwise required by the Court." Ex. 1 ¶ 3 at 5.

engage in substantive meet and confers with Defendants, but they rebuffed any common-sense, good-faith attempt to address Plaintiff's objections.[8] Rather than identify bridgeable gaps between the parties' positions, Defendants repeatedly insisted that they rejected Plaintiff's perfectly reasonable requests, which Plaintiff emphasized in numerous communications,[9] that Defendants (i) limit the scope of their Requests to comply with Rule 26(b)(1); (ii) carry their initial burden of propounding sufficiently drafted requests by redefining objected-to defined terms or Requests; and (iii) implement similar revisions to address virtually identical issues with their Interrogatories.

Yet, despite these unbalanced and unreasonable Requests, Defendants repeatedly took issue with Plaintiff having objected at all, attempting to render Plaintiff's ability to make such objections (and the objections themselves) moot. Plaintiff was only able to put an end to

---

[8] *See* ECF 85-15 (detailing in a July 31, 2020 letter, Plaintiff's willingness to address Defendants' concerns specifically, substantively, and on a request-by-request basis).

[9] *See* Plaintiff's First Set of Responses to Defendants' RFPs, Ex. 4 (specifically objecting about 30 separate times, while referencing the specific request at issue, that Plaintiff "further objects to ***this Request*** on the grounds that it is overbroad and unduly burdensome, particularly to the extent it seeks '[a]ll documents'" or "[a]ny copies" and "without providing reasonable time limitations") (emphasis added);

ECF 85-15 (informing Defendants on July 31, 2020 that "Plaintiff has made clear in its objections that particular RFPs are (i) overly broad, unduly burdensome, (ii) do not appear relevant to the claims or potential defenses asserted or to be asserted in this action, and/or (iii) not proportional to the needs of the case. For example, and as specifically noted in certain objections, Plaintiff objected to certain requests for 'all documents'….");

ECF 85-16  (Aug. 6, 2020 challenge to Defendants' requests for "all documents" and similarly overly broad interrogatories, noting that "courts have required [parties] to narrow similarly overly broad interrogatories" and "[o]n the question of relevance and temporal scope, it is unclear whether Defendants are also arguing that Defendants' emails, text messages, phone numbers, social media accounts, resumes, and cover letters that follow Plaintiff's termination date … are all similarly discoverable for a period that runs through the present");

Plaintiff's Aug. 18, 2020 Email to Defendants (noting that "as it relates to making progress with these discovery issues, as you well know there are threshold issues that can only be resolved if Defendants are willing to meet and confer in good faith, which includes, at a minimum, a willingness to narrow document requests that courts have considered to be improper on their face (e.g., because they are categorically overbroad and/or not related to the claims or defenses in a case). That work can only be done by Defendants."); and

Plaintiff's Aug. 21, 2020 Second Supplemental Objections and Responses to Defendants' RFPs, ECF 85-7 (specifically objecting nearly 30 separate times "on the grounds that [the requests are] overbroad and unduly burdensome, particularly to the extent [they] seek[] '[a]ll documents'" or "[a]ny copies" and "without providing reasonable time limitations").

Defendants' cat-and-mouse game by citing an exchange between Your Honor and Bruce Birenboim at the July 7, 2020 teleconference. *See* 85-16 at 4 (quoting back Mr. Birenboim's representation during the teleconference that Defendants were "fine with this process" after Your Honor explained that Plaintiff was not "preclude[ed] . . . from raising appropriate objections at this time."). But ultimately, far from being "fine" with the objections, Defendants remained steadfast in their position that they were improper and that the Requests require no modifications as to their scope or breadth—without distinguishing Plaintiff's authorities on these issues, or even attempting to satisfy Rule 26(b)(1)'s proportionality factors (including as to relevance).

On August 11, 2020, Plaintiff served discovery requests on Defendants that included an explicit request for metadata. On August 18, 2020, in response to the request, Defendants made a vague request for reciprocal data—even though, by that time, Plaintiff had already produced documents to Defendants several weeks prior on July 18, 2020, after a painstaking search and collection process (in compliance with the Court-ordered deadline for doing so and in electronic format as Defendants requested). Attempting to cloak their oversight as a failure on Plaintiff's part, Defendants asserted that their belated request for metadata was "inherent" in the Southern District's "practices"—a position that was squarely at odds with caselaw that Plaintiff presented (cases that Defendants still make no attempt to analyze or distinguish).

## ARGUMENT

### I. DEFENDANTS' DISCOVERY REQUESTS SEEK IRRELEVANT INFORMATION, ARE OVERBROAD, UNDULY BURDENSOME, AND FAIL TO SATISFY THE PROPORTIONALITY TEST UNDER RULE 26(B)(1)

Although not addressed in their motion, there can be no reasonable dispute that Federal Rule of Civil Procedure 26(b)(1) limits the scope of discovery to information "relevant to any party's claim or defense" and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The specific proportionality factors that must be assessed when evaluating the appropriate scope

of discovery are: (i) the importance of the issues at stake in the action; (ii) the amount in controversy; (iii) the parties' relative access to relevant information; (iv) the parties' resources; (v) the importance of the discovery in resolving the issues; and (vi) whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id.*

"Proportionality has assumed greater importance in discovery disputes since the … amendments to Rule 26," *Sarkees v. E.I. DuPont de Nemours & Co.*, 2019 WL 1375088, at *2 (W.D.N.Y. Mar. 27, 2019).  Likewise, Rule 26(b)(1), "is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of relevant information." *Armstrong Pump, Inc. v. Hartman*, No. 10-CV-446S, 2016 WL 7208753, at *3 (W.D.N.Y. Dec. 13, 2016).

Disregarding threshold relevance and proportionality considerations, Defendants have propounded Discovery Requests (which they subsequently refused to revise or narrow)[10] that violate virtually every proportionality factor, including through their improper insistence that Plaintiff produce "all documents" "relating to"  various topics, and identify "every" and "all persons" concerning various topics, some of which are defined in impermissibly broad ways, covering an eight-year period that both pre- and post-dates Plaintiff's employment by the Firm, and have nothing to do with the claims or defenses at issue in this case.

## A.  Defendants Fail to Demonstrate Interrogatory Related Deficiencies[11]

---

[10] Ironically, Defendants' "Summary" of Defendants' Interrogatories and RFP Requests (MTC, ECF 102 at 6-7 and 9-15) is substantively narrower than the actual requests themselves. *See* Exs. 1, 2.  That Defendants have narrowed their requests, in the form of "summar[ies]" for purposes of this motion, but were unwilling to do so in response to Plaintiff's concerns and objections reveals that this dispute was amenable to resolution without resort to Court intervention.

[11] Although Defendants have informed the Court that they "are not asserting waiver at this time" regarding Plaintiff's responses to the Interrogatories, it is unclear how such position will affect future disputes, if any, concerning Plaintiff's Interrogatory Responses. ECF 102 at 5 n. 2.

Defendants assert that Plaintiff's responses to Interrogatory Nos. 1, 2, 3, 5, 6, 7, 8, 9, 11, and 13 included "improper objections" purportedly because Plaintiff "[d]ecline[d] to specify whether his responses are or are not limited by the objections he has asserted and, if so, on what specific bases he is withholding information."

Interrogatory Nos. 1-3 ask Plaintiff to "identify the five persons" with certain knowledge. It is unclear what information Defendants believe has been withheld, as each one of Plaintiff's responses provided the names of five individuals; Plaintiff's responses and objections were likewise specific and sufficient.

Interrogatory Nos. 5, 6, 7, and 8 ask Plaintiff to "[i]dentify every person with knowledge concerning" various subjects, and Interrogatory Nos. 11 and 13[12] ask Plaintiff to "[i]dentify all persons"—each covering a nearly eight-year period with a cutoff date running through "the [ever-changing] present." Plaintiff provided specific answers and specific objections to each of these interrogatories, including objections that they were either overly broad, indefinite as to time, without reasonable limitation in its scope, or not proportional to the needs of this case.[13] Similarly, Plaintiff has sufficiently answered Interrogatory No. 9.

Further, with respect to Interrogatory No. 11, Plaintiff objected to "Defendants' defined term 'subject matter of this litigation' insofar as it impermissibly seeks 'information . . . not limited

---

[12] Interrogatory 13 calls for Plaintiff to "[i]dentify all email addresses and social media accounts (including account names) used or controlled by plaintiff" over eight plus years. Plaintiff has lodged specific objections and responses that highlight the fact that neither the wording of Interrogatory No. 13 nor Defendants have "made a sufficient predicate showing that this broad class of material" is relevant to any claims or defenses during the relevant time period. *Caputi v. Topper Realty Corp.*, No. 14-CV-2634 JFB SIL, 2015 WL 893663, at *6 (E.D.N.Y. Feb. 25, 2015). Not only have Defendants failed to establish relevance, but courts routinely discourage the broad types of discovery through social media accounts that Defendants seek here. *See generally Giacchetto v. Patchogue–Medford Union Free School District*, CV 11–6323, 293 F.R.D. 112, 115-16 (E.D.N.Y.2013) (an individual's "express[ion of] some degree of joy, happiness, or sociability on certain occasions sheds little light on the issue of whether he or she is actually suffering emotional distress").

[13] On Interrogatory Nos. 5 and 13, Plaintiff provided a footnote that further explains how such interrogatories are impermissibly broad.

to . . . to the allegations, claims, defenses, injuries, or damages' in this action,' which is beyond the scope of discovery permitted under Rule 26(b)(1) of the Federal Rules of Civil Procedure." Defendants are not entitled to information that is not limited to "the [relevant] allegations, claims, defenses, injuries, or damages.'" Yet that is what their motion seeks.

Ultimately, Defendants claim they seek "detail[s] sufficient to enable them to determine the need for additional motion practice." But as Plaintiff repeated emphasized to Defendants the during meet and confers, Defendants do not have the level of specificity they seek because virtually every question they propounded is impermissibly broad, and unduly burdensome.  Making matters worse, Defendants effectively took the counterproductive and judicially wasteful position that they would not narrow any of their Discovery Requests unless instructed by this Court to do so.

### A.    Defendants Fail to Demonstrate Document Request Related Deficiencies and Plaintiff's Objections to these Requests Have Not Been Waived[14]

In an attempt to circumvent this Court's July 7, 2020 ruling (which gave Plaintiff the right to make objections),[15] Defendants resort to frivolous arguments as a backdrop attempt to seek that Plaintiff has waived all objections to the Document Requests (except as to privilege), this time on the basis that "Plaintiff[] fail[ed] to state objections with particularity."

True to form, the *single* case that appears in Defendant's motion was brought to this Court's attention in the context of Defendant's latest request for sanctions. For reasons that are not proper and undeniably made plain by the record, Defendants pretend that Plaintiff never informed them that documents were being withheld subject to and on the basis of Plaintiff's objections, and that

---

[14] At the threshold, Plaintiff wonders how Defendants are asserting that Plaintiff failed to comply with Rule 34 and thus has waived the right to objections when Defendants' own responses to Plaintiff's Document Requests failed to state ***the very thing they claim Plaintiff has not stated and thus has waived***. *See* Ex. 5 (showing excerpts of Defendants' Responses to Plaintiff's RFPs where they do not mention if they are withholding documents in any sense, including on the basis of their objections. Defendants' position is particularly problematic given that Plaintiff has produced more than six times the volume of discovery as Defendants.

[15] *See* July 7, 2020 Hr'g Tr at 31 ("I'm not precluding [Plaintiff] from raising appropriate objections at this time.").

Plaintiff's responses would be revised to provide such confirmation. *See* ECF 85-16 (informing Defendants on Aug. 6, 2020 that "***[f]or each applicable RFP*** . . . , Plaintiff will revise his responses and provide the requested confirmation as to the . . . documents or categories of discovery that have been withheld, if any, based on any asserted objections."). Plaintiff did so on August 21, 2020. *See* ECF 85-7 (where Plaintiff's revised responses and objections specifically state for each applicable request (i.e., which excludes RFP Nos. 5, 11, 12, 14, 23, 24, and 27) that "Plaintiff is withholding documents based on the objections and descriptions noted herein").

Choosing to ignore Plaintiff's clearly-written responses and objections, Defendants support their waiver argument by citing *Fischer v. Forrest*, 2017 WL 773694, at *1, *3 (S.D.N.Y. Feb. 28, 2017) (Peck, J.)—a district court copyright and trademark infringement case in which "[t]he question before the court in Fischer was whether [the] use of ***17 general objections*** complied with Rule 34." *Futreal v. Ringle*, 2019 WL 137587 (E.D.N.C. 2019) (describing the issue before the Court in *Fischer*) (emphasis added). But that is not the issue before this Court.

Setting aside the fact that the *Fischer* court did not hold that plaintiff waived their objections as a result of their non-compliance with Rule 34 (instead, requiring the party "to revise their Responses to comply with the Rules"), the court assessed five different ways Rule 34 were violated—none of which are present here. The first two focused on the naked incorporation of "General Objections." The third related to the claim that certain requests were "overly broad and unduly burdensome" without disclosing which parts of the requests formed the basis of such objections. The fourth was that the responses failed to specify when documents would be produced. The fifth was a failure to state whether the party was withholding documents.

As the opinion makes clear, the responses and objections in *Fischer* are categorically and materially different than Plaintiff's own, as *none* of above five deficiencies—let alone all five—

are present here.[16] As stated *supra*, Plaintiff's responses (i) included specific objections (rather than merely "incorporating all of the General Objections into each response"); (ii) cited the parts of each request that were overly broad and unduly burdensome (e.g., "all documents" or "all communications"), often with illustrative examples in footnotes; (iii) specifically stated if Plaintiff would produce documents (which were simultaneously transmitted along with corresponding responses and objections that same day); and (iv) stated, when applicable, if Plaintiff was "withholding documents based on the [specific] objections" provided for each such request.

Faced with these stark contrasts, Defendants pivot to claiming that Plaintiff has (i) not indicated whether he is withholding documents based on the basis of his objections and (ii) stated that he is withholding documents in "boilerplate" fashion.   *See* MTC, ECF 102 at 9 (acknowledging that Plaintiff "[r]esponded to each" RFP but attempting to characterize any "withholding documents" descriptions as "boilerplate"). Without supporting caselaw, Defendants replaced Rule 34's actual language with their own interpretation and subjective "requirements."

In sum, Plaintiff has properly and specifically objected to each Document Request that is the subject of this MTC.[17]  Plaintiff specifically objected to each request, which included several

---

[16] The following is one of the responses the *Fischer* court highlighted to illustrate this point: "Defendant objects to this Request for Production to the extent that it is overly broad and unduly burdensome, and not likely to lead to the discovery of relevant evidence. Defendant further objects to this Request as it requests information already in Plaintiff's possession."

[17] It is well settled that where (as is the case here) the relevancy of a request is not readily apparent on its face, the party seeking the discovery bears the burden of demonstrating such relevance. *See Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 363 (S.D.N.Y. 2010) ("The burden of demonstrating relevance is on the party seeking discovery."); *Cohen v. City of N.Y.*, No. 05 CIV 6780 (RJS)(JCF), 2010 WL 1837782, at *2 (S.D.N.Y. May 6, 2010) (same).

Where a party fails to meet that burden, the discovery should be denied. *See, e.g.*, *Perkins v. Chelsea Piers Mgmt.*, No. 11 CIV. 8998 (ALC)(JCF), 2012 WL 4832814, at *1 (S.D.N.Y. Oct. 10, 2012) (denying a motion to compel because the plaintiff "fail[ed] to provide any argument as to why the documents he is seeking are relevant to his case."); *Mandell v. Maxon Co.*, No. 06 Civ. 460, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007) (quashing a request for production because the plaintiff failed to demonstrate the relevance of the information it sought); *Zanowic v. Reno*, 97 Civ. 5292 (JGK)(HBP), 2000 WL 1376251, at *6 (S.D.N.Y. Sept. 25, 2000) (a moving party's "failure to explain the relevance of this information is fatal to [its] motion to compel.").

dozen indications throughout the responses that Plaintiff "further object[ed]" to specific requests, including objections that were based on "overbroad and unduly burdensome [requests], particularly to the extent it seeks "[a]ll documents" or "[a]ny copies" and "without providing reasonable time limitations." The fact that Defendants propounded dozens of requests with the same improper language does not mean that Plaintiff's objections lack specificity, are boilerplate, or suddenly cease to be well-founded.

Because Plaintiff responded and objected to the Document Requests and made subsequent document productions pursuant to those objections, Defendants' MTC should be denied. *Cf. Gonzalez v. Int'l Bus. Machs. Corp.*, 236 A.D.2d 363, 364 (2d Dep't 1997) (denying  motion to compel where "an examination of the plaintiffs' response to the [propounding party's] discovery demands supports the [lower court's] conclusion that the plaintiffs adequately responded to all but those portions of the demands which were of an overly-broad and burdensome nature").

Moreover, as to each purported "[i]ssue[]" Defendants assert, both the plain language of each Request and the motion itself demonstrates that the Requests fail to satisfy numerous threshold considerations, including relevance and proportionality factors.  Because the Requests ignore, *inter alia*, (i) the importance of the requested discovery in resolving the case's issues, *see, e.g.*, *Mandell v. Maxon Co.*, No. 06 Civ. 460(RWS), 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007) (the burden of demonstrating relevance is on the party seeking discovery); (ii) consideration of the parties' respective resources[18]; and (iii) whether the burden or expense of the proposed discovery outweighs its likely benefit, there are numerous basis upon which they should be denied.

---

[18] Consideration of the parties' respective resources "does not foreclose discovery requests to an impecunious party, nor justify unlimited discovery requests addressed to a wealthy party." Advisory Committee Notes to the 2015 Amendments to Rule 26. That Davis Polk and the Named Defendants undoubtedly have more resources than Plaintiff does not eviscerate the discovery boundaries mandated by Rule 26.  Accordingly, Plaintiff asks that the Court apply the committee notes' requirements and not subject Plaintiff to Defendants' unreasonable demands.

1.      **None of Defendants' Positions Are Supported by Caselaw**

         i.      <u>Issue #1: Defendants Assert Plaintiff's Failed to Set Forth Objections with Particularity and Thus Has Waived the Right to Lodge Objections</u>

Defendants assert this argument with respect to Request Nos. 1–10, 13, 15–22, 25, 26, 28 and 31. As noted in the preceding section, Plaintiff has specifically objected to each of the foregoing requests.  With the exception of Request No. 22, each and every one of these requests includes a variation of the improperly broad "[a]ll documents" construction that impermissibly seeks documents from 2012 through the present.[19] *See infra* at 16-17 (explaining why such constructions have been deemed improper by this Circuit). Notably, as reflected in n.6 *supra*, it is perplexing how Defendants can credibly and defensible maintain that Plaintiff's objections to "[a]ll documents" is improper or meaningless, when Defendants assert same exact objection in its responses to Plaintiff's Document Requests.

Regarding Request Nos. 4, 7, 15, 17, 28, and 31, Plaintiff specifically objected to "Defendants' defined term 'subject matter of this litigation' insofar as it impermissibly seeks 'information . . . not limited to . . . to the allegations, claims, defenses, injuries, or damages' in this action,' which is beyond the scope of discovery permitted under Rule 26(b)(1) of the Federal Rules of Civil Procedure."  Defendants are not entitled to information that is not limited to "the [relevant] allegations, claims, defenses, injuries, or damages.'"

Ultimately, Defendants have provided no supporting caselaw and can point to nothing in Plaintiff's actual responses and objections to support their argument that the responses and objections violate Rule 34, or that Plaintiff has waived the right to lodge objections.

---

[19] Regarding Request No. 22, which asks for Plaintiff to produce "[c]ertified copies of plaintiff's transcripts from college and law school," Plaintiff lodged specific responses and objections. Plaintiff notes that Defendants already have these documents in their possession, and indeed have produced such documents to Plaintiff.  *See* DPW_SDNY000000185-DPW_SDNY000000189.

ii.     Issue #2: Defendants Assert That Plaintiff "Fail[ed] to Produce Responsive Materials Absent 'Better Understanding'"

Defendants advance this argument with respect to Request Nos. 8,[20] 9,[21] 20, 21, and 22.[22] As with the other requests, Plaintiff has likewise provided specific objections to each of the foregoing requests. With the exception of Request No. 22, each and every request includes a variation of the improperly broad "[a]ll documents" construction that impermissibly seeks documents from 2012 through the present. *See infra* at 16-17 (explaining why such constructions have been deemed improper by this Circuit). Despite Plaintiff's many good-faith attempts to negotiate the scope of these requests, Defendants have categorically refused to modify or narrow the scope of responsive documents they seek in response to these impermissibly broad requests.

iii.     Issue #3: Defendants Assert That Plaintiff "Fail[ed] to Produce Responsive Materials Absent 'Narrowing'"

Defendants advance this argument with respect to Request Nos. 4, 5, 10, 13, 14, 19, 26, 28, and 31. Plaintiff has likewise provided specific objections to each of the foregoing requests. Each and every request includes a variation of the improperly broad "[a]ll documents" (or "any") construction that impermissibly seeks documents from 2012 through the present. *See infra* at 16-17 (explaining why such constructions have been deemed improper by this Circuit).

Regarding Requests Nos. 4, 28, and 31, Plaintiff specifically objected to "Defendants' defined term 'subject matter of this litigation' insofar as it impermissibly seeks 'information . . .

---

[20] In addition to Plaintiff's specific response and objections, Plaintiff explained to Defendants that "this Request is so overbroad that it contemplates every document involving anything even remotely related to a month-long Firm-approved vacation that Plaintiff took during his employment." ECF 85-7 n.6 at 13. Nevertheless, because Defendants incorrectly suggest that Plaintiff has not produced responsive documents, Plaintiff directs Defendants to CARDWELL003054, which details such Firm-approved vacation.
[21] In addition to Plaintiff's specific response and objections, Plaintiff explained to Defendants "this Request is so overbroad that '[a]ll documents relating to plaintiff's non-Davis Polk employment' contemplates the Obama campaign flyers that Plaintiff received in 2012." ECF 85-7 n.7 at 14. Yet, Defendants did not propose any limitations or carveouts that would exempt these documents from the scope of what they are asking Plaintiff to search for and produce.
[22] Request No. 22 is addressed in the preceding section.

not limited to . . . to the allegations, claims, defenses, injuries, or damages' in this action,' which is beyond the scope of discovery permitted under Rule 26(b)(1) of the Federal Rules of Civil Procedure." Defendants are not entitled to information that is not limited to "the [relevant] allegations, claims, defenses, injuries, or damages.'" And yet, absent Court instruction, Defendants do not believe they must "narrow" these requests.

        iv.   <u>Issue #4: Defendants Assert That Plaintiff "Fail[ed] to Produce Promised Documents Despite Entry of a Protective Order"</u>

At the threshold, Defendants' request to compel a production of documents responsive to Request Nos. 1, 4, 12 should be denied for failure to satisfy their Rule 37 obligations.[23] Plaintiff is trouble to see that Defendants falsely cite compliance with Rule 37's meet and confer requirement for these specific requests (through meet and confers on August 4, August 6, and August 20, 2020). While true that Plaintiff offered to produce materials responsive to these requests upon entry of a protective order, and that a protective order was entered on November 9, 2020, it is *not true* that Defendants ever followed up with Plaintiff, attempted to meet and confer, or even declared impasse as to these requests *after* November 9, 2020 (a fact confirmed by their own Rule 37 certification). Indeed, this issue was not even raised in the parties' Joint Letter (ECF 85-1) as an issue ripe for resolution, because the protective order had not yet been entered at that time. As their certification documents, the parties' final communications on this issue occurred in August, and pre-date the entry of a protective order. As a result, Defendants' Motion is premature as to these Requests, and should be denied for failure to comply with their Rule 37(a)(2)(B) obligations.

---

[23] Defendants' motion falsely asserts that "at a Court conference on November 4, 2020, plaintiff represented, contrary to prior representations, that he intended to make no further production. MTC at 13. It is unclear what has informed Defendants' misrepresentation to the Court but Plaintiff remains willing to honor previously offered, good-faith compromises and positions taken throughout the course of this litigation.

As courts in this district have held, this failure, standing alone, is a sufficient ground for denying a motion to compel, and imposing sanctions. *See, e.g.*, *Apex Oil Co. v. Belcher Co.*, 855 F.2d 1009,1020 (2d Cir. 1988) (counsel violated the rule requiring attorneys to confer in good faith prior to seeking judicial resolution, which multiplied proceedings unreasonably and vexatiously so as to support imposition of sanctions); *Wiwa v. Royal Dutch Petroleum Co.*, 96 Civ. 8386 (KMW), 2006 WL 2637836 at *9 (S.D.N.Y. Sept. 12, 2006) (denying motion to compel for failure to confer and awarding attorney's fees to non-moving party); *In Sook Yoon v. Celebrity Cruises, Inc.*, 97 Civ. 3808 (DC), 1999 WL 135222 at *6 (S.D.N.Y. Mar. 12, 1999) (same); *see also Viacom Intern. Inc. v. Youtube Inc.*, 253 F.R.D. 256, 262-64 (S.D.N.Y. 2008) (denying motion to compel where party already agreed to produce sufficient information).[24]

      v.    <u>Issue #5 Defendants Assert "Technical Deficiencies and Incompleteness"</u>

Here, Defendants assert that Plaintiff's "production contains a number of problems that, taken together, cause defendants to question whether plaintiff has made a reasonable search for responsive information in his possession, custody, or control." Defendants' assertion is rooted in their failure to accept that Plaintiff's production, responses, and objections are a function of the fact that virtually every one of Defendants' Document Requests are impermissibly flawed and Defendants took the position that for the last few months (i.e., since August 2020) nothing about the Discovery Requests required modification.  Defendants did not merely fail to carry their initial burden, Defendants pretended not to have one.

---

[24] Further, Defendants have failed to produce responses to Plaintiff's Interrogatories for Sophia Hudson, William Chudd, and John H. Butler, a failure that is in direct contradiction of their representations to Plaintiff on September 14, 2020 and their representation to the Court on November 4, 2020.  The latter of which led the Court to rule that "at this point [this Court would] not compel defendants to provide responses." *See* Nov. 4, 2020 Hr'g Tr at 31 (where Defendants proclaimed "we're prepared to do so very promptly as soon as your Honor enters the protective order"). Similarly, Defendants have not produced "relevant insurance agreements following the entry of an appropriate protective order" (Defendants' Initial Disclosures, Ex. 6 at 6).

Nevertheless, the assertion that Plaintiff "[p]roduced documents and communications in non-native form without metadata (like date, time, sender, and recipient) and "[p]roduced certain documents only in part or with errors that obscure text is addressed *infra*. Illusory arguments related to "responsive information in [Plaintiff's] possession, custody, or control," "full document families," "communications from platforms," "files" that serve as the basis of allegations in the Complaint, a "fail[ure] to produce communications with . . . individuals identified[] in plaintiff's response to Interrogatory No. 11," and "declin[ing] to response to questions about 'searched for and produced responsive communications" have been addressed in the specific objections that Plaintiff lodged.[25]

## 2.   *Courts Routinely Deny Requests for "All" Documents*

Even if the foregoing requests were relevant and proportional to the needs of the case (they are not), they are impermissibly overbroad. Virtually every at-issue request seeks "all documents" "relating to" a particular subject, some of which are broadly defined.  However, "[b]lanket requests of this kind are ***plainly overbroad and impermissible***."  *Henry v. Morgan's Hotel Group, Inc.*, 15 Civ. 1789 (ER)(JLC), 2016 WL 303114, at *2 (S.D.N.Y. Jan. 25, 2016) (Cott, M.J.) (emphasis added).  *See also Badr v. Liberty Mutual Group, Inc.*, No. 3:06CV1208, 2007 WL 2904210, at *3 (D. Conn. Sept. 28, 2007) (finding request for "any and all" documents "overly broad"); *see also Pollard v. E.I. DuPont de Nemours & Co.*, No. 95–3010, 2004 WL 784489, at *5 (W.D. Tenn. Feb. 24, 2004) (holding "any and all" request ambiguous and overbroad).  Despite providing these

---

[25] Plaintiff is unable to adequately respond to Defendants' naked assertion of an "[in]accurate and [in]complete privilege log" reference because the column that purportedly describes what "plaintiff has" is empty, and the parties did not meet and confer regarding any purported deficiencies in Plaintiff's privilege log.  This evidences yet another failure of Defendants to satisfy their Rule 37(a)(2)(B) meet and confer requirements (and, again, calls into question the veracity of their Rule 37 Certification). Neither Defendants' July 27, 2020 "deficiency letter," August 18, 2020 letter, the parties' meet or confers, or any joint letters submitted to this Court have called into question Plaintiff's privilege log, let alone established that the parties are at an impasse. Defendants' baseless and premature inclusion of Plaintiff's "privilege log" under Issue #5 is premature is itself a basis to deny this portion of Defendants' MTC.

or substantially similar authorities to Defendants on August 6, 2020 (*see* ECF 85-16 at 5, 11), Defendants make no attempt to explain why their requests are immune from similar treatment, and why their motion is not frivolous in light of clear authority prohibiting the very discovery courts in this Circuit have denied.

## II.   DEFENDANTS ARE NOT ENTITLED TO A REPRODUCTION OF PLAINTIFF'S DOCUMENTS WITH BELATEDLY SOUGHT METADATA

### A.   This Untimely Request for Metadata, Made After Plaintiff Produced Documents and After Plaintiff Requested Metadata from Defendants, Should Be Denied

Long after they failed to seek metadata or flag it as an issue in the parties' initial communications and meet and confers, Defendants manufacture deficiencies with Plaintiff's production and hope to pull a bait-and-switch that attempts to substitute their request that documents be produced in electronic form (which Plaintiff has done) with a completely separate request for metadata (that appears nowhere in their Document Requests or instructions thereto).

Tellingly, the word "metadata" does not appear anywhere in Defendants' Document Requests *or* their subsequent letter "regarding the July 18, 2020 document production made by plaintiff." ECF 85-5. Likewise, the word "native" (referring to a document produced in its native format) does not appear anywhere in their Document Requests *or* their subsequent "deficiency letter."[26] *Id.*

What Defendants seeks now is to compel Plaintiff to re-review and re-produce over six times the amount of pages that Defendants produced, including as a backdoor attempt to obtain metadata that Defendants plainly did not seek until after the following key events (which illustrates the transparent motivation behind Defendants' belated request):

---

[26] Importantly, despite "request[ing] that plaintiff's counsel be prepared to meet and confer about [various] topics," none of those topics related to the electronic form of the documents Plaintiff's produced, or metadata. ECF 85-5.

(i)     Plaintiff produced more than 2,088 pages of documents;

(ii)    Defendants served a "deficiency letter" on July 27, 2020 that did not mention "metadata," "natives," or issues related to the authenticity of the documents in Plaintiff's production (ECF 85-5);

(iii)   The parties met and conferred on August 4 and again on August 6, 2020, where Defendants likewise did not raise the issue of "metadata" or "native files"; and

(iv)    Plaintiff sent Defendants, on August 11, 2020, his First Set of RFPs, where the word "metadata" appeared seven times, was specified in the Definitions for "document" and "information," and was repeatedly defined and described with examples and descriptions of the type of metadata sought and the format such metadata was to be produced.

In fact, it was not until August 18, 2020, in a letter to Plaintiff, that Defendants told Plaintiff for the first time that they sought metadata "alongside documents" and wanted Plaintiff to "update . . . his production" to provide such metadata. ECF 85-2. During the first meet and confer that followed this letter, Plaintiff explained to Defendants that, beyond their failure to provide a timely request for metadata and thus they had waived their right to such information, their request was burdensome given that Plaintiff already manually collected and produced thousands of pages to Defendants. Defendants have not pointed (and cannot point) the Court to any pre-August 18, 2020 documents or communications that confirm Defendants' requested metadata (or any assertion that Plaintiff's production failed to include metadata as requested and required by Defendants' Document Requests). Nor have Defendants claimed as much in bringing their motion.

**B.    Defendants Have Waived Their Ability to Seek Metadata After the Fact**

As courts in numerous districts routinely hold, Defendants' late attempt to re-write their discovery requests  to seek *metadata*, without explaining the relevance of such metadata, months after they failed to request such information in the first instance is improper, unduly burdensome, and should be denied.  *See, e.g.*, *Ford Motor Co. v. Edgewood Props.*, Inc., 257 F.R.D. 418, 426 (D.N.J. 2009) (unduly burdensome for party to re-produce documents based on belated metadata

request); *Aguilar*, 255 F.R.D. at 359 (denying majority of motion to compel belatedly requested metadata); *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 248 F.R.D. 556, 559 (N.D. Ill. 2008) ("It seems a little late to ask for metadata after documents responsive to a request have been produced in both paper and electronic format. Ordinarily, courts will not compel the production of metadata when a party did not make that a part of its request.") (collecting cases).

Defendants' request should be denied on the independent basis that they sat silently while Plaintiff collected, reviewed, and produced thousands of pages of documents—and did not request metadata until after (i) Plaintiff completed his document collection, (ii) the parties exchanged multiple communications and had meet and confers about Plaintiff's production, and (iii) Plaintiff served his own document requests that (unlike here) unequivocally defined and sought document metadata. Ultimately, Defendants' belated request constitutes a waiver, improperly shifts the parties' obligations, would require a burdensome reproduction, and thus should be denied.

### C.   Defendants Have Not Shown Such Reproduction Is Necessary and Relevant to this Action, and Such Reproduction Would Be Unduly Burdensome

#### 1.   *The Metadata Defendants Belatedly Seek Is Not Necessary and Relevant*

The metadata that Defendants' belatedly seek is not necessary and relevant to this action. In a case in which Defendants have repeatedly claimed that Plaintiff was terminated due to *Davis Polk-created performance reviews*—reviews that occurred no later than 2017, nearly three years ago—Defendants fail to show (and cannot show) that the newly-requested production of metadata *by Plaintiff* is at all relevant to this action. Consistent with Defendants' Document Requests and the instructions therein, which lacked such request, Defendants did not then and do not now require metadata for Plaintiff's entire production. Indeed, "in the absence of an issue concerning the authenticity of a document or the process by which it was created, most metadata has no

evidentiary value." *Kingsway Financial Services, Inc. v. Price Waterhouse Coopers LLP*, 2008 U.S. Dist. LEXIS 105222, *18 (S.D.N.Y. Dec. 31, 2008).

When Defendants finally raised the issue of metadata, they did not even attempt to explain why they required such information; instead, they chose to insist that requests for metadata were "inherent" in the Southern District's "practices," and that Plaintiff was disregarding such "practices" but asserting a contrary position. However, as courts in this district have held, Defendants must do more than demand, many months after the fact, such metadata with the naked expectation that they are then entitled to it. *Id*. ("In light of the dubious value of metadata and [the party's] total failure to explain its relevance to the claims and defenses in this action, [the party's] application to compel its production is denied."). That alone is a basis to deny their request.

Defendants' Document Requests and Instructions treat metadata as if were not relevant to this action, which is consistent with their subsequent discovery correspondence that did not mention a lack of metadata as a "deficiency" they had identified, and the parties' several meet-and-confers where no mention was made of such metadata. Despite bringing the instant motion, for which Defendants bear the burden of proof, it remains unclear to Plaintiff why Defendants are seeking metadata from Plaintiff when they claim they terminated Plaintiff based on their own internally created performance reviews from over three years ago—an assertion that does not require metadata for any responsive documents that Plaintiff could theoretically produce.

### 2. *"Sender" and "Recipient" and "Date" Information Already Appear on the Face of a Vast Majority of Documents*[27]

Both in the parties' September 29, 2020 Joint Letter (ECF 85-1) and during the November 4, 2020 teleconference, Defendants supported their request for "metadata" by arguing that

---

[27] That is, regarding documents where such information exist or are a part of the document. For example, Plaintiff's production includes calendars, which obviously do not have information such as "sender" or "recipient."

20

Plaintiff's documents "did not include information such as the name of the sender, the recipient of the message, and the time and date of the message." However, this conflates *metadata* with basic identifying information visible on the face of the documents produced.  In virtually every instance, Plaintiff's production includes the very information Defendants now seek (with the understanding that some file types, like audio files, do not bear text that can include similar forms of information).

To clarify Plaintiff's position, the vast majority of documents that have a "sender," "recipient," and "date"—especially the most relevant documents—were sent to Defendants in an electronic format that is text searchable, and/or shows "sender," "recipient," and "date" information on the face of the document. *See, e.g.*, Ex. 7 (presenting an illustrative set of documents to demonstrate such information is apparent on their face).

At all relevant times, Defendants have been unwilling to provide Plaintiff with a full and specific list of produced documents that it claims does not have such information on their face, and it remains unclear to Plaintiff why Defendants are requesting a reproduction of Plaintiff's *entire document production* to include metadata for documents where the "sender," "recipient," and "date" are readily identifiable and/or not obscured. Despite Plaintiff's requests for specificity and a willingness to provide answers or clarity to any specific questions or concerns Defendants might have, Defendants were unwilling to correct their characterization of Plaintiff's production, specifically identify the documents they had issues with, or propose remedies that do not shift their

burden onto Plaintiff or elevate "remedies" that are burdensome, unnecessary, and disconnected from the claims or defenses in this action.[28, 29]

      Ultimately, Defendants have not shown that reproduction is necessary and relevant to this action, let alone how such reproduction would not be unduly burdensome for Plaintiff, and thus their requests should be denied. *See, e.g.*, *Hui Qin Wang v. Jian Ping Yao*, No. 11 Civ. 5637 (LDW) (EBT), 2013 WL 2304180, at *2 (E.D.N.Y. May 17, 2013) (finding no good cause to require production of metadata where it would not be probative of a fact in dispute); *Aguilar v. Immigration & Customs Enforcement Div. of U.S. Dep't of Homeland Sec.*, 255 F.R.D. 350, 360 (S.D.N.Y. 2008) (declining to order production of metadata where requesting party failed to show metadata would "yield useful information beyond [what] the [requesting parties] already have").

## III. THE TEMPORAL SCOPE OF THE DISCOVERY REQUESTS IS OVERBROAD, UNDULY BURDENSOME, AND FAILS TO SATISFY THE PROPORTIONALITY TEST UNDER FEDERAL RULE 26(B)

      Although not directly addressed in their motion, Defendants appear to ask this Court (through the date range that it implicit in their Discovery Requests) to compel discovery from July 2012 to the ever-expanding present. Despite this, Defendants offer no justification for the sweeping scope of such request. Such request should be denied because, among other reasons: (i) Defendants fail to establish the relevance of a nearly nine-year discovery period ***for each Discovery Request***, irrespective of the underlying topic (*see* ECF 102); (ii) Plaintiff did not

---

[28] *See* Plaintiff's Aug. 6, 2020 Ltr. to Defendants, Ex. 85-16 at 2 (noting that "Defendants did not provide Plaintiff with a comprehensive or specific response to Plaintiff's letter as requested"); *id*. at 4 ("[B]ecause there is a significant gap in Defendants' characterization of Plaintiff's production and responses[,] and Plaintiff's actual production and responses, it would be most helpful if Defendants provided Plaintiff with a request-by-request list outlining any issues. … Plaintiff is willing to provide specific responses and clarification on any perceived or actual issues related to any particular RFPs or interrogatories"); *id*. at 6 (addressing concerns for the "limited number of documents for which Defendants have articulated specific concerns," noting that their "July 27 letter [otherwise] asserts purported deficiencies in categorical fashion" (ECF 85-15 at 4).

[29] Defendants must state with specificity and by Bates number, the documents for which they require metadata (and why). Once they have done so, Plaintiff wishes to provide a declaration that addresses the specific burdens associated with compliance (which cannot be done until Defendants' satisfy their threshold obligation to inform Plaintiff of precisely what they seek).

graduate from law school until 2014; (iii) Plaintiff did not start working at Davis Polk as a full-time associate until September 2014; (iv) the earliest unlawful allegation only dates back to the 2014-2015 period; (iv) Plaintiff was terminated on August 10, 2018 and the Complaint was filed on November 5, 2019; and (v) to collect, review and produce documents from such an overly broad date range places undue burden and expense on Plaintiff (*see* Fed. R. Civ. P. 26(c)(1); Fed. R. Civ. P. 26(b)(2)(C)(iii))—who has significantly less resources than Defendants, unsurprisingly due to the *very conduct and adverse employment actions* that Plaintiff prosecutes through this action.

Courts routinely deny documents requests that seek discovery beyond a narrowly tailored period sufficient to ensure the production of relevant information. *See, e.g.*, *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 417-18 (S.D.N.Y. 2009) (refusing to enforce broad document requests requiring search over an excessive time period because they were not ""specifically tailored to discover relevant information" (quoting *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 322 (S.D.N.Y. 2003) and ***requiring the requests to be revised***)); *Am. Express Travel Related Servs. Co. v. Allegis Grp., Inc.*, No. 00CIV.5781LTSFM, 2001 WL 1661917, at \*4 (S.D.N.Y. Dec. 28, 2001) (denying motion to compel documents over five-year period as "overly broad and insufficiently tailored . . . to justify the burden on [producing party] of identifying and producing every piece of paper" responsive to a particular request).[30]  Defendants' continued insistence that Plaintiff produce "all documents" from this overbroad period, irrespective of the request (and the need for such information over an eight-year period) should likewise be denied.

---

[30] *See also Rosenbaum v. Becker & Poliakoff, P.A.*, No. 08-CV-81004, 2010 WL 623699, at \*9 (S.D. Fla. Feb. 23, 2010) (in ERISA action, reducing the relevant time period for discovery from eighteen to six months under the "rule of proportionality" of Fed. R. Civ. P. 26(b)(2)(C)); *Nuskey v. Lambright*, 251 F.R.D. 3, 9-10 (D.D.C. 2008) (denying request for documents from years postdating plaintiffs alleged wrongful termination because request was "too speculative to justify extending the relevant time  period to the present day").

Insofar as the Court is inclined to grant any portion of Defendants' MTC, Plaintiff seeks an order requiring Defendants to narrowly tailor **each Document Request** to an appropriate date range and scope, including a limitation that any relevant discovery begin no earlier than Plaintiff's employment at Davis Polk (i.e., 2014) and end on the date of Plaintiff's termination (i.e., August 10, 2018) or no later than the date that the Complaint was filed (i.e., November 5, 2019).

## IV. DEFENDANTS' MANUFACTURED DISPUTE CONCERNING THE RETURN OF SO-CALLED FIRM MATERIALS IS PREMATURE AND NEEDLESSLY WASTES JUDICIAL RESOURCES

Plaintiff remains puzzled at Defendants' continued insistence that they require the Court's intervention to secure the return of so-called "Firm Materials."  Both premature and a needless waste of judicial resources, Defendants continue to seek the return of the same items that Plaintiff has already offered to return to Defendants prior to the filing of this motion.[31]  But not once prior to its filing the MTC had Defendants meaningfully sought to facilitate this hard-copy document exchange (or declare impasse on this issue)[32]; yet, Plaintiff's offer remains.  In light of Plaintiff's offered and anticipated cooperation, Defendants' request should be denied and the parties should be instructed to discuss a schedule and mechanism for returning these hard-copy documents.

With respect to the "return" of non-hard-copy documents, Plaintiff is unclear as to how Defendants propose for Plaintiff to return such electronic records, and whether Defendants' request includes the deletion of ESI that has already been produced during discovery and how doing so would not be a violation of Plaintiff's discovery obligations.  For these reasons, Plaintiff requests

---

[31] *See* Pl. Position in Sept. 29, 2020 Joint Letter (ECF 85-1 at 5 ("Plaintiff's own communications to Davis Polk . . . leave no doubt that he was and remains willing to return any such materials."); Pl. Response to Interrogatory No. 18 (ECF 85-18) ("Plaintiff will coordinate with Defendants to return certain physical documents that cannot be easily scanned or returned electronically.")
[32] In fact, Defendants chose not to respond to Plaintiff's proposal and instead filed this Motion to Compel. Accordingly, despite their Rule 37 Certification (ECF 102 at 15), Defendants did not adequately attempt to resolve this particular aspect of the parties' dispute before filing this motion.

that the Court limit any return to the physical, hard-copy documents in Plaintiff's possession—which, as stated in the Joint letter, consist of spiral bound "closing sets."

## V.    AFFIRMATIVE ARGUMENTS THAT DEFENDANTS COULD HAVE MADE IN THEIR MOTION TO COMPEL, BUT CHOSE NOT TO, ARE DEEMED WAIVED

The parties submitted a Joint Letter that raised their respective issues concerning Plaintiff's document production and discovery responses.  ECF 85-1.  Rather than respond to the arguments raised in Plaintiff's portion of the Joint Letter, Defendants filed the instant motion to compel, which only cited a *single case* and did not attempt to wrestle, distinguish, or otherwise recognize the cases (or arguments) that Plaintiff offered in support of its position—some of which Plaintiff first asserted to Defendants nearly four months ago during the parties' August meet and confers.

To the extent that Defendants elected not to advance all arguments in support of their motion (e.g., as to relevance of the disputed Discovery Requests, the temporal scope of the discovery period they seek, and the need for metadata and other forms of discovery), they have waived the right to do so in their reply brief. Under this Circuit's black-letter law, an argument may be deemed waived when not affirmatively raised in a party's moving brief.[33]

The principle underlying these rulings make sense: it prevents unfair surprise and avoids a scenario where the opposing party (i.e., Plaintiff) is left without an opportunity to scrutinize and respond to the arguments advanced by Defendants.  This would not be the first time Defendants

---

[33] *See*, e.g., *U.S. v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003); *Iyoha v. Attorney General of the U.S.*, 226 F. A'ppx 78 (2d Cir. 2007) (a party's "attorney must 'include his most cogent arguments in his opening brief, upon pain of otherwise finding them waived'") (quoting *McCarthy v. SEC*, 406 F.3d 179, 186 (2d Cir. 2005)); *Gaetano & Assocs., Inc. v. N.L.R.B.*, 183 F. A'ppx 17, 22 (2d Cir. 2006) (argument  not raised in opening brief waived) (citing *Thomas v. Roach*, 165 F.3d 137, 145 (2d Cir. 1999) (court need not consider argument first raised in reply brief); *Fisher v. Kanas*, 487 F. Supp. 2d 270, 278 (E.D.N.Y. 2007) (arguments not raised in original motion to dismiss are waived) (citing cases); *Ocean Partners, LLC v. North River Ins. Co.*, 546 F. Supp. 2d 101, 111 n.8 (S.D.N.Y. 2008) (declining to address arguments first raised in reply brief).

chose to reserve affirmative arguments for their reply—a practice that has, and will continue to, unduly prejudice Plaintiff as discovery and the remaining phases of this litigation proceed.[34]

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendants' MTC be denied.

DATED:     December 2, 2020          Respectfully submitted,

/s/ David Jeffries

David Jeffries

*Attorney for Plaintiff*

cc (via ECF):

Jeh C. Johnson
Bruce Birenboim
Susanna M. Buergel
Marissa C.M. Doran

*Attorneys for Defendants*

---

[34] *Compare, e.g.*, Defendants' Motion to Seal and Redact, ECF 73 (three-page motion with insufficient affirmative arguments) *with* Defendants' Reply ISO Motion to Seal and Redact, ECF 77 (presenting a brief twice as long, and including affirmative arguments and cases that certainly could have been advanced in their opening motion).