**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KALOMA CARDWELL,

      *Plaintiff*,

  v.

DAVIS POLK & WARDWELL LLP,
THOMAS REID, JOHN BICK, WILLIAM
CHUDD, SOPHIA HUDSON, HAROLD
BIRNBAUM, DANIEL BRASS, BRIAN
WOLFE, and JOHN BUTLER,

      *Defendants*.

19 Civ. 10256 (GHW)

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR PARTIAL MOTION TO
## <u>DISMISS THE SECOND AMENDED COMPLAINT</u>

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel.: (212) 373-3000
Fax: (212) 757-3990

*Attorneys for Defendants*

Dated: December 11, 2020

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 3

    A.    Background Facts............................................................................................... 3

    B.    Novel Claims in Plaintiff's Second Amended Complaint ..................................... 4

ARGUMENT ...................................................................................................................... 6

    A.    Applicable Law ................................................................................................ 6

    B.    All Renewed Claims Against the Additional Defendants Should Be
            Dismissed with Prejudice ................................................................................. 7

            1.    All Renewed Discrimination Claims Should Be Dismissed with
                  Prejudice ............................................................................................ 8

                  (a)    Plaintiff's Termination-Based Allegations Do Not Plausibly
                          Allege Discrimination by Brass, Birnbaum, or Wolfe................... 9

                  (b)    Plaintiff's Staffing-Based Allegations Do Not Plausibly
                          Allege Discrimination by Brass, Birnbaum, or Wolfe................. 11

            2.    All Renewed Retaliation Claims Should Be Dismissed ......................... 15

                  (a)    Plaintiff's Claims Common to All Additional  Defendants Do
                          Not Plausibly Allege Retaliation ................................................. 15

                  (b)    Plaintiff's Claims Unique to Hudson Do Not Plausibly Allege
                          Retaliation ................................................................................ 19

    C.    Plaintiff's Discrimination Claims Should Be Dismissed with Prejudice to
            the Extent Predicated on a Legal Theory Added in Violation of the Court's
            October Order and Without Leave to Replead ................................................... 24

CONCLUSION.................................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Adient Plc Securities Litig.*,
    2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020)...........................................................................16

*Almazan* v. *Almazan*,
    2015 WL 500176 (S.D.N.Y. Feb. 4, 2015)..............................................................................7

*Anderson* v. *N.Y. City Dep't of Fin.*,
    2020 WL 1922624 (S.D.N.Y. Apr. 21, 2020).........................................................................14

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009)....................................................................................................... passim

*Bell Atl. Corp.* v. *Twombly*,
    550 U.S. 544 (2007)....................................................................................................................6

*Brown* v. *Coach Stores, Inc.*,
    163 F.3d 706 (2d Cir. 1998)....................................................................................................25

*Burgis* v. *N.Y.C. Dep't of Sanitation*,
    798 F.3d 63 (2d Cir. 2015)......................................................................................................25

*Ceglia* v. *Zuckerberg*,
    2013 WL 1208558 (W.D.N.Y. Mar. 26, 2013).......................................................................23

*Chambers* v. *Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)....................................................................................................22

*Cohen* v. *Capital One Funding, LLC*,
    2020 WL 5763766 (E.D.N.Y. Sept. 28, 2020) ................................................................22, 23

*Collette* v. *St. Luke's Roosevelt Hosp.*,
    132 F. Supp. 2d 256 (S.D.N.Y. 2001)....................................................................................25

*Colliton* v. *Cravath, Swaine & Moore LLP*,
    2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 F. App'x 535 (2d
    Cir. 2009) ......................................................................................................................2, 7, 21

*Cortec Indus., Inc.* v. *Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991)......................................................................................................22

*Daniels* v. *City of N.Y.*,
    2019 WL 251511 (S.D.N.Y. Jan. 17, 2019) .................................................................9, 10, 14

*Dean* v. *Westchester Cty. Dist. Atty's Off.*,
   119 F. Supp. 2d 424 (S.D.N.Y. 2000)......................................................................11

*Dozier* v. *Deutsche Bank Trust Co. Americas*,
   2011 WL 4058100 (S.D.N.Y. Sept. 1, 2011).......................................................7, 18

*Finley* v. *United Parcel Service Inc.*,
   2018 WL 6422082 (D. Ariz. Mar. 30, 2018).........................................................15

*Ghadersohi* v. *Roswell Park Inst.*,
   2011 WL 4572539 (W.D.N.Y. Sept. 30, 2011) ...................................................7, 16

*Gonzalez* v. *Allied Barton Sec. Servs.*,
   2010 WL 428058 (S.D.N.Y. Feb. 2, 2010)............................................................25

*Haggood* v. *Rubin & Rothman, LLC*,
   2014 WL 6473527 (E.D.N.Y. Nov. 17, 2014).........................................................8

*Henry* v. *N.Y.C. Health & Hosp. Corp.*,
   18 F. Supp. 3d 396 (S.D.N.Y. 2014)............................................................. passim

*Hirsch* v. *Arthur Andersen & Co.*,
   72 F.3d 1085 (2d Cir. 1995).............................................................................7, 16

*Johnson* v. *Morrison & Foerster LLP*,
   2015 WL 845723 (S.D.N.Y. Feb. 26, 2015).........................................................12

*Johnson-Gellineau* v. *Steine & Assocs., P.C.*,
   2019 WL 2647598 (S.D.N.Y. June 27, 2019), *aff'd*, 2020 WL 6735286 (2d
   Cir. Nov. 17, 2020) .............................................................................................7

*Kennedy* v. *New York*,
   167 F. Supp. 3d 451 (W.D.N.Y. 2016) ...............................................................22

*Kramer* v. *Time Warner Inc.*,
   937 F.2d 767 (2d Cir. 1991)...............................................................................22

*Kuntz* v. *N.Y. State Bd. of Elections*,
   924 F. Supp. 364 (N.D.N.Y. 1996), *aff'd sub nom. Kuntz* v. *N.Y. State Senate*,
   113 F.3d 326 (2d Cir. 1997)...............................................................................25

*LeeHim* v. *N.Y.C. Dep't of Educ.*,
   2017 WL 5634128 (S.D.N.Y. Nov. 21, 2017).........................................................8

*Legg* v. *Ulster Cty.*
   2020 WL 6325850 (2d Cir. Oct. 29, 2020)...........................................................24

*Matusovsky* v. *Merrill Lynch*,
   186 F. Supp. 2d 397 (S.D.N.Y. 2002)..................................................................22

*MLSMK Inv. Co.* v. *JP Morgan Chase & Co.*,
    431 F. App'x 17 (2d Cir. 2011) ..............................................................................16

*Nguedi* v. *Fed. Reserve Bank of N.Y.*,
    2017 WL 5991757 (S.D.N.Y. Dec. 1, 2017) ...........................................................10

*Palm Beach Strategic Income, LP* v. *Salzman*,
    457 F. App'x 40 (2d Cir. 2012) ..............................................................................25

*Palm Beach Strategic Income, LP* v. *Stanley P. Salzman, P.C.*,
    2011 WL 1655575 (E.D.N.Y. May 2, 2011) ........................................................7, 18

*Pena* v. *NYC Board of Elections*,
    2017 WL 722505 (S.D.N.Y. Feb. 6, 2017)..............................................................10

*Presbyt. Healthcare Servs.* v. *Goldman Sachs and Co.*,
    2017 WL 1048088 (S.D.N.Y. Mar. 17, 2017) .........................................................6

*Ricci* v. *DeStefano*,
    557 U.S. 557 (2009).................................................................................................24

*Rogers* v. *Fashion Inst. of Tech.*,
    2016 WL 889590 (S.D.N.Y. Feb. 26, 2016)..............................................12, 13, 15

*Royal Park Invs. SA/NV* v. *Deutsche Bank Nat'l Tr. Co.*,
    2016 WL 439020 (S.D.N.Y. Feb. 3, 2016) .............................................................7

*Salahuddin* v. *N.Y.C. Dept. of Ed.*,
    2017 WL 3724287 (S.D.N.Y. Aug. 28, 2017).......................................................15

*Teasdale* v. *N.Y.C. Fire Dep't, FDNY*,
    574 F. App'x 50 (2d Cir. 2014) ..............................................................................24

*Whittle* v. *Cty. of Sullivan*,
    2017 WL 5197154 (S.D.N.Y. Nov. 8, 2017)..........................................................11

*Yan* v. *Ziba Mode Inc.*,
    2016 WL 1276456 (S.D.N.Y. Mar. 29, 2016) .......................................................10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12 ........................................................................................1, 6, 18, 22

Fed. R. Civ. P. 15 ................................................................................................24

Fed. R. Civ. P. 34 ................................................................................................23

N.Y.C. Admin. Code § 8-107(1)(a) .....................................................................24

Davis Polk & Wardwell LLP ("Davis Polk" or the "Firm"), Thomas Reid and John Bick (the "Management Committee Defendants"), and Daniel Brass, Harold Birnbaum, John Butler, William Chudd, Sophia Hudson, and Brian Wolfe (the "Additional Defendants") (together, "defendants") respectfully submit this memorandum of law in support of their motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss in part the Second Amended Complaint filed on November 18, 2020 by plaintiff Kaloma Cardwell (ECF 99) (the "SAC").

On October 24, 2020, this Court granted defendants' motion to dismiss plaintiff's (i) hostile work environment and harassment claims, (ii) discrimination and aiding and abetting claims against the Additional Defendants, and (iii) certain retaliation claims. ECF 78 (the "October Order" ("Ord.")). The SAC abandons certain claims, fails to cure the deficiencies the Court found in the prior complaint, and impermissibly and inadequately seeks to amend plaintiff's discrimination claims. For the reasons set forth below, defendants move to dismiss with prejudice (i) all previously-dismissed claims against the Additional Defendants and (ii) the discrimination claims, to the extent plaintiff improperly amended those claims in violation of the October Order, which granted leave to replead only certain of the dismissed claims.

## PRELIMINARY STATEMENT

Plaintiff's opportunistic amendments—two hundred and sixty new paragraphs of them, some flatly contradicting his prior pleadings—fail to cure the pleading deficiencies previously identified by this Court. None supports plausible allegations of unlawful acts by any Additional Defendant.

Plaintiff's attempts to renew his discrimination claims against Birnbaum, Brass, and Wolfe—he has abandoned his discrimination claims against Butler, Chudd, and Hudson—fail because the SAC contains no plausible allegation that they engaged in any conduct motivated by race. Moreover, plaintiff has failed to offer a single fact with respect to his alleged comparators'

performance; without this, there can be no plausible allegation that his comparators' "work performance was similar to his," Ord. 39, and thus no plausible allegation that he was treated differently than similarly situated others because of race. The discrimination claims thus should be dismissed with prejudice.

Plaintiff's efforts to replead his retaliation claims reflect the types of blatant tailoring properly rejected at this stage. Plaintiff now asserts—for the first time and without any factual support, in a transparent attempt to avoid dismissal—that Butler, Chudd, and Hudson were part of the "group" that terminated his employment. But plaintiff's earlier pleadings themselves contradict this assertion; plaintiff previously identified the members of the "group," and expressly excluded Butler, Chudd, and Hudson. Likewise, plaintiff's allegations that certain reviews were backdated contradicts a series of concessions, in plaintiff's prior filings, recognizing that the reviews were created contemporaneously; plaintiff's deletions of unfavorable concessions in his SAC are again "transparent attempts by plaintiff to amend his pleading in order to avoid a dispositive defense." *Colliton* v. *Cravath, Swaine & Moore LLP*, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 F. App'x 535 (2d Cir. 2009).

The applicable pleading standards again compel dismissal of plaintiff's previously-dismissed claims against the Additional Defendants.[1] Because plaintiff does not plausibly allege

---

[1] Notwithstanding the meritlessness of this action in all respects, consistent with the Court's obligation to accept well-pleaded facts as true, defendants again address only the pleading deficiencies in the SAC, notwithstanding that the evidence will show that *all* of plaintiff's claims against *all* defendants are factually false, legally meritless, and should be dismissed. In particular, defendants are not moving to dismiss the claims against the Firm and the Management Committee Defendants as a legal pleading matter, but will demonstrate at the appropriate juncture that all defendants at all times acted lawfully, fully supported plaintiff, communicated regularly with him, and never engaged in any discrimination or retaliation. Defendants will demonstrate at the appropriate juncture that the Management Committee Defendants acted at all times as leaders of the Firm to support fully an associate facing significant performance problems. The facts will show unequivocally that none of the Firm, the Management Committee Defendants, or the Additional Defendants treated plaintiff less favorably because of his race or because of his purported raising of any concerns related to race. The contemporaneous documentary evidence—performance evaluations, email records, work product—will show uniformly that plaintiff's deficient performance was the only reason he was asked to seek other employment.

retaliation as to Butler, Chudd, or Hudson, and has abandoned all remaining claims against them, they should again be dismissed from the case.[2]  Ord. 79–80.

Plaintiff's discrimination claims should be dismissed to the extent amended in violation of the Court's October Order; plaintiff is attempting to add, without proper factual support or leave to replead, a novel legal theory not previously asserted.

## STATEMENT OF FACTS

### A.    Background Facts

The Court is familiar with the underlying facts and prior proceedings, Ord. 2–28, and defendants refer to each only as necessary to explain the bases for dismissal.

Briefly, Davis Polk hired plaintiff as a full-time corporate associate in 2014.  SAC ¶ 52.  During the course of plaintiff's first three years at the Firm, senior lawyers in three Firm practice groups observed similar, and increasingly troubling, problems with his performance.  *See, e.g.*, SAC Ex. 2 at 9.  Plaintiff neglected tasks assigned to him; failed to complete required work and meet deadlines; disappeared for protracted periods when tasks needed to be completed; failed to recognize basic points; reached incorrect conclusions; and advanced positions that would, if carried out, have been contrary to client interests.  *See, e.g.*, SAC Ex. 2 at 7, 9–11, 18.  Senior lawyers on plaintiff's matters repeatedly were required to do, or redo, his work, or to find replacement staffing to ensure that deadlines were met and client interests not compromised.  *See, e.g.*, SAC Ex. 2 at 17–19.  By late 2017, despite repeated efforts to help him, his performance problems worsened, and it became clear that plaintiff—by then a fourth-year associate in the M&A group—was not performing at the level required of a Davis Polk associate.  In early 2018, plaintiff was told that he was not meeting the standards of an associate at his level, that his repeated poor

---

[2]    Plaintiff has not attempted to replead his dismissed hostile work environment claim (SAC at 160–70) or his claims of aiding and abetting against the Additional Defendants (SAC ¶¶ 615, 623, 631, 638).

performance made it increasingly challenging to assign him to matters, and that he should seek alternative employment. SAC ¶¶ 455, 464. The Firm made clear—consistent with Firm practice when under-performing lawyers are asked to look for alternative employment—that plaintiff should take up to three months, at full salary, to find another job, availing himself of Firm resources and job placement services. At plaintiff's request, the Firm extended this period to six months. Plaintiff's employment ended in August 2018. SAC ¶ 491.

### B.    Novel Claims in Plaintiff's Second Amended Complaint

The gravamen of plaintiff's complaint is that he was terminated not on the basis of poor performance, but on the basis of race or because he raised concerns about the Firm's practices related to race. In the October Order, the Court ruled that six of the twelve complaints that plaintiff alleges constituted protected activity in fact were not protected, Ord. 58,[3] and that the majority of his claims of unlawful acts by the Additional Defendants were implausible.

Defendants set forth, as before (ECF 44 at 19, 21), the entirety of plaintiff's allegations against each Additional Defendant in chart form, identifying in **_bold italics_** the allegations appearing for the first time in the SAC. The additions to plaintiff's SAC—which span 42 new pages—distill to a handful of discrete points. In summary, plaintiff attempts to salvage the discrimination claims against Birnbaum, Brass, and Wolfe previously dismissed by this Court without alleging a single fact demonstrating that any of their alleged actions were motivated by racial animus. As to retaliation, plaintiff now asserts, without any factual support, that (i) each of the six Additional Defendants was part of the "group" that "collectively decided to terminate" his employment," (ii) each of the Additional Defendants working in M&A (all but Hudson) was in part "responsible for" plaintiff's final negative performance review in January 2018, and

---

[3]    To the extent plaintiff has attempted to amend his allegations with respect to these twelve complaints, the amendments are displayed in the charts at **Appendix A** hereto.

"signaled" an unwillingness to work with him in light of the fact that he had filed an administrative

complaint (the "Charges") in August 2017, and (iii) Hudson "retroactively created" her June and

September 2016 performance reviews of Cardwell after he filed the Charges in 2017.

**CORE ALLEGATIONS AGAINST ADDITIONAL DEFENDANTS BY CLAIM**
(NEW ALLEGATIONS APPEAR IN *BOLD ITALICS*; REMOVED ALLEGATIONS APPEAR IN ~~STRIKETHROUGH~~)

| DEF. | AS TO DISCRIMINATION CLAIMS | AS TO RETALIATION CLAIMS |
|---|---|---|
| Birnbaum & Wolfe | • Did not email plaintiff for periods of time. SAC ¶¶ 224–25, 264.<br><br>• Did not staff plaintiff on any matters in 2016. Ensured he was "underutilized" by not staffing him "at the same rate or in the same way" as his peers and in response to his complaints. SAC ¶¶ 143–44, 174, 204, 216–20, 222–27, 243, 257, 259–63, 296, 392.<br><br>• Part of a "group" that "collectively decided to terminate" plaintiff's employment. SAC ¶¶ 452, 459, 461, 464–66, 468, 486–88, 504. | • Part of a "group" that "collectively decided to terminate" plaintiff's employment. SAC ¶¶ 452, 459, 464–66, 468, 486–88, 504.<br><br>• *"[R]esponsible for and contributed to the negative performance evaluation that [plaintiff] received on January 11, 2018," which was "contrary to [the] real-time feedback" he had been given. SAC ¶¶ 371–374, 462.*<br><br>• *"Signaled" to other partners that they were not willing to work with plaintiff in light of EEOC filing. SAC ¶¶ 376, 457, 461, 465, 467.* |
| Brass | • As an associate, over 3 hours in 2016, "abrupt[ly] remov[ed]" plaintiff from deal, and at unknown later date, "replaced" him with a white associate. SAC ¶¶ 156–59, 165–73.<br><br>• Did not staff plaintiff for 28 days in 2018. SAC ¶¶ 357, 392.<br><br>• Part of a "group" that "collectively decided to terminate" plaintiff's employment. SAC ¶¶ 452, 459, 461, 46–66, 468, 486–88, 504. | • Part of a "group" that "collectively decided to terminate" plaintiff's employment. SAC ¶¶ 452, 459, 461, 464–66, 468, 486.<br><br>• *"[R]esponsible for and contributed to the negative performance evaluation that [plaintiff] received on January 11, 2018," which was "contrary to [the] real-time feedback" he had been given. SAC ¶¶ 371–374, 462.*<br><br>• *"Signaled" to other partners that he was not willing to work with plaintiff "in light of EEOC filing." SAC ¶¶ 376, 457, 461, 465, 467.* |
| Butler | *Plaintiff has abandoned his discrimination claim against Butler.* | • Did not respond to a thank-you email to a staffing coordinator, on which he (and Bick) were copied, purportedly flagging complaint but not requesting response. SAC ¶¶ 271–73. (Not protected activity, Ord. 61.)<br><br>• *Part of a "group" that decided to terminate plaintiff's employment. SAC ¶¶ 452, 461, 464–66, 468, 486–88, 504.*<br><br>• *"[R]esponsible for and contributed to the negative performance evaluation that [plaintiff] received on January 11, 2018," which was "contrary to [the] real-time feedback" he had been given. SAC ¶¶ 371–74, 462.*<br><br>• *"Signaled" to other partners that he was not willing to work with plaintiff in light of EEOC filing. SAC ¶¶ 376, 457, 461, 465, 467.* |
| Chudd | • *Plaintiff has abandoned his discrimination claim against Chudd.* | • ~~Later "shifted" his "conclusions" about his 2015 review "in response to" complaints and potential litigation. First Amended Complaint ¶ 87.~~<br><br>• *Part of a "group" that decided to terminate plaintiff's employment. SAC ¶¶ 461, 464–66, 468, 486–88, 504.*<br><br>• *"[R]esponsible for and contributed to the negative* |

| DEF. | AS TO DISCRIMINATION CLAIMS | AS TO RETALIATION CLAIMS |
|---|---|---|
| | | *performance evaluation that [plaintiff] received on January 11, 2018," which was "contrary to [the] real-time feedback" he had been given. SAC ¶¶ 371, 374, 462.*<br><br>• *"Signaled" to other partners that he was not willing to work with plaintiff in light of EEOC filing. SAC ¶¶ 376, 457, 461, 465, 467.* |
| Hudson | • *Plaintiff has abandoned his discrimination claim against Hudson.* | • *"[T]erminated [plaintiff's] employment." SAC ¶ 468.*<br><br>• *"[R]etroactively created her June 2016 and September 2016 performance reviews," which rated plaintiff as "behind" in his class and "bear conclusions that [were not] contemporaneously communicated to" plaintiff, and submitted them to the NYSDHR. SAC ¶¶ 407–53.* |

## ARGUMENT

### A.  Applicable Law

When considering a motion under Rule 12(b)(6), this Court must accept as true the well-pleaded factual allegations in the complaint, but need not accept legal conclusions, assertions unsupported by the facts, or unwarranted inferences.  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555–56 (2007).  A mere "conclusory statement[]" that a plaintiff has satisfied an element of a claim "do[es] not suffice."  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," not merely "conceivable," *Twombly*, 550 U.S. at 570; this standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678, and where a complaint "pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  A reviewing court must, as this Court recognized, Ord. 29, "draw on its judicial experience and common sense" to determine plausibility.  *Id.* at 679 (citation omitted).

On a Rule 12 motion, the court may consider "documents incorporated by reference in the complaint," *Presbyt. Healthcare Servs.* v. *Goldman Sachs and Co.*, 2017 WL 1048088, at *5 (S.D.N.Y. Mar. 17, 2017) (quotation omitted), and documents "integral to the complaint,"

meaning documents upon whose "terms and effect" the "complaint relies heavily upon." *Almazan* v. *Almazan*, 2015 WL 500176, at *4 (S.D.N.Y. Feb. 4, 2015) (quotation omitted).  If a document so considered "'contradict[s] allegations in the complaint, the document, not the allegations, control[s], and the court need not accept the allegations in the complaint as true.'"  *Royal Park Invs. SA/NV* v. *Deutsche Bank Nat'l Tr. Co.*, 2016 WL 439020, at *1 (S.D.N.Y. Feb. 3, 2016) (quoting *TufAmerica, Inc.* v. *Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013)).

Courts are not required to accept as true factual assertions "contradicted by the complaint itself."  *Ghadersohi* v. *Roswell Park Inst.*, 2011 WL 4572539, at *2 (W.D.N.Y. Sept. 30, 2011); *Hirsch* v. *Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995).  Nor are courts required to "accept as true" facts alleged in an amended pleading that "conflict with a plaintiff's prior allegations." *Dozier* v. *Deutsche Bank Trust Co. Americas*, 2011 WL 4058100, at *2 (S.D.N.Y. Sept. 1, 2011).  Opportunistic amendments that are inconsistent with prior allegations, and "transparent attempt[s] by [a] plaintiff to amend his pleading in order to avoid a dispositive defense," cannot defeat an otherwise meritorious motion to dismiss; thus, where a plaintiff "changes his statement of the facts in order to respond to [a] motion to dismiss . . . [and] directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true."  *Colliton*, 2008 WL 4386764, at *6 (quotation omitted).[4]

### B.   All Renewed Claims Against the Additional Defendants Should Be Dismissed with Prejudice

All previously-dismissed claims should again be dismissed with prejudice.

- <u>Discrimination</u>.  The pleading standards for discrimination claims are set forth in detail at Ord. 30–36.  Briefly, to plead actionable discrimination under federal, state ("NYSHRL"), or city ("NYCHRL") law, plaintiff must allege, as to each defendant,

---

[4]   *Accord Johnson-Gellineau* v. *Steine & Assocs., P.C.*, 2019 WL 2647598, at *7 (S.D.N.Y. June 27, 2019), *aff'd*, 2020 WL 6735286 (2d Cir. Nov. 17, 2020); *Palm Beach Strategic Income, LP* v. *Stanley P. Salzman, P.C.*, 2011 WL 1655575, at *5–6 (E.D.N.Y. May 2, 2011).

"facts plausibly indicating" (i) "he was subject to an adverse employment action" (or, in the case of the NYCHRL, that he was treated "less well") that (ii) "occurred under circumstances giving rise to an inference of discrimination" (or, as to the NYCHRL, "discriminatory intent"). Ord. 31, 35 (quoting *Menaker* v. *Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019) (Title VII) and *Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (citation omitted) (NYCHRL); *Henry* v. *N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 409 (S.D.N.Y. 2014) (Title VII, § 1981, and NYSHRL).

- <u>Retaliation</u>. The pleading standards for retaliation claims are set forth in detail at Ord. 53–58, 66–69. Briefly, a plausible claim of retaliation under federal and state law requires allegations of "'(1) participation in a protected activity; (2) that the defendant *knew* of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" Ord. 53 (quoting *Shultz* v. *Congregation Shearith Israel of City of N.Y.*, 867 F.3d 298, 309 (2d Cir. 2017) (quotation omitted) (emphasis added)); *see also* Ord. 54. Under the NYCHRL, a plaintiff "must plausibly allege that 'the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action.'" Ord. 68 (quoting *Mihalik*, 715 F.3d at 112 (citation omitted)). Retaliatory animus must have "played *some* role in the employer's decision." Ord. 68.

Plaintiff's repleaded allegations fail to meet these standards. There remain no plausible allegations, among the repleaded claims, of discriminatory or retaliatory acts, and the claims should be dismissed. *See, e.g.*, *Henry*, 18 F. Supp. 3d at 411 (dismissing Title VII, § 1981, and NYSHRL claims); *LeeHim* v. *N.Y.C. Dep't of Educ.*, 2017 WL 5634128, at *9 (S.D.N.Y. Nov. 21, 2017) (dismissing Title VII, NYS- and NYCHRL claims); *Haggood* v. *Rubin & Rothman, LLC*, 2014 WL 6473527, at *15 (E.D.N.Y. Nov. 17, 2014) (dismissing Title VII, § 1981, and NYSHRL claims).

### 1.   All Renewed Discrimination Claims Should Be Dismissed with Prejudice

Plaintiff's attempts to renew his discrimination claims against Brass, Birnbaum, and Wolfe turn on (i) an allegation that they participated in a decision to terminate him, and (ii) three allegations with respect to staffing. None supports a claim of discrimination. Plaintiff's claims should be dismissed with prejudice for the reasons set forth in the Court's October Order, "principally because he has failed to plausibly allege facts that give rise to an inference of

8

discriminatory animus."  Ord. 37.

(a)    *Plaintiff's Termination-Based Allegations Do Not Plausibly*
*Allege Discrimination by Brass, Birnbaum, or Wolfe*

Plaintiff's allegations that Brass, Birnbaum, and Wolfe were part of the group that decided to terminate plaintiff fail because, as before, he has failed to put forth facts sufficient "to plausibly plead either the existence of racial animus or a causal connection between his experiences and any such animus."   Ord. 40, 42 (Brass), 42–43 (Birnbaum, Wolfe).   In particular, notwithstanding clear direction in the Court's October Order, plaintiff still "has not plausibly alleged that there were white associates *whose work performance was similar to his* who were treated more favorably than he was." Ord. 39 (emphasis added).  Indeed, plaintiff has failed to put forth a single fact with respect to his alleged comparators' performance.

Plaintiff has attempted to cure the deficiencies in his prior pleadings by adding a series of paragraphs, beneath the header "Comparators," attempting to give the illusion of factual support by creating the defined term "White M&A Comparators," *see* SAC ¶¶ 510–14, 471–76, 478, and by repeating a stock phrase (that he was "similarly situated in all material respects" to them, *e.g.*, SAC ¶ 476).  But although plaintiff claims that his alleged comparators shared a common department, and interview and evaluation processes, plaintiff offers no "details" with respect to the alleged peers' "responsibilities, qualifications, or quality of their work," nor any "factual amplification" of their performance, conduct, employment history, or experience levels. *Daniels* v. *City of N.Y.*, 2019 WL 251511, at *4–5 (S.D.N.Y. Jan. 17, 2019); *Henry*, 18 F. Supp. 3d at 408 ("generic allegation[s] of disparate treatment related to an unspecified class of Caucasian persons" fail under *Twombly*).  Most critically, there remain no "plausible allegations that [the alleged comparators'] work performance was similar to Cardwell's"; plaintiff has failed to offer any details of the other associates' abilities or performance.  Ord. 43 (citing *Rogers* v. *Fashion Inst. of Tech.*, 2016 WL 889590, at *6 (S.D.N.Y. Feb. 26, 2016)).  (Plaintiff himself acknowledges

9

that he "requested and was granted permission to complete a third six-month rotation instead of two-six month rotations," SAC ¶ 401, meaning that by the time he arrived in M&A, he had less experience than at least certain of his peers in terms of experience in the skills specific to M&A work.)  Absent such facts, plaintiff's conclusory reference to his "performance being equal or better than all of the White M&A associates who were similarly situated in all material respects," SAC ¶ 476, cannot save his claims here.  *See e.g.*, *Yan* v. *Ziba Mode Inc.*, 2016 WL 1276456, at *4–5 (S.D.N.Y. Mar. 29, 2016) (dismissing discrimination claim based partly on failure to plead facts comparing experience levels and conduct of comparators with those of plaintiff); *Daniels*, 2019 WL 251511 at *4 (dismissing complaint that "lack[ed] any specificity as to the alleged comparators' qualifications, responsibilities, employment history and conduct that gave rise to their reprimands"); Ord. 39.[5]

In effect, plaintiff asks the Court to assume that all of the alleged "comparators" are interchangeable, by virtue of their working within the same group at the same law firm.  But the case law is clear that while the fact that two employees perform the same job can be relevant to the question of whether they were similarly situated, it does not suffice, without more, plausibly to allege that they were similarly situated.  *See, e.g.*, *Pena* v. *NYC Board of Elections*, 2017 WL 722505, at *3, 10 (S.D.N.Y. Feb. 6, 2017) (failure to show that comparators were similar in "seniority and skills" meant that plaintiff did not plausibly allege discriminatory intent).  Plaintiff has, in effect, done little more than identify a "'generic class of [similarly situated] white employees'" (and Asian employees)  and  parrot in wholly conclusory terms the legal conclusion

---

[5]   It is well-settled that pleadings containing "'labels and conclusions,'" "'formulaic recitation[s],'" and "'naked assertion[s]'" "devoid of 'further factual enhancement'" are insufficient to survive motions to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555–57); *see also Nguedi* v. *Fed. Reserve Bank of N.Y.*, 2017 WL 5991757, at *4 (S.D.N.Y. Dec. 1, 2017) (Woods, J.); *Henry*, 18 F. Supp. 3d at 408 (generic allegations of disparate treatment related to an "unspecified class of Caucasian persons" insufficient to support race discrimination claim, when allegations failed to describe, *inter alia*, comparators' responsibilities and conduct relative to plaintiff's).

that they were treated more favorably than he; this is "'insufficient even at the pleadings stage.'" *Whittle* v. *Cty. of Sullivan*, 2017 WL 5197154, at \*7–8 (S.D.N.Y. Nov. 8, 2017) (dismissing Title VII discrimination claims for failure to allege sufficient facts) (quoting *Henry*, 18 F. Supp. 3d at 408).

Plaintiff's continued failure plausibly to allege the existence of comparators whose "performance was similar to his," Ord. 38, renders his allegation of discriminatory animus implausible. *See, e.g.*, *Dean* v. *Westchester Cty. Dist. Atty's Off.*, 119 F. Supp. 2d 424, 430 (S.D.N.Y. 2000) (finding that, "even if [attorney's] job performance was exceptional," failure to "provide[] th[e] Court with a *specific comparison* between her treatment and that of" her comparators was fatal on a motion to dismiss); *Whittle*, 2017 WL 5197154 at \*8 (allegation that "defendants…treated [P]laintiff differently than similarly situated white employees who had spotless records for several decades and were not terminated upon their first disciplinary charge" did not provide sufficient facts about alleged comparators to survive a motion to dismiss).

Nor are there any plausibly pleaded allegations of a causal nexus between Mr. Cardwell's race and Brass, Birnbaum, or Wolfe's alleged participation in the termination decision. To the only paragraphs addressing such an allegation, *see*, *e.g.*, SAC ¶¶ 371-72, plaintiff has amended his complaint only to suggest that his termination was an act of retaliation linked to his administrative action, an allegation this Court already has held was plausibly pleaded. Ord. 70; *see* SAC ¶ 372. Plaintiff has added no facts to support the contention that his termination was motivated by race; for instance, the paragraphs discussing Mr. Cardwell's allegations with respect to his January 2018 review, *see* Ord. 37, do not allege, even after plaintiff's most recent amendments, that the review was motivated by race (as opposed to by protected activity). SAC ¶ 372.

(b)     *Plaintiff's Staffing-Based Allegations Do Not Plausibly*
        *Allege Discrimination by Brass, Birnbaum, or Wolfe*

Plaintiff's three staffing-based allegations (alleged replacement on a deal, as to Brass; alleged failure to email plaintiff, as to Birnbaum and Wolfe; and alleged failure to staff, as to each) fare no better. None of these allegations supports a claim that Brass, Birnbaum, or Wolfe was motivated by race.

Plaintiff's first staffing-based allegation—that Birnbaum and Wolfe did not "email him" for periods of time—fails now, as before, because plaintiff alleges no "facts to support an inference that [Cardwell's] race was a motivating factor in Birnbaum and Wolfe's [alleged] decision not to email him," Ord. 43; plaintiff made no alterations to the paragraphs referencing this issue save removal of the word "i.e." *Compare* First Amended Complaint ("FAC") ¶¶ 174–75 *with* SAC ¶¶ 224–25.

Plaintiff's second staffing-based allegation—that Birnbaum and Wolfe (and, for 28 days in 2018, Brass) failed personally to staff plaintiff on matters (or "ensured" that he was not "staff[ed]" or was "underutilized")—likewise remains insufficient to sustain discrimination claims against them. SAC ¶¶ 174, 392. The SAC lacks any plausible allegation of animus on their part, as is required. *Henry*, 18 F. Supp. 3d at 408-09 (quotation omitted).[6] In particular, plaintiff's allegation that Brass did not "staff him on any matters for about a month in 2018," Ord. 41, fails because Cardwell again "has not plausibly alleged that Brass's decision not to staff him was the result of a discriminatory motive." Ord. 42. The SAC's only reference to this allegation—SAC

---

[6] There remains no plausible allegation that it was race, as opposed to poor performance, that motivated Birnbaum, Wolfe, or Brass when making staffing decisions. *See Rogers*, 2016 WL 889590, at *3, *6 (being assigned only three hours of work per week did "not plausibly support even a minimal inference of discriminatory motive"); *Iqbal*, 556 U.S. at 678 ("sheer possibility" of unlawful act "'stops short of the line between possibility and plausibility of entitlement to relief'" (quoting *Twombly*, 550 U.S. at 557)). In any event, plaintiff's personal "dissatisfaction with the work assigned (or not assigned) to him by his supervisors," without a showing of "material disadvantage," "is insufficient to make out an adverse employment action." *Johnson* v. *Morrison & Foerster LLP*, 2015 WL 845723, at *5 (S.D.N.Y. Feb. 26, 2015) (quotation omitted).

¶ 392—remains conclusory and effectively unaltered, except that the phrase "similarly situated non-Black associates," FAC ¶ 295, has been replaced with plaintiff's stock phrase "White associates who were similarly situated to Mr. Cardwell in all material respects."  SAC ¶ 392. Similarly, plaintiff's allegation that Birnbaum and Wolfe "caused him to be 'underutilized'" fails, as before, because plaintiff "has not plausibly pleaded that his race was a motivating factor in Birnbaum and Wolfe's [alleged] decision to ensure that he was 'underutilized.'"  Ord. 43. Cardwell's renewed attempt to "rely on a comparison to how white associates were staffed," *id.*, again fails because, beyond use of the stock phrase "similarly situated in all material respects," plaintiff has not plausibly alleged that he was treated differently than associates who were in fact similar to him in all material respects.  The SAC offers no "factual amplification" suggesting that Birnbaum or Wolfe treated him less well than similarly situated others for any reason, much less that they did so because of race.  *Henry*, 18 F. Supp. 3d at 408.  Most critically, there remain no "plausible allegations that [the alleged comparators'] work performance was similar to Cardwell's," Ord. 43; plaintiff has offered no details of the alleged other associates' performance, as set forth in detail above.  *Rogers*, 2016 WL 889590 at *6.[7]

Plaintiff's third and final staffing-based allegation—that Brass, over the course of about three hours in a single day, SAC ¶ 156 (2:39 p.m. to 5:38 p.m.), told Cardwell he would be staffed on a deal and then retracted the offer, *id.*—likewise fails to support a discrimination claim.

---

[7] Moreover, plaintiff's own pleadings show that his staffing-related allegations against Birnbaum, Wolfe, and Brass are implausible.  Plaintiff concedes that staffing decisions are made by multiple individuals.  SAC ¶¶ 223, 263. And irrespective of whether Birnbaum and Wolfe personally "staff[ed] Cardwell on any matters in 2016," SAC ¶ 219, plaintiff concedes that he *was* staffed on matters throughout 2016.  *E.g.*, SAC ¶ 226 (chart).  Plaintiff's concession that he billed more in the three months *after* Birnbaum and Wolfe assumed a role with respect to his staffing (416.7) than in the three months prior (406.6), SAC ¶ 226, further rebuts any inference of discrimination attributable to their assumption of responsibilities in September 2016.  Indeed, in no month in 2016 did plaintiff bill as many hours—234.7—as he did in September.  *Id.*  Plaintiff's concessions that he took extended leave in 2017, *e.g.*, SAC ¶¶ 331 (April),  226, 344, 356 (May, June), and the fact that he was staffed on a series of matters from May to September 2017, *see, e.g.*, SAC ¶¶ 340–41, 353; SAC Ex. 2 at 16–19, likewise rebut any inference that might be drawn from the allegations that Birnbaum and Wolfe "effectively went an entire year without" personally staffing him.  SAC ¶ 217.

For one, plaintiff concedes that his billable hours *increased* after his purported "removal." *See* ¶ 226; *accord Henry*, 18 F. Supp. 3d at 405, 407, 411 (being "removed from the roll call and sent home" not a "materially adverse change").

More critically, plaintiff still "has not plausibly alleged facts to support an inference that Brass removed him from the deal team because of his race," and in particular, has failed "to plausibly allege that his performance was similar to his replacement's." Ord. 41.  Plaintiff merely offers the wholly conclusory mantra that he was "similarly situated in all material respects" to his alleged replacement and that his performance was "on par with or better than" his replacement's. SAC ¶¶ 166–67.[8]  But the law requires more than conclusory allegations or stock phrases. Plaintiff's complaint "lacks any specificity as to the alleged comparator['s] qualifications, responsibilities, employment history and conduct," *Daniels*, 2019 WL 251511 at *4 (dismissing complaint), and therefore "falls well short of satisfying the disparate treatment standard 'requir[ing] a reasonably close resemblance of the facts and circumstances of [P]laintiff's and comparator's cases.'" *Anderson* v. *N.Y. City Dep't of Fin.*, 2020 WL 1922624, at *7 (S.D.N.Y. Apr. 21, 2020) (quoting *Trachtenberg* v. *Dep't of Educ. of City of N.Y.*, 937 F. Supp. 2d 460, 471 (S.D.N.Y. 2013)); *see* Ord. 39 (quoting *Anderson* and *Daniels*).  Plaintiff offers no facts at all to substantiate the claim that he and the replacement were similarly situated.  He does not claim that he and the replacement had equal "skill in the necessary task," SAC Ex. 2 at 19; had equivalent experience with the relevant client or in the relevant area; or were even in the same class year.  Nor could he.  At the time of this event (July 2016, SAC ¶ 159), Cardwell had only recently been assigned to M&A (April 2016, SAC ¶ 4), and was six months behind *even the M&A associates in his class year*, because he had completed a third rotation. SAC ¶ 401.  Cardwell's failure to allege facts relating to the replacement's "qualifications and standing" sufficient to show that they were

---

[8]    SAC ¶ 167 is plaintiff's only reference to the "performance" of any alleged comparator.

in fact similarly situated dooms his claim.  *Rogers*, 2016 WL 889590 at *6 (identification of "purportedly less-qualified white professor" allegedly treated more favorably, without facts supporting allegations as to comparator's "qualifications and professional standing," insufficient to allege discriminatory motive).  Plaintiff has again "not plausibly pleaded that Brass was motivated," in replacing Cardwell on a deal, "by Cardwell's race and not his performance."  Ord. 41.  All previously-dismissed discrimination claims should be dismissed again, with prejudice.

### 2.    All Renewed Retaliation Claims Should Be Dismissed

(a)    *Plaintiff's Claims Common to All Additional Defendants Do Not Plausibly Allege Retaliation*

Plaintiff's attempts to renew his retaliation claims against the Additional Defendants likewise fail, as before, for two "alternative" reasons.  Ord. 69.

***First***, plaintiff's "retaliation claims fail because he has failed to allege knowledge o[f] protected activity except as to his filings at the EEOC and the NYSDHR."  Ord. 69.  Plaintiff has attempted to salvage his claims of retaliation by the Additional Defendants by alleging that they had knowledge not only of plaintiff's Charges but of his (i) September 2015, (ii) September 2016, and (iii) March 2017 complaints.  *See* App'x A.  Putting aside whether the September 2016 complaint constituted protected activity[9]—plaintiff has not plausibly alleged that the Additional Defendants had knowledge of these three complaints.

Plaintiff's claims to the contrary rest principally on the novel and convenient allegation that because, on an annual basis, the Firm's M&A partners gathered to discuss the performance reviews of the "M&A associates," they must have discussed Cardwell and his purported complaints in those meetings.  But "neither the fact of the meeting[s] nor the explanation

---

[9]    The Court ruled that it did not, Ord. 60.  Even if, as plaintiff now contends, his complaint triggered a Firm anti-retaliation policy, which is implausible, the fact that a complaint is protected for purposes of a company policy "does not mean the complaint is protected under [federal law]" or inherently protected activity.  *See, e.g.*, *Finley* v. *United Parcel Service Inc.*, 2018 WL 6422082 (D. Ariz. Mar. 30, 2018); *see also Salahuddin* v. *N.Y.C. Dept. of Ed.*, 2017 WL 3724287 at *4 (S.D.N.Y. Aug. 28, 2017).

of what was discussed therein amount to anything more than speculation." *MLSMK Inv. Co.* v. *JP Morgan Chase & Co.*, 431 F. App'x 17, 19–20 (2d Cir. 2011) (finding that plaintiff failed to plead knowledge, and that negligence claim failed because allegation that defendants had actual knowledge was "purely conclusory"); *cf. In re Adient Plc Securities Litig.*, 2020 WL 1644018 at *27 (S.D.N.Y. Apr. 2, 2020) (dismissing complaint, finding, in part, that allegation that defendants regularly "participated in and/or ran" meetings in which a given topic was frequently discussed did not suffice to show that a specific topic was in fact discussed). In particular:

- *As to the September 2015 and September 2016 Complaints:* Plaintiff claims, using stock language, that "all of the M&A partners" had knowledge of Cardwell's "September 2015 discrimination complaint" to members of the diversity committee, SAC ¶ 79–80, and his "September 2016 discrimination complaint" to a junior staffing coordinator, SAC ¶ 210, because they "met at the end of September/beginning of October 2015," and again in "October meetings and conversations" in 2016,[10] as part of the annual review cycle, to discuss the performance of the "M&A associates." SAC ¶¶ 79, 210, 211. Plaintiff has offered no facts supporting his claim that his alleged grievances were discussed at annual meetings devoted to an entirely separate topic involving a broad range of associates. Nor does plaintiff even claim that all of the Additional Defendants in fact attended the meetings, nor could he. At least some indisputably did not.[11] Plaintiff's alternative attempt to impute knowledge of the September 2015 complaint to Hudson and Chudd is equally implausible. Plaintiff quotes the Firm's NYSDHR Position statement for the proposition that the Firm "made note of [Cardwell's] concern for future professional development discussions." SAC ¶ 76 n.8 (citing SAC Ex. 2 at 18–19). But neither this statement (which refers generically to professional development discussions) nor any other allegation in the SAC supports the conjecture that Chudd or Hudson, neither of whom even allegedly served on the Diversity Committee, was made aware of the alleged September 2015 complaint, as Cardwell now claims. SAC ¶ 76. Hudson did not even work with Cardwell at the time, SAC ¶ 401, and neither Cardwell's description of his subsequent review by Chudd, nor his description of Reid's "verbatim description of the same conclusion that Chudd had communicated to Cardwell in December 2015," supplies any indication that Chudd was aware of the alleged complaint. SAC ¶¶ 98–104 (Chudd), 89 (Reid).

- *As to the March 2017 Complaint:* Similarly, plaintiff claims that all of "the Firm's

---

[10] Plaintiff's allegation that Reid, Wolfe, and Birnbaum pulled him from a "deal on September 29, 2016," ¶ 216, in retaliation for a complaint they only learned of "during [] October meetings and conversations," SAC ¶ 211, is facially implausible. *Ghadersohi*, 2011 WL 4572539, at *2 (court need not accept as true factual assertions that are "contradicted by the complaint itself"); *Hirsch*, 72 F.3d at 1095.

[11] Brass could not have attended either, as he only became a partner in 2017, SAC ¶ 12; Birnbaum could not have attended the former, as he only became a partner in 2016, SAC ¶ 11. (Hudson was not an M&A partner, SAC ¶¶ 9, 401, and there is no allegation that she attended the M&A meetings, SAC ¶¶ 79, 210.)

M&A partners" had knowledge of the March 2017 "discrimination complaints" he made in a "meeting with Mr. Reid and Mr. Kreynin," SAC ¶¶ 332–33, because "in April 2017, Mr. Reid *or* Mr. Kreynin met with the Firm's M&A partners and discussed the meeting they had with Mr. Cardwell and the discrimination complaints" he made. SAC ¶ 333 (emphasis added). Cardwell implies that the Firm's NYSDHR Position Statement corroborates the existence of an April 2017 meeting. SAC ¶ 333 n.55. But that brief does not, as Cardwell claims, refer to any "April 2017 meeting among the Firm's M&A partners" at which a "plan for Cardwell" was allegedly discussed. SAC ¶ 333 n.55 (citing SAC Ex. 2). The exhibit Cardwell cites refers to no "April 2017 meeting"; the only partners described, in the Firm's NYSDHR Position Statement, as having knowledge of the Firm's remediation "plan for Cardwell" were Bick, who communicated the plan to Cardwell, SAC Ex. 2 at 15, and the four partners who supervised Cardwell's assignments as part of the plan (Goldberg, *id.* at 16–17; Mills, *id.* at 17–18; Hochbaum, *id.* at 18; and Amorosi, *id.* at 19). Not only is plaintiff's claim that there was an "April 2017" meeting entirely unsupported, his claim that the Additional Defendants attended such a meeting is conjecture; some could not or would not have.[12] Nor does Cardwell identify which speaker allegedly met with or relayed news of his complaint to others. SAC ¶ 333 ("or"). Cardwell's claims as to the March 2017 complaint "'stop[] short of the line between possibility and plausibility[.]'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

All previously-dismissed retaliation claims against the Additional Defendants should be dismissed for this reason, with prejudice. *See* notes 11 and 12.

***Second***, with respect to the previously-dismissed retaliation claims against the Additional Defendants, there remain no plausible allegations of retaliatory action by any Additional Defendant. Ord. 69.

As a preliminary matter, plaintiff's opportunistic attempt to implicate Butler, Chudd, and Hudson in his termination, and thereby to ensure that they remain in the case, is entirely implausible and should be rejected. Plaintiff now claims—for the first time, after an administrative filing, an original complaint, and a first amendment—that Butler and Chudd were part of the "group" that decided to terminate his employment, SAC ¶¶ 464–66, 468, 486–88, 504, and, in one paragraph, that Hudson somehow participated, without ever explaining how. SAC ¶ 468. These amendments are flatly contradicted by Cardwell's prior pleadings; there, plaintiff pointedly

---

[12] Brass cannot have had knowledge of this complaint by virtue of partner meetings; he was not yet a partner. SAC ¶ 12. (Hudson was not an M&A partner. SAC ¶ 401.)

identified all of the "partners in the 'group' who had indeed decided to terminate" his employment, FAC ¶ 296, and stated that it was "explained" to him "that Mr. Reid, Mr. Bick, Mr. Brass and the other M&A staffing partners (*i.e.*, Mr. Birnbaum and Mr. Wolfe) had collectively decided to terminate Mr. Cardwell's employment." FAC ¶ 296.[13] (Plaintiff retains this description at SAC ¶ 459.) Plaintiff offers no facts corroborating his late-breaking assertion that Butler, Chudd, or Hudson participated in the decision, and the Court is not required to "accept [it] as true." *Dozier*, 2011 WL 4058100, at *2; *Palm Beach Strategic Income, LP* v. *Stanley P. Salzman, P.C.*, 2011 WL 1655575, at *5–6 (E.D.N.Y. May 2, 2011) (declining to accept plaintiff's new allegations that conflicted with those in three previous iterations of the plaintiff's complaint, including "entirely new claims against" one individual, and granting defendant's Rule 12(b)(6) motion to dismiss plaintiff's amended complaint). Plaintiff's tailored-to-survive-dismissal allegation that Smith, an M&A partner, after listing the names above, "shifted the conversation so that Mr. Goldberg would not disclose any other names," SAC ¶ 460, amounts to sheer conjecture, particularly given the fact that there is no indication Cardwell believed this to have been the case while preparing his Charges, his original complaint, or his first amended complaint. *See* SAC Ex. 4 at 3, ECF 1 at ¶ 248, FAC ¶ 296; *Iqbal*, 556 U.S. at 678.

Plaintiff purports to buttress his claims of retaliation by the Additional Defendants in M&A (Brass, Birnbaum, Butler, Chudd, and Wolfe) by alleging that (i) "Mr. Reid and all of Davis Polk's M&A partners, including Mr. Bick, Mr. Wolfe, Mr. Butler, Mr. Birnbaum, and Mr. Brass, were responsible for and contributed to the negative performance evaluation that Mr. Cardwell received on January 11, 2018," SAC ¶ 371, 372, and (ii) on an undisclosed date prior to

---

[13] Hudson was not part of the M&A group, SAC ¶ 401, and Butler and Chudd were not "staffing partners"; the staffing role, as Cardwell concedes, goes to junior partners, SAC ¶ 143, and Cardwell concedes that Butler and Chudd were elected partner eighteen and nine years ago, respectively, SAC ¶¶ 10, 14.
Indeed, as the Court noted in the October Order, "Cardwell allege[d in his FAC] that the events that led to the claims in this case began after he stopped working with Chudd." Ord. 44.

January 11, 2018, "the M&A partners had recently met as a group and had already signaled to Mr. Goldberg and Mr. Smith that they were not going to work with Mr. Cardwell in light of the EEOC complaint that he had filed."  SAC ¶¶ 376, 461, 467.

These claims amount to nothing more than a recasting of the allegation that Cardwell was terminated because he filed an EEOC complaint; that allegation, however meritless, remains part of the case as to Brass, Birnbaum, and Wolfe, Ord. ¶¶ 69–70, but cannot, for the reasons discussed above, salvage claims against Butler, Chudd, or Hudson.  Plaintiff is foreclosed from claiming now that they participated in the decision to terminate him; the allegations are in any event implausible and conclusory.[14]

Plaintiff has not plausibly repleaded a connection between his engagement in any protected activity and any retaliatory act by any Additional Defendant.  Ord. 67 (collecting cases).  For these reasons, all previously-dismissed retaliation claims against all Additional Defendants should be dismissed with prejudice, and Butler, Chudd, and Hudson should be dismissed from the case.  (Butler should be dismissed for the additional reason that, as defendants argued in their first motion to dismiss, plaintiff failed to move to "join" him as an "additional part[y]" by this Court's January 20, 2020 deadline.  ECF 44 at 16 n.6; ECF 27 at ¶ 4.  The sole remaining allegation as to Hudson, which is false, is addressed below.

(b)     *Plaintiff's Claims Unique to Hudson*
        *Do Not Plausibly Allege Retaliation*

The sole remaining allegation relevant to plaintiff's effort to reassert a retaliation claim against Hudson is false and does not support any actionable claim against her.[15]

---

[14]   Plaintiff's allegations with respect to the January 2018 review are a patent attempt to map his repleaded allegations to the language of the October Order; Cardwell attempts, in the Court's words, to "substantiate th[e] conjecture" "that the Additional Defendants (and, perhaps, the whole Davis Polk partnership) conspired to fabricate a negative performance review as a pretextual justification for his eventual termination."  Ord. 37.  There remain no "plausible factual allegations in the complaint to substantiate that conjecture," Ord. 37–38, and plaintiff's bald remapping should be rejected.

[15]   Plaintiff repeats his allegation that Hudson asked him to "recommend a Black restaurant," SAC ¶ 459, even

In his Second Amended Complaint, plaintiff asserts, without any factual support, that Hudson's June and September 2016 reviews were created not in 2016 but a year later, after Cardwell filed his August 2017 Charges, with knowledge that they "would be used to retaliate against Mr. Cardwell" for his 2017 Charges. SAC ¶¶ 450–52. Plaintiff's claims that the reviews were "falsified" and "retroactively created" are based on an assertion (also unfounded) that the documents "bear conclusions" that were not "contemporaneously communicated to [him]." SAC ¶¶ 408, 415. These assertions are known by Cardwell to be false, proven false by Cardwell's own prior admissions and documents appended to his pleadings, and should be rejected.

Cardwell's current and prior filings establish that he was contemporaneously aware, in 2016, of Hudson's performance reviews, and therefore that they were contemporaneously created.

- **Cardwell admits to having received performance critiques in June 2016**. In Cardwell's EEOC Charge (SAC Ex. 1), Cardwell admits that "in May or June 2016, John Bick . . . called [him] to an impromptu mid-year review meeting and made **_critiques_** regarding [his] performance." SAC Ex. 1 at 5 ¶ 10. In the FAC, Cardwell likewise conceded that he was given performance "critiques" in June 2016 by Bick. FAC ¶¶ 101–08.

- **Cardwell concedes that the performance critiques came from "one partner."** In response to the Firm's NYSDHR Position Statement (SAC Ex. 3), Cardwell conceded that Bick's June 2016 performance review noted that Cardwell "'generally received positive reviews,' with the **_exception of one partner_**." SAC Ex. 3 at 6 (quoting brief attaching the review) (emphasis added).[16]

- **Cardwell understood that the "one partner" responsible for the "critiques" Bick delivered to him in 2016 was Hudson.** In his First Amended Complaint, Cardwell referred to his June 2016 review as "Mr. Bick **and Ms. Hudson's** 2016 sham performance review." FAC ¶ 249 (emphasis added); *see also* ¶ 173 n.24 (emphasis added). This was a phrase plaintiff chose purposefully; he did not include it in his original complaint. ECF 1 ¶¶ 87, 114. Plaintiff has now deleted the words "**and Ms.**

---

though Hudson's actual e-mail exchange with plaintiff completely refutes this allegation, *see* ECF 45-7, and the Court already found that "the content of the actual email exchange at issue . . . does not suggest any inference of discrimination." Ord. 45. Plaintiff's reinsertion of this discredited allegation is irrelevant to his remaining retaliation claims against Hudson; as the Court observed, plaintiff mustered that allegation in support of his discrimination claim against her, which he has now abandoned. *Id.*; SAC ¶¶ 601, 610, 626.

[16]   The first page of Cardwell's SAC quotes from this review and places it in time prior to Cardwell's "making protected complaints." SAC at 1.

> **Hudson's**" from his Second Amended Complaint, SAC ¶ 324.  Because this is a patent attempt to "change[] his statement of the facts in order to respond to [a] motion to dismiss," *Colliton*, 2008 WL 4386764, at *6, the Court should accept Cardwell's prior admission as true.

- **In addition, Cardwell's original complaint, ECF 1 at 34, placed Hudson's review "in 2016."**  ECF 1 at ¶ 105.  This concession "directly contradicts" the facts set forth in his amendment, and the Court is "authorized to accept the facts described in the original complaint as true." *Colliton*, 2008 WL 4386764, at *6.

- **Cardwell also concedes that the summary of Bick's review, which incorporated Hudson's June 2016 review, was "submitted to the Firm" on "June 30, 2016."** *E.g.*, SAC ¶¶ 130, 133.

These concessions alone render Cardwell's claim that Hudson "retroactively created" her June 2016 review implausible.  Plaintiff's claim that Hudson "retroactively created" her September 2016 review is equally implausible.  Plaintiff appears to have withdrawn the claim that Hudson's reviews "were not documented" in "Bick's June 2016 Summary Review, or Kreynin's December 2016 Summary Review," ECF 52-1 at 20; no such allegation appears in the SAC.  Indeed, Kreynin's December 2016 Summary Review, which plaintiff attaches to his SAC as Exhibit 19 and which is therefore properly considered on this motion, states expressly that it incorporates "comments received from . . . Hudson."  SAC Ex. 19 at 2, 3 (review submitted March 2017).  This alone establishes that Hudson's September 2016 review was created prior to Cardwell's August 2017 Charges; plaintiff supplies no plausible basis to conclude otherwise.

   Plaintiff's pleadings supply a complete and definitive basis upon which to dismiss all retaliation claims against Hudson predicated on the spurious claim that her reviews were "retroactively created."  But even if they did not, Hudson's reviews themselves, and the Bick summary review incorporating Hudson's June 2016 review, wholly rebut plaintiff's claims of backdating and are properly considered on this motion.  In particular:

- Hudson's June 2016 review shows on its face that it was created on June 20, 2016, Buergel Decl. Ex. 1; the review's metadata establishes that the review was created on June 20, 2016, and has not been altered since June 20, 2016, *id.* Ex. 4.

- Bick's June 2016 summary review, which incorporates Hudson's review, shows on its face that it was created on June 30, 2016, *id.* Ex. 2 (plaintiff concedes this at SAC ¶¶ 130, 133); the review's metadata establishes that the review was created on June 30, 2016, and has not been altered since June 30, 2016, *id.* Ex. 4.

- Hudson's September 2016 review shows on its face that it was created on September 27, 2016, *id.* Ex. 3; the review's metadata establishes that the review was created on September 27, 2016, and has not been altered since September 27, 2016, *id.* Ex. 4.

All three of these documents are incorporated by reference or "'integral'" to plaintiff's complaint; plaintiff "'relies heavily upon [their] terms and effect,'" *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted), and the complaint is thus "deemed to include" them. *Cortec Indus., Inc.* v. *Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).[17]

Fairness, efficacy, and efficiency justify consideration of the reviews here. The doctrine of incorporation by reference exists to prevent plaintiffs from gaining an unjust advantage by mischaracterizing documents upon which their pleadings rely. As a general matter, "[w]ere courts to refrain from considering such documents, complaints that quoted only selected and misleading portions of such documents could not be dismissed under Rule 12(b)(6) even though they would be doomed to failure." *Kramer* v. *Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *Matusovsky* v. *Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) (dismissing Title VII discrimination case after reviewing document "explicitly referred to" in the complaint, explaining that "[i]f a plaintiff's allegations are contradicted by [ ] a document [attached to or incorporated by reference into the complaint], those allegations are insufficient to defeat a motion to dismiss"). "Affording such documents their due consideration 'prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting.'" *Cohen* v. *Capital*

---

[17] *Accord Kennedy* v. *New York*, 167 F. Supp. 3d 451, 460 (W.D.N.Y. 2016) (quoting *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 356–57 (S.D.N.Y. 2003)) (dismissing Title VII discrimination case) (noting that the Court may also consider "documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint[.]")

*One Funding, LLC*, 2020 WL 5763766, at *8 (E.D.N.Y. Sept. 28, 2020) (citation omitted).

Considering the reviews is especially appropriate here. Plaintiff has attached to his SAC the consensus review forms he deems favorable to him (from 2015, 2017, and 2018), but has omitted Bick's 2016 consensus review form, which shows on its face that Hudson's reviews were incorporated into that review, and thus contemporaneously created. Buergel Decl. Ex. 2.[18] Plaintiff has also omitted Hudson's reviews themselves, which contain contemporaneous "creation dates" establishing that they were created in 2016. Buergel Decl. Exs. 1, 3. Finally, if a document is properly considered on a motion to dismiss, consideration of that document's metadata is not improper—particularly in the face of allegations of backdating—because the metadata is itself a necessary and integral component of the documents in the form in which they are "ordinarily maintained," *see* Fed. R. Civ. P. 34; *cf. Ceglia* v. *Zuckerberg*, 2013 WL 1208558 (W.D.N.Y. Mar. 26, 2013), *report and recommendation adopted*, 2014 WL 1224574 (W.D.N.Y. Mar. 25, 2014), *aff'd*, 600 F. App'x 34 (2d Cir. 2015) (considering metadata of a document in determining a motion to dismiss). The documents and their dates are properly considered on this motion. Hudson should be dismissed from the case with or without judicial consideration of the June and September 2016 reviews, lest she remain in the case as a function of "clever drafting" alone, *Cohen*, 2020 WL 5763766, at *8.[19]

---

[18] Bick's review form reads in full: *"Kaloma had asked for mid-year feedback on his work, and this review is in response to that request. Kaloma generally received positive reviews, with the notable exception of Sophia Hudson, who spoke directly to Kaloma about the need to raise the substantive quality of his work, pay more attention to detail, and focus on time management and task deadlines. Sophia reports that Kaloma took her review well, and my discussions with Kaloma today confirmed that.*
*I noted that while the other reviewers saw progress and liked working him, he should continue to focus on time management, understand the timeline for work tasks and projects, and make sure that he is available and can meet deadlines. I advised him to communicate clearly with senior lawyers on his matters to make sure he understands what is needed and expected from him. I did note that reviewing lawyers had seen improvement from him on these issues. Kaloma received this advice well from what I could tell."*

[19] In the event the Court requires consideration of the documents and deems them not integral, defendants respectfully request that their motion to dismiss the retaliation claim as to Hudson based on the claim that reviews were "retroactively created" be converted to a motion for summary judgment.

C.      **Plaintiff's Discrimination Claims Should Be Dismissed with Prejudice to the Extent Predicated on a Legal Theory Added in Violation of the Court's October Order and Without Leave to Replead**

The Court's October Order granted plaintiff leave to replead only "the dismissed claims." Ord. 79. Plaintiff ignored the Court's clear instruction and filed a Second Amended Complaint that goes far beyond what the Court allowed. In his new pleading, plaintiff has alleged, for the first time, that he was subjected not only to discrimination in the form of disparate treatment, but also that "Davis Polk's discriminatory performance review policies and system" had a "*disparate impact*" on him. SAC ¶ 1 (adding "disparate impact" allegation and changing reference to "disparate treatment" to "disparate *impact and* treatment") (emphasis added), ¶¶ 530–91. Disparate treatment and disparate impact are entirely different theories under which to bring discrimination claims under Title VII, the NYSHRL, and the NYCHRL.[20]  Plaintiff's First Amended Complaint did not allege disparate impact,[21] and his counts continue to reflect that he placed defendants on notice of allegations of intentional discrimination.[22]

Plaintiff's amendment, in violation of the October Order, and without leave of the Court, contravenes Federal Rule of Civil Procedure 15(a). Fed. R. Civ. P. 15(a)(2) (additional allegations can only be added "with the opposing party's written consent or the court's

---

[20]  A "disparate treatment" theory of discrimination requires a showing of "discriminatory intent or motive," whereas a "disparate impact" theory is premised on policies or practices that are "not intended to discriminate but in fact have a disproportionately adverse effect on minorities." *Ricci* v. *DeStefano*, 557 U.S. 557, 577 (2009). Under Title VII and the NYSHRL, to bring a discrimination claim under a disparate impact theory, a plaintiff must: (1) identify[] a specific employment practice or policy; (2) demonstrate[e] that a disparity [of impact] exists; and (3) establish[] a causal relationship between the two. *Legg* v. *Ulster Cty.* 2020 WL 6325850, at *3 (2d Cir. Oct. 29, 2020) (citation omitted). Under the NYCHRL, "a plaintiff must demonstrate that (1) 'a policy or practice of a covered entity or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of this chapter'; and (2) 'the covered entity fails to plead and prove as an affirmative defense that each such policy or practice bears a significant relationship to a significant business objective of the covered entity or does not contribute to the disparate impact." *Teasdale* v. *N.Y.C. Fire Dep't, FDNY*, 574 F. App'x 50, 51–52 (2d Cir. 2014) (quoting N.Y.C. Admin. Code § 8-107(17)(a)(1)–(2)).

[21]  In fact, the only time this term appeared in his FAC was in an explanatory parenthetical describing the subject of a Fair Housing Act amicus brief that plaintiff co-authored or contributed to. FAC ¶ 45.

[22]  *See* SAC ¶¶ 595 (Count 1 (Title VII): "Davis Polk intentionally discriminated against Mr. Cardwell"), 612 (Count 5 (NYSHRL): "discriminatory acts and practices were willful, wantonly negligent or reckless"), 626 (Count 9 (NYCHRL), bringing claims under N.Y.C. Admin. Code § 8-107(1)(a) but not § 8-107(17)(a), which governs disparate impact).

leave").  "District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted."  *Palm Beach Strategic Income, LP* v. *Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012).  To the extent plaintiff seeks to amend his complaint to add discrimination claims based on a disparate impact theory, these claims should be dismissed with prejudice.[23]  "[D]isregard of the Court's prior order provides a sound basis for dismissal of these overreaching amendments."  *Kuntz* v. *N.Y. State Bd. of Elections*, 924 F. Supp. 364, 367 (N.D.N.Y. 1996), *aff'd sub nom. Kuntz* v. *N.Y. State Senate*, 113 F.3d 326 (2d Cir. 1997).

## CONCLUSION

For the reasons set forth above, defendants respectfully request that the Court dismiss with prejudice (i) all claims against Butler, Chudd, and Hudson, and dismiss them from the case, (ii) all previously-dismissed claims, *see* Ord., against Birnbaum, Brass, and Wolfe, and (iii) the discrimination claims to the extent based upon an improperly repleaded claim of disparate impact.

---

[23]  Any purported disparate impact claim under Title VII should be dismissed for the separate and independent reason that plaintiff has failed to exhaust his administrative remedies.  If a claim was not asserted before the EEOC, it may be pursued in a subsequent federal court action only if it is reasonably related to those that were filed with the agency.  *Burgis* v. *N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 71 (2d Cir. 2015).  "[C]omplaints of individualized disparate treatment are not reasonably related to a Title VII disparate impact claim" for purposes of exhaustion. *Id*.  In any event, plaintiff does not plausibly allege a claim for disparate impact.  *See, e.g., Collette* v. *St. Luke's Roosevelt Hosp*., 132 F. Supp. 2d 256, 278 (S.D.N.Y. 2001) (holding that plaintiff failed to allege disparate impact and dismissing claim); *Brown* v. *Coach Stores, Inc.*, 163 F.3d 706, 712–13 (2d Cir. 1998) (affirming dismissal of Title VII disparate impact complaint because "allegations which contend only that there is a bottom line racial imbalance in the work force are insufficient" and plaintiff had "not adequately allege[d] a causal connection between any facially neutral policy [] and the resultant proportion of minority employees").  In fact, plaintiff has done little more than insert the term "disparate impact" into his SAC; such conclusory allegations are not sufficient.  *See, e.g., Gonzalez* v. *Allied Barton Sec. Servs*., 2010 WL 428058, at *4 (S.D.N.Y. Feb. 2, 2010) (finding allegation asserting an "adverse impact on minorities and female [] officers" to be "wholly conclusory").

Dated:       December 11, 2020
             New York, New York

                    Respectfully submitted,

                    Paul, Weiss, Rifkind, Wharton & Garrison LLP

                    By: */s/ Bruce Birenboim*
                         Bruce Birenboim
                         Jeh C. Johnson
                         Susanna Buergel
                         Marissa C.M. Doran

                    1285 Avenue of the Americas
                    New York, New York 10019-6064
                    Telephone: (212) 373-3000
                    bbirenboim@paulweiss.com
                    jjohnson@paulweiss.com
                    sbuergel@paulweiss.com
                    mdoran@paulweiss.com
                    *Attorneys for Defendants*

**Appendix A: Cardwell's Twelve Complaints**

| Complaints Held Not To Constitute Protected Activity (Op. 58–63) | | | | |
|---|---|---|---|---|
| # | Activity | FAC Alleged Knowledge By: | Prior Ruling: | New Relevant Allegations in SAC: |
| 1. | May 2015 "eye contact" email | Crane. ¶¶ 55–56. | Plaintiff failed to allege knowledge by any Additional Defendant (Ord. 64–66). | • *Now alleges knowledge by DPW partners and staff. ¶ 65.* <br> • *No new allegation as to protected activity.* |
| 4. | August 2016 email re. removal from deal team | Fenner. ¶¶ 143–45. | | • None. |
| 5. | September 2016 conversation re. credit group assignment | Clausen. ¶ 163. | | • *Now alleges that Clausen "understood that he just made a race-based discrimination complaint," ¶¶ 189–202; 296.* <br> • *Now alleges "Reid and the M&A partners discussed" this complaint during "October meetings and conversations." ¶ 210–12.* |
| 6. | December 2016 email re. prison issue | Dunne. ¶ 201. | | • *No new allegation as to knowledge by any Additional Defendant (see, e.g., SAC ¶¶ 257, 259, 260).* <br> • *Alleges triggered DPW's anti-retaliation policies. ¶¶ 253, 260.* |
| 7. | January 2017 email re. CAP program | Clausen, Butler, and Bick. ¶¶ 214–15. | | • None. |
| 8. | Dec. 2016–Mar. 2017 workload capacity forms | DPW "staff members," Birnbaum, Wolfe. ¶ 225 n.34 | | • None. |

| Complaints Held To Constitute Protected Activity (Op. 58–63) | | | | |
|---|---|---|---|---|
| # | Activity | FAC Alleged Knowledge By: | Prior Ruling: | New Relevant Allegations in SAC: |
| 2. | Sept. 2015 conversation at Diversity Cttee/BAG meeting | Partners on Cttee who attended meeting; Dir. Assoc. Dev't. ¶ 67. | No plausible allegation of awareness by any Additional Defendant (Ord. 64–66). | • *Now alleges that all DPW M&A partners, ¶ 80, and Hudson, ¶¶ 76–78, had knowledge.* |
| 3. | January 2016 dinner with Reid & associate | Reid and associate. ¶ 81. | | • None. |
| 9. | March 2017 meeting with Reid and Kreynin | Reid and Kreynin. ¶¶ 241–42. | | • *Now alleges that all DPW "M&A partners" had knowledge. ¶ 333.* |
| 10. | May 2017 email to Goldberg re. "became ill" | Goldberg and Crane. ¶¶ 266–70. | | • None. |
| 11. | August 2017 EEOC filing | N/A | Plausibly alleged all partners aware. (Ord. 66.) | • None. |
| 12. | Jan. 2018 review meeting w/Smith and Goldberg | Smith and Goldberg. ¶¶ 283, 290. | No plausible allegation of awareness by any Additional Defendant (Ord. 64–66). | • None. |