**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**KALOMA CARDWELL,**

                              Plaintiff,

**v.**

**DAVIS POLK & WARDWELL LLP, Thomas Reid,**          1:19-cv-10256-GHW
**John Bick, William Chudd, Sophia Hudson, Harold**
**Birnbaum, Daniel Brass, Brian Wolfe, and John H.**
**Butler,**

                              Defendants.


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' AND PAUL WEISS'S APPLICATION FOR FEES AND COSTS


Dated: January 27, 2021                David Jeffries, Esq.
                                       1345 Avenue of the Americas, 33rd Floor
                                       New York, New York 10105
                                       Tel: 212-601-2770
                                       djeffries@jeffrieslaw.nyc


                                       *Attorney for Plaintiff*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................1

LEGAL STANDARD..........................................................................................................4

ARGUMENT ....................................................................................................................5

I.      COST SHIFTING IS IMPROPER WHERE PLAINTIFF'S OBJECTIONS TO
DEFENDANTS' DISCOVERY DEMANDS WERE "SUBSTANTIALLY
JUSTIFIED" AND SUCH AN AWARD WOULD OTHERWISE BE UNJUST ..............5

      A.      The Circumstances of This Case Reveal That An Award of Attorneys'
Fees Against Plaintiff and Plaintiff's Counsel Would Be Unjust...........................5

              1.      Monetary Sanctions Against A Pro Bono Counsel Would Have A
Chilling Effect On Under-Resourced Plaintiffs' Ability To Pursue
Employment Law Claims Against Well-Resourced Corporate
Adversaries ................................................................................................6

              2.      Monetary Sanctions Against Mr. Cardwell Would Further
Impoverish Him, And Thus Any Award Of Attorneys' Fees Must
Account For Mr. Cardwell's Status As An Indigent Plaintiff ....................8

              3.      If Approved, Defendants' and Paul Weiss's Request for Fees Will
Produce and Reinforce Racial and Economic Inequality .........................10

              4.      Defendants' Motion To Compel Did Not Seek Attorneys' Fees
Against Plaintiff, And They Should Not Be Awarded Despite The
Court's Invitation .....................................................................................12

      B.      Plaintiff's Objections and Responses, and Positions Taken With Respect
to Defendants' Discovery Demands Were "Substantially Justified"....................12

II.     THE COURT SHOULD MAKE A 90% ACROSS-THE-BOARD CUT TO
THEIR REQUEST AS A PRACTICAL MEANS OF TRIMMING FAT FROM
THEIR FEE APPLICATION ...........................................................................................15

III.    IN THE ALTERNATIVE, PAUL WEISS'S "DISCOUNTED" HOURLY RATE
IS UNREASONABLY HIGH AND THEIR FOUR ATTORNEYS BILLED
MORE HOURS THAN NECESSARY TO ACHIEVE THE OUTCOME THEY
ENJOY .............................................................................................................................16

      A.      Paul Weiss's "Discounted" Hourly Rate Is Unreasonably High And
Should Be Reduced To Reflect A Reasonable Rate Of $250-$400 Per
Hour ....................................................................................................................16

i

B.    Defendants and Paul Weiss Failed to Provide Sufficient Detail to Justify
      Reimbursement For 120-Plus Hours, Billed By Four Attorneys ..........................19

CONCLUSION ....................................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

### <u>Cases</u>

*Aguilera v. Cookie Panache ex rel. Between the Bread, Ltd.*,
   2014 U.S. Dist. LEXIS 69716 (S.D.N.Y. May 20, 2014) ....................................................... 18

*Alton Johnson v. Vern Orr,*
   1985 WL 250 (S.D.N.Y. 1985) ......................................................................................... 7, 8

*Altergott v. Modern Collection Techniques*,
   864 F. Supp. 778 (N.D. Ill. 1994) ......................................................................................... 16

*Antonmarchi v. Consol. Edison Co. of New York, Inc.,*
   03 CIV. 7735 LTS KNF, 2012 WL 3126004 (S.D.N.Y. July 31, 2012) ................................. 15

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany,*
   493 F.3d 110 (2d Cir. 2007) ......................................................................................... 17

*Bowne of New York City, Inc. v. AmBase Corp.*,
   161 F.R.D. 258 (S.D.N.Y. 1995) ......................................................................................... 13

*Bravia Capital Partners, Inc. v. Fike*,
   09 CIV. 6375 JFK KNF, 2013 WL 1728059 (S.D.N.Y. Apr. 22, 2013) ................................. 16

*Brown v. Green 317 Madison LLC,*
   2014 U.S. Dist. LEXIS 40248 (E.D.N.Y. Feb. 4, 2014) ......................................................... 18

*Caldwell v. Ctr. for Correctional Health and Policy Studies, Inc.*,
   228 F.R.D. 40 (D.D.C.2005) ................................................................................................... 5

*Creative Res. Group of N.J., Inc. v. Creative Res. Group, Inc.*,
   212 F.R.D. 94 (E.D.N.Y. 2002) ......................................................................................... 19

*Cruz v. Local Union No. 3*,
   34 F.3d 1148 (2d Cir. 1994) ......................................................................................... 20

*Days Inn Worldwide, Inc. v. Amar Hotels, Inc.*,
   05 Civ. 10100(KMW)(KNF), 2008 WL 2485407 (S.D.N.Y. June 18, 2008) ........................ 15

*David v. Sullivan*,
   777 F. Supp. 212 (E.D.N.Y.1991) ......................................................................................... 20

*DiFilippo v. Morizio,*
   759 F.2d 231 (2d Cir. 1985) ......................................................................................... 21

*Ferrara v. Pomarc Indus.*,
    2013 U.S. Dist. LEXIS 109730 (E.D.N.Y. Mar. 22, 2013) ................................... 18

*Gesualdi v. Ava Shypula Testing & Inspection, Inc.*,
    2014 U.S. Dist. LEXIS 50752 (E.D.N.Y. Feb. 28, 2014) ....................................... 18

*Gordon v. Kaleida Health*,
    No. 08-CV-00378SF, 2012 WL 2953116 (W.D.N.Y. July 19, 2012) .................................... 12

*Gradisher v. Check Enforcement Unit*,
    No. 1:00-DV-401, 2003 WL 187416 (W.D. Mich. 2003) ....................................... 21

*Gurung v. Malhotra*,
    851 F. Supp. 2d 583 (S.D.N.Y. 2012) ....................................... 18

*In re Agent Orange Product Liab. Litig.*
    818 F.2d 226 ....................................... 15

*Jeffreys v. P.O. Rossi*,
    275 F. Supp. 2d 463 (S.D.N.Y. 2003) ....................................... 7

*Kahn v. GMC*,
    No. 88 Civ. 2982, 1993 U.S. Dist. LEXIS 5196 (S.D.N.Y. Apr. 19, 1993) ......................... 16

*LaBarbera v. J.E.T. Res., Inc.*,
    396 F.Supp.2d 346 (E.D.N.Y.2005) ....................................... 15

*Lema v. Mugs Ale House Bar*,
    2014 U.S. Dist. LEXIS 41286 (E.D.N.Y. Feb. 28, 2014) ....................................... 18

*Lewis v. Coughlin*,
    801 F.2d 570 (2d Cir. 1986) ....................................... 20

*Lopa v. Fireman's Fund Ins. Co.*,
    2014 U.S. Dist. LEXIS 68794 (E.D.N.Y. Apr. 30, 2014) ....................................... 18

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
    676 F.3d 83 (2d Cir. 2012) ....................................... 19

*Lunday v. City of Albany*,
    42 F.3d 131 (2d Cir.1994) ....................................... 20

*New York State Ass'n for Retarded Children, Inc. v. Carey*,
    711 F.2d 1136 (2d Cir. 1983) ....................................... 19

*Nowlin v. Lusk*,
    No. 11CV712S, 2014 U.S. Dist. LEXIS 147450 (W.D.N.Y. Oct. 16, 2014) ..................... 16

*Pierce v. Underwood*,
  487 U.S. 552 (1988) ........................................................................ 14

*Quaratino v. Tiffany & Co.*,
  166 F.3d 422 (2d Cir. 1999) ............................................................ 20

*Romeo & Juliette Laser Hair Removal, Inc. v. Assara I, LLC*,
  08 CIV. 442 TPG FM, 2013 WL 3322249 (S.D.N.Y. July 2, 2013) ............ 16

*Scantibodies Lab., Inc. v. Church & Dwight Co.*,
  No. 14CV2275 (JGK) (DF), 2016 WL 11271874 (S.D.N.Y. Nov. 4, 2016) ......... 12

*Shangold v. Walt Disney Co.*, No. 03 Civ. 9522(WHP),
  2006 WL 2884925 (S.D.N.Y. Oct. 11, 2006) ................................... 8

*Sheehy v. Wehlage*, No. 02CV592A,
  2007 U.S. Dist. LEXIS 11722 (W.D.N.Y. Feb. 20, 2007) ................. 4, 17

*Shnyra v. State St. Bank & Tr. Co.*, No. 19-CV-2420,
  2020 WL 6892078 (S.D.N.Y. Nov. 24, 2020) ................................. 11

*Simmons v. N. Y. City Transit Auth.*,
  575 F.3d 170 (2d Cir. 2009) .......................................................... 4,17

*Toliver v. County of Sullivan*
  957 F.2d 47 (2d Cir. 1992) ............................................................ 8

*Turner v. Vt. Ctr. for the Deaf & Hard of Hr'g, Inc.*,
  2003 WL 27380992 (D. Vt. Oct. 1, 2003) ..................................... 14

*Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*,
  276 F.R.D. 105 (S.D.N.Y. 2011) ............................................... 21, 22

*United States Football League v. National Football League*,
  887 F.2d 408 (2d Cir. 1989) ......................................................... 15

*Yuquilema v. Manhattan's Hero Corp.*,
  2014 U.S. Dist. LEXIS 120422 (S.D.N.Y. Aug. 26, 2014) ................. 18

## Rules

Fed. R. Civ. P. 11............................................................................7
Fed. R. Civ. P. 37..........................................................................passim
Rule 37(a)(4) ..................................................................................13
Fed. R. Civ. P. 37(a)(4)(A) .................................................................5
Rule 37(b)....................................................................................15, 21

Plaintiff Kaloma Cardwell ("Plaintiff" or "Cardwell") respectfully submits this memorandum of law in opposition to Defendants' and Paul Weiss's Application for Fees and Costs (ECF 131) (the "Motion"), as filed by Davis Polk & Wardwell LLP ("Davis Polk" or the "Firm") and named defendants Thomas Reid, John Bick, William Chudd, Sophia Hudson, Harold Birnbaum, Daniel Brass, Brian Wolfe, and John H. Butler (the "Named Defendants," and, together with Davis Polk, "Defendants").

## PRELIMINARY STATEMENT

Kaloma Cardwell is a Black former employee of Davis Polk who has plausibly alleged retaliation against at least three current Davis Polk partners. *See* Motion to Dismiss Opinion, ECF 78. Specifically, Mr. Cardwell has plausibly alleged that "he would not have been terminated if he had not filed" complaints with the EEOC and New York State Division of Human Rights. *Id.* at 70. The issue presently before the Court is whether Defendants and their counsel, Paul Weiss, are entitled to an award of $99,565.20 in attorneys' fees after the Court granted in large part a motion to compel filed against Plaintiff for reasonable discovery-related disputes.

Although Defendants have repeatedly sought monetary sanctions against Plaintiff throughout this Action, they did not do so here; instead, the Court encouraged Defendants and Paul Weiss to submit a fee application, to which they obliged.[1] As set forth in their accompanying Declaration of Susanna Buergel, Defendants and Paul Weiss seek to be collectively reimbursed by Plaintiff and Plaintiff's counsel for approximately 120 hours of attorney time billed at (i) a partner rate of $1,485/hour, (ii) a senior associate rate of $958/hour, and (iii) a junior associate rate of $598.50/hour, for a total award of almost $100,000. These billing rates are among the highest in the world and typically only paid by the wealthiest companies and individuals.

---

[1] Specifically, Defendants' and Paul Weiss's request comes on the heels of the Court "directing" Defendants to make an application for fees in connection with the motion to compel that was granted.  Hrg. Tr. at 42:9-11.

For the reasons stated herein, shifting these fees to Plaintiff and Plaintiff's counsel would be improper and unjust. At the risk of echoing prior filings, the wealth, power, and resource asymmetries are so great in this case that there is virtually no scenario in which Defendants or Paul Weiss could be "discouraged" by monetary sanctions alone—while Plaintiff and Plaintiff's counsel (two Black lawyers of limited means) would almost certainly be crippled by them.

These realities should not be divorced from the Court's consideration of their application. Indeed, Defendants' and Paul Weiss's request comes at a time when scholars at The Arthur Liman Center for Public Interest Law at Yale Law School, the Fines their & Fees Justice System, and the Policy Advocacy Clinic at Berkeley Law School are documenting how "money has a long history of being used as punishment, and punishment has a long history of being used . . . against communities of color."[2] Intended or not, their request for nearly $100,000 effectively asks this Court to trap a pro bono attorney and Mr. Cardwell with debt that is roughly equivalent to the student loans that Mr. Cardwell undertook to become the first attorney in his family.[3]

Intended or not, the practical and harmful effect of what Defendants and Paul Weiss seek cannot be overstated: their request, if granted, will (i) profoundly and unnecessarily exacerbate racial and economic inequality among the families and communities that Plaintiff and his counsel are a part of (and serve)[4] and (ii) deter employees and pro bono counsel from pursuing plausible employment-related claims against corporate employers in federal court. At a fundamental level, the cost of litigating claims in federal court (and losing a reasonable discovery dispute) cannot and

---

[2] Yale Law School's Arthur Liman Center for Public Interest Law, "Money and Punishment, Circa 2020" (2020), https://digitalcommons.law.yale.edu/amlaw/27.
[3] Indeed, very few people, let alone lawyers, ever pay off such debt within their lifetimes. This is especially true for people like Plaintiff and Plaintiff's counsel, both of whom are parents to young children.
[4] Plaintiff's counsel's primary practice is criminal defense. Plaintiff's counsel primarily serves and defends individuals who are Black, Latino, and Asian.

should not be tied to the billing structure—or expertise—of the largest and second largest employers in a given industry.

Doing so in the context of workplace retaliation cases creates perverse outcomes, especially in cases like this one where Davis Polk's decision to terminate Mr. Cardwell's employment in response to his EEOC Complaint is ***directly responsible*** for Mr. Cardwell being financially unstable, unable to afford rent, impaired in his ability to financially care for his family, without any savings, and buried in mounting debt (none of which existed prior to his unlawful termination).

Thus, Plaintiff objects to Defendants' and Paul Weiss's fee request on the following grounds:

*First*, granting their request would be unjust, particularly where:

- Monetary sanctions on Plaintiff's pro bono counsel would have a chilling effect on the ability of under-resourced plaintiffs to pursue employment law claims against well-resourced corporate adversaries,

- Monetary sanctions on Mr. Cardwell would have long lasting consequences for him and his family given the reversal in his financial standing as a direct result of Defendants' actions, and

- Monetary sanctions on Plaintiff and Plaintiff's counsel will produce and reinforce racial and economic inequality in Black and marginalized communities.

*Second*, Defendants did not seek such fees, a factor that this Court should consider in its discretion as a basis to forego awarding attorneys' fees entirely (*see* Section I.A.4).

*Third*, cost-shifting is inappropriate where the discovery positions asserted in Plaintiff's Opposition to Defendants' Motion to Compel and during the discovery meet and confer process were "substantially justified," and advanced in good faith (*see* Section I.B);

*Fourth*, if the Court insists on imposing fees despite the associated and predictable hardships, an across-the-board reduction of 90% (to total an award of roughly $10,000) is more than sufficient to ensure that an indigent party and his pro bono counsel are focused on doing their best to meet their discovery obligations to the Court's (*see* Section II).

*Fifth*, in the alternative to an across-the-board percentage cut, and again, should the Court insist on awarding fees, Paul Weiss's exorbitant hourly rate is not reasonable for the tasks performed in this employment action (*see* Section III.A) and the hours spent to obtain the outcome they enjoy were excessive for a motion to compel (*see* Section III.B), and thus should be reduced.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 37(a)(4)(A), if a motion to compel is granted, the party whose conduct necessitated the motion shall be required to pay the reasonable expenses incurred in bringing the motion, including attorneys' fees, unless: (i) the motion was filed without the moving party first making a good faith effort to secure the discovery; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust.

When such factors are not present, the Second Circuit has held that courts are to award counsel the "presumptively reasonable fee," which is determined by multiplying the reasonable hourly rate by the number of reasonably expended hours (i.e., the so-called lodestar calculation). *Simmons v. N. Y. City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009). Under Rule 37, if a court awards expenses and fees, that court must decide what is proper. *See Sheehy v. Wehlage*, No. 02CV592A, 2007 U.S. Dist. LEXIS 11722, at *12-13 (W.D.N.Y. Feb. 20, 2007).

4

**ARGUMENT**

I.   **COST SHIFTING IS IMPROPER WHERE PLAINTIFF'S OBJECTIONS TO DEFENDANTS' DISCOVERY DEMANDS WERE "SUBSTANTIALLY JUSTIFIED" AND SUCH AN AWARD WOULD OTHERWISE BE UNJUST**

During the February 13, 2021 teleconference, after ruling on Defendants' Motion to Compel, this Court instructed the parties that "the rule requires that [the Court] must impose such fees ***absent certain circumstances in connection with such a motion to compel***." Hrg. Tr. at 43:6-8 (emphasis added). As detailed herein, there are ample "circumstances" that counsel against the imposition of fees against Plaintiff and Plaintiff's counsel, namely that Plaintiff's "nondisclosure, response, or objection was substantially justified" and "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(4)(A). These two arguments are addressed in turn.

A.   **The Circumstances of This Case Reveal That An Award of Attorneys' Fees Against Plaintiff and Plaintiff's Counsel Would Be Unjust**

At the threshold, it would be unjust for this Court to impose a hefty $100,000 sanction for technical and "fundamental" discovery violations. While "[d]istrict courts are entrusted with broad discretion regarding whether to impose sanctions under Rule 37, and the nature of the sanctions to be imposed," including for the reasons the Court stated on the record,[5] "the court's discretion is not without limits." *Caldwell v. Ctr. for Correctional Health and Policy Studies, Inc.*, 228 F.R.D. 40, 42 (D.D.C.2005) (omitting citations). "[A]ny sanctions awarded must be proportional to the underlying offense." *Id.* Defendants' and Paul Weiss's application violates this sacrosanct principle.

When Plaintiff's discovery violations are read in the context of the Court's ruling on Defendants' Motion to Compel (i.e., that such violations are seemingly clear on the face of the

---

[5] For instance, the Court remarked that "Rule 37 is designed in part to discourage unnecessary motion practice by charging a losing party with the cost of litigating the dispute." Hrg. Tr. at 42:14-16.

rules), a request for $100,000 in attorneys' fees is disproportionate to the underlying offense.  *See* Hrg. Tr. at 42:19-2 ("[T]his dispute is resolved by reference to the rules themselves and the advisory committee notes. It was really not a necessary motion.").

It would likewise be "unjust" to sanction Plaintiff and Plaintiff's counsel, including for the amount sought, particularly where: (i) Plaintiff's counsel is representing Mr. Cardwell *pro bono*;[6] (ii) Mr. Cardwell has plausibly alleged that he was unlawfully terminated from his full-time position at Davis Polk by the same defendants who are parties to this Action, thus destroying his sole source of income and necessitating his need to obtain *pro bono* counsel to pursue his claims; (iii) approving Defendants' and Paul Weiss's request would further entrench punishment mechanisms that reflect, produce, and reinforce racial inequality and subordination among members of vulnerable communities; and (iv) neither Defendants nor Paul Weiss sought a sanction of fees until urged by the Court to do so.  Awarding fees against this crucial backdrop would be unjust and undermine basic considerations rooted in access to justice.

> 1.   *Monetary Sanctions Against A Pro Bono Counsel Would Have A Chilling Effect On Under-Resourced Plaintiffs' Ability To Pursue Employment Law Claims Against Well-Resourced Corporate Adversaries*

It would be unjust to impose monetary sanctions against an attorney working pro bono for the types of discovery violations that the Court found were committed (especially where bad faith did not motivate the conduct of Plaintiff or Plaintiff's counsel).   At worst, a difference of interpretation of the Federal Rules, Advisory Notes, and caselaw are responsible for the parties' respective positions, and the discovery "violations" that the Court has identified.

---

[6] Plaintiff's fee arrangement with his counsel is on a pro bono basis. Plaintiff's counsel is not working on a contingency fee, has never sent Plaintiff an invoice or otherwise requested payment for legal services, and has never received payment from Plaintiff for any legal services rendered. *See* Jeffries and Cardwell Declarations (explaining same).

In any event, despite working on this case since November 2018, Plaintiff's counsel (i) has never sent Plaintiff an invoice or otherwise requested payment for any legal services or costs and (ii) has never received payment from Plaintiff for any services rendered. *See* Jeffries and Cardwell Declarations. This fee arrangement and the fact that Plaintiff only has a single attorney are not random features of this case.[7]

As both Plaintiff and Plaintiff's counsel have experienced first-hand, attorneys are simply unwilling to pursue sensitive discrimination and retaliation claims against any defendant (let along these particular Defendants) under circumstances where (i) they would be representing a plaintiff largely unable to afford to retain their services, (ii) a formal or informal contingency fee arrangement cannot be guaranteed or was not agreed upon, and (iii) a plaintiff seeks to sue defendants with enough power, wealth, and professional connections to impact the would-be attorney's potential referral sources and professional opportunities.[8] A ruling that places exorbitant financial burdens on a pro bono attorney willing to undertake such extraordinary but well-founded risks would only exacerbate these unfortunate realities. *Cf. Jeffreys v. P.O. Rossi*, 275 F. Supp. 2d 463, 482 n.35 (S.D.N.Y. 2003) (acknowledging the chilling effect of imposing sanctions against pro bono attorneys).

The court's decision in *Alton Johnson v. Vern Orr*, albeit in the context of a Rule 11 motion, is instructive.  There, the *Alton* court declined to impose sanctions against pro bono counsel for this very reason, acknowledging that while pro bono attorneys are "not immune from the sanction of attorney's fees . . . counsel is receiving no fee for his services" and thus "imposing attorney's

---

[7] As Plaintiff has consistently maintained, this case presents a David against Goliath scenario, as Davis Polk is the second-largest law firm in New York and has virtually unparalleled resources and power.

[8] This fundamental reality is not hyperbole; lawyers hesitate to bring claims against corporate defendants for reasons that have nothing to do with the claims themselves and everything to do with the actual or perceived power, wealth, and influence of their would-be adversary.

fees would be inappropriate" and counsel "should not be required to reach into his own pocket because of a slight excess of zeal in representing his *pro bono* client." 1985 WL 250, at *2 (S.D.N.Y. 1985) (emphasis in original).

Likewise, for the failures that this Court described during the January 2021 teleconference, it would be unjust to punish pro bono counsel for such shortcomings, even more so where (i) Plaintiff's pre-conference letter (and exhibits thereto) advanced the very same positions that were advanced after the Court granted Defendants' request to file a motion to compel against Plaintiff, and (ii) Plaintiff's counsel used his best efforts to interpret applicable rules and caselaw and did not advance the positions taken in bad faith, and thus such conduct was substantially justified (including, for reasons described in Section II.B).

> 2. *Monetary Sanctions Against Mr. Cardwell Would Further Impoverish Him, And Thus Any Award Of Attorneys' Fees Must Account For Mr. Cardwell's Status As An Indigent Plaintiff*

The Court remarked that "[t]he last discovery deficiency yielded a very constrained request by counsel for Defendants, which was very generous." Hrg. Tr. at 42:12-13. While true that Defendants previously exercised such a "constrained" request, it is also true that (i) Mr. Cardwell only became unemployed (and was forced to pursue this litigation) because Davis Polk terminated his employment and (ii) Mr. Cardwell has plausibly alleged such termination was unlawful.

It is black-letter law in this Circuit that fee awards "may be adjusted downward based on the relative financial strength of the parties." *Barclays*, 2010 WL 2640095. "[F]ee awards are at bottom an equitable matter, and courts should not hesitate to take the relative wealth of the parties into account." *Toliver v. County of Sullivan*, 957 F.2d 47, 49 (2d Cir. 1992). *Shangold v. Walt Disney Co.*, No. 03 Civ. 9522(WHP), 2006 WL 2884925, at *1 (S.D.N.Y. Oct. 11, 2006) (reducing fee award due to parties' financial condition), aff'd, 75 F. App'x 72 (2d Cir. 2008).

To put a fine point on this, Mr. Cardwell went from being financially secure and making significant financial philanthropic contributions to Black and marginalized communities and organizations, to having virtually no financial resources as a result of Defendants' decision to terminate his employment.  *See* Affidavit of Kaloma Cardwell.  As a result of such actions—which eliminated his sole source of income—Mr. Cardwell has no income and no means to pay for his representation in this Action.   Likewise, Mr. Cardwell cannot afford the cost of monetary sanctions.  *See* Cardwell Declaration (explaining same).

To financially punish Mr. Cardwell, in the amount that Defendants and Paul Weiss seek, would not only be unjust, it would serve no meaningful deterrent purpose where: (i) as explained further in Section II.B, the litigation positions that precipitated the instant dispute were maintained in good faith and "substantially justified," and (ii) any reasonable "ability to pay"[9] assessment of Mr. Cardwell's financial and personal circumstances would show that he cannot meet his and his family's basic needs while paying Defendants or Paul Weiss thousands of dollars. *See* Cardwell Declaration.  Living below the "poverty line" should demonstrate that there is no incentive for Mr. Cardwell to intentionally engage in "unnecessary motion practice."[10] *See* Cardwell Declaration.

---

[9] "'Ability to pay' refers to the overall capability of a person to pay the court ordered fines, fees, and other monetary sanctions without economic hardship. At a minimum, a definition of economic hardship should consider an individual's ability to pay the court-ordered fines and fees without having to forgo basic living necessities such as food, shelter, clothing, medical expenses, or child support." Fines & Fees Justice Center, "First Steps Toward More Equitable Fines and Fees Practices: Policy Guidance on Ability to Pay Assessments, Payment Plans, and Community Service" (2020), https://finesandfeesjusticecenter.org/content/uploads/2020/11/FFJC_Policy_Guidance_Ability_to_Pay_Payment_Plan_Community_Service_Final_2.pdf.

[10] As a practical matter, the incentives fueling Rule 37's ability to "discourage unnecessary motion practice by charging a losing party with the cost of litigating the dispute," have been in effect at all relevant stages during this case. Mr. Cardwell's indigent status and his counsel's pro bono status inherently "discourag[es] unnecessary motion practice…." Mr. Cardwell and his counsel have never rushed to the Court or otherwise sought judicial guidance without taking into account the need to conserve and allocate their limited resources and time.

3.    *If Approved, Defendants' and Paul Weiss's Request for Fees Will Produce and Reinforce Racial and Economic Inequality*

If approved, Defendants' and Paul Weiss's request will produce and reinforce racial and economic inequality, and harm Plaintiff and Plaintiff's families and communities. Although typically discussed in a criminal law context, professors and law students at Yale Law School, Harvard Law School, and Berkeley Law School are currently fighting against monetary sanctions materially similar to the type that Defendants and Paul Weiss seek. Given the nature of this Action, along with the financial standing of Plaintiff and Plaintiff's counsel, this Court's discretion on fairness and justice principles is warranted.

As some of the nation's leading law schools note: "In jurisdictions throughout the United States, monetary payments for infractions, misdemeanors, or felonies typically do not consider a [party]'s ability to pay, and instead are determined based on offense type, either statutorily or through judicial discretion."[11] "Commitments to 'access to justice'" become soundbites in the face of "economic barriers" that result from "[f]ees, costs, fines, money bail, and other financial assessments—levied by courts, jails, and prisons…."[12]

Undoubtedly, "[c]ounterproductive fines and fees policies and practices have devastated the lives of millions of people in the U.S., trapping them in a cycle of poverty and punishment."[13] These cycles of poverty and punishment are created by the type of fixed payments inherent in Defendants' and Paul Weiss's application to the Court. "Fixed payments for a given offense

---

[11] Yale Law School's Arthur Liman Center for Public Interest Law, Harvard Law School's Criminal Justice Policy Program, Fines & Fees Justice Center, UC Berkeley School of Law's Policy Advocacy Clinic, "Fees, Fines, and the Funding of Public Services A Curriculum for Reform" (2020), https://law.yale.edu/sites/default/files/area/center/liman/document/fees_fines_and_the_funding_f_public_services.pdf.
[12] Judith Resnik and David Marcus, "Inability to Pay: Court Debt" (2020), https://law.yale.edu/sites/default/files/area/center/liman/document/inability_to_pay_court_debt_circa_2020.pdf.
[13] Fines & Fees Justice Center, https://finesandfeesjusticecenter.org/2020/11/17/new-ffjc-publication-policy-guidance-on-ability-to-pay-assessments-payment-plans-and-community-service/

create . . . penalties [that are] more punitive for poorer individuals than for wealthier individuals. The disproportionate impact of these fixed payments on the poor raises concerns not only about fairness, but also because high monetary sanctions can lead to high levels of debt" and other consequences.[14]

If granted, Mr. Cardwell believes that Defendants and Paul Weiss's fee request would likely trap him in a cycle of financial instability and insecurity. *See* Cardwell Declaration. If granted, Defendants' and Paul Weiss's request would lead to Mr. Cardwell and his counsel being punished more harshly than wealthier individuals, and would saddle them with debt that would likely take years—if not decades—to pay off. If granted, Defendants' and Paul Weiss's request would impair Mr. Cardwell and his counsel's ability to meet various employment, housing, and family obligations for an indeterminate period of time (assuming they ever regain such an ability). *See* Jeffries and Cardwell Declarations.

Ultimately, however, if the Court elects to exercise—consistent with Your Honor's ruling in *Shnyra v. State St. Bank & Tr. Co.*, No. 19-CV-2420, 2020 WL 6892078, at *10, 12 (S.D.N.Y. Nov. 24, 2020) (Woods, J.) (cited in Defendants' Request for Fees and Costs at 3 n.1)— its "wide discretion to apportion Rule 37 monetary sanctions between a party and its counsel," and holds that both parties are "jointly and severally liable" for the attorneys' fees awarded by the Court, *id.*, Mr. Cardwell may have little choice but to attempt to publicly fundraise in order to satisfy such obligation. *See* Cardwell Declaration. Simply stated, Mr. Cardwell is unable to afford any reasonable amount of attorneys' fees with respect to his own counsel, let alone the roughly $100,000 that Defendants and Paul Weiss seek.  *See* Cardwell Declaration (explaining same).

---

[14] *Id.*

Regarding the request before the Court, the Court should not grant any application that will predictably and possibly permanently destabilize Mr. Cardwell and his counsel's lives, financial security, and roles within their respective families and communities.

> 4.   *Defendants' Motion To Compel Did Not Seek Attorneys' Fees Against Plaintiff, And They Should Not Be Awarded Despite The Court's Invitation*

It is beyond dispute that Defendants' Motion to Compel did not seek a monetary sanction against Plaintiff or Plaintiff's counsel.  ECF 102, 112.  Despite this, the Court encouraged Defendants and Paul Weiss to petition for attorneys' fees after granting in large part their Motion to Compel (which they did, and to which this Opposition responds).

In light of such invitation, the court's guidance in *Gordon v. Kaleida Health*, No. 08-CV-00378SF is highly instructive. 2012 WL 2953116, at *10 (W.D.N.Y. July 19, 2012).  There, the *Gordon* court granted in part and denied in part a motion to compel.  In so doing, the court noted that "[a]lthough the court is required to award attorney's fees upon granting a motion to compel," the defendants in that case "did not request an award of attorney's fees," and thus "the court, in its discretion, d[id] not award them."  *Id.*  Because Defendants' Motion to Compel did not seek attorneys' fees from Plaintiff or Plaintiff's counsel, and only made an application for fees upon the Court's insistence, the Court should follow in *Gordon* and exercise its discretion to forego fees while forcing compliance with Your Honor's January 13, 2021 order.

**B.    Plaintiff's Objections and Responses, and Positions Taken With Respect to Defendants' Discovery Demands Were "Substantially Justified"**

Courts have held that "'[s]ubstantial justification' exists where parties could differ as to whether the party was required to comply with the disclosure request, or if there exists a genuine dispute concerning compliance." *Scantibodies Lab., Inc. v. Church & Dwight Co.*, No. 14CV2275 (JGK) (DF), 2016 WL 11271874, at *18 (S.D.N.Y. Nov. 4, 2016), *report and recommendation adopted*, No. 14-CV-2275 (JGK), 2017 WL 605303 (S.D.N.Y. Feb. 15, 2017) (citations omitted).

In *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 258 (S.D.N.Y. 1995), Judge Carter addressed the meaning of "substantial justification" under Rule 37(a)(4). Despite recognizing the general principle that the compelled party pays under Rule 37, he noted that "courts may not award costs where the losing party's opposition . . . was based on the existence of a genuine dispute because 'in such cases, the losing party is substantially justified in carrying the matter to the court.'" 161 F.R.D. at 265 (quoting Rule 37(a)(4) Advisory Comm. Notes to 1970 Amendment). Thus, "when a dispute involved ***different interpretations of the governing law***, opposition is substantially justified unless it involves an unreasonable, frivolous, or completely unsupportable reading of the law." *Id.* (collecting cases) (emphasis added). Indeed, the determination of whether there is substantial justification for Plaintiff's conduct is decided objectively, with leniency recognized "given the fact that attorneys must advocate for their clients." *Id.* at 262, 265.  That is precisely what Plaintiff's counsel has done here.

Plaintiff's arguments and objections, attached as exhibits to Plaintiff's Opposition to Defendants' Motion to Compel (ECF 110), set out in detail arguments in response to Defendants' Motion to Compel, and specifically, Plaintiff's basis for objecting to various aspects of their underlying motion. Those papers demonstrate the good-faith basis for Plaintiff's assertions of the objections that were maintained, the responses that were provided, and the burden associated with requesting an indigent Plaintiff to reproduce his entire document production (without undertaking significant cost despite repeatedly recognized financial hardships)—all of which demonstrate that Plaintiff's objections and litigation positions were "substantially justified."  Fed. R. Civ. P. 37.

Even yet, perhaps the most significant factor demonstrating the good-faith basis for Plaintiff's objections is the fact that Defendants served virtually identical objections that the Court has now characterized as "boilerplate," "intentionally evasive," and "unintentionally surpassingly

imprecise." Hrg. Tr. at 23:2-3; *id.* at 22:16. *See* Selected Excerpts, Rog Nos. 4, 10, 11, 19, 20, 21, among others, of Davis Polk's Responses and Objections to Plaintiff's First Set of Interrogatories (attached as Exhibit A); Selected Excerpts, RFP Nos. 55, 191-194 of Defendants' Responses and Objections to Plaintiff's First Set of RFPs (attached as Exhibit B).   Many of these responses are clear on their face that Plaintiff's counsel made responses and objections similar to those asserted by half a dozen Paul Weiss attorneys, a fact that does not support a conclusion that Plaintiff's counsel intentionally ignored the plain reading of straightforward civil procedure rules.

Although Plaintiff's good faith and diligent conduct does not require "leniency," the substantial justification "standard is a lenient one," *Turner v. Vt. Ctr. for the Deaf & Hard of Hr'g, Inc.*, 2003 WL 27380992, at *5 (D. Vt. Oct. 1, 2003), requiring only that a position be "justified to a degree that could satisfy a reasonable person," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).[15]   Because Paul Weiss and Defendants were "satisf[ied]" with their substantially similar objections, and discovery responses—some of which they have now agreed to revise in light of the Court's instructions to the parties—Plaintiff was reasonably justified in asserting the challenged objections.   Again, Defendants' similarly worded discovery responses reveal that they, too, considered such positions defensible (even if the Court ultimately disagrees, including for the reasons Your Honor stated on the record during the January 2021 hearing).

---

[15] Thus, "a party's refusal to produce documents on the basis that they are irrelevant can provide substantial justification," even if the Court is ultimately unpersuaded by the basis for refusing disclosure. *Klein v. Torrey Point Group, LLC*, 979 F. Supp. 2d 417, 442 (S.D.N.Y. 2013).

## II.   THE COURT SHOULD MAKE A 90% ACROSS-THE-BOARD CUT TO THEIR REQUEST AS A PRACTICAL MEANS OF TRIMMING FAT FROM THEIR FEE APPLICATION

Defendants and Paul Weiss seek to be reimbursed at a staggering rate of $1,485/hour for two partners, $958.50 for a senior associate's time, $598.50/hour for a junior associate's time, and $326.70/hour for a paralegal's time.  For the Court's convenience, these amounts are as follows:

| Timekeeper | Hours | Cost | "Discounted" Hourly Rate |
|---|---|---|---|
| Partner | 3.9 | $5,791.50 | $1,485 |
| Partner | 14.4 | $21,384.00 | $1,485 |
| Senior Associate | 30.6 | $29,330.10 | $958.50 |
| Junior Associate | 71.4 | $42,732.90 | $598.50 |
| Paralegal | 1.1 | $326.70 | $297 |
| **Total** | **121.4** | **$99,565.20** | **$964.80/Hour Average** |

This Court has repeatedly held that fee applications in connection with Rule 37(b) motions to compel were excessive.  For instance, the court in *In re Agent Orange Product Liab. Litig.* acknowledged that "the district court has the authority to make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application."  818 F.2d 226, 237; *accord United States Football League v. National Football League*, 887 F.2d 408, 415 (2d Cir. 1989); *Days Inn Worldwide, Inc. v. Amar Hotels, Inc.*, 05 Civ. 10100(KMW)(KNF), 2008 WL 2485407 at *10 (S.D.N.Y. June 18, 2008) (reducing fees by 75% from $20,057.54 to $5,014.38, including because the case involved a settled area of law); *LaBarbera v. J.E.T. Res., Inc.*, 396 F.Supp.2d 346, 352 (E.D.N.Y.2005) (hours reduced by fifty percent).

Such is appropriate especially where "the facts relevant to the motion did not require any significant investigation . . . and the application of facts to law was straightforward." *Antonmarchi v. Consol. Edison Co. of New York, Inc.*, 03 CIV. 7735 LTS KNF, 2012 WL 3126004 (S.D.N.Y. July 31, 2012) (excluding as excessive 80% of the hours requested because despite filing a "limited and straightforward motion, three attorneys with considerable experience and expertise" billed an

excessive number of hours); *Bravia Capital Partners, Inc. v. Fike*, 09 CIV. 6375 JFK KNF, 2013 WL 1728059 (S.D.N.Y. Apr. 22, 2013) (reducing by 40% the "fat" from a fee application); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I, LLC*, 08 CIV. 442 TPG FM, 2013 WL 3322249 (S.D.N.Y. July 2, 2013) (applying a 75% reduction in fees).

Here, it would be unjust for Plaintiff to be forced to carry the financial burden of Paul Weiss's decision to expend 120 hours across four attorneys in aggressive pursuit of a "fundamental" litigation dispute. *Cf. Altergott v. Modern Collection Techniques*, 864 F. Supp. 778, 783 (N.D. Ill. 1994) (reducing lodestar by 50% where counsel failed to reasonably assess relatively minor case by pursuing it in an aggressive manner); *see also* Hrg. Tr. at 42:19-21 (noting the parties' dispute could have been "resolved by reference to the rules themselves and the advisory committee notes"). For these reasons, an across-the-board deduction of 90% in fees (or $89,652.16) is appropriate here, reducing the total amount of reimbursable fees to $9,913.04.

## III.   IN THE ALTERNATIVE, PAUL WEISS'S "DISCOUNTED" HOURLY RATE IS UNREASONABLY HIGH AND THEIR FOUR ATTORNEYS BILLED MORE HOURS THAN NECESSARY TO ACHIEVE THE OUTCOME THEY ENJOY

### A.   Paul Weiss's "Discounted" Hourly Rate Is Unreasonably High And Should Be Reduced To Reflect A Reasonable Rate Of $250-$400 Per Hour

If the Court is unwilling to impose an across-the-board percentage-based reduction to Defendants' and Paul Weiss's fee request, there are additional bases to deny their request. Paul Weiss's rates are excessive because they are not commensurate with the prevailing rates in this District for employment litigation matters of this size. It is obvious that the rate or amount that an attorney bills his or her client related to discovery or a motion to compel ***does not make that rate (or the time expended) reasonable under Rule 37 as reasonable motion expenses***. *See Kahn v. GMC*, No. 88 Civ. 2982, 1993 U.S. Dist. LEXIS 5196, at *4 (S.D.N.Y. Apr. 19, 1993); *Nowlin v.*

*Lusk*, No. 11CV712S, 2014 U.S. Dist. LEXIS 147450, at *7 (W.D.N.Y. Oct. 16, 2014); *Sheehy*, 2007 U.S. Dist. LEXIS 11722, at *17.

Rather, a reasonable hourly rate is "'***what a reasonable, paying client would be willing to pay,***' given that such a party wishes 'to spend ***the minimum necessary*** to litigate the case effectively.'" *Simmons*, 575 F.3d at 174 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 493 F.3d 110, 112, 118 (2d Cir. 2007), *amended on other grounds*, 522 F.3d 182 (2d Cir. 2008)) (emphases added).  At the time of Mr. Cardwell's termination, the Individual Defendants were part of a partnership that made, on average, $4-5 million annually. What Davis Polk and the Individual Defendants can afford to pay Paul Weiss—a major law firm— is not what a "reasonable, paying client would be willing to pay," if such client desired to pay "the minimum necessary" to effectively obtain the outcome that Defendants and Paul Weiss now enjoy. Hourly rates ranging between $598.50 (on the low end) and $1,485 (on the high end) are orders of magnitude higher than the "minimum" a "reasonable" client would pay under such circumstances.

For instance, Susanna Buergel "serves as co-chair of the Securities Litigation and Enforcement Group,"[16] and Bruce Birenboim is "a senior trial lawyer with a broad focus on securities and M&A litigation, commercial litigation, and internal investigation and regulatory work."[17]  According to their public profiles, these senior lawyers typically represent large institutions and corporate behemoths like Davis Polk; however, what well-resourced clients are able (and willing) to pay for the rendition of their services (in non-employment law contexts) bears

---

[16] Paul Weiss | Professionals > Susanna M. Buergel, https://www.paulweiss.com/professionals/partners-and-counsel/susanna-m-buergel.

[17] Paul Weiss | Professionals > Bruce Birenboim, https://www.paulweiss.com/professionals/partners-and-counsel/bruce-birenboim.

no rational relationship to what a "reasonable, paying client" would pay if "spend[ing] the minimum necessary to litigate" this employment discrimination and retaliation action.[18]

Further to this point, "[c]ourts in this district have determined in recent cases that the range of appropriate fees for experienced civil rights and *employment law litigators* is between $250 and $450" per hour.  *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012) (citations omitted); *accord Aguilera v. Cookie Panache ex rel. Between the Bread, Ltd*., 2014 U.S. Dist. LEXIS 69716, at *9 (S.D.N.Y. May 20, 2014) (awarding fees at the rate of $300 for a partner and $200 for counsel in Fair Labor Standards Act action, based on "the prevailing rates in this district for employment law cases"); *Yuquilema v. Manhattan's Hero Corp*., 2014 U.S. Dist. LEXIS 120422, at *39-40 (S.D.N.Y. Aug. 26, 2014) (reducing rate of attorney with more than thirty years of experience who specializes in employment matters to $425/hour, and reducing rate of associate with approximately ten years of experience to $300/hour).[19]

Accordingly, Plaintiff submits that if Paul Weiss's fee application is not reduced through an appropriate across-the-board percentage cut, their rates should be reduced as follows:

| Timekeeper | Hours | Cost | Employment Law "Prevailing" Hourly Rate |
|---|---|---|---|
| Partner | 3.9 | $1,755.00 | $450 |
| Partner | 14.4 | $6,480.00 | $450 |
| Senior Associate | 30.6 | $9,180.00 | $300 |

---

[18] Senior associate Marissa C.M. Doran does not have a public profile that allows one to specifically describe her core practice or client base. However, it is most likely the case that like other senior associates at Paul Weiss, Ms. Doran's primary clients are large institutions, corporations, and wealthy individuals.

[19] For senior associates, reasonable rates typically range from $200-$300 an hour, and for junior associates, the typical rates are from $100-$200 an hour. *See, e.g.*, *Lopa v. Fireman's Fund Ins. Co*., 2014 U.S. Dist. LEXIS 68794, at * 10 (E.D.N.Y. Apr. 30, 2014) (awarding $255/hour for associate with 8-9 years of experience in the relevant field); *Lema v. Mugs Ale House Bar*, 2014 U.S. Dist. LEXIS 41286, at * 20 (E.D.N.Y. Feb. 28, 2014) (awarding $225/hour for associate admitted to practice six years); *Ferrara v. Pomarc Indus*., 2013 U.S. Dist. LEXIS 109730, at *16-18 (E.D.N.Y. Mar. 22, 2013) (awarding $260/hour for associate with nine years of experience); *Brown v. Green 317 Madison LLC*, 2014 U.S. Dist. LEXIS 40248, at * 32 (E.D.N.Y. Feb. 4, 2014) (in a civil rights matter, awarding $275/hour, "the equivalent of a senior associate's rate," to experienced associate who had handled approximately 45 cases in federal court); *but see Gesualdi v. Ava Shypula Testing & Inspection, Inc.*, 2014 U.S. Dist. LEXIS 50752, at * 17 (E.D.N.Y. Feb. 28, 2014) (awarding $375/hour for senior associate, noting this was "higher than the normal rate" because "in this particular case, the senior associate was the primary lead attorney and had approximately ten years of relevant legal experience").

| Timekeeper | Hours | Cost | Employment Law "Prevailing" Hourly Rate |
|---|---|---|---|
| Junior Associate | 71.4 | $14,280.00 | $200 |
| Paralegal | 1.1 | $110.00 | $100 |
| **Total** | **121.4** | **$31,805.00** | **$261.99/Hour Average** |

Because it is within a district court's discretion to determine reasonableness based on the court's knowledge of prevailing community rates, Plaintiff requests that, at a minimum, the Court reduce Paul Weiss's hourly rates to fit within a range that is deemed reasonable for employment law matters in this District, specifically in the range of $250-$400/hour.  *See Creative Res. Group of N.J., Inc. v. Creative Res. Group, Inc.*, 212 F.R.D. 94, 103-04 (E.D.N.Y. 2002).

> **B.      Defendants and Paul Weiss Failed to Provide Sufficient Detail to Justify Reimbursement For 120-Plus Hours, Billed By Four Attorneys**

In addition to charging rates that are typically paid by moneyed individuals or wealthy corporate clients, Defendants' and Paul Weiss's fee application reflects more hours billed by more attorneys than necessary to secure their motion to compel victory.  Courts in this district "look to the amount of time spent as reflected in contemporaneous time records, and then decides how much of that time was 'reasonably expended.' If the district court finds that some of the time was not reasonably necessary to the outcome of the litigation, it should reduce the time for which compensation is awarded accordingly."  *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012) (citation omitted)).  However, there are two issues preventing Plaintiff (and the Court) from undertaking such analysis in connection with the instant application.

*First*, at the threshold, the application fails to provide the level of detail required for Plaintiff (or this Court) to meaningfully scrutinize the fee request. In the Second Circuit, motions for attorneys' fees must be based on contemporaneous time records specifying relevant dates, time spent and work performed. *See New York State Ass'n for Retarded Children, Inc. v. Carey*, 711

F.2d 1136, 1148 (2d Cir. 1983); *Cruz v. Local Union No. 3*, 34 F.3d 1148, 1160 (2d Cir. 1994); *Lewis v. Coughlin*, 801 F.2d 570, 577 (2d Cir. 1986).

Courts are clear that "[a]ttorney affidavits which set forth ***all charges with the required specificity*** but which are reconstructions of the contemporaneous records satisfy the rationale underlying *Carey*." *David v. Sullivan*, 777 F. Supp. 212, 223 (E.D.N.Y.1991) (emphases added). Here, the Declaration of Susanna Buergel hardly satisfies this standard, as it does not permit Plaintiff to, among other things, peel back the layers of the request to ascertain, among other things, (i) whether the time spent on the particular tasks underlying their application was reasonable, and (ii) whether the tasks were reasonably apportioned between the various members of their litigation team (given the wide range in hourly rates between the senior and junior-most members of their team), or reflects duplication in efforts, among other fundamental considerations. Paul Weiss's failure to include such information in their opening brief effectively prevents Plaintiff from scrutinizing those particulars before the Court rules on their request. Their invitation to provide such information "upon request" by the Court effectively ignores Second Circuit jurisprudence requiring that these details be provided as a precondition to seeking fees.[20]

*Second*, the disputes underlying Defendants' Motion to Compel did not require the devotion of 120-plus hours of attorney time. Such is true where Paul Weiss failed to meaningfully engage in virtually all of the cases that Plaintiff cited in support of its position (which, far from filibustering, were advanced consistent with Plaintiff's good faith understanding of the law and interpretation of cases and rulings issued by judges in this Circuit). *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (noting the court should "exclude excessive redundant or

---

[20] A court's task is to make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). Based on the current record, this Court cannot make such a "detailed inquiry."

otherwise unnecessary hours" before awarding fees).  Instead, it was Plaintiff's counsel and Plaintiff that exerted a considerable effort, with extremely limited resources, in defending their positions—for which they relied on the cited cases and opinions to argue that Defendants were attempting to impose discovery obligations on Plaintiff that judges in this Circuit expressly deemed improper, and even denied motions to compel (or granted protective orders) on that very basis.

Relatedly, the hours devoted to briefing this motion are disproportionate when considering that Defendants' opening brief in support of their Motion to Compel (ECF 102) consisted of 13 pages of argument and their reply brief (ECF 112) comprised 9 more pages.  *See Gradisher v. Check Enforcement Unit*, No. 1:00-DV-401, 2003 WL 187416, at *5 (W.D. Mich. 2003) (comparing hours billed to length of motions and number of cases cited to reduce number of hours spent on them).  Accepting the Court's position that Plaintiff's violations were indeed "fairly fundamental" should lead the Court to conclude that 120 hours exerted by four legally-trained Paul Weiss attorneys were not needed to remedy violations that required little engagement with caselaw.  *See DiFilippo v. Morizio*, 759 F.2d 231, 235-36 (2d Cir. 1985) (noting a district court can consider such factors when assessing the extent of work needed for the type of case at issue); *compare* ECF 102, Opening Br. (citing one case) *with* ECF 112, Reply Br. (citing seven cases).

Consistent with the principles underlying these authorities, the court in *Underdog Trucking, L.L.C. v. Verizon Servs. Corp.* found that for a similar Rule 37(b) motion to compel, a 14-page brief, six-page declaration, and 16 exhibits, which included Defendants' document requests, correspondence between the parties, and transmission e-mails for Plaintiffs' document productions need not have taken 33 hours to prepare and file. 276 F.R.D. 105, 111 (S.D.N.Y. 2011). In reaching this conclusion, the Court noted that the motion asserted "straightforward legal arguments" and did "not require complex legal analysis." *Id.*  Here, although Defendants and Paul

21

Weiss do not submit contemporaneous time records, or a precise accounting of the 121.4 hours for which they seek reimbursement, their work product is not comparable to that filed in *Underdog Trucking*—yet they seek to be reimbursed for nearly four times the number of hours deemed reasonable there. Defendants' request should be reduced to account for this fundamental reality.

## CONCLUSION

If the Court remains inclined to sanction Plaintiff and Plaintiff's counsel with the monetary penalty of attorneys' fees, the Court should (in the interests of justice) reduce Defendants' and Paul Weiss's request by ninety percent, bringing the penalty imposed (if any) to no more than $9,913.04. Plaintiff respectfully requests all such additional relief as this Court deems just and proper.

DATED:           January 27, 2021                    Respectfully submitted,

                                                     /s/ David Jeffries

                                                     David Jeffries

                                                     *Attorney for Plaintiff*

cc (via ECF):

Jeh C. Johnson
Bruce Birenboim
Susanna M. Buergel
Marissa C.M. Doran

*Attorneys for Defendants*