February 5, 2021

**By ECF**

The Honorable Gregory H. Woods
United States District Court
Southern District of New York
500 Pearl Street, Room 2260
New York, NY 10007

*Cardwell* v. *Davis Polk & Wardwell LLP,* et al.
19-cv-10256-GHW (S.D.N.Y.)

Dear Judge Woods:

  I write on behalf of Plaintiff regarding Your Honor's February 1, 2021 Order permitting Plaintiff to refile a Corrected Second Amended Complaint ("Corrected SAC") that "withdraw[s] paragraphs 408[-]410 and the last sentence of paragraph 449 of the Second Amended Complaint." ECF No. 143. Plaintiff has complied with the Court's Order and hereby files the Corrected SAC.

  Plaintiff also received a request from Defendants on February 4, 2021 seeking the withdrawal of additional portions of the Corrected SAC on the basis that such changes are consistent with Your Honor's Order. Such changes are reflected in **Exhibit A** attached hereto. Consistent with Rule 15(a)(2), which permits amended pleadings to be filed upon consent, Plaintiff consented to Defendants' request and incorporated these changes into the Corrected SAC. If Your Honor recommends a different approach, Plaintiff will promptly honor such guidance.

  Pursuant to Your Honor's instructions (*see* ECF No. 143), Plaintiff also wishes to apprise the Court that Plaintiff will seek leave to file a Third Amended Complaint, consistent with the guidance provided by Your Honor during the February 1, 2021 teleconference.

  Thank you for the Court's attention to this matter.

Respectfully submitted,

/s/ David Jeffries

David Jeffries

cc (via ECF):

Jeh C. Johnson
Bruce Birenboim
Susanna M. Buergel

Marissa C.M. Doran

*Attorneys for Defendants*

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KALOMA CARDWELL,<br><br>                            Plaintiff,<br><br>v.<br><br>DAVIS POLK & WARDWELL LLP, Thomas Reid, John Bick, William Chudd, Sophia Hudson, Harold Birnbaum, Daniel Brass, Brian Wolfe, and John H. Butler,<br><br>                            Defendants. | 1:19-cv-10256-GHW<br><br>**CORRECTED** SECOND AMENDED VERIFIED COMPLAINT WITH JURY DEMAND |

> "*I have never had a finer interview in 12-13 years of doing this. He is a profoundly poised, polished, mature fellow…. I think he will succeed.*"
>
> – Neal Potischman, then-hiring partner for Davis Polk's Northern California office, in 2012, describing his interview with Kaloma Cardwell

> "*Kaloma was one of the best applicants I have ever interviewed. He was dynamic, smart, and extremely engaging…. I think he would be a terrific addition to the firm.*"
>
> – Maurice Blanco, co-head of Davis Polk's global Capital Markets group, in 2012, describing his interview with Cardwell

> "*Generally positive – organized, high quality work, good attention to detail, hard worker[.]*"
>
> – Jason Kyrwood, co-head of Davis Polk's Finance group, in May 2015, summarizing Cardwell's 2014-2015 first-year performance reviews

> "*Kaloma generally received positive reviews….*"
>
> – John Bick, then head of Davis Polk's global Corporate practice, in June 2016, summarizing Cardwell's performance reviews

> "*Kaloma, we're pitching for a new client, couple of public company deals, and would like to include you on the pitch for the team…. [I]t wouldn't start until mid-September.*"
>
> – Harold Birnbaum, M&A staffing partner, in the summer of 2017

But after making protected complaints: "*Cardwell's poor performance [from 2014 through April 2016] warranted giving Cardwell a message that it was time for him to look for another job.*"

> – Davis Polk responding to Cardwell's EEOC Complaint in December 2017

Page **1** of **171**

407.    After Mr. Cardwell filed a complaint with the EEOC and NYSDHR alleging discrimination and retaliation, Davis Polk submitted documentation to the NYSDHR that claimed Ms. Hudson had completed written performance reviews for Mr. Cardwell in June 2016 and September 2016 and that both of Ms. Hudson's performance reviews purportedly indicated that Ms. Hudson had answered "behind" to the question: "Do you feel this lawyer is performing materially behind, with or ahead of lawyer's class"?

408.    ~~The June 2016 and September 2016 written performance reviews that were attributed to Ms. Hudson and produced to Mr. Cardwell in this litigation are falsified, retroactively created documents and conclusions—as they bear conclusions that neither Ms. Hudson nor the Firm contemporaneously communicated to Mr. Cardwell.~~

409.    ~~Thus, Ms. Hudson's retroactively created June and September 2016 reviews were not legitimately created.~~

410.    ~~Ms. Hudson's June 2016 and September 2016 reviews for Mr. Cardwell were created after Mr. Cardwell filed his complaint with the EEOC in August 2017 and were created for the purpose of helping Davis Polk eliminate Mr. Cardwell's billable hours, not staff Mr. Cardwell on any assignments, and terminate Mr. Cardwell's employment.~~

~~411.~~408.    As noted *supra* at ¶¶ 302-08, on March 21, 2017, Davis Polk, Ms. Reid, and Ms. DeSantis refused to allow Mr. Cardwell to view his performance reviews.

~~412.~~409.    Between May 2015 and May 2017, Mr. Cardwell had ten face-to-face meetings with Davis Polk partners—all meetings where Davis Polk partners initiated the meetings and planned in advance and prepared for the meetings—where Mr. Cardwell's performance, performance reviews, and professional development were discussed by partners who had specific knowledge about Mr. Cardwell performance and performance reviews:

meeting, and (ii) and Mr. Bick and Mr. Kreynin did not have any specific examples to provide Mr. Cardwell when Mr. Cardwell requested if they had any examples related to their feedback.

<del>436.</del>433. Ms. Hudson's purported June 2016 and September 2016 reviews would have represented the first and second performance reviews in Mr. Cardwell's career that had the answer "behind" for the question: "Do you feel this lawyer is performing materially behind, with or ahead of lawyer's class"?

<del>437.</del>434. On Davis Polk's performance evaluation forms: "Do you feel this lawyer is performing materially behind, with or ahead of lawyer's class?" is the first question that appears under the header "Performance Evaluation."

<del>438.</del>435. It is the only question on Davis Polk's performance evaluation form that tracks whether associates are perceived to be "behind" in their class with a specific question that provides reviewing attorneys with three unambiguous options to choose from: behind, with, or ahead of lawyer's class.

<del>439.</del>436. Even though presented as a mandatory question on Davis Polk's form, and is arguably the most important question on the form itself, Ms. Hudson's <del>retroactively created</del> performance reviews are the only documents to state that Ms. Hudson concluded Mr. Cardwell was "behind" lawyers in his class.

<del>440.</del>437. *None* of the Consensus Feedback that was discussed and delivered to Mr. Cardwell in December 2015, June 2016, or December 2016 ever mentioned that Ms. Hudson or any believed Mr. Cardwell was "behind" lawyers in his class or that the quality of his work creating issues with his staffing.

<del>441.</del>438. *None* of the Consensus Feedback Statements that were created for Mr. Cardwell's December 2015 annual face-to-face annual performance review meeting, June 2016

face-to-face mid-year performance review meeting, December 2016 annual face-to-face annual performance review meeting, or January 2018 annual face-to-face performance review meeting states that Ms. Hudson or anyone at the Firm believed or rated Mr. Cardwell as "behind" lawyers in his class.

442.439. Not one partner who conducted or participated in Mr. Cardwell's December 2015 annual face-to-face annual performance review meeting, June 2016 face-to-face mid-year performance review meeting, December 2016 annual face-to-face annual performance review meeting told Mr. Cardwell that he would need or should consider some type of "career counseling," career coaching, or a performance remediation program or plan because Ms. Hudson or someone at the Firm believed Mr. Cardwell was "behind" lawyers in his class.

443. Prior to the filing of Mr. Cardwell's August 2017 EEOC Filing, Ms. Hudson did not create the June and September 2016 reviews[72] that were attributed to her and that were sent to the NYSDHR in response to Mr. Cardwell's August 2017 EEOC Filing.

444.440. Lastly, Ms. Hudson's own statements to Mr. Cardwell contradict her and Davis Polk's attempt to retroactively claim that she concluded and documented in June 2016 and September 2016 that Mr. Cardwell was "behind" lawyer's in his class.

445.441. In fact, out of roughly 200+ emails—spanning from October 28, 2015 through March 21, 2016—that involved Mr. Cardwell and Ms. Hudson during Mr. Cardwell's rotation in the Capital Markets group—the most direct and critical feedback that Ms. Hudson provided to Mr. Cardwell related to Mr. Cardwell incorrectly using the word "I" instead of "me" in an internal email (i.e., an email that was not sent to any of the Firm's contacts or otherwise

---

[72] Ms. Hudson is the only partner at Davis Polk to have inexplicably submitted not one, but two reviews that cover the exact same period and the exact same work for Mr. Cardwell.

*correct me whenever and however you see fit. I'll be more careful going forward. Thank you."*

449.445.     After Mr. Cardwell's and Ms. Hudson's matters concluded and they stopped working together at the end of 2015/beginning of 2016, Ms. Hudson had virtually no communications with Mr. Cardwell, let alone any communications with Mr. Cardwell about Mr. Cardwell's work product. It should be noted that Ms. Hudson had no problem getting in touch with Mr. Cardwell or speaking directly with him when Ms. Hudson desired to do so. ~~Once Mr. Cardwell and Ms. Hudson stopped working together, Ms. Hudson did, for example, reach out to Mr. Cardwell to ask Mr. Cardwell if he could recommend a Black restaurant that is in Harlem, New York City. Mr. Cardwell obliged.~~

450.446.     At the direction of and in coordination with Mr. Bick or Mr. Reid (or someone acting at their direction or approval), Ms. Hudson ~~retroactively~~ created her June 2016 and September 2016 performance reviews to help Davis Polk ~~respond to Mr. Cardwell's August 2017 EEOC Filing and~~ terminate Mr. Cardwell's employment.

451.447.     Ms. Hudson worked with Mr. Bick or Mr. Reid to complete her written performance reviews with knowledge that their intent was to use her reviews to eliminate Mr. Cardwell billable hours and to terminate Mr. Cardwell's employment. Ms. Hudson shared Mr. their intent and knew that her falsified reviews would be used to retaliate against Mr. Cardwell for his complaints and to eliminate his billable hours and terminate Mr. Cardwell's employment.

452.448.     Ms. Hudson's falsified~~, retroactively created~~ performance reviews triggered Mr. Reid, Mr. Bick, Mr. Birnbaum, Mr. Wolfe, Mr. Butler, and Mr. Brass's ability to terminate Mr. Cardwell's employment.

453.449.     As a result of Mr. Reid, Mr. Bick, and Davis Polk's influence of Ms. Hudson with regards to her aid to the Management and M&A Partners' decision to terminate Mr.

Cardwell ~~(in response to Mr. Cardwell's August 2017 EEOC Filing),~~. her actions against Mr. Cardwell, and the friction that resulted between Ms. Hudson and Davis Polk's partners, Ms. Hudson left Davis Polk and now works as a partner at another law firm.

**v. Defendants Terminate Mr. Cardwell's Employment.**

~~454.~~450.    At all relevant times, Mr. Reid, Mr. Bick, Mr. Wolfe, Mr. Birnbaum, Mr. Butler, and Mr. Brass had knowledge that Mr. Cardwell filed a complaint to the EEOC and NYSDHR in August 2017.

~~455.~~451.    On February 8, 2018, Mr. Cardwell met with Mr. Goldberg and Mr. Smith to discuss the Firm's purported inability to staff Mr. Cardwell.

~~456.~~452.    Mr. Goldberg opened the meeting by telling Mr. Cardwell:

> *"We've confirmed, as you can tell because you're not getting staffed, that the staffing has been very challenging and the reality is that the staffing situation is we don't think we can staff you at the level of seniority of where you are—in terms of your year. People think you're just not performing at the level where they can staff you at your level of seniority…."*

~~457.~~453.    Mr. Goldberg "confirmed" that no Davis Polk M&A partner was willing to work with Mr. Cardwell after he made his complaint with the EEOC.

~~458.~~454.    When Mr. Cardwell replied with: "[Y]ou said, 'we can't staff you at your seniority level?' . . . Who made that decision?", M&A partner Mr. Goldberg admitted, among other things: "Ultimately, we made it as a group."

~~459.~~455.    Shortly thereafter, Mr. Goldberg and Mr. Smith informed Mr. Cardwell that Davis Polk would be terminating Mr. Cardwell's employment. Mr. Goldberg explained that such decision resulted from "talk[ing] to Bick," "gather[ing] [Mr. Cardwell's] reviews," and collectively deciding "as a group" that staffing Mr. Cardwell was "not a situation that's workable." During this exchange, Mr. Goldberg and Mr. Smith described not simply who had the

harm and substantial economic losses, including, but not limited to, salary, bonuses, and other monetary benefits, impairment to his name and reputation, and emotional harm and psychological trauma, with associated physical symptoms.

~~603.~~599.   Mr. Reid, Mr. Bick, Mr. Birnbaum, Mr. Wolfe, and Mr. Brass intentionally discriminated against Mr. Cardwell with malice or reckless indifference to Mr. Cardwell's rights thereby entitling Mr. Cardwell to punitive damages.

## COUNT FOUR

### Retaliation in Violation of 42 U.S.C. § 1981(a)

~~604.~~600.   Mr. Cardwell re-alleges and incorporates every allegation in this Complaint as if each allegation was recounted at length herein.

~~605.~~601.   By the acts and practices detailed in this Complaint, Defendants intentionally retaliated against Mr. Cardwell for his opposition to unlawful discriminatory practices in violation of Section 1981.

~~606.~~602.   As a result of Defendants' retaliatory acts and practices, Mr. Cardwell has suffered and continues to suffer harm and substantial economic losses, including, but not limited to, salary, bonuses, and other monetary benefits, impairment to his name and reputation, and emotional harm and psychological trauma, with associated physical symptoms.

~~607.~~603.   Defendants intentionally retaliated against Mr. Cardwell with malice or reckless indifference to Mr. Cardwell's rights thereby entitling Mr. Cardwell to punitive damages.

~~608.~~604.   As explained *supra* at ¶¶ 401-53, Ms. Hudson's falsified~~, retroactively created~~ performance reviews for Mr. Cardwell both triggered Mr. Cardwell's termination and provided cover to Mr. Reid, Mr. Bick, Mr. Birnbaum, Mr. Wolfe, and Mr. Butler decision to