**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **KALOMA CARDWELL,** | |
| Plaintiff, | |
| **v.** | |
| **DAVIS POLK & WARDWELL LLP, Thomas Reid, John Bick, William Chudd, Sophia Hudson, Harold Birnbaum, Daniel Brass, Brian Wolfe, and John H. Butler,** | **1:19-cv-10256-GHW** |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT

Dated: March 17, 2021

David Jeffries, Esq.
1345 Avenue of the Americas, 33rd Floor
New York, New York 10105
Tel: 212-601-2770
djeffries@jeffrieslaw.nyc

*Attorney for Plaintiff*

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

PRELIMINARY STATEMENT ……………...…….……………………...……………1

RELEVANT PROCEDURAL HISTORY ….....…………………….……….……………3

LEGAL STANDARD.…….......…………….……………………….……….………......5

ARGUMENT…….…….…...……………….……………………………………….……....5

      A.    GOOD CAUSE EXISTS FOR PERMITTING THE REQUESTED
AMENDMENT UNDER RULE 16 …………………………………...…..……..5

      B.    LEAVE TO FILE THE REQUESTED AMENDMENT SHOULD BE
GRANTED UNDER RULE 15……………….........................................................8

          1.  Plaintiff's Proposed Amendment Is Not Futile………………………….10

          2.  Defendants Will Not Suffer Undue Prejudice As a Result of
the Amendment……………………………………………………………12

          3.  Plaintiff's Motion to Amend Was Not Unduly Delayed…………….……14

          4.  Plaintiff's Motion to Amend Is Not Made in Bad Faith………………...…15

      C.    THE INTERESTS OF JUSTICE WILL NOT BE SERVED
IF DEFENDANTS ARE ALLOWED TO USE THE "RECORD"
AS A SWORD AND SHIELD ………......................................................………….16

CONCLUSION .………………….……………….……………………….…………18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.V. by Versace, Inc. v. Gianni Versace S.p.A.*,
    87 F. Supp. 2d 281 (S.D.N.Y. 2000) ................................................................ 12

*Am. Med. Ass'n v. United Healthcare Corp.*,
    No. 00CIV2800LMM, 2006 WL 3833440 (S.D.N.Y. Dec. 29, 2006) ....................... 11, 12, 15

*Beckett v. Inc. Vill. of Freeport*,
    No. CV 11-2163 LDW AKT, 2014 WL 1330557 (E.D.N.Y. Mar. 31, 2014) ........................... 9

*Blaskiewicz v. County of Suffolk*,
    29 F. Supp. 2d 134 (E.D.N.Y. 1998) ................................................................ 11

*Block v. First Blood Assocs.*,
    988 F.2d 344, 350 (2d Cir. 1993) ............................................................ 5, 9, 12, 16

*Branum v. Clark*,
    927 F.2d 698 (2d Cir. 1991) .............................................................................. 9

*C.L.Alexanders Laing & Cruickshank v. Goldfield*,
    739 F. Supp. 158 (S.D.N.Y. 1990) ................................................................ 15

*Conley v. Gibson*,
    355 U.S. 41 (1957) ........................................................................................ 9

*Cresswell v. Sullivan & Cromwell*,
    922 F.2d 60 (2d Cir. 1990) ............................................................................ 14

*Cummings-Fowler v. Suffolk Community Coll.*,
    282 F.R.D. 296 (E.D.N.Y. 2012) ................................................................... 10

*Enzymotec Ltd. v. NBTY, Inc.*,
    754 F. Supp. 2d 527 (E.D.N.Y. 2010) ............................................................. 7

*Fariello v. Campbell*,
    860 F. Supp. 54 (E.D.N.Y. 1994) ................................................................... 13

*Fastiggi v. Waterview Hills Nursing Ctr., Inc.*,
    6 F. Supp. 2d 242 (S.D.N.Y. 1998) ................................................................ 15

*Foman v. Davis*,
    371 U.S. 178 (1962) ............................................................................... 9, 10, 12

*Friedl v. City of New York,*
    210 F.3d 79 (2d Cir. 2000) ................................................................................. 5, 9

*Holmes v. Grubman*,
    568 F.3d 329 (2d Cir. 2009) ................................................................................. 6

*In re United Brands Co. Sec. Litig.*,
    No. 85 CIV. 5445 (JFK), 1990 WL 16164 (S.D.N.Y. Feb. 15, 1990) ...................................... 9

*Jin v. Metro. Life Ins. Co.*,
    310 F.3d 84 (2d Cir. 2002) ................................................................................. 10

*Kassner v. 2nd Ave. Delicatessan Inc.*,
    496 F.3d 229 (2d Cir. 2007) ................................................................................. 8

*Lincoln v. Potter*,
    418 F. Supp. 2d 443 (S.D.N.Y. 2006)......................................................................... 5

*Lucente v. Int'l Bus. Machs. Corp.*,
    310 F.3d 243 (2d Cir. 2002) ................................................................................. 9, 10

*Monahan v. New York City Dept. of Corr.*,
    214 F.3d 275 (2d Cir. 2000) ................................................................................. 9

*Nairobi Holdings Limited v. Brothers Harriman & Co.*,
    2006 U.S. Dist. Lexis 9931 (S.D.N.Y. March 10, 2006) ...................................................... 5

*Parker v. Columbia Pictures Industries,*
    204 F.3d. 326 (2d Cir. 2000)................................................................................. 5

*Pasternack v. Lab. Corp. of Am.*,
    892 F. Supp. 2d 540 (S.D.N.Y. 2012) ........................................................................ 13

*Perfect Pearl Co., Inc. v. Majestic Pear & Stone, Inc.*,
    889 F. Supp. 2d 453 (S.D.N.Y. 2012) ........................................................................ 6

*Ruotolo v. City of New York*,
    514 F.3d 184 (2d Cir. 2008) ................................................................................. 12

*Salomon v. Adderley Indus., Inc.*,
    960 F. Supp. 2d 502 (S.D.N.Y. 2013) ........................................................................ 6

*S.E.C. v. DCI Telecommunications, Inc.*,
    207 F.R.D. 32 (S.D.N.Y. 2002) .............................................................................. 11, 12, 15

iv

*Sigmund v. Martinez*,
  No. 06 CIV. 1043 RWS MHD, 2006 WL 2016263 (S.D.N.Y. July 13, 2006) ........................ 9

*Sokol Holdings, Inc. v. BMD Munai, Inc.*,
  No. 05 Civ. 3749, 2009 WL 2524611 (S.D.N.Y. Aug. 14, 2009) ............................................ 6

*Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc.*,
  283 F.R.D. 142 (S.D.N.Y. 2012) .................................................................................... 11, 12

*State Teachers Ret. Bd. v. Fluor Corp.*,
  654 F.2d 843 (2d Cir. 1981) ........................................................................................... 13, 14

*Sumitomo Elec. Research Triangle, Inc. v. Corning Glass Works*,
  109 F.R.D. 627 (S.D.N.Y. 1986) ................................................................................... 10, 11

*U.S. v. District Council of New York City and Vicinity of the United Bd. of Carpenters
  and Joiners of America*,
  2005 U.S. Dist. LEXIS 26696 (S.D.N.Y. 2005) .................................................................... 10

**Statutes, Rules, and Other Authorities**

Fed. R. Civ. P. 15(a)(2)...................................................................................................... 5, 9

Fed. R. Civ. P. 16(b) ...................................................................................................... 1, 5, 6

Plaintiff Kaloma Cardwell ("Cardwell" or "Plaintiff") respectfully submits this memorandum of law in support of its request for leave, pursuant to Federal Rules of Civil Procedure 15(a)(2) and 16(b)(4) to file a Third Amended Complaint against Davis Polk & Wardwell LLP ("Davis Polk" or the "Firm"), Thomas Reid and John Bick (the "Management Committee Defendants"), and William Chudd, Sophia Hudson, Harold Birnbaum, Daniel Brass, Brian Wolfe, and John H. Butler (the "Additional Defendants") (together, "Defendants").

## PRELIMINARY STATEMENT

Defendants produced approximately 165,300 pages of documents—nearly 99.5% of its discovery—***after*** Plaintiff filed the Second Amended Complaint ("SAC") in November and ***after*** Defendants filed their partial motion to dismiss ("MTD") the SAC in December. Defendants did not produce *any* custodial emails from the Individual Defendants or *any* Davis Polk internal communications until December 23—while simultaneously asserting in their partial MTD that Plaintiff lacked an ability to plausibly allege some of the *very facts* that were revealed by their December, January, and February productions.

As the procedural history makes clear, Plaintiff could not and did not learn the non-conclusory facts underlying the proposed Third Amended Complaint (the "Proposed Third Amended Complaint")—which Defendants shielded from Plaintiff during his employment at the Firm—until well after the November 9, 2020 deadline for filing the SAC.

Through the proposed amendments, Plaintiff seeks to allege facts that (i) support the discrimination claims against Wolfe, Birnbaum, and Brass; (ii) establish Defendants' knowledge (especially that of Hudson, Chudd, and Butler) of Mr. Cardwell's legally protected complaints; (iii) identify Mr. Cardwell's comparators; and (iv) identify adverse employment actions that Defendants took beyond Mr. Cardwell's termination (e.g., Hudson's 2016 performance reviews,

the Firm's June 2016 mid-year performance review cycle, and Defendants' NYSDHR Brief)—all recently discovered in the internal emails and other non-public documents that Defendants chose not to produce until December 2020, January 2021, and February 2021.  A copy of the Proposed Third Amended Complaint reflecting these new allegations is attached to the Declaration of David Jeffries filed concurrently herewith as **Exhibit A**,[1] and a redline showing the changes between the Proposed Third Amended Complaint and the Corrected SAC is attached as **Exhibit B**.

There can be no reasonable dispute that these new allegations arise from the same nucleus of facts previously alleged in the Corrected Second Amended Complaint (the "Corrected SAC"). While true that the case is nearing the close of fact discovery (with approximately one month remaining in the current schedule), the timing of Defendants' productions ensured the very predicament the parties now face: with Defendants potentially gaining strategic advantages by producing documents late enough that Plaintiff would not have a meaningful opportunity to review and use them.  Anticipating this scenario, and to avoid any prejudice Plaintiff might suffer as a result, Plaintiff acted swiftly upon receiving these documents and promptly informed the Court when it became clear that this mountain of discovery provided a colorable basis for amendment.

For the reasons explained herein, Plaintiff's application satisfies Rule 16(b)'s good cause standard and Rule 15(a)'s pleading standards. If the Court finds that both rules have been met, and Defendants maintain their position that "none of [the proposed amendments] makes any difference for the pending motion to dismiss," Defendants may not need to supplement their grounds for dismissing Plaintiff's claims, although Plaintiff is open to whatever procedural approach and schedule the Court deems appropriate in light of the circumstances.  3/9/21 Hrg Tr. at 14.

---

[1] Plaintiff has not added any new exhibits to the Proposed Third Amended Complaint.  If granted leave to amend, Plaintiff will file the Proposed Third Amended Complaint with the same exhibits attached to the Corrected SAC.

For these reasons and others set forth below, Plaintiff asks that the Court enter an order granting the instant application for leave to file the Proposed Third Amended Complaint.

## RELEVANT PROCEDURAL HISTORY

On November 4, 2019, Plaintiff filed the first complaint in this Action alleging, among other things, discrimination and retaliation claims against Defendants.   A case management conference was held on December 20, 2019, and a Civil Case Management Plan and Scheduling Order entered later that day. ECF 27.   The Scheduling Order provided that pleadings could be amended as of right by January 20, 2020. It also set a deadline of September 16, 2020 for fact discovery and December 16, 2020 for expert discovery (which were subsequently amended on July 29, 2020, *see* ECF 66, on February 2, 2021, *see* ECF 143). These subsequent orders made it clear that the deadlines set forth in the Case Management Plan and Scheduling Order were otherwise in effect.

On February 10, 2020, Defendants filed a partial motion to dismiss the Complaint.   ECF 33.   On March 2, 2020, Plaintiff amended the Complaint.   ECF 37.   On April 30, 2020, Defendants filed a partial motion to dismiss the First Amended Complaint.   ECF 43.

On October 24, 2020, the Court issued its opinion and order on Defendants' partial motion to dismiss, (i) dismissing claims as to Chudd, Hudson, and Butler, among other claims, and thus dismissing these three defendants from this Action, and (ii) granting Plaintiff leave to amend within 14 days of the order.   On November 9, 2020, Plaintiff filed a Second Amended Complaint, which was re-filed on November 18, 2020 to address issues raised related to redactions. On December 11, 2020, Defendants filed a partial motion to dismiss the SAC. ECF 116. On January 13, 2021, Plaintiff filed his opposition to Defendants' partial motion to dismiss the SAC. ECF 127. On February 5, 2021, Plaintiff filed a Corrected SAC (in response to Defendants' proposed Rule

11 motion, which, according to Defendants, was based in part on the same discovery that Defendants produced to Plaintiff in December 2020 and January of 2021).  ECF 147.

On August 11, 2020, Plaintiff served Defendants with specific and detailed requests for production (the "RFPs").  On September 10, 2020, Defendants produced **58 documents**, which they characterized as an "initial production." It largely consisted of (i) documents that dated back to when Mr. Cardwell was a law student and (ii) documents such as Mr. Cardwell's personnel file, various performance reviews, and a version of the Firm's Lawyer Handbook bearing the date that Mr. Cardwell started working at Davis Polk: September 15, 2014. Importantly, although called for by Plaintiff's RFPs, Defendants' initial production excluded custodial documents (i.e., emails and other internal records) involving Mr. Cardwell and/or the Named Defendants.

It was not until December 23, 2020 (i.e., **after** Defendants filed their partial MTD the SAC, *see* ECF 115)—two days before Christmas—that Defendants made their first substantial document production, consisting of key records, internal emails, and other documents pertinent to the claims and defenses at issue in this Action.  Defendants continued to produce what became the bulk of their production—over 120,000 pages—on January 11, January 17, February 9, February 25, and February 26, 2021 (with most of these productions occurring **after** Defendants filed their Reply in support of their partial MTD on January 29, 2021, *see* ECF 142).

On February 1, 2021, before Defendants concluded their productions, Plaintiff informed the Court during the parties' teleconference that Plaintiff intended to seek leave to file a Proposed Third Amended Complaint based on a partial but expedited review of Defendants' recent productions.  On February 17, 2021, Plaintiff filed a pre-motion letter seeking leave to file the proposed amendment, and pursuant to the briefing schedule set by the Court, filed a reply in

support of the request on March 2, 2021.  ECF 152, 159.[2]  On March 9, 2021, the Court held a conference and granted Plaintiff's request to file a motion for leave to amend by March 17, 2021. The instant motion followed on March 17, 2021.

## LEGAL STANDARD

Rule 15(a) of the Federal Rules of Civil Procedure provides that the "court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  In interpreting Rule 15(a), the Second Circuit has explained that "district courts should not deny leave unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility." *Friedl v. City of New York*, 210 F.3d 79, 87 (2d Cir. 2000); *see also Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith."). Because it will promote the interests of justice and given the lack of undue prejudice to Defendants of adding these allegations, allowing amendment of the Corrected SAC is entirely in keeping with the liberal amendment policies of the Federal Rules of Civil Procedure as interpreted by the Second Circuit.

"When a party moves to amend the pleadings after the deadline to do so in the court's scheduling order has passed he must satisfy the good cause requirement of Fed. R. Civ. P. 16(b) before being granted leave to amend." *Lincoln v. Potter*, 418 F. Supp. 2d 443, 453 (S.D.N.Y. 2006) (citing *Parker v. Columbia Pictures Industrie*s, 204 F.3d. 326, 339-40 (2d Cir. 2000)); Fed. R. Civ. P. 16(b).  "Good cause in this context has been interpreted to mean that scheduling deadlines could not be met despite a moving party's diligence." *Nairobi Holdings Limited v. Brothers Harriman & Co*., 2006 U.S. Dist. Lexis 9931, at *20 (S.D.N.Y. March 10, 2006).

---

[2] Defendants made one final document production after Plaintiff's pre-motion letter was filed (on February 26, 2021).  For reasons discussed *infra* at Section B.3, this supports Plaintiff's diligence in seeking leave to amend, and underscores that any delay in bringing the instant motion is at least partly attributable to Defendants' delayed productions.

## ARGUMENT

### A. GOOD CAUSE EXISTS FOR PERMITTING THE REQUESTED AMENDMENT UNDER RULE 16

Because a scheduling order has been entered governing amendments to the complaint in this Action, Plaintiff first addresses the existence of "good cause" under Federal Rule of Civil Procedure 16(b). As explained *supra*, the Case Management Plan and Scheduling Order required amendment as of right by January 19, 2020, and the Court's MTD Opinion also stated that Plaintiff "should not expect any additional opportunities to amend," *see* ECF 78, Op. at 79.

Rule 16 permits a court to modify its scheduling order upon a showing of good cause. Fed. R. Civ. P. 16(b)(4); *Salomon v. Adderley Indus., Inc.*, 960 F. Supp. 2d 502, 507 (S.D.N.Y. 2013) (citing *Holmes v. Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009)). Whether good cause exists turns on the diligence of the moving party. *Id.* (citing *Holmes*, 568 F.3d at 335). To demonstrate good cause, a movant must show that despite having exercised diligence, the applicable deadline could not have been reasonably met. *Id.* (citing *Perfect Pearl Co., Inc. v. Majestic Pear & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012)). *See also Sokol Holdings, Inc. v. BMD Munai, Inc.*, No. 05 Civ. 3749, 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2009) (citation omitted).

Here, Plaintiff was diligent but unable—despite such diligence—to plead the proposed amendments by the date set in the scheduling order (and the date set in the Court's MTD Opinion) for the simple reason that Defendants did not make *any document* production in this case until roughly eight months *after* the January 2020 scheduling order deadline for amendment had passed, and Defendants did not produce many of the documents underlying the Proposed Third Amended Complaint until *nearly one year after* the deadline passed.[3]

---

[3] For similar reasons, Plaintiff was diligent, but was unable to plead the proposed amendments by March 2, 2020 (i.e., the amendment deadline triggered by Defendants' April 30, 2020 partial motion to dismiss, ECF 44).

Defendants only recently produced key internal documents and communications that reveal Defendants' conduct was a coordinated effort among partners and leaders of the Firm (with assistance from the Firm's Associate Development Department) to retaliate against Mr. Cardwell in response to complaints that this Court has already deemed legally protected. The proposed amendments establish the elements underlying (i) Plaintiff's discrimination claims against Wolfe, Birnbaum, and Brass (e.g., by detailing the treatment that Mr. Cardwell's suffered at the Firm, including in comparison to his peers and on account of Defendants' discriminatory animus); and (ii) Plaintiff's retaliation claims against Hudson, Butler and Chudd (e.g., by re-alleging that the September 2016 complaint was legally protected activity, showing Defendants' knowledge of Mr. Cardwell's 2015-2018 complaints, and alleging other adverse employment actions that were causally connected beyond the termination of Mr. Cardwell's employment).  Allegations aimed at these elements form the basis of the changes reflected in the Proposed Third Amended Complaint.

Because Plaintiff learned new information through discovery, after the expiration of the scheduling order's deadline for amendment of pleadings, Plaintiff's inability to make proposed amendments prior to that deadline does not constitute a failure of diligence. *See Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc.*, 283 F.R.D. 142, 148-49 (S.D.N.Y. 2012) (finding diligence and allowing amendment in light of facts learned during discovery); *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 537 (E.D.N.Y. 2010) (holding that newly "discovered . . . facts . . . is sufficient to show diligence.").  Moreover, as soon as Plaintiff has a good-faith basis for putting the Court and Defendants on notice of its intention to seek leave, such intention was promptly conveyed.

An additional reason for finding that "good cause" exists is that if Plaintiff is not allowed to amend the Complaint, Plaintiff will be prejudiced in that certain claims against the Additional Defendants may be dismissed despite the existence of facts sufficient to withstand dismissal

pursuant to Fed. R. Civ. P. 12(b)(6).  These facts are discussed *infra* in Section B.2.  Relatedly, Plaintiff has not yet had an opportunity to amend the complaint in response to Defendants' production of custodial emails, and other internal records and documents.[4]  If Plaintiff's motion for leave is granted, the Third Amended Complaint will be Plaintiff's first pleading to reflect the facts and information gleaned from such discovery.

A final reason for concluding that "good cause" exists is the absence of any genuine prejudice to Defendants.  *See Kassner v. 2nd Ave. Delicatessan Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) ("The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice the defendants.").

As discussed in Section B.2 *infra*, Defendants cannot reasonably contend that they will suffer ***undue*** prejudice because, among other reasons, the proposed amendment is based on the same nucleus of facts and witnesses, the central difference being only Defendants' own, recently-produced internal documents (the timing of which Defendants—not Plaintiff—was responsible for) allow Plaintiff to (i) seek the re-instatement of the dismissed claims against the Additional Defendants, and (ii) make additional allegations concerning Defendants (e.g., adverse employment actions beyond Mr. Cardwell's termination, and re-pleading that Mr. Cardwell's September 2016 complaint constituted protected activity).

## B. LEAVE TO FILE THE REQUESTED AMENDMENT SHOULD BE GRANTED UNDER RULE 15

Having demonstrated "good cause" to modify the scheduling order under Rule 16(b), Plaintiff turns to the requirements of Federal Rule of Civil Procedure Rule 15(a) to be granted

---

[4] As noted above, Defendants produced approximately 99.5% of discovery (as measured by pages) after Plaintiff filed the SAC in November 2020.

leave to amend.  *Beckett v. Inc. Vill. of Freeport*, No. CV 11-2163 LDW AKT, 2014 WL 1330557 at *5 (E.D.N.Y. Mar. 31, 2014); *accord Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991).

As this Court has explained, there is a well-established "presumption in favor of granting leave" to amend under Rule 15(a).  *See Sigmund v. Martinez*, No. 06 CIV. 1043 RWS MHD, 2006 WL 2016263, at *1 (S.D.N.Y. July 13, 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also In re United Brands Co. Sec. Litig.*, No. 85 CIV. 5445 (JFK), 1990 WL 16164, at *2 (S.D.N.Y. Feb. 15, 1990) ("[T]he Court begins with the presumption that the motion should be granted unless good reason exists to deny it.").

Rule 15(a) of the Federal Rules of Civil Procedure provides that the "court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  In interpreting Rule 15(a), the Second Circuit has explained that "district courts should not deny leave unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility." *Friedl v. City of New York*, 210 F.3d 79, 87 (2d Cir. 2000); *see also Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.").

Rule 15 reflects two "important principles" of the Federal Rules: (i) pleadings "serve the limited role of providing the opposing party with notice of the claim or defense to be litigated"; and (ii) "mere technicalities should not prevent cases from being decided on the merits." *Monahan v. New York City Dept. of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000) (citing *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957); *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Thus, in the absence of a good

reason—including futility, bad faith, undue delay, or undue prejudice—a motion to amend should be granted.[5]

There is no good reason to deny leave to amend in this case. To the contrary, as set forth below, the proposed amendment is not futile, is not proposed in bad faith, has not been unduly delayed, and does not prejudice Defendants. The proposed amendment is the first amendment to the Complaint sought by Plaintiff in response to discovery, and only became necessary after certain critical evidence was revealed in discovery. The proposed amendment will maximize judicial efficiency and permit all related matters to be fully determined on the merits. Therefore, Plaintiff asks that this Court grant the instant request for leave to further amend.

### 1. Plaintiff's Proposed Amendment Is Not Futile

A proposed amendment "is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *See Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *see also Sumitomo Elec. Research Triangle, Inc. v. Corning Glass Works*, 109 F.R.D. 627, 628 (S.D.N.Y. 1986) (court need only be satisfied that amendment "is colorable and not frivolous" to grant leave). In analyzing whether a Rule 15(a) application is futile, "the allegations of the [proposed] pleading … must be presumed true and the Court must draw all inferences in the pleading party's favor." *U.S. v. District Council of New York City and Vicinity of the United Bd. of Carpenters and Joiners of America*, 2005 U.S. Dist. LEXIS 26696, at *14 (S.D.N.Y. 2005).

The party opposing the motion for leave to amend bears the burden of establishing that an amendment would be futile. *See Cummings-Fowler v. Suffolk Community Coll.*, 282 F.R.D. 296

---

[5] To this point, this Circuit has held that "[o]utright refusal to grant the leave without any justifying reason for the denial is an abuse of discretion." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002) (quoting *Foman*, 371 U.S. at 182).

(E.D.N.Y. 2012) (citing *Blaskiewicz v. County of Suffolk*, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998)).

The Proposed Third Amended Complaint addresses arguments made in Defendants' pending partial MTD and the Court's prior MTD Opinion. Attached hereto as **Exhibit C** is an overview of the Court's MTD findings pertaining to defendants Wolfe, Brass, Birnbaum, Hudson, Chudd, and Butler.  The Proposed Third Amended Complaint sets forth the "colorable" and "no[n] frivolous" factual allegations that support the relief requested, aided by descriptions of recently produced documents on the very issues addressed in the Court's Opinion.  *Sumitomo*, 109 F.R.D. at 628; *see generally* Ex. C (presenting excepts from the MTD Opinion that are cured through the Proposed Third Amended Complaint).  Moreover, the fact that the amendments arise out of the same nucleus of operative facts further demonstrates that the proposed pleading is not futile.

Finally, the interests of justice particularly favor granting leave in cases where (as here) a plaintiff seeks to amend based on new and pertinent information gleaned during discovery. Courts in this District have repeatedly followed this principle, granting leave to amend where the movant has uncovered new evidence through discovery and acted on that information without undue delay.

For instance, in *S.E.C. v. DCI Telecommunications, Inc.*, 207 F.R.D. 32, 33–34 (S.D.N.Y. 2002), the court granted the plaintiffs' motion to amend to add new facts learned approximately three months prior in discovery. Even when plaintiffs learn new information—months or even years into a proceeding—this Court has allowed amendment based on new evidence uncovered during discovery. *See, e.g.*, *Soroof Trading Dev. Co. v. GE Microgen, Inc.*, 283 F.R.D. 142, 149 (S.D.N.Y. 2012) (allowing amendment one year and seven months after initial deadline for amendment where amendment was based on new facts learned during discovery and, like here, plaintiff added no new claims for relief); *Am. Med. Ass'n v. United Healthcare Corp.*, No.

00CIV2800LMM, 2006 WL 3833440, at *4 (S.D.N.Y. Dec. 29, 2006) (allowing amendment of complaint two-and-a-half years after the previous complaint to add new claims because "the basis for Plaintiffs' Proposed Amendments was formed, at least in part, during . . . discovery").

Like these cases, Plaintiff seeks leave to amend based on material new information learned during discovery and has done so with more haste and less time into the case than many other cases in which the court has granted similar requests. *See, e.g.*, *DCI Telecommunications*, 207 F.R.D. at 33–34; *Soroof Trading Dev. Co.*, 283 F.R.D. at 149; *Am. Med. Ass'n*, 2006 WL 3833440, at *4. As the Proposed Third Amended Complaint details, discovery has revealed facts that directly address the Court's pending ruling on the current MTD.  Given these new revelations, permitting amendment to add these new facts will ensure that the Court's adjudication of Plaintiff's claims under Rule 12(b)(6) will be adjudicated fully and fairly.

### 2.   Defendants Will Not Suffer Undue Prejudice As a Result of the Amendment

Although a court may deny leave to amend if a defendant can make a sufficient showing of prejudice, "prejudice alone is insufficient to justify a denial of leave to amend; rather, the necessary showing is 'undue prejudice to the opposing party.'" *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (quoting *Foman*, 371 U.S. at 182).  When considering whether a defendant has met that burden, the court considers whether the amendment would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block*, 988 F.2d at 350. Mere "[a]llegations that an amendment will require the expenditure of additional time, effort, or money do not constitute 'undue prejudice.'" *A.V. by Versace*, 87 F. Supp. 2d at 299.

Undue prejudice arises when an amendment is "made on the eve of trial" and "result[s] in new problems of proof." *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (quoting

*State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)). "'The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial.'" *Pasternack v. Lab. Corp. of Am.*, 892 F. Supp. 2d 540, 529 (S.D.N.Y. 2012) (quoting *Fariello v. Campbell*, 860 F. Supp. 54, 70 (E.D.N.Y. 1994)).

Here, Defendants cannot show *undue* prejudice. *First*, given that Defendants have already produced a vast majority of the documents that they intend to produce (although the parties have reached impasse concerning the scope of Defendants' productions, and thus Plaintiff intends to seek Court intervention), Plaintiff's request will not result in any significantly increased burden in terms of discovery. This is especially true given that Plaintiff does not seek to add new parties or new claims, and the facts surrounding the proposed amendments arise out of the same series of events that Defendants have been on notice of since 2017 (in the case of Mr. Cardwell's EEOC and NYSDHR complaints) and 2019 (in the case of Mr. Cardwell's Initial Complaint).

*Second*, this case is not on the eve of trial. At the time of this filing, not a single deposition has been taken by either side.[6] More importantly, as can be seen by a review of the Proposed Third Amended Complaint, the additional allegations are based on the same nucleus of facts, essentially the same conduct, and largely fit within the existing structure of the currently filed SAC. Because these new allegations (and the recently-produced documents that support them) implicate the same players, the relevant witnesses are already known to Defendants, and they either are or will be scheduled for deposition.

Recognizing the concern that the Court will be unable to resolve the pending motion to dismiss until after the current fact-discovery cutoff of April 15, 2021 if Plaintiff's request is granted, Plaintiff believes that a modest extension of the schedule should be sufficient for purposes

---

[6] Plaintiff notes that Defendants late production has impacted Plaintiff's ability to both prepare for and schedule depositions.

of permitting Defendants to submit any supplemental briefing designed to address the scope of the Proposed Third Amended Complaint, and thus may prevent the need to moot the fully-briefed motion. Because the facts surrounding the proposed amendments arise out of the same series of events, the parties may not require extensive supplemental briefing to address the new facts and issues implicated by the Proposed Third Amended Complaint.

Given these circumstances, there should be no delay in the overall resolution of the case and Defendants will not suffer undue prejudice should the Court grant Plaintiff leave to amend. *See State Teachers*, 654 F.2d at 856 (reversing denial of leave to amend sought promptly after learning new facts, where "no trial date had been set by the court and no motion for summary judgment had yet been filed by the defendants" and where "the amendment will not involve a great deal of *additional* discovery") (emphasis added). Because Defendants cannot make the significant showing of undue burden required to deny Plaintiff's application, the Court should permit the parties to file any supplemental motion to dismiss briefing to address the new issues and/or facts raised by the Proposed Third Amended Complaint, or proceed in any other manner the Court deems reasonable and efficient in light of the current schedule.

### 3. Plaintiff's Motion to Amend Was Not Unduly Delayed

A court has discretion to deny leave to amend where the motion is made after an "inordinate delay" without any "satisfactory explanation" offered for the delay. *See Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990). Here, although one year has passed between the filing of the Complaint and this motion, only several weeks have elapsed between the at-issue document productions. Specifically, and as stated *supra*, the proposed amendments are based on information Plaintiff acquired only recently, and Plaintiff acted promptly by (i) informing the Court in February 2021 of Plaintiff's intention to amend; and (ii) seeking leave to amend in February and March 2021 (*see* ECF 152, 160). As the record demonstrates, any delay in bringing the instant motion

14

was occasioned, at least in part, by Defendants' failure to produce internal documents and communications until December 2020—productions that were not completed until February 26, 2021 (one day after what was the current fact-discovery cutoff of February 25, 2021—which the Court extended at *Plaintiff's* not *Defendants'* request).[7]

Moreover, the current procedural posture of this litigation is far from nearing its final resolution. Under these circumstances, while the timing of Plaintiff's motion is not ideal, there has been no undue delay. *Compare Am. Med. Ass'n v. United Healthcare Corp.*, No. 00 Civ. 2800, 2006 WL 3833440, at *3-4 (S.D.N.Y. Dec. 29, 2006) (discovery of new facts was satisfactory explanation for two-and-a-half year delay in filing proposed amendment, especially because discovery was ongoing), *with C.L.Alexanders Laing & Cruickshank v. Goldfield*, 739 F. Supp. 158, 166 (S.D.N.Y. 1990) (denying motion for leave to amend six months after close of discovery and after the submission of the defendant's post-discovery motion for summary judgment).

### 4.  Plaintiff's Motion to Amend Is Not Made in Bad Faith

An examination of bad faith requires a court to focus on the plaintiff's motives for amending the complaint.  Undue delay, standing alone, does not constitute bad faith.  *See S.E.C. v. DCI Telecomm., Inc.*, 207 F.R.D. 32, 34 (S.D.N.Y. 2002) (no bad faith absent "showing of malice").  A proposed amendment is not in bad faith when it comes early while discovery is ongoing, "and relies on the same facts" set forth in the original complaint. S*ee Fastiggi v. Waterview Hills Nursing Ctr., Inc.*, 6 F. Supp. 2d 242, 243 (S.D.N.Y. 1998).  Moreover, a motion to "enlarge plaintiffs' claims . . . prompted by evidence first obtained during expedited discovery"

---

[7] *Plaintiff* sought an extension on February 25, 2021 of the case management deadlines—over Defendants' objection—including in response to Defendants' eleventh-hour document productions (ECF 136).  The Court granted Plaintiff's request on February 2, 2021 and extended the fact discovery deadline to April 15, 2021 (ECF 143).  Despite objecting to the extension, Defendants proceeded to produce documents related to *comparators* on *February 26, 2021* (one day after the same February 25, 2021 deadline Defendants told this Court should not be extended, *see* ECF 135).

is not suggestive of bad faith. *See Block v. First Blood Assocs.*, 988 F.2d 344, 351 (2d Cir. 1993) (bad faith not evident where amendment sought after party first became aware of unknown facts).

In the case at hand, Plaintiff moves for leave to amend in good faith based on additional investigation and analysis of the facts only recently obtained during discovery, some of which directly address allegations that the Court deemed "conclusory" or "inadequately pleaded" in its ruling on Defendants' first partial MTD.  Key internal documents and emails related to allegations that were once deemed "conclusory" or "inadequately pleaded" were first produced to Plaintiff just prior to the December holidays, and continued until February 26, 2021.  As stated *supra*, the proposed amendment relies on the same nucleus of facts set forth in the Corrected SAC, supplemented by new information that has come to light.  Accordingly, Defendants cannot show any bad faith by Plaintiff in seeking to amend the Complaint at this time.

As a final matter, insofar as the concerns that Defendants raised during the March 9, 2021 teleconference were intended to convey that Plaintiff seeks to amend in bad faith, that notion is false and unsupported.  *See, e.g.*, 3/9/21 Hrg. Tr. at 14.  As this motion sufficiently demonstrates, Plaintiff seeks leave to file the Proposed Third Amended Complaint in order to (i) conform the pleadings to the late discovery that Defendants just finished producing in February 2021, and (ii) to otherwise address the pleading gaps that this Court raised in its ruling on Defendants' partial MTD the FAC and/or Defendants raised in their partial MTD the SAC.

## C. The Interests of Justice Will Not Be Served If Defendants Are Allowed to Use the "Record" as A Sword and Shield

A deep injustice will result if only Defendants are permitted to invoke, rely upon, and use the "contemporaneous documentary evidence" created during Plaintiff's employment at Davis Polk.  For instance, Defendants attempted to seek Rule 11 sanctions against Plaintiff based in part

on discovery that was in Defendants' sole possession and not produced until December 2020 and January 2021.  Defendants should not be allowed to use discovery as a sword and shield.

Indeed, since December 2017, Defendants have repeatedly and publicly claimed in their defense against Mr. Cardwell's allegations, and in response to this lawsuit, that Mr. Cardwell's staffing and firing were the result of purported performance issues and that Mr. Cardwell's claims are not supported by the "contemporaneous" record. Among numerous examples, four are particularly worth highlighting:

*First*, in response to Cardwell's EEOC and NYSDHR Complaints, Davis Polk submitted a 25-page Answer and Position Statement that was almost entirely focused on facts related to the proposed amendments and recently produced discovery. In fact, Defendants' primary argument in their efforts to have the administrative complaints dismissed was summed up as follows:

> [T]he record establishes beyond any question that Cardwell's experience at the Firm, in both hours and assignments, was solely a function of consistent and documented performance problems, not of any unlawful act by the Firm.

Davis Polk's NYSDHR Brief, ECF 147-2 at 21.  *Second*, less than one day after the commencement of this action, on November 5, 2019, Neil Barr (Davis Polk's Managing Partner) reportedly stated in a firm-wide email that went to over 900 attorneys and hundreds of non-attorney employees throughout Davis Polk's ten global offices:

> As you may have seen, a lawsuit against Davis Polk and several individuals was filed last night by a former associate, Kaloma Cardwell, which alleges racial discrimination and retaliation. Mr. Cardwell's termination had nothing to do with his race. He was terminated for legitimate, non-discriminatory reasons following negative performance reviews given in the ordinary course. We will defend ourselves vigorously and will show, based on the record, that the claims are not supported by the facts or the law.

*Third*, on December 13, 2019, before the parties' preliminary conference, Defendants informed the Court and public that:

> Plaintiff's continuing deficiencies in the performance of his work—which became increasingly problematic as he became more senior—explain his frustration in not obtaining choice assignments, not any race-based discrimination or retaliation.

ECF 25 at 3. Finally, on April 30 and December 11, 2020, in connection with motion to dismiss arguments, Defendants proclaimed to the Court and public (in the context of a 12(b)(6) submission where such assertions could not be credited by the Court) that:

> The contemporaneous documentary evidence—performance evaluations, email records, work product—will show uniformly that plaintiff's deficient performance was the only reason he was asked to seek other employment…. Defendants will demonstrate at the appropriate juncture that the Management Committee Defendants acted at all times as leaders of the Firm to support fully an associate facing significant performance problems. The facts will show unequivocally that none of the Firm, the Management Committee Defendants, or the Additional Defendants treated plaintiff less favorably because of his race or because of his purported raising of any concerns related to race.

ECF 44 at 9; ECF 116 at 7.

The proposed amendments effectively ask this Court to make its pending ruling based on allegations supported by the very materials that Defendants themselves claim are a definitive source for why Mr. Cardwell "was asked to seek other employment" (i.e., terminated by the Firm). Plaintiff should be permitted to use that record to plead non-conclusory allegations that Defendants discriminated and retaliated against Mr. Cardwell, including in response to him making several legally protected complaints during the course of his employment at Davis Polk.

Accordingly, it is both fair and appropriate that contemporaneous documents and email records from Mr. Cardwell's tenure at the Firm, as described in the proposed amendments, be considered by the Court in any ruling on Defendants' partial motion to dismiss Plaintiff's claims.

## CONCLUSION

For the reasons set forth in this application, Cardwell respectfully requests that the Court grant the motion and enter an order granting leave to file the Proposed Third Amended Complaint.

Dated:  New York, New York                    Respectfully submitted,
        March 17, 2021


                                                  /s/ David Jeffries

                                              David Jeffries


                                              1345 Avenue of the Americas, 33rd Floor
                                              New York, New York 10105
                                              Tel: 212-601-2770
                                              djeffries@jeffrieslaw.nyc


                                              *Attorney for Plaintiff*

19