**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KALOMA CARDWELL,

*Plaintiff*,

v.

DAVIS POLK & WARDWELL LLP, Thomas
Reid, John Bick, William Chudd, Sophia
Hudson, Harold Birnbaum, Daniel Brass,
Brian Wolfe, and John Butler,

*Defendants*.

19 Civ. 10256 (GHW)

## DEFENDANTS' MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE
## TO FILE A THIRD AMENDED COMPLAINT

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel.: (212) 373-3000
Fax: (212) 757-3990

*Attorneys for Defendants*

Dated: March 24, 2021

## **TABLE OF CONTENTS**

PROCEDURAL HISTORY ............................................................................................... 1

ARGUMENT ................................................................................................................... 2

    A.    Applicable Law ............................................................................................. 2

    B.    Plaintiff Should Not Be Permitted To Amend a Third Time ................................ 3

        1.    Plaintiff's Amendments Violate Rule 8 ................................................ 3

        2.    Plaintiff Fails to Satisfy Rule 16's Good Cause Standard ......................... 4

        3.    Plaintiff's Motion Should Be Denied Under Rule 15 as Prejudicial and Futile ..................................................................................... 8

CONCLUSION ............................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Med. Ass'n* v. *United Healthcare Corp.*,
2006 WL 3833440 (S.D.N.Y. Dec. 29, 2006) ..........................................................................7

*Am. Tissue, Inc.* v. *Donaldson, Lufkin & Jenrette Sec. Corp.*,
233 F.R.D. 327 (S.D.N.Y. 2005) ..........................................................................................5, 9

*Anderson* v. *Greene*,
2017 WL 3503686 (S.D.N.Y. Aug. 16, 2017), *aff'd,* 774 F. App'x 694 (2d Cir. 2019) ..........6

*Banco Safra S.A.* v. *Samarco Mineracao S.A.*,
2021 WL 825743 (2d Cir. Mar. 4, 2021)...............................................................3, 8, 12, 15

*Chambers* v. *Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)...................................................................................................10

*S.E.C.* v. *DCI Telecommunications, Inc.*,
207 F.R.D. 32 (S.D.N.Y. 2002) ...............................................................................................7

*Denny* v. *Barber*,
576 F.2d 465 (2d Cir. 1978).....................................................................................................12

*DiGennaro* v. *Whitehair*,
467 F. App'x 42 (2d Cir. 2012) .................................................................................................2

*In re Elysium Health-ChromaDex Litig.*,
2021 WL 194994 (S.D.N.Y. Jan. 19, 2021) .............................................................................7

*Geo-Grp. Commc'ns, Inc.* v. *Shah,*,
52020 WL 5743516 (S.D.N.Y. Sept. 25, 2020)........................................................................4

*Gullo* v. *City of New York*,
540 F. App'x 45 (2d Cir. 2013) .................................................................................................2

*Int'l Techs. Mktg., Inc.* v. *Verint Sys., Ltd.*,
2021 WL 982208 (2d Cir. Mar. 16, 2021)................................................................................2

*JCorps Int'l, Inc.* v. *Charles & Lynn Schusterman Fam. Found.*,
828 F. App'x 740 (2d Cir. 2020) ..............................................................................................8

*Johnson & Johnson* v. *Guidant Corp.*,
2010 WL 571814 (S.D.N.Y. Feb. 16, 2010)..........................................................................3, 9

*Lucente* v. *Int'l Bus. Machs. Corp.*,
310 F.3d 243 (2d Cir. 2002)......................................................................................................8

*Morelli* v. *Alters*,
   2020 WL 6508858 (S.D.N.Y. Nov. 5, 2020) ...........................................................................2

*Morency* v. *NYU Hosps. Ctr.*,
   728 F. App'x 75 (2d Cir. 2018) ............................................................................................12

*Ong* v. *Chipotle Mexican Grill, Inc.*,
   294 F. Supp. 3d 199 (S.D.N.Y. 2018), *aff'd sub nom. Metzler Inv. Gmbh* v.
   *Chipotle Mexican Grill, Inc.*, 970 F.3d 133 (2d Cir. 2020) .............................................3, 4, 6

*PI, Inc.* v. *Quality Prod., Inc.*,
   907 F. Supp. 752 (S.D.N.Y. 1995)........................................................................................10

*Soroof Trading Dev. Co.* v. *GE Microgen, Inc.*,
   283 F.R.D. 142 (S.D.N.Y. 2012) ............................................................................................8

*Southern Telecom, Inc.* v. *ThreeSixty Brands Group, LLC*,
   2021 WL 979567 (S.D.N.Y. Mar. 16, 2021) ........................................................................3, 4

*Sprague* v. *Salisbury Bank & Tr. Co.*,
   969 F.3d 95 (2d Cir. 2020)......................................................................................................8

*White* v. *Connecticut Dep't of Child. & Families*,
   330 F. App'x 7 (2d Cir. 2009) .................................................................................................2

*White* v. *Smith*,
   2018 WL 8576594 (N.D.N.Y. Dec. 12, 2018), *R&R adopted*, 2019 WL
   1090802 (N.D.N.Y. Mar. 8, 2019)...........................................................................................3

*Williams* v. *Rosenblatt Sec. Inc.*,
   2016 WL 4120654 (S.D.N.Y. July 22, 2016) ...........................................................................4

*Youngers* v. *Virtus Inv. Partners Inc.*,
   2017 WL 5991800 (S.D.N.Y. Dec. 4, 2017) ...........................................................................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 1 ..................................................................................................................6

Fed. R. Civ. P. 8(d) .............................................................................................................3

Fed. R. Civ. P. 15 ........................................................................................................ *passim*

Fed. R. Civ. P. 16 ........................................................................................................ *passim*

Davis Polk & Wardwell LLP ("Davis Polk" or the "Firm"), Thomas Reid and John Bick (the "Management Committee Defendants"), and Daniel Brass, Harold Birnbaum, John Butler, William Chudd, Sophia Hudson, and Brian Wolfe (the "Additional Defendants") (together, "defendants") respectfully submit this memorandum of law in opposition to plaintiff's motion for leave to amend the complaint for a third time.

Plaintiff offers nothing approaching "good cause" under Rule 16 to amend the complaint yet again at this late date, weeks from the close of fact discovery, and after the completion of document discovery. Nor is his eleventh-hour amendment permissible under Rule 15, where he does nothing more than add literally over a hundred paragraphs of ancillary detail about episodes of which he was already aware, and that do nothing to save his claims from dismissal. Plaintiff is not entitled to amend each time he gets new documents in discovery as a way of continuously publicizing his claims in real time via a public pleading. Plaintiff's tactic is abusive, dilatory, and prejudicial. The motion should be denied.

## PROCEDURAL HISTORY

Plaintiff commenced this action in November 2019, and defendants moved to dismiss in part in February 2020. ECF 1, 34. Plaintiff amended as of right in March 2020, and defendants again moved to dismiss in April 2020. ECF 37, 44. The Court granted defendants' motion in substantial part in October 2020. ECF 78. Plaintiff then amended his complaint for a second time in November 2020, with notice from the Court that he "should not expect any additional opportunities to amend his complaint," by adding 260 new paragraphs and 42 new pages. *Id.* at 79. Defendants again moved to dismiss. ECF 116. That motion remains *sub judice*.

Plaintiff now seeks leave to amend for a third time, to add a further 153 paragraphs and 47 pages, bringing the proposed third amended complaint to 216 pages. ECF 167-2 ("PTAC"). Fact discovery—already extended by seven months in light of plaintiff's failure to comply with

his discovery obligations—is scheduled to close in three weeks, document discovery is complete, and depositions have been scheduled and have commenced.  ECF 27, 143.

## ARGUMENT

### A.    <u>Applicable Law</u>

In the Second Circuit, when a party seeks leave to amend after the Court's deadline to do so has passed, "the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' ***must*** be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'"  *Gullo* v. *City of New York*, 540 F. App'x 45, 46 (2d Cir. 2013) (quoting *Grochowski* v. *Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (quoting Fed. R. Civ. P. 15 and 16)) (emphasis added).

Courts have broad authority, under Rule 16, to enforce scheduling orders and control their dockets.  *DiGennaro* v. *Whitehair*, 467 F. App'x 42, 44 (2d Cir. 2012); *Int'l Techs. Mktg., Inc.* v. *Verint Sys., Ltd.*, 2021 WL 982208, at *3–4 (2d Cir. Mar. 16, 2021) (affirming denial of motion to amend where plaintiff failed to demonstrate good cause under Rule 16).  To establish "good cause," as Rule 16 requires, a party must do more than claim he was "diligent" in drafting the proposed amendments.  *Morelli* v. *Alters*, 2020 WL 6508858 at *1–2 (S.D.N.Y. Nov. 5, 2020) (denying leave to amend under Rule 16).  Courts routinely deny leave to amend under Rule 16 on the basis of prejudice to defendants.  *Id.*; *White* v. *Connecticut Dep't of Child. & Families*, 330 F. App'x 7, 8–9 (2d Cir. 2009) (affirming denial of leave to amend under Rule 16 where amendment was "particularly prejudicial to the defendant").

Moreover, under Rule 15, courts deny leave to amend in instances of "futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."  *Banco Safra S.A.* v. *Samarco Mineracao S.A.*, 2021 WL 825743, at *4 (2d Cir. Mar. 4, 2021) (summary order).  Where

amendments "'could not withstand a motion to dismiss,'" courts deny amendments on the basis of futility. *Southern Telecom, Inc.* v. *ThreeSixty Brands Group, LLC*, 2021 WL 979567, at *3–4 (S.D.N.Y. Mar. 16, 2021) (denying motion to amend under Rule 15(a) on ground of futility) (quoting *Dougherty* v. *Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)). And where a plaintiff has, despite multiple opportunities to amend, failed repeatedly to "cure deficiencies by amendments previously allowed," courts deny leave on this basis. *Ong* v. *Chipotle Mexican Grill, Inc.,* 294 F. Supp. 3d 199, 240 (S.D.N.Y. 2018), *aff'd sub nom. Metzler Inv. Gmbh* v. *Chipotle Mexican Grill, Inc.*, 970 F.3d 133 (2d Cir. 2020) (affirming denial of leave to amend) (citations omitted).

**B.      Plaintiff Should Not Be Permitted To Amend a Third Time**

1.      Plaintiff's Amendments Violate Rule 8

As a preliminary matter, plaintiff's extensive proposed amendments—153 new paragraphs and 47 new pages, which excerpt self-servingly from thousands of documents produced in discovery—serve no purpose other than to place in the public record snippets of evidence that plaintiff believes supports his current claims. This is not the function of an amended complaint under the federal notice pleading standard, and amendment is not necessary to prosecute plaintiff's existing claims. *E.g.*, Fed. R. Civ. P. 8(d) ("Each allegation *must* be simple, concise, and direct.") (emphasis added). Courts deny leave to amend where amended pleadings "run[] afoul" of Rule 8's "short and plain statement" requirement "by adding unnecessary details and arguments in an attempt to bolster [the plaintiff's] claims." *White* v. *Smith*, 2018 WL 8576594, at *9 (N.D.N.Y. Dec. 12, 2018), *R&R adopted*, 2019 WL 1090802 (N.D.N.Y. Mar. 8, 2019); *see also Johnson & Johnson* v. *Guidant Corp.*, 2010 WL 571814, at *10–11 (S.D.N.Y. Feb. 16, 2010) (denying leave to amend under Rules 8 and 15). Plaintiff's request should be denied for this reason alone.

2.      Plaintiff Fails to Satisfy Rule 16's Good Cause Standard

Plaintiff's motion should be denied for failure to satisfy Rule 16's good cause standard.  Plaintiff has already been permitted to amend twice, the last time with an admonition from the Court that he "should not expect" further opportunities to amend.  ECF 78 at 79.  Nothing justifies a departure from this ruling at this juncture.

Plaintiff's core argument is that because he received documents in discovery after he filed his second amended complaint, he should be entitled to replead, notwithstanding the pending motion to dismiss.  But the mere fact that document productions arrive after a pleading is filed—the normal course in federal civil litigation—does not constitute "good cause" to amend; that principle would entitle plaintiffs to amend after every production (or deposition).  "Were this a valid ground on which to grant leave to amend," there "would be no end to a plaintiff's opportunities to replead."  *Cf. Ong*, 294 F. Supp. 3d at 240.  To the contrary, courts routinely find that the fact that information has been provided in discovery does *not* constitute "good cause" to amend.  *See, e.g.*, *Southern Telecom,* 2021 WL 979567, at *6–7 (denying leave under Rule 16); *Geo-Grp. Commc'ns, Inc.* v. *Shah*, 2020 WL 5743516 at *17 (S.D.N.Y. Sept. 25, 2020) (same).

In this case in particular, granting plaintiff leave to replead "would moot the defendants' motion to dismiss and render wasted the expense of filing that motion"; to "allow the plaintiff to amend the current complaint repeatedly when challenged with a motion to dismiss would promote wasteful motion practice."  *Williams* v. *Rosenblatt Sec. Inc.*, 2016 WL 4120654, at *6 (S.D.N.Y. July 22, 2016) (denying leave to amend under Rule 15, finding that the motion to amend was not in good faith and would result in further expense to defendants).  Plaintiff's serial motion practice—which repeatedly forces defendants into costly rounds of correspondence and briefing—is abusive and wasteful, and represents an improper attempt to circumvent a pending motion to dismiss.  "Defendants and the Court cannot be expected to deal with a constantly shifting

target, as plaintiff revises and re-revises its claims." *Am. Tissue, Inc.* v. *Donaldson, Lufkin & Jenrette Sec. Corp.*, 233 F.R.D. 327, 329 (S.D.N.Y. 2005) (denying leave to amend).   Any contention that, were plaintiff granted leave to amend, defendants would not need to re-brief the pending motion to dismiss is contradicted by plaintiff's own statements; plaintiff expressly claims that his amendments are intended to, and should, cause the pending motion to be denied. *See, e.g.*, ECF 166  at 16 (stating that "[t]he Proposed Third Amended Complaint addresses arguments made in Defendants' pending partial MTD and the Court's prior MTD Opinion").

Moreover, the nature of plaintiff's proposed amendments, as discussed in detail below, in no way limits the significant Rule 16 issue that would arise by permitting plaintiff's proposed additional amendments now.  While defendants submit that the appropriate outcome of their pending motion to dismiss should and would not change as a result of the proposed amendments (unless the Court were simultaneously to permit the amendments and be prepared to apply and grant the pending motion to dismiss to the newly-amended complaint, without additional briefing beyond the briefing on this motion), defendants would plainly wish to exercise their right to move against the newly amended complaint, and presumably plaintiff would wish to oppose such a motion.  The end result would be weeks, if not months, of additional motion practice with respect to important threshold issues as to the scope of the claims and the identity of the defendants—all *after* the close of fact discovery.  That result would be extremely prejudicial to defendants and, depending on the ultimate outcome of that motion practice, could critically undermine the progress of this case toward expert discovery and summary judgment.

In addition, plaintiff's proposed amendment completely redefines his alleged associate "comparators," not only by deleting and replacing wholesale the definition previously enshrined within the complaint, *see* PTAC ¶¶ 644–45, but also by abandoning the definition

adopted in plaintiff's written discovery—definitions that have formed the backdrop for months of work (meeting and conferring, collection, review and production of documents, preparations for expert work) in this matter.  Likewise, notwithstanding plaintiff's promise that he would not be adding new claims, ECF 152 at 1 n. 1, plaintiff now concedes that he has added "new allegations," ECF 166 at 7, including—for the first time—an apparent claim that he was treated less well than certain Black associates, PTAC ¶ 292 (alleging that comparators included all associates who "did not make" complaints, irrespective of race), an allegation that defendants' performance review process was "disparately applied," PTAC ¶ 189, and (perhaps) allegations—effectively unaddressed in plaintiff's briefing—that "Defendants' NYSDHR Brief" and Ms. Hudson's June 2016 reviews somehow constitute "adverse employment actions."  ECF 166 at 6–7.  These proposed changes come far too late, given the rapidly approaching completion of fact discovery and the ongoing depositions.

The Federal Rules emphasize the need for the "just, speedy, and inexpensive" resolution of claims.  *E.g.*, Fed. R. Civ. P. 1.  Defendants have cognizable interests in "finality and repose"; requests to "extend[] the pleading stage" "cause Defendants undue prejudice given the[se] interest[s]," and merit denial of leave to amend.  *Ong*, 294 F. Supp. 3d at 240.  Untimely amendments—particularly those that would substantially revise a plaintiff's theories, as plaintiff's amendments do here—are prejudicial to the other party, and courts regularly deny leave to amend on this basis. *See Anderson* v. *Greene*, 2017 WL 3503686, at \*13–14 (S.D.N.Y. Aug. 16, 2017), *aff'd*, 774 F. App'x 694 (2d Cir. 2019) (denying leave to amend under Rule 15 where plaintiff had adopted a "moving target approach" to pleadings, prejudicing defendants).  Courts are particularly loath to permit material amendments where the close of discovery is approaching. *See In re Elysium Health-ChromaDex Litig.*, 2021 WL 194994, at \*5 (S.D.N.Y. Jan. 19, 2021)

(denying leave to amend under Rule 15, in part because "the end of discovery [was] rapidly approaching"); *Youngers* v. *Virtus Inv. Partners Inc.*, 2017 WL 5991800, at *7–8 (S.D.N.Y. Dec. 4, 2017) (denying leave to amend under Rule 15, notwithstanding a finding of good cause under Rule 16, on ground of prejudice where amendments would require re-opening fact and expert discovery).

Plaintiff contends that the result here should be different because he was allegedly unaware of evidence that, in his telling, would make the difference in determining whether his claims survive a motion to dismiss. Plaintiff is wrong on both the facts and the law.[1]

As to the law, none of plaintiff's cases stands for any position contrary to that set forth above. In *Am. Med. Ass'n* v. *United Healthcare Corp.*, which plaintiff cites for the proposition that his proposed amendments should be allowed because new evidence was uncovered in discovery, the court allowed a portion of the new claims because discovery was in "the early stages" and had been stayed, and because the deadline for filing motions to amend had not expired. 2006 WL 3833440 at *4 (S.D.N.Y. Dec. 29, 2006). The opposite is true here. Plaintiff's citation to *S.E.C.* v. *DCI Telecommunications, Inc.* is likewise inapposite; in that case, the court found no prejudice under Rule 15 when it granted leave to amend because, understanding that the parties agreed that the plaintiff could file *an entirely new action* based on the new claims, the court believed commencing a second independent action would be more costly and inconvenient than permitting amendment. 207 F.R.D. 32, 35 (S.D.N.Y. 2002). There is, again, no similar set of equities to weigh here. Plaintiff's citation to *Soroof Trading Dev. Co.* v. *GE*

---

[1]    Nor is there any merit to plaintiff's suggestion that the timeline of discovery in this action was attributable to defendants or that supposed delays on the part of the defendants alter the calculus here. Plaintiff entirely mischaracterizes the history of discovery in this matter; as set forth at Exhibit 1, defendants' production of documents was diligent, more thorough than required, and conducted without even basic engagement by plaintiff until the eleventh hour. *See* Birenboim Decl. Ex. 1 (Feb. 1, 2021 Letter to D. Jeffries).

*Microgen, Inc.* is likewise readily distinguishable; in that case, unlike here, the plaintiff asserted an existing claim *against a new defendant* with facts "more varied and more detailed than those asserted in the original complaint."  283 F.R.D. 142, 149 (S.D.N.Y. 2012).

3.    <u>Plaintiff's Motion Should Be Denied Under Rule 15<br>as Prejudicial and Futile</u>

Putting aside plaintiff's failure to demonstrate good cause, which is fatal in the Second Circuit, Rule 15 provides an independent basis to deny plaintiff's motion.  Rule 15 prohibits amendments in instances of "futility." *Banco Safra S.A.*, 2021 WL 825743, at \*4 (noting that the Rule also bars amendments with "dilatory motive," or in cases of "undue prejudice" or "repeated failure to cure deficiencies by amendments previously allowed"); *see, e.g.*, *JCorps Int'l, Inc.* v. *Charles & Lynn Schusterman Fam. Found.*, 828 F. App'x 740, 746 (2d Cir. 2020) (denying leave to amend where amendments were "conclusory" and "insufficient" to cure deficiencies in original complaint); *Sprague* v. *Salisbury Bank & Tr. Co.*, 969 F.3d 95, 101 (2d Cir. 2020) (denying leave to amend where appellants "presented no basis for the district court to believe they could allege facts withstanding a 12(b)(6) motion"); *Lucente* v. *Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (denying leave to amend under Rule 15 where it was "unlikely to be productive").

None of the inferences plaintiff claims were revealed in discovery requires or even justifies amendment here, and none would suffice to restore any claim on the cusp of dismissal.

As a preliminary matter, plaintiff ignored the Court's express admonition that it "expect[ed] to see . . . arguments in the pending motion" "regarding the impact of the proposed amended complaint on the currently pending motion to dismiss."  March 9, 2021 Tr. at 9–10. Plaintiff provided (i) a mere conclusory paragraph asserting that certain "excerpts from" the Court's order on defendants' partial motion to dismiss would be "cured through the Proposed Third

Amended Complaint," ECF 166 at 16, and (ii) a chart that outlined the "excerpts" of the Court's order that plaintiff seeks to address. ECF 167–3 (Plaintiff's "Exhibit C"). But plaintiff offered not a single citation, in that chart or elsewhere, to any specific amendments that would "cure" the "excerpts." (Plaintiff's brief promises to discuss "facts," ECF 166 at 13, but then fails to do so.) Likewise, plaintiff "cites no binding authority in support of the legal viability" of his promise that any proposed amendments would save claims subject to the pending motion to dismiss. *Am. Tissue, Inc.*, 233 F.R.D. at 329–30. Plaintiff's brief in essence asks defendants, or the Court, to do for him the work of finding, amidst 153 new proposed paragraphs, the details that might save his claims, and then of arguing against them. This is improper burden-shifting.

In any event, none of the detail or distraction plaintiff proposes to add would save any claim that is the object of the pending motion from dismissal. Courts routinely find that amendments that would not survive a motion to dismiss are futile and deny leave to amend on this basis. Defendants proceed in the order established at plaintiff's Exhibit C (ECF 167–3), numbering each row of his chart from 1 to 12.

**Discrimination Claims.** *First* (row 1), plaintiff appears to contend that his amendments enhance discrimination claims against "Davis Polk." Ex. C, row 1. These amendments are irrelevant and futile; defendants have not moved to dismiss claims against the Firm. *Johnson & Johnson*, 2010 WL 571814, at \*10–11 (denying leave to amend and finding that new detail about claim not subject to motion to dismiss was "unnecessary").

*Second* (rows 2, 3), plaintiff attempts to salvage the claim, previously dismissed by the Court, that Mr. Brass acted with discriminatory intent in allegedly replacing Mr. Cardwell on a deal. ECF 78 at 41–42; Ex. C, row 2. This amendment is futile for two reasons. For one, plaintiff's own amendments describe Mr. Brass's motivations as race-neutral: "Mr. Brass was

hoping to work with *any* associate so long as that associate was not Mr. Cardwell." PTAC ¶ 229. Mr. Cardwell was neither the only Black associate in his class nor in the M&A group, and does not allege otherwise. For another, plaintiff attempts to suggest that Mr. Brass "stopped looking for an associate with a particular type of documented performance or ability." PTAC ¶ 231. But the email from which plaintiff selectively excerpts, which is incorporated by reference in the complaint and could be considered in connection with any motion to dismiss, flatly refutes plaintiff's claims. *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). In the email, Mr. Brass initially limited his request for help to a "<u>good</u> second year or <u>great</u> first year," but once told that no "strong 1st year" was "available," and the "only 2nd year" available was Mr. Cardwell, expanded his request from only "great" first years to all "other first years (regardless of ability)," explaining that "last time I used [Cardwell] it really wasn't great." Birenboim Decl. Ex. 2. The email supplies no plausible basis to presume discriminatory intent, and none of the facts plaintiff proposes to add about this or any other episode does anything to restore claims against Brass. Indeed, Mr. Cardwell's own complaint concedes that Mr. Brass initially *did* choose to staff Mr. Cardwell on the July 22, 2016 deal (*see* PTAC ¶ 216)—and that Mr. Brass, who later became a staffing partner, "attempted to in the summer of 2017 to [*sic*] staff Mr. Cardwell on multiple public companies deals" (*see* PTAC ¶ 610). *See PI, Inc.* v. *Quality Prod., Inc.*, 907 F. Supp. 752, 764–65 (S.D.N.Y. 1995) (denying leave to amend where "timing demonstrates that it is clearly a dilatory tactic to avoid dismissal of this action").

      ***Third*** (<u>rows 4, 5</u>), plaintiff appears to contend that his amendments would salvage claims that Messrs. Birnbaum and Wolfe, and later Mr. Brass, terminated or failed to staff Mr. Cardwell because of his race. Ex. C, rows 4–5. These amendments are likewise futile.

      Plaintiff devotes dozens of paragraphs to supplying detail with respect to purported

comparators.  But the detail does nothing to save claims against the Additional Defendants here.

To plausibly allege discrimination, a complaint must, as plaintiff is aware, "allege specific facts

supporting *both* the existence of the racial animus *and* the inference of a link between the adverse

treatment and racial animus."  ECF 78 at 40 (quoting *Korova Milk Bar of White Plains, Inc*. v.

*PRE Props., LLC*, 2013 WL 417406, at *9 (S.D.N.Y. Feb. 4, 2013)) (emphasis added)).  Plaintiff

has not plausibly alleged the existence of similarly-situated comparators treated less well than he,

even with the proposed amendments; absent this, he has not plausibly alleged the existence of

animus.[2]  But even if he had, the proposed amendments supply no plausible "inference of a link"

between any adverse treatment and racial animus, as also was true of the prior complaint.  *See id.*;

ECF 116 (defendants' motion to dismiss SAC) at 16.  Plaintiff's proposed amendments are

therefore futile; even with plaintiff's amendments, plaintiff has not plausibly alleged

discrimination.

   Separately, plaintiff's apparent concession that his purported comparators are other

associates rated "behind"—a marked shift, relative to his earlier claims—supplies an independent

basis to dismiss his claims of discrimination as implausibly pleaded, either because (i) plaintiff

cannot plausibly allege that the reason he was deprived of work was his race, as opposed to his

performance, or (ii) because plaintiff cannot make out a "*prima facie* case of discrimination," ECF

78 at 31.

---

[2] For instance, plaintiff devotes dozens of paragraphs to supplying detail about the alleged **performance** of certain purported comparators.  *E.g.*, PTAC ¶¶ 517–528; 644–665.  But he has supplied no plausible allegation that they were in fact **treated less well** than he, as he must to plausibly allege animus on this basis.  Indeed, he concedes that some were staffed "junior to their class year" or on more "routine" assignments.  PTAC ¶ 517.  Likewise, he supplies only one fact in support of the claim that he was given less billable work than they—that Associate 5 billed 813 hours from May to October 2016—but plaintiff's billable hours were higher in the same period (846.9).  Compare PTAC ¶ 301 with PTAC ¶ 305.  His purported comparators were, according to the reviews he cites, managed largely by partners other than those he contends managed him.  And plaintiff fails plausibly to allege that his alleged comparators outlasted him by a significant margin (the evidence will show that the 12 associates plaintiff identified to defendants outlasted him by an average of only 3 to 4 months, *see* Birenboim Decl. Ex. 3).

**Retaliation Claims.**  Plaintiff also appears to argue that his proposed amendments would salvage retaliation claims that might otherwise be dismissed.  They would not.

*First* (row 6), to the extent plaintiff contends that certain proposed amendments relate to "all defendants," Ex. C, row 6, these amendments are unnecessary; plaintiffs have not moved to dismiss claims against the Firm or Messrs. Reid or Bick.

*Second* (row 6), plaintiff appears to claim that the September 2016 episode in which he "declined an assignment in the credit group," which this Court held "does not qualify as protected activity," should be considered "protected activity."  Ex. C, row 6.  Plaintiff had an opportunity to cure this deficiency in his Second Amended Complaint, and attempted to do so (ECF 99 at ¶¶ 189–202, 296 (alleging that Clausen "understood that he just made a race-based discrimination complaint")); *see* ECF 116 at 32.  Plaintiff is not entitled to another opportunity to attempt to bolster this claim; the facts necessary to his recounting of his conversation with Clausen existed entirely in his memory and are not based on new discovery.  Rule 15 prohibits amendments where a plaintiff exhibits "repeated failure to cure deficiencies by amendments previously allowed."  *Banco Safra S.A.*, 2021 WL 825743, at *4; *Denny* v. *Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (denying motion for consideration of second amended complaint, where plaintiff was aware of deficiencies after original complaint and failed to correct them in the first amended complaint); *Morency* v. *NYU Hosps. Ctr.*, 728 F. App'x 75, 76–77 (2d Cir. 2018) (denying leave to amend under Rule 15 where nearly all of the relevant facts giving rise to the new claim were or should have been within plaintiff's possession).

*Third* (row 6), even were the credit group episode considered protected activity, plaintiff's new proposed amendments do not plausibly allege that any Additional Defendant knew of it; at most, plaintiff proposes to allege knowledge by Mses. DeSantis and Crane, and potentially

Mr. Bick, none of whom is relevant to the pending motion.  *See* PTAC ¶¶ 275–84.

        **Fourth**, none of plaintiff's new claims with respect to alleged knowledge of the Additional Defendants that he made complaints warrants amendment here.  Ex. C rows 7–12.

        <u>As to Mr. Chudd (row 7)</u>, plaintiff supplies no plausible basis to conclude that Mr. Chudd "had knowledge of [plaintiff's] September [30,] 2015 complaint"; indeed, the redline of plaintiff's proposed amendments shows that plaintiff has *removed* an allegation that Mr. Chudd knew of that complaint via any mechanism other than an M&A partners' meeting, PTAC ¶ 79, and plaintiff already (implausibly) alleged that he was discussed at that meeting.  *See* PTAC ¶ 94. None of plaintiff's proposed amendments render his allegation that he was discussed at a 2015 partners' meeting more than conclusory.  Any proposed amendments as to Chudd therefore would be futile, for reasons similar to those set forth in defendants' pending motion.  ECF 116 at 21.

        <u>As to Ms. Hudson (rows 8, 9)</u>, plaintiff attempts to suggest that she was "looped in" to discussions about his September 2015 complaint—an allegation this Court found implausible, ECF 78 at 64—because in the early days of his working with her, she requested to see his past performance reviews, and in requesting the reviews, explained to the staffing coordinator that she wanted to "have a read on the situation."  PTAC ¶¶ 85–87.  This is wild conjecture—plaintiff omits (i) that Ms. Hudson made this request in November 2015 after a performance issue known to plaintiff and (ii) that his contemporaneous, handwritten notes from 2016 describe Ms. Hudson as "particularly good at giving feedback," among others.

        But even were this not the case, plaintiff supplies no basis to conclude that the "situation" about which Ms. Hudson was inquiring was plaintiff's purported complaints—made to others, far outside her department—as opposed to his real-time performance on her matter, or that she was making inquiries in anything other than what he concedes was her capacity as "staffing

partner/coordinator in the Capital Markets Group." PTAC ¶ 84. Plaintiff's suggestion that Hudson "possibly" knew about his January 2016 complaint, without any explanation as to why he believes this, PTAC ¶ 544, supplies no basis to restore any claim predicated on Hudson's knowledge of that complaint (this Court previously rejected plaintiff's attempts to claim Hudson knew of it).

Plaintiff's failure plausibly to allege knowledge, on Hudson's part, of either incident refutes any claim that her 2016 review was retaliatory, and documents incorporated by reference into the complaint establish that plaintiff has selectively omitted facts demonstrating that the causal story he attempts to build as to Ms. Hudson is utterly and demonstrably false.[3] Plaintiff's latest proposals as to Ms. Hudson reflect an ongoing refusal to accept that she viewed him as "behind," are entirely conclusory, and would be futile; there is no plausible basis to conclude that any actions she took were retaliatory. For these reasons, and because plaintiff has abandoned his discrimination claims against her, Ms. Hudson should be dismissed from the case, and none of plaintiff's proposed amendments will alter the outcome here.

As to Mr. Butler (row 10), any proposed amendments would be futile, because Mr. Butler was added as a defendant after the deadline to do so had passed. *See* ECF 44 n. 6. Even were this not the case, the proposed amendments supply no plausible basis to conclude that Butler had knowledge of Cardwell's "2015 and 2016 complaints," much less that he acted unlawfully on

---

[3]   For instance, plaintiff concedes that Mr. Bick's 2016 performance review was preceded by a meeting to discuss the "professional development of diverse associates," not initiated *sua sponte* by Mr. Bick; the deck plaintiff cites throughout, PTAC ¶¶ 126–28, would be incorporated by reference in connection with any motion to dismiss, and contains a slide expressly establishing that *plaintiff's request* for additional feedback was what prompted the review, by Mr. Bick in June 2016, that plaintiff describes as a "sham." *See* Birenboim Decl. Ex. 4 (deck showing that plaintiff was viewed as potentially "behind" his class and had requested "more" performance evaluations, and that there had been "difficulty staffing him in Capital Markets based on performance issues."). The document refutes any suggestion that Ms. Hudson was involved in a pretextual or discriminatory review process in 2016; plaintiff's selective excerpting of the record here suggests an effort purely to harass and cause unnecessary delay and needless motion practice, particularly given that documents known to plaintiff make clear that his novel contentions lack evidentiary support.

Plaintiff's characterizations of related evidence are also self-serving and misleading. For instance, plaintiff claims that Ms. Hudson was the "first person at the Firm to rate Mr. Cardwell as 'behind,'" ignoring that Mr. Chudd's review, excerpted in full at ECF 158 n. 6, used that exact word.

the basis of any such knowledge.  ECF 78 at 65.  Plaintiff's only proposed amendments as to Butler supply detail to suggest that certain partners attended M&A group meetings, but nothing to support the entirely conclusory assertion that the entire group devoted time in annual meetings to discuss a junior associate's purported complaints.  PTAC ¶¶ 175–77.  None of plaintiff's new amendments justifies keeping Mr. Butler in this case.  ECF 116 at 22–24.

       As to Messrs. Birnbaum and Wolfe (row 11), plaintiff appears to claim that his amendments would demonstrate that they "knew about [plaintiff's] September 2016 Complaint" from a staffing coordinator (a claim this Court rejected as implausible, ECF 78 at 66).  Plaintiff had an opportunity to cure this deficiency in his Second Amended Complaint, and attempted to do so, by alleging that Ms. Clausen informed Mses. Crane and DeSantis of the issue, and that, in turn, Messrs. Birnbaum and Wolfe "were informed" of the complaint.  ECF 99 at ¶ 209.  Plaintiff should not, under Rule 15, be permitted a repeat opportunity to adjust this claim.  *Banco Safra S.A.*, 2021 WL 825743, at *4.  But even if he were, nothing in plaintiff's proposed amendments supplies any more further basis to conclude that Birnbaum and Wolfe were informed of the September 2016 complaint; the detail plaintiff adds (PTAC ¶¶ 277–284) suggests that others may have been informed, but not that Birnbaum and Wolfe were.

       As to Messrs. Birnbaum, Brass, and Wolfe (row 12), plaintiff appears to suggest, again without citation to fact or law, that his new amendments supply a basis to restore retaliation claims against them (*e.g.*, to restore retaliation claims based on theories other than that they had "knowledge of [plaintiff's] Charges when they terminated him," ECF 78 at 64).

       This claim, and the related assertion as to all Additional Defendants at row 13, neglects that there were two independent bases for dismissing retaliation claims against the Additional Defendants here.  In granting defendants' motion to dismiss, this Court found that

"even if Cardwell had plausibly alleged that the Additional Defendants had knowledge of his protected activity, he has not plausibly alleged that the Additional Defendants did anything that was <u>reasonably likely to deter him</u> from engaging in further protected activity because of his race," and that this was an "alternative ground on which to dismiss Cardwell's claims against Butler, Chudd, and Hudson and against Brass, Birnbaum, and Wolfe to the extent those claims are based on adverse actions other than his firing." ECF 78 at 69.  Whatever plaintiff might seek to allege with respect to knowledge on the part of Birnbaum, Brass, or Wolfe—none of it plausible—he has done nothing to suggest, in his amendments, a plausible basis to conclude that their actions, including with respect to his staffing, were "reasonably likely to deter him from engaging in further activity because of his race." *Id.*  The same is true of the remaining Additional Defendants.  The proposed amendments would therefore be futile, and leave to amend is properly denied.

**CONCLUSION**

For the reasons set forth above, defendants respectfully request that the Court deny

plaintiff's motion for leave to file a third amended complaint under Rules 8, 15, and 16.


Dated:         March 24, 2021
                New York, New York

                           Respectfully submitted,


                           PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP


                           By: /s/ Bruce Birenboim
                              Bruce Birenboim
                              Jeh C. Johnson
                              Susanna Buergel
                              Marissa C.M. Doran

                           1285 Avenue of the Americas
                           New York, New York 10019-6064
                           Telephone: (212) 373-3000
                           bbirenboim@paulweiss.com
                           jjohnson@paulweiss.com
                           sbuergel@paulweiss.com
                           mdoran@paulweiss.com
                           *Attorneys for Defendants*