UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
   KALOMA CARDWELL,

                               Plaintiff,

                  -v-

   DAVIS POLK & WARDWELL LLP, THOMAS
   REID, JOHN BICK, WILLIAM CHUDD,
   SOPHIA HUDSON, HAROLD BIRNBAUM,
   DANIEL BRASS, BRIAN WOLFE, and JOHN
   BUTLER,

                              Defendants.
-----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/23/2021

1:19-cv-10256-GHW

ORDER

GREGORY H. WOODS, United States District Judge:

**I. Background**

      The Court assumes familiarity with the facts in the Court's June 28, 2021 opinion regarding Defendants' motion for attorneys' fees. In that opinion, the Court explained:

> [T]he discovery deficiencies at issue in Defendants' motion to compel are of the type that are expected to be resolved without the need for court intervention. Rule 37(a)(5) creates an incentive for parties to work through such disputes, rather than to submit them to a court for resolution. Civil litigators are expected to be aware of the fee shifting nature of the rule; Defendants were not required to specifically request an award of fees. Regardless of how he is being compensated, or his level of experience in this area of practice, it is not unjust in this context to expect Plaintiff's counsel to comply with the rules and to bear the economic consequences of non-compliance. However, the Court cannot evaluate the proper amount of an award without the documents referred to above. Accordingly, the Court requests that Defendants submit the relevant billing records to the Court no later than July 15, 2021.

June 28, 2021 Opinion at 11–12. On July 15, 2021, Defendants submitted a reply memorandum of law and contemporaneous billing records associated with bringing the motion to compel. Dkt. Nos. 192–193. With that information in hand, the Court turns to an assessment of the proper amount of the sanctions award.

## II. Legal Standard[1]

"As with the award of statutory attorneys' fees to a party that prevails on the merits, an award of fees as a sanction for discovery abuse begins with a lodestar analysis." *Rahman v. The Smith & Wollensky Rest. Grp., Inc.*, No. 06 Civ. 6198 (LAK) (JCF), 2008 WL 1899938, at *2 (S.D.N.Y. Apr. 29, 2008). The lodestar—"the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). While presumptively reasonable, the lodestar is not "conclusive in all circumstances." *Id.* at 167 (quoting *Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542, 553 (2010)). A district court "may adjust the lodestar when it does not adequately take into account a factor that may properly be considered in determining a reasonable fee. However, such adjustments are appropriate only in rare circumstances, because the lodestar figure [already] includes most, if not all, of the relevant factors constituting a reasonable attorney's fee." *Id.* (internal quotations and citations omitted, alteration in original).

Second Circuit precedent requires a party seeking an award of attorneys' fees to support its request with contemporaneous time records that show "for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). District courts have "considerable discretion" in determining what constitutes a reasonable award of attorneys' fees. *Arbor Hill*, 522 F.3d at 190. The Second Circuit has directed that district "courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir.

---

[1] The Court detailed the relevant legal standard in its June 28, 2021 opinion. *See* Dkt. No. 190. It is reiterated here.

2009)). Those hourly rates "are the market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).

In determining a reasonable hourly fee, the Second Circuit has also instructed district courts to consider "*all* of the case-specific variables." *Arbor Hill*, 522 F.3d at 190. The touchstone inquiry is "what a reasonable, paying client would be willing to pay." *Id.* at 184; *see id.* at 192 ("By asking what a reasonable, paying client would do, a district court best approximates the workings of today's market for legal services."). The court should "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively" and "should also consider that [a client] might be able to negotiate with his or her attorneys." *Id.* at 190. A district court may additionally factor into its determination "the difficulty of the questions involved[,] the skill required to handle the problem[,] the time and labor required[,] the lawyer's experience, ability and reputation[,] the customary fee charged by the Bar for similar services[,] and the amount involved." *OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc.*, No. 09 Civ. 8665 (JGK) (FM), 2010 WL 5538552, at *2 (S.D.N.Y. Dec. 6, 2010) (alterations in original) (quoting *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987)), *report and recommendation adopted*, No. 09 Civ. 8665 (JGK), 2011 WL 43459 (S.D.N.Y. Jan. 5, 2011).

"The district court retains discretion to determine what constitutes a reasonable fee." *Millea*, 658 F.3d at 166 (quoting *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998)). "However, this discretion is not unfettered," and "the district court must abide by the procedural requirements for calculating those fees articulated by [the Second Circuit] and the Supreme Court." *Id.* "Attorney's fees must be reasonable in terms of the circumstances of the particular case . . . ." *Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir. 1999).

**III. Discussion**

The Court has reviewed the billings records submitted by Defendants and finds the number of hours for which Defendants seek compensation to be excessive. Defendants seek compensation for 121.4 hours of work. At the rates billed by the attorneys involved, the aggregate amount at issue is $99,565.20.

To start, the Court ordered sanctions only with respect to the cost of briefing the motion—not the full life cycle of the discovery dispute that led up to it. The contemporaneous billing records reveal that some of the hours submitted were spent preparing for a meet and confer and a pre-motion conference. Dkt. No. 193-1 at 2–4; *see also* Declaration of Susanna Buergel, Dkt. No. 132, ¶ 4. The Court subtracts the hours relating to the meet and confer and pre-motion conference because they were not spent on the motion to compel. That results in a reduction of 9.3 hours for Ms. Buergel; 7.5 hours for the senior associate; and 5.4 hours for the junior associate. That leaves 99.2 hours of time expended on briefing the motion itself.

99.2 hours of work on this motion to compel is excessive. The legal principles at issue in the motion were not particularly complex. As the Court observed in its decision on the sanction motion, the nature of the deficiencies was relatively clear. While the deficiencies were extensive, and required that Defendants marshal and organize a substantial volume of Plaintiff's discovery responses, the memorandum of law in support of the motion itself was relatively short—consistent with the relative simplicity of the legal issues presented. The Court has reviewed the time of the lawyers involved and believes that, while the partner time involved in the briefing of this motion was reasonable, the associates' time was excessive (66 hours for the junior associate; and 23.1 hours for the senior associate). The Court exercises its discretion to reduce the number of hours of each associate by 20%, which yields 52.8 hours for the junior associate, and 18.48 hours for the junior associate.

The billing records show that the rate charged for Mr. Barenboim and Ms. Buergel, both partners at Paul Weiss, was $1,485 per hour. The rate for the senior associate was $958.50 per hour, and for the junior associate, $598.50. The paralegal's hourly rate was $297.00. Defendants affirm that the rates in the contemporaneous billing records are "the rates offered to and paid for by the client." Dkt. No. 132 at 2. That is the touchstone inquiry here: "what a reasonable, paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 184; *see id.* at 192 ("By asking what a reasonable, paying client would do, a district court best approximates the workings of today's market for legal services."). Therefore, the Court uses those rates for purposes of calculating the lodestar. Those rates, applied to the discounted total number of hours for Defendants' work on the motion to compel calculated above, yields $62,858.88 in fees.

While presumptively reasonable, the lodestar is not "conclusive in all circumstances." *Millea*, 658 F.3d at 167 (quoting *Perdue*, 559 U.S. at 553). The Court has significant discretion in setting the amount of an appropriate reward. *Arbor Hill*, 522 F.3d at 190.

A substantial reduction in the lodestar is warranted here. At the outset, the Court notes that it has "wide discretion to apportion Rule 37 monetary sanctions between a party and its counsel." *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-cv-1318 (GBD)(BCM), 2017 WL 3671036, at *20 (S.D.N.Y. July 18, 2017), *report and recommendation adopted*, 2017 WL 4712639 (S.D.N.Y. Sept. 28, 2017). Here, given that the motion was made necessary as a result of disputes regarding Plaintiff's misunderstanding of the relevant discovery rules, rather than, for example, a failure to conduct an adequate search by Plaintiff personally, the Court believes that the monetary sanctions here are properly allocated principally to Plaintiff's counsel.

In any event, Plaintiff has presented evidence showing that he is financially incapable of satisfying an award of sanctions. He avers that since his termination from Davis Polk, he has been

unemployed. Declaration of Kaloma Cardwell, Dkt. No. 141-2, ¶ 10. He asserts that he has no savings, cannot afford his rent, and that he has "not made a single payment towards my roughly $50,000 in student loan debt, among other debt, for some time." *Id.* The Court accepts that Mr. Cardwell is incapable of paying a sanction of any amount. For that reason, the Court is not imposing a monetary sanction on Mr. Cardwell.

The imposition of a monetary sanction on counsel for Plaintiff is appropriate, albeit in in a substantially reduced amount. Counsel for Mr. Cardwell also contends that a substantial monetary sanction would cause him financial harm. His affidavit, however, provides little substantive information regarding his financial capacity to pay, presenting broad conclusory statements, without supporting financial data. *See, e.g.*, Declaration of David Jeffries, Dkt. No. 141-1, ¶ 13 ("[A]ny monetary sanction imposed against me personally will have dire consequences on my continued ability to practice law, as well as provide for my family . . . ."). The Court accepts that a substantial sanction would have a deleterious impact on Mr. Jeffries, a solo practitioner, but the information provided in his affidavit does not support the conclusion that he is unable to pay a sanction of any amount.

Mr. Jeffries is litigating this case *pro bono*. *Id.* ¶ 10. Mr. Jeffries is a "solo practitioner with a primary specialty in criminal defense" who took on the case "with knowledge that Mr. Cardwell's attempts to secure representation were frustrated by his then-current financial constraints and the concerns that other lawyers expressed regarding their willingness to pursue a case against Davis Polk, given the Firm's connections, power, and entrenchment within the legal community." *Id.* Mr. Jeffries took on a case outside of the area of his usual practice to pursue what he viewed as a meritorious claim for equal justice against a Goliath. That instinct is laudable. The fact that Mr. Jeffries took on this case *pro bono* under these circumstances weighs in favor of a reduction in the amount of the sanction award here.

However, it does not weigh so heavily that the Court believes that no sanction is appropriate. As the Court wrote in its prior order, Rule 37(a)(5)(A) establishes the default rule that an award of fees will be imposed on the losing party in a motion to compel. There is no exception in the rule for lawyers with limited experience with federal civil litigation, or for lawyers who believe strongly in the importance of their case. This motion illustrates the high costs that result from unnecessary discovery disputes. The rule discourages such unnecessary disputes by requiring that parties have some "skin in the game" when they engage in discovery practices that result in motion practice. Some sanction should be imposed here to vindicate that principle.

Having balanced the relevant factors, the Court concludes that a sanctions award of $4,000 against Plaintiff's counsel is appropriate here. This is a dramatic reduction from the cost that Plaintiff's unjustifiable positions in discovery actually imposed on Defendants, and 6.3% of the lodestar calculated by the Court. It does not make Defendants whole. However, given the equitable considerations outlined above, an award of this amount is reasonable.

**IV. Conclusion**

The Court imposes a sanction in the amount of $4,000 on Mr. Jeffries, payable to Defendants. The Court requests that the parties propose a reasonable schedule for the payment of this amount.

Dated: September 23, 2021
New York, New York

GREGORY H. WOODS
United States District Judge