**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KALOMA CARDWELL,

                              Plaintiff,

              v.

DAVIS POLK & WARDWELL LLP, THOMAS REID,
JOHN BICK, WILLIAM CHUDD, SOPHIA HUDSON,
HAROLD BIRNBAUM, DANIEL BRASS, BRIAN
WOLFE, and JOHN H. BUTLER,

                              Defendants.

**1:19-cv-10256-GHW**

## DEFENDANTS' ANSWER TO
## THIRD AMENDED VERIFIED COMPLAINT

Davis Polk & Wardwell LLP ("Davis Polk" or "the Firm"), together with John
Bick, Harold Birnbaum, Daniel Brass, John H. Butler, William Chudd, Sophia Hudson, Thomas
Reid, and Brian Wolfe (the "individual defendants," and together with Davis Polk,
"defendants"), through their counsel, respectfully submit the following Answer to the Third
Amended Verified Complaint filed October 4, 2021 by plaintiff, Kaloma Cardwell
("Complaint").  (ECF 200.)

### DEFENDANTS' ANSWERS TO SPECIFIC ALLEGATIONS

Defendants deny each and every allegation contained in the Complaint, including
those in headings, introductory quotations, and unnumbered paragraphs, except as specifically
admitted in this Answer, and then only as to the specific facts and not as to any conclusion,
characterization, implication, innuendo, or speculation contained in any allegation or in the
Complaint as a whole.

1.      Deny each and every allegation in paragraph 1 of the Complaint, and state that, to the extent paragraph 1 of the Complaint alleges a disparate impact claim, no response is needed, as any such claim has been dismissed, except admit that plaintiff was an associate at Davis Polk from September 15, 2014 through August 10, 2018.

2.      Deny each and every allegation in paragraph 2 of the Complaint.

3.      Deny each and every allegation in paragraph 3 and footnote 1 of the Complaint, except admit that, on August 3, 2017, plaintiff filed a Charge of Discrimination against one defendant (Davis Polk) with the Equal Employment Opportunity Commission ("EEOC") and checked the box indicating his desire that the charge also be filed with the State or local agency; that in October 2017, the New York State Division of Human Rights ("NYSDHR") sent Davis Polk a letter dated October 10, 2017 enclosing a copy of a "Verified Complaint" filed by plaintiff against the Firm; that the Firm submitted (to the NYSDHR) a Response to Cardwell's charge on December 5, 2017; that on or about August 6, 2019, the EEOC issued plaintiff a "Dismissal and Notice of Rights," explaining that it was "closing its file" on plaintiff's charge because it had "adopted the findings of the state or local fair employment practices agency that investigated this charge"; that on November 4, 2019, plaintiff filed a complaint in the United States District Court for the Southern District of New York (the "SDNY Action"); that on December 9, 2019, after the Firm requested a copy of the NYSDHR's "findings," the EEOC rescinded its August 6, 2019 letter and issued a corrected "Right to Sue Letter," stating that "the wrong closure document was issued due to a clerical error," and that the corrected letter was being issued at plaintiff's request, not due to the adoption of findings of the NYSDHR; and that the "Right to Sue" letter referred only to Davis Polk, not to any individuals who are now individual defendants in the SDNY

Action (none of whom Cardwell named as a respondent in his administrative action (the "NYSDHR/EEOC Action")).

4.      Deny each and every allegation in paragraph 4 of the Complaint overall and in addition, on the ground that the phrase "all relevant times" is undefined, and therefore, vague and ambiguous, except deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 4 of the Complaint concerning plaintiff's residence, and admit that plaintiff identifies as an "African-American/Black ('Black') male"; that he worked at the Firm's New York office, which is located at the listed address; that plaintiff was employed by the Firm as a summer associate from May 2013 until July 2013 and as an associate from September 15, 2014 through August 10, 2018; that he rotated through the Credit (now called "Finance") group from September 2014 until April 2015, the Mergers and Acquisitions ("M&A") group from April 2015 until October 2015, and the Capital Markets group from October 2015 until April 2016; that he was assigned to the M&A group from April 2016 until his departure on August 10, 2018; and that plaintiff purports to do as he says in footnote 2 of the Complaint.

5.      Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 5 of the Complaint.

6.      Deny each and every allegation in paragraph 6 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations regarding the reputation of *Chambers Associate*, and admit that Davis Polk is registered as a limited liability partnership under the laws of the State of New York; that Davis Polk and its associated entities operate in ten cities in seven countries in the Americas, Europe, and Asia; that the New York offices of Davis Polk are located at 450 Lexington Avenue, New York, New York 10017; that plaintiff was employed by Davis Polk as a summer associate from May 2013 until July 2013

and as an associate from September 15, 2014 through August 10, 2018; that in 2019, Davis Polk and its associated entities employed over 165 partners, 103 counsel, and 778 associates; that in the summer of 2019, Davis Polk and its associated entities employed over 100 summer associates; and that the Firm has done legal work on behalf of the companies listed in the final sentence of paragraph 6, and aver that the Firm is an industry leader in diversity and inclusion, consistently ranking in the top 26 firms on *The American Lawyer*'s Diversity Scorecard.

7.      Deny each and every allegation in paragraph 7 of the Complaint on the ground that the phrase "all relevant times" is undefined, and therefore, vague and ambiguous, except admit that Reid was a partner in the Firm's Corporate department and served in the listed capacities during plaintiff's time as an associate at the Firm, and that Reid was elected partner in 1995.

8.      Deny each and every allegation in paragraph 8 of the Complaint on the ground that the phrase "all relevant times" is undefined, and therefore, vague and ambiguous, except admit that Bick was a Corporate/M&A partner during plaintiff's time as an associate at the Firm; that Bick served as head of the Firm's Corporate department and a member of the Management Committee from 2011–2019; that Bick served as Global Head of M&A on an interim basis from 2015–2017; and that Bick was elected partner in 1991.

9.      Deny each and every allegation in paragraph 9 of the Complaint on the ground that the phrase "all relevant times" is undefined, and therefore, vague and ambiguous, except admit that Hudson was a partner in the Firm's Corporate department, in the Capital Markets group, during part of plaintiff's time as an associate at the Firm; that Hudson was elected partner in 2014; and that Hudson left the Firm for another firm in September 2018.

10.     Deny each and every allegation in paragraph 10 of the Complaint on the ground that the phrase "all relevant times" is undefined, and therefore, vague and ambiguous, except admit that Chudd was a Corporate/M&A partner during plaintiff's time as an associate at the Firm; that Chudd is one of two partners who currently serve on Davis Polk's alumni committee; that the Firm's alumni network consists of over 3,000 lawyers; and that Chudd was elected partner in 2011.

11.     Deny each and every allegation in paragraph 11 of the Complaint on the ground that the phrase "all relevant times" is undefined, and therefore, vague and ambiguous, except admit that, with respect to the September 2014 to August 2018 time period, Birnbaum became a Corporate/M&A partner in July 2016 and was an associate prior to that time, and that Birnbaum served as one of two junior staffing partners in the M&A group between approximately July 2016 and August 2018.

12.     Deny each and every allegation in paragraph 12 of the Complaint on the ground that the phrase "all relevant times" is undefined, and therefore, vague and ambiguous, except admit that, with respect to the September 2014 to August 2018 time period, Brass became a Corporate/M&A partner in July 2017 and was an associate prior to that time, and that Brass served as one of two junior staffing partners in the M&A group between approximately July 2017 and August 2018.

13.     Deny each and every allegation in paragraph 13 of the Complaint on the ground that the phrase "all relevant times" is undefined, and therefore, vague and ambiguous, except admit that, with respect to the September 2014 to August 2018 time period, Wolfe became a Corporate/M&A partner in July 2015 and was an associate prior to that time, and that Wolfe

5

served as one of two junior staffing partners in the M&A group between approximately July 2015 and July 2017.

14.     Deny each and every allegation in paragraph 14 of the Complaint on the ground that the phrase "all relevant times" is undefined, and therefore, vague and ambiguous, except admit that, during part of plaintiff's time as an associate at the Firm, Butler was a Corporate/M&A partner; that Butler was elected partner in 2002; and that Butler left the Firm for another firm in December 2018.

15.     Paragraph 15 of the Complaint states a legal conclusion.  To the extent a response is required, admit that plaintiff purports to invoke jurisdiction pursuant to the statutes he cites.

16.     Paragraph 16 of the Complaint states a legal conclusion.  To the extent a response is required, deny each and every allegation in paragraph 16 of the Complaint, and specifically deny that plaintiff exhausted administrative remedies as to (i) the individual defendants, none of whom was named as a respondent in the NYSDHR/EEOC Action or (ii) claims not raised in the NYSDHR/EEOC Action, except deny knowledge or information sufficient to form a belief as to when plaintiff received the August 6, 2019 letter.  Deny that the EEOC issued a valid right to sue letter in August 2019 and incorporate by reference the Answer to paragraph 3 of the Complaint. Admit that the NYSDHR issued a purported "Determination and Order of Dismissal for Administrative Convenience" in November 2019, subsequent to filing of the SDNY Action, and in February 2020, informed the parties that it would not reopen the matter.

17.     Deny each and every allegation in paragraph 17 of the Complaint, except admit that, with respect to defendants, venue is proper in this District.

18.     Deny each and every allegation in paragraph 18 of the Complaint, except admit that, in August 2012, plaintiff and others interviewed for summer associate positions at Davis

Polk for the summer of 2013; that plaintiff was a law student at the time; and that the quoted statements appeared on Davis Polk's website as of at least the March 2020 time period, and refer to the full text of the Firm's website for its contents.

19.     Deny each and every allegation in paragraph 19 of the Complaint, except admit that Davis Polk's practice groups are consistently ranked among the world's best; and that Davis Polk received the *International Financial Law Review*'s 2013 "Americas Law Firm of the Year" award, becoming the first firm to win the award two years in a row.

20.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 20 of the Complaint, except admit that plaintiff attended U.C. Berkeley School of Law ("Berkeley Law") in the 2012 to 2014 time period, and that Berkeley Law was ranked by at least one publication as within the top ten law schools in the United States in 2012, 2013, and 2014.

21.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 21 of the Complaint.

22.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 22 of the Complaint, except admit that the Sponsors for Educational Opportunity ("SEO") Law Fellowship program provides incoming law school students of color with paid internships at top law firms, including Davis Polk.

23.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 23 of the Complaint.

24.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 24 of the Complaint.

25.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 25 of the Complaint.

26.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 26 of the Complaint.

27.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 27 of the Complaint.

28.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 28 of the Complaint.

29.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 29 of the Complaint insofar as they relate to law firms other than Davis Polk or to plaintiff's actions, except admit that the Firm participated in Berkeley Law's on-campus interview program in August 2012, and that certain Firm personnel interviewed plaintiff at that time.

30.     Deny each and every allegation in paragraph 30 of the Complaint, except admit that, in or about August 2012, Potischman, a Firm partner in the Firm's Northern California office, interviewed plaintiff; that Potischman served as a hiring partner at the time; and that the Firm received plaintiff's transcript and résumé.

31.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 31 of the Complaint, except admit that plaintiff quotes selectively from Potischman's written notes of the interview referenced in paragraph 31 of the Complaint, and refer to the full text of that document for its contents.

32.     Admit the allegations in paragraph 32 of the Complaint.

33.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 33 of the Complaint insofar as they relate to specific words stated during the interviews referenced, except admit that Blanco and 3 others interviewed plaintiff, and Blanco provided a positive review (though others did not); that it is common, in interviews, for the Firm to ask candidates to specify why they are interested in working at the Firm instead of other law firms; and that the Firm is dedicated to racial inclusion and views the dedication of others to racial inclusion positively.

34.     Deny each and every allegation in paragraph 34 of the Complaint, except admit that plaintiff quotes selectively from comments attributed to Blanco in a Firm summary report from plaintiff's interviews at the Firm, and refer to the full text of that document for its contents.

35.     Admit the allegations in paragraph 35 of the Complaint.

36.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 36 of the Complaint insofar as they relate to the other law firm referenced, and admit that, on or about August 28, 2012, plaintiff accepted the Firm's offer of a place in its 2013 summer associate class with the understanding that he would split his summer between Davis Polk and the other referenced law firm.

37.     Deny each and every allegation in paragraph 37 of the Complaint, except admit that the Firm periodically discussed with plaintiff and other members of the Firm's 2013 summer class their plans for future employment following graduation from law school.

38.     Deny each and every allegation in paragraph 38 of the Complaint, except admit that, as of August 31, 2013, the Firm had 155 partners, one of whom self-identified as African-American or Black.

39.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 39 of the Complaint.

40.     Deny the allegations in paragraph 40 of the Complaint as they purport to allege that Cardwell gave notification to or otherwise informed the Firm of his views on various subjects, and deny knowledge or information sufficient to form a belief about whether Cardwell conveyed, in specific communications between himself and others at the Firm in the summer of 2013, the alleged information in the manner in which it is summarized in paragraph 40.

41.     Deny the allegations in paragraph 41 of the Complaint, except admit that the Firm has made significant investments in efforts to further the recruitment, retention, professional development, and promotion of diverse associates, and that these efforts include efforts to focus and promote the professional development of diverse associates, including their assignments, performance, and experience at the Firm.

42.     Deny each and every allegation in paragraph 42 of the Complaint, and state that, to the extent paragraph 42 of the Complaint alleges a disparate impact claim, no response is needed, as any such claim has been dismissed, and incorporate by reference the Answer to paragraph 41 of the Complaint.

43.     Deny each and every allegation in paragraph 43 of the Complaint, and state that, to the extent paragraph 43 of the Complaint alleges a disparate impact claim, no response is needed, as any such claim has been dismissed, and incorporate by reference the Answer to paragraph 41 of the Complaint.  Admit that Davis Polk has antidiscrimination policies.

44.     Deny each and every allegation in paragraph 44 of the Complaint, and incorporate by reference the Answer to paragraph 41 of the Complaint.

45.     Deny each and every allegation in paragraph 45 of the Complaint, and incorporate by reference the Answer to paragraph 41 of the Complaint.

46.     Deny each and every allegation in paragraph 46 of the Complaint, except admit that Davis Polk recruited plaintiff and did not consider plaintiff's race as a factor in staffing or mentoring him, and incorporate by reference the Answer to paragraph 41 of the Complaint.

47.     Deny each and every allegation in paragraph 47 of the Complaint, except admit that, as a general matter, the Firm attempts to hire, develop, and retain people with the goal that they are or will become excellent lawyers, and incorporate by reference the Answer to paragraph 41 of the Complaint.

48.     Deny the allegations in paragraph 48 of the Complaint, except admit that the Firm considers dedication to issues of social justice, diversity, and inclusion to be consistent with its priorities and commitments as an institution; that it considers such dedication to be an attribute in any recruit, including without limitation plaintiff; and that it encourages vocal and sustained commitment to such issues, including without limitation through its networks of affinity groups, through its pro bono commitments, and through its recruiting efforts.

49.     Deny the allegations in paragraph 49 of the Complaint, and incorporate by reference the Answer to paragraph 48 of the Complaint.

50.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 50 of the Complaint.

51.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 51 of the Complaint, except admit that, on or about October 7, 2013, plaintiff accepted Davis Polk's offer to join the Firm as an associate in the fall of 2014.

52.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 52 of the Complaint, except admit that plaintiff began work as an associate at Davis Polk on September 15, 2014 after informing the Firm that he graduated from Berkeley School of Law.

53.     Deny each and every allegation in paragraph 53 and footnote 4 of the Complaint, and state that, to the extent paragraph 53 of the Complaint alleges a disparate impact claim, no response is needed, as any such claim has been dismissed, except admit that plaintiff purports to describe the document cited in footnote 4 of the Complaint.

54.     Deny each and every allegation in paragraph 54 of the Complaint, except admit that Professor Jerry Kang gave a presentation at Davis Polk entitled "Implicit Bias and the Law" in March 2014, refer to the full text of that document for its contents, and admit that the Firm provides diversity and inclusion trainings regularly in the ordinary course.

55.     Deny each and every allegation in paragraph 55 of the Complaint, except admit that the quoted text appears in the article cited in footnote 5 of the Complaint, and refer to the full text of that document for its contents.

56.     Deny each and every allegation in paragraph 56 of the Complaint, except admit that the Firm supports multiple affinity groups for lawyers who share common interests or backgrounds; that one of these affinity groups is the Black Affinity Group (sometimes called "BAG"); that all associates at the Firm are invited to join any affinity groups of interest to them; and that all associates at the Firm are encouraged to provide feedback to the Firm with respect to issues related to diversity and inclusion.

57.     Deny each and every allegation in paragraph 57 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations insofar as

they relate to the specific contents of discussions that took place at the referenced event and about whether plaintiff attended the event, and admit that, on March 6, 2015, the Firm's "DPWomen" affinity group hosted or sponsored an event entitled "Women at Work"; that a series of three articles authored by Sheryl Sandberg and Adam Grant and published in the *New York Times* were distributed in advance of the event; and that Reid attended the event.

58.     Deny the allegations in paragraph 58 of the Complaint insofar as they purport to attribute specific statements to a "program"; deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 58 of the Complaint insofar as they relate to the specific contents of discussions that took place at the event, and admit that an article entitled "When Talking About Bias Backfires" was distributed in advance of the event, and incorporate by reference the Answer to paragraph 57 of the Complaint.

59.     Deny each and every allegation in paragraph 59 of the Complaint.

60.     Deny each and every allegation in paragraph 60 of the Complaint, except admit that Crane—who is herself African American/Black—was the Executive Director of Personnel at Davis Polk on May 8, 2015; and that, on May 8, 2015, plaintiff sent an email to Crane regarding what he called an "inter-office dynamic," and refer to the full text of that document for its contents.

61.     Deny each and every allegation in paragraph 61 of the Complaint, except admit that, during plaintiff's time as an associate at the Firm, the management committee consisted of three people; that Reid, Bick, and Rouhandeh served on the management committee; and that Crane worked with the Firm's management and oversaw the Firm's human resources, legal recruiting, diversity, equity and inclusion, and professional development departments.

62.     Deny each and every allegation in paragraph 62 and footnotes 6 and 7 of the Complaint, except admit that, during plaintiff's time as an associate at the Firm, Crane oversaw the Firm's professional development departments listed in the Answer to paragraph 61; that DeSantis was the Firm's Director of Professional Development; that Clausen, Fenner, and Fabe were Professional Development Managers, Clausen until August 2017; and that Katz was a Professional Development Coordinator beginning in December 2014.

63.     Deny each and every allegation in paragraph 63 of the Complaint, and incorporate by reference the Answer to paragraph 60 of the Complaint.

64.     Deny each and every allegation in paragraph 64 and footnote 8 of the Complaint, except admit that plaintiff quotes selectively from the document referenced in footnote 8 of the Complaint, and refer to the full text of that document for its contents.

65.     Deny each and every allegation in paragraph 65 of the Complaint, including on the basis that the Court has held that this event did not constitute protected activity (*see* ECF 78 at 58 and ECF 198 at 56), and deny each and every allegation in footnote 9 of the Complaint on the ground that plaintiff fails to specify which version of the Firm's Lawyers' Handbook he purports to quote from, except admit that the Firm encourages lawyers to report perceived or experienced discriminatory behavior or harassment, and that the quoted text—other than the bracketed phrase—appears in the March 21, 2017 version of the Lawyers' Handbook appended as Exhibit 10 to the Third Amended Verified Complaint, and refer to the full text of that document for its contents.  Admit that the Lawyer's Handbook is a resource containing some Firm policies and procedures.

66.     Deny each and every allegation in paragraph 66 of the Complaint, except admit that Crane responded to the email referenced in paragraph 60 of the Complaint, and that the

quoted text appeared, in substance, in her response, and refer to the full text of that document for its contents.

67.     Deny each and every allegation in paragraph 67 of the Complaint.

68.     Deny each and every allegation in paragraph 68 of the Complaint.

69.     Deny each and every allegation in paragraph 69 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 69 of the Complaint insofar as they fail to identify the email communications and meeting invitations referenced or provide any basis on which to evaluate the conclusion in paragraph 69 regarding being "left off."

70.     Deny each and every allegation in paragraph 70 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 70 of the Complaint insofar as they relate to the referenced conference call, conversation with the other associate, or forwarded emails.

71.     Admit the allegations in paragraph 71 of the Complaint.

72.     Deny each and every allegation in paragraph 72 of the Complaint, except admit that on September 30, 2015, members of the Firm's Diversity Committee, as well as the Firm's Director of Professional Development, met with members of the BAG to discuss issues related to diversity and inclusion; and that on September 29, 2015, the associate chair of the BAG—now a partner—sent an email to the Diversity Committee containing, in substance, the quoted text, and refer to the full text of the email for its contents and the accurate quotation.

73.     Deny each and every allegation in paragraph 73 of the Complaint, except admit that Blanco, who is a Firm partner in the Capital Markets group, DeSantis, who was the Firm's Director of Professional Development, and Fabe, who was an Associate Development Manager

at the Firm, were at a meeting on the referenced date that included members of the Firm's

Diversity Committee and Black Affinity Group; and that DeSantis testified at her deposition in

this case regarding her recollections of that meeting and refer to her full testimony for its

contents, and incorporate by reference the Answer to paragraph 72 of the Complaint.

74.     Deny each and every allegation in paragraph 74 of the Complaint, and incorporate

by reference the Answer to paragraph 73 of the Complaint.

75.     Deny each and every allegation in paragraph 75 of the Complaint.

76.     Deny each and every allegation in paragraph 76 of the Complaint, and incorporate

by reference the Answers to paragraphs 72 and 73 of the Complaint.

77.     Deny each and every allegation in paragraph 77 and footnote 10 of the Complaint,

and incorporate by reference the Answers to paragraphs 73 and 76 of the Complaint.

78.     Deny each and every allegation in paragraph 78 of the Complaint, except

incorporate by reference the Answer to paragraph 77 of the Complaint, and admit that the quoted

text appears in the March 21, 2017 version of the Lawyers' Handbook appended as Exhibit 10 to

the Third Amended Verified Complaint, and refer to the full text of that document for its

contents.

79.     Deny each and every allegation in paragraph 79 of the Complaint, and incorporate

by reference the Answers to paragraphs 72-78 of the Complaint.

80.     Deny each and every allegation in paragraph 80 of the Complaint, except admit

that DeSantis and Crane met frequently to discuss a variety of topics, including meeting on or

around October 5, 2015; and incorporate by reference the Answers to paragraphs 72-79 of the

Complaint.

81.     Deny each and every allegation in paragraph 81 of the Complaint, except admit that DeSantis's notes from the October 5, 2015 meeting contain the quoted text; that the name "Kaloma" is handwritten next to the quoted text, refer to the full text of that document for its contents, and incorporate by reference the Answers to paragraphs 72-80 of the Complaint.

82.     Deny each and every allegation in paragraph 82 of the Complaint, and incorporate by reference the Answers to paragraphs 79 and 80 of the Complaint.

83.     Deny each and every allegation in paragraph 83 of the Complaint, including on the ground that the quoted comments did not relate to plaintiff, refer to the full text of DeSantis's notes for their contents, and incorporate by reference the Answers to paragraphs 72-82 of the Complaint.

84.     Deny each and every allegation in paragraph 84 of the Complaint, except admit that plaintiff started a rotation in the Firm's Capital Markets group in October 2015; that Hudson worked in the Capital Markets group; and that, before plaintiff started his rotation in the Capital Markets group, Hudson had previously served as a staffing partner for senior associates who were assigned to the Capital Markets group.

85.     Deny each and every allegation in paragraph 85 of the Complaint, except admit that plaintiff began working on a matter with Hudson on or around October 26, 2015; and that, on November 9, 2015, after experiencing problems with plaintiff's performance, Hudson requested to be sent plaintiff's performance reviews.

86.     Deny each and every allegation in paragraph 86 of the Complaint, except incorporate by reference the Answer to paragraph 85 of the Complaint, and admit that Hudson and Clausen sent the referenced emails, and refer to the full text of those documents and the related record for their contents.

87.     Deny each and every allegation in paragraph 87 of the Complaint.

88.     Deny each and every allegation in paragraph 88 of the Complaint, except admit that Clausen sent the referenced email, and refer to the full text of that document for its contents.

89.     Deny each and every allegation in paragraph 89 of the Complaint.

90.     Deny each and every allegation in paragraph 90 of the Complaint, except admit that the quoted text appeared in an annual review completed by Hudson in January 2017, and refer to the full text of that document for its contents.

91.     Deny each and every allegation in paragraph 91 and footnote 12 of the Complaint, except admit that plaintiff rotated through Hudson's practice group, Capital Markets, from October 2015 until April 2016; that plaintiff worked with Hudson and others during part of that time; and that the document referenced in footnote 12 of the Complaint states "Cardwell's performance over three rotations and at the beginning of his post-rotation assignment to the M&A group was such that it would have warranted giving Cardwell a message that it was time for him to look for another job," and refer to the full text of that document for its contents.

92.     Deny each and every allegation in paragraph 92 and footnote 13 of the Complaint, except admit that, during plaintiff's time as an associate at the Firm, Firm partners in Davis Polk's M&A group had a practice of meeting annually in or around September or October to discuss the performance reviews of more senior M&A associates, but not the reviews of the most junior associates or rotators.

93.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 93 of the Complaint, except admit that, in both 2015 and 2016, Bick received and Reid was forwarded at least one email that was sent by Fenner (copying Crane and DeSantis) to the listserv ma.partners.only@davispolk.com regarding the schedule for the M&A

group's annual review meetings; and that in 2017, Fenner sent at least one email regarding the upcoming review meeting to a group of recipients (copying Crane and DeSantis) that included Bick and Reid, and refer to the full text of those documents for their contents.

94.     Deny each and every allegation in paragraph 94 of the Complaint on the ground that plaintiff was not discussed at the October 2015 meeting, and refer to an email to this effect from Fenner dated September 22, 2015, and deny each and every allegation in footnote 14 of the Complaint.

95.     Deny each and every allegation in paragraph 95 of the Complaint, and incorporate by reference the Answer to paragraph 94 of the Complaint, except admit that Chudd was asked to deliver plaintiff's 2015 annual review to him, and that Chudd did so in December 2015.

96.     Deny each and every allegation in paragraph 96 of the Complaint.

97.     Deny each and every allegation in paragraph 97 of the Complaint.

98.     Deny each and every allegation in paragraph 98 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 98 of the Complaint insofar as they relate to the specific contents of the panel discussion, the length of the panel discussion, or each person in attendance, and admit that Reid participated in a panel discussion in late 2015 at the New York City Bar on topics broadly related to diversity and inclusion; that plaintiff, the other associate (now a partner), and Hudson were in attendance; and that plaintiff quotes selectively from the referenced article, and refer to the full text of that document for its contents.

99.     Deny each and every allegation in paragraph 99 of the Complaint, and incorporate by reference the Answer to paragraph 41 of the Complaint.

100.     Admit the allegations in paragraph 100 of the Complaint.

101.   Deny each and every allegation in paragraph 101 of the Complaint, including on the ground that it is no more rare for Black associates than for other associates "to have a few uninterrupted hours with the Managing Partner of Davis Polk," except deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 101 of the Complaint insofar as they relate to plaintiff's state of mind, knowledge, or understanding.

102.   Deny each and every allegation in paragraph 102 and footnote 15 of the Complaint, except admit that Reid, plaintiff, and the associate described in paragraph 102 of the Complaint (now a partner) had dinner together at the Benjamin Steakhouse in January 2016; that Reid looked at plaintiff's and the other associate's performance reviews prior to the dinner; and that the conversation involved a number of topics, including diversity in the legal profession and in society at large, certain experiences of the associates outside and within the Firm, and their performance reviews.

103.   Deny each and every allegation in paragraph 103 and footnote 16 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 103 of the Complaint insofar as they relate to plaintiff's state of mind, knowledge, or understanding, and admit that Reid testified regarding his recollections of this dinner and refer to his testimony for the contents thereof, and incorporate by reference the Answer to paragraph 102 of the Complaint.

104.   Deny each and every allegation in paragraph 104 of the Complaint.

105.   Deny each and every allegation in paragraph 105 of the Complaint, and incorporate by reference the Answer to paragraph 102 of the Complaint.

106.   Deny each and every allegation in paragraph 106 of the Complaint, except admit that Reid testified regarding his recollections of this dinner and refer to his testimony for the

contents thereof, and further that the Firm engaged an outside consultant with respect to diversity and inclusion in 2016, and incorporate by reference the Answer to paragraph 102 of the Complaint.

107.     Deny each and every allegation in paragraph 107 of the Complaint, except admit that the Firm works to ensure fairness in reviews through training, education, and policy, and incorporate by reference the Answer to paragraph 102 of the Complaint.

108.     Deny each and every allegation in paragraph 108 and footnote 17 of the Complaint overall, and in addition on the ground that plaintiff's reference to unidentified "other leaders and partners" at the Firm in footnote 17 of the Complaint is vague and ambiguous, except admit that as part of Firm-wide diversity and inclusion initiatives, the study referenced in footnote 17 was circulated to certain Firm personnel.

109.     Deny each and every allegation in paragraph 109 of the Complaint.

110.     Deny each and every allegation in paragraph 110 of the Complaint.

111.     Deny each and every allegation in paragraph 111 of the Complaint.

112.     Deny each and every allegation in paragraph 112 of the Complaint.

113.     Deny each and every allegation in paragraph 113 and footnote 18 of the Complaint, including on the ground that plaintiff mischaracterizes the purpose of mid-year reviews.

114.     Deny each and every allegation in paragraph 114 of the Complaint.

115.     Deny each and every allegation in paragraph 115 of the Complaint, except admit that Chudd provided plaintiff with an in-person annual review in December 2015; that Chudd delivered plaintiff feedback noting at least three distinct concerns with respect to his performance, as memorialized in Chudd's summary of the review; and that plaintiff purports to

do as he says in footnote 19 of the Complaint, and refer to the full text of Chudd's summary of the review for its contents.

116.    Deny each and every allegation in paragraph 116 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations insofar as they relate to plaintiff's state of mind, knowledge, or understanding.

117.    Deny each and every allegation in paragraph 117 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations in insofar as they relate to plaintiff's state of mind, knowledge, or understanding, and admit that plaintiff asked Chudd for more direct real-time performance evaluations; and that Chudd told plaintiff to seek input from more senior lawyers on his team after a signing or closing when the matter was still fresh in everyone's mind and to ask for areas in which he could improve.

118.    Deny each and every allegation in paragraph 118 and footnote 20 of the Complaint, and incorporate by reference the Answer to paragraph 117 of the Complaint.

119.    Deny each and every allegation in paragraph 119 of the Complaint on the ground that the allegations mischaracterize the referenced conversation between Chudd and plaintiff, and incorporate by reference the Answer to paragraph 115 of the Complaint.

120.    Deny each and every allegation in paragraph 120 of the Complaint, except admit that Chudd did not state that plaintiff was on probation; that plaintiff specifically requested "more direct real-time performance evaluations," as memorialized in Chudd's summary of the review meeting; that Firm partners delivered feedback in the course of plaintiff's work; and that the Firm delivered a formal review six months later, in June 2016, at the close of plaintiff's third rotation.

121.    Deny the allegations of paragraph 121 of the Complaint insofar as they implicitly incorporate Cardwell's mischaracterization of the meeting, and otherwise deny knowledge or information sufficient to form a belief about what Cardwell told unnamed and unidentified others about the meeting.

122.    Deny each and every allegation in paragraph 122 of the Complaint, and deny in particular that the overheard comment was racial in nature, except admit that the referenced associate and Reid exchanged emails between May 13 and May 14, 2016.

123.    Deny each and every allegation in paragraph 123 of the Complaint.

124.    Deny each and every allegation in paragraph 124 of the Complaint, and incorporate by reference the Answers to paragraphs 72 and 73 of the Complaint.

125.    Deny each and every allegation in paragraph 125 of the Complaint, except admit that the quoted text appears in the document referenced in the last sentence of paragraph 125 of the Complaint, and refer to the full text of that document for its contents, and incorporate by reference the Answers to paragraphs 81 and 83 of the Complaint.

126.    Deny each and every allegation in paragraph 126 of the Complaint, including on the ground that plaintiff mischaracterizes the quoted documents, except admit that Fabe sent an email to DeSantis on June 10, 2016 that contained the non-bracketed language quoted in the second and last sentences of paragraph 126 of the Complaint, except the language quoted in the last sentence (and the referenced revisions) referred to slides about another associate, not plaintiff; that Fabe attached a slide deck to the email that described various associates; that two of the twenty-four slides in the deck were about plaintiff; and that one of the slides about plaintiff contained a summary, drawn from Chudd's review of plaintiff, of certain comments

relayed to Chudd during plaintiff's 2015 annual review, and refer to the full text of those documents for their contents.

127.    Deny each and every allegation in paragraph 127 of the Complaint, except admit that DeSantis and Fabe had a meeting with Bick to discuss the career development of Black associates in the Corporate department; and that an email sent by Fabe to the Diversity Committee on June 14, 2016 contains the language quoted in the last sentence of paragraph 127 of the Complaint, and refer to the full text of that document for its contents.

128.    Deny each and every allegation in paragraph 128 of the Complaint, except admit that the slide deck referenced in paragraph 126 of the Complaint was discussed at the meeting and that Fabe and DeSantis contributed to the process of assembling the slide deck, and refer to the full text of that document for its contents, and incorporate by reference the Answers to paragraphs 72, 73, 126, and 127 of the Complaint.

129.    Deny each and every allegation in paragraph 129 of the Complaint, except admit that DeSantis sent an email to Fenner and Fabe on June 13, 2016 that contained the quoted text, and refer to the full text of that document for its contents.

130.    Deny each and every allegation in paragraph 130 and footnote 21 of the Complaint, and incorporate by reference the Answers to paragraphs 90 and 129 of the Complaint.

131.    Deny each and every allegation in paragraph 131 of the Complaint.

132.    Deny each and every allegation in paragraph 132 of the Compliant, except admit that Crane sent an email to Reid on March 21, 2017 that contained the quoted text, and refer to the full text of that document for its contents.

133.    Deny each and every allegation in paragraph 133 of the Complaint.

134.     Deny each and every allegation in paragraph 134 of the Complaint, except admit that DeSantis, Fabe, and Fenner sent emails on June 13, 2016 containing the quoted text, and refer to the full text of those documents for their contents.

135.     Deny each and every allegation in paragraph 135 and footnote 22 of the Complaint, except admit that DeSantis sent an email to an Associate Development Coordinator on June 13, 2016, that Katz sent an email to Clausen on June 17, 2016, and that Katz sent an email to Crane on June 23, 2016, each containing the quoted text; that Katz's June 23, 2016 email contained a list of associates whom Katz believed would receive mid-year reviews and/or "time to go" messages; that plaintiff's name was on the list next to a note stating "review is on hold"; that members of the Associate Development Department compiled lists such as the one in Katz's June 23, 2016 email; and refer to the full text of the referenced emails for their contents.

136.     Deny each and every allegation in paragraph 136 of the Complaint, including on the ground that Hudson was not the first partner at the Firm to use the word "behind" in connection with plaintiff's performance, and incorporate by reference the Answer to paragraph 135 of the Complaint.

137.     Deny each and every allegation in paragraph 137 of the Complaint, except admit that, in response to the request for more direct real-time performance evaluations plaintiff made during his annual review meeting with Chudd, and because plaintiff had not yet had a review for his third rotation, members of the Associate Development Department sent emails to senior attorneys with whom plaintiff had worked, including Hudson, requesting feedback on plaintiff's performance; and that the emails contained the text quoted in the last sentence of paragraph 137 of the Complaint, and refer to the full text of those documents for their contents.

138.    Deny each and every allegation in paragraph 138 of the Complaint, except admit the allegations in the first sentence of paragraph 138 of the Complaint, and refer to the full text of the referenced email for its contents.

139.    Deny each and every allegation in paragraph 139 of the Complaint.

140.    Deny each and every allegation in paragraph 140 of the Complaint.

141.    Deny each and every allegation in paragraph 141 of the Complaint, except admit that plaintiff selectively quotes from documents in the record, and refer to the full text of those and related documents for their contents.

142.    Deny each and every allegation in paragraph 142 of the Complaint, and incorporate by reference the Answer to paragraph 137 of the Complaint.

143.    Deny each and every allegation in paragraph 143 of the Complaint, except admit that, on June 14, 2016, a summer associate three years junior to plaintiff sent him an email, and refer to the full text of the exchange for its contents.

144.    Admit the allegations in paragraph 144 of the Complaint.

145.    Deny each and every allegation in paragraph 145 of the Complaint, except admit that Bick testified as to his recollections of this meeting and refer to his testimony for the contents thereof; and also admit that, for the reasons identified in the Answer to paragraph 137 of the Complaint, Bick met with plaintiff on June 30, 2016 to discuss plaintiff's reviews.

146.    Deny each and every allegation in paragraph 146 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations insofar as they relate to plaintiff's state of mind, knowledge, or understanding.  Aver that rotators customarily receive reviews after each rotation and plaintiff had not yet received one for his third rotation.

147.     Deny each and every allegation in paragraph 147 and footnotes 23 and 24 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations insofar as they relate to plaintiff's state of mind, knowledge, or understanding, and admit that, as a general matter, the Firm conducts interim reviews for rotating junior associates after each rotation; that plaintiff received such reviews on May 11, 2015 (after his rotation in Credit), and December 2015 (after his rotation in M&A), and that the June 2016 review followed his third rotation in Capital Markets; that Bick arranged the meeting by email rather than email calendar invite; that Davis Polk submitted Bick's summary of his June 30, 2016 meeting with plaintiff in its response to plaintiff's NYSDHR charge; and that Bick's summary contained the quoted text, and refer to the full text of that document for its contents, and incorporate by reference the Answers to paragraphs 144 and 145 of the Complaint.

148.     Deny each and every allegation in paragraph 148 of the Complaint, except admit that Bick sent plaintiff an email on June 30, 2016 asking him to stop by his office regarding an assignment; that Bick and plaintiff met on June 30, 2016; that during that meeting, Bick discussed plaintiff's reviews for the reasons identified in the Answer to paragraph 137 of the Complaint; and that Bick received plaintiff's performance reviews on June 23, 2016.

149.     Deny each and every allegation in paragraph 149 of the Complaint.

150.     Deny the allegations in paragraph 150 of the Complaint insofar as they relate to the specific words stated during the discussion between Bick and plaintiff, except admit that Bick testified as to his recollections of this meeting and refer to his testimony for the contents thereof, and further admit that Bick described to plaintiff concerns with respect to his time management, understanding of the timeline for work tasks and projects, and availability and ability to meet deadlines.

151.   Deny each and every allegation in paragraph 151 of the Complaint, and incorporate by reference the Answer to paragraph 150 of the Complaint.

152.   Deny each and every allegation in paragraph 152 of the Complaint, except admit that the referenced meeting was held for the reasons identified in the Answer to paragraph 137 of the Complaint.

153.   Deny each and every allegation in paragraph 153 of the Complaint, except admit that plaintiff asked Bick to disclose the names of those who had provided comments on his work; and that Bick, consistent with Firm practice, declined to disclose specific names.

154.   Deny each and every allegation in paragraph 154 of the Complaint, except admit that the consolidated feedback delivered by Bick incorporated feedback provided by Hudson, and that Bick's June 2016 Summary Review form contained the quoted text, and refer to the full text of that document for its contents.

155.   Deny each and every allegation in paragraph 155 of the Complaint, and incorporate by reference the Answer to paragraph 153 of the Complaint.

156.   Deny each and every allegation in paragraph 156 of the Complaint, except admit that on or about July 1, 2016 plaintiff contacted a senior associate in Litigation.

157.   Deny each and every allegation in paragraph 157 of the Complaint.

158.   Deny each and every allegation in paragraph 158 of the Complaint.

159.   Deny each and every allegation in paragraph 159 and footnote 25 of the Complaint, except admit that plaintiff quotes from one of his written performance reviews in footnote 25 of the Complaint, and refer to the full text of that document and plaintiff's other reviews for their contents.

160.    Deny each and every allegation in paragraph 160 of the Complaint, except admit that Bick did not conduct any mid-year review in 2016 for any M&A associate other than plaintiff, and deny knowledge or information sufficient to form a belief about the truth of the allegations concerning whether Bick had approved a 2016 mid-year review for any M&A associate who ultimately left the firm prior to mid-year 2016.

161.    Deny each and every allegation in paragraph 161 of the Complaint, except admit that Bick gave plaintiff a research assignment on or around June 30, 2016; that plaintiff emailed Bick a research memo on July 19, 2016; that the memo was 13 pages long; and that Bick did not respond to the specific email by return email to plaintiff.

162.    Deny each and every allegation in paragraph 162 of the Complaint, and state that, to the extent paragraph 162 of the Complaint alleges a disparate impact claim, no response is needed, as any such claim has been dismissed, except admit that plaintiff sent Bick an email on July 26, 2016; that the referenced memo was 13 pages long; that Bick and Cardwell did not have further communication about the memorandum; that Bick's office was two doors away from plaintiff's office in July of 2016; and that plaintiff quotes selectively from the cited documents, and refer to the full text of those documents for their contents.

163.    Deny each and every allegation in paragraph 163 of the Complaint.

164.    Deny each and every allegation in paragraph 164 of the Complaint.  Paragraph 164 also states a legal conclusion.  To the extent a response is required, deny the legal conclusion.

165.    Deny each and every allegation in paragraph 165 of the Complaint.

166.    Deny each and every allegation in paragraph 166 of the Complaint.

167.    Deny each and every allegation in paragraph 167 and footnote 26 of the Complaint, except admit that the Firm conducts performance reviews of its attorneys, including upward reviews.

168.    Deny each and every allegation in paragraph 168 of the Complaint, except admit that the Firm conducts performance reviews of its attorneys; that the Firm solicits written performance reviews from individual reviewers; that review templates for individual performance reviews contain the question, "do you feel this lawyer is performing materially behind, with or ahead of the lawyer's class"; that, upon receiving the individual performance reviews, the Firm develops a "consensus message" or "consensus feedback" to be delivered to the attorney being reviewed; that one Firm partner is asked to deliver the Firm's consensus message to the associate during a subsequent meeting; that a record of that subsequent meeting is generally made on a form titled "Lawyer Reviews – Summary Reviews" ("Summary Review" form) and/or the attachments thereto; and that the Summary Review form contains sections relating to principal matters worked on by the reviewee and strengths and weaknesses of the reviewee's performance, and refer to the Summary Review forms in the record for their contents.

169.    Deny each and every allegation in paragraph 169 and footnote 27 of the Complaint, except admit that, as part of the annual review process, any partner can submit a review form and that performance evaluations were generally requested of all partners and counsel and, at times, associates with whom an associate had worked a certain number of hours during the review period, and incorporate by reference the Answer to paragraph 168 of the Complaint.

170.    Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 170 of the Complaint as to what Cardwell was allegedly told "early in his career" by an unnamed and unidentified person or persons.

171.    Deny each and every allegation in paragraph 171 of the complaint, except admit that, during plaintiff's time as an associate at the Firm, partners in Davis Polk's M&A group generally met annually in or around September or October to discuss the performance reviews of certain more senior M&A associates, but not routinely for more junior associates; and that plaintiff quotes selectively from the document referenced in footnote 28, and refer to the full text of that document for its contents, and incorporate by reference the Answer to paragraph 168 of the Complaint.

172.    Deny each and every allegation in paragraph 172 and footnotes 29 and 30 of the Complaint, except admit that plaintiff quotes selectively from documents, that Bick sent an email in October 2016 to an Associate Development Manager that contained the quoted text in footnote 30; that Reid, Crane, DeSantis, and Fenner at times, but by no means always, attended the referenced meetings, and refer to the full text of the referenced documents for their contents, and incorporate by reference the Answers to paragraphs 93, 168, and 171 of the Complaint.

173.    Deny each and every allegation in paragraph 173 and footnote 31 of the Complaint on the ground that the phrase "sensitive information or topics" is undefined, and therefore, vague and ambiguous; except admit that Fenner sent an email in 2017 containing the text quoted in the first sentence of footnote 31 of the Complaint; and that Fenner sent an email on September 22, 2015 containing the text quoted in the second sentence of footnote 31 of the Complaint, and refer to the full text of those documents for their contents.

174.    Admit the allegations in paragraph 174 of the Complaint, and aver that a meeting was also held on October 26, 2015.

175.    Admit the allegations in paragraph 175 of the Complaint.

176.    Deny each and every allegation in paragraph 176 of the Complaint, except admit that plaintiff was on a list of M&A associates whose performance reviews were scheduled to be discussed at an October 5, 2016 meeting of the M&A group, and incorporate by reference the Answer to paragraph 172 of the Complaint.

177.    Deny each and every allegation in paragraph 177 and footnote 32 of the Complaint, except admit the allegations in the first sentence of paragraph 177 of the Complaint; that plaintiff was on a list of M&A associates whose performance reviews were scheduled to be discussed at an October 11, 2017 meeting of the M&A group; and that an Associate Development Manager sent the email referenced in footnote 32 of the Complaint.

178.    Deny that a performance review meeting occurred in January 2017, except admit that performance review meetings occurred in January and February 2018, and admit the remaining allegations in paragraph 178 of the Complaint.

179.    Deny each and every allegation in paragraph 179 of the Complaint, except admit that plaintiff's performance review file included five consensus feedback statements, and incorporate by reference the Answer to paragraph 168 of the Complaint.

180.    Deny each and every allegation in paragraph 180 of the Complaint, except admit that the image in paragraph 180 depicts a record created by Kyrwood of a meeting in May 2015 in which Kyrwood delivered the Firm's consensus feedback to plaintiff; and that this was the first review plaintiff received as an associate at the Firm. Aver that the http:// address, date in the footer, and page range in the header reflect an unrelated print date.

181.    Deny each and every allegation in paragraph 181 of the Complaint, except admit that records of the referenced meetings were submitted on the dates listed by plaintiff, other than the record of the January 2018 meeting, which was created on January 16, 2018.

182.    Deny each and every allegation in paragraph 182 of the Complaint, and incorporate by reference the Answer to paragraph 588 of the Complaint.

183.    Deny each and every allegation in paragraph 183 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations insofar as they relate to what reviewing attorneys, associates who are being reviewed, and the partner reviewers all understand, and admit that generally, the Firm gives associates advance notice of their annual face-to-face performance review meeting and reviewing attorneys advance notice of the need to submit written performance reviews.

184.    Deny each and every allegation in paragraph 184 of the Complaint, except admit that the Firm's review templates included items assessing the difficulty of the assignment, the attorney's performance, and whether the attorney was performing behind, with or ahead of attorney's class; and that one of the goals of the reviews is that they contain accurate and non-discriminatory evaluations of the person being evaluated.

185.    Deny each and every allegation in paragraph 185 of the Complaint.

186.    Deny each and every allegation in paragraph 186 of the Complaint, except admit that mid-year reviews, which are also referred to as interim reviews or off-cycle reviews, occur for a variety of reasons, including but not limited to a view that the associate has performance deficiencies that should be addressed again before waiting for the annual review process or to following rotations.

187.    Deny each and every allegation in paragraph 187 of the Complaint, except admit that the Firm sometimes informs associates (sometimes after and sometimes without an interim review) that, due to the associate's performance, the Firm has determined that the associate should seek other employment; and that this is sometimes referred to within the Firm as a "time to go" message or meeting.

188.    Deny each and every allegation in paragraph 188 of the Complaint, except admit that it is not uncommon for the Firm to reference an associate's past performance issues during a "time to go" meeting, and incorporate by reference the Answer to paragraph 187 of the Complaint.

189.    Deny each and every allegation in paragraph 189 of the Complaint, except admit that mid-year performance reviews and "time to go" messages or meetings result from a variety of factors, including holistic consideration of an associate's performance.

190.    Deny each and every allegation in paragraph 190 of the Complaint, except admit that in general, the Firm attempts to help underperforming associates improve their performance; and that these efforts sometimes include conducting a performance review outside of an associate's formal annual performance review.

191.    Deny each and every allegation in paragraph 191 of the Complaint.

192.    Deny each and every allegation in paragraph 192 of the Complaint.

193.    Deny each and every allegation in paragraph 193 of the Complaint, including on the ground that plaintiff's reference to unidentified "partners and employees" is vague and ambiguous.

194.    Deny each and every allegation in paragraph 194 of the Complaint.

195.    Deny each and every allegation in paragraph 195 of the Complaint.

196.    Deny each and every allegation in paragraph 196 of the Complaint.

197.    Deny each and every allegation in paragraph 197, and footnotes 33 through 39 of the Complaint, except admit that plaintiff has selectively quoted from certain reviews, and refer to the full text of those documents for their contents, and incorporate by reference the Answer to paragraph 168 of the Complaint.

198.    Deny each and every allegation in paragraph 198 and footnote 40 of the Complaint, except admit that Kyrwood provided an accurate summary of the in-person review meeting conducted with plaintiff in May 2015; and that plaintiff selectively quotes from Krywood's summary, and refer to the full text of that document for its contents.

199.    Deny each and every allegation in paragraph 199 of the Complaint, and state that, to the extent paragraph 199 of the Complaint alleges a disparate impact claim, no response is needed, as any such claim has been dismissed.

200.    Deny each and every allegation in paragraph 200 of the Complaint, except admit that the Firm has antidiscrimination policies, invests in diversity and inclusion training, and makes efforts to train attorneys on related diversity and inclusion literature.

201.    Deny each and every allegation in paragraph 201 of the Complaint, except admit that attorneys were encouraged to use staffing coordinators where feasible, and incorporate by reference the Answer to paragraph 200 of the Complaint.

202.    Deny each and every allegation in paragraph 202 of the Complaint, and state that, to the extent paragraph 202 of the Complaint alleges a disparate impact claim, no response is needed, as any such claim has been dismissed.

203.    Deny each and every allegation in paragraph 203 of the Complaint, except admit that associates could signal capacity on forms; that staffing coordinators could use these forms

and other data in connection with their work; that staffing decisions involved multiple individuals, communications, and sources of data; and that Birnbaum, Brass, and Wolfe served as junior M&A staffing partners for portions of the period referenced in paragraph 203 of the Complaint, and incorporate by reference the Answer to paragraph 204 of the Complaint.

204.    Deny each and every allegation in paragraph 204 of the Complaint, except admit that staffing coordinators play a role in staffing junior associates; that the staffing coordinators referenced in paragraph 204 played a role in staffing plaintiff in the 2014 to 2016 time period; that Fenner was staffing coordinator for M&A and therefore played a role in plaintiff's staffing after he assigned to M&A in April 2016; that Fenner coordinated certain staffing assignments for plaintiff past September 2016, including because plaintiff (who arrived to M&A 6 months after his peers) had less M&A experience than other M&A associates in his class year; and that staffing decisions involve multiple individuals, communications, and sources of data.

205.    Deny each and every allegation in paragraph 205 of the Complaint, except admit that the Firm highlights certain professional achievements and rankings on its website.

206.    Deny each and every allegation in paragraph 206 of the Complaint, and deny the allegation regarding "a non-White senior associate" on the ground that it is vague and ambiguous, except admit that members of the Firm's Asian/South Asian/Middle Eastern (ASAME) affinity group created the slide deck cited in footnote 41 of the Complaint to present to Reid, and refer to the full text of that document for its contents.

207.    Deny each and every allegation in paragraph 207 of the Complaint.

208.    Admit the allegations in paragraph 208 of the Complaint.

209.    Deny each and every allegation in paragraph 209 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations in the last

sentence of paragraph 209 of the Complaint, and admit that Clausen emailed plaintiff on June 30, 2016 to request assistance with a matter; and that Clausen forwarded plaintiff an email from an associate containing the quoted text, and refer to the full text of that document for its contents.

210.     Deny each and every allegation in paragraph 210 of the Complaint, except admit that Bick sent plaintiff an email with the quoted text on June 30, 2016, and refer to the full text of that document for its contents.

211.     Deny each and every allegation in paragraph 211 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations insofar as they relate to plaintiff's or other associates' state of mind, knowledge, or understanding, and admit that plaintiff included requests in his capacity forms to work with particular partners.

212.     Deny each and every allegation in paragraph 212 of the Complaint, except admit that the referenced associate sent the referenced email, and deny knowledge or information sufficient to form a belief about what the associate meant by "10% is enough," but admit, on information and belief, that 10% was referring to expected usage relative to capacity.

213.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 213 of the Complaint, except admit that plaintiff was staffed on at least one matter involving a white female associate senior to plaintiff in or around July 2016.

214.     Deny each and every allegation in paragraph 214 of the Complaint, except admit that plaintiff sent an email to Bick with the quoted text on July 19, 2016; and that Bick did not respond to the specific email by return email to plaintiff, and refer to the full text of Bick's email for its contents.

215.     Deny each and every allegation in paragraph 215 of the Complaint, except admit that the quoted email was sent on July 20, 2015, not 2016, and refer to the full text of that

document for its contents.

216.    Deny each and every allegation in paragraph 216 of the Complaint, except deny knowledge or information sufficient to form a belief about whether plaintiff contacted Brass at Fenner's instruction, and admit that Brass and plaintiff exchanged emails containing the quoted text; that Brass is white; and that at the time of the referenced exchange, Brass, a current M&A partner, was an associate senior to plaintiff; and refer to the full text of the referenced emails for their contents.

217.    Deny each and every allegation in paragraph 217 of the Complaint.

218.    Deny each and every allegation in paragraph 218 of the Complaint.

219.    Deny each and every allegation in paragraph 219 of the Complaint, except admit that Brass did not work with plaintiff on any active deals after July 2016, though he did work to staff plaintiff on deals.

220.    Deny each and every allegation in paragraph 220 of the Complaint, except admit that plaintiff forwarded the email thread referenced in paragraph 216 to Fenner on July 22, 2016 at 6:04 p.m., and that Fenner acknowledged receipt of the email, and aver that plaintiff testified at his deposition that Fenner did provide him with an explanation and refer to his testimony for the contents thereof.

221.    Deny each and every allegation in paragraph 221 of the Complaint, except admit that plaintiff sent an email with the quoted text, and that Bick did not respond to the specific email by return email to plaintiff.

222.    Deny each and every allegation in paragraph 222 of the Complaint, except admit that Fenner asked plaintiff to cover for an associate who was going on vacation from August 6 to 14, 2016.

223.     Deny each and every allegation in paragraph 223 of the Complaint, except admit that, on August 4, 2016, plaintiff sent an email with the quoted text to Fenner, and refer to the full text of that document for its contents.

224.     Deny each and every allegation in paragraph 224 of the Complaint, including on the basis that the Court has held that this event did not constitute protected activity (see ECF 78 at 60).

225.     Deny each and every allegation in paragraph 225 of the Complaint, except admit that, on or around August 4, 2016, Fenner told plaintiff that she was not aware of any decision to limit plaintiff's involvement to certain types of deals and matters.

226.      Deny each and every allegation in paragraph 226 of the Complaint.

227.      Deny each and every allegation in paragraph 227 of the Complaint.

228.     Deny each and every allegation in paragraph 228 of the Complaint.

229.     Deny each and every allegation in paragraph 229 of the Complaint.

230.     Deny each and every allegation in paragraph 230 and footnote 42 of the Complaint, and refer to the full text of that document for its contents.

231.     Deny each and every allegation in paragraph 231 of the Complaint, and refer to the full text of that document for its contents.

232.     Deny each and every allegation in paragraph 232 of the Complaint.

233.     Deny each and every allegation in paragraph 233 of the Complaint.

234.     Deny each and every allegation in paragraph 234 of the Complaint, and refer to the full text of the referenced documents for the accurate quotations.

235.     Deny each and every allegation in paragraph 235 of the Complaint, except admit that Brass and plaintiff worked on the same matter in 2015; and that the quoted text appears in

one of plaintiff's performance reviews, and refer to the full text of the relevant record for its contents.

236.    Deny each and every allegation in paragraph 236 of the Complaint

237.    Deny each and every allegation in paragraph 237 of the Complaint, except admit that Brass, an associate at the time, did not have unilateral staffing authority in 2016.

238.    Deny each and every allegation in paragraph 238 of the Complaint.

239.    Deny each and every allegation in paragraph 239 of the Complaint.

240.    Deny each and every allegation in paragraph 240 of the Complaint, except admit that the staffing coordinator correctly reported that there had been no decision to limit plaintiff's staffing to certain types of deals or matters; and that plaintiff at times purported to have capacity of over 50%.

241.    Deny each and every allegation in paragraph 241 of the Complaint.

242.    Deny each and every allegation in paragraph 242 of the Complaint

243.    Deny each and every allegation in paragraph 243 of the Complaint, except admit that, on or around August 16, 2016, plaintiff was staffed on a corporate transaction involving Kreynin and a senior M&A associate.

244.    Deny each and every allegation in paragraph 244 of the Complaint, except admit that, on August 18, 2016, plaintiff sent an email including the quoted text to the referenced individuals; that the senior associate with whom plaintiff was working was assigned to M&A and is white; that the senior associate instructed plaintiff to email the referenced individuals; and that there is no record of a written or other response to that email, and refer to the full text of plaintiff's email for its contents.

245.    Deny each and every allegation in paragraph 245 of the Complaint, except deny

knowledge or information sufficient to form a belief about whether plaintiff sent the email at the senior associate's instruction, and admit that, on September 7, 2016, plaintiff sent an email including the quoted text to the referenced individuals; and that there is no record of a written or other response to that email, and refer to the full text of plaintiff's email for its contents.

246.    Deny each and every allegation in paragraph 246 of the Complaint, except admit that Golden relayed edits on the document to the senior associate referenced in paragraph 246 of the Complaint.

247.    Deny each and every allegation in paragraph 247 of the Complaint, except admit that, on September 9, 2016, plaintiff sent an email with the quoted text to the listed individuals; that the senior associate instructed plaintiff to send the email; and that there is no record of a written or other response to that email, and refer to the full text of plaintiff's email for its contents.

248.    Deny each and every allegation in paragraph 248 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 248 of the Complaint insofar as they relate to conversations between plaintiff and the senior associate, or to verbal communications between Bason, Golden, and plaintiff, and admit that there is no record of a written or other response to those emails.

249.    Deny each and every allegation in paragraph 249 of the Complaint, except admit that, on August 15, 2016, the associate referenced in paragraph 249 sent an email to plaintiff with the quoted text, attaching revisions to plaintiff's markup, and refer to the full text of the exchange for its contents.

250.    Deny each and every allegation in paragraph 250 of the Complaint, except admit that, on September 8, 2016, Clausen contacted plaintiff and several other associates who had

41

previously rotated through the Firm's Credit practice group in an effort to provide support to the Credit practice group, which was understaffed at that time; that plaintiff quotes selectively from an email from Clausen; and that, at the time, plaintiff had worked as an associate at the firm for almost two years, and refer to the full text of Clausen's email for its contents.

251.    Deny each and every allegation in paragraph 251 and footnote 43 of the Complaint, except deny knowledge or information sufficient to form a belief about why plaintiff called Clausen, and admit that, on September 8, 2016, Clausen sent plaintiff and another coordinator an email including the quoted text; that associates discuss assignments with staffing coordinators; and that plaintiff spoke with Clausen on or about September 8, 2016 about the email referenced in paragraph 250 of the Complaint, and refer to the full text of Clausen's email for its contents, and incorporate by reference the Answer to paragraph 250 of the Complaint.

252.    Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 252 of the Complaint, and incorporate by reference the Answers to paragraphs 250 and 251 of the Complaint.

253.    Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 253 of the Complaint, and incorporate by reference the Answers to paragraphs 250 and 251 of the Complaint.

254.    Deny the allegations in paragraph 254 of the Complaint insofar as they assert that defendants discriminated against him or anyone else, and otherwise deny knowledge or information sufficient to form a belief about the truth of the allegations insofar as they purport to recount the precise language and content of a discussion between Cardwell and Clausen.

255.     Deny the allegations in paragraph 255 of the Complaint insofar as they assert that defendants discriminated against him or anyone else, and otherwise incorporate by reference the Answer to paragraph 254 of the Complaint.

256.     Deny the allegations in paragraph 256 of the Complaint insofar as they assert that defendants discriminated against him or anyone else, and otherwise incorporate by reference the Answer to paragraph 254 of the Complaint.

257.     Deny the allegations in paragraph 257 of the Complaint insofar as they assert that defendants discriminated against him or anyone else, and otherwise incorporate by reference the Answer to paragraph 254 of the Complaint.

258.     Deny the allegations in paragraph 258 of the Complaint insofar as they assert that defendants discriminated against him or anyone else, and otherwise incorporate by reference the Answer to paragraph 254 of the Complaint.

259.     Deny the allegations in paragraph 259 of the Complaint insofar as they assert that defendants discriminated against him or anyone else, and otherwise incorporate by reference the Answer to paragraph 254 of the Complaint.

260.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 260 of the Complaint, except state that, to the extent paragraph 260 of the Complaint alleges a disparate impact claim, no response is needed, as any such claim has been dismissed, and incorporate by reference the Answers to paragraphs 253 and 258 of the Complaint.

261.     Deny the allegations in paragraph 261 of the Complaint insofar as they assert that defendants discriminated against him or anyone else, and otherwise incorporate by reference the Answer to paragraph 254 of the Complaint.

262.    Deny the allegations in paragraph 262 of the Complaint insofar as they assert that defendants discriminated against him or anyone else, and otherwise incorporate by reference the Answer to paragraph 254 of the Complaint.

263.    Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 263 of the Complaint, and incorporate by reference the Answers to paragraphs 253, 258, and 262 of the Complaint.

264.    Deny the allegations in paragraph 264 of the Complaint insofar as they assert that defendants discriminated against him or anyone else, and otherwise incorporate by reference the Answers to paragraphs 253 and 258 of the Complaint.

265.    Deny the allegations in paragraph 265 of the Complaint insofar as they assert that defendants discriminated against him or anyone else, and admit that plaintiff refused to be staffed on the Credit assignment, and incorporate by reference the Answers to paragraphs 253 and 258 of the Complaint.

266.    Deny the allegations in paragraph 266 of the Complaint insofar as they assert that defendants discriminated against him or anyone else, and admit that plaintiff refused to be staffed on the Credit assignment, and incorporate by reference the Answers to paragraphs 253 and 258 of the Complaint.

267.    Deny the allegations in paragraph 267 of the Complaint insofar as they assert that defendants discriminated against him or anyone else, state that, to the extent paragraph 267 of the Complaint alleges a disparate impact claim, no response is needed, as any such claim has been dismissed, and admit that plaintiff was subsequently staffed by the M&A staffing coordinators and partners rather than Clausen, who worked in Credit, as additional cross-

departmental assignments were not necessary, and incorporate by reference the Answers to paragraphs 253, 258, and 265 of the Complaint.

268.    Deny each and every allegation in paragraph 268 of the Complaint.  Paragraph 268 also states a legal conclusion.  To the extent a response is required, deny the legal conclusion.

269.    Deny each and every allegation in paragraph 269 of the Complaint, and incorporate by reference the Answer to paragraph 267 of the Complaint.

270.    Deny each and every allegation in paragraph 270 of the Complaint, except admit that as a general matter, after associates are assigned permanently to groups and become third-year associates, their staffing is coordinated by junior staffing partners working in tandem with staffing coordinators; and that in or about August and September of 2016, Birnbaum and Wolfe served as junior staffing partners for the M&A group.

271.    Deny each and every allegation in paragraph 271 of the Complaint.

272.    Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 272 of the Complaint, and deny each and every allegation in footnote 44 of the Complaint, except admit that Clausen left the Firm for another firm in August 2017 for reasons entirely unrelated to this matter; and that the Firm received a copy of plaintiff's August 3, 2017 EEOC filing on or about that day.

273.    Deny each and every allegation in paragraph 273 and footnote 45 of the Complaint.

274.    Deny the allegations in paragraph 274 of the Complaint insofar as they assert that defendants discriminated against him or anyone else, and otherwise deny knowledge or information sufficient to form a belief about the truth of whether Cardwell informed the

referenced associate of his discussion with Clausen, as "it is described in this Complaint."

275.    Deny each and every allegation in paragraph 275 of the Complaint, except admit that Clausen discussed her September 8, 2016 interactions with plaintiff with DeSantis, Fenner, and Fabe.

276.    Deny each and every allegation in paragraph 276 of the Complaint.

277.    Deny each and every allegation in paragraph 277 of the Complaint insofar as they purport to characterize plaintiff's discussion with Clausen as a complaint, but admit that Crane sent the email quoted in paragraph 277 of the Complaint.

278.    Deny each and every allegation in paragraph 278 of the Complaint.

279.    Deny each and every allegation in paragraph 279 of the Complaint.

280.    Deny each and every allegation in paragraph 280 of the Complaint.

281.    Deny each and every allegation in paragraph 281 of the Complaint.

282.    Deny each and every allegation in paragraph 282 of the Complaint, and refer to the full text of an email sent by Fenner to Bick on November 7, 2016 for its contents.

283.    Deny each and every allegation in paragraph 283 and footnote 46 of the Complaint, except deny knowledge or information sufficient to form a belief about the allegations in paragraph 283 of the Complaint insofar as they relate to the "series of email chains" referenced by plaintiff, and admit that Bick's response to the email referenced in paragraph 282 of the Complaint stated "Kaloma as well"; and that Fenner sent an email to Kreynin on November 14, 2016 that contains the text quoted in footnote 46 of the Complaint.

284.    Deny each and every allegation in paragraph 284 of the Complaint, and incorporate by reference the Answer to paragraphs 190 and 191 of the Complaint.

285.    Deny each and every allegation in paragraph 285 of the Complaint, except admit

that a group of Firm partners met in October 2016 to discuss the annual performance reviews and consensus feedback for certain M&A associates.

286.    Deny each and every allegation in paragraph 286 of the Complaint, except admit that the language selectively quoted in footnote 47 of the Complaint appears in the cited document, and refer to the full text of that document for its contents.

287.    Deny each and every allegation in paragraph 287 of the Complaint.

288.    Admit the allegations in paragraph 288 of the Complaint.

289.    Deny each and every allegation in paragraph 289 of the Complaint, except admit that, in September 2016, plaintiff reported 229.6 billable hours; and that, on September 29, 2016, an associate senior to plaintiff sent plaintiff an email with the referenced text, and incorporate by reference the Answer to paragraph 243 of the Complaint.

290.    Deny each and every allegation in paragraph 290 of the Complaint, except deny knowledge or information sufficient to form a belief about what the senior M&A associate allegedly had flagged for an M&A partner and described, and admit that the "restructuring" matter referenced in paragraphs 289 and 290 of the Complaint is the same "restructuring" matter referenced in paragraph 213 of the Complaint.

291.    Paragraph 291 of the Complaint states a legal conclusion.  To the extent a response is required, deny each and every allegation in paragraph 291 and footnote 49 of the Complaint, except admit that plaintiff modified paragraph 291 of the Complaint as he describes in footnote 48 of the Complaint; and that plaintiff quotes selectively from the document referenced in footnote 49 of the Complaint, and refer to the full text of that document for its contents.

292.    Deny each and every allegation in paragraph 292 of the Complaint, except admit

that plaintiff was assigned to the M&A group in or around April 2016.

293. Deny each and every allegation in paragraph 293 and footnotes 50 and 51 of the Complaint, except admit that Birnbaum and Wolfe had access to M&A associates' weekly capacity forms to the extent the forms had been timely submitted for that week; that such weekly capacity forms and the Firm's computer systems contain some data relating to associates' capacity and billable hours; that, on or about July 1, 2016, Wolfe sent an email to lawyers in the Firm's corporate department containing the text quoted in footnote 50 of the Complaint; that, in February 2017, plaintiff and Fenner exchanged the emails selectively quoted in footnote 51 of the Complaint, and refer to the full text of the referenced documents for their contents, and incorporate by reference the Answers to paragraphs 204 and 270 of the Complaint.

294. Deny each and every allegation in paragraph 294 of the Complaint.

295. Deny each and every allegation in paragraph 295 of the Complaint.

296. Deny each and every allegation in paragraph 296 of the Complaint.

297. Deny each and every allegation in paragraph 297 of the Complaint.

298. Deny each and every allegation in paragraph 298 and footnote 52 of the Complaint, except admit that plaintiff filed a "supplemental charge of discrimination" against the Firm in April 2018, about which the Firm was not aware until May 2018, that like the previous submission was dual-filed with the EEOC and NYSDHR, containing various allegations; and that the text selectively quoted in footnote 52 of the Complaint, other than the bracketed text, appears in the cited document, and refer to the full text of that document for its contents.

299. Deny each and every allegation in paragraph 299 of the Complaint, except admit that Birnbaum did not contact plaintiff via individualized email between June 14, 2016 and August 31, 2017.

300.    Deny each and every allegation in paragraph 300 of the Complaint, except admit that Wolfe did not contact plaintiff via individualized email between April 13, 2016 and January 1, 2018.

301.    Deny each and every allegation in paragraph 301 of the Complaint, except deny knowledge or information sufficient to form a belief about truth of the allegation in footnote 53 of the Complaint about the average billable hours of Firm associates on the ground that plaintiff has failed to specify the relevant time period for such allegation, and deny knowledge or information sufficient to form a belief about the allegations in footnote 55 of the Complaint, except admit that Bick was the Firm's interim Global Head of M&A from 2015–2017; that the billable hours reflected in the chart in paragraph 301 of the Complaint reflect those plaintiff chose to record in the listed months; that, as referenced in footnote 54 of the Complaint, plaintiff took ten paid vacation days in May 2016; that plaintiff attributed 16 hours to his swearing-in ceremony in his billing records in June 2016, and refer to the full text of plaintiff's billing records for their contents.

302.    Deny each and every allegation in paragraph 302 of the Complaint, except admit that Fenner was an Associate Development Manager; and that, as noted in paragraphs 303 and 304 of the Complaint, Fenner at times sent emails to junior staffing partners in which she indicated that plaintiff, among others, was available for potential assignments, and incorporate by reference the Answer to paragraph 204 of the Complaint.

303.    Admit that plaintiff quotes selectively from an email from Fenner with the quoted text in paragraph 303 of the Complaint, and refer to the full text of that email for its contents.

304.    Admit that plaintiff quotes selectively from an email from Fenner with the quoted text in paragraph 304 of the Complaint, and refer to the full text of that email for its contents.

305.     Deny each and every allegation in paragraph 305 of the Complaint, and specifically deny that Associate #5 is or was similarly situated in all material respects to plaintiff, except admit that Bason Jr., an M&A partner, described Associate #5's hours in a Summary Review form; that Associate #5 received the ratings as described in paragraph 305 of the Complaint; that M&A partners noted significant problems with plaintiff's performance in reviews completed between 2014 and August 2017; that Hudson, a Capital Markets partner, answered "behind" directly in response to the question "do you feel this lawyer is performing materially behind, with, or ahead of the lawyer's class"; that four other partners used the word "behind" in response to the same question for work plaintiff performed in the summer and September of 2017; and that Chudd (an M&A partner) had by this time also used the word "behind" in connection with plaintiff's performance reviews, and aver that each associate's situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate, and refer to the full text of the reviews, performance records, and billing records referenced in paragraph 305 of the Complaint for their contents.

306.     Deny each and every allegation in paragraph 306 of the Complaint, except admit that Reid and the Firm were committed to supporting diverse and female attorneys; and that the quoted text from an interview with Reid appeared in substance in a news article, and refer to the full text of the article for its contents and the accurate quotation.

307.     Deny each and every allegation in paragraph 307 of the Complaint.

308.     Deny each and every allegation in paragraph 308 of the Complaint, except deny knowledge or information sufficient to form a belief about the identity of the "classmate," and admit that, on October 7, 2016, an associate from a practice group other than M&A sent an email with the quoted text to plaintiff, and refer to the full text of that document for its contents.

309.     Deny each and every allegation in paragraph 309 of the Complaint, except deny knowledge or information sufficient to form a belief about whether the referenced institutions or individuals had such views and whether, if they did, they are appropriately characterized as being "objectively" held views.

310.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 310 of the Complaint.

311.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 311 of the Complaint.

312.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 312 of the Complaint, except admit that the Firm sponsored two different non-white associates in each of 2017, 2018, and 2019 to participate in the referenced conference.

313.     Admit that a senior Black associate of the Firm wrote a letter to a third party dated October 31, 2016 containing the quoted text, and refer to the full text of that document for its contents.

314.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 314 of the Complaint insofar as they relate to the senior Black associate's state of mind, except admit that, on December 5, 2016, the senior Black associate sent an email to the BAG listserv with the quoted text, and refer to the full text of that document for its contents.

315.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 315 of the Complaint, except admit that plaintiff served on the steering committee for the BAG beginning on or around December 2016.

316.     Deny each and every allegation in paragraph 316 of the Complaint, except admit that plaintiff contributed to the Firm's recruiting efforts; and that the Summary Review form completed after plaintiff's first 6 months at the Firm, in December 2015, contained the quoted text, and refer to the full text of that document for its contents; and admit that the Firm submitted this review to the NYSDHR.

317.     Deny each and every allegation in paragraph 317 of the Complaint, except admit that plaintiff contributed to the Firm's recruiting efforts; that there were multiple Black associates, male and female, in plaintiff's surrounding classes, and that all other Black associates in his class were female; and that the Summary Review form concerning plaintiff's December 2016 performance review contained the quoted text, and that the Firm submitted this review to the NYSDHR, and refer to the full text of that document for its contents.

318.     Deny each and every allegation in paragraph 318 of the Complaint.

319.     Deny each and every allegation in paragraph 319 of the Complaint, except deny knowledge or information sufficient to form a belief about whether Davis Polk associates, the Firm's non-Partner leadership, and countless others across the legal profession were increasingly praising, recognizing, and consulting Cardwell for his ability to evaluate, navigate, and shape Davis Polk and other legal institutions.

320.     Deny each and every allegation in paragraph 320 of the Complaint.

321.     Deny each and every allegation in paragraph 321 of the Complaint.

322.     Deny each and every allegation in paragraph 322 of the Complaint.

323.     Deny each and every allegation in paragraph 323 and footnote 56 of the Complaint, and state that, to the extent paragraph 323 of the Complaint alleges an harassment claim, no response is needed, as any such claim has been dismissed, except admit that, at the

February 8, 2018 meeting referenced in footnote 56 and paragraph 588 of the Complaint, a Firm partner stated to plaintiff, "You can't just sit here.  It's demoralizing for you."

324.    Deny each and every allegation in paragraph 324 and footnote 57 of the Complaint, except admit that Kreynin delivered plaintiff's annual review during the second half of December 2016.

325.    Deny each and every allegation in paragraph 325 of the Complaint, except admit that, during the referenced meeting, Kreynin provided plaintiff with feedback; that plaintiff asked Kreynin for specific examples of his performance being deficient; that Kreynin responded by referencing performance issues on a deal on which plaintiff worked with Kreynin; that this deal was the same deal referenced in paragraph 243 of the Complaint; that plaintiff reported 229.6 billable hours in September 2016; and that 56.8 of those hours pertained to the deal referenced in paragraph 243 of the Complaint.

326.    Deny each and every allegation in paragraph 326 of the Complaint, except admit that, at the referenced meeting, plaintiff asked Kreynin for additional examples and Kreynin does not recall providing additional examples beyond his own personal experience during or after the meeting, and incorporate by reference the Answer to paragraph 416 of the Complaint.

327.    Deny each and every allegation in paragraph 327 and footnotes 58 and 59 of the Complaint, except deny knowledge or information sufficient to form a belief about truth of the allegation in footnote 60 of the Complaint about the average billable hours of Firm associates on the ground that plaintiff has failed to specify the relevant time period for such an allegation, and admit that plaintiff reported the billable hours listed in the chart; and that, at the referenced meeting, Kreynin did not state that plaintiff was on "probation," and incorporate by reference the Answer to paragraph 432 of the Complaint.

328.    Deny each and every allegation in paragraph 328 of the Complaint, except admit that a member of the Associate Development Department sent an email on March 20, 2017 that contains the selectively quoted text, and refer to the full text of that document for its contents.

329.    Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 329 and footnotes 61 and 62 of the Complaint.

330.    Deny each and every allegation in paragraph 330 of the Complaint, except admit that plaintiff sent at least one email to a departing Firm partner on or around December 5, 2016 about GEO Group.

331.    Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 331 of the Complaint.

332.    Deny each and every allegation of paragraph 332 of the Complaint, except admit that, at the time of this email, GEO was no longer a client of the Firm, and that Dunne is the current General Counsel of the Manhattan District Attorney's office.

333.    Deny each and every allegation in paragraph 333 of the Complaint, except admit that Dunne supervised a matter for the Vance Center, and the Firm made disclosures to the Vance Center in or around June 2015, which were forwarded to the listserv vance@davispolk.com, of which plaintiff was a member, and refer to that communication for its contents.

334.    Deny each and every allegation in paragraph 334 of the Complaint, except admit that the quoted text appears in the document referenced in footnote 64, which is a copy of the Firm Lawyer's Handbook dated March 21, 2017, and refer to the full text of that document for its contents, and incorporate by reference the Answer to paragraph 333 of the Complaint, and aver in particular that at the time he wrote to Dunne in December 2016, plaintiff had been aware

for 18 months that the Firm had cleared any "potential conflict of interest."

335.    Admit the allegations in paragraph 335 of the Complaint.

336.    Deny each and every allegation in paragraph 336 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations insofar as they relate to Dunne's state of mind or to the research underlying the referenced memo, and admit that the memo went through several drafts and incorporate by reference the Answers to paragraphs 333 and 334 of the Complaint.

337.    Deny each and every allegation in paragraph 337 of the Complaint, except admit that Dunne replied to the email referenced in paragraph 335 of the Complaint and that the selectively quoted text appeared, in substance, in Dunne's email, and refer to the full text of that document for its contents and the accurate quotation.  Aver that plaintiff told Dunne plaintiff would follow-up himself with the Management Committee and did not do so at any point between December 5, 2016 and March 9, 2017.

338.    Deny each and every allegation in paragraph 338 of the Complaint, and incorporate by reference the Answers to paragraphs 327 and 337 of the Complaint.  Aver that plaintiff was on vacation from March 3l, 2017 until May 2, 2017.

339.    Deny each and every allegation in paragraph 339 and footnote 65 of the Complaint, except admit that footnote 65 of the Complaint refers to an email from plaintiff regarding the former client referenced in paragraph 330 of the Complaint, and refer to the full text of that document for its contents, and incorporate by reference the Answers to paragraphs 333, 334, and 335 of the Complaint.

340.    Deny each and every allegation in paragraph 340 of the Complaint.

341.    Deny each and every allegation in paragraph 341 of the Complaint, and

incorporate by reference the Answers to paragraphs 333 and 334 of the Complaint.

342.    Deny each and every allegation in paragraph 342 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 342 of the Complaint insofar as they concern plaintiff's perception of others' staffing, and incorporate by reference the Answer to paragraph 317 of the Complaint.

343.    Deny each and every allegation in paragraph 343 of the Complaint.

344.    Deny each and every allegation in paragraph 344 and footnote 66 of the Complaint, except admit that associates' capacity, among other considerations, can be relevant to staffing decisions; and that plaintiff submitted forms from January to March 2017 in which he indicated that he had 100% availability.

345.    Deny each and every allegation in paragraph 345 of the Complaint, except admit that the individuals referenced in paragraph 345 of the Complaint were partners in the departments during the time periods referenced, and that plaintiff was sent emails directed to his individual email account (as opposed to group lists) from Bick, Goldberg, and Davis, but not the remainder of the referenced individuals, during the time periods referenced.

346.    Deny each and every allegation in paragraph 346 of the Complaint.

347.    Deny each and every allegation in paragraph 347 of the Complaint, except admit that, during plaintiff's time as an associate at the Firm, the ratio of associates formally assigned to the M&A group and working in the New York office to partners in the M&A group and working in the New York office was approximately three to one.

348.    Admit the allegations in paragraph 348 of the Complaint.

349.    Deny each and every allegation in paragraph 349 of the Complaint.

350.    Deny each and every allegation in paragraph 350 of the Complaint, except admit

that plaintiff selectively quotes from an email sent to him by a staffing coordinator on January 20, 2017, which also describes responsibilities of advisees, and refer to the full text of that document for its contents.

351.     Deny each and every allegation in paragraph 351 of the Complaint, except admit that the selectively quoted text appears in the email referenced in paragraphs 348 and 350 of the Complaint, and refer to the full text of that document for its contents.

352.     Deny each and every allegation in paragraph 352 of the Complaint, except admit that, on January 20, 2017, plaintiff sent Clausen an email, copying Bick and Butler, that included the quoted text, and refer to the full text of that document for its contents.

353.     Deny each and every allegation in paragraph 353 of the Complaint, including on the basis that the Court has held that the email referenced in paragraph 353 did not constitute protected activity (*see* ECF 78 at 61), except admit that Bick and Butler did not respond to the specific email referenced in paragraph 352 of the Complaint by return email to plaintiff.

354.     Deny each and every allegation in paragraph 354 of the Complaint, except admit that, from January 20, 2017 to August 10, 2018, Butler did not email plaintiff about the topics referenced in paragraph 354 of the Complaint.

355.     Deny each and every allegation in paragraph 355 of the Complaint.

356.     Deny each and every allegation in paragraph 356 of the Complaint, except admit that the email referenced in paragraphs 348 and 350 of the Complaint contained the phrase quoted in paragraph 356 of the Complaint, and refer to the full text of the email for its contents.

357.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of paragraph 357 of the Complaint, except admit that Fenner forwarded the email referenced in paragraph 352 of the Complaint to Birnbaum and Wolfe; that

Birnbaum responded to Fenner's email; and that the email exchange contained the selectively quoted text, and refer to the full text of the document for its contents.

358.   Deny each and every allegation in paragraph 358 of the Complaint, and incorporate by reference the Answer to paragraph 357 of the Complaint.

359.   Deny each and every allegation in paragraph 359 of the Complaint.

360.   Deny each and every allegation in paragraph 360 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of plaintiff's assertion with respect to a purportedly "unofficial" committee, and admit that the individuals referenced in paragraph 360, with the exception of McClammy, did not send emails directed to plaintiff's individual email address in the referenced periods; that the individuals referenced in paragraph 360 were partners in the departments during the time periods referenced and served on the Firms' official Diversity Committee during at least some of plaintiff's time as an associate at the Firm; and that McClammy is Black and was in the April 2016 to January 2018 time period the only then current Black partner.

361.   Deny each and every allegation in paragraph 361 of the Complaint.

362.   Deny each and every allegation in paragraph 362 of the Complaint.

363.   Deny each and every allegation in paragraph 363 of the Complaint, except admit that, during the time period referenced in paragraph 363 of the Complaint, plaintiff continued to work on matters he had already been staffed on, but does not appear to have been staffed on any new matters.

364.   Deny each and every allegation in paragraph 364 of the Complaint, except admit that, during the time period referenced in paragraph 364 of the Complaint, plaintiff continued to work on matters he had already been staffed on, but does not appear to have been staffed on any

new matters.

365.  Deny each and every allegation in paragraph 365 and footnote 67 of the Complaint, except deny knowledge or information sufficient to form a belief about the allegations in footnote 67 of the Complaint regarding unidentified Davis Polk staff members, and admit that, during the time period referenced in paragraph 365 of the Complaint, plaintiff continued to work on matters he had already been staffed on, but does not appear to have been staffed on any new matters, and that Birnbaum and Wolfe had access to associates' weekly capacity forms to the extent the forms had been timely submitted for that week.

366.  Deny each and every allegation in paragraph 366 of the Complaint, except admit that, during the time period referenced in paragraph 366 of the Complaint, plaintiff continued to work on matters he had already been staffed on, but does not appear to have been staffed on any new matters.

367.  Deny each and every allegation in paragraph 367 of the Complaint.

368.  Deny each and every allegation in paragraph 368 of the Complaint.

369.  Deny each and every allegation in paragraph 369 of the Complaint.  Paragraph 369 also states a legal conclusion.  To the extent a response is required, deny the legal conclusion.

370.  Deny each and every allegation in paragraph 370 of the Complaint, except admit that Katz is the Firm's Special Counsel for Pro Bono; that plaintiff sent an email purporting to ask a question about a (then-former) client of the Firm to Katz on or around March 3, 2017; and that plaintiff's email contained the text quoted in footnote 68 of the Complaint, and refer to the full text of that document for its contents.

371.    Deny each and every allegation in paragraph 371 of the Complaint, except admit the allegations in the first sentence of paragraph 371 of the Complaint.

372.    Admit the allegations in paragraph 372 of the Complaint.

373.    Deny each and every allegation in paragraph 373 of the Complaint.

374.    Deny each and every allegation in paragraph 374 of the Complaint, except admit that certain printed copies of plaintiff's reviews from May 2015, December 2015, and June 2016 bear a print date of "3/6/2017" for reasons unrelated to the email referenced in paragraph 370 of the Complaint, and incorporate by reference the Answer to paragraph 372 of the Complaint.

375.    Deny each and every allegation in paragraph 375 of the Complaint.

376.    Deny each and every allegation in paragraph 376 of the Complaint, except admit that Reid conveyed to plaintiff his expectation that the Firm would not represent the referenced former client in the future.

377.    Deny each and every allegation in paragraph 377 of the Complaint, except admit that, during the March 9, 2017 meeting described in paragraph 377 of the Complaint, Reid told plaintiff that the Firm was aware of plaintiff's recorded billable time, and communicated to plaintiff that his hours needed to be addressed, and also admit that Reid testified as to his recollections of this meeting and refer to his testimony for the contents thereof.

378.    Deny each and every allegation in paragraph 378 of the Complaint, except admit that Reid had generally reviewed Cardwell's written reviews, to the extent they were provided to him, prior to the meeting on March 9, 2017.

379.    Deny each and every allegation in paragraph 379 of the Complaint.

380.    Deny each and every allegation in paragraph 380 of the Complaint.

381.    Deny each and every allegation in paragraph 381 of the Complaint.

60

382.    Deny each and every allegation in paragraph 382 of the Complaint.

383.    Deny each and every allegation in paragraph 383 of the Complaint.

384.    Deny each and every allegation in paragraph 384 of the Complaint on the ground that the referenced individuals did not stop staffing and eliminate the billable hours of any associates, including those of plaintiff.

385.    Deny each and every allegation in paragraph 385 of the Complaint, except admit that, between the March 9, 2017 meeting and when plaintiff left for paid leave on March 31, 2017, plaintiff continued to work on matters he had already been staffed on, but was not staffed on any new matters because his poor performance made it increasingly difficult to staff him.

386.    Deny each and every allegation in paragraph 386 of the Complaint, except admit that, on March 6, 2017, Fenner, Crane, DeSantis, Reid, and Davis Polk's Deputy General Counsel sent and/or received one or more emails related to the referenced topics; and that on March 21, 2017, Crane, DeSantis, and Fenner sent and/or received one or more emails related to plaintiffs "performance reviews and employment at the Firm."

387.    Admit that plaintiff sent an email to Nicole Katz on March 20, 2017 that contains the text quoted in paragraph 387 of the Complaint, and refer to the full text of that document for its contents.

388.    Deny each and every allegation in paragraph 388 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegation in paragraph 388 of the Complaint insofar as they relate to plaintiff's knowledge at the time, and admit that emails about plaintiff's request were exchanged amongst Crane, DeSantis, Fenner, Bick, Reid, and Kreynin, and refer to the full text of those documents for their contents.

389.    Deny each and every allegation in paragraph 389 of the Complaint, except admit that Crane and DeSantis sent emails on March 20, 2017 that contain the quoted text, and refer to the full text of those documents and related documents in the record for their contents.

390.    Deny each and every allegation in paragraph 390 of the Complaint.

391.    Admit that plaintiff sent an email to DeSantis on March 21, 2017 that contained the text quoted in paragraph 391 of the Complaint, in substance, and refer to the full text of that document for its contents.

392.    Deny each and every allegation in paragraph 392 of the Complaint, except admit that DeSantis responded to plaintiff's email and used the quoted text, and refer to the full text of that document for its contents.

393.    Deny each and every allegation in paragraph 393 of the Complaint, except admit that the selectively quoted text appears in the email referenced in paragraph 393 of the Complaint, and refer to the full text of that document for its contents.

394.    Deny each and every allegation in paragraph 394 and footnote 69 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations insofar as they relate to the specific words stated during the discussion between DeSantis and plaintiff, and admit that DeSantis informed plaintiff that his request was denied pursuant to Firm policy, by which associates were not provided access to their personnel file or written performance reviews but were instead provided their reviews orally; that DeSantis told plaintiff that a meeting would be arranged with Reid, Kreynin, and plaintiff to discuss his reviews; and that the "Lawyer's Handbook" did not contain these policies.

395.    Deny each and every allegation in paragraph 395 of the Complaint, except admit that the Firm's Managers' Human Resources Handbook contained the quoted text as of January

18, 2018, and aver that such handbook applies to non-associate employees, not associates, who have a separate handbook (the "Lawyers' Handbook").

396.    Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 396 of the Complaint insofar as they relate to plaintiff's reasons for sending the referenced email, except admit that plaintiff sent the referenced email.

397.    Deny each and every allegation in paragraph 397 of the Complaint, except admit that plaintiff was not provided access to his written performance reviews, pursuant to a Firm policy by which associates are not permitted such access but are instead provided their reviews orally.

398.    Deny each and every allegation in paragraph 398 of the Complaint, except admit that plaintiff was not provided access to a redacted version of his written performance reviews, pursuant to a Firm policy by which associates are not permitted such access but are instead provided their reviews orally.

399.    Deny the allegation in paragraph 399 of the Complaint, except admit that there was a meeting among Reid, Kreynin, and plaintiff that occurred subsequent to Cardwell's communications with DeSantis on this topic.

400.    Deny each and every allegation in paragraph 400 of the Complaint.

401.    Deny each and every allegation in paragraph 401 of the Complaint, except admit that the referenced emails were sent, and refer to the full text of those documents for their contents.

402.    Deny each and every allegation in paragraph 402 of the Complaint.

403.    Deny the allegation contained in paragraph 403 of the Complaint, except admit that the referenced meeting occurred on March 29, 2017, and incorporate by reference the

Answer to paragraph 399 of the Complaint.

404. Deny each and every allegation in paragraph 404 of the Complaint, except admit that Kreynin possessed a list of talking points that were created prior to his December 2016 meeting with plaintiff, which he closely adhered to during his December 2016 meeting with plaintiff, and that Kreynin submitted the formal meeting summary on March 28, 2017.

405. Deny each and every allegation in paragraph 405 of the Complaint.

406. Deny each and every allegation in paragraph 406 of the Complaint.

407. Deny each and every allegation in paragraph 407 of the Complaint, except admit that an email sent from a member of the Associate Development Department to Kreynin on November 15, 2016 contains the selectively quoted text, and also an indication that plaintiff should be scheduled for a mid-year review in June 2017, and refer to the full text of that document for its contents.

408. Deny each and every allegation in paragraph 408 of the Complaint, except admit that Kreynin's December 19, 2016 Summary Review contains the quoted text, and refer to the full text of that document for its contents, and incorporate by reference the Answers to paragraphs 404 and 407 of the Complaint.

409. Deny each and every allegation in paragraph 409 of the Complaint.

410. Deny each and every allegation in paragraph 410 of the Complaint, except admit that plaintiff quotes from the record of Kreynin's December 2016 meeting with plaintiff, and incorporate by reference the Answer to paragraph 407 of the Complaint.

411. Deny each and every allegation in paragraph 411 of the Complaint, except admit that Bick sent an email to Kreynin on March 23, 2017 that contains the selectively quoted text, which plaintiff takes out of context, and refer to the full text of that document for its contents.

412.   Deny each and every allegation in paragraph 412 of the Complaint, except admit that Bick and Fenner did not know that Kreynin followed the bullet points very closely before Kreynin informed them of such, and incorporate by reference the Answer to paragraph 411 of the Complaint.

413.   Deny each and every allegation in paragraph 413 of the Complaint, except admit that Kreynin subsequently met with plaintiff on March 29, 2017, but did not meet with plaintiff in June 2017.

414.   Deny each and every allegation in paragraph 414 of the Complaint, except admit that Kreynin, Bick and Reid were each aware of the significant performance issues reflected in Cardwell's reviews prior to the referenced March 29, 2017 meeting, and that Reid separately asked both Kreynin and Bick about Cardwell's performance prior to the referenced March 29, 2017 meeting.

415.   Admit the allegations in paragraph 415 of the Complaint, and refer to the full text of that document for its contents.

416.   Deny each and every allegation in paragraph 416 of the Complaint, except admit that, on March 29, 2017, Reid and Kreynin met with plaintiff and discussed with specificity the problems with plaintiff's work performance; that Reid encouraged plaintiff to address his performance problems and expressed that the Firm was prepared to support plaintiff in doing so; and that Reid testified to his recollections of this meeting and refer to his testimony for the contents thereof.

417.   Deny each and every allegation in paragraph 417 of the Complaint, except admit that, during the referenced meeting, plaintiff asked about his performance reviews and was given feedback about his poor performance; that plaintiff mentioned implicit bias and the review

system; that plaintiff asked whether his assignments or hours were connected to his race; and that Reid told plaintiff that the Firm's difficulties staffing plaintiff had nothing to do with his race, and that Reid testified to his recollections of this meeting and refer to his testimony for the contents thereof.

418.    Deny each and every allegation in paragraph 418 of the Complaint.

419.    Deny each and every allegation in paragraph 419 of the Complaint, except admit that, at the referenced meeting, plaintiff mentioned implicit bias and the review system, and that Reid testified to his recollections of this meeting and refer to his testimony for the contents thereof.

420.    Deny each and every allegation in paragraph 420 of the Complaint.

421.    Deny each and every allegation in paragraph 421 of the Complaint, and incorporate by reference the Answer to paragraph 416 of the Complaint, and that Reid testified to his recollections of this meeting and refer to his testimony for the contents thereof.

422.    Deny each and every allegation in paragraph 422 and footnote 70 of the Complaint.

423.    Deny each and every allegation in paragraph 423 of the Complaint, except admit that Reid testified to his recollections of this meeting and refer to his testimony for the contents thereof, and incorporate by reference the Answer to paragraph 416 of the Complaint.

424.    Deny each and every allegation in paragraph 424 of the Complaint.  Paragraph 424 also states a legal conclusion. To the extent a response is required, deny the legal conclusion.

425.    Deny each and every allegation in paragraph 425 of the Complaint.

426.    Deny each and every allegation in paragraph 426 and footnote 71 of the Complaint, except admit that, at the referenced meeting, Reid encouraged plaintiff to address his

performance problems and told plaintiff that he could take vacation if he wished to do so.

427.     Deny each and every allegation in paragraph 427 of the Complaint.

428.     Deny each and every allegation in paragraph 428 of the Complaint, except admit that Kreynin and Reid met with plaintiff on March 29, 2017.

429.     Deny each and every allegation in paragraph 429 of the Complaint.

430.     Deny each and every allegation in paragraph 430 of the Complaint.

431.     Deny each and every allegation in paragraph 431 of the Complaint, except admit that Kreynin received an email on March 21, 2017 that referenced plaintiff's request to see his performance reviews, and refer to the full text of that document for its contents, and incorporate by reference the Answer to paragraph 386 of the Complaint.

432.     Deny each and every allegation in paragraph 432 of the Complaint, except admit that plaintiff and Kreynin worked together prior to March 29, 2017; and that they rode the elevator together following the March 29, 2017 meeting referenced in paragraph 432 of the Complaint; and further deny knowledge of information sufficient to form a belief as the truth of the specific language used in the discussion, but admit that Kreynin conveyed to Cardwell that he (Kreynin) was at that time and would have been willing in the past to work with Cardwell on additional matters beyond the one on which Kreynin had worked with Cardwell (and which was specifically discussed at the meeting among Cardwell, Reid and Kreynin).

433.     Admit the allegations in paragraph 433 of the Complaint.

434.     Deny each and every allegation in paragraph 434 of the Complaint, except admit that Cardwell indicated during the March 29, 2017 meeting that he believed he had been treated in a discriminatory manner.

435.     Deny each and every allegation in paragraph 435 and footnote 72 of the

Complaint, except admit that the text quoted in footnote 72 appears in the document cited in footnote 72 of the Complaint, and refers to a meeting to discuss staffing for plaintiff per his request, and refer to the full text of that document for its contents.

436.    Deny each and every allegation in paragraph 436 of the Complaint.

437.    Deny each and every allegation in paragraph 437 of the Complaint, except admit that plaintiff returned to work on or around May 2, 2017.

438.    Deny each and every allegation in paragraph 438 of the Complaint, except admit that Bick met with plaintiff on or about May 3, 2017 and explained to plaintiff that his performance was the cause of his staffing problems and partners were going to work with him in an effort to help him improve his performance.

439.    Deny each and every allegation in paragraph 439 of the Complaint.

440.    Deny each and every allegation in paragraph 440 to the Complaint.

441.    Deny each and every allegation in paragraph 441 to the Complaint, except admit that Bick was one of plaintiff's assigned advisors for purposes of the Career Advisor Program, and incorporate by reference the Answer to paragraph 438 of the Complaint.

442.    Deny each and every allegation in paragraph 442 to the Complaint, except admit that the Firm periodically reviews associates' hours for a variety of reasons, and incorporate by reference the Answer to paragraph 441 of the Complaint.

443.    Deny each and every allegation in paragraph 443 of the Complaint.

444.    Deny each and every allegation in paragraph 444 of the Complaint, except admit that, on May 3, 2017, Goldberg reached out to plaintiff with an assignment to draft a research memo and a memo for clients, which became an article published by a Harvard Law School forum; and that Goldberg oversaw plaintiff's work on that assignment, and incorporate by

reference the Answer to paragraph 377 of the Complaint.

445.     Deny each and every allegation in paragraph 445 of the Complaint, except admit

that Bick told plaintiff that he needed to complete the first assignment before the Firm would

assign a second and state that Bick does not recall the precise date of this conversation.

446.     Deny each and every allegation in paragraph 446 of the Complaint, except admit

that Cardwell voiced displeasure at the assignment to draft a research memo and a memo for

clients that he had been given.

447.     Deny each and every allegation in paragraph 447 of the Complaint.

448.     Deny each and every allegation in paragraph 448 of the Complaint.

449.     Admit that all billable hours plaintiff chose to record in May 2017 related to the

assignment described in paragraph 449 of the Complaint.

450.     Deny each and every allegation in paragraph 450 of the Complaint, except admit

that, on May 22, 2017, plaintiff sent Goldberg an email containing the quoted text, and refer to

the full text of that document for its contents.

451.     Deny each and every allegation in paragraph 451 of the Complaint, except admit

that, in response to the assertions plaintiff raised in the email referenced in paragraph 450 of the

Complaint, Goldberg scheduled a meeting with plaintiff and Crane; and that this meeting

occurred on May 23, 2017.

452.     Deny knowledge or information sufficient to form a belief about the truth of the

allegations in paragraph 452 of the Complaint as to the specific words used by Goldberg and

Cardwell at the May 23, 2017 meeting, except admit that Goldberg explained to plaintiff, as was

the case for all assignments, that the assignment was not a test, was important, needed to be done

well and promptly; and that Goldberg told plaintiff he had been unaware that plaintiff had stated

his desire to work with Goldberg on his weekly availability reports.

453.    Deny each and every allegation in paragraph 453 of the Complaint, except admit that, during the May 23, 2017 meeting, Crane asked plaintiff to elaborate on the details of his experience; and that plaintiff indicated that he felt he had been asking questions about his staffing and did not feel that his performance was poor; and otherwise deny knowledge or information sufficient to form a belief about the specific words used by Crane and Cardwell at the May 23, 2017 meeting.

454.    Deny each and every allegation in paragraph 454 of the Complaint.

455.    Deny each and every allegation in paragraph 455 of the Complaint, except admit that, during the May 23, 2017 meeting, plaintiff indicated his belief that Crane should speak with Reid, Bick, Birnbaum, and Wolfe about his staffing; and otherwise deny knowledge or information sufficient to form a belief about the specific words used by Crane and Cardwell at the May 23, 2017 meeting.

456.    Deny each and every allegation in paragraph 456 of the Complaint, and incorporate by reference the Answer to paragraph 455 of the Complaint.

457.    Deny each and every allegation in paragraph 457 and footnote 73 of the Complaint, and state that, to the extent paragraph 457 of the Complaint alleges an harassment or a hostile environment claim, no response is needed, as any such claims have been dismissed, except admit that plaintiff sent an email to Goldberg on May 22, 2017; that Crane was at the May 23, 2017 meeting; that Crane's presence at the meeting was a result of Goldberg's initiative; that Crane was the Executive Director of Personnel and oversaw several departments at the Firm, including the diversity, equity, and inclusion department; and that, as stated in defendants' privilege and redaction log, the individuals named in the last sentence of paragraph 457 of the

Complaint were involved in privileged email communications on May 23, 2017 and refer to that privilege log for its contents, and incorporate by reference the Answer to paragraph 455 of the Complaint.

458.     Deny each and every allegation in paragraph 458 of the Complaint, except admit that several partners had conversations with Cardwell about his staffing and/or performance after May 23, 2017, and that Crane did not have further direct communications with Cardwell after that point in time.

459.     Deny each and every allegation in paragraph 459 of the Complaint, except admit that Crane sent the referenced email.

460.     Deny each and every allegation in paragraph 460 of the Complaint.

461.     Deny each and every allegation in paragraph 461 of the Complaint.

462.     Deny each and every allegation in paragraph 462 of the Complaint, except admit that Bick's time as interim Global Head of Mergers and Acquisitions ended in 2017 for reasons entirely unrelated to this matter.

463.     Admit the allegations in paragraph 463 of the Complaint.

464.     Deny each and every allegation in paragraph 464 of the Complaint, except admit that, as stated in defendants' privilege and redaction log, the individuals named in paragraph 464 received a privileged email on May 25, 2017 from in-house counsel, and refer to that privilege log for its contents.

465.     Deny each and every allegation in paragraph 465 and footnote 74 of the Complaint, except admit that, as described in defendants' privilege and redaction log, the individuals named in paragraph 465 received a privileged email on July 7, 2017 from Lawrence Jacobs, and refer to that privilege log for its contents.

466.    Admit the allegations in paragraph 466 of the Complaint, and deny each and every allegation in footnote 75 of the Complaint, except admit that Brass became a junior staffing partner on July 5, 2017; and that, as of June 13, 2017, Brass and other partners were attempting to identify appropriate matters for plaintiff to work on.

467.    Deny each and every allegation in paragraph 467 of the Complaint, except admit that Wolfe, Birnbaum, Brass, and Goldberg were involved in the Firm's redoubling of its efforts, in or around the referenced time period, to identify appropriate matters for plaintiff to work on and assist him in improving his performance.

468.    Deny each and every allegation in paragraph 468 of the Complaint.

469.    Deny the allegation in paragraph 469 of the Complaint insofar as it alleges any relationship or casual connection between Davis Polk becoming aware of Cardwell's retention of counsel and any staffing decision as to Cardwell.

470.    Deny each and every allegation in paragraph 470 of the Complaint.

471.    Deny each and every allegation in paragraph 471 of the Complaint.  Paragraph 471 also states a legal conclusion.  To the extent a response is required, deny the legal conclusion.

472.    Deny each and every allegation in paragraph 472 and footnote 76 of the Complaint.

473.    Deny each and every allegation in paragraph 473 of the Complaint, except admit that, in response to an email from the Firm's Human Resources department, plaintiff claimed that his "current situation at work" was causing "health complications," and refer to the full text of the email for its contents.

474.    Admit the allegations in paragraph 474 and footnote 77 of the Complaint, and

refer to the full text of the email for its contents and the accurate quotation.

475.    Deny each and every allegation in paragraph 475 and footnote 78 of the
Complaint, except admit that the EEOC Charge of Discrimination filed against the Firm on
August 3, 2017 contained the quoted text; and that the "charge particulars" named only the Firm,
but no individuals, as respondents, though it mentioned the individuals referenced in footnote 78
by name, and refer to the full text of those documents for their contents, and incorporate by
reference the Answer to paragraph 3 of the Complaint.

476.    Admit the allegations in paragraph 476 of the Complaint.

477.    Deny each and every allegation in paragraph 477 of the Complaint, except admit
that, on December 5, 2017, the Firm filed a confidential response to plaintiff's Verified
Complaint with the NYSDHR.

478.    Deny each and every allegation in paragraph 478 of the Complaint, except admit
that the NYSDHR brief included references to the performance reviews and feedback from
Hudson, Butler, Chudd, Bick, and Reid.  Paragraph 478 also states a legal conclusion.  To the
extent a response is required, deny the legal conclusion.

479.    Admit that plaintiff's poor performance, including poor performance on four
successive matters in 2017, made it increasingly difficult to staff him, and, as a result, he was not
staffed on any new matters between December 5, 2017 and his time to go meeting in February
2018.

480.    Deny each and every allegation in paragraph 480 of the Complaint, except admit
that Goldberg and Smith conducted plaintiff's annual review on January 11, 2018.

481.    Deny each and every allegation in paragraph 481 of the Complaint.

482.    Deny each and every allegation in paragraph 482 of the Complaint, except admit

that Smith was appointed to deliver the Firm's consensus feedback, which was developed in consideration of plaintiff's written performance reviews and feedback from those with whom he had worked.

483.  Deny each and every allegation in paragraph 483 of the Complaint, except admit that plaintiff's annual review was rescheduled from January 9, 2018 to January 11, 2018 due to changes in the schedule of one of the partners who would be delivering the review.  Aver that, as of November 19, 2019, the Firm did not receive notice of the "extension" referenced by plaintiff, or even become aware that plaintiff had in fact filed a rebuttal.

484.  Deny each and every allegation in paragraph 484 of the Complaint, except admit that Goldberg and Smith conducted plaintiff's annual review on January 11, 2018; and that the review was based upon work performed by plaintiff during the time period beginning in the fall of 2016 through the fall of 2017, as well as written performance reviews regarding that work and any additional comments noted by the reviewing partners during review discussions.

485.  Deny each and every allegation in paragraph 485 and footnote 81 of the Complaint, except admit that the quoted text appears in the document cited in footnote 81 of the Complaint, and refer to the full text of that document for its contents, and incorporate by reference the Answers to paragraphs 92, 168, and 171 of the Complaint.

486.  Deny each and every allegation in paragraph 486 of the Complaint, except admit that the referenced reviews, as well as other reviews, were submitted for plaintiff; and that the Firm's consensus feedback was based on plaintiff's written performance reviews and any additional comments noted by the reviewing partners during review discussions.

487.  Deny each and every allegation in paragraph 487 of the Complaint on the ground that plaintiff's failure to specify any time period renders the allegations vague and ambiguous.

488.    Deny each and every allegation in paragraph 488 of the Complaint, except admit that Hochbaum, Mills, Goldberg, and Amorosi submitted performance reviews for plaintiff on September 19, 2017, October 2, 2017, October 6, 2017, and October 9, 2017, respectively; and that each of those reviews answered "behind" directly in response to the question, "do you feel this lawyer is performing materially behind, with or ahead of the lawyer's class."

489.    Deny each and every allegation in paragraph 489 of the Complaint, except deny knowledge or information sufficient to form a belief about whether communications, other than the referenced email, "contributed to this partner having knowledge that Cardwell filed an EEOC and/or NYSDR complaint", and admit that, as stated in defendants' privilege and redaction log, an M&A partner received an email on September 7, 2017 from in-house counsel and refer to that privilege log for its content; and that the same partner submitted a performance review for plaintiff on September 19, 2017, and refer to the full text of that document for its contents. Paragraph 489 also states a legal conclusion.  To the extent a response is required, deny the legal conclusion.

490.    Deny each and every allegation in paragraph 490 of the Complaint, except admit that, as stated in defendants' privilege and redaction log, an M&A partner participated in email communications with in-house counsel on September 11, 2017, and refer to that privilege log for its contents; and that the same partner submitted a performance review for plaintiff on October 2, 2017, and refer to the full text of that document for its contents, and incorporate by reference the Answer to paragraph 491 of the Complaint.

491.    Deny each and every allegation in paragraph 491 of the Complaint, except deny knowledge or information sufficient to form a belief about whether communications, other than the referenced emails, "contributed to this partner having knowledge that Cardwell filed an

EEOC and/or NYSDR complaint", and admit that the referenced partner on October 2, 2017 submitted a performance review for Cardwell and refer to the full text of that document for its contents, and incorporate by reference the Answer to paragraph 490 of the Complaint. Paragraph 491 also states a legal conclusion. To the extent a response is required, deny the legal conclusion.

492.    Deny each and every allegation in paragraph 492 of the Complaint, except deny knowledge or information sufficient to form a belief about whether communications, other than the referenced email, "contributed to this partner having knowledge that Cardwell filed an EEOC and/or NYSDR complaint", and admit that, as stated in defendants' privilege and redaction log, an M&A partner received an email on August 8, 2017 from in-house counsel and refer to that privilege log for its contents; and that the same partner submitted a performance review for plaintiff on October 6, 2017, and refer to the full text of that document for its contents. Paragraph 492 also states a legal conclusion. To the extent a response is required, deny the legal conclusion.

493.    Deny each and every allegation in paragraph 493 of the Complaint.

494.    Deny each and every allegation in paragraph 494 of the Complaint.

495.    Deny each and every allegation in paragraph 495 of the Complaint.

496.    Deny each and every allegation in paragraph 496 of the Complaint.

497.    Deny each and every allegation in paragraph 497 of the Complaint.

498.    Admit the allegations in paragraph 498 of the Complaint, and aver that plaintiff was told during the referenced review meeting that plaintiff's performance problems had made it increasingly challenging to staff him.

499.    Deny each and every allegation in paragraph 499 of the Complaint.

500.     Paragraph 500 of the Complaint states a legal conclusion.  To the extent a response is required, deny each and every allegation in paragraph 500 of the Complaint.

501.     Deny each and every allegation in paragraph 501 of the Complaint.

502.     Deny each and every allegation in paragraph 502 of the Complaint, except admit that, during the meeting referenced in paragraph 502, plaintiff expressed his belief that his negative performance reviews were inconsistent with feedback he had been given from partners while he was doing the work, and incorporate by reference that Answer to paragraph 504 of the Complaint.

503.     Deny each and every allegation in paragraph 503 of the Complaint, except admit that Goldberg worked with plaintiff during the applicable review period; and that Goldberg attempted to help plaintiff improve his performance.

504.     Deny each and every allegation in paragraph 504 of the Complaint, except admit that, during the referenced meeting, plaintiff indicated that he had previously requested more real-time feedback and that he believed his negative performance reviews were inconsistent with feedback that he had received from partners while he was doing the work; and that Smith read to plaintiff specific examples of where partners had indicated in their reviews that they sat with plaintiff to show him how his work could have been better.

505.     Deny each and every allegation in paragraph 505 and footnote 82 of the Complaint, except admit that, at the referenced meeting, plaintiff expressed his view that inconsistent feedback was a problem for many African American and minority associates, and incorporate by reference the Answer to paragraph 504 of the Complaint.

506.     Admit the allegations in paragraph 506 of the Complaint, except aver that plaintiff selectively quotes from a longer summary.

507.    Deny each and every allegation in paragraph 507 of the Complaint, except admit that, other than a system administrator, access to Smith's written summary was restricted to Crane and Oliver Smith.

508.    Deny each and every allegation in paragraph 508 of the Complaint.

509.    Deny each and every allegation in paragraph 509 of the Complaint, and incorporate by reference the Answers to paragraphs 504 and 505 of the Complaint.

510.    Deny each and every allegation in paragraph 510 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations insofar as they relate to plaintiff's perception of Smith or to specific words used by Smith at the January 11, 2018 meeting, and incorporate by reference the Answer to paragraph 504 of the Complaint.

511.    Deny each and every allegation in paragraph 511 of the Complaint, except admit that, at the referenced meeting, plaintiff stated he did not understand his work to be deficient when compared to others of his level; that Smith indicated he was surprised that plaintiff thought his work was well done given the significant amount of rewritings and corrections necessary; and that feedback previously provided by Goldberg to plaintiff about his work was discussed, and incorporate by reference the Answer to paragraph 504 of the Complaint.

512.    Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 512 of the Complaint insofar as they relate to specific words used by plaintiff at the January 11, 2018 meeting, and incorporate by reference the Answer to paragraph 511 of the Complaint.

513.    Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 513 of the Complaint insofar as they relate to specific words stated during the January 11, 2018 meeting, and admit that plaintiff asked what the plan would be for

staffing him going forward; and that he was told that it was increasingly challenging to staff him due to his performance on projects.

514.    Deny each and every allegation in paragraph 514 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations insofar as they relate to specific words stated during the January 11, 2018 meeting, and admit that Smith asked plaintiff what type of projects he would like to be staffed on, and incorporate by reference the Answer to paragraph 513 of the Complaint.

515.    Deny each and every allegation in paragraph 515 of the Complaint, except admit that plaintiff stated that he wanted to be staffed appropriately.

516.    Deny each and every allegation in paragraph 516 of the Complaint.

517.    Deny each and every allegation in paragraph 517 and footnote 83 of the Complaint, and aver that each associate's situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate.

518.    Deny each and every allegation in paragraph 518 of the Complaint, and specifically deny that Associate #5 is or was similarly situated in all material respects to plaintiff, except admit that plaintiff and Associate #5 were in the M&A group between June 2016 and September 2017; that Associate #5 is non-Black; that Associate #5 received the specific answer "behind" to the single specific question referenced in paragraph 518 of the Complaint; and that plaintiff quotes selectively from documents in the record and omits material parts of the record, and refer to the full text of those documents for their contents.  Incorporate by reference the Answer to paragraph 525 of the Complaint.

519.    Deny each and every allegation in paragraph 519 of the Complaint, and specifically deny that Associate #5 is or was similarly situated in all material respects to plaintiff,

except admit that Associate #5 received the specific answer "behind" to the single specific question referenced in paragraph 519 of the Complaint; and that plaintiff quotes selectively from documents in the record and omits material parts of the record, and refer to the full text of those documents for their contents.

520.    Deny each and every allegation in paragraph 520 of the Complaint, and specifically deny that Associate #5 is or was similarly situated in all material respects to plaintiff, except admit that Associate #5 is not Black/African American; and that they received the specific answer "behind" to the single specific question referenced in paragraph 520 of the Complaint, and the message as described in paragraph 520 of the Complaint, and aver that each associate's situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate; and that plaintiff quotes selectively from documents in the record and omits material parts of the record, and refer to the full text of those documents for their contents.

521.    Deny that Associate #5 is or was similarly situated in all material respects to plaintiff, and otherwise admit the allegations in paragraph 521 of the Complaint; and that plaintiff quotes selectively from the referenced document, and refer to the full text of the document for its contents.

522.    Deny each and every allegation in paragraph 522 of the Complaint, and specifically deny that Associate #5 is or was similarly situated in all material respects to plaintiff, except admit that Associate #5 received the message in their 2017 annual review as described in paragraph 522 of the Complaint; that Associate #5 received an interim review in August 2017; and that Goldberg and Aaronson were co-heads of the M&A group in December 2017, and aver that each associate's situation is assessed based on the relevant facts and circumstances, which

may, and do, differ from associate to associate; and that plaintiff quotes selectively from documents in the record, and refer to the full text of the reviews for their contents, and incorporate by reference the Answers to paragraphs 8, 11, and 12 of the Complaint.

523. Deny each and every allegation in paragraph 523 of the Complaint, and specifically deny that Associate #5 is or was similarly situated in all material respects to plaintiff, except admit that the quoted text appears in Associate #5's 2017 Summary Review, and aver that each associate's situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate; and that plaintiff quotes selectively from the referenced document, and refer to the full text of that document for its contents.

524. Deny each and every allegation in paragraph 524 of the Complaint, including on the ground that the phrases "workable staffing arrangements" to "deal with" performance issues are undefined, and therefore, vague and ambiguous, and specifically deny that Associate #5 is or was similarly situated in all material respects to plaintiff, and aver that each associate's situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate.

525. Deny each and every allegation in paragraph 525 of the Complaint, and specifically deny that Associate #5 is or was similarly situated in all material respects to plaintiff, except admit that Associate #5 departed the Firm in January 2019; that, prior to Associate # 5's departure from the Firm, Associate # 5 told Firm partners that corporate/M&A work may not be what Associate # 5 wanted to do long term; and that Associate # 5 received a bonus during the summer of 2018, and aver that plaintiff mischaracterizes his performance evaluations and those of Associate #5 by impermissibly focusing solely on the answer to one question on the performance review, rather than the entire performance review; that plaintiff's performance

reviews noted significant problems with his performance; that plaintiff impermissibly compares the circumstances of his employment with those of Associate #5; that each associate's situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate, and refer to the full text of the record evidence of plaintiff's and Associate #5's performance reviews and employment for their contents.

526.     Deny each and every allegation in paragraph 526 of the Complaint, except admit that plaintiff received the specific answer "behind" to the single specific question referenced in paragraph 526 of the Complaint in September and October 2017, and aver that plaintiff's performance reviews prior to August 2017 noted significant problems with his performance; that plaintiff received the specific answer "behind" to the single specific question referenced in paragraph 526 of the Complaint from Hudson in June 2016 and September 2016; and that plaintiff selectively quotes from documents in the record and omits material parts of the record, and refer to the full text of all of plaintiff's performance reviews for their contents, and incorporate by reference the Answers to paragraphs 4 and 475 of the Complaint.

527.     Deny each and every allegation in paragraph 527 of the Complaint, and specifically deny that Associate #5 is or was similarly situated in all material respects to plaintiff, except admit that plaintiff was not staffed on new matters after his January 11, 2018 review meeting, during which he was provided his 2017 performance reviews, because plaintiff's performance problems had made it increasingly challenging to staff him, and aver that plaintiff mischaracterizes his performance evaluations and those of Associate #5 by impermissibly focusing solely on the answer to one question on the performance review, rather than the entire performance review; that plaintiff's performance reviews noted significant problems with his performance and used the word "behind" as early as 2015 (in M&A), in 2016, and in 2017 (again

in M&A); that plaintiff impermissibly compares the circumstances of his employment and departure from the Firm with those of Associate #5; and that each associate's situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate, and refer to the full text of the record evidence of plaintiff's and Associate #5's performance reviews and employment for their contents.

528.     Deny each and every allegation in paragraph 528 of the Complaint, except admit that plaintiff was not staffed on new matters between January 11, 2018 and February 8, 2018 because plaintiff's performance problems had made it increasingly challenging to staff him. Paragraph 528 also states a legal conclusion.  To the extent a response is required, deny the legal conclusion.

529.     Deny each and every allegation in paragraph 529 of the Complaint, and incorporate by reference the Answer to paragraph 168 of the Complaint.

530.     Deny each and every allegation in paragraph 530 of the Complaint, except admit that the document depicted in paragraph 530 is only one part of the multi-part record of the meeting referenced in paragraph 484 of the Complaint that was created, aver that Smith wrote his comments in a separate attachment not depicted by plaintiff in paragraph 530, and refer to the additional record of the meeting, and incorporate by reference the Answers to paragraphs 482 and 484 of the Complaint.

531.     Deny each and every allegation in paragraph 531 of the Complaint, including on the ground that plaintiff selectively omits reference to Smith's comments, which were created in an attachment, except admit that a member of the Associate Development Department sent an email to another member of the department on February 5, 2018 that contains the text "The

summary for Kaloma is blank intentionally," and refer to the full text of that document for its contents, and incorporate by reference the Answer to paragraph 530 of the Complaint.

532.    Deny each and every allegation in paragraph 532 of the Complaint, and incorporate by reference the Answers to paragraphs 530 and 531 of the Complaint.

533.    Deny each and every allegation in paragraph 533 of the Complaint, and incorporate by reference the Answers to paragraphs 530 and 531 of the Complaint.

534.    Deny each and every allegation in paragraph 534 of the Complaint.

535.    Deny each and every allegation in paragraph 535 of the Complaint, except admit that Smith was an associate at the Firm from 2004 to 2012 and was elected to partner in 2012.

536.    Deny each and every allegation in paragraph 536 of the Complaint.  Aver that Smith did summarize the review and refer to that summary, and incorporate by reference the Answers to paragraphs 530 and 531 of the Complaint.

537.    Admit the allegations in paragraph 537 of the Complaint.

538.    Deny each and every allegation in paragraph 538 of the Complaint.

539.    Deny each and every allegation in paragraph 539 of the Complaint.

540.    Deny the allegations in paragraph 540 of the Complaint insofar as they purport to allege that Cardwell "billed more than 100+ hours with Hudson" and it is unclear to what that refers, but admit that Cardwell billed more than 100+ hours to matters on which Hudson also worked and that Cardwell billed more hours on such matters than he did on matters on which other Capital Markets partners worked.

541.    Deny each and every allegation in paragraph 541 of the Complaint on the ground that the phrase "at all relevant times" is undefined, and therefore, vague and ambiguous, and implies a legal conclusion, and further on the ground that Hudson did not become aware of the

EEOC/NYSDHR charge at any point during plaintiff's employment at the Firm.

542.    Admit the allegations in paragraph 542 of the Complaint.

543.    Deny each and every allegation in paragraph 543 of the Complaint, and incorporate by reference the Answers to paragraphs 391, 394, and 397 of the Complaint.

544.    Deny each and every allegation in paragraph 544 of the Complaint.

545.    Deny each and every allegation in paragraph 545 of the Complaint, except admit that Hudson's September 2016 review contains the quoted text, and refer to the full text of that document for its contents.

546.    Deny each and every allegation in paragraph 546 of the Complaint, except admit that a member of the Associate Development Department sent an email dated March 31, 2016 containing the quoted text in the second sentence of paragraph 546 of the Complaint, and refer to the full text of that document for its contents, and aver that the statement in the email to the effect that plaintiff was told to do a six-month rotation in the Capital Markets group is incorrect; rather, plaintiff requested and was granted permission to complete a third six-month rotation in the Capital Markets group, which he admits in paragraph 537 of the Complaint.

547.    Deny each and every allegation in paragraph 547 and footnote 84 of the Complaint, including the implication that this list represents the entirety of meetings at which plaintiff's performance was discussed with him, except admit (without admitting the topic of discussion) that the referenced meetings in May 2015, December 2015, January 2016, March 2016, June 2016, December 2016, and on March 29, 2017 and May 23, 2017, took place; that Reid read plaintiff's performance reviews before the January 2016 meeting; that the meeting with Reid, referenced in subparagraph (g), occurred on March 9, 2017; and that the quoted text in footnote 84 of the Complaint appears in the cited document, and refer to the full text of that

document for its contents.

548.    Deny each and every allegation in paragraph 548 of the Complaint.

549.    Deny each and every allegation in paragraph 549 of the Complaint, except admit that the names of specific reviewers were not disclosed to plaintiff.

550.    Deny each and every allegation in paragraph 550 of the Complaint.

551.    Admit the allegations in paragraph 551 of the Complaint.

552.    Deny each and every allegation in paragraph 552 of the Complaint, except admit that the Summary Review form that Bick completed in connection with plaintiff's June 30, 2016 review referred to feedback received from Hudson; and that the Firm's review forms have a category for "principal matters worked on by the reviewee which were considered in the evaluation."

553.    Deny each and every allegation in paragraph 553 of the Complaint, except admit that, as a general matter, partners are provided with hard copies of reviews in advance of the face-to-face review meetings, that Bick had received plaintiff's reviews prior to the meeting, and that Bick had those materials during the meeting with Cardwell.

554.    Deny each and every allegation in paragraph 554 of the Complaint, except admit that, at the referenced meeting, Bick did not disclose the names of any specific reviewers who had provided written performance reviews of plaintiff.

555.    Deny each and every allegation in paragraph 555 of the Complaint, and incorporate by reference the Answer to paragraph 554 of the Complaint.

556.    Deny each and every allegation in paragraph 556 of the Complaint, except admit that, during the referenced meeting, plaintiff asked Bick which individuals had provided critical feedback about his performance; and that Bick did not provide the specific names of reviewers or

cite specific incidents, but rather synthesized and summarized plaintiff's reviews, and admit the allegations in footnote 86 of the Complaint.

557.    Deny each and every allegation in paragraph 557 of the Complaint, except admit that Bick did not, after this meeting, provide Cardwell the names of the reviewers whose reviews he had summarized and any additional information from which those reviewers could be identified, and incorporate by reference the Answer to paragraph 556 of the Complaint.

558.    Deny each and every allegation in paragraph 558 of the Complaint, except admit that plaintiff quotes selectively from documents in the record, and refer to the full text of those documents for their contents, and incorporate by reference the Answer to paragraph 148 of the Complaint.

559.    Admit the allegations in paragraph 559 of the Complaint.

560.    Admit the allegations in paragraph 560 of the Complaint.

561.    Deny the allegations in paragraph 561 and footnote 87 of the Complaint, except admit that the time period covered by the review summary Kreynin provided included, among others, Cardwell's time in Capital Markets, and included, among others, Hudson's reviews.

562.    Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 562 of the Complaint as to "within reach," but admit that Kreynin had access to all of plaintiff's 2016 written reviews prior to the meeting.

563.    Deny knowledge or information sufficient to form a belief about the truth of the allegation in paragraph 563 of the Complaint, and incorporate by reference the Answer to paragraph 562 of the Complaint.

564.    Deny each and every allegation in paragraph 564 and footnote 88 of the Complaint, except admit that Kreynin did not specifically name any reviewer during the

referenced meeting, and as to footnote 88, incorporate by reference the answer to paragraph 432 of the Complaint.

565.     Deny each and every allegation in paragraph 565 of the Complaint, except admit that, during the December 2016 meeting, plaintiff asked Kreynin for specific examples of his poor performance; that Kreynin responded by referencing performance issues on a deal that plaintiff had worked on with Kreynin; and that plaintiff quotes selectively from the document referenced in footnote 89, and refer to the full text of that document for its contents.

566.     Deny each and every allegation in paragraph 566 of the Complaint, except admit that plaintiff asked Kreynin for additional specific examples of his poor performance; and that Kreynin responded that he did not have additional specific examples at hand to discuss with Cardwell.

567.     Deny each and every allegation in paragraph 567 of the Complaint, except admit that Hudson's written reviews of plaintiff from 2016 describe problems with plaintiff's performance, and that Hudson's reviews were completed in June 2016 and September 2016.

568.     Deny each and every allegation in paragraph 568 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations insofar as they relate to plaintiff's career prior to his employment at the Firm, and admit that Hudson's June 2016 and September 2016 reviews were not the first reviews to use the word "behind" in connection with plaintiff's performance, but were the first and second Firm reviews submitted for plaintiff during his employment as an associate at the Firm that answered "behind" directly in response to the question "do you feel this lawyer is performing materially behind, with or ahead of lawyer's class."

569.     Deny each and every allegation in paragraph 569 of the Complaint, except admit

that the referenced question is near the top of the Firm's performance evaluation forms; and that, although some evaluation forms bear the section header "Performance Evaluation," others do not.

570.    Deny each and every allegation in paragraph 570 of the Complaint, including on the ground that the form provides multiple fields for reviewers to describe the attorney's performance, except admit that the referenced question is the only question on the Firm's review template that specifically asks reviewers to indicate whether they feel the lawyer being reviewed is performing materially behind, with, or ahead of the lawyer's class.

571.    Deny each and every allegation in paragraph 571 of the Complaint, except admit that Hudson's performance reviews of plaintiff were the only documents in which Hudson answered "behind" directly in response to the question "do you feel this lawyer is performing materially behind, with or ahead of the lawyer's class."

572.    Deny each and every allegation in paragraph 572 of the Complaint.

573.    Deny each and every allegation in paragraph 573 of the Complaint.

574.    Deny each and every allegation in paragraph 574 of the Complaint on the ground that at each of plaintiff's review meetings he was told to focus on observed performance deficiencies.

575.    Deny each and every allegation in paragraph 575 of the Complaint.

576.    Deny each and every allegation in paragraph 576 of the Complaint, except admit that the quoted email exchange occurred in substance, and refer to the full text of the email exchange for its contents and the accurate quotations.

577.    Deny each and every allegation in paragraph 577 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations insofar as

they relate to plaintiff's state of mind.

578.    Deny each and every allegation in paragraph 578 of the Complaint on the ground that the term "kiddie gloves" is vague and ambiguous, and deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 578 of the Complaint insofar as they relate to plaintiff's state of mind.

579.    Deny each and every other allegation in paragraph 579 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations insofar as they relate to plaintiff's state of mind or beliefs, and admit that plaintiff sent an email to Hudson on December 17, 2015 containing, in substance, the quoted text in paragraph 579 of the Complaint, and refer to the full text of that document for its contents.

580.    Deny each and every allegation in paragraph 580 of the Complaint, except admit that, in or about April 2016, plaintiff completed his third rotation in Hudson's practice group (Capital Markets), and thereafter no longer worked directly with Hudson.

581.    Deny each and every allegation in paragraph 581 of the Complaint.

582.    Deny each and every allegation in paragraph 582 of the Complaint.

583.    Deny each and every allegation in paragraph 583 of the Complaint, except admit that Hudson's June 20, 2016 review contained the quoted text, and refer to the full text of the document for its contents.

584.    Deny each and every allegation in paragraph 584 of the Complaint, except admit that an email dated November 7, 2015 from an associate working with Hudson and plaintiff contains the selectively quoted text, and refer to the full text of that document and the related record for its contents.

585.    Deny each and every allegation in paragraph 585 of the Complaint.

586.     Admit the allegation in paragraph 586 of the Complaint.  Aver that Hudson's departure was entirely unrelated to this matter.

587.     Deny each and every allegation in paragraph 587 of the Complaint, and state that the phrase "at all relevant times" is undefined, and therefore, vague and ambiguous, and implies a legal conclusion.

588.     Deny each and every allegation in paragraph 588 of the Complaint, except admit that Goldberg, who was head of the Firm's M&A Group at the time, and Smith, met with plaintiff on February 8, 2018 and told plaintiff that there had been a Firm decision, in light of plaintiff's performance issues, that the Firm could not staff plaintiff on projects consistent with his class year (seniority) and the Firm's obligations to its clients; and that in light of this, the Firm believed that it was time for plaintiff to begin to look for alternative employment.

589.     Admit that Goldberg spoke the words quoted in paragraph 589 of the Complaint, and refer to the full audio recording of the meeting for its contents and the accurate quotations.

590.     Deny each and every allegation in paragraph 590 of the Complaint.

591.     Deny each and every allegation in paragraph 591 of the Complaint, except admit that the quoted excerpts of conversation occurred in substance during the referenced meeting, and refer to the full audio recording of the meeting for its contents and the accurate quotations.

592.     Deny each and every allegation in paragraph 592 of the Complaint, and incorporate by reference the Answers to paragraphs 588 and 591 of the Complaint.  Aver that Wolfe's name was not mentioned in the audio recording of the referenced exchange.

593.     Deny each and every allegation in paragraph 593 of the Complaint.

594.     Deny each and every allegation in paragraph 594 of the Complaint.

595.     Deny each and every allegation in paragraph 595 and footnote 90 of the

Complaint, and deny the allegation in footnote 90 that Reid had knowledge of plaintiff's August 3, 2017 complaint on the ground that plaintiff's failure to specific any time period renders the allegation vague and ambiguous, except admit that a group of Firm partners met prior to January 11, 2018 to discuss the annual performance reviews and consensus feedback for M&A associates, including plaintiff.

596.    Deny each and every allegation in paragraph 596 of the Complaint.

597.    Deny each and every allegation in paragraph 597 and footnote 91 of the Complaint.

598.    Deny each and every allegation in paragraph 598 of the Complaint.

599.    Deny each and every allegation in paragraph 599 of the Complaint.

600.    Deny each and every allegation in paragraph 600 and footnote 92 of the Complaint, except admit that Reid left Davis Polk in April 2019 to work at Comcast for reasons entirely unrelated to this matter.

601.    Deny each and every allegation in paragraph 601 of the Complaint.

602.    Deny each and every allegation in paragraph 602 of the Complaint.

603.    Deny each and every allegation in paragraph 603 of the Complaint.

604.    Deny each and every allegation in paragraph 604 and footnote 93 of the Complaint, and specifically deny that the associates listed in footnote 93 are or were similarly situated in all material respects to plaintiff, except admit that the associates named in footnote 93 previously served as summer associate coordinators, and that summer associate coordinators are removed from billable matters during the 12-week summer program, and aver that each associate's situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate.

605.     Deny each and every allegation in paragraph 605 of the Complaint, and specifically deny that plaintiff was treated differently than other associates, and aver that each associate's situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate.

606.     Deny each and every allegation in paragraph 606 of the Complaint, and specifically deny that plaintiff was treated differently than other associates, and aver that each associate's situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate.

607.     Deny each and every allegation in paragraph 607 of the Complaint, except admit that, at the February 8, 2018 meeting, plaintiff was not offered the option of remaining employed at Davis Polk, and incorporate by reference the Answer to paragraph 589 of the Complaint.

608.     Deny each and every allegation in paragraph 608 of the Complaint.

609.     Deny each and every allegation in paragraph 609 of the Complaint.

610.     Deny each and every allegation in paragraph 610 of the Complaint.

611.     Deny each and every allegation in paragraph 611 of the Complaint.

612.     Deny each and every allegation in paragraph 612 of the Complaint.

613.     Deny each and every allegation in paragraph 613 of the Complaint, except admit that one of the partners at the February 8, 2018 meeting made the selectively quoted referenced comments, and refer to the audio recording of the meeting for the accurate context.

614.     Deny each and every allegation in paragraph 614 of the Complaint, except admit that one of the partners at the February 8, 2018 meeting made the selectively quoted referenced comments in substance, and refer to the full audio recording of the meeting for its contents and the accurate quotation.

615.    Deny each and every allegation in paragraph 615 of the Complaint.

616.    Deny each and every allegation in paragraph 616 of the Complaint, except admit that the selectively quoted comments were made in substance by one of the partners during the February 8, 2018 meeting, and refer to the full audio recording of the meeting for their contents and the accurate quotation.

617.    Deny each and every allegation in paragraph 617 of the Complaint.

618.    Deny each and every allegation in paragraph 618 of the Complaint, and incorporate by reference the Answers to paragraphs 475 and 588 of the Complaint.

619.    Deny each and every allegation in paragraph 619 of the Complaint.  Paragraph 619 also states a legal conclusion.  To the extent a response is required, deny the legal conclusion.

620.     Deny each and every allegation in paragraph 620 and footnote 94 of the Complaint, except admit that Davis Polk's November 16, 2020 Responses and Objections to Plaintiff's Interrogatories contains the text "Davis Polk states that Messrs. Goldberg and Smith were tasked with delivering a message reflecting the views of the Firm with respect to plaintiff's staffing and future at the Firm; irrespective of any individual conversations they may have had and excluding any communications with them or others and internal or external counsel for Davis Polk, the message they delivered to plaintiff regarding the difficulties staffing him and his future at the firm reflected input from the Management Committee, the co-heads of the M&A Group, and reviews of partners who had evaluated plaintiff's performance," and refer to the full text of that document for its contents.  Paragraph 620 also states a legal conclusion.  To the extent a response is required, deny the legal conclusion.

621.    Deny each and every allegation in paragraph 621 of the Complaint overall, and in addition, deny the allegations in paragraph 621 on the ground that the phrase "at all relevant times" is undefined and implies a legal conclusion, and that plaintiff fails to identify the referenced Firm partners other than defendants, and therefore, the allegations are vague and ambiguous.

622.    Deny each and every allegation in paragraph 622 of the Complaint.

623.    Deny each and every allegation in paragraph 623 of the Complaint.

624.    Deny each and every allegation in paragraph 624 of the Complaint, except admit that attorneys for plaintiff represented in May 2018 that he had filed a supplemental charge of discrimination against the Firm on April 25, 2018 containing various allegations.

625.    Admit the allegations in paragraph 625 of the Complaint.

626.    Deny each and every allegation in paragraph 626 and footnotes 96–98 of the Complaint, except deny knowledge or information sufficient to form a belief about whether the associates referenced had the views purported to be summarized in footnote 97; and admit that Kreynin is an M&A partner and worked with plaintiff in 2016; that Kreynin conducted plaintiff's face-to-face review meeting in December 2016; that the December 2016 review accounted for written performance reviews concerning plaintiff's work between September 2015 and September 2016; that the Firm considered Crane to be a leader in diversity and inclusion efforts at the Firm; that Crane participated in conversations about Black attorneys' experience and professional development at the Firm; that, as referenced in footnote 98 of the Complaint, plaintiff's name and work phone number and those of nine others appeared on the memo referenced in paragraph 444 of the Complaint; and that plaintiff selectively quotes from documents in the record, and refer to the full text of those documents for their contents.

627.    Deny each and every allegation in paragraph 627 of the Complaint and state that, to the extent paragraph 627 of the Complaint alleges a disparate impact claim, no response is needed, as any such claim has been dismissed.

628.    Deny each and every allegation in paragraph 628 and footnote 99 of the Complaint and state that, to the extent paragraph 628 of the Complaint alleges a disparate impact claim, no response is needed, as any such claim has been dismissed.

629.    Deny each and every allegation in paragraph 629 of the Complaint, and state that, to the extent paragraph 629 of the Complaint alleges a disparate impact claim, no response is needed, as any such claim has been dismissed, except admit that plaintiff quotes selectively from the presentation referenced in footnote 100 of the Complaint, and refer to the full text of that document for its contents.

630.    Deny each and every allegation in paragraph 630 and footnote 101 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations in footnote 101 of the Complaint insofar as they relate to what unidentified partners at Davis Polk were aware of; and admit that defendants are generally aware of the concept of implicit bias; that plaintiff quotes selectively from the document referenced in footnote 101 of the Complaint, which is a third-party article not linked to Davis Polk, and refer to the full text of that document for its contents.

631.    Deny each and every allegation in paragraph 631 of the Complaint, except admit that plaintiff quotes selectively from the document referenced in footnote 102 of the Complaint, and refer to the full text of that document for its contents, and incorporate by reference the Answer to paragraph 630 of the Complaint.

632.    Deny each and every allegation in paragraph 632 of the Complaint, except deny

knowledge or information sufficient to form a belief about the referenced observations and conversations that plaintiff had at Davis Polk, and admit that mid-year reviews, which are also referred to as interim reviews or off-cycle reviews, occur for a variety of reasons, including but not limited to a view that the associate has performance deficiencies that should be addressed again before waiting for the annual review process or to following rotations.

633.     Deny each and every allegation in paragraph 633 of the Complaint, and state that, to the extent paragraph 633 of the Complaint alleges a disparate impact claim, no response is needed, as any such claim has been dismissed.

634.     Deny each and every allegation in paragraph 634 of the Complaint.

635.     Deny each and every allegation in paragraph 635 of the Complaint.

636.     Deny each and every allegation in paragraph 636 of the Complaint overall and in addition, on the ground that the phrase "blind evaluations" is undefined, and therefore, vague and ambiguous.

637.     Deny each and every allegation in paragraph 637 of the Complaint.

638.     Deny each and every allegation in paragraph 638 of the Complaint.

639.     Deny each and every allegation in paragraph 639 of the Complaint, except admit that the Firm and the individual defendants are competent and experienced in the field of law; that the Firm and its partners are recognized as such, including internationally; and that some within Firm or the group of individual defendants have practiced law for more than twenty years.

640.     Deny knowledge or information sufficient to form a belief about whether it is common for an undifferentiated group of M&A attorneys, as well as partners sitting on management committees of their firms, to be viewed by an unidentified person or group as described in paragraph 640 of the Complaint.

641.    Deny each and every allegation in paragraph 641 of the Complaint, except admit that of the Black associates in plaintiff's 2014 associate class, plaintiff was the only male.

642.    Deny each and every allegation in paragraph 642 and footnote 103 of the Complaint, and state that, to the extent paragraph 642 of the Complaint alleges an harassment, hostile environment, or a disparate impact claim, no response is needed, as any such claims have been dismissed, except admit that the Firm is committed to maintaining a workplace free of discrimination, hostility, harassment, and retaliation; that the quoted language appears in the document cited in footnote 103 of the Complaint, and incorporate by reference the Answer to paragraph 206 of the Complaint.

643.    Deny each and every allegation in paragraph 643 of the Complaint.

644.    Deny each and every allegation in paragraph 644 and footnote 105 of the Complaint, and specifically deny that the listed associates are or were similarly situated in all material respects to plaintiff, except admit the allegations in footnote 104 of the Complaint; and that the associates listed in paragraph 644 of the Complaint are non-Black, and aver that each associate's situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate.

645.    Deny each and every allegation in paragraph 645 of the Complaint; and specifically deny that the listed associates are or were similarly situated in all material respects to plaintiff, except aver that plaintiff mischaracterizes his performance evaluations and those of the listed associates by impermissibly focusing solely on the answer to one question on the performance review, rather than the entire performance review; that plaintiff's performance reviews noted significant problems with his performance; that plaintiff impermissibly compares the circumstances of his employment with those of the listed associates; that each associate's

situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate, and refer to the full text of plaintiff's and the listed associates' performance reviews for their contents.

646.    Deny each and every allegation in paragraph 646 of the Complaint, and specifically deny that the referenced associates are or were similarly situated in all material respects to plaintiff, except aver that plaintiff mischaracterizes his performance evaluations and those of the referenced associates by impermissibly focusing solely on the answer to one question on the performance review, rather than the entire performance review; that plaintiff's performance reviews noted significant problems with his performance; that plaintiff impermissibly compares the circumstances of his employment with those of the referenced associates; that each associate's situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate, and refer to the full text of the record evidence of plaintiff's and the referenced associates' performance reviews and employment for their contents.

647.    Deny each and every allegation in paragraph 647 of the Complaint, and specifically deny that the referenced associates are or were similarly situated in all material respects to plaintiff.

648.    Deny each and every allegation in paragraph 648 of the Complaint, and specifically deny that the referenced associates are or were similarly situated in all material respects to plaintiff.

649.    Deny each and every allegation in paragraph 649 of the Complaint, and specifically deny that the referenced associates are or were similarly situated in all material respects to plaintiff.

650.    Deny each and every allegation in paragraph 650 and footnote 106 of the Complaint, and specifically deny that Associate #5 is or was similarly situated in all material respects to plaintiff, except deny knowledge or information sufficient to form a belief about the truth of the allegations in footnote 106 of the Complaint insofar as they relate to plaintiff's beliefs, and admit that Associate #5's race is not Black/African-American; that Chudd gave the specific answer "behind" to the single specific question referenced in paragraph 650 of the Complaint; that defendants made the request referenced in footnote 106 of the Complaint and that the Third Amended Verified Complaint complies with that request, and aver that plaintiff mischaracterizes his performance evaluations and those of Associate #5 by impermissibly focusing solely on the answer to one question on the performance review, rather than the entire performance review, that plaintiff's performance reviews noted significant problems with his performance; that plaintiff impermissibly compares the circumstances of his employment with those of Associate #5; that each associate's situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate, and refer to the full text of plaintiff's and Associate #5's performance reviews for their contents.

651.    Deny each and every allegation in paragraph 651 of the Complaint, including on the ground that the phrase "workable staffing and employment arrangement" is undefined, and therefore, vague and ambiguous, and specifically deny that Associate #5 is or was similarly situated in all material respects to plaintiff and that defendants "eliminated" any associate's billable hours, except aver that plaintiff mischaracterizes his performance evaluations and those of Associate #5 by impermissibly focusing solely on the answer to one question on the performance review, rather than the entire performance review; that plaintiff's performance reviews noted significant problems with his performance; that plaintiff impermissibly compares

100

the circumstances of his employment and departure from the Firm with those of Associate #5; that each associate's situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate, and refer to the full text of the record evidence of plaintiff's and Associate #5's performance reviews and employment for their contents.

652. Deny each and every allegation in paragraph 652 of the Complaint, and incorporate by reference the Answers to paragraphs 519 and 525 of the Complaint.

653. Deny each and every allegation in paragraph 653 of the Complaint, including on the ground that the phrase "workable staffing and employment arrangement" is undefined, and therefore, vague and ambiguous, and specifically deny that Associate #7 is or was similarly situated in all material respects to plaintiff and that defendants "eliminated" any associate's billable hours, except admit that Associate #7 is not Black/African American; and that they received the specific answer "behind" to the single specific question referenced in paragraph 653 of the Complaint, and aver that plaintiff mischaracterizes his performance evaluations and those of Associate #7 by impermissibly focusing solely on the answer to one question on the performance review, rather than the entire performance review; that plaintiff's performance reviews noted significant problems with his performance; that plaintiff impermissibly compares the circumstances of his employment and departure from the Firm with those of Associate #7; that each associate's situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate, and refer to the full text of the record evidence of plaintiff's and Associate #7's performance reviews and employment for their contents.

654. Deny each and every allegation in paragraph 654 of the Complaint, and specifically deny that Associate #7 is or was similarly situated in all material respects to plaintiff, except admit that Associate #7 received the specific answer "behind" to the single specific

question referenced in paragraph 654 of the Complaint, and aver that plaintiff impermissibly compares the circumstances of his employment with those of Associate #7; that each associate's situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate; that plaintiff quotes selectively from documents in the record and omits material parts of the record, and refer to the full text of those documents for their contents.

655.     Deny each and every allegation in paragraph 655 of the Complaint, and specifically deny that Associate #9 is or was similarly situated in all material respects to plaintiff, except admit that Associate #9's race is not Black/African-American; that, in 2015 and 2017, Associate #9 received the specific answer "behind" to the single specific question referenced in paragraph 655 of the Complaint, including, on one occasion, from Wolfe, and the comments referenced, and aver that plaintiff mischaracterizes his performance evaluations and those of Associate #9 by impermissibly focusing solely on the answer to one question on the performance review, rather than the entire performance review; that plaintiff's performance reviews noted significant problems with his performance; that plaintiff impermissibly compares the circumstances of his employment with those of Associate #9; that each associate's situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate; and that plaintiff quotes selectively from documents in the record and omits material parts of the record, and refer to the full text of the record evidence of plaintiff's and Associate #9's performance reviews and employment for their contents.

656.     Deny each and every allegation in paragraph 656 of the Complaint, including on the ground that the phrase "workable staffing and employment arrangement" is undefined, and therefore, vague and ambiguous, and specifically deny that Associate #9 is or was similarly situated in all material respects to plaintiff and that defendants "eliminated" any associate's

billable hours, except admit that Associate #9 received the specific answer "behind" to the single specific question referenced in paragraph 656, and aver that plaintiff mischaracterizes his performance evaluations and those of Associate #9 by impermissibly focusing solely on the answer to one question on the performance review, rather than the entire performance review; that plaintiff's performance reviews noted significant problems with his performance; that plaintiff impermissibly compares the circumstances of his employment and departure from the Firm with those of Associate #9; and that each associate's situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate, and refer to the full text of the record evidence of plaintiff's and Associate #9's performance reviews and employment for their contents.

657.    Deny each and every allegation in paragraph 657 of the Complaint, and specifically deny that Associate #9 is or was similarly situated in all material respects to plaintiff, except admit that Associate #9 received the specific answer "behind" to the single specific question referenced in paragraph 657 of the Complaint, and the review by the person as described in paragraph 657 of the Complaint, and that Associate #9 received their full salary and bonus during each year of employment at the Firm, and aver that plaintiff impermissibly compares the circumstances of his employment with those of Associate #9; that each associate's situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate; and that plaintiff quotes selectively from documents in the record and omits material parts of the record, and refer to the full text of those documents for their contents.

658.    Deny each and every allegation in paragraph 658 of the Complaint, including on the ground that the phrase "workable staffing and employment arrangement" is undefined, and

therefore, vague and ambiguous, and specifically deny that Associate #3 is or was similarly situated in all material respects to plaintiff and that defendants "eliminated" any associate's billable hours, except admit that Associate #3 is not Black/African American; and that they received the specific answer "behind" to the single specific question referenced in paragraph 658 of the Complaint, and aver that plaintiff mischaracterizes his performance evaluations and those of Associate #3 by impermissibly focusing solely on the answer to one question on the performance review, rather than the entire performance review; that plaintiff's performance reviews noted significant problems with his performance; that plaintiff impermissibly compares the circumstances of his employment and departure from the Firm with those of Associate #3; and that each associate's situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate, and refer to the full text of the record evidence of plaintiff's and Associate #3's performance reviews and employment for their contents.

659.    Deny each and every allegation in paragraph 659 of the Complaint, and specifically deny that Associate #3 is or was similarly situated in all material respects to plaintiff, except admit that Associate #3 received the specific answer "behind" to the single specific question referenced in paragraph 659 of the Complaint, and aver that plaintiff impermissibly compares the circumstances of his employment with those of Associate #3; that each associate's situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate; and that plaintiff quotes selectively from documents in the record and omits material parts of the record, and refer to the full text of those documents for their contents.

660.    Deny each and every allegation in paragraph 660 of the Complaint, and specifically deny that Associate #8 is or was similarly situated in all material respects to plaintiff, except admit that Associate #8's race is not Black/African-American; and that they received the specific answer "behind" to the single specific question referenced in paragraph 660 of the Complaint, and the review by the person as described in paragraph 660 of the Complaint, and aver that plaintiff mischaracterizes his performance evaluations and those of Associate #8 by impermissibly focusing solely on the answer to one question on the performance review, rather than the entire performance review; that plaintiff's performance reviews noted significant problems with his performance; that plaintiff impermissibly compares the circumstances of his employment with those of Associate #8; that each associate's situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate; and that plaintiff quotes selectively from documents in the record and omits material parts of the record, and refer to the full text of the record evidence of plaintiff's and Associate #8's performance reviews and employment for their contents.

661.    Deny each and every allegation in paragraph 661 of the Complaint, including on the ground that the phrase "workable staffing and employment arrangement" is undefined, and therefore, vague and ambiguous, and specifically deny that Associate #8 is or was similarly situated in all material respects to plaintiff and that defendants "eliminated" any associate's billable hours, except admit that Associate #8 received the specific answer "behind" to the single specific question referenced in paragraph 661, and aver that plaintiff mischaracterizes his performance evaluations and those of Associate #8 by impermissibly focusing solely on the answer to one question on the performance review, rather than the entire performance review; that plaintiff's performance reviews noted significant problems with his performance; that

plaintiff impermissibly compares the circumstances of his employment and departure from the Firm with those of Associate #8; and that each associate's situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate, and refer to the full text of the record evidence of plaintiff's and Associate #8's performance reviews and employment for their contents.

662.    Deny each and every allegation in paragraph 662 of the Complaint, and specifically deny that Associate #8 is or was similarly situated in all material respects to plaintiff, except admit that Associate #8 received the specific answer "behind" to the single specific question referenced in paragraph 662 of the Complaint, and aver that plaintiff impermissibly compares the circumstances of his employment and departure from the Firm with those of Associate #8; that each associate's situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate; and that plaintiff quotes selectively from a document in the record and omits material parts of the record, and refer to the full text of that document for its contents.

663.    Deny each and every allegation in paragraph 663 of the Complaint, and specifically deny that Associate #6 is or was similarly situated in all material respects to plaintiff, except admit that Associate #6's race is not Black/African-American; that they received the reviews as described in paragraph 663 of the Complaint, and, on one occasion, the specific answer "behind" to the single specific question referenced in paragraph 663 of the Complaint, and aver that plaintiff mischaracterizes his performance evaluations and those of Associate #6 by impermissibly focusing solely on the answer to one question on the performance review, rather than the entire performance review; that plaintiff's performance reviews noted significant problems with his performance; that plaintiff impermissibly compares the circumstances of his

employment and departure from the Firm with those of Associate #6; that each associate's situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate; and that plaintiff quotes selectively from documents in the record and omits material parts of the record, and refer to the full text of the record evidence of plaintiff's and Associate #6's performance reviews and employment for their contents.

664.   Deny each and every allegation in paragraph 664 of the Complaint, including on the ground that the phrase "workable staffing and employment arrangement" is undefined, and therefore, vague and ambiguous, and specifically deny that Associate #6 is or was similarly situated in all material respects to plaintiff and that defendants "eliminated" any associate's billable hours, except admit that Associate #6 received the specific answer "behind" to the single specific question referenced in paragraph 664 of the Complaint, and aver that plaintiff mischaracterizes his performance evaluations and those of Associate #6 by impermissibly focusing solely on the answer to one question on the performance review, rather than the entire performance review; that plaintiff's performance reviews noted significant problems with his performance; that plaintiff impermissibly compares the circumstances of his employment and departure from the Firm with those of Associate #6; and that each associate's situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate, and refer to the full text of the record evidence of plaintiff's and Associate #6's performance reviews and employment for their contents.

665.   Deny each and every allegation in paragraph 665 of the Complaint, and specifically deny that Associate #6 is or was similarly situated in all material respects to plaintiff, except admit that Associate #6 received the specific answer "behind" to the single specific question referenced in described in paragraph 665 of the Complaint, and the review by the

person as described in paragraph 665 of the Complaint, and aver that plaintiff impermissibly compares the circumstances of his employment with those of Associate #6; that each associate's situation is assessed based on the relevant facts and circumstances, which may, and do, differ from associate to associate; and that plaintiff quotes selectively from documents in the record and omits material parts of the record, and refer to the full text of those documents for their contents.

666.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 666 of the Complaint.

667.     Deny knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 667 of the Complaint.

668.     Deny the allegations in paragraph 668 of the Complaint inasmuch as they purport to characterize Cardwell's recruitment with a single word ("aggressively"), and deny knowledge or information sufficient to form a belief about whether and how often the points described were made to Cardwell.

669.     Deny each and every allegation in paragraph 669 of the Complaint, except admit that Davis Polk is a well-known and respected law firm.

670.     Deny knowledge or information sufficient to form a belief about whether the points set out in paragraph 670 of the Complaint were commonly discussed and understood; and deny that, if one becomes a Davis Polk associate, that person is almost certain that the points summarized in paragraph 670 will be attained for one's life.

671.     Deny knowledge or information sufficient to form a belief about whether the points set out in paragraph 671 of the Complaint were commonly discussed and understood.

672.     Deny knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 672 of the Complaint.

673.    Deny each and every allegation in paragraph 673 of the Complaint, and deny the alleged statistics in the middle column of the chart in paragraph 673 of the Complaint on the ground that the phrase "for almost all of Davis Polk's history" is undefined, and therefore, vague and ambiguous, and on the further ground that there is no singular percentage that captures characteristics of Davis Polk partners during the time period referenced in footnote 109 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations concerning racial diversity among Donald Trump's judicial appointees, and admit that the statistics in the bottom right hand column of the chart in paragraph 673 of the Complaint are accurate as to the time during which plaintiff was an associate at the firm.

674.    Deny each and every allegation in paragraph 674 and footnote 110 of the Complaint, except admit that Davis Polk's partners and the individual defendants are not the same as Donald Trump, and incorporate by reference the Answer to paragraph 206 of the Complaint.

675.    Deny each and every allegation in paragraph 675 of the Complaint insofar as it purports to suggest that people at the Firm have racial hatred toward plaintiff or others and otherwise deny knowledge and information sufficient to understand what plaintiff means by the descriptor of hatred he employs in paragraph 675 of the Complaint.

676.    Deny each and every allegation in paragraph 676 of the Complaint.

677.    Deny each and every allegation in paragraph 677 of the Complaint.

678.    Deny each and every allegation in paragraph 678 of the Complaint, and state that, to the extent paragraph 678 of the Complaint alleges a disparate impact claim, no response is needed, as any such claim has been dismissed.

679.     Deny each and every allegation in paragraph 679 of the Complaint.

680.     Deny each and every allegation in paragraph 680 of the Complaint, and state that, to the extent paragraph 680 of the Complaint alleges a disparate impact claim, no response is needed, as any such claim has been dismissed.

681.     Deny each and every allegation in paragraph 681 of the Complaint, and incorporate by reference the Answer to paragraph 394 of the Complaint.

682.     Deny each and every allegation in paragraph 682 of the Complaint, and state that, to the extent paragraph 682 of the Complaint alleges a disparate impact claim, no response is needed, as any such claim has been dismissed.

683.     Deny each and every allegation in paragraph 683 of the Complaint.

684.     Deny each and every allegation in paragraph 684 of the Complaint.

685.     Deny each and every allegation in paragraph 685 of the Complaint, except admit that Bick and Reid have working relationships with their corporate clients or certain corporations.

686.     Deny each and every allegation in paragraph 686 of the Complaint.

687.     Deny each and every allegation in paragraph 687 of the Complaint.

688.     Deny each and every allegation in paragraph 688 of the Complaint.

689.     Deny each and every allegation in paragraph 689 of the Complaint, except admit that, during plaintiff's time as an associate at the firm, the listed individuals were less senior than those who had been Firm partners for twenty-plus years.

690.     Deny each and every allegation in paragraph 690 of the Complaint, and incorporate by reference the Answers to paragraphs 8-13 of the Complaint.

691.     Deny each and every allegation in paragraph 691 of the Complaint, and incorporate by reference the Answers to paragraphs 7 and 9-13 of the Complaint.

692.     Deny each and every allegation in paragraph 692 of the Complaint.

693.     Deny each and every allegation in paragraph 693 of the Complaint.

694.     Deny each and every allegation in paragraph 694 of the Complaint.

695.     Deny each and every allegation in paragraph 695 of the Complaint.

696.     Deny each and every allegation in paragraph 696 of the Complaint.

697.     Deny each and every allegation in paragraph 697 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations insofar as they relate to plaintiff's subjective observations and experiences.

698.     Deny each and every allegation in paragraph 698 of the Complaint.

699.     Deny each and every allegation in paragraph 699 of the Complaint.

700.     Deny each and every allegation in paragraph 700 of the Complaint, except admit that, during plaintiff's time as an associate at the Firm, the Firm had a lock-step compensation model for both associates and partners.

701.     Deny each and every allegation in paragraph 701 of the Complaint, except admit that the Firm has long term clients.

702.     Deny each and every allegation in paragraph 702 of the Complaint.

703.     Deny each and every allegation in paragraph 703 of the Complaint.

704.     Deny each and every allegation in paragraph 704 of the Complaint.

705.     Deny each and every allegation in paragraph 705 of the Complaint.

706.     Deny each and every allegation in paragraph 706 of the Complaint.

707.     Deny each and every allegation in paragraph 707 of the Complaint.

708.    Deny each and every allegation in paragraph 708 of the Complaint.

709.    Deny each and every allegation in paragraph 709 of the Complaint.

710.    Deny each and every allegation in paragraph 710 of the Complaint.

711.    Admit that the quoted text in paragraph 711 and footnote 112 of the Complaint appeared in the referenced article, and refer to the full text of that document for its contents.

712.    Deny each and every allegation in paragraph 712 of the Complaint, except admit that plaintiff quotes selectively from the source cited in footnote 113 of the Complaint, and refer to the full text of that document for its contents.

713.    Deny each and every allegation in paragraph 713 of the Complaint.

714.    Deny each and every allegation in paragraph 714 of the Complaint.

715.    Deny each and every allegation in paragraph 715 of the Complaint.

716.    Admit the allegations in paragraph 716 of the Complaint.

717.    Deny each and every allegation in paragraph 717 and footnote 114 of the Complaint, except admit that Davis Polk has had a multi-decade relationship with Comcast that long pre-dates Reid's employment there and that in his current role at Comcast Reid is involved in the process of selecting counsel, including Davis Polk, for various assignments.

718.    Deny each and every allegation in paragraph 718 of the Complaint, except admit that Firm's profits, on average per partner, were at least $3 million dollars per year in 2015, 2016, 2017, and 2018.

719.    Deny each and every allegation in paragraph 719 of the Complaint, except admit that there were differences in the compensation of Firm partners during the period Cardwell was employed at Davis Polk.

720.    Deny each and every allegation in paragraph 720 of the Complaint.

721.     Deny each and every allegation in paragraph 721 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations insofar as they relate to the beliefs of unidentified "people" at Davis Polk.

722.     Deny each and every allegation in paragraph 722 of the Complaint, and state that, to the extent paragraph 722 of the Complaint alleges a disparate impact claim, no response is needed, as any such claim has been dismissed, except deny knowledge or information sufficient to form a belief about the truth of the allegations regarding unidentified "people."

723.     Deny each and every allegation in paragraph 723 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations insofar as they relate to the personal qualities, families, or aspirations of unidentified Davis Polk partners, associates, and alumni.

724.     Deny each and every allegation in paragraph 724 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations insofar as they relate to plaintiff's state of mind or observations.

725.     Deny each and every allegation in paragraph 725 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations insofar as they relate to the states of mind of unidentified Davis Polk partners, associates, and alumni.

726.     Deny each and every allegation in paragraph 726 of the Complaint.

727.     Deny each and every allegation in paragraph 727 of the Complaint.

728.     Deny each and every allegation in paragraph 728 of the Complaint.

729.     Deny each and every allegation in paragraph 729 of the Complaint, except admit that Birnbaum sent the email referenced in footnote 115 of the Complaint.

730.     Deny each and every allegation in paragraph 730 of the Complaint.

731.    Deny each and every allegation in paragraph 731 of the Complaint.

732.    Deny each and every allegation in paragraph 732 of the Complaint, and state that, to the extent paragraph 732 of the Complaint alleges a disparate impact claim, no response is needed, as any such claim has been dismissed.

733.    Deny each and every allegation in paragraph 733 and footnote 116 of the Complaint, and incorporate by reference the Answer to paragraph 530 of the Complaint.

734.    Deny each and every allegation in paragraph 734 of the Complaint.

735.    Deny each and every allegation in paragraph 735 of the Complaint.

736.    Deny each and every allegation in paragraph 736 of the Complaint, except deny knowledge or information sufficient to form a belief about the truth of the allegations insofar as they relate to the states of mind of unidentified people and U.S. lawyers.

737.    Deny each and every allegation in paragraph 737 of the Complaint.

738.    Deny each and every allegation in paragraph 738 of the Complaint, except admit that plaintiff makes allegations about the Firm's practices with respect to performance reviews.

739.    Deny each and every allegation in paragraph 739 of the Complaint, except admit that the law should be applied faithfully and fairly in this case.

740.    Deny each and every allegation in paragraph 740 of the Complaint.

741.    Repeat and incorporate their responses to every allegation in the Complaint with the same force and effect as if fully set forth herein.

742.    Deny each and every allegation in paragraph 742 of the Complaint.

743.    Deny each and every allegation in paragraph 743 of the Complaint.

744.    Deny each and every allegation in paragraph 744 of the Complaint.

745.    Repeat and incorporate their responses to every allegation in the Complaint with the same force and effect as if fully set forth herein.

746.    Deny each and every allegation in paragraph 746 of the Complaint.

747.    Deny each and every allegation in paragraph 747 of the Complaint.

748.    Deny each and every allegation in paragraph 748 of the Complaint.

749.    Repeat and incorporate their responses to every allegation in the Complaint with the same force and effect as if fully set forth herein.

750.    Deny each and every allegation in paragraph 750 of the Complaint.

751.    Deny each and every allegation in paragraph 751 of the Complaint.

752.    Deny each and every allegation in paragraph 752 of the Complaint.

753.    Repeat and incorporate their responses to every allegation in the Complaint with the same force and effect as if fully set forth herein.

754.    Deny each and every allegation in paragraph 754 of the Complaint.

755.    Deny each and every allegation in paragraph 755 of the Complaint.

756.    Deny each and every allegation in paragraph 756 of the Complaint.

757.    Deny each and every allegation in paragraph 757 of the Complaint.

758.    Repeat and incorporate their responses to every allegation in the Complaint with the same force and effect as if fully set forth herein.

759.    Deny each and every allegation in paragraph 759 of the Complaint.

760.    Deny each and every allegation in paragraph 760 of the Complaint.

761.    Deny each and every allegation in paragraph 761 of the Complaint.

762.    Repeat and incorporate their responses to every allegation in the Complaint with the same force and effect as if fully set forth herein.

763.    Deny each and every allegation in paragraph 763 of the Complaint.

764.    Deny each and every allegation in paragraph 764 of the Complaint.

765.    Deny each and every allegation in paragraph 765 of the Complaint.

766.    Repeat and incorporate their responses to every allegation in the Complaint with the same force and effect as if fully set forth herein.

767.    Deny each and every allegation in paragraph 767 of the Complaint.

768.    Deny each and every allegation in paragraph 768 of the Complaint.

769.    Deny each and every allegation in paragraph 769 of the Complaint.

770.    Repeat and incorporate their responses to every allegation in the Complaint with the same force and effect as if fully set forth herein.

771.    Deny each and every allegation in paragraph 771 of the Complaint.

772.    Deny each and every allegation in paragraph 772 of the Complaint.

773.    Deny each and every allegation in paragraph 773 of the Complaint.

774.    Repeat and incorporate their responses to every allegation in the Complaint with the same force and effect as if fully set forth herein.

775.    Deny each and every allegation in paragraph 775 of the Complaint.

776.    Deny each and every allegation in paragraph 776 of the Complaint.

777.    Deny each and every allegation in paragraph 777 of the Complaint.

778.    Repeat and incorporate their responses to every allegation in the Complaint with the same force and effect as if fully set forth herein.

779.    Deny each and every allegation in paragraph 779 of the Complaint.

780.    Deny each and every allegation in paragraph 780 of the Complaint.

781.    Deny each and every allegation in paragraph 781 of the Complaint.

782. Repeat and incorporate their responses to every allegation in the Complaint with the same force and effect as if fully set forth herein.

783. Deny each and every allegation in paragraph 783 of the Complaint.

784. Deny each and every allegation in paragraph 784 of the Complaint.

785. Repeat and incorporate their responses to every allegation in the Complaint with the same force and effect as if fully set forth herein.

786. Deny each and every allegation in paragraph 786 of the Complaint.

787. Deny each and every allegation in paragraph 787 of the Complaint.

788. Deny each and every allegation in paragraph 788 of the Complaint.

789. Deny that plaintiff is entitled to any of the relief sought in his prayer for relief.

790. Do not contest the parameters of Fed. R. Civ. P. 38.

## DEFENSES

Defendants assert the following defenses and/or affirmative defenses, without assuming the burden of proof for any issues for which applicable law places the burden on plaintiff. Nothing stated herein is intended to be construed as an acknowledgement that any particular issues or subject matter are relevant to plaintiff's allegations. Furthermore, all affirmative defenses are pleaded in the alternative, and none constitutes an admission of liability or that plaintiff is entitled to any relief on his claims.

### First Defense

Plaintiff fails, in whole or in part, to state a claim upon which relief may be granted or for which the damages sought may be awarded.

### Second Defense

To the extent plaintiff seeks relief under Title VII from or for employment decisions or actions that were not included in and/or the subject of, or are against individuals or entities who were not named in, a charge timely filed with the appropriate administrative agency, such claims are barred because of the failure to exhaust administrative remedies and/or the failure to satisfy the statutory prerequisites, and the Court therefore lacks subject matter jurisdiction over such claims.

### Third Defense

Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitation and/or because of plaintiff's failure to file a timely administrative charge.

### Fourth Defense

Plaintiff's claims for exemplary or punitive damages are barred, in whole or in part, by the provisions of the United States Constitution.

### Fifth Defense

Plaintiff's claims for damages fail to the extent he seeks damages that are not permitted under Title VII, Section 1981, or state or city law.

### Sixth Defense

Plaintiff's claims are barred, in whole or in part, by his failure to mitigate, or reasonably attempt to mitigate, his damages.

### Seventh Defense

Plaintiff's claims are barred, in whole or in part, because he did not engage in protected activities.

### Eighth Defense

Plaintiff's claims are barred, in whole or in part, because they do not allege employment actions or decisions that amount to a material adverse change to a term or condition of employment.

### Ninth Defense

Plaintiff's claims are barred, in whole or in part, because the alleged conduct complained of consists of nothing more than what a reasonable person would consider petty slights and trivial inconveniences.

### Tenth Defense

Plaintiff's claims fail because any and all employment actions allegedly taken with respect to plaintiff were based upon legitimate, non-discriminatory reasons including, but not limited to, plaintiff's unsatisfactory work performance, and were unrelated to plaintiff's race or any other protected classification, and were not pretextual.

### Eleventh Defense

Plaintiff's claims are barred, in whole or in part, because there was no discriminatory animus on the part of defendants.

### Twelfth Defense

Plaintiff's claims are barred, in whole or in part, because defendants did not treat him less favorably than similarly situated employees at the Firm.

### Thirteenth Defense

Plaintiff's aiding and abetting claims are barred, in whole or in part, because no underlying violation took place.

119

**Fourteenth Defense**

Plaintiff's claims against the individual defendants are barred, in whole or in part, because they did not participate in the employment actions allegedly taken with respect to plaintiff.

**Fifteenth Defense**

Plaintiff's claims against the individual defendants are barred, in whole or in part, because they did not have knowledge of the activities he claims were protected activities.

**Sixteenth Defense**

Plaintiff's claims are barred, in whole or in part, because there is no causal connection between any alleged protected activity and any alleged adverse employment action.

**Seventeenth Defense**

Plaintiff's claims are barred, in whole or in part, because defendants' actions were not the proximate cause of any of his alleged injuries.

**Eighteenth Defense**

Plaintiff's claims are barred, in whole or in part, because there was no retaliatory motive on the part of defendants.

**Nineteenth Defense**

Plaintiff's claims are barred, in whole or in part, because defendants did not engage in conduct reasonably likely to deter plaintiff from engaging in protected activity.

**Twentieth Defense**

Plaintiff's claims are barred, in whole or in part, because defendants have committed no act or omission causing damage to plaintiff.

**Twenty-First Defense**

Plaintiff's claims for punitive damages are barred, in whole or in part, because defendants' actions were lawful, made in good faith, and not undertaken with willfulness, malice, or reckless indifference to plaintiff's legally protected rights.

**Twenty-Second Defense**

Plaintiff's claims for damages are barred, in whole or in part, because the assumptions they are based on, including without limitation, that he would have been an associate at Davis Polk associate through 2021, that he would have made partner at Davis Polk, and that he had no reasonable prospect of obtaining comparable alterative employment after his termination, are without basis and speculative.

**Twenty-Third Defense**

Plaintiff's claims against Brass are barred, in whole or in part, to the extent they are based on alleged adverse employment actions occurring before Brass became a partner at the Firm in July 2017.

\*       \*       \*

Defendants are not knowingly waiving any defense and hereby expressly reserve the right to amend their Answer to include all such defenses as may become available or apparent during pretrial proceedings of this action.

**WHEREFORE,** defendants respectfully request that this Court:

(a)    Enter judgment in the defendants' favor;

(b)    Award defendants the costs of the suit, including reasonable attorneys' fees and expenses; and

(c)    Grant such other and further relief as the Court deems just and proper.

121

Dated:       November 19, 2021
                New York, New York

Respectfully submitted,


PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP


By: /s/ Bruce Birenboim

    Bruce Birenboim
    Jeh C. Johnson
    Susanna M. Buergel
    Marissa C.M. Doran
    1285 Avenue of the Americas
    New York, New York 10019-6064
    Telephone: (212) 373-3000
    bbirenboim@paulweiss.com
    jjohnson@paulweiss.com
    sbuergel@paulweiss.com
    mdoran@paulweiss.com

    *Attorneys for Defendants*