UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KALOMA CARDWELL,

            *Plaintiff,*

v.

DAVIS POLK & WARDWELL LLP,
THOMAS REID, JOHN BICK, WILLIAM
CHUDD, SOPHIA HUDSON, HAROLD
BIRNBAUM, DANIEL BRASS, BRIAN
WOLFE, and JOHN BUTLER,

            *Defendants.*

19 Civ. 10256 (GHW)

## DECLARATION OF CHARLES S. DUGGAN

Charles S. Duggan affirms and states as follows:

1. I am a partner of the law firm Davis Polk & Wardwell LLP ("Davis Polk" or the "Firm") and practice in the Civil Litigation group. Davis Polk is a limited liability partnership engaged in the practice of law and headquartered in New York, New York. I have been a partner at the Firm since 2002 excepting a period in 2004-2005 during which I worked in the federal government. I also serve as the Firm's general counsel. This declaration is based on personal knowledge or inquiries of others at Davis Polk who compiled information from records maintained by the Firm.

2. According to the Firm's records and internal calculations, as of November 2021, approximately 35% of Davis Polk's lawyers practicing in the United States and 26.8% of Davis Polk lawyers globally who were promoted to partner since 2016 are racially or ethnically diverse

and/or LGBTQ+.[1] The Firm's records reflect that Davis Polk lawyers speak 49 languages and come from 52 countries. Four of the Firm's partners self-identify as Black or African American, including one partner in the Corporate department.

3. Davis Polk has a "lockstep" compensation schedule for associates depending on class year, generally determined by the year of graduation from law school (except for a very small number of specialized associates). The following chart sets forth the lockstep annual salary and bonus compensation for associates in the class of 2014 for each year from 2014 through 2021. As a general matter, bonuses are paid in December to associates in good standing (or, where a different month is indicated, as of such time) and are generally pro-rated for associates employed for less than the full period in respect of which the payment is made.

| Year | Salary | Bonus |
| --- | --- | --- |
| 2014 | $160,000 | $15,000 |
| 2015 | $160,000 | $15,000 |
| 2016 | $170,000 through 6/30/16<br>$190,000 from 7/1/16 | $25,000 |
| 2017 | $210,000 | $50,000 |
| 2018 | $235,000 through 6/30/18<br>$255,000 from 7/1/18 | $15,000 (July)<br>$65,000 (December) |
| 2019 | $280,000 | $80,000 |
| 2020 | $305,000 | $127,000 |
| 2021 | $325,000 through 6/30/21<br>$350,000 from 7/1/21 | $64,000 (September) |

Kaloma Cardwell was paid a salary and bonus consistent with this paragraph during his tenure at the Firm.

---

[1] For purposes of this statement, lawyers are racially or ethnically diverse if they are identified in the Firm's records as American Indian or Alaska Native, Asian, Black or African American, Hispanic or Latino, Native Hawaiian or Other Pacific Islander, or "Two or More Races."

4. In his Second Set of Requests to Defendants for Production of Documents, Mr. Cardwell identified twelve associates by name that he contends are "comparators." None of these twelve associates is still employed at Davis Polk, and none of them was promoted above the level of an associate while at Davis Polk. Of these twelve associates, the Firm's records identify one (anonymized for purposes of this litigation as Associate 2) as Black or African-American, three as Asian and one as Hispanic or Latino. The following chart sets forth the class year of each of the twelve associates.

| Associate | Class Year |
|---|---|
| Associate 1 | 2014 |
| Associate 2 | 2013 |
| Associate 3 | 2012 |
| Associate 4 | 2014 |
| Associate 5 | 2012 |
| Associate 6 | 2014 |
| Associate 7 | 2011 |
| Associate 8 | 2014 |
| Associate 9 | 2012 |
| Associate 10 | 2014 |
| Associate 11 | 2014 |
| Associate 12 | 2014 |

5. An internal Davis Polk email dated August 15, 2016 and produced in discovery identifies five associates as "available to be staffed on credit matters." (Buergel Decl. Ex. 36 (DPW_SDNY-000144553.) Four of these five associates are identified in the Firm's records as White (two men and two women) and one as Asian (a woman).

6. In the substantial majority of cases, new associates who begin working in the Corporate department immediately after graduation from law school are not initially assigned to any particular practice group within the Corporate department, but instead complete two rotations of six months each in two of the Corporate practice areas. At the end of the two

3

rotations, these first-year associates generally assign to one of the practice groups permanently. First-year associates customarily receive an interim performance review upon completing their first six-month rotation and an annual review following completion of the second six-month rotation.

7. Davis Polk at times informs associates that it is time for the associate to begin looking for alternative employment. During the period when Mr. Cardwell was employed by Davis Polk, the Firm typically advised associates at the time of conveying such a message that they would be afforded a period of three months of continued employment during which to seek other employment.

8. To my knowledge, Davis Polk learned for the first time in May 2018 that Mr. Cardwell had in April 2018 supplemented the administrative charge he had previously filed with the Equal Employment Opportunity Commission ("EEOC") and, in addition, that Mr. Cardwell had previously responded to the position statement that Davis Polk had submitted in December 2017 to the New York State Division of Human Rights ("NYSDHR"). To my knowledge, as of May 2018, Davis Polk had not received a copy of Mr. Cardwell's response to Davis Polk's position statement, and Davis Polk did not receive a copy of Mr. Cardwell's response until November 20, 2019, when a copy was provided to Davis Polk in response to a FOIL request submitted on the Firm's behalf on November 19, 2019.

9. I understand that Mr. Cardwell has alleged that he sent an email on or about December 5, 2016, to Carey Dunne, a then-partner of the Firm, with respect to an entity called Geo Group, which had been a client of the Firm. The Firm's records reflect that, as of the time Mr. Cardwell sent his December 2016 email to Mr. Dunne, the Firm was no longer representing Geo Group and had not performed any work for Geo Group for several months.

4

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: New York, New York
December 2, 2021

_____
Charles S. Duggan