**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

KALOMA CARDWELL,

                                    *Plaintiff*,

        v.

DAVIS POLK & WARDWELL LLP,
THOMAS REID, JOHN BICK, WILLIAM
CHUDD, SOPHIA HUDSON, HAROLD
BIRNBAUM, DANIEL BRASS, BRIAN
WOLFE, and JOHN BUTLER,

                            *Defendants*.

---

19 Civ. 10256 (GHW)

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel.: (212) 373-3000

*Attorneys for Defendants*

Dated: March 11, 2022

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT ................................................................................................................ 4

I.     LEGAL STANDARD............................................................................................ 4

II.    SUMMARY JUDGMENT SHOULD BE GRANTED ON THE
DISCRIMINATION CLAIMS BASED ON PLAINTIFF'S ADMITTED LACK
OF EVIDENCE ................................................................................................. 5

     A.    Cardwell Cannot Establish a *Prima Facie* Case of Discrimination...................... 5

          1.    There Is No Evidence From Which a Factfinder Reasonably Could
Infer Discrimination.................................................................... 6

          2.    Cardwell's Admissions Establish That He Was Not "Performing
His Duties Satisfactorily" ............................................................. 9

     B.    Defendants Had a Legitimate, Non-Discriminatory, Non-Pretextual
Reason For Their Actions .................................................................... 11

     C.    Cardwell Has Abandoned His Aiding and Abetting Claims ............................... 12

III.   SUMMARY JUDGMENT SHOULD BE GRANTED ON THE RETALIATION
CLAIMS BASED ON CARDWELL'S ADMITTED LACK OF EVIDENCE............. 12

     A.    The Staffing Allegation........................................................................... 13

     B.    The Termination Allegation...................................................................... 13

     C.    Remaining Claims.................................................................................. 18

IV.   PLAINTIFF'S CONCEDED LACK OF EVIDENCE ON HIS DAMAGES
CLAIMS COMPELS SUMMARY JUDGMENT.......................................... 20

     A.    Front and Back Pay................................................................................. 20

     B.    Compensatory Damages .......................................................................... 22

     C.    Punitive Damages .................................................................................. 23

     D.    Plaintiff Has Abandoned All Claims With Respect to Injunctive Relief,
Attorney's Fees, and Declining Supplemental Jurisdiction................................ 25

CONCLUSION............................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson* v. *New York City Health & Hosps. Corp.*,
   2020 WL 2866960 (S.D.N.Y. Mar. 2, 2020) ...........................................................15

*Brown* v. *Henderson*,
   257 F.3d 246 (2d. Cir. 2001)..................................................................................4

*Casseus* v. *Verizon N.Y., Inc.*,
   722 F. Supp. 2d 326 (E.D.N.Y. 2010) ...................................................................20

*Celotex* v. *Catrett*,
   477 U.S. at 317 (1986) ........................................................................................4

*Chapkines* v. *N.Y. Univ. Sch. Of Continuing & Pro. Stud.*,
   2005 WL 167603 (S.D.N.Y. Jan. 25, 2005) ...........................................................12

*CILP Assocs.* v. *PriceWaterhouse Coopers LLP*,
   735 F.3d 114 (2d Cir. 2013)................................................................................13

*Clark Cty. Sch. Dist.* v. *Breeden*,
   532 U.S. 268 (2001)...........................................................................................17

*Cty. of Suffolk* v. *Long Island Lighting Co.*,
   907 F.2d 1295 (2d Cir. 1990)................................................................................8

*Dixon* v. *Int'l Fed'n of Accts.*,
   2010 WL 1424007 (S.D.N.Y. Apr. 9, 2010), *aff'd*, 416 F. App'x 107 (2d Cir.
   2011) ...............................................................................................................17

*Drake* v. *Delta Air Lines*,
   2005 WL 1743816 (E.D.N.Y. July 21, 2005) ..........................................................8

*Espinal* v. *Goord*,
   558 F.3d 119 (2d Cir. 2009)................................................................................17

*Fay* v. *Bass Hotels & Resorts, Inc.*,
   2003 WL 21738967 (S.D.N.Y. July 28, 2003) .........................................................5

*Fernandez* v. *City of New York*,
   457 F. Supp. 3d 364 (S.D.N.Y. 2020).........................................................4, 5, 6, 7

*Genova* v. *Cty. of Nassau*,
   851 F. App'x 241 (2d Cir. 2021) ..........................................................................14

*Gonzalez* v. *NYU Langone Hosps.*,
   2021 WL 4226042 (S.D.N.Y. Sept. 16, 2021)........................................12, 13, 16, 19

*Hudson* v. *Int'l Bus. Machines Corp.*,
620 F.2d 351 (2d Cir. 1980).............................................................................................8

*James* v. *Runyon*,
843 F. Supp. 816 (N.D.N.Y. 1994), *aff'd*, 47 F.3d 1158 (2d Cir. 1995) ................................17

*Johnson* v. *Cty. of Nassau*,
480 F. Supp. 2d 581 (E.D.N.Y. 2007) ................................................................................8

*Kavazanjian* v. *Rice*,
2008 WL 5340988 (E.D.N.Y. Dec. 22, 2008) ........................................................................14

*Kemp* v. *A & J Produce Corp.*,
164 F. App'x 12 (2d Cir. 2005) ........................................................................................12

*McKenzie* v. *Nicholson*,
2009 WL 179253 (E.D.N.Y. Jan. 26, 2009) .........................................................................17

*McKnight* v. *Cortright*,
2018 WL 6727330 (E.D.N.Y. Dec. 21, 2018) ..........................................................................5

*McLee* v. *Chrysler Corp.*,
109 F.3d 130 (2d Cir. 1997)..............................................................................................9

*Messinger* v. *JP Morgan Chase Bank, N.A.*,
126 F. Supp. 3d at 376 (S.D.N.Y. 2015)........................................................................11, 16

*Nassry* v. *St. Luke's Roosevelt Hosp.*,
2016 WL 1274576 (S.D.N.Y. Mar. 31, 2016) (Woods, J.)......................................................9

*Nguedi* v. *Fed. Reserve Bank of N.Y.*,
2019 WL 1083966 (S.D.N.Y. Mar. 7, 2019) (Woods, J.).....................................................12

*Payne* v. *Cornell Univ.*,
2022 WL 453441 (2d Cir. Feb. 15, 2022)..........................................................................14

*Pro Bono Inv., Inc.* v. *Gerry*,
2008 WL 4755760 (S.D.N.Y. Oct. 29, 2008) ........................................................................5

*Reynolds* v. *Barrett*,
685 F.3d 193 (2d Cir. 2012)..............................................................................................8

*Risco* v. *McHugh*,
868 F. Supp. 2d 75 (S.D.N.Y. 2012)...........................................................................9, 11

*Saint Mary Home, Inc.* v. *Serv. Emps. Int'l Union, Dist. 1199*,
116 F.3d 41 (2d Cir. 1997).................................................................................................5

*Sell It Soc., LLC* v. *Strauss*,
2018 WL 2357261 (S.D.N.Y. Mar. 8, 2018) ........................................................................5

*Souza* v. *Exotic Island Enterprises, Inc.*,
    2021 WL 3501162 (S.D.N.Y. Aug. 9, 2021) ........................................................................4

*St. Mary's Honor Ctr.* v. *Hicks*,
    509 U.S. 502 (1993) ..............................................................................................11, 12

*Szewczyk* v. *City of New York*,
    2021 WL 2010504 (E.D.N.Y. Feb. 23, 2021) ....................................................................6

*Trans World Airlines, Inc.* v. *Thurston*,
    469 U.S. 111 (1985) ................................................................................................6

*Univ. of Texas Sw. Med. Ctr.* v. *Nassar*,
    570 U.S. 338 (2013) (Title VII, §1981, NYSHRL) .............................................................16

*Yukos Cap. S.A.R.L.* v. *Feldman*,
    2017 WL 10221739, at *7 (S.D.N.Y. Feb. 8, 2017), *aff'd,* 977 F.3d 216 (2d
    Cir. 2020) ..........................................................................................................4

*Zann Kwan* v. *Andalex Grp. LLC*,
    737 F.3d 834 (2d Cir. 2013) .....................................................................................17

**STATUTES**

PCS ¶¶384–387 .......................................................................................................19

**OTHER AUTHORITIES**

Capital Markets. *Supra* ..............................................................................................19

Fed. R. Civ. P. 56 ....................................................................................................14

Local Civ. R. Rule 56.1 .........................................................................................4, 6, 14

Local Civ. R. 56.1(d) .............................................................................................13, 14

MTD Order, ECF 78 ..................................................................................................16

MTD Order, ECF 198 .............................................................................................16, 18

*Supra* note 4 .......................................................................................................13

## **PRELIMINARY STATEMENT**

Nothing in plaintiff's answering brief changes the only conclusion that reasonably can be reached on this record: Neither Davis Polk nor the individual defendants discriminated or retaliated against plaintiff because of his race or his alleged engagement in protected activity.

As defendants demonstrated in their opening papers, the unfortunate—but unmistakable—truth is that plaintiff did not perform at the level expected of a Davis Polk associate. He made mistakes unacceptable for an associate at any level, neglected tasks assigned to him, failed to complete (and at one point abandoned) his assignments, and compromised the performance of his teams and an important Firm relationship. Plaintiff's performance—as documented in real time—made clear to those around him that he was not able to assume the increasingly burdensome, complex, and consequential duties expected of midlevel- and senior Firm associates (even if he at times received a favorable comment in a review). For this reason— and this reason only—plaintiff's hours became uneven and low, and the Firm eventually—after repeated interventions and second chances—told him that it was time to look for another job.

That this plaintiff did not have a viable, decades-long future at the Firm is neither surprising (his tenure (about four years) was almost exactly the average tenure of associates at comparable law firms) nor attributable to any discriminatory or retaliatory act of defendants. Years after Cardwell first began spinning his claims, and after document discovery, depositions, and expert analysis, Cardwell has unearthed not a shred of evidence of any impropriety here. Not a single document or witness supports Cardwell's claim that he was treated less well than others because of his race or complaints he made. He can support neither the background against which he set his complaint—which began, recall, with a narration of superior talent and unparalleled performance—nor the speculation that something nefarious must explain his experience at the Firm.

1

Plaintiff rests his case on the proposition that Davis Polk discriminated and retaliated against him based on his race and because he complained early in his career at a diversity affinity group meeting about not being included in certain meetings and then questioned the Firm's work for a for-profit prison.   According to plaintiff, the senior management of the Firm, the members of its Corporate Department, and all the partners with whom he worked then decided to spend the next three years fabricating negative reviews and avoiding giving him challenging assignments in an elaborate and deliberate scheme to terminate him based on the alleged pretext that he was a poor performer.  As defendants demonstrated in their moving brief, the problem with plaintiff's story is that there is no actual *evidence* from which a factfinder reasonably could find it to be true.  As plaintiff recently conceded at oral argument, his entire case is "based off of inference and circumstance," not evidence.  Jan. 27, 2022 Hr'g Tr. at 13:22.[1]  But inferences are not enough when *all* credible evidence points in the other direction.  Despite nearly a thousand paragraphs of supposed factual rebuttal and "disputed" facts, there are no genuine issues for trial:

*First*, defendants showed in their opening brief that there is no evidence on which a factfinder reasonably could base a finding of discrimination.  Def. Br. 24–39.  Plaintiff simply ignores inconvenient, undisputed facts that belie his narrative (for example, that a year after he alleges the leaders of the Firm and the staffing coordinators agreed to deprive him of assignments because of his alleged complaints about race, he billed over 220 hours in one month and told the staffing coordinators that he was too busy to take on more work.  R¶107.)  There is no evidence from which a factfinder reasonably could conclude that plaintiff was discriminated against in the assignments he was given.  Nothing in plaintiff's answering brief changes this conclusion.

*Second*, defendants also demonstrated that there is no evidence on which a

---

[1]   All defined terms and short case citations refer to defendants' opening brief ("Def. Br."); plaintiff's opposition is cited as "Opp.," and his responses to defendants' 56.1 statement (ECF 253) as, *e.g.*, R¶100 ("response to para. 100").  Plaintiff's Counterstatement (ECF 274) is cited as "PCS," and exhibits to declarations are shorthanded "PX" and "DX."

factfinder reasonably could conclude that defendants retaliated against plaintiff based on his race. Def. Br. 39–50.   Nothing in plaintiff's answering brief changes that either.   Plaintiff cannot establish a *prima facie* case because there is no evidence that the Firm and its partners retaliated against plaintiff because he raised issues at an affinity group meeting or otherwise.   There is not a shred of evidence—testimonial or documentary—that these issues were the *cause* of the decisions the Firm made about plaintiff's assignments or to terminate him.   To the contrary, the record is substantial *and uniform* that plaintiff's failure to demonstrate consistent high-level performance and reliability was the cause of his termination and the unevenness in hours preceding it.   There is no evidence from which a factfinder reasonably could conclude that the unflattering reviews of the partners with whom plaintiff worked were anything other than honestly and contemporaneously held—particularly because many of the alleged leaders of the alleged conspiracy against plaintiff did not even *know* that plaintiff had taken the steps he now alleges constituted protected activity (and many of the complaints, including the prison claim, have been ruled not to constitute protected activity in any event).   Plaintiff's retaliation claims fail for all of these reasons.

At the end of the day, plaintiff's entire retaliation case boils down to the proposition that because his assignments, negative reviews, and termination post-dated complaints he made early in his career, a jury should be permitted to infer that he was retaliated against *because* he complained.   But where, as here, there is no credible evidence supporting that assertion, the case cannot and should not go to a jury.   The law does not permit an employee forever to "immunize" himself against termination merely by asserting, without more, that he was treated unfairly.   Rank speculation and supposed "inference" are not enough and are no substitute for admissible evidence.

*Finally*, plaintiff has entirely failed to rebut the showing in defendants' opening brief that plaintiff cannot prove damages. Def. Br.  52–60.  He is owed no back pay, there is no credible evidence that he suffered other cognizable damages, and his claims for future pay are

negated in their entirety by his undisputed failure to mitigate.  And plaintiff has abandoned all his non-monetary claims.  Summary judgment should be granted in full for this reason as well.

## ARGUMENT

The Court should grant summary judgment dismissing this case in its entirety, under all statutes.  Neither discrimination nor retaliation happened here.  The facts support no other reasonable conclusion.

## I.    LEGAL STANDARD

As discussed in defendants' opening brief, movants are "'entitled to a judgment as a matter of law' [where] the nonmoving party. . . fail[s] to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Celotex*, 477 U.S. at 322 (quoting Fed. R. Civ. P. 56).  Especially relevant here, "'where the non[-]moving party will bear the burden of proof at trial, [Local] Rule 56.1 permits the moving party to point to an absence of evidence to support an essential element of the non[-]moving party's claim.'"  *Fernandez* v. *City of New York*, 457 F. Supp. 3d 364, 378 (S.D.N.Y. 2020).  To avoid summary judgment, the "non[-]moving party must [then] come forward with admissible evidence sufficient to raise a genuine issue of fact for trial."  *Souza* v. *Exotic Island Enterprises, Inc.*, 2021 WL 3501162, at *14 (S.D.N.Y. Aug. 9, 2021).[2]  Non-movants must "'do more than simply show that there is some metaphysical doubt as to the material facts.'"  *Brown* v. *Henderson*, 257 F.3d 246, 252 (2d. Cir. 2001).  Cardwell has not done so; his response to defendants' 56.1 statement concedes the absence of proof on multiple essential elements of each of his claims.

---

[2]    For example, in *Yukos Cap. S.A.R.L.* v. *Feldman*, the court held that "as the burden of proving that the alleged statements were made would be on Feldman at trial, movants are entitled to prevail on summary judgment merely by pointing [in their Rule 56.1 statement] to Feldman's lack of evidence on the point unless Feldman then came forward with admissible proof.  He did not.  He therefore loses." 2017 WL 10221739, at *7 (S.D.N.Y. Feb. 8, 2017), *aff'd*, 977 F.3d 216 (2d Cir. 2020); *accord*, *Souza*, 2021 WL 3501162, at *14.  The *Yukos* court further held that, "in any case, although movants need not have offered evidence to prove the negative, they did so in the form of [a] declaration. That declaration stands uncontradicted. Feldman loses on that ground as well."  2017 WL 10221739, at *7.

Three global evidentiary points, each raised repeatedly by Cardwell, are critical: For one, a movant pointing to the absence of evidence need not, as Cardwell erroneously contends, cite specific evidence. Such a position is contradicted not only by case law, but by logic; it is impossible to cite evidence where none exists. *E.g.*, R¶¶161–70; *Fernandez*, 475 F. Supp. 3d at 378. Likewise, Cardwell is incorrect that a movant pointing to the absence of evidence is impermissibly offering "conclusions of law." *Id.* The case law expressly permits this, *id.*, and a determination that there is an "absence of evidence" is a finding of fact, not a conclusion of law.[3] Finally, Cardwell argues that one cannot say there is no evidence that a person knew of a protected activity when the person testified that they did not *recall* being aware. *E.g.*, R¶¶10, 12, 14. But all testimony necessarily concerns what a witness does or does not recall; it is black-letter law that such testimony constitutes evidence that the person lacked knowledge of particular events.[4]

## II. SUMMARY JUDGMENT SHOULD BE GRANTED ON THE DISCRIMINATION CLAIMS BASED ON PLAINTIFF'S ADMITTED LACK OF EVIDENCE

### A. Cardwell Cannot Establish a *Prima Facie* Case of Discrimination

As discussed in defendants' opening brief, plaintiff bears the burden under the *McDonnell Douglas* burden-shifting framework of establishing a *prima facie* case of discrimination. Def. Br. 24–25. This requires that he show at the summary judgment stage that there is a genuine issue of material fact (not merely "conclusory allegations and speculations") as

---

[3]   *See, e.g.*, *Saint Mary Home, Inc.* v. *Serv. Emps. Int'l Union, Dist. 1199*, 116 F.3d 41, 43 (2d Cir. 1997) ("[I]n the course of making his findings of fact, the arbitrator specifically found that there was 'no evidence that [Barron] was dealing [drugs] to other employees or, for that matter, to anyone else.'"); *Pro Bono Inv., Inc.* v. *Gerry*, 2008 WL 4755760, at *6 (S.D.N.Y. Oct. 29, 2008) (concluding that there was "no evidence" as to certain key issues in the findings of fact).

[4]   *See, e.g.*, *McKnight* v. *Cortright*, 2018 WL 6727330, at *7 (E.D.N.Y. Dec. 21, 2018) (finding no evidence to suggest that a police officer knew plaintiffs were residents of an apartment because the officer testified that "he does not remember plaintiffs telling him that they lived at the apartment"); *Sell It Soc., LLC* v. *Strauss*, 2018 WL 2357261, at *16 (S.D.N.Y. Mar. 8, 2018) (finding that an individual had not made a statement because "the record d[id] not contain any evidence that such a statement was made" and a third party had testified that "he d[id] not recall" the statement being made); *Fay* v. *Bass Hotels & Resorts, Inc.*, 2003 WL 21738967, at *4 (S.D.N.Y. July 28, 2003) ("Plaintiffs fail to present any facts showing that water—which they allege was on the floor and caused Mrs. Fay to slip—was 'visible and apparent.' Both Mr. and Mrs. Fay admitted in their depositions that they did not—*or could not recall*—seeing any liquid on the floor before or after Mrs. Fay's fall." (emphasis added)).

to the following elements: (i) membership in a protected group, (ii) that he was "performing his duties satisfactorily," (iii) that his employer took an adverse action against him, and (iv) that the "adverse employment action occurred in circumstances giving rise to an inference of . . . discrimination." *Id.* at 25 (collecting cases).  Plaintiff cannot satisfy the second or fourth elements.

  1. <u>There Is No Evidence From Which a Factfinder Reasonably Could Infer Discrimination</u>

  Taking the fourth element first, plaintiff's concession that the *McDonnell Douglas* framework applies here (Opp. 36) is an admission that there exists no "direct evidence" of intentional discrimination.[5]  (So, too, is plaintiff's failure to provide evidence when asked directly.[6])  Because plaintiff's answering papers confirm there is no *indirect* ("giving rise to an inference") evidence, his discrimination claims must be dismissed.

  Recognizing the absence of any direct evidence of intentional discrimination, Cardwell attempts to save his claims by arguing that a factfinder could *infer* discrimination by comparing his treatment to that of other associates, but his opposition confirms the very lack of evidence defendants previewed.  Def. Br. 27–33; App'x A.  In particular, of the five associates upon whom Cardwell now focuses (*see* Opp. 31, 36, 42–44 (Associates 3, 5, 7, 9, 10)), he concedes that the first four were two or three years senior to him by law school class year.  *Compare* R¶237 *with* R¶265.  These associates **<u>are not comparators as a matter of law</u>**; in corporate law, a difference of two to three years is a significant difference of rank and expected skill level (junior, midlevel, senior associate).  Def. Br. 29 n. 19.  Nor does plaintiff offer any evidence curing the

---

[5] *Trans World Airlines, Inc.* v. *Thurston*, 469 U.S. 111, 121 (1985) ("[W]here the plaintiff presents direct evidence of discrimination[,] . . . the *McDonnell Douglas* test is inapplicable."); *Szewczyk* v. *City of New York*, 2021 WL 2010504, at \*4 (E.D.N.Y. Feb. 23, 2021) (same).

[6] Separate and apart from the concession that citation to *McDonnell Douglas* represents, plaintiff failed to come forward with any evidence when faced with defendants' assertion that "[n]o document or non-testimonial evidence," nor any "testimony by any witness," "reasonably supports the allegation of racial animus/discrimination against Cardwell on the basis of race by" any defendant.  R¶¶169–70; *Fernandez*, 457 F. Supp. 3d at 378 (Local Rule 56.1 permits "moving party to point to an absence of evidence to support an essential element of the non[-]moving party's claim.").

three other fatal comparator defects defendants identified in their brief, *id.* 29–33; App'x A:

- *First*, given the chance to identify individuals "'treated more favorably by the *same decisionmaker*,'" Cardwell offered **no evidence**—as opposed to conjecture—as to who made decisions with respect to those individuals. Def. Br. 29 (citations omitted); R¶¶275–276. This is dispositive. Def. Br. 29; *Fernandez*, 457 F. Supp. 3d at 378.

- *Second*, there is no evidence that would permit a jury to reasonably conclude—as is legally required—that any of the Twelve Associates was "similarly situated" to Cardwell in "all material respects." Def. Br. 30. Indeed, Cardwell concedes this: In claiming that defendants "misinterpreted" his assertion that he was "similarly situated" to white M&A associates "who had been rated as behind," Cardwell states that he did not use the term to "suggest or mean that Cardwell's performance was 'similar' in any way to his alleged comparators." R¶270.[7] Absent even an *assertion* of similar performance—much less *evidence* of the same (Cardwell, when prompted, put forth none, R¶277; *cf.* 229)—Cardwell's claim cannot proceed, because nothing "permit[s] an 'examination of the context and surrounding circumstances in which'" to "'evaluat[e]'" the purported comparators' performance. Def. Br. 30 (quoting *Graham*, 230 F.3d at 39–40).[8]

- *Third*, Cardwell has put forth no evidence that any similarly-situated individual was treated more "**favorably**" than he in terms of staffing or termination. When defendants—entirely appropriately, *see Fernandez*, 457 F. Supp. 3d at 378—identified Cardwell's failure to "put forth [a]n[y] evidence with respect to the quality or appropriateness of the Twelve Associates' billable assignments," Cardwell declined to cite any evidence. R¶277. Nor does Cardwell meaningfully dispute the powerful point that his tenure was entirely comparable to theirs and to the Firm average. *See generally* Def. Br. 32–33, R¶¶235, 261–63, 268–69. Cardwell attempts to avoid unhelpful facts (*e.g.*, that others were given time to go messages, R¶268[9]) by creative (and misleading) selective editing (*e.g.*, "only Cardwell was given a 'time to go' message *during the 2017* annual review cycle," Opp. 44 (emphasis added)) or by declining to respond. Drafting artistry does not compensate for a complete lack of evidence.

Each of these defects is independently fatal and leaves no evidence upon which a jury reasonably

could conclude that Cardwell was treated less well, by the same decisionmakers, than others

---

[7] Cardwell has admitted to understanding the phrase "similarly situated." Buergel Reply Decl. Ex. A (Cardwell Tr.) at 324:16–22 ("Q. Let me start with this: You understand that for purposes of this case a comparator is someone who is similarly situated to you in all material respects, that's a phrase from your complaint, do you understand that? A. Yes.").

[8] Plaintiff's obsession with the single word "behind" betrays his utter lack of evidence: he ignores the rest of his performance record (including errors that he does not dispute—*see* bullets, *infra*), the remainder of his reviews, and his concession that he—*alone amongst the Twelve Associates* (except Associate 5, who is not a comparator as a matter of law)—*never once received an "ahead" ranking.* R¶267; Def. Br. 33 Fig. 3.

[9] Likewise, for example, Cardwell's insistence that he "was never rated as 'behind' in reviews *by M&A partners* from *more than one review cycle,*" Opp. 44 (emphasis added), ignores completely the undisputed fact that he was rated behind in **multiple** cycles by partners in and outside the M&A group, R¶149 and PCS¶428.

similarly situated in all material respects.  Def. Br. 28–29 & n.19 (collecting citations); App'x A.

        None of Cardwell's remaining attempts to "establish an inference of racial discrimination by the Firm" fares any better.  Opp. 43.

- Cardwell's contention, Opp. 45, that associates in certain affinity groups, including the affinity group for Asian, South Asian, and Middle Eastern associates, raised diversity-related concerns **cannot support an inference** of discrimination *against him* in an individual disparate treatment case; to support such a claim, "the particular plaintiff must establish *he* was the victim of racial discrimination."  *Reynolds* v. *Barrett*, 685 F.3d 193, 202 (2d Cir. 2012) (emphasis in original).[10]  A generic suggestion that others across the Firm voiced their views says nothing about whether there was intentional discrimination against Cardwell.

- Cardwell's claim, Opp. 44, that the Firm engaged in "track[ing]" efforts "only [as to] Black" associates is utterly made up, **as Cardwell knows**.  It is undisputed that, in connection with various diversity and inclusion initiatives, the Firm's departmental leadership and Diversity Committee kept abreast of the performance and experience of associates of various diverse backgrounds.  Plaintiff knows this; *he* served written discovery acknowledging that one such effort reviewed performance of "Black . . . Latinx . . . [and] Asian/South Asian/Middle Eastern associates," and received defendants' response confirming that the effort also encompassed "LGBT associates." ECF 223-75 at 16–17 (plaintiff's RFA 13).  A non-moving party "is not entitled to the benefit of unreasonable inferences, or inferences at war with undisputed facts."  *Cty. of Suffolk* v. *Long Island Lighting Co.*, 907 F.2d 1295, 1318 (2d Cir. 1990).[11]

- Cardwell's claim, Opp. 45, that the "dearth of Black lawyers at all levels" supports an "inference" of discrimination also is unsupportable as a matter of law.  "Statistics alone are insufficient" in disparate treatment cases "because an individual plaintiff must prove that he or she *in particular* has been discriminated against," and Cardwell cannot do so based on the undisputed facts.  *Drake* v. *Delta Air Lines*, 2005 WL 1743816, at *6 (E.D.N.Y. July 21, 2005) (emphasis in original); *Hudson* v. *Int'l Bus. Machines Corp.*, 620 F.2d 351, 355 (2d Cir. 1980) (finding no error in determination that statistics alone do not establish a *prima facie* case in disparate treatment action).

- Cardwell's remaining suggestions, scattered throughout his discrimination discussion, that other circumstances purportedly give rise to an inference of discrimination are likewise irrelevant, and—as previewed in defendants' opening brief (Def. Br. 36–39)—

---

[10] Nor can any "inference . . . be drawn" based on this, because even were there "evidence in the record [] that employees complained . . . [about] discrimination," "[t]he record is devoid . . . of any evidence that such discriminatory acts actually occurred."  *Johnson* v. *Cty. of Nassau*, 480 F. Supp. 2d 581, 599 (E.D.N.Y. 2007).

[11] Moreover, plaintiff's last-ditch argument that the mere existence of diversity initiatives gives rise to an inference of discriminatory intent is at odds with his own emphasis on and acceptance of "tailored strategies."  *See, e.g.*, ECF 223-20, DX 20 (Cardwell's diary), at -41 (Cardwell noting that he "stressed to Tom [Reid] that the Firm needs to understand how groups are situated differently and that tailored strategies should account for those differences").

Cardwell does not dispute the corresponding material facts.[12]

Because there is no evidence on which a factfinder reasonably could base a finding of discrimination here, plaintiff cannot establish his *prima facie* case.

> ### 2.   Cardwell's Admissions Establish That He Was Not "Performing His Duties Satisfactorily"

Plaintiff's discrimination claims also should be dismissed at the *prima facie* stage for the independent reason that plaintiff cannot establish on this record—as his admissions now confirm—that he was "performing his duties satisfactorily" at the time of the allegedly adverse actions. *Nassry*, 2016 WL 1274576, at *6 (Woods, J.) (quoting *Graham*, 230 F.3d at 38).

As a preliminary matter, plaintiff misstates the posture of this case and the case law: The relevant dispute is not whether he was qualified to *begin* working at the Firm, but whether he was qualified to *progress* to a more senior role with more responsibility after several years. The undisputed evidence shows he was not; courts regularly dismiss cases at the *prima facie* stage under such circumstances. Def. Br. 26–27 & n.17 (collecting cases).[13]  Among other things:

- Cardwell does not dispute that at the Firm, just as at other comparable law firms, associates who do not meet the standard for promotion from one class year or rank to the next do not stay at the Firm. *See, e.g.*, R¶¶234–35, 254, 256, 268.

- Despite his quibbles with various written performance reviews, Cardwell does

---

[12]   *First*, the suggestion that Bick perceived Cardwell's decision to engage in litigation as a "threat," Opp. 26, is both factually wrong (ECF 225-104, PX 105 (Bick Tr.) at 212:22–23 ("I didn't say threat")) and irrelevant to a discrimination claim because Cardwell has "not submitted any evidence to show that . . . the conduct [he] complains of was undertaken because of [his] race or color." *Risco* v. *McHugh*, 868 F. Supp. 2d 75, 106 (S.D.N.Y. 2012) (no *prima facie* case). *Second*, the 2016 mid-year review by Bick does not support an inference of discriminatory animus (*contra* Opp. 42–43); there is no evidence whatsoever that that review was motivated by race, and given the chance to identify such evidence, Cardwell declined to do so. R¶¶169, 170, 191–196. Cardwell disputes neither that he made a request for feedback at his December 2015 review (R¶68), nor that concerns with respect to his performance were raised to Bick prior to Bick conducting the review (R¶¶79–81; 191, 194–196). And Cardwell admits that he completed three rotations and that the Firm customarily gives rotators a review after each rotation, which this was. *See generally* R¶¶185–196. *Third*, as to the discrimination claim against Brass predicated on the allegation that he "removed" Cardwell from a deal, plaintiff disputes effectively none of the material facts at Def. Br. 36–38. Among other things, plaintiff now (i) concedes that his monthly billables increased after the Brass event, R¶123; (ii) does not dispute that the person who joined Brass's team was senior to him, R¶90; (iii) cannot dispute Brass's sworn testimony that the selected person was a strong performer, R¶91(d); and (iv) fails to identify evidence that his performance was akin to that of the other associate, R¶¶91–93, or that Brass was motivated by race. R¶¶83–97; 169–170.

[13]   *See also McLee* v. *Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997) (summary judgment granted at *prima facie* stage where the record "establishes indisputably that, for race-neutral reasons, McLee's performance was not satisfactory").

not—because he cannot—contest the underlying evidence of performance issues (some described in the reviews, some not), which demonstrates conclusively that he was not performing his duties satisfactorily.  Cardwell likewise does not dispute, because he cannot, contemporaneous memorializations by Firm partners and administrators to the effect that his performance was disappointing.  For example, <u>even putting his reviews aside entirely, Cardwell does not dispute</u> that:

o   During his second rotation (in September 2015), Brass assigned him to change the dates on certain documents, but ultimately changed the dates himself when Cardwell failed to execute quickly enough.  R¶63.  Separately, a senior associate expressed that he was "frustrated [with] the junior staffing on this deal—as I am doing a lot of heavy lifting on small things which Kaloma should be taking care of."  R¶62.

o   During his third rotation, in Capital Markets (fall 2015/spring 2016), Cardwell wastefully and unnecessarily worked until 4 a.m. copying a partner's comments on a document into his own handwriting.  R¶¶73–74; PCS¶¶396–397.  The next day, Hudson asked to be sent "a folder with [Cardwell's] reviews since starting at DPW" in order to get "a read on the situation," R¶75, which she confirmed at deposition referred to his performance.  R¶76.

o   In or about June 2016, a Firm document memorialized plaintiff's "consistently low hours" and the Firm's "difficulty staffing him in Capital Markets based on performance issues."  R¶¶70, 186; PCS¶377.

o   In July 2016, after Cardwell was assigned to M&A, Brass sent an email indicating that he was reluctant to choose Cardwell for a team because the last time he had worked with Cardwell "it really wasn't great."  R¶¶83–89.

o   In August 2016, Butler, having worked recently with Cardwell, wrote to staffing partners that Cardwell was "just not up to running [a deal]."  R¶¶98, 100.

o   In September 2016, partners looking to staff a deal declined Cardwell on the ground that they "need[ed] someone of a slightly higher caliber[.]"  R¶101.

o   In early 2017, Cardwell was viewed, on a document prepared for the Diversity Committee, as among a group of "low"-performing associates from multiple diverse backgrounds.  R¶125.

o   Cardwell failed, for months, to properly update a Japanese firm seeking payment.  R¶126.  Over more than two weeks in March 2017, Cardwell failed to respond to their repeated emails, prompting the firm to write to a Davis Polk partner, "I have not previously experienced such a lapse in communication despite working with the Davis Polk NY team over the past five years."  R¶126.

o   In May 2017, it took Cardwell four weeks to prepare a draft article less than three pages long.  Cardwell sent the draft to a partner with a footnote showing

he had not even done the work necessary to confirm his conclusions: "TBD whether relevant and recent case law exists and/or can be cited." R¶132(a)–(c). A redline comparing Cardwell's draft against the published version shows that the partner essentially rewrote the entire article.  R¶132(e), (f).

o   In June 2017, while working on a matter, Cardwell failed to respond for an entire afternoon and evening to urgent messages regarding time-sensitive work for a client. R¶140.  Cardwell had to be replaced on the matter; the partner in charge wrote, "It is simply not acceptable when associates are non-responsive for a protracted period especially when they are supposed to be at their desks during business hours."  *Id*.

The undisputed record, *even without* taking into account his reviews, makes clear that plaintiff was not performing satisfactorily at the time his hours became uneven and when he was terminated.

**B.   Defendants Had a Legitimate, Non-Discriminatory, Non-Pretextual Reason For Their Actions**

Defendants have easily met their initial burden to "introduce evidence [that], *taken as true,* would *permit* the conclusion that there was a non-discriminatory reason" for their actions. *St. Mary's Honor Ctr.*, 509 U.S. at 509.  The undisputed evidence shows that defendants had a legitimate, non-discriminatory reason for their actions: Cardwell's performance.  Def. Br. 34–39; *e.g.*, R¶¶61, 74, 85, 109–11, 117, 124, 154, 179, 194–96 (testimony of partners as to performance).

The burden then shifts to plaintiff to show that defendants' actions were pretextual. But nothing about defendants' stated reasons permits such a finding; "'[o]nly where an employer's business decision is so implausible as to call into question its genuineness should this Court conclude that a reasonable trier of fact could find that it is pretextual.'"  Def. Br. 35 (citing *Messinger*, 126 F. Supp. 3d at 385 (cleaned up)).  Indeed, plaintiff *makes no substantive pretext argument at all* in his brief regarding his discrimination claims.  Opp. 46.  And when confronted with defendants' position that no evidence reasonably supports his allegation that the stated reason for his termination was false, R¶¶161–62, *accord*, ¶¶169–70, plaintiff *provided none at all*.[14]

---

[14]   Cardwell's claim that views of his performance became more negative after he made *complaints* has no bearing on his *discrimination* claim.  *See Risco*, 868 F. Supp. 2d at 106 (no *prima facie* case where plaintiff "has not submitted any evidence to show that any of the conduct she complains of was undertaken because of her race or color").  Likewise,

Plaintiff has ceded this argument, and summary judgment therefore should be granted for defendants on the discrimination claims.**15**

### C.    Cardwell Has Abandoned His Aiding and Abetting Claims

Plaintiff states that he does not oppose defendants' motion for summary judgment on the aiding and abetting claims.  Opp. 3 n.1.  They should be dismissed with prejudice.

## III.    SUMMARY JUDGMENT SHOULD BE GRANTED ON THE RETALIATION CLAIMS BASED ON CARDWELL'S ADMITTED LACK OF EVIDENCE

Cardwell's retaliation argument—packed with irrelevant detail—cannot distract from the fundamentals:  The undisputed evidence shows that he has no case.  To proceed, Cardwell must "ma[k]e out a *prima facie* case of retaliation," *Kemp* v. *A & J Produce Corp.*, 164 F. App'x 12, 15 (2d Cir. 2005), which requires a showing of "(1) participation in a protected activity; (2) that the [defendant] knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Gonzalez*, 442 F. Supp. 3d at 687, *aff'd*, 845 F. App'x 11 (2d Cir. 2021).  Cardwell cannot satisfy this last requirement, much less show—given his utter lack of evidence—that defendants' stated reasons for their actions were pretext, as *McDonnell Douglas* requires.

---

for avoidance of doubt, plaintiff's 2016 mid-year review, mentioned at Opp. 42–43, cannot establish a triable issue of pretext: it was not a deviation from standard procedure (plaintiff admits that he had three rotations, R¶45, and a review after each, R¶47, and that the standard practice was to review associates after rotations, R¶192), but even if it were, that is insufficient to establish that defendants' proffered reasons for plaintiff's staffing and termination were pretext *for discrimination. St. Mary's Honor Ctr.*, 509 U.S. at 514–15; *Chapkines*, 2005 WL 167603, at *12 ("[A] plaintiff must 'produce not simply some evidence, but *sufficient* evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason[.]'" (quoting *Weinstock*, 224 F.3d at 42 (alterations in original)). Plaintiff has produced no evidence that the review was motivated by race.  His suggestion, Opp. 43, that the "deviations" from policy he displays at "Sections B.1.b.iii.3, B.2.d, B.2.f, and B.2.g" of his brief cannot support a discrimination claim; he keys each to "complaints" he allegedly raised, not his race.  *Id.*

**15**  The absence of any evidence from which a "discriminatory motive" may be inferred likewise dooms the NYCHRL claim.  Def. Br. 27–39; *Nguedi*, 2019 WL 1083966, at *10–11, *aff'd*, 813 F. App'x 616 (2d Cir. 2020) (dismissing NYCHRL claim where there was "no evidence, outside [p]laintiff's conclusory allegations and speculations, that discrimination played any role in his termination").

### A.    The Staffing Allegation

As to the Staffing Allegation (*see generally* Def. Br. 49–51), the undisputed evidence establishes that no alleged decision-maker relevant to that claim (Bick, Birnbaum, Wolfe (*id*; TAC ¶383)) had any knowledge of Cardwell's alleged complaints or retaliatory intent prior to the drop in Cardwell's hours from Fall 2016 through March 2017. This is dispositive. As set forth in defendants' opening brief, Bick, Birnbaum, and Wolfe each testified under oath that at that time they had no knowledge of the protected activities Cardwell claims caused the alleged retaliatory staffing decline. R¶¶8, 14, 21. Given the opportunity to respond to defendants' proffer, Cardwell offered no competing evidence at all. *Id.*[16] Cardwell has failed to satisfy his burden to identify admissible evidence from which a reasonable factfinder could conclude that the relevant defendants had knowledge, Local Civ. R. 56.1(d); *CILP Assocs.* v. *PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013). And plaintiff offers no evidence of retaliatory intent whatsoever. Without evidence of knowledge and retaliatory intent, Cardwell cannot make out a *prima facie* case.[17] *Gonzalez*, 442 F. Supp. 3d at 687. Finally, the Staffing Allegation should be dismissed for the independent reason that plaintiff offered, when invited to do so, no evidence of pretext (*e.g.*, that the "real reason" for the alleged failure to staff plaintiff was retaliation). R¶¶165–66.

### B.    The Termination Allegation

As to the Termination Allegation (Def. Br. 41–44), the undisputed evidence likewise establishes a lack of knowledge or retaliatory intent on the part of any relevant defendant.

---

[16]    Indeed, Cardwell appears to concede that Bick did not play a role in the Staffing Allegation. Opp. 15, 34, and 42 (solely mentioning Birnbaum and Wolfe). Cardwell speculates (in his brief) that Birnbaum and Wolfe must have been aware of his protected activities because certain administrative staff were aware and attended meetings with them at which certain associates were discussed. Opp. 14–15; PCS¶¶487, 538, 542, 547. But plaintiff offers no evidence that Cardwell was discussed, and rank speculation cannot overcome sworn testimony. *Compare also* PCS¶606 (speculating that Firm's Management Committee and others learned of Cardwell's complaints, citing DeSantis deposition testimony) *with* PCS¶549 (quoting that testimony, which says nothing of the sort).

[17]    Cardwell protests that defendants' testimony shows only that they did not recall having knowledge of particular activities. R¶¶8, 12, 14, 21. This argument is meritless, as shown above. *Supra* note 4 (collecting cases).

*First*, the undisputed evidence establishes that none of Birnbaum, Butler, Chudd, or Wolfe had any knowledge of Cardwell's alleged protected activity at the time he was terminated.[18] R¶¶8 (Birnbaum), 9 (Butler), 10 (Chudd), 14 (Wolfe). As above, Cardwell identified no evidence contradicting these witnesses' sworn testimony that they had no such knowledge, and therefore no evidence that they possessed retaliatory intent. *Id.*[19] The claims against these defendants should be dismissed, and they should be dismissed from the case, for failure to make out a *prima facie* case. Separately, because Cardwell has failed to rebut sworn evidence that Butler, Chudd, and Wolfe were not part of the "group" that decided to terminate Cardwell, *see* ECF 226, 227, 229, R¶¶23, 24, 26, the termination-based claim against them also should be dismissed, as they were involved in no adverse action (and for lack of causation).[20]

*Second*, Cardwell offers no evidence, direct or indirect, of retaliatory intent on the part of any defendant implicated in the Termination Allegation. *See Payne* v. *Cornell Univ.*, 2022 WL 453441, at *4 (2d Cir. Feb. 15, 2022). Sworn testimony establishes that Butler, Chudd, and Wolfe (and Hudson) did not participate in the decision, R¶¶23–28,[21] and that no remaining defendant was motivated by anything other than Cardwell's performance. R¶¶29–31; ECF 225 (Brass), 226 (Butler), 227 (Chudd), 228 (Kreynin), and 229 (Wolfe).[22] None of Cardwell's

---

[18] Nor did Hudson, R¶12, against whom no termination-based claim has been brought. Def. Br. 41.

[19] As to Butler and Chudd, Cardwell says, "[b]ut see Pl's Counter-Statement of Facts (explaining [individual defendant's] knowledge of certain protected complaints)." R¶¶9,10. Such a generic citation to a voluminous filing fails to comply with Rule 56 or Local Rule 56.1, which require that plaintiff "cit[e] to *particular* parts of materials in the record" and that "each statement controverting any statement of material fact, must be followed by *citation to evidence which would be admissible* . . . ." Fed. R. Civ. P. 56; Local Civ. R. 56.1(d) (emphasis added). Because Cardwell's counterstatement could not be offered into evidence as part of his case in chief, citing it without more is a flagrant violation of Rule 56.1. "Rule 56.1 is strict," so noncompliance "permits the court to conclude that the facts asserted in the statement are uncontested[.]" *Genova* v. *Cty. of Nassau*, 851 F. App'x 241, 243 (2d Cir. 2021). The Court should do so here.

[20] Cardwell's speculation as to how defendants could have learned of his complaints—for instance, that they "must have been aware" of his complaints because they had routine and generic business interactions with others who were aware of them, or that they received generic preservation notices—is not admissible evidence, Opp. 12–16; PCS¶¶786–87. Nor is speculation that defendants "must" have been part of the group that terminated him. *Cf.* R¶¶23–28.

[21] Cardwell's attempt to cite his complaint as evidence where he has no personal knowledge is invalid. *See Kavazanjian* v. *Rice*, 2008 WL 5340988, at *9 n.8 (E.D.N.Y. Dec. 22, 2008).

[22] Cardwell's effort to establish the opposite is sheer fabrication; he claims that "Fabe documented that non-performance 'issues' impacted perceptions of [his] performance," PCS¶634, but the document uses "issues" only to describe

remaining theories, Opp. 24–26, could reasonably support a finding of retaliatory animus:

- ***"Threat."*** Cardwell's claim, Opp. 26, that Bick testified that the Firm viewed Cardwell as a "threat" misstates Bick's testimony.  ECF 225-104, PX 105 (Bick Tr.) at 212:22–23 ("I didn't say threat.").  In any event, meritless claims are a threat to any entity's reputation; saying so is a statement of fact, not evidence of animus.[23]

- ***Alleged Failure to Investigate.*** Cardwell claims that a failure to "conduct a sufficient investigation (or one at all)" is evidence of retaliatory animus.  Opp. 25.  It is entirely unclear why one follows the other, but the undisputed evidence is, in any event, that the Firm *did* conduct an investigation.  *E.g.*, Buergel Reply Decl. Ex. B (Crane Tr. 83).  Cardwell also claims, TAC ¶78 *et seq.*, knowledge of a "prompt investigation" in or about fall 2015.

- ***Reid Meeting.*** Reid's use of the phrase "off the field" during a March 2017 meeting with Cardwell (a former football player) cannot reasonably establish retaliatory animus.  For litigation purposes, Cardwell now claims the words were significant to him and that he perceived them contemporaneously as a threat.  But Cardwell took three pages of detailed notes the day of the meeting and that allegedly all-important and supposedly racially motivated phrase appears nowhere within them, indicating an utter lack of contemporaneous significance.  R¶128.  Instead, the undisputed evidence establishes that Reid and Cardwell—who once had "NFL aspirations," ECF 255-7, PX 7 (Reid Tr.) at 164:4—had a history both of speaking in sports metaphors and about the value of candid feedback.  Indeed, Cardwell's notes show that he invited "negative feedback" *during the March meeting itself.*  ECF 223-48, DX 48(b), at 5 ("I reminded him that during our dinner conversation we talked about my sports background and that I was extremely comfortable and had another career in which it was quite common for me to receive negative feedback and build from it.")  Reid, in keeping with that request and sticking with the sports analogies, commented that Cardwell needed to focus on moving forward and improving his performance and that he had to get "in the game" so that he would not find himself "off the field."  ECF 255-7, PX 7 (Reid Tr.) at 244:3–6.  Given this undisputed context, no reasonable factfinder could view these comments as anything but what they were: candid advice in response to multiple explicit requests, spanning the history of a years-long relationship between Cardwell and Reid, for blunt feedback.  Nothing here suggests retaliatory intent.[24]

---

performance issues.  ECF 256-89 (PX 90).

[23]  Cardwell's claim, Opp. 26, that Butler called Cardwell "dangerous" because of his protected activities is both false and a misrepresentation of the record.  The referenced email (ECF 255-96, PX 97) bears no connection to any protected activities; Butler was aware of none.  In the email, Butler and Kreynin were discussing whether to use Cardwell or another associate for particular work; Butler suggested that the other, despite failing to "independently read these things, spot issues and come with things to discuss," was "not nearly as dangerous."  *Id.*  The obvious meaning of "dangerous" was as a comment on the associates' respective abilities and the potential impact to a client, not as a reputational threat to the Firm from any purported complaints.  Likewise, Birnbaum's suggestion that "basically for every deal that comes in, we should think about whether it's right for [Cardwell]," Opp. 26, cannot be evidence of retaliatory animus; Birnbaum's sworn testimony that he was unaware of protected activities is unrebutted.  In any event, the email shows partners striving to staff, not punish, him.  Buergel Reply Decl. Ex. D.

[24]  Nor does Reid's indication that the Firm "dropped the ball" in not focusing earlier on how to rectify Cardwell's lack of billable hours and assignments, ECF 260-5, PX 117 (Cardwell Tr.) at 413:13–19,  come close to supporting a reasonable

*Finally*, Cardwell—even assuming he could survive the *prima facie* inquiry, which he cannot—offers no evidence of pretext, an evidentiary failure that is fatal to his claims under all statutes.  Def. Br. 44–49 & n. 52.  It is Cardwell's burden to "produce evidence 'to prove by a preponderance of the evidence'" **both** that Davis Polk's proffered legitimate and non-retaliatory reasons for terminating him were false "'and that [retaliation] was the real reason.'"  *Gonzalez*, 442 F. Supp. 3d at 687–688 (citations omitted).[25]  Cardwell has done neither.  Cardwell cannot meaningfully contest the evidence of his poor performance, as shown above.  And as with the Staffing Allegation claim, the termination-based retaliation claim fails against all relevant defendants (the Firm, Bick, Birnbaum, Brass, Butler, Chudd, Reid, and Wolfe, *see* Def. Br. 41–44) because Cardwell offered no evidence at all when presented with defendants' assertion that no evidence, testimonial or otherwise, "supports the allegation that the 'real reason' for Cardwell's termination" or "the alleged failure to staff Cardwell" "was retaliation."  R¶¶163–166.  Defendants' assertion thus should be deemed admitted and the claims dismissed for lack of causation.  Plaintiff has put forth no evidence that retaliation was a contributory cause of his termination, much less the but-for cause; in other words, he has drawn no link between (i) any of the claims he says he made at the meetings in which he participated and (ii) his termination more than a year later.  MTD Order, ECF 78 at 67–69; *id*. at 36 n. 16 (collecting cases); *Univ. of Texas Sw. Med. Ctr.* v. *Nassar*, 570 U.S. 338, 360, 363–64 (2013) (Title VII, §1981, NYSHRL).

Nor does this record permit a factfinder to reasonably conclude that the Firm's stated reason for Cardwell's termination was "so implausible as to call into question its

---

inference of retaliatory animus.  The Firm's failure to assign an associate more work may be evidence of a less-than-perfect staffing system, but without more, cannot serve as the basis of retaliation.  *See Anderson* v. *New York City Health & Hosps. Corp.*, 2020 WL 2866960, at *13 (S.D.N.Y. Mar. 2, 2020) (finding no discriminatory intent behind failure to promote plaintiff, noting that "[t]he law does not protect employees from their employer's unwise decisions or mistakes" because "it is not the Court's role to second-guess an employer's business decisions, even if they are unwise or premised on a mistaken assessment"), *R&R adopted*, 2020 WL 1528101 (S.D.N.Y. Mar. 31, 2020).

[25]  Nor can Cardwell meet his burden under the NYCHRL, for utter lack of proof that retaliation played any part in the decision.  *See generally* MTD Order, ECF 198 at 63.

genuineness." *Messinger*, 126 F. Supp. 3d at 385 (citation omitted).  Cardwell does not come close to offering evidence on which a factfinder reasonably could conclude that the Firm's issues with plaintiff's performance were mere pretext.  For instance:

- ***Temporal Proximity.***  Cardwell's insistence (Opp. 26, n.48) that temporal proximity between his complaints and his termination merits referral to the jury is unsupportable, because "temporal proximity alone is insufficient to defeat summary judgment at the pretext stage."  *Zann Kwan* v. *Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013).[26]

- ***Alleged Policy Deviations.***  The Firm's alleged refusal to permit Cardwell to view his summary review forms cannot establish pretext; it is undisputed that the policy to which Cardwell points applies to non-lawyer employees, not associates.  ECF 223-75, DX 75 at 49–50 (response to plaintiff's RFA 99); ECF 223-5, DX 5 (Bick Tr.) at 223:6–8; *see also* PCS¶753.

- ***Performance Evaluations.***  Cardwell's attempt to create a pretext argument from his performance reviews cannot succeed.  PCS¶423.  His assertion that his performance reviews "consistently" rated him as "with" his class prior to his 2017 filing of the EEOC Charge, *see* Opp. 27, is once again the product of creative drafting and selective omission:  Cardwell obscures Chudd's and Hudson's use of the word "behind," others' leaving the field blank, the many negative substantive comments in other areas of the same review forms, and the undisputed record of his poor performance—including episodes, as set forth above, underlying the very reviews he now claims are pretextual (and that pre-date the EEOC Charge).  None of the authors of his post-EEOC Charge reviews is a defendant, and Cardwell has elicited no evidence—as opposed to baseless conspiracy theories, PCS¶¶466–471—that they were aware of the contents of his Charge, much less motivated by a retaliatory impulse.  No jury reasonably could find, on this record, that the reviews were pretextual.[27]

---

[26]  Cardwell's citation, Opp. 19, refers to the *prima facie*, not the pretext stage.  On this record, temporal proximity alone is not enough even at the *prima facie* stage, as even there proximity "must be 'very close.'"  *Clark Cty. Sch. Dist.* v. *Breeden*, 532 U.S. 268, 273 (2001) (citation omitted).  In Cardwell's words, "'two months between the protected activity and the adverse employment action seems to be the dividing line,'" Opp. 23 (citation omitted), and Cardwell's termination occurred many months after his last allegedly protected activity.  *See* Def. Br. 44 n.43, 47 n.49, 48–49.

Moreover, temporal proximity weighs lightly where an employee was "subjected to repeated critiques and complaints about . . . [his] performance skills before [he] ever lodged any complaints about discrimination."  *Dixon* v. *Int'l Fed'n of Accts.*, 2010 WL 1424007, at *6 (S.D.N.Y. Apr. 9, 2010), *aff'd*, 416 F. App'x 107 (2d Cir. 2011).  In any event, a decision to engage in protected activities "does not clothe the complainant with immunity for past and present inadequacies [and] unsatisfactory performance"; Cardwell's complaints over 28 months do not guarantee him permanent employment.  *James* v. *Runyon*, 843 F. Supp. 816, 826 (N.D.N.Y. 1994), *aff'd*, 47 F.3d 1158 (2d Cir. 1995).

Cardwell speculates that the Firm was waiting for the "opportune time" to retaliate, and that he can somehow therefore prove causation through temporal proximity.  But the cases he cites involve retaliation at the first available opportunity.  *Espinal* v. *Goord*, 558 F.3d 119, 129 (2d Cir. 2009); *McKenzie* v. *Nicholson*, 2009 WL 179253, at *5 (E.D.N.Y. Jan. 26, 2009) (motion to dismiss). If retaliation had been the Firm's goal, it could have terminated him far sooner; instead, multiple partners tried to help him improve in 2017, and the Firm gave him six months to look for a job.

[27]  Cardwell's claim, Opp. 28, that he was "never placed on a performance improvement plan" is false; four partners worked with him through 2017 to try to get him work and improve his performance.  R¶¶129–149, PCS¶¶439–447.

- ***2016 Mid-Year Review.*** Plaintiff's 2016 mid-year review by Bick cannot establish a triable issue of pretext. PCS¶432. As noted above (n. 12), it was not a deviation from standard procedure: plaintiff admits he had three rotations, R¶45, that standard practice was to review associates after rotations, R¶192, and that this review encompassed and followed his third rotation, R¶47, PCS¶433. Moreover, Cardwell's claim that Bick "lied" in stating contemporaneously that his review was "'in response to [a] request' from Cardwell," because Cardwell "never requested 'mid-year feedback,'" is false. Opp. 24. As Cardwell conceded at his deposition, he "ask[ed] . . . including in the December 2015 annual review meeting . . . for more real-time feedback[.]" ECF 255-1, PX 1 (Cardwell Tr.) at 550:6–16; *see* PCS¶578. Bick did not retaliate.

The Termination-based retaliation claims should be dismissed in their entirety.

### C.     Remaining Claims

None of Cardwell's remaining retaliation claims (Opp. 20–21 (chart)) has any merit.

*First*, Cardwell's claim against Hudson—originally that "Ms. Hudson's June 2016 and September 2016 reviews for Mr. Cardwell were created after Mr. Cardwell filed his complaint with the EEOC in August 2017," and that they were "falsified, retroactively created documents," R¶32—has now been squarely refuted, and his spurious charge that she "created" these allegedly "false reviews for the purpose of firing him" has no basis whatsoever in the evidence. MTD Order, ECF 198 at 66. The claims against Ms. Hudson should (finally) be dismissed.

As set forth in defendants' opening brief, Hudson's unrebutted sworn testimony establishes that she was not aware of any of Cardwell's allegedly protected activities at the time she wrote her reviews, precluding any claim of "causal connection." R¶12; Opp. 14; Def. Br. 42. As to his offensive and defamatory claim that Hudson's reviews were retroactively created, Cardwell no longer even *contends* that Hudson had knowledge of his 2017 EEOC Charge. Opp. 20 (chart), line 9, col. 3. Moreover, despite attempts to distract, plaintiff now concedes that Hudson "submitted" her reviews "in the next review cycle: in June 2016 . . . and September 2016," Opp. 14, and the irrefutable evidence, R¶¶32–39, establishes—based on detailed timestamps, computer metadata, and contemporaneous email transmissions predating Cardwell's Charge by months—that her reviews could not have been created thereafter. Cardwell offers only rank speculation in

18

response.  Opp. 13.[28]  Finally, Cardwell fails entirely to rebut Hudson's sworn testimony that her

reviews were truthful and accurate; Cardwell presents no evidence to create a genuine dispute as

to the truth of the contents of Hudson's reviews,[29] and, indeed, does not dispute certain episodes

of poor performance during his rotation in Capital Markets.  *Supra*; PCS ¶¶384–387.

> *Second*, none of Cardwell's ancillary attempts to establish retaliation holds water.

- **(1) *"List."***  Cardwell's claim that he was included on what he terms a "BAG 'low' performing
  list," Opp. 20, utterly misstates the record; as detailed above at page 10, the list, ECF 223-
  43, DX 43, was an index to a folder distributed as part of a Diversity Committee review,
  *see* R¶125, and the exercise did not—*as he knows, because he explained it in written
  discovery he served*—include only Black associates.  ECF 223-75, DX 75 at 15–16
  (plaintiff's RFA 13).  Nothing about the exercise was retaliatory, as shown above.  N. 11.

- **(4) *NYSDHR Brief.***  No reasonable jury could find that the Firm's filing of a responsive
  brief before the NYSDHR was an act of retaliation; the Firm had a legal obligation to
  respond and the right to defend itself.

- **(8) *2015 Annual Review.***  Cardwell's claim that Chudd "revised" Cardwell's "summary
  review" despite an "instruction" from a staffing coordinator that "she would draft the
  message Cardwell would 'receive,'" Opp. 14, again blatantly misstates the record.  It is
  undisputed that draft messages *precede* reviews; summary reviews *memorialize* reviews
  once they have taken place, and for this reason, variations between the forms are
  appropriate, not a "deviation[] from policy."  *Id*.  Moreover, Cardwell's claim that Chudd
  retaliated by writing that "'Kaloma asked for more direct real-time performance
  evaluations' **even though Cardwell made no such request,'**" *Id*., **expressly contradicts
  Cardwell's own testimony**.  ECF 255-1, PX 1 (Cardwell Tr.) 550:6–16 ("[F]or the last
  couple of years I have been asking Davis Polk's partners, ***including in the December 2015
  annual review meeting, my first annual review meeting with Mr. Chudd***, for more real-
  time feedback.").  Cardwell's distinction between "real-time performance evaluations" and

---

[28]  Speculation that Hudson must have been aware of a September 2015 complaint, despite sworn testimony that she was
not (R¶12), is not evidence; that Hudson was in touch with various Firm administrators does not establish that they
relayed information to her about that complaint.  Opp. 13.  Separately, Hudson's testimony that she requested "a folder
with his reviews" to "have a read on the situation," in order to understand a specific weekend instance of poor
performance that she had observed herself, is unrebutted.  R¶¶73–76.  Cardwell's "unsubstantiated speculation" that
by "situation" Hudson must have meant his September 2015 complaint (Opp. 13) cannot create a genuine issue of fact.
*Gonzalez* v. *NYU Langone Hosps.*, 2021 WL 4226042, at *7 (S.D.N.Y. Sept. 16, 2021).

[29]  Cardwell vaguely alleges that Hudson's 2016 reviews of him "included specifics, but they were demonstrably false,"
Opp. 14, but in practice takes issue with just one aspect of Hudson's reviews: her statement that "diligence and other
preparatory tasks were completed so slowly that a second junior . . . needed to be staffed."  PCS¶381.  The undisputed
evidence shows that this statement was true.  Cardwell appears to contend, citing an email, that the second junior was
staffed not because of his performance but because the department was "slow," PCS¶385, but Hudson's testimony is
unrebutted.  Opp. 14.  As Hudson testified: "This email [concerning 'slow' junior staffing] explains why Rocio reached
out to [Associate R].  It doesn't explain why [Associate R] put [the junior associate] on the deal."  ECF 223-5, DX 5
(Hudson Tr.) at 228:11–14.  Cardwell has offered no evidence that Hudson made any "demonstrably false" statements
in her 2016 reviews, let alone retaliatory statements.

"real-time feedback," *see* PCS¶¶586–588, is a made-for-litigation construct.

- **(12) *Career Advisor Program.*** Cardwell claims that Butler retaliated against him by not meeting with him as part of the Career Advisor Program. But Butler had no knowledge of any protected activities, and so could not have retaliated. In any event, Butler did not have CAP meetings with *any* of his advisees in the relevant time period, ECF 226 (Butler Decl.); the undisputed testimony is that this was because Butler was "extraordinarily busy," *id.* ¶10; and Cardwell's other CAP mentor, Bick, did meet with him. Buergel Reply Decl. Ex. C (Bick:"It would be helpful to me for you to schedule (in no particular order) a lunch with my other mentees (with the exception of Kaloma, where we already met).").

- **(13) *Alumni Network.*** Cardwell, as a non-employee, offers no legal support for the proposition that he is entitled to continuing Firm benefits, nor any evidence that Firm policy permits alumni engaged in litigation against, or otherwise adverse to, the Firm to have access to proprietary resources. No reasonable jury could find retaliation on this basis.[30]

  The retaliation claims should be dismissed in their entirety.

## IV.   PLAINTIFF'S CONCEDED LACK OF EVIDENCE ON HIS DAMAGES CLAIMS COMPELS SUMMARY JUDGMENT

Plaintiff cannot prove damages based on the undisputed facts. Plaintiff's complaint should be dismissed in its entirety for this reason as well.[31]

### A.   Front and Back Pay

Cardwell concedes that he failed to mitigate damages, which bars recovery of both front and back pay damages as a matter of law. Def. Br. 54–56 (collecting cases). For example,

---

[30]   Moreover, this allegation should be ignored as improper at this stage. *See Casseus* v. *Verizon N.Y., Inc.*, 722 F. Supp. 2d 326, 344 (E.D.N.Y. 2010) ("As a threshold matter, courts generally do not consider claims or completely new theories of liability asserted for the first time in opposition to summary judgment.") (citing *Lyman* v. *CSX Transp., Inc.*, 364 Fed. Appx. 699, 701–02 (2d Cir. 2010)). The allegation does not appear in his complaint or in any written discovery plaintiff served or responded to and was not mentioned at his deposition.

[31]   The Court can and should decide questions of damages at this juncture, even if it otherwise denies defendants' motion for summary judgment. There is clear support in the case law for such a course. *E.g.*, *Schonfeld* v. *Hilliard*, 218 F.3d 164, 184 (2d Cir. 2000) (affirming summary judgment decision dismissing claims insofar as they seek damages for lost profits and punitive damages); *Maier-Schule GMC, Inc.* v. *Gen. Motors Corp.* *(GMC Truck & Bus Grp.)*, 154 F.R.D. 47, 53 (W.D.N.Y. 1994) ("This Court has found numerous cases where a court granted a defendant summary judgment on some or all of plaintiff's claims for damages despite the fact that the court determined that the plaintiff presented otherwise meritorious claims.") (collecting cases); *accord*, *Hedgeco, LLC* v. *Schneider*, 2009 WL 1309782, at *5 (S.D.N.Y. May 7, 2009); *Strike It Rich, Inc.* v. *Joseph Schlitz Brewing Co.*, 505 F. Supp. 89, 92 (D.D.C. 1980); *Draft-Line Corp.* v. *Hon Co.*, 781 F. Supp. 841, 842 (D.P.R. 1991), *aff'd*, 983 F.2d 1046 (1st Cir. 1993); *Zirin Lab'ys Int'l, Inc.* v. *Mead-Johnson & Co.*, 208 F. Supp. 633, 636 (E.D. Mich. 1962).

*Maxim Group LLC* v. *Life Partners Holdings, Inc.*, cited by plaintiff (Opp. 50), is readily distinguishable. 690 F. Supp. 2d 293 (S.D.N.Y. 2010). Unlike defendants in this case, the defendant there did not argue the plaintiff had failed to show there was a genuine dispute as to damages. *Id.* at 296, 299. Instead, the defendant merely asked for the court to decide as a matter of law that damages should be calculated starting from a particular date. *Id.*

in *Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*, the court found that the record was "devoid

of evidence" that the plaintiff mitigated his damages where, over the course of five to six months,

he contacted a recruiting firm, reviewed newspaper classifieds, and made some calls to former

colleagues inquiring about job openings.  2015 WL 13699239, at *3–4 (S.D.N.Y. Mar. 25, 2015)

(dismissing claim on summary judgment).  Cardwell did not even do this much.  *E.g.*, R¶¶242–

243 (admitting failure to use outplacement services recommended or provided by the Firm); R¶243

(admitting failure to apply to any jobs in the six months prior to his termination or at any time

since his last day at the Firm); R¶244 (admitting that he let his bar registration lapse in 2020 and

is not presently a registered attorney).  Because plaintiff has put forth no evidence of mitigation,

he has, by definition, identified no genuine dispute as to this fact.  None of plaintiff's attempts to

salvage his claims despite lack of mitigation saves him.[32]  Opp. Br. 51–53.

---

[32] *First*, plaintiff cites *Ackerman* v. *National Financial Systems*, 81 F. Supp. 2d 434 (E.D.N.Y. 2000), for the proposition that failure to mitigate cannot be addressed on summary judgment. *Id.* 51. But the court there did not explain its reasoning or cite any authority in support of its decision. *See Ackerman*, 81 F. Supp. 2d at 439. And contrary to the decision in *Ackerman*, courts regularly dismiss claims at the summary judgment stage for failure to mitigate. *See, e.g.*, *Mihalik*, 2015 WL 13699239, at *4 (S.D.N.Y. Mar. 25, 2015) (granting summary judgment on back and front pay claims, finding failure to mitigate); *Arbercheski* v. *Oracle Corp.*, 650 F. Supp. 2d 309, 314 (S.D.N.Y. 2009) (same); *Hasbrouck* v. *Bankamerica Hous. Servs., Inc.*, 105 F. Supp. 2d 31, 40 (N.D.N.Y. 2000) (same).

*Second*, plaintiff offers not a shred of evidence—as opposed to speculation—that a job search would have been futile. His only citation to fact (R¶121) cites to an irrelevant summary of a performance review. Opp. 51. The conclusions of defendants' expert, which show that Cardwell should have been able to secure employment had he tried, are unrebutted. *E.g.*, R¶¶247–51. Cardwell's claim that a reasonable jury could conclude that his low hours prior to termination would have rendered a search futile is entirely unsupported; there is no evidence, for instance, that any recruiter or prospective employer would have been aware of his hours, and Cardwell's claim to have been a strong performer is directly at odds with his claims of futility. In the only case Cardwell cites, the plaintiff proved futility by actually looking for and failing to find a job, something Cardwell cannot say because he did not do so. *Thomas* v. *Medco*, 1998 WL 542321, at *18 (S.D.N.Y. Aug. 26, 1998). Moreover, the *Thomas* plaintiff was only a few years from retirement, which the court found supported a futility argument, whereas Cardwell was just beginning his career.

*Third*, Cardwell's claim that defendants should be estopped from advancing a mitigation defense because of their alleged treatment of Cardwell is meritless in the extreme. Opp. 52–53. Equitable estoppel arises when a defendant made a "definite misrepresentation of fact," the defendant had "reason to believe that the plaintiff would rely on that misrepresentation," and the plaintiff "reasonably relied on that misrepresentation to [their] detriment." *Rich* v. *Associated Brands, Inc.*, 379 F. App'x 78, 81 (2d Cir. 2010). It is unrebutted that the Firm (i) told Cardwell to seek alternative employment, R¶153, (ii) made resources available to him to assist with his job search, R¶155, and (iii) gave him time, at full salary, to look for a job, *id.* There is no evidence that the Firm made any kind of misrepresentation to the effect that Cardwell did not need to mitigate. Any estoppel argument would fail for the further reasons that Cardwell has identified no sufficiently specific statement made to him such that he could have relied upon it to his detriment. *See Rich*, 379 F. App'x at 81 (requiring "definite" misrepresentation); *cf. Twersky* v. *Yeshiva Univ.*, 993 F. Supp. 2d 429, 442 (S.D.N.Y.) (holding that misrepresentation "must be affirmative and specifically directed at preventing the plaintiff" from taking action) *aff'd*, 579 F. App'x 7 (2d Cir. 2014).

Cardwell's front pay claim is further barred because it is based (*see* Def. Br. 52–54; *accord*, Opp. 50–53) on his impermissibly speculative and utterly unsupported claim that he would have become a Davis Polk partner.  Cardwell has now admitted virtually every relevant fact set forth by defendants that dispositively rebuts this claim.  *See* Def. Br. 53–54 and R¶¶254–256 (conceding that (i) no one at the firm suggested, much less guaranteed, Cardwell would be promoted to partner, (ii)  only a very few of the top associates at Davis Polk become partners every year, and (iii) none of Cardwell's purported comparators remain at the Firm, much less became partners).  Moreover, Cardwell has not offered a single citation to contrary evidence (as opposed to argument) in his brief.  Opp. 50–53.

Cardwell's back pay claim is barred (Def. Br. 56) because he has put forth no evidence that he would have remained at the Firm through his eighth year.[33]

## B.    Compensatory Damages

Summary judgment is warranted on Cardwell's compensatory damages claims because they are unduly speculative.  Def. Br. 56–58.  Cardwell points to no evidence in his answering brief explaining which portions of his claimed $2.8 million in compensatory damages are allegedly attributable to a post-lawsuit statement of Mr. Barr, as opposed to other causes.  Because Cardwell has now abandoned any claim with respect to Barr's statement (by failing to address it, Opp. 55–56, and through his admissions, R¶¶220–224), any damages award would be unduly speculative.  Def. Br. 57 (collecting authorities); *Sellify Inc.* v. *Amazon.com, Inc.*, 2010 WL

---

[33] Plaintiff argues that his back pay claim should be "decided after a finding of liability," implying that there remains a dispute as to "whether Cardwell would have 'lasted roughly twice as long as th[e] average'" tenure of a Firm associate in the class of 2014 (4.2 years).  Opp. 53.  But there is no genuine dispute about average tenure because plaintiff has failed to dispute it with a citation to specific evidence.  R¶235.  Nor has Cardwell put forth any *evidence*—as opposed to irrational speculation—that he would have lasted twice this average; Cardwell's suggestion that he might generate such evidence at trial neglects his burden to come forward with a rebuttal at this stage.  In any event, he could not prove the contrary on this record; even the associates he identified in discovery as his alleged comparators (the Twelve Associates) had an average tenure akin to his tenure of 3.92 years, *see* R¶263 and DX 8 ¶ 34 (McCrary Rep't), none remains at the Firm, R¶261, and only one stayed for at least their eighth year, R¶262.

4455830, at *5 (S.D.N.Y. Nov. 4, 2010) (holding that, where plaintiff failed to disentangle drop in sales attributable to defendant from that attributable to other factors, summary judgment was proper because claim was unduly speculative).

Summary judgment is also proper because Cardwell has offered no corroboration for his alleged emotional damages beyond his own testimony. A "plaintiff's subjective testimony, standing alone, is generally insufficient to sustain an award of emotional distress damages." *Patrolmen's Benevolent Ass'n. of City of New York* v. *City of New York*, 310 F.3d 43, 55 (2d Cir. 2002).[34] Cardwell concedes that he never received a diagnosis or took medication for his claimed symptoms, and he provided no expert reports or testimony corroborating his health claims, R¶¶225–229; the only purported facts proffered in his counterstatement are conclusory and speak neither to severity nor duration of symptoms. PCS¶¶865–68.[35]

## C.   Punitive Damages

Plaintiff's claim for punitive damages is frivolous. His claim that vague and ill-defined "issues of fact" (Opp. 56–60) support an award of punitive damages is barely decipherable[36] and utterly unsupportable. Given the chance to respond to defendants' assertion

---

[34]   *Accord*, *Dinkins* v. *New York*, 2021 WL 3173968, at *10 (S.D.N.Y. July 26, 2021) (granting summary judgment on "generic demand for damages" for "mental anguish" where plaintiff had not provided "any showing to substantiate such damages at this juncture"); *Caltabiano* v. *BSB Bank & Tr. Co.*, 387 F. Supp. 2d 135, 142 (E.D.N.Y. 2005) (same).

Separately, according to the very case Cardwell cites, Opp. 54, "[w]here the only evidence on emotional distress is the plaintiff's testimony, and there is no evidence of physical damage or the need for professional care, there must be a 'reasonabl[e] probability, rather than a mere possibility, that damages due to emotional distress were in fact incurred." *Hall* v. *Pennsylvania Dep't of Corr.*, 2006 WL 2772551, at *21 (M.D. Pa. Sept. 25, 2006) (granting defendant's motion for remittitur following "clearly excessive" jury award of $300,000 for compensatory damages for pain and suffering and emotional distress). Cardwell has set forth no facts that move the needle from "possibility" to "probability."

[35]   Even if plaintiff's compensatory damages claim were permitted to proceed to trial, no reasonable jury could award, on this record, any damages beyond the "garden variety." Those are the only appropriate type of damages where, as here, the "evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or the consequences of the injury." *Cartagena* v. *Providence Constr. Corp.*, 2017 WL 9286986, at *4 (E.D.N.Y. May 1, 2017), *R&R adopted*, 2018 WL 2088004 (E.D.N.Y. May 3, 2018). Cardwell concedes as much in his opposition brief by relying on cases involving garden-variety damages. Opp. 54 (citing *Jowers* v. *DME Interactive Holdings, Inc.*, 2006 WL 1408671, at *10–13 (S.D.N.Y. May 22, 2006) (reducing award of compensatory damages from $100,000 to $15,000 because plaintiff had only established garden variety damages). Accordingly, even if Cardwell's claims for compensatory damages are not dismissed, the Court should cap any award for emotional distress to those appropriate for "garden variety" damages.

[36]   Plaintiff points broadly to two sections of his brief: B.1.c.ii (which claims to set forth evidence of retaliatory animus,

23

that "[n]o document or non-testimonial evidence," nor any "testimony by any witness," "reasonably supports the allegation of malice, reckless indifference, or willful or wanton negligence on the part of" any defendant, plaintiff declined to answer, purportedly because the paragraphs "set[] forth a conclusion as to what the evidence shows" and were not "followed by citation to evidence" (because there is none). R¶¶257–58. Plaintiff's flat-out refusal to address this issue should be construed as an admission that there is no evidence of malice, reckless indifference, or willful or wanton negligence, and that the claim for punitive damages should be dismissed for the reasons set forth in defendants' moving brief (at 58–60). *See, e.g.*, *Souza*, 2021 WL 3501162, at *14 (granting summary judgment when plaintiffs failed to rebut assertion in defendants' Rule 56.1 Statement that there was an absence of evidence to support essential element of a claim); *Yukos Cap. S.A.R.L.*, 2017 WL 10221739, at *7 (same), *aff'd,* 977 F.3d 216 (2d Cir. 2020); *Schonfeld*, 218 F.3d at 184 (affirming summary judgment decision dismissing punitive damages claims because plaintiff had failed to establish defendants' conduct was "sufficiently egregious," "willful," "self-dealing," or "malicious"). Even in the case plaintiff cites (Opp. 56), the Second Circuit affirmed a decision to refuse to submit a punitive damages claim to the jury.[37]

---

Opp. 23–26) and C.1.b.iii (which purports to outline defendants' "adverse actions and inferences," Opp. 41–46).

[37] *Farias* v. *Instructional Sys., Inc.*, 259 F.3d 91, 102 (2d Cir. 2001) (affirming decision that record did not warrant submitting punitive damages claim to a jury where plaintiff "presented no evidence that [defendant] retaliated against her with the conscious knowledge it was violating the law, nor did she present evidence of 'egregious' or 'outrageous' conduct from which an inference of malice or reckless indifference could be drawn"); *see also Poller* v. *BioScrip, Inc.*, 974 F. Supp. 2d 204, 239 (S.D.N.Y. 2013) (granting summary judgment on punitive damages claim where, as here, plaintiff offered no evidence that any defendant's conduct rose to the level of malice, willful or wanton negligence, or recklessness); *In re Fosamax Prod. Liab. Litig.*, 924 F. Supp. 2d 477, 490 (S.D.N.Y. 2013); *Pemberton* v. *City of New York*, 2021 WL 3292209, at *5 (S.D.N.Y. Aug. 2, 2021) (same); *George* v. *Equifax Mortg. Servs.*, 2010 WL 3937308, at *3 (E.D.N.Y. Oct. 5, 2010) (same).

Plaintiff's attempt to save his punitive damages claim goes nowhere. *First*, Cardwell cites case law supposedly indicating that "general knowledge of anti-discrimination law and policy is sufficient to ascribe awareness that *particular discriminatory acts* are prohibited by federal law." Opp. 58 (emphasis added) (quoting *Parrish* v. *Sollecito*, 280 F. Supp. 2d 145, 153 (S.D.N.Y. 2003)). But this case law is irrelevant where, as here, plaintiff has failed to come forward with evidence that any defendant acted with knowledge that he or she might be violating the law. *Khan* v. *Hip Centralized Lab'y Servs., Inc.*, 2008 WL 4283348, at *5 (E.D.N.Y. Sept. 17, 2008) (collecting cases and holding that defendant lacked "a sufficient level of intent" to merit punitive damages because defendant "did not intend to violate plaintiff's federally-protected rights"); *see also* R¶¶257–58.

*Second*, Cardwell claims, citing only his own statement of facts, that the Firm did not enforce its own anti-

**D.      Plaintiff Has Abandoned All Claims With Respect to
Injunctive Relief, Attorney's Fees, and Declining Supplemental Jurisdiction**

Plaintiff has abandoned his claims to injunctive relief and attorney's fees—which

were meritless in any event, *see* Def. Br. 60—because he has "fail[ed] to address [them] in any

way" in "opposing summary judgment." *Gonzalez* v. *Bronx Cty. Hall of Just. Ct. Officer Mark

Hirschman Shield 7421*, 2017 WL 435829, at *7 (S.D.N.Y. Jan. 31, 2017) (Woods, J.) (citing

*Jackson* v. *Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014)).  Plaintiff concedes that his attorney is not

being compensated for his services.  R¶233.

Likewise, plaintiff has not contested defendants' request that the Court exercise

supplemental jurisdiction over his non-federal claims, and by failing to address the argument, has

abandoned any claim to the contrary.  *Gonzalez*, 2017 WL 435829, at *7; Def. Br. a50–51.

## CONCLUSION

For the foregoing reasons and those set forth in their opening brief, defendants

request that their Motion for Summary Judgment be granted on all claims under all statutes as to

all defendants.

---

discrimination and anti-retaliation policies as applied to him, and that this "strongly support[s] a punitive damages award."  Opp. 59.  Cardwell is wrong on the facts and the law.  The sole fact Cardwell cites is that one witness did not recall an investigation prior to the filing of the EEOC complaint.  Opp. 59 (citing PCS ¶875).  But that single witness's recollection does not establish that no investigation in fact occurred.  *Supra* (Crane).  Moreover, Cardwell's related contention that whether or not defendants acted in "good faith" is a question for the jury misstates the law and Cardwell's burden at this stage.  The burden at this stage is on Cardwell—not defendants—to show a genuine dispute of material fact as to whether defendants' conduct merited punitive damages.  *See, e.g.*, *Schonfeld*, 218 F.3d at 184 (2d Cir. 2000); *Poller*, 974 F. Supp. 2d at 239; *In re Fosamax Prod. Liab. Litig.*, 924 F. Supp. at 490; *Pemberton*, 2021 WL 3292209, at *5; *George*, 2010 WL 3937308, at *3.  The sole case cited by Cardwell regarding "good faith" does not even use that phrase and, in any event, is inapposite—unlike here, that court was faced with "significant factual issues concerning plaintiff's claim that [defendant] acted with malice or reckless indifference to her federally protected right."  *Lovejoy-Wilson* v. *Noco Motor Fuels, Inc.*, 242 F. Supp. 236, 245 (W.D.N.Y. 2003).

*Finally*, Cardwell claims that stock language in a standardized form distributed by the NYSDHR "cautioned Davis Polk about retaliating against Cardwell," Opp. 59, and that mere knowledge of this statement would be enough to submit a punitive damages claim to the jury.  Not so.  As noted above, the law is clear that Cardwell must show not only that defendants were aware of his protected rights, but also that defendants "intend[ed] to violate" those rights.  *Khan*, 2008 WL 4283348, at *5.  Cardwell has failed to meet that burden here.  *See* R¶¶257–58.

Dated:          March 11, 2022
                New York, New York

                        Respectfully submitted,

                        PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

                        By: /s/ *Bruce Birenboim*
                            Bruce Birenboim
                            Jeh C. Johnson
                            Susanna Buergel
                            Marissa C.M. Doran

                        1285 Avenue of the Americas
                        New York, New York 10019-6064
                        Telephone: (212) 373-3000
                        bbirenboim@paulweiss.com
                        jjohnson@paulweiss.com
                        sbuergel@paulweiss.com
                        mdoran@paulweiss.com

                        *Attorneys for Defendants*

APPENDIX A

The following chart from defendants' opening brief has been updated to show, in bold, those facts now conceded by Cardwell:

| Figure 3 | | | | | |
|---|---|---|---|---|---|
| Differences Between Cardwell and Purported Comparators | | | | | |
| Assoc. | Not Same Decisionmkr. | Not Same "Rank" | More "Aheads"[38] | Fewer "Behinds" | Also Given Time to Go ("TTG") Msg |
| 1 | ✔ | | ✔ (12) | ✔ (0) | |
| 2 | ✔ | ✔ (2013) *Also not outside protected class | ✔ (5) | ✔(2) | |
| 3 | ✔ | ✔ (2012) | ✔ (2) | | ✔ |
| 4 | ✔ | | ✔ (4) | ✔ (0) | |
| 5 | ✔ | ✔ (2012) | | | ✔(2 y. 7 mo. (TTG); 3 y. 1 mo. (Last Day)) |
| 6 | ✔ | | ✔ (3) | ✔ (1) | |
| 7 | ✔ | ✔ (2011) | ✔ (6) | | ✔ |
| 8 | ✔ | | ✔ (1) | ✔ (1) | ✔ (4 y. 1 mo. (TTG); 4 y. 2 mo. (LD)) |
| 9 | ✔ | ✔ (2012) | ✔(16) | ✔(3) | |
| 10 | ✔ | | ✔ (1) | ✔ (3) | ✔ (3 y. 6 mo. (TTG); 3 y. 8 mo. (LD)) |
| 11 | ✔ | | ✔ (3) | ✔ (0) | |
| 12 | ✔ | | ✔ (3) | ✔ (3) | |
| | ⬇ | ⬇ | ⬇ | ⬇ | ⬇ |
| *UPDATE:* | **UNDISPUTED,** R¶¶275–76; *accord,* 277; 271–73 | **ADMITTED,** R¶¶265–66 | **UNDISPUTED,** R¶267 | | **NO VALID DISPUTE.** *See* R¶263 (start/end dates of employment); R¶¶168–69 (citing documents establishing TTG msg. dates on their face) |
| *Cardwell* | | *(2014)* | 0 | 6 | *(3 y. 5 mo. (TTG); 3 y. 11 mo. (LD))* |

---

[38] "Aheads" and "behinds" are counted from the associate's first day to Cardwell's last (August 10, 2018), as set forth at Def. Br. 33 n.27. Separately, the parties jointly correct one unrelated erratum, relating to an associate whom Cardwell does not allege is a comparator. At R¶103, defendants asserted, and plaintiff admitted, that "Associate L was a Black/African-American female associate *in Cardwell's class.*" She was a member of the class of 2015.