**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

KALOMA CARDWELL,

                *Plaintiff*,

v.

DAVIS POLK & WARDWELL LLP,
THOMAS REID, JOHN BICK, and DANIEL
BRASS,

                *Defendants*.

Case No. 19-cv-10256-GHW

---

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OMNIBUS MOTIONS IN LIMINE</u>

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel.: (212) 373-3000

*Attorneys for Defendants*

Dated: September 15, 2023

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

LEGAL STANDARD............................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

MIL NO. 1 TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT RELATING
      TO THE DISMISSED DISCRIMINATION CLAIMS ....................................................... 1

MIL NO. 2 TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING THE
      ALLEGED RETALIATORY ACTS THAT THIS COURT DISMISSED ...................... 8

MIL NO. 3 TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT OF
      PLAINTIFF'S GOOD OR MORAL CHARACTER ....................................... 11

MIL NO. 4 TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT RELATED
      TO OTHER ALLEGED "BAD ACTS" OF DEFENDANTS ......................................... 13

MIL NO. 5 TO EXCLUDE PLAINTIFF'S CHARGES FILED WITH THE EQUAL
      EMPLOYMENT OPPORTUNITY COMMISSION AND NEW YORK STATE
      DIVISION OF HUMAN RIGHTS AND THE EEOC'S RIGHT TO SUE
      LETTER.................................................................................................................. 20

MIL NO. 6 TO EXCLUDE DAVIS POLK'S ANSWER TO PLAINTIFF'S CHARGE
      OF DISCRIMINATION IN RECOGNITION OF THE COURT'S PRIOR
      DETERMINATION THAT THE ANSWER WAS NOT RETALIATORY
      UNDER APPLICABLE LAW ........................................................................... 25

MIL NO. 7 TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT RELATED
      TO THE IDENTITIES OF DAVIS POLK'S CLIENTS, MATTERS, OR
      CLIENT CONFIDENCES.............................................................................. 31

MIL NO. 8 TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT RELATED
      TO DEFENDANTS' AND DEFENSE COUNSEL'S POST-TERMINATION,
      POST-COMPLAINT LITIGATION CONDUCT ............................................. 33

MIL NO. 9 TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT RELATED
      TO DEFENDANTS' FINANCIAL STATUS UNLESS AND UNTIL THE JURY
      DETERMINES THAT PUNITIVE DAMAGES ARE WARRANTED......................... 36

CONCLUSION................................................................................................................. 40

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ajala* v. *W.M. Barr & Co., Inc.*,
2019 WL 10837693 (S.D.N.Y. Apr. 29, 2019)......................................................................40

*Alfano* v. *Costello*,
294 F.3d 365 (2d Cir. 2002)...................................................................................16, 18

*Altman* v. *New Rochelle Pub. Sch. Dist.*,
2017 WL 66326 (S.D.N.Y. Jan. 6, 2017) ............................................................................35

*Altruis Group, LLC* v. *ProSight Specialty Mgmt. Co., Inc.*,
2023 WL 4784233 (S.D.N.Y. July 26, 2023) ......................................................................34

*Am. Tech. Ceramics Corp.* v. *Presidio Components, Inc.*,
2019 WL 2330855 (E.D.N.Y. May 31, 2019) ................................................................36, 39

*United States* v. *Aminy*,
15 F.3d 258 (2d Cir. 1994).....................................................................................................18

*Becker* v. *ARCO Chem. Co.*,
207 F.3d 176 (3d Cir. 2000)...................................................................................................15

*Belabbas* v. *Inova Software Inc.*,
2019 WL 13258047 (S.D.N.Y. Oct. 1, 2019) ......................................................................35

*Benzinger* v. *Lukoil Pan Americas, LLC*,
2021 WL 431169 (S.D.N.Y. Feb. 8, 2021).............................................................................6

*Bermudez* v. *City of New York*,
2019 WL 136633 (E.D.N.Y. Jan. 8, 2019) ...........................................................................22

*Bernstein* v. *Seeman*,
593 F. Supp. 2d 630 (S.D.N.Y. 2009)...................................................................................28

*Bunnell* v. *Haghighi*,
661 F. App'x 110 (2d Cir. 2016) ..........................................................................................34

*Cardwell* v. *Davis Polk & Wardwell LLP*,
2020 WL 6274826 (S.D.N.Y. Oct. 24, 2020) ......................................................................32

*Chamilco* v. *Wild Edibles, Inc.*,
2017 WL 11567936 (S.D.N.Y. Dec. 1, 2017) ........................................................................2

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Chauca* v. *Abraham*,
   885 F.3d 122 (2d Cir. 2018)...................................................................38

*Chrisholm* v. *Sloan-Kettering*,
   2011 WL 2015526 (S.D.N.Y. May 13, 2011) ...........................................28

*Christians of California, Inc.* v. *Clive Christian New York, LLP*,
   2014 WL 6467254 (S.D.N.Y. Nov. 10, 2014)...........................................34

*DeAngelis* v. *City of Bridgeport*,
   2018 WL 429156 (D. Conn. Jan. 15, 2018)..........................................18, 19

*Dollman* v. *Mast Industries, Inc.*,
   2011 WL 3911035 (S.D.N.Y. Sept. 6, 2011)............................................24

*Dooley* v. *Columbia Presbyterian Med. Ctr.*,
   2009 WL 2381331 (S.D.N.Y. July 29, 2009) .......................................8, 13

*Dotson* v. *City of Syracuse*,
   2019 WL 6337326 (N.D.N.Y. Nov. 27, 2019) ..........................................16

*Elam* v. *Concourse Vill., Inc.*,
   2017 WL 1383984 (S.D.N.Y. Apr. 7, 2017).........................................22, 24

*Evans* v. *Calise*,
   1994 WL 185696 (S.D.N.Y. May 12, 1994) .............................................38

*Evans* v. *Port Auth. of New York & New Jersey*,
   2005 WL 2427890 (S.D.N.Y. Oct. 3, 2005)..............................................19

*Feighan* v. *Res. Sys. Grp. Inc.*,
   2023 WL 4623123 (D.D.C. July 19, 2023).................................................12

*Foley* v. *Town of Marlborough*,
   2023 WL 122040 (D. Conn. Jan. 6, 2023)..................................................10

*In re Food Fair, Inc.*,
   14 B.R. 46 (Bankr. S.D.N.Y.1981) ..............................................................4

*Funk* v. *Belneftekhim*,
   2019 WL 3035124 (E.D.N.Y. July 11, 2019)............................................34

*Gage* v. *Metro. Water Reclamation Dist. of Greater Chicago*,
   365 F. Supp. 2d 919 (N.D. Ill. 2005) .......................................................27

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*In re Gen. Motors LLC Ignition Switch Litig.*,
    2015 WL 8270427 (S.D.N.Y. Dec. 7, 2015) ...........................................................36

*In re Gen. Motors LLC Ignition Switch Litig.*,
    2015 WL 8130449 (S.D.N.Y. Dec. 3, 2015) ....................................................34, 36

*In re Gen. Motors LLC Ignition Switch Litig.*,
    2015 WL 7769524 (S.D.N.Y. Nov. 30, 2015) .........................................................22

*Gorbea* v. *Verizon New York, Inc.*,
    2014 WL 2916964 (E.D.N.Y. June 25, 2014) ...................................................3, 33

*Gordon* v. *New York City Bd. of Educ.*,
    232 F.3d 111 (2d Cir. 2000) ....................................................................................33

*Government of the Virgin Islands* v. *Pinney*,
    967 F.2d 912 (3d Cir. 1992) ....................................................................................15

*Graziadio* v. *Culinary Institute of America*,
    817 F.3d 415 (2d Cir. 2016) ....................................................................................27

*Gueye* v. *People's United Bank, Natl. Assn.*,
    2021 WL 10351980 (E.D.N.Y. Apr. 9, 2021) ..........................................................29

*Gutierrez* v. *City of New York*,
    2012 WL 2357063 (S.D.N.Y. June 20, 2012) .........................................................22

*Hannah* v. *Wal-Mart Stores, Inc.*,
    2017 WL 690179 (D. Conn. Feb. 21, 2017) ...................................................3, 9, 23

*Hart* v. *RCI Hosp. Holdings, Inc.*,
    90 F. Supp. 3d 250 (S.D.N.Y. 2015) ......................................................................39

*Hayne* v. *Rutgers, State Univ.*,
    1989 WL 106031 (D.N.J. Aug. 10, 1989) .........................................................16, 17

*E.E.O.C.* v. *HBE Corp.*,
    135 F.3d 543 (8th Cir. 1998) ...................................................................................12

*Henry* v. *Wyeth Pharms., Inc.*,
    2008 WL 294443 (S.D.N.Y. Jan. 29, 2008) ......................................................16, 17

*Highland Capital Mgmt., L.P.* v. *Schneider*,
    551 F. Supp. 2d 173 (S.D.N.Y. 2008) ......................................................................1

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Jute* v. *Hamilton Sundstrand Corp.*, 420 F.3d 166 (2d Cir. 2005),
420 F.3d at 173 ...............................................................................................11

*Karam* v. *County of Rensselaer*,
2016 WL 3029951 (N.D.N.Y. May 25, 2016)..........................................................4

*Keene* v. *Sears, Roebuck & Co.*,
2007 WL 2572366 (D.N.J. Sept. 4, 2007) ...............................................................12

*Kelly* v. *Boeing Petroleum Servs., Inc.*,
61 F.3d 350 (5th Cir. 1995) ..............................................................................20

*Loussier* v. *Universal Music Grp., Inc.*,
2005 WL 5644421 (S.D.N.Y. July 14, 2005) ...................................................37, 39

*Mandal* v. *City of New York*,
2006 WL 3405005 (S.D.N.Y. Nov. 26, 2006) ........................................................35

*Manuel* v. *City of Chicago*,
335 F.3d 592 (7th Cir. 2003) .......................................................................19, 20

*Martinelli* v. *Penn Millers Ins. Co.*,
2007 WL 9759057 (M.D. Pa. Mar. 19, 2007).......................................14, 17, 18, 20

*Martinez* v. *Davis Polk & Wardwell LLP*,
208 F. Supp. 3d 480 (E.D.N.Y. 2016) .................................................................17

*United States* v. *Mayans*,
17 F.3d 1174 (9th Cir. 1994) ............................................................................18

*Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*,
715 F.3d 102 (2d Cir. 2013)................................................................................2

*Miller* v. *E. Midwood Hebrew Day Sch.*,
2021 WL 966166 (E.D.N.Y. Feb. 15, 2021)..........................................................38

*United States* v. *Mostafa*,
16 F. Supp. 3d 236 (S.D.N.Y. 2014).....................................................................14

*Mugavero* v. *Arms Acres, Inc.*,
2009 WL 1904548 (S.D.N.Y. July 1, 2009) ....................................................12, 18

*Neuren* v. *Adduci, Mastriani, Meeks & Schill*,
43 F.3d 1507 (D.C. Cir. 1995) ...........................................................................12

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

*Orsaio* v. *N.Y. State Dep't of Corr. & Cmty. Supervision*,
    2022 WL 351827 (N.D.N.Y. Jan. 14, 2022)....................................................3, 6, 10

*Paolitto* v. *John Brown E & C, Inc.*,
    151 F.3d 60 (2d Cir. 1998)...........................................................................24

*United States* v. *Paredes*,
    176 F. Supp. 2d 195 (S.D.N.Y. 2001)............................................................1

*Park West Radiology* v. *CareCore Nat. LLC*,
    675 F. Supp. 2d 314 (S.D.N.Y. 2009)...........................................................32

*Pavone* v. *Puglisi*,
    2013 WL 245745 (S.D.N.Y. Jan. 23, 2013) .....................................................1

*Perez* v. *Consol. Edison Corp. of N.Y.*,
    2008 WL 194615 (S.D.N.Y. Jan. 23, 2008) ....................................................3

*Pin* v. *Hunt*,
    2015 WL 1344406 (S.D.N.Y. Mar. 20, 2015) ................................................28

*Puglisi* v. *Town of Hempstead Sanitary Dist. No. 2*,
    2014 WL 12843521 (E.D.N.Y. Jan. 27, 2014) ..........................................22, 23

*Rao* v. *Rodriguez*,
    2017 WL 1403214 (E.D.N.Y. April 18, 2017) ...............................................34

*Reilly* v. *Revlon, Inc.*,
    2009 WL 2900252 (S.D.N.Y. Sept. 9, 2009)..................................................22

*Reynolds* v. *Family Dollar Services, Inc.*,
    2011 WL 618966 (E.D. Ky. Feb. 10, 2011) ..................................................29

*Rhee-Karn* v. *Lask*,
    2023 WL 4238908 (S.D.N.Y. June 28, 2023) ..................................................9

*Richmond* v. *Gen. Nutrition Centers Inc.*,
    2012 WL 762307 (S.D.N.Y. Mar. 9, 2012) ...................................................19

*Ridge* v. *Davis*,
    2022 WL 16737299 (S.D.N.Y. Nov. 7, 2022).................................................10

*Rivera* v. *Baccarat, Inc.*,
    1997 WL 777887 (S.D.N.Y. Dec. 15, 1997) ..................................................22

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Rohler* v. *Rolls-Royce N. Am., Inc.*,
  2014 WL 3405872 (S.D. Ind. July 11, 2014).........................................................28

*Rumain* v. *Baruch College of City Univ. of N.Y.*,
  2009 WL 2905445 (S.D.N.Y. Sept. 2, 2009)............................................................7

*Schiano* v. *Quality Payroll Systems, Inc.*,
  445 F.3d 597 (2d Cir. 2006)......................................................................................3

*Schlaifer Nance & Co.* v. *Warhol*,
  7 F. Supp. 2d 364 (S.D.N.Y. 1998) .......................................................................35

*Schupbach* v. *Shinseki*,
  905 F. Supp. 2d 422 (E.D.N.Y. 2012) .....................................................................6

*Shimanova* v. *TheraCare of New York, Inc.*,
  2017 WL 980342 (S.D.N.Y. Mar. 10, 2017) .........................................................15

*Smith* v. *Lightning Bolt Prods., Inc.*,
  861 F.2d 363 (2d Cir. 1988)....................................................................................39

*Sommers-Wilson* v. *Samsung SDI America, Inc.*,
  2018 WL 8804163 (E.D. Mich. Dec. 27, 2018) .....................................................29

*Sotomayor* v. *City of New York*,
  862 F. Supp. 2d 226 (E.D.N.Y. 2012) .....................................................................2

*Sprint/United Mgmt. Co.* v. *Mendelsohn*,
  552 U.S. 379 (2008)......................................................................................14, 15, 16

*Spruill* v. *Winner Ford of Dover, Ltd.*,
  175 F.R.D. 194 (D. Del. 1997) ...............................................................................24

*Swartz* v. *Wabash Nat. Corp.*,
  674 F. Supp. 2d 1051 (N.D. Ind. 2009) .................................................................28

*Targonski* v. *City of Oak Ridge*,
  921 F. Supp. 2d 820 (E.D. Tenn. 2013)..................................................................24

*Uzhca* v. *Wal-Mart Stores, Inc.*,
  2023 WL 2529186 (S.D.N.Y. Mar. 15, 2023) ........................................................38

*Vasbinder* v. *Ambach*,
  926 F.2d 1333 (2d Cir. 1991)............................................................................37, 38

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Vereen* v. *City of New Haven,*
2018 WL 6069098 (D. Conn. Nov. 20, 2018) ........................................................................11

*Washington* v. *City of New York,*
2009 WL 1585947 (S.D.N.Y. June 5, 2009) ..........................................................................22

*Wasilewski* v. *Abel Womack, Inc,*
2016 WL 183471 (D. Conn. Jan. 14, 2016)............................................................................22

*Wechsler* v. *Hunt Health Sys., Ltd.,*
2003 WL 21998980 (S.D.N.Y. Aug. 22, 2003)........................................................................1

*Weiss* v. *La Suisse, Societe D'Assurances Sur La Vie,*
293 F. Supp. 2d 397 (S.D.N.Y. 2003)................................................................................4, 9

*Wise* v. *Consol. Edison Co. of NY,*
282 A.D.2d 335 (N.Y. 2001) ................................................................................................32

*Zann Kwan* v. *Andalex Group LLC,*
737 F.3d 834 (2d Cir. 2013)....................................................................................2, 13, 27

*Zubulake* v. *UBS Warburg LLC,*
382 F. Supp. 2d 536 (S.D.N.Y. 2005)..........................................................................11, 12

**Other Authorities**

1 McCormick On Evid. § 186 (8th ed.) .................................................................................13

Fed. R. Evid. 401 ..............................................................................................................2, 9, 29

Fed. R. Evid. 402 ...............................................................................................................2, 22

Fed. R. Evid. 403 ................................................................................................................. *passim*

Fed. R. Evid. 404 ................................................................................................................. *passim*

Fed. R. Evid. 801 ................................................................................................................21, 22

Fed. R. Evid. 802 ......................................................................................................................1

NYSBA Rules of Professional Conduct R. 1.6 ...................................................................32

Pursuant to the Court's July 5, 2023 Order (ECF No. 320), Defendants respectfully submit their omnibus motions in limine ("MIL") to exclude evidence, testimony, or argument, as set forth below.

As required by the Court's July 5, 2023 Order, Defendants provided Plaintiff with the topics of MIL Nos. 1–8 on August 17, 2023, and met and conferred with Plaintiff on August 24, 2023. Following Defendants' review of Plaintiff's pretrial submissions, Defendants advised Plaintiff on September 12, 2023 of their intent to file MIL No. 9. The parties were not able to reach agreement on any of the topics on which Defendants move in limine.

## LEGAL STANDARD

"The purpose of a motion in limine is to facilitate an efficient trial 'by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Pavone* v. *Puglisi*, 2013 WL 245745, at *1 (S.D.N.Y. Jan. 23, 2013) (quoting *Palmieri* v. *Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)); *see also Wechsler* v. *Hunt Health Sys., Ltd.*, 2003 WL 21998980, at *2 (S.D.N.Y. Aug. 22, 2003). "A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P.* v. *Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008). Further, court rulings on motions in limine are "subject to change when the case unfolds." *United States* v. *Paredes*, 176 F. Supp. 2d 195, 197 (S.D.N.Y. 2001) (quoting *Luce* v. *United States*, 469 U.S. 38, 41, n.4 (1984)).

## ARGUMENT

### MIL NO. 1 TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT RELATING TO THE DISMISSED DISCRIMINATION CLAIMS

The Court should preclude Plaintiff from presenting evidence or testimony that relates to his dismissed discrimination claims, principally, evidence relating to alleged comparators and

statistical or quantitative evidence regarding other Black or minority associates at Davis Polk. The Court should also exclude evidence intended to corroborate Cardwell's discrimination claims, such as articles concerning the legal profession and implicit bias or diversity or the lack thereof, *see, e.g.*, PTX107[1] ("Adam Grant and Sheryl Sandberg on Discrimination at Work"); PTX137 (CARDWELL005593, The American Lawyer, What's Wrong With This Picture?), and should preclude documentary or testimonial evidence purporting to relate to such alleged discrimination. That is not to say that Defendants are seeking to exclude testimony from Cardwell or other evidence attempting to prove that Cardwell engaged in the protected activity that remains in the case post-summary judgment, but to the extent the Court has previously ruled as a matter of law or in connection with summary judgment that Cardwell's alleged discrimination claims failed, testimony or other evidence relating to such dismissed claims plainly should not be admitted.

**Relevance**: For evidence to be relevant, it must relate to a "fact . . . of consequence in determining the action." Fed. R. Evid. 401(b). "Evidence that is not relevant is not admissible." *Chamilco* v. *Wild Edibles, Inc.*, 2017 WL 11567936, at *1 (S.D.N.Y. Dec. 1, 2017) (citations omitted); Fed. R. Evid. 402.

To prove retaliation, Plaintiff must show "1) participation in a protected activity; 2) the defendant's knowledge of the protected activity; 3) an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action." *Zann Kwan* v. *Andalex Group LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (citations and internal quotations omitted).[2]

---

[1]   Citations to "PTX" refer to Plaintiff's Exhibits List, as provided to Defendants on September 5, 2023, and which is due to be submitted to the Court with the joint pretrial order and copies of the exhibits on September 22, 2023.

[2]   The elements of Plaintiff's retaliation claims are all essentially the same, and the differences between the federal and state law claims on the one hand, and city law claim, on the other hand, do not change the analysis applicable to this motion in limine. *See, e.g., Zann Kwan*, 737 F.3d at 843; *Sotomayor* v. *City of New York*, 862 F. Supp. 2d 226, 262 (E.D.N.Y. 2012) (noting that the "essential elements of a retaliation claim under the NYCHRL are the same" as under Title VII and the NYSHRL); *Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) ("[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took

While "some background evidence concerning the circumstances and complaints of discrimination leading to Plaintiff's protected activity" may be admitted for context, the discrimination claims are not to be tried and thus evidence tending to prove the alleged underlying discrimination is irrelevant. *Orsaio* v. *N.Y. State Dep't of Corr. & Cmty. Supervision*, 2022 WL 351827, at *3 (N.D.N.Y. Jan. 14, 2022), *aff'd*, 2023 WL 3410554 (2d Cir. May 12, 2023). "Evidence having the singular purpose of proving the truth of the underlying discrimination is . . . presumptively irrelevant to [Plaintiff's] retaliation claims." *Perez* v. *Consol. Edison Corp. of N.Y.*, 2008 WL 194615, at *1 (S.D.N.Y. Jan. 23, 2008) (excluding evidence "which solely proves one of the dismissed claims"). That is because, here, the "relevant inquiry . . . must focus on the retaliation" Plaintiff allegedly suffered for complaining about alleged discrimination, not the alleged discrimination itself. *Schiano* v. *Quality Payroll Systems, Inc.*, 445 F.3d 597, 609 (2d Cir. 2006).

Courts routinely exclude evidence related to dismissed claims on a motion in limine. *Gorbea* v. *Verizon New York, Inc.*, 2014 WL 2916964, at *2 (E.D.N.Y. June 25, 2014) ("[C]laims that were dismissed or determined by summary judgment . . . may not be tried, and evidence relating thereto may not be introduced at trial."). In *Gorbea*, the court granted summary judgment in favor of the defendant on the plaintiff's ADA claims based on her asthma, and evidence related thereto was therefore irrelevant to the claims to be tried. *Id.* Likewise, in *Hannah* v. *Wal-Mart Stores*, *Inc.*, the court excluded from trial evidence pertaining solely to dismissed discrimination claims because it is not proper to "re-try issues before a jury that have already been dismissed on summary judgment." 2017 WL 690179, at *2 (D. Conn. Feb. 21, 2017), *aff'd*, 803 F. App'x 417 (2d Cir. 2020) ("Where claims have been dismissed on summary judgment . . . it is generally

---

an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." (citations omitted)).

appropriate to preclude testimony or evidence regarding those same previously dismissed claims during a jury trial.").  Accordingly, the following specific evidence should be excluded:

*Purported Comparators*.  Evidence related to purported comparators is not relevant to Plaintiff's remaining retaliation claims.  In this case, Plaintiff tried "to support his discrimination claims by relying on five purported comparators."  ECF 305 at 38.  The Court has concluded that "no reasonable juror could conclude that Cardwell was similarly situated to the purported comparators."  *Id.* at 40.  As such, any evidence regarding purported comparators has no relevance to his retaliation claims where the Court has already determined that Cardwell's purported comparators were not similarly situated as a matter of law, and dismissed the discrimination claims in full based on the evidence Plaintiff presented on summary judgment.  Further, because Cardwell failed to adduce any evidence at the summary judgment stage "that he was similarly situated in all material respects to the purported comparators," *id.* at 39, he cannot now attempt to offer evidence regarding the alleged comparators at the trial stage.  *Cf. Weiss* v. *La Suisse, Societe D'Assurances Sur La Vie*, 293 F. Supp. 2d 397, 408 (S.D.N.Y. 2003) ("A party cannot withhold evidence in his possession when his opponent makes a motion for summary judgment and then introduce the missing evidence at trial."); *In re Food Fair, Inc.*, 14 B.R. 46, 48 (Bankr. S.D.N.Y. 1981) ("[I]n opposing a motion for summary judgment a party[] cannot withhold evidence until the date of trial but must show by some admissible evidence that there is a genuine issue as to a material fact.").  Notwithstanding this Court's ruling and the irrelevance of any alleged comparator to his remaining retaliation claims, Cardwell's deposition designations include testimony relating solely to his alleged comparators, *e.g.*, Birnbaum Tr. 308:16–331:2, and his trial exhibit list includes nearly 100 exhibits reflecting performance reviews for the alleged comparators, *see* PTX520–618 (performance reviews for alleged comparators).

*Quantitative or "Statistical" Evidence.*  In his Third Amended Complaint, Plaintiff alleged that "approximately 87% of Davis Polk's partners are White, 81% of Davis Polk's partners are men, and less than 1% of Davis Polk's partners are Black" and that "[i]n the Summer of 2013, Davis Polk had between 125 and 140 partners and just one Black partner."  ECF 200, ¶¶ 6, 38. Plaintiff referred to himself as "his class's only Black male associate."  *Id.* ¶ 317.   During depositions, Plaintiff's counsel posed questions in which he referred to Plaintiff as "one of the few black associates at DPW."  *See, e.g.*, Crane Tr. 193:2–9; DeSantis Tr. 146:5–16.   In opposing Defendants' motion for summary judgment, Plaintiff argued that this "[s]tatistical evidence can also support an inference of racial discrimination."  ECF 270 at 43.   He pointed to deposition testimony from one former Davis Polk partner that "she had not worked with other Black senior capital markets associates or partners," and argued that "the Firm's partnership was over 99% non-Black, and 100% of its M&A partners were non-Black."  *Id.* at 45.[3]  Plaintiff's proposed stipulated facts similarly included a reference to the number of African American or Black partners at the Firm as of August 31, 2013.  None of this evidence, or any evidence regarding the number of Black attorneys at Davis Polk, is relevant to Plaintiff's retaliation claims.

This Court explained that such "statistical" evidence was not even probative of the dismissed discrimination claims: "Cardwell's general allegations regarding the low percentage of Black attorneys at the Firm are by themselves insufficient to raise a genuine issue of fact that any of Davis Polk's alleged adverse employment actions were motivated by Cardwell's race."  ECF 305 at 43.  The Court also explained that "Cardwell's data, moreover, can only be described as 'statistics' in the most generous sense" and that Cardwell failed to "run any analysis with the data

---

[3]  Plaintiff included many similar "statistics" in his Counter Statement of Facts under Rule 56.1.  *See, e.g.*, ECF 262, ¶¶ 342, 345.

provided . . . or otherwise place the raw numbers he collects in any meaningful context." *Id.* at 43 n.11.  The Court therefore noted that his numerical data was "particularly ill-suited to raising, by itself, an inference of discrimination." *Id.*

With his discrimination claims dismissed, evidence about the number of Black attorneys at the firm has no relevance to the retaliation claims to be tried; it does not on its own show that Cardwell engaged in any protected activity, that Defendants knew of any such activity, or that any Defendant retaliated against Plaintiff because of that protected activity. *See*, *e.g.*, *Schupbach* v. *Shinseki*, 905 F. Supp. 2d 422, 437 (E.D.N.Y. 2012) (concluding that "as with the statistics on the race discrimination claims[,]these grossly incomplete statistics, and the speculative and unsupported interpretations that plaintiff would like the jury to draw therefrom, do not permit a rational inference of retaliation").  Similarly, evidence about diversity or the lack thereof in the legal profession *as a whole* has no relevance to Plaintiff's retaliation claims. *See, e.g.*, PTX137 (CARDWELL005593, The American Lawyer, What's Wrong With This Picture?); PTX138 (DPW_SDNY-000143584, Davis Polk NALP Profile).

**FRE 403**:  Evidence pertaining to dismissed claims should be excluded separately under Rule 403 because it would confuse the issues, mislead the jury, and unfairly prejudice Defendants. *Benzinger* v. *Lukoil Pan Ams., LLC*, 2021 WL 431169, at *6 (S.D.N.Y. Feb. 8, 2021) (granting motion in limine as to evidence related to dismissed claim of discrimination because "reference before the jury to [Plaintiff's] dismissed claims would risk causing substantial confusion as to the issues to be tried").  For example, in *Orsaio*, the court excluded evidence of the plaintiff's dismissed discrimination claims as unduly prejudicial because "any minimal probative value is substantially outweighed by the danger of confusing discrimination, which need not be proved, with retaliation, the claim at issue."  2022 WL 351827, at *4.  The court found that the evidence

"will not aid the jury in determining whether Defendant retaliated against her for complaining about this alleged discriminatory act and distracts from the central issue," and "any probative value is substantially outweighed by the danger of confusing the issues and misleading the jury." *Id.*; *see also Rumain* v. *Baruch College of City Univ. of N.Y.*, 2009 WL 2905445, at *2 (S.D.N.Y. Sept. 2, 2009) (permitting plaintiff to testify only to "the fact of her bringing a prior action, a general statement of the nature of the claims asserted, the length of time the action was pending, the outcome of the action and any special circumstances arising in the course of the prior action which would give rise to retaliatory animus," while excluding evidence "tending to prove the merits of the prior" discrimination claim under Rule 403).

Among other things, the jury must determine whether Plaintiff was terminated for legitimate, non-discriminatory reasons—that his performance over time was inconsistent, uneven, and, in several instances, quite poor.  Evidence about alleged comparators, whom this Court already determined were not similarly situated to Cardwell in all material respects, will only serve to confuse the jury and waste time.  Cardwell's out-of-context numerical evidence will also unduly prejudice Defendants, as his "statistics" do not "control for differences in Black representation among law school graduates, investigate the patterns of Black associate hiring or retention compared with non-minority lawyers, [or] control for 'pull' factors such as the marketability of successful Black Davis Polk associates to in-house or other opportunities."  ECF 305 at 43 n.11. The only purpose for seeking to admit this evidence is to suggest to the jury that Black associates make up a small percent of an overall associate class supposedly because of discriminatory or retaliatory practices.  In other words, the purpose of any such evidence is to "inflame the passion of the jury . . . or inappropriately lead the jury to render a decision on the basis of conduct not at

issue." *Dooley* v. *Columbia Presbyterian Med. Ctr.*, 2009 WL 2381331, at *1 (S.D.N.Y. July 29, 2009) (citation omitted).

Accordingly, Plaintiff should be precluded from offering documentary or testimonial evidence that supports his dismissed discrimination claims, including (but not limited to) comparator evidence and quantitative or "statistical" evidence.  However, Defendants do not seek to preclude testimony from Plaintiff himself regarding the alleged protected activities that survived Defendants' motion to dismiss and underlie his remaining retaliation claims.

**MIL NO. 2** **TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING THE ALLEGED RETALIATORY ACTS THAT THIS COURT DISMISSED**

The Court should preclude Plaintiff from arguing that the alleged adverse employment actions that this Court previously dismissed on summary judgment in fact constitute adverse employment actions and presenting evidence in support of such arguments.  Such arguments and evidence are irrelevant, would confuse the jury, and are unfairly prejudicial.

Plaintiff put forward "eleven purported adverse actions" in support of his retaliation claims. ECF 305 at 60.[4]  The Court held that half of those purported adverse actions failed as a matter of law or as a matter of fact.  Specifically, the Court found that none of the following constituted adverse employment actions:

- William Chudd's November 2015 summary review form, and Sophia Hudson's June 2016 and September 2016 performance reviews of Cardwell "cannot constitute retaliation" because "Cardwell has failed to show that" either Chudd or

---

[4]     As the Court described them, Cardwell's eleven purported adverse actions were: "(1) reductions in his billable hours and being staffed on inappropriate matters, (2) his termination, (3) Chudd's November 2015 summary review form, (4) Hudson's 2016 'behind' reviews, (5) Bick's June 2016 mid-year review, (6) increased scrutiny and placement on a 'low' performers list, (7) Reid's March 2017 comment about taking Cardwell off the field, (8) revocation of Cardwell's Career Advisor mentorship, (9) negative post-EEOC 2017 reviews and Cardwell's annual review meeting in January 2018, (10) Davis Polk's NYSDHR brief, and (11) revocation of Cardwell's membership with the Firm's Alumni Network."  ECF 305 at 60.  While alleged adverse actions 1, 2, 5, 6, and 9 remain to be tried (and 7, but only as part of a pretext analysis), Defendants do not concede that any of them other than Cardwell's termination in fact constitute adverse employment actions.

Hudson "had any knowledge of any protected activity or that anyone with such knowledge influenced" their reviews.  *Id.* at 61.

- As to Davis Polk's answer to Cardwell's charge of discrimination that it filed with the NYSDHR, the Court determined that no reasonable jury could find that the filing constituted an adverse employment action, and "it was not inappropriate for Defendants to defend themselves." *Id.* at 61 & n.15.[5]

- Revocation of the "Career Advisor mentorship" program was not an adverse action because the evidence "simply does not support [Cardwell's] characterization." *Id.* at 61.

- Revocation of membership in Davis Polk's alumni network was not an adverse employment action, because Plaintiff did not plead it in any complaint. *Id.* at 62.

- Further, Reid's alleged comment that Plaintiff would be "out of the game" was not "an independent adverse action," but rather could only be "considered . . . as part of the pretext analysis for other adverse actions." *Id.* at 62–63.

Accordingly, evidence or argument that contradicts these holdings should be excluded.

**Relevance**:  Any argument or characterization that the events outlined above constitute adverse employment actions should be excluded because the Court's order on summary judgment has rendered them irrelevant, as they are no longer facts "of consequence in determining the action." Fed. R. Evid. 401; *Hannah*, 2017 WL 690179, at *2 ("Where claims have been dismissed on summary judgment . . . it is generally appropriate to preclude testimony or evidence regarding those same previously dismissed claims during a jury trial.").  For example, in deciding the defendant's summary judgment motion in *Weiss*, the court "held that because the Plaintiffs had adduced no evidence about similarly situated persons, it had raised no disputed issue of material fact on this particular theory." 293 F. Supp. 2d at 408.  The court therefore held that the plaintiffs "forfeited the right to take the case to trial on that theory." *Id.* ("A party cannot withhold evidence in his possession when his opponent makes a motion for summary judgment and then introduce the missing evidence at trial."); *see also Rhee-Karn* v. *Lask*, 2023 WL 4238908, at *2 (S.D.N.Y.

---

[5]    *See also* MIL 6, which further addresses Davis Polk's answer to Plaintiff's EEOC charges.

June 28, 2023) ("Plaintiff is precluded from making any argument or presenting any evidence" as to claims dismissed on summary judgment, which were "moot and entirely irrelevant to the damages issues before the Court.").  Because this Court has already concluded that Cardwell failed to adduce evidence to show that the above-referenced actions are themselves adverse employment actions, Cardwell should be precluded from arguing that they in fact constitute adverse employment actions and presenting evidence in support of such arguments.

**FRE 403**:  Argument relating to the dismissed adverse employment actions would also be unfairly prejudicial to Defendants, confuse the jury, and waste time.  "In making a Rule 403 determination, courts should ask whether the evidence's proper value is more than matched by the possibility that it will divert the jury from the facts which should control their verdict." *Ridge* v. *Davis*, 2022 WL 16737299, at *2 (S.D.N.Y. Nov. 7, 2022) (citation omitted).  Here, argument regarding the dismissed purported adverse employment actions will turn the jury toward events that, according to the law of this case, cannot be used to support a finding of retaliation.  Further, the admission of such evidence would cause Defendants to relitigate the circumstances surrounding actions that this Court already determined could not be used to support Cardwell's claims, causing undue prejudice to Defendants.  *See*, *e.g.*, *Foley* v. *Town of Marlborough*, 2023 WL 122040, at *3 (D. Conn. Jan. 6, 2023) (concluding that the defendants would be prejudiced by having "to address issues that have already been decided" on summary judgment); *Orsaio*, 2022 WL 351827, at *4 (evidence to corroborate dismissed discrimination claims "likely inadmissible on the ground that any minimal probative value is substantially outweighed by the danger of confusing discrimination, which need not be proved, with retaliation, the claim at issue").

Accordingly, the Court should preclude Plaintiff from introducing documentary or testimonial evidence in support of an argument that the dismissed adverse employment actions in

fact were adverse employment actions, as they are not probative of his remaining claims and would unduly confuse the jury and prejudice Defendants.

## **MIL NO. 3** TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT OF PLAINTIFF'S GOOD OR MORAL CHARACTER

The Court should preclude Plaintiff from introducing testimony and evidence regarding his "moral" or "good" character, which is not an element of, or probative evidence of, any element of Plaintiff's retaliation claims.  It should also be excluded under Rule 403.

Rule 404(a) provides: "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1).  In other words, character evidence is only admissible if that evidence is specifically related to an element of a claim or defense—not for other purposes.  *See Zubulake* v. *UBS Warburg LLC.*, 382 F. Supp. 2d 536, 541 (S.D.N.Y. 2005) ("Because this is an employment discrimination case, plaintiff's character is not in issue, either as an essential element of a claim or defense.").[6]

**Relevance**:  Evidence regarding Cardwell's "moral" or "good" character has no relevance to his remaining retaliation claims and therefore should be excluded.  When Defendants asked Plaintiff to stipulate that he would not offer opinion evidence of Plaintiff's "good" character, Plaintiff refused, thus suggesting he intends to offer some undisclosed evidence of his good character, including in the form of character witnesses.  Plaintiff's proposed submissions to the Court further evidence his intent to introduce "good" character evidence at trial.  For example, the proposed stipulated facts that Plaintiff exchanged with Defendants on September 12, 2023

---

[6]     Of course, evidence of Plaintiff's job performance at Davis Polk—whether good or bad—is admissible.  Even if it is sometimes regarded as character evidence, which Defendants do not concede, "Plaintiff opened the door to this evidence by bringing a claim for retaliation, which allows that Defendant may provide a 'legitimate, non-retaliatory reason' for suspending Plaintiff."  *Vereen* v. *City of New Haven*, 2018 WL 6069098, at *3 (D. Conn. Nov. 20, 2018) (citing *Jute* v. *Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)).

contained an excerpt from a letter written by "[a] senior Black associate of the Firm...to a third party" highlighting Cardwell's "ability to connect people to actionable ideas," "exhibit[] leadership among more senior attorneys and partners," and relationship to the author as a "go-to person for key decision points, whether I'm considering navigating the politics of potential partnership consideration or troubleshooting ways to get better to ensure the success of our diverse peers." This letter does not speak to Cardwell's job performance at Davis Polk and is therefore an example of the "good" character evidence—wholly irrelevant to the claims in this case—that Plaintiff seeks to introduce at trial.

Courts routinely hold that evidence of or argument about a party's "good" or "moral" character should be excluded as irrelevant in employment cases. *See, e.g., E.E.O.C.* v. *HBE Corp.*, 135 F.3d 543, 553–54 (8th Cir. 1998) ("[C]haracter was not an essential element of his retaliatory discharge claim."); *Mugavero* v. *Arms Acres, Inc.*, 2009 WL 1904548, at *4 (S.D.N.Y. July 1, 2009) (noting that "general opinion, based on 'subjective impressions,'" of party's character would be inadmissible in an employment case); *Zubulake*, 382 F. Supp. 2d at 541 ("Because this is an employment discrimination case, plaintiff's character is not in issue, either as an essential element of a claim or defense."); *Neuren* v. *Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1511 (D.C. Cir. 1995) (rejecting the admission of character evidence because the relevant "defense [wa]s based on [the plaintiff]'s *behavior* at the firm, not her character. Consequently, her character was not 'in issue'" (emphasis in original)); *Feighan* v. *Res. Sys. Grp. Inc.*, 2023 WL 4623123, at *9 (D.D.C. July 19, 2023) (rejecting party's attempt in discrimination case to elicit evidence about its good character because character was "not at issue in [the] case"); *Keene* v. *Sears, Roebuck & Co.*, 2007 WL 2572366, at *1 (D.N.J. Sept. 4, 2007) (rejecting plaintiff's attempt to introduce good character evidence because character "is not an essential element of an employment discrimination

claim").   Non-performance based opinions regarding Cardwell's "pleasant" demeanor are similarly irrelevant to the ultimate issue—Cardwell's job performance and the legitimate, non-retaliatory basis for his termination.

**FRE 403**:   Character evidence should also be excluded under Rule 403 as unduly prejudicial and likely to confuse or mislead the jury.  The only purpose for seeking to admit this evidence is to "inflame the passion of the jury . . . or inappropriately lead the jury to [render a decision] on the basis of conduct not at issue." *Dooley*, 2009 WL 2381331, at *1 (alteration in original); 1 McCormick On Evid. § 186 (8th ed. 2022) (character evidence generally not admissible because "jurors may regard personality traits as more predictive of individual behavior than they actually are," and reputation or opinion evidence of character has the "tendency to arouse undue prejudice, to confuse and distract, and to raise time-consuming side issues").  The focus in a retaliation case is on the *defendants'* state of mind.  *See Zann Kwan*, 737 F.3d at 844.  Reputation or opinion testimony regarding Plaintiff's "good" or "moral" character would only serve to confuse the issues and mislead the jury.

## MIL NO. 4 TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT RELATED TO OTHER ALLEGED "BAD ACTS" OF DEFENDANTS

The Court should preclude Plaintiff from introducing evidence or testimony of alleged other "bad acts" of discrimination or retaliation by any Defendant, or that any other current or former Black, minority, or otherwise diverse Davis Polk employee was discriminated or retaliated against by any Defendant.  Thirty-two of the 38 individuals listed on Plaintiff's witness list (including 29 who he asserts he "will call" at trial) are expected to testify about "discrimination and retaliation committed at Davis Polk [and] complaints and/or allegations of discrimination, retaliation, or other misconduct made by current or former employees of Defendants."  Plaintiff has also indicated he intends to offer into evidence certain filings from an entirely unrelated (and

dismissed) matter, *Martinez* v. *Davis Polk & Wardwell LLP* (E.D.N.Y. No. 1:14-cv-03741), which involved claims brought by a non-attorney employee of the Firm that were dismissed by the court on summary judgment.   Specifically, Plaintiff seeks to admit the Complaint and Amended Complaint filed in that action, the unrelated plaintiff's EEOC charge and notice of right to sue letter, the briefing on defendants' motion for summary judgment, and that court's order granting defendants' motion.   *See* PTX28–36 (Case 1:14-cv-03741, ECF Nos. 1, 10, 70, 71, 76, 76-1, 76-2, 79, 81).   This, and any other evidence related to allegations of discrimination asserted by current or former employees of Davis Polk, should be excluded.

Evidence or testimony concerning alleged claims or experiences of other current or former Davis Polk employees would not assist the jury in evaluating the merits of Plaintiff's retaliation claims, and would unfairly prejudice Defendants, mislead the jury, confuse the issues, and cause undue delay.   Additionally, the purpose of Plaintiff introducing other evidence of wrongdoing would be to show that Defendants acted similarly here, but such propensity evidence is improper.

**Relevance**:   Other acts evidence is probative only if there is a sufficient similarity in circumstances between plaintiff and the other employees.   *See*, *e.g.*, *United States* v. *Mostafa*, 16 F. Supp. 3d 236, 252 (S.D.N.Y. 2014) ("To be relevant, the other act must be sufficiently similar to the conduct at issue to permit the jury reasonably to draw an inference from the act that the state of mind of the actor is as the proponent of the evidence asserts."); *Martinelli* v. *Penn Millers Ins. Co.*, 2007 WL 9759057, at *6 (M.D. Pa. Mar. 19, 2007) (holding that district court's exclusion of other acts evidence was appropriate where the other acts evidence concerned an employee with a different job title, who performed different functions, and departed on different terms than plaintiff); *see also Sprint/United Mgmt. Co.* v. *Mendelsohn*, 552 U.S. 379, 388 (2008) (holding that whether "me too" evidence has relevance to a case involves a fact-based determination that

"depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case").

Under Rule 404(b), "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(b)(1).  Even if Plaintiff were able show some similarity between any "other acts" evidence and the retaliation claim at issue here, the only purpose of such evidence would be to demonstrate Defendants' propensity to act in a certain way, which is impermissible.  *Becker* v. *ARCO Chem. Co.*, 207 F.3d 176, 191–92 (3d Cir. 2000) (other acts evidence was simply "not relevant on the issue of whether [defendant] discriminated against [plaintiff] absent the inference that [defendant] had a propensity to act in a certain way, and that in firing [plaintiff], it acted in conformity with its prior conduct" and was therefore not admissible); *Government of the Virgin Islands* v. *Pinney*, 967 F.2d 912, 915 (3d Cir. 1992) (In order for such evidence to be admissible "under Rule 404(b), a court must be able to articulate a way in which the tendered evidence logically tends to establish or refute a material fact in issue, and that chain of logic must include no link involving an inference that a bad person is disposed to do bad acts").  As such, even if Plaintiff were able to show certain similarities between his alleged experience and the experiences of other current or former Davis Polk employees, any such evidence regarding those other experiences would be offered for an improper purpose—to show propensity.

In employment discrimination or retaliation cases, courts in this district therefore require that evidence of other acts of retaliation or discrimination be "closely related . . . to the plaintiff's circumstances and theory of the case."  *See, e.g.*, *Shimanova* v. *TheraCare of New York, Inc.*, 2017 WL 980342, at *5 (S.D.N.Y. Mar. 10, 2017) (quoting *Sprint/United Mgmt. Co.*, 552 U.S. at 388).  The Supreme Court has recognized that the relevance of other acts evidence "is fact based and

depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Sprint/United Mgt. Co.*, 552 U.S. at 388.  Elaborating further, courts have identified a number of factors that should be considered when determining the admissibility of other acts or "me too" evidence:

> 1) Whether the evidence is logically or reasonably tied to the decision made with respect to the plaintiff; 2) Whether the same 'bad actors' were involved in the 'other' conduct and in the challenged conduct; 3) Whether the other acts and the challenged conduct were in close temporal and geographic proximity; 4) Whether decision makers within the organization knew of the decisions of others; 5) Whether the other affected employees and the plaintiff were similarly situated; and 6) The nature of the employees' allegations.

*Dotson* v. *City of Syracuse*, 2019 WL 6337326, at *3–4 (N.D.N.Y. Nov. 27, 2019).

Applying this standard, courts routinely exclude "other acts" evidence where, as here, there is no sufficient nexus or similarity between the other acts and the claims at issue.  *See, e.g.*, *Henry* v. *Wyeth Pharms., Inc.*, 2008 WL 294443, at *1 (S.D.N.Y. Jan. 29, 2008), *aff'd*, 616 F.3d 134 (2d Cir. 2010) (excluding "evidence of racial discrimination against other employees of defendant . . . by decision makers different from those responsible for preparing performance reports and/or making recommendations or decisions relating to plaintiff's job assignments or promotions"); *Hayne* v. *Rutgers, State Univ.*, 1989 WL 106031, at *15–16 (D.N.J. Aug. 10, 1989) (excluding evidence in gender discrimination case regarding the failure to promote three other female professors who taught in other academic departments because those departments had different priorities, the professors were evaluated by different individuals, and two of the professors never applied for tenure); *see also Alfano* v. *Costello*, 294 F.3d 365, 377 (2d Cir. 2002) ("It is . . . important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination . . . otherwise federal courts will become a court of personnel appeals.").

16

Here, the other acts allegations that Plaintiff seeks to admit—pulled from the dismissed case *Martinez* v. *Davis Polk & Wardwell LLP*—bear virtually no similarities to Plaintiff's claims, beyond the fact that both contain allegations of racial discrimination and retaliation.  In *Martinez*, the plaintiff was a legal secretary and later held a non-management position in the business development department.  *Martinez* v. *Davis Polk & Wardwell LLP*, 208 F. Supp. 3d 480, 484 (E.D.N.Y. 2016), *aff'd*, 713 F. App'x 53 (2d Cir. 2017).  As such, Martinez would not have been subject to the any of the same systems of review, evaluation, promotion, or compensation as Cardwell.  Moreover, Martinez, a non-lawyer who appears to have been primarily responsible for maintaining the firm's public website, had substantially different responsibilities than Cardwell. Martinez's claims also concern a different period of time than Cardwell (roughly 1995–2013) and do not concern any of the same individuals, or even the same departments, Cardwell alleges to have been involved in the acts giving rise to his claims.  Furthermore, Martinez's retaliation claims do not involve allegations of retaliatory termination (she was not terminated), but instead allege that she received a "lower-than-usual raise" in retaliation.  *Id.* at 485.  As such, the allegations asserted in *Martinez* are in no way "sufficiently similar" to the allegations at issue in the instant action to permit the jury to reasonably draw an inference about the state of mind of the actors here. *See, e.g.*, *Henry*, 2008 WL 294443, at *1; *Hayne*, 1989 WL 106031, at *15-16; *Martinelli*, 2007 WL 9759057, at *6.  In addition to the above, Martinez's claims ***were dismissed***.  *Martinez*, 208 F. Supp. 3d 480 (dismissing all claims on summary judgment); *Martinez*, 713 F. App'x 53 (affirming district court's dismissal of all claims).

More broadly, allegations of discrimination or retaliation against other employees would not allow the jury to reasonably infer whether Defendants retaliated *against Plaintiff*.  Nor would alleged "bad acts" committed by other current or former partners of or decisionmakers at Davis

Polk bear upon the state of mind of Defendants here.  As such, any evidence related to other alleged "bad acts" by Defendants, including any evidence related to *Martinez*, should be excluded.

No exception under Rule 404(b) applies.  To the extent "other acts" evidence is ever admissible, it is only to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  Evidence regarding someone else's experience would not shed light on the motive or intent of Defendants in terminating Plaintiff.  *See Mugavero*, 2009 WL 1904548, at *9 (excluding evidence of "other allegedly retaliatory incidents" where there was no evidence that the same individuals were involved, because such incidents were, as a result, not "probative of retaliatory intent"); *Alfano*, 294 F.3d at 378 (evidence of an actor's discriminatory motivation can taint that actor's otherwise neutral actions, but not neutral actions of other actors); *Martinelli*, 2007 WL 9759057, at *6  ("[T]he experiences of [plaintiff] and [another female former employee] could not easily be compared in order to discern a discriminatory intent on the part of [defendant]."); *see also United States* v. *Aminy*, 15 F.3d 258, 260 (2d Cir. 1994) ("[E]vidence of another act should not be admitted as proof of the defendant's knowledge or intent unless the other act is 'sufficiently similar to the conduct at issue….'").

**FRE 403**:  This type of other acts evidence should separately be excluded as unfairly prejudicial to Defendants, likely to mislead the jury and confuse the issues, and likely to cause undue delay.  *See* Fed. R. Evid. 403; *United States* v. *Mayans*, 17 F.3d 1174, 1183 (9th Cir. 1994) (noting the "specific[] incorporati[on of] Rule 403's probative value/unfair prejudice balancing requirement into the Rule 404(b) inquiry"); *DeAngelis* v. *City of Bridgeport*, 2018 WL 429156, at *1 (D. Conn. Jan. 15, 2018) (noting that "me too" evidence raises a concern about unfair prejudice, confusion of the issues, and undue delay).

Allegations of other acts against other employees or by other Davis Polk employees who are not Defendants, and which Plaintiff has to date not specified, are unfairly prejudicial and likely to confuse the jury. *Manuel* v. *City of Chicago*, 335 F.3d 592, 597 (7th Cir. 2003) (affirming district court's exclusion of other acts evidence because labeling the defendant "a 'racist' had the potential of being unfairly prejudicial"); *Richmond* v. *Gen. Nutrition Ctrs. Inc.*, 2012 WL 762307, at *9 (S.D.N.Y. Mar. 9, 2012) (precluding the introduction of documents reflecting other employees' allegations of discrimination because it created "the risk of unfair prejudice and confusion"). Injecting this trial with allegations or purported evidence of "bad acts" against others risks confusing the jury, creating significant inefficiencies and prejudicing Defendants, rather than retaining the focus on Plaintiff's specific claims as to himself. This is precisely the type of unfair prejudice and confusion of the issues that Rule 403 seeks to avoid. *See DeAngelis*, 2018 WL 429156, at *2 ("[W]hen a court evaluates the admissibility of 'me too' evidence, it should be vigilant to the risk that a plaintiff—by seeking to inject a trial with evidence of wrongful acts against others—may effectively seek to put an employer or supervisors on trial for presiding over a generally toxic or dysfunctional workplace, rather than on trial for acts of illegal discrimination or retaliation").

Moreover, allegations of wrongdoing towards other employees are only probative to the extent they are both true and factually similar to Plaintiff's claim. If Plaintiff is permitted to introduce other employees' allegations of wrongdoing, Defendants will have to respond with evidence—including potentially calling witnesses and introducing documents—to rebut the notion that the other employee was wronged. This would lead to the types of mini-trials within a trial that the rules of evidence are designed to avoid. *See Evans* v. *Port Auth. of New York & New Jersey*, 2005 WL 2427890, at *3 (S.D.N.Y. Oct. 3, 2005) ("[I]ntroduction of other alleged

19

incidents of retaliation involving other employees presents the substantial likelihood that this trial would consume a great deal of time litigating the merits of plaintiff's claims concerning each of those episodes."); *Martinelli*, 2007 WL 9759057, at *7 (explaining that, had the other acts evidence been admitted, defendant would have had to respond with evidence to rebut the notion that the other employee was discriminated against and "[t]he proceeding would be unduly delayed by the resulting mini-trial, and the jury's attention would have been diverted from the real issues of this case"); *Kelly* v. *Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 357 (5th Cir. 1995) ("[T]o allow such testimony would open the door to a series of separate 'mini-trials' on each anecdotal incident, implying that such would further delay the proceedings and confuse the jury."); *Manuel*, 335 F.3d at 597 ("[T]he potential for confusing or even misleading the jury by engaging in a series of mini-trials over the other accusations of discrimination by [defendant] was significant . . . It was reasonable for the district judge to have concluded that the risk of unfair prejudice, confusion of the jury, and undue delay outweighed the slight probative value of the other-acts evidence.").

Such a process would be particularly wasteful here, where the allegations of other acts that Plaintiff has indicated he intends to offer into evidence concern parties and claims that bear no similarities to Cardwell's and were dismissed in their entirety on summary judgment. *See supra* at pp. 13–14, 17. Accordingly, evidence and testimony regarding alleged wrongdoing towards other employees should be excluded.

## MIL NO. 5 TO EXCLUDE PLAINTIFF'S CHARGES FILED WITH THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION AND NEW YORK STATE DIVISION OF HUMAN RIGHTS AND THE EEOC'S RIGHT TO SUE LETTER

Cardwell filed a charge with the Equal Employment Opportunity Commission ("EEOC") on August 3, 2017 (the "Charge"), which was then referred to the New York State Department of Human Rights ("NYSDHR"). On December 5, 2017, Defendant Davis Polk filed its Answer to the Charge (the "Answer"). On January 10, 2018, Plaintiff submitted a written rebuttal to Davis

Polk's Answer.   On April 25, 2018, Plaintiff filed a supplemental charge with the EEOC (the "Supplemental Charge"; together with the Charge, the "Charges"), alleging additional instances of discrimination and retaliation, including his eventual termination.   On July 13, 2018, Davis Polk answered the Supplemental Charge.   On July 31, 2019, Plaintiff's counsel wrote to the EEOC to request that it cease its investigation into Plaintiff's claims and issue a Right to Sue Letter.   On August 6, 2019, the EEOC dismissed Plaintiff's claims and issued a Right to Sue Letter (the "Right to Sue Letter").   The EEOC later clarified that its dismissal was at Plaintiff's request.   For similar reasons, the NYSDHR dismissed Plaintiff's claims on November 27, 2019.

Plaintiff has not been clear regarding how he seeks to use the EEOC and NYSDHR filings, saying only in meet and confer communications that he seeks to admit "certain evidence involving or concerning the parties' EEOC and NYSDHR submissions and communications" and has included such evidence on his proposed trial exhibit list.   *See, e.g.*, PTX118 (CARDWELL001766, ECF 52-5 (Charge)); PTX120 (CARDWELL001773, ECF 52-6 (Rebuttal to Answer); PTX121 (CARDWELL001780, ECF 52-7 (Supplemental Charge)).   Plaintiff's Charges and the Right to Sue Letter should be excluded as inadmissible hearsay.   Even if they could be offered for a non-hearsay purpose, neither the Charges nor the Right to Sue Letter constitute substantive findings and are, as a result, irrelevant, likely to confuse the jury, and their probative value is substantially outweighed by the risk of unfair prejudice to Defendants.

**Hearsay**:  Plaintiff should be precluded from offering the Charges and Right to Sue Letter because they are hearsay.   Rules 801 and 802 prohibit a party from offering a prior statement "to prove the truth of the matter asserted in the statement," unless a specific exception to the rule against hearsay applies.   *See* Fed. R. Evid. 801, 802.   Courts routinely exclude EEOC and NYSDHR filings in discrimination or retaliation cases because they are inadmissible hearsay.   As

the court explained in *Reilly* v. *Revlon, Inc.*, 2009 WL 2900252, at *2 (S.D.N.Y. Sept. 9, 2009), "[d]ocuments submitted to the EEOC are hearsay and will not be admitted into evidence" because "the filings themselves are not evidence and may not be shown or read to the jury." *See Puglisi* v. *Town of Hempstead Sanitary Dist. No. 2*, 2014 WL 12843521, at *5-6 (E.D.N.Y. Jan. 27, 2014) (excluding plaintiff's submissions to NYSDHR as inadmissible hearsay); *see also In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 7769524, at *3 (S.D.N.Y. Nov. 30, 2015) ("It is well established, however, that complaints are hearsay and may not therefore be admitted for their truth."); *Gutierrez* v. *City of New York*, 2012 WL 2357063, at *2 (S.D.N.Y. June 20, 2012) ("If offered to prove the fact of racial discrimination at [the NYPD], such pleadings are inadmissible hearsay."); *cf. Wasilewski* v. *Abel Womack, Inc*, 2016 WL 183471, at *3 (D. Conn. Jan. 14, 2016) ("Allegations in complaints are not evidence.").[7]  For similar reasons, Right to Sue Letters are routinely deemed inadmissible hearsay.  *See, e.g.*, *Elam* v. *Concourse Vill., Inc.*, 2017 WL 1383984, at *2 (S.D.N.Y. Apr. 7, 2017).

**Relevance**:  Further, both the Charges and the Right to Sue Letter are not relevant and should be excluded under Rule 402.  EEOC charges, like any other pleading, do not, of course, constitute substantive findings.  *Rivera* v. *Baccarat, Inc.*, 1997 WL 777887, at *4 (S.D.N.Y. Dec. 15, 1997).  Similarly, an EEOC Right to Sue Letter devoid of any substantive determinations (as is the case here) does not constitute substantive evidence.  *Id.*; *Elam*, 2017 WL 1383984, at *2 ("The Right-to-Sue letter is hearsay and utterly irrelevant—its sole purpose is to prove that plaintiff has satisfied the jurisdictional prerequisites to bringing suit, and that is not an issue for the jury. It

---

[7] Notwithstanding their status as hearsay, Defendants may nonetheless use the Charges to impeach Plaintiff or as a party admission.  *See Washington* v. *City of New York*, 2009 WL 1585947, at *4 n.5 (S.D.N.Y. June 5, 2009) (EEOC charge may "be admissible at trial as a party admission" under Rule 801(d)(2)); *Bermudez* v. *City of New York*, 2019 WL 136633, at *18 (E.D.N.Y. Jan. 8, 2019) ("[P]laintiff's pleadings are admissible for impeachment purposes and as party admissions, excepted from the definition of hearsay.").

will not be admitted.").  Defendants do not dispute that Plaintiff filed Charges with the EEOC and

NYSDHR, or the dates of those filings.  Likewise, Defendants do not contest that, upon his request,

Plaintiff was issued a Right to Sue Letter by the EEOC.  Defendants have offered to stipulate to

these facts—all that is potentially relevant to any element of his retaliation claims.  Thus, there is

no issue in this case to which either the Charges or Right to Sue Letter could be relevant.

**FRE 403**:  The Charges and Right to Sue Letter each are of little to no probative value,

pose a substantial risk of prejudice to Defendants, will confuse the jury, and will waste time.

As to the Charges, they include alleged acts of discrimination and retaliation that are no

longer at issue in this case and, in any event, are needlessly cumulative and unduly prejudicial.  As

explained in MIL 1 above, "[w]here claims have been dismissed on summary judgment, . . . it is

generally appropriate to preclude testimony or evidence regarding those same previously

dismissed claims during a jury trial."  *Hannah*, 2017 WL 690179, at *2 (D. Conn. Feb. 21, 2017).

Admitting Charges that contain dismissed claims of discrimination and retaliation are likely to

confuse the issues before the jury and unduly prejudice Defendants.  *See Puglisi*, 2014 WL

12843521, at *5  ("[T]he risk of unfair prejudice [posed by the admission of NYSDHR and EEOC

findings] is higher when the evidence presented at the administrative level will not be presented at

trial, or vice-versa."); *Cook* v. *Hatch Assocs.*, 2007 WL 1267023, at *2 (W.D.N.Y. Apr. 30, 2007)

("If the EEOC's letter is introduced, it would needlessly interject irrelevant issues and likely lead

to confusion by the jury" because "many of the discrimination claims addressed by the EEOC are

no longer part of the case.").

Further, to the extent Plaintiff seeks to admit the Charges because they relate to the alleged

acts of retaliation that *do* remain in the case, the filing itself is of little to no probative value because

it is duplicative of evidence and testimony that Plaintiff will present at trial and is thus needlessly

cumulative.  *Elam*, 2017 WL 1383984, at *2 (stating, under Rule 403, that "[a]s a rule, this Court does not permit a party's administrative complaints to be admitted into evidence"); *see also Dollman* v. *Mast Industries, Inc.*, 2011 WL 3911035, at *1 (S.D.N.Y. Sept. 6, 2011) (excluding NYSDHR charge where the plaintiff has "a full opportunity to present to the jury all the evidence" submitted to the NYSDHR); *Targonski* v. *City of Oak Ridge*, 921 F. Supp. 2d 820, 825 (E.D. Tenn. 2013) ("[P]laintiff will be available to testify at trial, so it is unclear to the court why admission of EEOC documents would be necessary or what probative value those documents would have."); *Paolitto* v. *John Brown E & C, Inc.*, 151 F.3d 60, 65 (2d Cir. 1998) (upholding exclusion of state agency discrimination report because proponent of the report had full opportunity to present the same evidence to the jury); *Spruill* v. *Winner Ford of Dover, Ltd.*, 175 F.R.D. 194, 197 (D. Del. 1997) (denying admission of Delaware Department of Labor report on discrimination because factual findings were admitted by defendant, making the report "cumulative and [of] limited relevance").  Regardless of Plaintiff's intended use, any probative value of the Charges (and there is none) is substantially outweighed by the danger of unfair prejudice to Defendants by putting disproven and dismissed claims and allegations before the jury.  The risk that the allegations in his Charges would be viewed by a jury as more credible or weighty because they are associated with the EEOC/NYSDHR is, on the other hand, quite significant.

As to the Right to Sue Letter, it contains no substantive information at all making it entirely devoid of any probative value whatsoever.  Thus, any purpose for which Plaintiff would seek its admission would be improper.  *Elam*, 2017 WL 1383984, at *2.

For these reasons, while Plaintiff may be permitted to refer to the fact that he filed Charges with the EEOC and NYSDHR and the date of those filings (and Defendants have offered to stipulate to those facts), he should not be allowed to refer to the Right to Sue Letter, as it is of no

relevance whatsoever, and he should be precluded from introducing the Charges and Right to Sue

Letter documents themselves, and any other evidence regarding the Charges or Right to Sue Letter.

**MIL NO. 6 TO EXCLUDE DAVIS POLK'S ANSWER TO PLAINTIFF'S CHARGE OF DISCRIMINATION IN RECOGNITION OF THE COURT'S PRIOR DETERMINATION THAT THE ANSWER WAS NOT RETALIATORY UNDER APPLICABLE LAW**

The Court should preclude Plaintiff from introducing into evidence Davis Polk's Answer

to Plaintiff's EEOC Charge.  At the summary judgment stage, Cardwell argued that the Answer

constituted an adverse employment action, *see* ECF 274 (Pl.'s 56.1 Statement § J(b)), because it

allegedly "contained false assertions and explanations about Cardwell's performance and

experiences at the Firm."  ECF 270 at 10 (Pls. MOL ISO SJ Opp).  In particular, Cardwell claimed

that the Answer overstated the degree to which his negative performance reviews were

communicated to him in real time.  Cardwell did, however, acknowledge that the Answer was

prepared by counsel for Davis Polk.  *See* ECF 274 (Pls. 56.1 Statement ¶ 793) ("[C]ounsel would

have driven the core arguments.").  As a result, Cardwell presented Davis Polk's Answer as

containing purported misstatements, penned by counsel, that constituted an adverse employment

action.  In ruling on Defendants' motion for summary judgment, the Court held that no "reasonable

jury could find that the filing of the NYSDHR brief (alleged action #10) constitutes an adverse

employment action."  *See* ECF 305 at 61.

Plaintiff has indicated his intent to use the Answer to support a claim that this Court has

already dismissed on summary judgment—that the Answer constitutes an adverse employment

action—and to paint an irrelevant, unfairly prejudicial picture of Davis Polk's purported

"dishonesty" throughout the process of defending itself against Cardwell's claims.  However,

because this Court has already held that this evidence did not constitute an adverse employment

action and because its admission would confuse the jury and be unduly prejudicial to Defendants—

particularly where Cardwell can separately probe the degree to which the summary review forms

reflect the negative performance reviews he received and the manner in which those reviews were delivered to Cardwell—the Answer should be excluded from trial.

**Relevance**:  As noted above, prior to the filing of the Complaint in this action, Davis Polk submitted the Answer in response to the Charge on December 5, 2017.  The Answer was written and signed by outside counsel for Davis Polk; no Defendant signed it or swore to its contents.  On summary judgment, the Court rejected Cardwell's attempts to deem the Answer an adverse employment action, holding that no reasonable jury could find that the Answer was an adverse employment action, and further noted, "it was not inappropriate for Defendants to defend themselves."  ECF 305 at 61 n.15.   Nonetheless, Cardwell's draft pretrial submissions evidence his intent to argue again that the Answer is itself an adverse employment action.  Indeed, in his initial draft of his "Summary of the Claims" he wrote that: "In response to, and in anticipation of, Cardwell's concerns and complaints, defendants knowingly engaged in a coordinated effort to overstate and manufacture a 'factual background' to justify his termination," and that the Defendants "knew their untrue statements about the 'factual background' could influence state agency's investigation."[8]  In his "Brief Description of the Case," he wrote that "Defendants' retaliation against Cardwell resulted from a series of events" that included "manufacturing untruths about the performance reviews that he received."  This Court has already determined that the Answer was not itself an adverse employment action, and Cardwell cannot now impermissibly circumvent this Court's order and revive his argument to the contrary.

To the extent Cardwell contends that the Answer is evidence of retaliatory animus or pretext, such evidence or argument should be excluded as irrelevant because Defendants' stated

---

[8]   Plaintiff's final version included in the Joint Pretrial Order similarly claims that "Defendants knowingly created and approved materially false and misleading statements about the 'factual background' of both Cardwell's employment and Davis Polk's own business practices . . . with knowledge that their false and misleading statements could influence a state agency's evaluation of evidence and investigation."

reasons for terminating Plaintiff have remained consistent and constant throughout the administrative proceedings and this litigation. *See Graziadio* v. *Culinary Institute of America*, 817 F.3d 415, 43 (2d Cir. 2016) (a plaintiff can prove retaliation "by demonstrating . . . contradictions in the employer's proffered legitimate, nonretaliatory reasons for its actions.") (quoting *Zann Kwan*, 737 F.3d at 846). Administrative proceeding submissions are irrelevant to a pretext inquiry where, as here, Davis Polk has not changed its explanations over the course of the administrative proceeding or the litigation for the adverse employment actions alleged. *See Zann Kwan*, 737 F.3d at 845–46 (finding that the defendant's change in position, testimony, and professed motive for terminating the plaintiff between the EEOC position statement and in the course of the instant litigation was evidence of pretext). Regardless of the extent to which Cardwell's early negative performance reviews were contemporaneously communicated to him (directly, in summary form, or otherwise), those reviews formed the basis of his summary review, and the Firm has consistently stated that (in sum and substance) "Cardwell's performance was, in fact, disappointing from the start." ECF 305 at 68.

Further, to the extent Cardwell seeks to introduce evidence or argument that Davis Polk attempted to mislead the EEOC or NYSDHR, such evidence or argument is irrelevant to the facts to be tried to the jury. The statements contained in the Answer are responses to Cardwell's Charges based on the information that Davis Polk gathered in order to defend itself in that proceeding. The Answer is an adversarial proceeding document, designed to provide the EEOC/NYSDHR with information in support of Davis Polk's defense to the Charges, and nothing more.

For these reasons, other courts have held that a position statement or answer in an EEOC proceeding is irrelevant. *See, e.g.*, *Gage* v. *Metro. Water Reclamation Dist. of Greater Chicago*, 365 F. Supp. 2d 919, 937 (N.D. Ill. 2005) (excluding defendant's position statement on the ground

that "statements made to the EEOC do not carry significance independent of possible impeachment"); *Swartz* v. *Wabash Nat. Corp.*, 674 F. Supp. 2d 1051, 1057 n.6 (N.D. Ind. 2009) ("An EEOC position statement is admissible *to the extent that it is inconsistent with other evidence in the record*." (emphasis added)); *Rohler* v. *Rolls-Royce N. Am., Inc.*, 2014 WL 3405872 (S.D. Ind. July 11, 2014) (excluding a position statement on relevance grounds when the "issue [the statement was offered in regard to] ha[d] already been decided").

In addition, the Answer is irrelevant for the independent reason that under New York law, there is an "absolute privilege[]" over "statements made by parties, attorneys, and witnesses in the course of a judicial or quasi-judicial proceeding . . . notwithstanding the motive with which they are made, so long as they are material and pertinent to the issue to be resolved in the proceeding." *Pin* v. *Hunt*, 2015 WL 1344406, at *8 (S.D.N.Y. Mar. 20, 2015) (quoting *Officemax Inc.* v. *Cinotti*, 966 F. Supp. 2d 74, 79 (E.D.N.Y. 2013)). "This privilege applies to statements submitted to agencies such as the EEOC." *Bernstein* v. *Seeman*, 593 F. Supp. 2d 630, 636 (S.D.N.Y. 2009). While this privilege typically arises in the defamation context, it is readily applicable here, where Plaintiff has intimated that the Answer—an advocacy piece crafted and signed by counsel—was itself an act of retaliation.

**FRE 403**: The Court should separately exclude the Answer as it would unfairly prejudice Defendants, will confuse the issues as the remaining claims are substantially narrower than what was at issue before the EEOC/NYSDHR, will cause undue delay, and will waste the jury's time. *See Chrisholm* v. *Sloan-Kettering*, 2011 WL 2015526, at *3 (S.D.N.Y. May 13, 2011) (excluding the plaintiff's EEOC charge and the defendants' rebuttal because "they relate to discrimination claims that have been withdrawn," they "would confuse the jury," and "present a substantial risk of prejudice."). Further, administrative or quasi-judicial proceedings differ from trial proceedings,

so admitting the Answer runs the risk of confusing the jury.  *See Gueye* v. *People's United Bank, Natl. Assn.*, 2021 WL 10351980 (E.D.N.Y. Apr. 9, 2021), *aff'd*, 2022 WL 2203953 (2d Cir. June 21, 2022) (noting "NYSDHR's lower evidentiary standards and abbreviated procedures").

Other courts have excluded EEOC position statements for similar reasons.  For example, in *Reynolds* v. *Family Dollar Services, Inc.*, the defendant sought to exclude its answer to an EEOC charge pursuant to Rules 401 and 403, because it was "written by its in-house counsel," "was not signed or sworn by anyone with personal knowledge of the events which form the basis of Plaintiff's lawsuit," was "counsel's interpretation of the claim" that was "prepared prior to the lawsuit and any discovery, and contains hearsay statements."  2011 WL 618966, at *1 (E.D. Ky. Feb. 10, 2011).  The court noted that because the position statement was authored by counsel who would not be a witness at trial, "the likelihood that the information in the position statement or correspondence could be used to impeach [the defendant's] trial testimony is virtually non-existent," as it is "highly unusual to impeach a witness with the statement of another witness, especially in a situation like this one where that other witness is an attorney who is required by law to respond to the EEOC's investigation."  *Id.*  The court further noted that if the testimony at trial is consistent with the defendant's position statement, the position statement would be needlessly cumulative evidence under Rule 403.  *Id.* at *2; *see also Sommers-Wilson* v. *Samsung SDI America, Inc.*, 2018 WL 8804163, at *1 (E.D. Mich. Dec. 27, 2018) (granting defendant's motion to exclude EEOC position statement).  For the same reasons, to permit Plaintiff to introduce the Answer to the jury would waste time and cause a mini-trial on that administrative proceeding and Defendant Davis Polk's right to defend itself and truthfulness in that proceeding.

Defendants acknowledge that, in the Court's summary judgment ruling, the Court noted that the Answer contained language that "appears to have, at the least, overstated the extent to

which early poor performance reviews were contemporaneously communicated to Cardwell" because the Answer stated that the Firm "delivered" certain feedback to Cardwell, when the reviews were instead "given to a partner . . . who created a 'summary review' to be shared with Cardwell."  ECF 305 at 67.  The Court stated, in the context of summary judgment where all inferences must be drawn in favor of the nonmoving party (here, Plaintiff), that an overstatement as to the extent that specific reviews were contemporaneously communicated to Cardwell could "cast[] doubt on Davis Polk's reliance on Cardwell's poor performance as an explanation for his firing" and "lead a reasonable jury to doubt the Firm's broader statements that Cardwell's performance was, in fact, disappointing from the start."  *Id.* at 67–68.  Given, however, that the Court has determined that the Answer is not retaliatory and, for the reasons stated above, that the Charges themselves should be excluded, admitting the Answer would be confusing to the jury and highly prejudicial to Defendants.  But Cardwell can introduce evidence and testimony regarding the degree to which the substance of his performance reviews are reflected in the summary review forms or were communicated to him in his reviews, without needing to refer to the Answer.  Indeed, his exhibit list (which includes all of his performance reviews) and witness list (which includes all of the partners who delivered his reviews) suggest that Cardwell intends to do just that.  Using the Answer itself to try to demonstrate that reviews were *not* contemporaneously communicated to Cardwell would be needlessly cumulative and prejudicial to Defendants for the reasons set forth herein.

Should the Court determine that Cardwell may introduce the Answer itself to probe whether the Firm overstated the degree to which it communicated Cardwell's negative performance reviews to him, Cardwell should be permitted, at most, to offer an excerpted page of the Answer with just the quoted passage identified in this Court's opinion and nothing more.

**<u>MIL NO. 7</u> TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT RELATED TO THE IDENTITIES OF DAVIS POLK'S CLIENTS, MATTERS, OR CLIENT CONFIDENCES**

The Court should preclude Plaintiff from introducing any evidence, testimony, or argument related to the identities of Davis Polk's past or present clients and the details of any particular client matters or representations.  Such evidence is irrelevant, a waste of time, unfairly prejudicial, and would be in violation of Defendants' ethical obligations to their clients.

**Relevance**:  The identities of any of Davis Polk's clients and the details of any transaction, matter, or representation have no probative value to any element of Plaintiff's retaliation claims remaining to be tried.  While evidence related to the kinds of matters Plaintiff worked on while he was at Davis Polk and the kinds of tasks he performed for those matters is relevant, the identities of Davis Polk's clients, the specific transaction at issue, or other client confidences are not.  For example, the fact that Cardwell worked on a tender offer for a particular partner may be relevant to understand that partner's expectations for Cardwell's work and the basis for that partner's conclusion that Cardwell's performance was below expectations; however, the client for whom the work was performed and specifics of the particular tender offer are irrelevant.  Similarly, evidence regarding the transaction with code name "Project Giant" may be useful to provide the jury with context for a partner's assessment of Cardwell's job performance.  But it is not necessary or helpful to the jury to reveal the identities of the client, the matter, the transaction, or other confidential information related to "Project Giant" that Defendants (and even Plaintiff) have an obligation to keep confidential.

Lawyers have an "ethical obligation to maintain the 'confidences' and 'secrets' of clients and former clients [which] is broader than the attorney-client privilege, and exists 'without regard to the nature or source of information or the fact that others share the knowledge.'"  *Wise* v. *Consol. Edison Co. of NY*, 282 A.D.2d 335, 335 (N.Y. App. Div. 2001).  This ethical obligation stems from

31

Rule 1.6 of the New York Rules of Professional Conduct, which provides that "[a] lawyer shall not knowingly reveal confidential information" of a client, unless the disclosure is specifically permitted by the Rules.  The completely gratuitous disclosure of confidential client information in this case would not satisfy any of the exceptions to the rule of confidentiality, would unfairly prejudice Defendants, and would harm Davis Polk's clients.[9]

**FRE 403**:  Even if the identities of Davis Polk's clients, or the details of specific representations, had some marginal relevance, that relevance would be outweighed by the risk of unfair prejudice to Defendants, as jurors may have preconceived notions about particular clients or representations.  *See*, *e.g.*, *Park West Radiology* v. *CareCore Nat. LLC*, 675 F. Supp. 2d 314, 323 (S.D.N.Y. 2009) (excluding relevant email that "could elicit a strong negative reaction from the jury for reasons not at all relevant to this litigation").

Accordingly, for these same reasons, the Court should preclude Plaintiff from offering evidence, testimony, or argument with regard to Davis Polk's representation of a for-profit prison—including identifying the client and the nature of the representation—and Cardwell's complaints about that representation.  *See, e.g.*, PTX417 (DPW_SDNY–000098147).  Plaintiff previously claimed that his complaints about the firm's representation of this client, which he claimed had an allegedly "violent and discriminatory reputation towards certain racial groups," constituted protected activity.  *Cardwell* v. *Davis Polk & Wardwell LLP*, 2020 WL 6274826, at *33 (S.D.N.Y. Oct. 24, 2020).  The Court ruled at both the motion to dismiss stage and summary judgment that such complaints did not qualify as protected activity.  ECF 305 at 58 ("This Court

---

[9]    The Court has previously ruled that the "attorney client privilege implicated" by certain of this evidence sufficed to overcome the "presumption of judicial access."  ECF No. 302, at 4.  Here, Rule 403 tilts any inquiry even further towards exclusion of these materials because the evidence has no remaining probative value and could only invite the jury to decide the case based on their feelings regarding Davis Polk's clients.  That unduly prejudices Defendants, threatens to mislead the jury, and confuses the issues.

has already ruled that this complaint is not protected as a matter of law because it is 'not about discrimination at Davis Polk,' but rather about 'Davis Polk's choice of clients.'").   Evidence regarding this representation or Plaintiff's complaints about this representation are therefore both irrelevant, unfairly prejudicial, and precluded by the law of the case doctrine.  *See Gorbea*, 2014 WL 2916964, at *2.  Such evidence would only unduly prejudice Defendants by inviting the jury to decide the case based on "Davis Polk's choice of clients" rather than the merits.  Fed. R. Evid. 403.

This Court was able to assess the legal sufficiency of Cardwell's claims in response to Defendants' motion for summary judgment without the identities of Davis Polk's clients; the jury will similarly be able to do so.

## MIL NO. 8 TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT RELATED TO DEFENDANTS' AND DEFENSE COUNSEL'S POST-TERMINATION, POST-COMPLAINT LITIGATION CONDUCT

Plaintiff should be precluded from offering testimony or evidence regarding Defendants' post-termination, post-complaint litigation conduct—including any purported discovery disputes, the parties' conduct in litigating this case, any public or leaked statements regarding this litigation, and any evidence regarding the conduct of Defendants' counsel—as it is irrelevant, and its probative value is substantially outweighed by the risks of unfair prejudice and confusing the jury.

**Relevance**:  As explained above, Plaintiff "must prove: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) adverse employment action; and (4) a causal connection between plaintiff's protected activity and the adverse employment action" to succeed on his claims of retaliation.  *Gordon* v. *New York City Bd. of Educ.*, 232 F.3d 111, 113 (2d Cir. 2000).  The ways in which the parties have litigated this case *after* Plaintiff's termination and after he filed the federal complaint are entirely irrelevant to the claims that remain to be tried.

Accordingly, Plaintiff should be precluded from introducing testimony or evidence regarding purported discovery disputes, or discovery that Defendants purportedly failed to produce to Plaintiff, as such evidence is irrelevant. *See In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 8130449, at *5 (S.D.N.Y. Dec. 3, 2015) ("[E]vidence of discovery disputes and [the defendant's] alleged litigation misconduct in this case and other lawsuits . . . has limited or no probative value…."); *see also Bunnell* v. *Haghighi*, 661 F. App'x 110, 113 (2d Cir. 2016) ("[T]he district court did not abuse its discretion in refusing to admit at trial evidence of misconduct by [a party's] counsel during the pendency of this litigation," as it "did not have 'any tendency to make' any fact 'of consequence in determining the [merits of this] action' 'more or less probable.'").

Further, "all discovery disputes not raised promptly are waived," *Funk* v. *Belneftekhim*, 2019 WL 3035124, at *6 (E.D.N.Y. July 11, 2019), and "motions in limine are not the proper forum for adjudicating run-of-the-mill discovery disputes," *Rao* v. *Rodriguez*, 2017 WL 1403214, at *1 n.1 (E.D.N.Y. April 18, 2017). Courts, therefore, prevent parties from utilizing motions in limine to relitigate discovery disputes, or belatedly raise a discovery issue that the party failed to timely raise. *See, e.g.*, *Altruis Group, LLC* v. *ProSight Specialty Mgmt. Co., Inc.*, 2023 WL 4784233, at *6 (S.D.N.Y. July 26, 2023) (denying motion to preclude evidence not timely disclosed during discovery where "[t]he time ha[d] long since passed for the parties to raise discovery disputes" and "[h]aving received no motions to compel or communications regarding any outstanding discovery dispute or issues"); *Karam* v. *County of Rensselaer*, 2016 WL 3029951, at *5 (N.D.N.Y. May 25, 2016) ("The Court will not reexamine these discovery disputes during the course of trial."); *Christians of California, Inc.* v. *Clive Christian New York, LLP*, 2014 WL 6467254, at *3 (S.D.N.Y. Nov. 10, 2014) ("[P]laintiff's motion is an attempt to relitigate issues that this Court has previously decided and to get the Court to fix mistakes in discovery that are of

34

plaintiff's own making.").  For these reasons, privilege logs and other discovery-related materials on Plaintiff's exhibit list should be excluded.  *See, e.g.*, PTX015 (Davis Polk's Privilege and Redaction Log); PTX016–27 (interrogatories, requests for admission, initial disclosures).

Next, Plaintiff should be precluded from introducing any of Defendant's public or leaked statements regarding this litigation as evidence, as any post-termination statements by either party regarding this litigation are irrelevant except for the limited purpose of impeachment.  *See Altman* v. *New Rochelle Pub. Sch. Dist.*, 2017 WL 66326, at *11 (S.D.N.Y. Jan. 6, 2017) (excluding post-termination correspondence as "unnecessary, cumulative, confusing, and overly prejudicial"); *id.* at *13–14 (post-termination statements irrelevant, except as to credibility). Further, any out-of-court statements by third parties, including media articles, social media comments, and emails, are inadmissible as hearsay.  *Mandal* v. *City of New York*, 2006 WL 3405005, at *1 (S.D.N.Y. Nov. 26, 2006) ("Newspaper articles are usually inadmissible hearsay."); *Belabbas* v. *Inova Software Inc.*, 2019 WL 13258047, at *3–4 (S.D.N.Y. Oct. 1, 2019) (while the testimony of plaintiff's coworkers regarding her work demeanor and habits is admissible, emails regarding the same are inadmissible hearsay). *See, e.g.*, PTX519, (CARDWELL005352, "Davis Polk Moves to Narrow Black Lawyer's Retaliation Suit").

Finally, Plaintiff should also be precluded from offering testimony or evidence regarding the characteristics of Plaintiff's or Defendants' counsel, including regarding the relative stature or sophistication of the parties' counsel, the number of attorneys that have worked for the parties, or the amount of fees incurred or paid.  *In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 8270427, at *4 (S.D.N.Y. Dec. 7, 2015) ("[C]omments about topics such as the number of lawyers that have worked on behalf of [defendant] or the amount of legal fees the company has spent . . . would be patently objectionable as irrelevant and prejudicial."); *Schlaifer Nance & Co.* v. *Warhol*,

7 F. Supp. 2d 364, 370 (S.D.N.Y. 1998), *rev'd on other grounds*, 194 F.3d 323 (2d Cir. 1999) ("[T]he probative value of the amount of attorneys' fees incurred is substantially outweighed by the danger of undue prejudice, for most lay jurors undoubtedly would be shocked at the amount of fees.").

**FRE 403**:  Evidence and testimony regarding any purported litigation misconduct on the part of Defendants should be excluded as unfairly prejudicial and likely to confuse the issues and waste time.  For example, in *In re General Motors LLC Ignition Switch Litigation*, the court noted that "evidence of discovery disputes and [defendant]'s alleged litigation misconduct in this case and other lawsuits . . . has limited or no probative value, and any such value is substantially outweighed by the dangers listed in Rule 403."  2015 WL 8130449, at *5.  Those dangers include unfair prejudice, as jurors may seek to punish a party "for what they view as an overly aggressive litigation strategy by a large company"; jury confusion, as issues concerning discovery disputes "are not exactly within the ken of the average juror"; and waste of time, as there "would be a mini-trial within the larger trial, and a sideshow at that," with both sides presenting evidence on the discovery dispute.  *Id.*  Permitting Plaintiff to introduce evidence regarding his or defense counsel's stature or characteristics might similarly prejudice Defendants.  *See, e.g.*, *Am. Tech. Ceramics Corp.* v. *Presidio Components, Inc.*, 2019 WL 2330855, at *6 (E.D.N.Y. May 31, 2019) (precluding evidence intended to "characterize[] the dispute as one of David versus Goliath").

## MIL NO. 9 TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT RELATED TO DEFENDANTS' FINANCIAL STATUS UNLESS AND UNTIL THE JURY DETERMINES THAT PUNITIVE DAMAGES ARE WARRANTED

The Court should preclude Plaintiff from offering testimony, evidence, or argument of Defendants' wealth or financial status unless and until the jury determines that the evidentiary basis for an award of punitive damages is met.  Such evidence is not probative of Plaintiff's retaliation claims or any element of them, and would be highly prejudicial to Defendants.

During the pretrial exchange process, Plaintiff's submissions evinced an intent to introduce evidence of Defendants' wealth or financial status in support of his retaliation claims.  For example, Plaintiff's first draft of the joint statement of the case referred to Defendants' purported wealth, arguing that Defendants' "experiences, skills, wealth, titles, and reputations, however, do not give them the right to respond to Cardwell's protected activity" in an allegedly retaliatory manner.  Plaintiff also asked Defendants to stipulate to the Firm's average profits per partner in the years 2015–2018.  Plaintiff's witness list reflects the expectation that Defendants Reid and Bick, as well as James Rouhandeh—a partner who serves on the Firm's Management Committee but never worked with Plaintiff—will testify about "Defendants' financial condition."  Plaintiff's witness list also reveals that Plaintiff himself plans to testify regarding the same subject.  Plaintiff also included Davis Polk's insurance policy on his exhibit list, suggesting that he intends to specifically reference the Firm's financial ability to pay damages.  *See* PTX110 (DPW_SDNY–000045555).  Defendants asked Plaintiff whether he would agree to the relief sought in this motion.  Plaintiff refused, claiming (without explanation) that "Defendants' wealth and financial status are relevant to the parties' claims and defenses, including the jury's evaluation of Defendants' allegedly retaliatory intent or motivation."

**Relevance:**  Defendants' wealth or financial status is not probative of any element of Plaintiff's retaliation claims or of his alleged compensatory damages.  Evidence regarding a defendant's wealth is a "class of evidence . . . not admitted or desirable during the liability and compensatory damages phase of the case."  *Vasbinder* v. *Ambach*, 926 F.2d 1333, 1344 (2d Cir. 1991); *see also Loussier* v. *Universal Music Grp., Inc.*, 2005 WL 5644421, at *2 (S.D.N.Y. July 14, 2005) (excluding evidence of individual and corporate defendants' wealth as irrelevant to the liability determinations).

Further, evidence of Defendants' wealth or financial ability to pay a punitive damages award will only become relevant if, and only if, the jury finds in favor of Plaintiff on his retaliation claims and that Plaintiff has met his burden of proof in establishing any Defendant's liability for punitive damages; *i.e.*, that the Defendants violated the law "with willful or wanton negligence, or recklessness, or a conscious disregard of [Plaintiff's rights,] or conduct so reckless as to amount to such disregard." *See Chauca* v. *Abraham*, 885 F.3d 122, 124 (2d Cir. 2018) (internal quotation marks omitted); *Miller* v. *E. Midwood Hebrew Day Sch.*, 2021 WL 966166, at *7 (E.D.N.Y. Feb. 15, 2021), *R&R adopted*, 2021 WL 965072 (E.D.N.Y. Mar. 15, 2021).

In the unlikely event that all of these things occur, only then would evidence of Defendants' wealth or financial status be relevant to the jury's determination regarding the *amount* of punitive damages. *See Uzhca* v. *Wal-Mart Stores, Inc.*, 2023 WL 2529186, at *6 (S.D.N.Y. Mar. 15, 2023) ("Evidence of 'the wealth of a party is never admissible, directly or otherwise, unless in those exceptional cases, where position or wealth is necessarily involved in determining the damages sustained.'" (quoting *Tesser* v. *Bd. of Educ. of City Sch. Dist. of City of New York*, 370 F.3d 314, 318 (2d Cir. 2004))); *Evans* v. *Calise*, 1994 WL 185696, at *2 (S.D.N.Y. May 12, 1994) ("It has generally been the rule in New York that 'evidence of [a] defendant's wealth [can] not be brought out upon trial unless and until the jury [brings] in a special verdict that plaintiff is entitled to punitive damages against defendant.'" (alterations in original) (quoting *Rupert* v. *Sellers*, 368 N.Y.S.2d 904, 912 (N.Y. App. Div. 1975))); *Vasbinder*, 926 F.3d at 1344 (evidence of "the defendant's ability to pay" is admissible only in a punitive damages "phase of the case").

**FRE 403**:  The admission of evidence of Defendants' wealth or financial status during the liability or compensatory damages phase of the trial would unduly prejudice Defendants and mislead the jury.  Such evidence is clearly an effort to signal to the jury that it should award

damages because Defendants have the means to pay, and paint a David versus Goliath picture.  For these reasons, evidence of wealth is routinely excluded under Rule 403.  *E.g., Loussier*, 2005 WL 5644421, at *2 (excluding evidence of wealth under Rule 403 because any purported relevance "is substantially outweighed by the danger of unfair prejudice that might result from jurors basing their conclusions on the relative wealth of the parties") (citing *United States* v. *Birney*, 686 F.2d 102, 106 (2d Cir. 1982)); *Hart* v. *RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 278–79 (S.D.N.Y. 2015) (evidence of funds available to pay a judgment excluded under Rule 403 because it "might impermissibly lead the jury to make a . . . decision not on the merits, but as a matter of result-orientation" and other "improper considerations"); *Am. Tech. Ceramics Corp.* v. *Presidio Components, Inc.*, 2019 WL 2330855, at *6 (E.D.N.Y. May 31, 2019) (precluding each party from "refer[ring] to the parties' wealth, size, or finances to the extent it . . . characterizes the dispute as one of David versus Goliath"); *see also Smith* v. *Lightning Bolt Prods., Inc.*, 861 F.2d 363, 373–74 (2d Cir. 1988) (noting that "it often would be prejudicial to a defendant to attempt to litigate its financial condition during the trial on the issues of liability and compensatory damages").  As explained above, Defendants' financial status bears no relevance on the liability and compensatory damages phase of trial.  It is clear, therefore, that Plaintiff seeks to introduce this evidence solely for its prejudicial impact.

Accordingly, the Court should exclude evidence of Defendants' wealth or financial status unless and until the jury determines that punitive damages are warranted.  If such a determination is made, the trial can then proceed into an abbreviated second phase concerning the appropriate amount of punitive damages, which may include evidence of Defendants' financial position if the Court determines it is necessary.  *E.g.*, *Ajala* v. *W.M. Barr & Co., Inc.*, 2019 WL 10837693, at *1 (S.D.N.Y. Apr. 29, 2019) ("During the first phase, the jury will determine liability; the amount of

compensatory damages, if any; and whether punitive damages are warranted.  If the jury determines that punitive damages are warranted, then the trial will proceed into a second phase to determine the amount of those damages.  The parties may not refer to or introduce evidence regarding Defendants' size or wealth during the first phase of the trial.  Such evidence will be admissible only during the second phase, if there is one.").

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motions in limine.


September 15, 2023

By /s/ Susanna M. Buergel

Bruce Birenboim
Susanna M. Buergel
Jeh C. Johnson
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
bbirenboim@paulweiss.com
jjohnson@paulweiss.com
sbuergel@paulweiss.com

Martha L. Goodman
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone:  (202) 223-7341
Facsimile:  (202) 330-5921
mgoodman@paulweiss.com

*Attorneys for Defendants*