**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **KALOMA CARDWELL,** | |
| Plaintiff, | |
| **v.** | |
| **DAVIS POLK & WARDWELL LLP, Thomas Reid, John Bick, and Daniel Brass,** | **1:19-cv-10256-GHW** |
| Defendants. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTIONS *IN LIMINE*

Dated: September 28, 2023

David Jeffries, Esq.
1345 Avenue of the Americas, 33rd Floor
New York, New York 10105
Tel: 212-601-2770
djeffries@jeffrieslaw.nyc

*Attorney for Plaintiff*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES……………………………………………………………..iii

LEGAL STANDARD........................................................................................................ 1

DEFENDANTS' MIL NO. 1 SHOULD BE DENIED IN ITS ENTIRETY ................................. 1

DEFENDANTS' MIL NO. 2 SHOULD BE DENIED IN ITS ENTIRETY……………………16

DEFENDANTS' MIL NO. 3 SHOULD BE DENIED IN ITS ENTIRETY ............................... 17

DEFENDANTS' MIL NO. 4 SHOULD BE DENIED IN ITS ENTIRETY............................... 19

DEFENDANTS' MIL NO. 5 SHOULD BE DENIED IN ITS ENTIRETY............................... 22

DEFENDANTS' MIL NO. 6 SHOULD BE DENIED IN ITS ENTIRETY............................... 25

DEFENDANTS' MIL NO. 7 SHOULD BE DENIED IN ITS ENTIRETY............................... 34

DEFENDANTS' MIL NO. 8 SHOULD BE DENIED IN ITS ENTIRETY............................... 36

DEFENDANTS' MIL NO. 9 SHOULD BE DENIED IN ITS ENTIRETY............................... 38

CONCLUSION.................................................................................................................40

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Ayton v. Lenox Hill Hosp.*,
   No. 93 Civ. 6601 (BSJ), 1997 WL 10000, at *4 (S.D.N.Y. Jan. 10, 1997)....................23

*Belabbas v. Inova Software Inc.*,
   2019 WL 13258046, at *2 (S.D.N.Y. Oct. 1, 2019)...............................................26

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
   814 F.3d 132 (2d Cir. 2016)...........................................................................35

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*,
   757 F.2d 523 (2d Cir. 1985)........................................................................37

*Bernstein* v. *Seeman*,
   593 F. Supp. 2d 630 (S.D.N.Y. 2009)..............................................................32

*Burlington Northern & Sante Fe Railway v. White*,
   548 U.S. 53 (2006)...............................................................................2, 16

*Cole–Hoover v. State of N.Y. Dep't of Correctional Servs.*,
   No. 02 Civ. 826, 2011 WL 3360002, at *5 (W.D.N.Y. Aug.3, 2011)...........................40

*Conklin v. Cnty. of Suffolk*,
   No. 09 Civ. 3014, 2012 WL 1560390, at *17 (E.D.N.Y. May 3, 2012).......................16

*Dollman* v. *Mast Industries, Inc.*,
   2011 WL 3911035, at *1 (S.D.N.Y. Sept. 6, 2011).....................................24, 39, 40

*Elam* v. *Concourse Vill., Inc.*,
   2017 WL 1383984, at *2 (S.D.N.Y. Apr. 7, 2017).............................................24

*Dedmon v. Continental Airlines*,
   2016 WL 47199, at *9 (D. Colo. Feb. 6, 2016)..................................................39

*Dodson v. CBS Broadcasting Inc.*,
   423 F.Supp.2d 331 (S.D.N.Y. 2006).................................................................3

*Harte-Hanks Communications, Inc. v. Connaughton*,
   491 U.S. 657 (1989)..................................................................................38

*In re Cnty. of Erie,*
    473 F.3d 413 (2d Cir. 2007)……………………………………………………………………28

*In re Shargel,*
    742 F.2d 61 (2d Cir. 1984)………………………………………………………..…………35

*Jute v. Hamilton Sundstrand Corp.,*
    420 F.3d 166 (2d Cir. 2005)……………………………..……………………………………5

*Koumoulis v. Indep. Fin. Mktg. Grp., Inc.,*
    295 F.R.D. 28 (E.D.N.Y. 2013), aff'd, 29 F. Supp. 3d 142 (E.D.N.Y. 2014)…………....….28

*Kwiecinski v. Chung Hwang,*
    885 N.Y.S.2d 783 (App. Div. 2009)……………………………………………………………37

*Lipin v. Hunt,*
    2015 WL 1344406, at *8 (S.D.N.Y. Mar. 20, 2015)……………………………………...32

*Luce v. United States,*
    469 U.S. 38 (1984)……………………………………………………………...………..1

*Martinez v. Davis Polk LLP,*
    208 F.Supp.3d 480 (E.D.N.Y. 2016) ……………………………..……………...20-22

*Martinez v. Robinson,*
    No. 99civ11911, 2002 WL 424680, at *2 (S.D.N.Y. Mar. 9, 2002)……………………….....39

*Mugavero v. Arms Acres,*
    2009 WL 1904548, *4 (S.D.N.Y. July 1, 2009)…..………..…............…...……22, 26, 34

*Oregon v. Crum,*
    403 P.3d 405 (Or. App. 2017)……………………………………………………………..39

*Paolitto* v. *John Brown E & C, Inc.,*
    151 F.3d 60 (2d Cir. 1998)……………………..………...……………………………..24

*Pavone v. Gibbs,*
    No. CV 95-0033, 1997 WL 833472, at *2 (E.D.N.Y. Sept. 29, 1997)……………………39

*Redd v. New York Div. of Parole,*
    678 F.3d 166 (2d Cir. 2012)………………………………………………………………..2

*Sassaman v. Gamache,*
    566 F.3d 307 (2d Cir. 2009)…………………………………………………………..5

*Spitzer v. Saint Francis Hospital,*
    94 F.Supp.2d 423 (S.D.N.Y.2000)……………………………………………...……37

*Spruill* v. *Winner Ford of Dover, Ltd.*,
   175 F.R.D. 194 (D. Del. 1997)……………………..……………………..…………24

*Surgery Ctr. at 900 N. Mich. Ave. v. American Physicians Assurance Corp.*,
   317 F.R.D. 620 (N.D. Ill. 2016)……………………………………………...……39

*Tainsky v. Clarins USA, Inc.*,
   363 F. Supp. 2d 578 (S.D.N.Y. 2005)……………………………...……..……..…………..16

*Targonski* v. *City of Oak Ridge*,
   921 F. Supp. 2d 820 (E.D. Tenn. 2013)……………………………………………24, 25

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991)……………….……………………………………29

*Vichare v. AMBAC, Inc.*,
   106 F.3d 457 (2d Cir. 1999)……………….……………………………………..40

*Vega v. Hempstead Union Free Sch. Dist.*,
   801 F.3d 72 (2d Cir. 2015)……………….……………………………......…5

*Vernon v. Port Authority of New York and New Jersey*,
   200 F. Supp.2d 401 (S.D.N.Y. 2002)……………………………………………2,3

*Zann Kwan v. Andalex Grp., LLC*,
   737 F.3d 834 (2d Cir. 2013)……………………………………………...12, 15, 17, 31

*Zeng v. New York City Housing Authority*,
   2023 WL 45534165, at *7 (2d Cir. 2023)……………………………………………..5

## Rules and Statutes

Fed. R. Civ. P. 8(b)(6) ..................................................................37

Fed. R. Evid. 401……………........................................................1, 6

Fed. R. Evid. 403……………........................................................passim

Fed. R. Evid. 404(b)(2) ..................................................................20, 21

Fed. R. Evid. 801(d)(2)……………........................................................passim

Fed. R. Evid. 803(8) ..................................................................25

N.Y. C.P.L.R. 3018(a) ............................................................................................5

Plaintiff Kaloma Cardwell ("Cardwell" or "Plaintiff"), by and through his undersigned counsel, hereby submits this memorandum of law in opposition to Defendant Davis Polk & Wardwell LLP ("Davis Polk" or the "Firm") and named defendants Thomas Reid, John Bick, and Daniel Brass (the "Individual Defendants," and, together with Davis Polk, "Defendants"), September 15, 2023 omnibus motions *in limine*. ECF 325.

## LEGAL STANDARD

Motions *in limine* are to be granted only when the evidence at issue is clearly inadmissible on all potential grounds.[1] *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context. *Id.*

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." Fed. R. Evid. 401 ("Fed. R. Evid." hereinafter, "FRE").

## DEFENDANTS' MIL <u>NO. 1</u> SHOULD BE DENIED IN ITS ENTIRETY

This motion seeks to preemptively prevent Plaintiff from offering any evidence regarding the events leading up to his protected activity, Defendants' reactions and responses to them, his termination, and nearly all context surrounding Plaintiffs employment with Defendants. Defendants' argument is effectively that Plaintiffs termination must be viewed in a vacuum, and a jury should not hear or consider the events leading up to his termination even though these events are critical to a jury's understanding of the context in which Plaintiff's termination occurred and the damages they should consider. Defendant's motion should be denied.

---

[1] In motion after motion, Defendants' omnibus motion turns the law on its head and effectively argues that their motions should be granted if Defendants' can identify or theorize a single inadmissible ground. Defendants' overly broad motions should be denied, including because virtually every reasonable concern related to prejudice is already addressed through Plaintiff's proposed jury instructions. ECF 329.

The Supreme Court has held that "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Burlington Northern & Sante Fe Railway v. White*, 548 U.S. 53, 69 (2006). "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Id* (internal quotation marks omitted). The Second Circuit has provided similar guidance, stating, "The court must take care, however, not to view individual incidents in isolation." *Redd v. New York Div. of Parole*, 678 F.3d 166 (2d Cir. 2012). Granting Defendants' Motion *in limine* No. 1 would undercut and unfairly prejudice Plaintiff's retaliation and damages claims and strip them of their proper context.

As an initial matter, Plaintiff does not have to prove the merits of his complaints or discrimination claims. *See* Plaintiff's proposed jury instructions at ECF 339 at 14 ("[Y]ou might be invalid in your protest, you might protest and say I'm being discriminated against, it might turn out that you were not, but the fact of your protest is protected.").

Second, Plaintiff had firsthand, independent knowledge of the Firm's number of Black associates and partners, including the distribution of Black associates across class years. Such statistics and patterns were directly relevant to the concerns and complaints he communicated.

Next, in *Vernon v. Port Authority of New York and New Jersey*, 200 F. Supp.2d 401 (S.D.N.Y. 2002) a Title VII discrimination and retaliation case, the defendant filed a motion *in limine* to exclude evidence of plaintiff's claims that had been dismissed. Denying the motion, the court found (i) the evidence provided pertinent background for Plaintiff's surviving claims and theory of the case, (ii) was more probative than prejudicial, and (iii) an appropriate limiting instruction would eliminate any possible issue of the jury being confused about the claims.

2

*Vernon*, 200 F. Supp.2d at 404; s*ee also Dodson v. CBS Broadcasting Inc.*, 423 F.Supp.2d 331, 335 (S.D.N.Y. 2006) ("evidence 'is relevant in that it tends to make the existence of the plaintiff's remaining claims more probable and lends background to plaintiff's theory of the case'").

Here, Defendants seek to exclude relevant evidence that makes Plaintiff's claims more probable and lends important background to his theory of the case, including (i) his motivations and reasonable good faith belief that he **and others** were being discriminated against at Davis Polk; (ii) the reasons he expressed his concerns and made complaints, as well as the reasons he communicated his concerns and complaints to specific individuals at the Firm (and not others); (iii) how and why individuals who had knowledge of his concerns and complaints discussed Cardwell's communications with Defendants and other Firm leaders who worked with Defendants,[2] including Cardwell's September 2015 Complaint and the 2015 Bag/Diversity Committee meeting itself;[3] (iv) why Reid told Cardwell to stop making complaints or else he would be "off the field"; (v) why "Bick stated in his testimony that after Cardwell filed his EEOC complaint (the August 2017 complaint), people at the firm 'recognized' that 'if [Cardwell] went public with his complaints, there would be news coverage and [people] could have [their] reputation harmed through these complaints.'"[4]; (vi) why Defendants' knowingly

---

[2] *See, e.g.,* ECF 256-55 (PTX143) ("It has been suggested that we each come to the meeting with…an issue or concern we should look to tackle in 2015); ECF 256-72 at 7 and PTX223 (the Chair of the Firm's Diversity Committee stating, one day before Cardwell made his September 2015 complaint, "My personal opinion is that retention and development/promotion are the areas" of "biggest need…with respect to diversity at the firm").

[3] For example, the Firm's Diversity Committee discussed Cardwell's concerns and complaints at the same time they discussed other associates' concerns and complaints, including because the Diversity Committee was systemically and routinely seeking and receiving feedback from the Firm's minority affinity groups and routinely providing reports to the Management Committee about the concerns and feedback they received. *See, e.g.,* PTX220, PTX221, PTX223, PTX305, PTX306, PTX465, PTX466, and PTX484.

[4] *See* ECF 305 at 66; ECF 259 Ex. 105 at 212:3–16).

"overstated" Plaintiff's performance issues to cover up past employment experiences and fire him; and (vii) the reckless disregard of Plaintiff's rights that resulted from Defendants repeatedly discussing the Firm's "vestiges cultural barriers,"[5] with knowledge of his protected activity,[6] and continuing to position themselves to fire Cardwell based off concerns they wanted disclosed.

Defendants' purportedly want to "exclude evidence intended to corroborate Cardwell's discrimination claims," but the effect of their motion, if granted, is that it would prematurely and unfairly prejudice Plaintiff and his ability to meet his burden on his retaliation claims. For example, Defendants seek to exclude PTX107 (an article entitled "When Talking About Bias Backfires"). Plaintiff and Reid discussed this article, at a Firm meeting, while sitting at the same table. *See* Plaintiff's TAC, ECF 200 ¶ 57-59; ECF 209 ("Defs' Answer") ¶ 57-58 (admitting "When Talking About Bias Backfires" distributed in advance of Firm event"). Evidence is not rendered unfairly prejudicial and thus inadmissible merely because it may hurt a defendant's case. In order to be inadmissible under FRE 403, evidence must be unfairly prejudicial. This is not the case here. PTX107 is directly relevant to the complaints Cardwell made, when he made them, why he made certain complaints to Reid, as well as Plaintiff's theory of the case.

Exhibit PTX107 is a good example why the Court should deny this motion and defer other evidentiary rulings until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context. At this stage, there is no way Plaintiff can address every type of exhibit or piece of evidence that could be swept up by Defendants vague request to "exclude evidence intended to corroborate Cardwell's discrimination claims." Some of the evidence Defendants believe is "intended to corroborate Cardwell's discrimination claims" is inextricably intertwined with evidence relevant to and necessary for Cardwell retaliation claims.

---

[5] *See* ECF 259 "#5 Exhibit 102" or PTX312 and PTX313.
[6] *See* ECF 259 "#5 Exhibit 102" or PTX312 and PTX313.

Also, Defendants seek to exclude, PTX137 ("The American Lawyer, What's Wrong With This Picture?"). PTX137 is a June 2014 article that appears in a widely read legal publication. The article highlights that Davis Polk had no Black partners in 2014 (i.e., shortly before Cardwell arrived at the Firm)[7] and asserts Reid "sa[id] that his firm recruits aggressively for top black law graduates, only to see them leave the firm a few years …[and] senior black lawyers are hard to replace," among other statements. Cardwell's contemporaneous knowledge of these issues and this article, which are directly relevant to Plaintiff's and Defendants' state of mind during his employment, the concerns and complaints he communicated, when he communicated them, and who he communicated them to.[8] PTX137 is also relevant to Plaintiff's theory as to why Defendants' threatened Plaintiff, were concerned their reputations might be hurt if his complaints became public, and fired Plaintiff. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 92 (2d Cir. 2015) ("Some of these actions, considered individually, might not amount to much. Taken together, however, they plausibly paint a mosaic of retaliation and an intent to punish [Plaintiff] for complaining of discrimination.")

This and similar types of evidence are direct, circumstantial, and "background evidence in support of [Plaintiff's] [actionable] claim[s]." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176 (2d Cir. 2005).; *see also Zeng v. New York City Housing Authority*, 2023 WL 45534165, at *7 (2d Cir. 2023) (noting "an inference of discriminatory intent may be established by, *inter alia* ... the sequence of events leading to the plaintiff's discharge.") (quoting *Sassaman v. Gamache*, 566 F.3d 307, 312 (2d Cir. 2009)). This evidence is further relevant in that it goes directly to the credibility of Defendants on several issues, including Defendants' defense that

---

[7] Plaintiff does not intend to offer this article for the truth of the matter asserted. As an employee of Davis Polk, Plaintiff had independent knowledge of many of its assertions, including Firm statistics.
[8] On the other hand, if Defendants' request is granted, Defendants will have free reign to talk about alleged performance issues related to Plaintiff during a contentious period.

Plaintiff's concerns and complaints were not discussed either at all, or not discussed in a manner that gave them knowledge of his complaints. The Court should deny Defendants' motion.

<u>Defendants' Exclusive Focus on "Comparators</u>." Defendants seek to exclude "[e]vidence related to purported comparators" on the basis that such evidence is not relevant. Defendants incorrectly believe that because "Plaintiff tried 'to support his discrimination claims by relying on five purported comparators" there is no legal or factual basis to conclude that overlapping evidence might also be relevant to Cardwell's retaliation claims. Defendants are incorrect. They have failed to make any arguments to support a ruling that each and every associate review produced in discovery is irrelevant under FRE 403 regarding Plaintiff's *retaliation* claims.

Defendants' approach is inconsistent with the requirements of FRE 401, 403 and the Court's role in ruling on relevance in the context of actionable or remaining claims. For example, when the Court rejected at the summary judgment ('SJ") stage Cardwell's attempt to argue certain evidence was relevant to his discrimination claims, the Court otherwise recognized that the evidence was relevant to Cardwell's retaliation claims. In the Court's SJ opinion, the Court noted, "[i]n attempting to connect the 'time to go' message to discriminatory motivation, Cardwell alleges that Bick 'testified that the Firm perceived Cardwell to be a 'threat' … [b]ut Bick's explanation of *why* Cardwell was viewed as a threat at that time…raises a potential inference not of discrimination, but of retaliation." ECF 305 at 37 n.7. Thus, there is no basis to categorically conclude any evidence that was insufficient at the summary judgment stage for Plaintiff's discrimination claims are inherently not relevant to Plaintiff's retaliation claims.

For the reasons stated herein, there are associate reviews that Defendants produced in discovery that are relevant to Cardwell's retaliation claims under the Federal Rule of Evidence, including with respect to certain reviews being actionable for impeachment purposes. First, the

reviews Defendants produced in discovery were not requested solely for Cardwell's
discrimination claims. *See* Plaintiff ECF 242-2 (Plaintiff's August 11, 2020 first set of requests
for production) ("First RFP"). Nearly all (if not all) reviews Plaintiff may seek to use at trial
were requested through Plaintiff's RFP No. 165. *Id.* ("All 2014-2020 performance evaluations
and summary reviews of performance reviews for the M&A Assigned Associates.").

  Plaintiff used other RFPs to obtain reviews unrelated to discrimination claims, including:

- RFP 148 ("evaluations and summary reviews" by **Amorosi** between 2014-2018);
- RFP 150 ("evaluations and summary reviews" by **Birnbaum** between 2014-2018);
- RFP 151 ("evaluations and summary reviews" by **Brass** between 2014-2018);
- RFP 152 ("evaluations and summary reviews" by **Butler** between 2014-2018);
- RFP 153 ("evaluations and summary reviews" by **Chudd** between 2014-2018);
- RFP 154 ("evaluations and summary reviews" by **Kreynin** between 2014-2018);
- RFP 155 ("evaluations and summary reviews" by **Goldberg** between 2014-2018);
- RFP 156 ("evaluations and summary reviews" by **Hochbaum** between 2014-2018);
- RFP 158 ("evaluations and summary reviews" by **Mills** between 2014-2018);
- RFP 159 ("evaluations and summary reviews" by **Reid** between 2014-2018); and
- RFP 160 ("evaluations and summary reviews" by **Wolfe** between 2014-2018).

  There is no reference to "comparators" in many review-related RFPs Plaintiff sought.[9]
Plaintiff requested certain partners' and associates' reviews because they are relevant to disputed
or material issues regarding Plaintiff's retaliation claims, including how the Firm and its M&A
partners completed reviews for associates during relevant employment periods, how the Firm's
Lawyer Review System functioned in policy and practice, whether the argument "even as of
2016, Cardwell's performance was so poor 'that it would have warranted giving Cardwell a
message that it was time for him to look for another job' at that time," was pretext and a view
created to fire Plaintiff, (ECF 305 at 68), and whether Plaintiff's performance  reviews in 2017
were the sole cause of his termination, among other disputed and relevant issues. In the context

---

[9] Defendants may argue they produced other associates' reviews not in response to these RFPs, but in
response to RFPs that referenced comparators. Even if true, such reviews are not permanently or
inevitably irrelevant or inadmissible under FRE 403.

of Cardwell's retaliation claims, Defendants' arguments that other associates are not "similarly situated" to Plaintiff is a defense—one they should put to a jury—not a sufficient basis in this case to categorically or prematurely exclude every review belonging to partners who are relevant to a jury's determinations about Plaintiff's staffing, assessments, and termination.

As stated above, the reviews Defendants categorically seek to exclude, pre-trial, are relevant to various issues and events concerning Plaintiff's protected activity, how the Firm's M&A partners' completed reviews or documented poor performance, and Defendants' ordinary course decisions to fire or not fire associates based off certain reviews or performance issues. For example, Davis Polk conducts performance reviews for its attorneys. Defs.' Answer at ¶ 168. As part of its review process, the Firm solicits *written performance reviews* from individual reviewers. *Id (*emphasis added*)*. The Firm utilizes a review template for individual reviews that contains the question: "[D]o you feel this lawyer is performing materially behind, with or ahead of the lawyer's class[?]" *Id.* Upon receiving the *individual performance reviews*, the Firm develops a "consensus message" or "consensus feedback" to be delivered to the attorney being reviewed. *Id* (emphasis added). One Firm partner is asked to deliver the Firm's consensus message to the associate during a subsequent meeting and a record of that subsequent meeting is generally made on a form titled "Lawyer Reviews – Summary Reviews" ("Summary Review" form) and/or the attachments thereto. *Id*. The Summary Review form contains sections relating to principal matters worked on by the reviewee and strengths and weaknesses of the reviewee's performance. *Id*; *see also* ECF 305 at 3 (noting same). Lastly, during Cardwell's time as an associate at the Firm, Firm partners in Davis Polk's M&A group had a practice of meeting annually in or around September or October to discuss the performance reviews of more senior M&A associates (i.e., third-year and more senior associates). Defs.' Answer ¶ 92.

Kreynin was an M&A partner in Davis Polk's Corporate group and has been a Davis Polk partner since 1999. ECF 223-75 at 33 (RFA No. 57) (PTX025). Birnbaum became a Corporate/M&A partner in July 2016. Defs.' Answer ¶ 11. He served as one of two junior staffing partners in the M&A group between approximately July 2016 and August 2018. *Id*.

Around August 16, 2016, Cardwell was staffed on a transaction involving Kreynin and a senior M&A associate. *Id*. at ¶ 243. On September 27, 2016, Carolina Fenner, a manager and staffing coordinator in the Firm's Associate Development Department, sent Kreynin an email: "Hi Len. See below that these were the partners for whom our system generated reviews for Kaloma (based on hours worked per matter)." ECF 223-38 at 2 (PTX365). Kreynin's name was listed as a partner for whom the Firm's system had generated review forms for Cardwell. *Id*.

Kreynin delivered Cardwell's annual review during the second half of December 2016. Defs.' Answer at ¶ 324. On March 28, 2017, Kreynin created a summary review form that includes a "comments received from" section. The "comments received from" section of the summary review form Kreynin created lists nine names, including Kreynin's. ECF 223-9 at 31 (DTX164). Certain Defendants have testified that the meaning of "box 3 where it says comments received from" means or refers to "written reviews" and "written reviews were received from."

Despite such testimony and Kreynin's 2016 summary review form for Cardwell listing Kreynin's name in box 3 where it says comments received from, at no point during Cardwell's employment or since has Cardwell or this Court received or seen a written individual review that Kreynin completed for Cardwell. *See* ECF 223-9 at 2-42 (showing Cardwell's reviews Defendants filed in their MSJ). Kreynin's summary review form dated March 28, 2017 is the **only** summary review form for Cardwell that lists a name in box 3 "comments received from"

without there also being an individual review for every name listed in that section. *Id.* Kreynin's

individual review is the only review that breaks the norm for how his reviews were completed.

Multiple times on an annual basis, at least with respect to 2015 through 2017, Kreynin

received multiple emails that explained the Firm's guidelines concerning the Firm's "Lawyer

Review System" and how partners should complete written reviews for associates they worked

with. For example, in September 2015, the Firm's Associate Development Department emailed

the following guidelines and instructions to Kreynin:

> The annual review process starts today with the distribution of
> review forms. You are being asked to complete reviews for
> associates who have billed…to a matter on which you were one of
> the most active partners or counsel….
>
> **The Lawyer Review System offers you the option to (i) refer
> the review to another partner, counsel or senior associate or
> (ii) to elect "No Review" in cases where you did not have
> enough contact with the associate to complete a review**.
>
> In the event that you think a senior associate may be better able to
> provide meaningful feedback, you should speak with the senior
> associate to let him or her know that you have referred the review.
> Alternatively, you may incorporate the insights provided by the
> senior associate into your evaluation form…**Completed forms
> will be retained in the system as required by law**.

ECF 256-20 at 2 (emphasis added) (PTX045). In addition to the option to complete

written individual reviews, Kreynin and other M&A partners were repeatedly told that "The

Lawyer Review System offers [them] the option to (i) refer the review to [another lawyer] or (ii)

elect 'No Review' in cases where you did not have enough contact with the associate to complete

a review." These instructions were circulated to the Firm's M&A partners on an annual basis in

2015, 2016, and 2017. *Id*. (PTX045); see also ECF 256-22 at 2 (PTX061); ECF 256-24 at 2

(PTX070).  According to a declaration Kreynin submitted in connection with Defendants' 2021

MSJ, Kreynin stated, under the heading "Experience Working with Mr. Cardwell":

> In his time at the Firm, Mr. Cardwell worked on three of my deal
> teams, including 'Project Giant,' on which Mr. Cardwell billed
> time between August and November 2016. I had occasion to work
> directly with Mr. Cardwell on the Project Giant matter and to
> become familiar with his work. Mr. Cardwell's overall
> performance was poor, and his work product was not what I expect
> from a junior associate at Davis Polk.
>
> For example, Mr. Cardwell worked in the fall 2016 timeframe on
> an exclusivity agreement for Project Giant. In the course of his
> work, Mr. Cardwell made unacceptable and fundamental errors."
> ECF 228 at 1-2 (PTX009).

Notably, Plaintiff was on a list of M&A associates whose performance reviews were

scheduled to be discussed at an October 5, 2016 meeting of the M&A group. Defs.' Answer at ¶

176. Regarding this meeting, Kreynin's declaration asserted:

> In the fall of 2016, partners in the M&A Group held our customary
> series of meetings to decide upon the consensus message to be
> delivered to…associates. I was assigned, in the ordinary course of
> my duties in the M&A Group, to deliver Mr. Cardwell's
> consolidated 2016 annual performance review. I recall attending
> the meeting at which Mr. Cardwell's performance was discussed
> and describing my recent experience working with Mr. Cardwell
> on Project Giant. I conveyed, in sum or substance, that having
> worked recently and closely with Mr. Cardwell, I considered him
> to be a poor performer and that his work was unreliable and
> required close supervision. ECF 228 ¶¶ 8-9 (PTX009).

Kreynin's "ordinary course" of "duties," in 2016, required Kreynin to complete a written

performance review for Cardwell unless he did not have enough interaction to do so.

In the October 4, 2016 review for "Associate 8," Kreynin's review states Associate 8 was

"behind," has "a real knack for getting stuff wrong and not just slightly wrong but in 180 degrees

opposite of what was discussed with a client," "doesn't understand what is going on," "can be a

useful citizen…but only if closely supervised," and has caused Kreynin to "reach[] a point where

[Kreynin] [doesn't] believe that any document that [they] drafts or revises should go out without

review by someone else." ECF 231-10 at 20 (PTX555). **"Associate 8" was an associate in Cardwell's class**. *See* ECF 224 at 3 (PTX010) (emphasis added).

In one of the October 9, 2016 reviews, Kreynin's review for "Associate 3" answered "behind" to the question, "[D]o you feel this lawyer is performing materially behind, with or ahead of lawyer's class" and noted that their "overall quality of [their] work is such that [Kreynin] would be hesitant to entrust with a complex project presenting new or complicated issues." ECF 231-5 at 5 (PTX544). In the other October 9, 2016 review, Kreynin stated, among other comments, "Associate 7" is a "complicated review," "a very slow drafter," with "workproduct [sic] [that] is often late." ECF 231-9 at 45 (PTX577).

In light of Davis Polk's Lawyer Review System and the instructions Kreynin and other M&A partners routinely received, Kreynin's 2016 reviews, including, PTX544, PTX555, PTX577, are relevant to Defendants' and Kreynin's credibility and Defenses, as the fact that these individual reviews exist for other associates but not Cardwell makes it more likely for a jury to believe Defendants' and Kreynin's testimony and arguments about Plaintiff's performance in the fall of 2016 are a pretext and a lately created excuse for retaliatory reasons. "From such discrepancies, a reasonable juror could conclude [such] explanations were a pretext…." *See Zann Kwan v. Andalex Grp.*, LLC, 737 F.3d 834, 845 (2d Cir. 2013).

Therefore and relatedly, based on the facts and considerations noted herein, Defendants' motion should be denied so that Cardwell can use, at a minimum, the following reviews:

- Kreynin's 2016 reviews (e.g., ECF Nos. 231-10 at 20 (PTX555), 231-5 at 5 (PTX544), 231-9 at 45 (PTX577));
- Bick and M&A partner Gar Bason's November 22, 2016 Annual Review of "Associate 5" (PTX532)(ECF 231-7 at 31-32, noting "Associate 5" needs to improve performance **"if [they] want to stay here"** and was told they "should view the fact that [they] [were] being given lower level tasks as an indication of [their] failure to demonstrate a skill set and energy level consistent with higher level tasks") (emphasis added));

- M&A partner John Butler's October 9, 2016 individual review of "Associate 7" (PTX578) (ECF 231-9 at 12, putting "**behind**" directly in response to the question 'do you feel this lawyer is performing materially behind, with or ahead of lawyer's class.'" (emphasis added));

- M&A partner Lee Hochbaum's November 9, 2016 Annual Review of "Associate 8" (PTX556) (ECF 231-10 at 31, noting "Associate 8" is "prone to making careless mistakes and [their] analytical skills need to improve before [they] [are] ready to handle matters…on the team" and that "[they] will need to put in hard work to advance to the next level");

- Hochbaum's December 7, 2016 Annual Review of "Associate 7" (PTX579) (ECF 231-9 at 70, noting the "evaluation was mixed" and that "there are ongoing concerns about [their] efficiency, which can **make it difficult to staff [them] on fast-moving transactions or multiple transactions** at the same time…." (emphasis added));

- M&A partner Michael Davis's September 22, 2016 individual review of "Associate 7" (PTX575) (ECF 231-9 at 27, noting associate was "**behind**," "performing behind [their] class," and "inefficiency…causing [them] to **miss deadlines**" (emphasis added);

- Davis's September 23, 2016 individual review of "Associate 9" (PTX588) (ECF 231-11 at 25, noting, "I think that on any drafting that is not straightforward [their] work needs to be reviewed, and also any documents that are not straightforward need to be reviewed to make sure no material issues have been missed [and] I am hopeful that **with the proper supervision** and on the job training [they] can continue to develop into a solid [redacted by Defendants]" (emphasis added));

- M&A partner John Amorosi's September 25, 2016 individual review of "Associate 9" (PTX589) (ECF 231-11 at 6, stating, [they] is not yet as facile with the issues as some of [their] peers," as well as doubting the associate's ability to succeed at the Firm);

- Birnbaum's September 12, 2016 of "Associate 2" (PTX522) (ECF 231-4 at 7, noting "Associate 2" received a negative review from Birnbaum but later was considered to have an overall good year based on others' reviews and the "consensus feedback" for "Associate 2");

- Birnbaum's December 7, 2016 Annual Review of "Associate 2" (PTX523) (ECF 231-4 at 25, noting, "Associate 2" had a good year, despite "areas of improvement" related to "substantive skills issue spotting, issue solving, drafting) and **attention to detail** (particularly **avoiding sloppy mistakes**, which [Birnbaum] noted is a comment repeated from prior reviews)" and Birnbaum telling Associate 2 in 2016 that "these are **not surprising areas of improvement** for an associate [their] level") (emphasis added); [10]

- Birnbaum's December 8, 2016 Annual Review of "Associate 6" (an associate in Cardwell's class) (PTX564) (ECF 231-8 at 33, noting, "[i]n terms of areas of improvement, I said [they] should **focus on care and attention to detail, as sloppy mistakes have sometimes crept into [their] work**, but overall [they] is doing a very

---

[10] Associate 2 was an associate who was one year **more senior** than Cardwell in 2016. *See* ECF 224 at 3.

good job").

Such reviews would not be offered for the truth of the matter asserted, but to show what Defendants routinely documented in the ordinary course. In the fall of 2016, these associates and Cardwell were subjected to the same "Lawyering Review System" that utilized the collection of written information from partners through individual reviews. Nothing about their title, seniority, experience, or background would have led them to be subjected to a "Lawyer Review System" not based on written reviews. *See* Defs.' Answer at ¶¶ 92 ("Firm partners in Davis Polk's M&A group had a practice of meeting annually in or around September or October to discuss…**performance reviews**"), *Id*. at ¶168 ("Firm solicits **written performance reviews** from individual reviewers"); ECF Nos. 256-20 at 2 (PTX045), 256-22 at 2 (PTX061); 256-24 at 2 (PTX070) (each effectively stating, "you are…asked to complete reviews").

Defendants have argued and will continue to argue Kreynin, other M&A partners Cardwell worked with in 2016 (e.g., Amorosi, Butler, Hochbaum, Bick, Gar Bason Jr. and Michael Davis), and the M&A staffing partners at the time (e.g., Birnbaum) had the view "that [Cardwell's] **performance reviews** were bad enough that people had lost confidence in him and he wasn't getting work" from November 2016 - March 2017 as a result, as Reid testified. *See* ECF 256-7 at 34 (Reid Tr. 217:23-218:24). Thus, a jury should be allowed to consider, at a minimum, these same partners' and other M&A partners' 2016 individual and summary reviews to determine how other M&A partners' reviews relate to their credibility, testimony, and defenses about Plaintiff's performance. Such evidence is made further relevant by the fact that Reid took blame and testified that he told Plaintiff in March 2017 that Defendants "dropped the ball." *See* ECF 305 at 68 ("For instance, in their March 2017 meeting, Reid told Cardwell that

the Firm 'had dropped the ball' 'with respect to issues related to [Cardwell's] staffing,' rather than blaming it on Cardwell's poor performance. ECF 260 Ex. 117 at 397:19–23.")

Ultimately, the fact that, in the fall of 2016, the Firm's M&A partners consistently *created individual* reviews; noted associates were "behind" in individual and summary reviews; and memorialized criticisms, warnings and potential firings in other associates' reviews but not Cardwell's are all relevant, highly probative evidence concerning Cardwell's retaliation claims. Whether the issue is about Defendants' changing their position as to who "dropped the ball—or Defendants "overstat[ing] the extent to which early…performance reviews were contemporaneously communicated to Cardwell" in the Firm's NYSHDR Brief—or the Firm "overstating" which performance reviews and critiques were discussed and communicated to each other during the Fall 2016 M&A partners' reviewing meetings—on all fronts, a jury should be allowed to see the evidence related to Defendants' changing and overstating their performance assessments of Plaintiff, including because such evidence could lead a reasonable jury to doubt the Firm's broader statements about Cardwell's performance.

The documents and evidence that shows how, why, and when Defendants and their partners routinely created performance reviews and discussed such performance reviews in the Fall of 2016, along with the reviews themselves, are relevant evidence to a jury's determination of whether Defendants truly discussed Cardwell during the 2016 partner meetings the way Defendants' did not claim they did until after Plaintiff filed his (i) EEOC and NYSDHR complaints and (ii) his federal complaint. *See Zann Kwan*, 737 F.3d at 845 ("A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action. From such discrepancies, a reasonable juror

could conclude that the explanations were a pretext for a prohibited reason."); *Tainsky v. Clarins USA, Inc.*, 363 F. Supp. 2d 578, 585 (S.D.N.Y. 2005) (stating that lack of verbal or written warnings regarding poor performance, among other factors, undercut employer's suggestion that employee was fired due to poor work performance); *Conklin v. Cnty. of Suffolk*, No. 09 Civ. 3014, 2012 WL 1560390, at *17 (E.D.N.Y. May 3, 2012) (holding that employer's lack of documentation of supposed longstanding attendance problems supported inference that attendance issue was a pretext for retaliation).

Cardwell respectfully requests this motion be denied in its entirety, including Defendants' request to exclude every review belonging to an associate other than Cardwell, as (i) many reviews (including those identified herein) are relevant to the retaliation claims, (ii) such reviews are not unfairly prejudicial to Defendants or otherwise excludable under FRE 403, and (iii) any prejudice from such reviews do not outweigh their highly probative value to Plaintiff's retaliation claims. "[T]he significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Burlington Northern*, 548 U.S. at 69.

### DEFENDANTS' MIL <u>NO. 2</u> SHOULD BE DENIED IN ITS ENTIRETY

Defendants' Motion in Limine No. 2 is overbroad, vague, and seeks to give themselves the ability to use witnesses to talk about the employment actions specified in ECF 325 at 17 n.4—while preemptively preventing Plaintiff from offering testimony or evidence regarding (i) the same events or evidence mentioned at ECF 325 at 17 n.4, (ii) the events leading up to his protected activity, (iii) Defendants' discussions, reactions, and responses to his protected activity, and (iv) nearly all context surrounding actions that do not have to be protected activity or "adverse employment actions" to be relevant to Plaintiff's concerns and complaints and the parties' credibility.  Also, Defendants' improperly and unfairly seek to exclude evidence relevant

16

to Plaintiff's theory of his case and his ability to "prove that retaliation was a but-for cause of an adverse employment Action," including evidence that would "demonstrate[e] weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." *See Zann Kwan*, 737 F.3d at 845.

Accordingly, Plaintiff requests that the Court deny this motion as premature at this stage in litigation and permit Defendants to object during trial to specific facts or testimony when the context of the communications or evidence is more clear. An action not being an "adverse employment action" at the summary judgment stage does not inherently make that action or related evidence "irrelevant" or otherwise prohibited under FRE 403. *See* ECF 325 at 18. However, granting Defendants' motion would be unfairly prejudicial to Plaintiff under FRE 403 and would cause jury confusion and waste stemming from incomplete testimony and Defendants' repeatedly objecting and claiming the Court's SJ ruling deemed large swaths of evidence, events, documents, and actions completely "irrelevant" under FRE 403.

## DEFENDANTS' MIL <u>NO. 3</u> SHOULD BE DENIED IN ITS ENTIRETY

Here, Defendants seek to exclude not "character evidence" but relevant evidence that relates to the parties' credibility. Also, the evidence they seek to exclude is relevant because it will show (i) the frequency in which and reasons why Defendants routinely discussed Plaintiff and his communications during his employment; (ii) Defendants often had positive and favorable assessments and discussions about Plaintiff's competencies and knowledge about how Davis Polk associates could be effective and successful at the Firm; (iii) how Defendants trusted or followed Cardwell's advice and recommendations on how their *midlevel and senior* associates should be trained, including during time periods they now claim Cardwell was failing to perform at the level of any associate (PTX418, PTX419, PTX423); and how Defendants' discussions,

17

concerns (e.g., about the Firm's reputation being harmed if Plaintiff's complaints become public), threats, and manner of firing Cardwell took into consideration Cardwell's professional activities, competencies, and standing in various legal communities and networks. *See, e.g.*, PTX154, PTX155, PTX158, PTX174, PTX200, PTX416, PTX418, PTX419, PTX420, PTX423, PTX458, PTX695- PTX697, and PTX699. All of this evidence is relevant to the parties' credibility and will make it more likely for a jury to believe Defendants' defenses are pretext.

Also, Defendants explicitly and improperly seek to exclude their judicial admission about a letter that comes from Sheila Adams, a witness on both parties' witness list who is now a Davis Polk partner and who Plaintiff repeatedly discussed his concerns and protected activity with during his employment. *See, e.g.*, ECF 334, PTX281, PTX325, PTX342, PTX360, PTX410. Ms. Adams October 2016 letter is plainly relevant to the parties' claims and defenses and all the parties' credibility. Ms. Adams October 2016 letter stated, "I first became aware of [Mr. Cardwell]…at the law firm where he and I work, Davis Polk & Wardwell LLP…[O]ur many conversations…have led me to see [Mr. Cardwell] as one of the few people in an office of over 700 people who is my go-to person for key decision points, whether I'm considering navigating the politics of potential partnership consideration or troubleshooting ways to get better to ensure the success of our diverse peers." See ECF 209 ¶ 313.

Also, Defendants seek to exclude relevant evidence related to Plaintiff's understanding, training, and expertise concerning Davis Polk and law firm dynamics, including facts and evidence related to him being an advisor to the New York City Bar Association and designing associate development trainings for law firm associates—while Defendants rely on their "expert" witness to provide testimony about these and similar issues. *See* PTX695-PTX697, PTX699;

ECF 334 at 376) ("Dr. McCrary will testify regarding law firm labor market characteristics, the 'up-or-out' model, including at Davis Polk.")

Cardwell requests the Court deny this motion because granting Defendants' motion would exclude relevant, highly probative evidence and be unfairly prejudicial under FRE 403 to Plaintiff, not Defendants. Plaintiff will offer or use such evidence without triggering "hearsay."

## DEFENDANTS' MIL <u>NO. 4</u> SHOULD BE DENIED IN ITS ENTIRETY

Plaintiff respectfully requests the Court deny this motion in its entirety.

**<u>Evidence concerning other current or former Davis Polk employees</u>**. Cardwell's communicated concerns and complaints are inextricably intertwined with other associates' experiences during his employment. The Firm's committees routinely discussed Cardwell's and other associates' concerns during the same meetings. Defendants seek to exclude relevant evidence that would make his theory of the case more probable and is critical context, including (i) his motivations and reasonable good faith belief that he **and others** were being discriminated against at Davis Polk; (ii) the reasons he expressed his concerns and made complaints, as well as the reasons he communicated his concerns and complaints to the specific individuals at the Firm (and not others); (iii) how and why individuals who had knowledge of his concerns and complaints discussed Cardwell's concerns and complaints with Defendants and other Firm leaders who worked with Defendants,[11] including Cardwell's September 2015 Complaint and the Bag/Diversity Committee meeting itself;[12] (iv) why Reid told Cardwell to stop making

---

[11] *See, e.g.,* ECF 256-55 (PTX143) ("It has been suggested that we each come to the meeting with…an issue or concern we should look to tackle in 2015); ECF 256-72 at 7 (PTX223) (the Chair of the Firm's Diversity Committee stating, one day before Cardwell made his September 2015 complaint, "My personal opinion is that retention and development/promotion are the areas" of "biggest need…with respect to diversity at the firm");

[12] For example, the Firm's Diversity Committee and other committees discussed Cardwell's concerns and complaints at the same time they discussed other associates' concerns and complaints, including because

complaints or else he would be "off the field"; (v) why "Bick stated in his testimony that after

Cardwell filed his EEOC complaint (the August 2017 complaint), people at the firm 'recognized'

that 'if [Cardwell] went public with his complaints, there would be news coverage and [people]

could have [their] reputation harmed through these complaints.'"[13]; (vi) why Defendants'

knowingly "overstated" Plaintiff's performance issues in order to cover up past employment

experiences and quickly fire him; and (vii) the reckless disregard of Plaintiff's rights that resulted

from Defendants repeatedly discussing the Firm's "vestiges cultural barriers,"[14] with knowledge

of his protected activity,[15] and continuing to position themselves to fire Cardwell based off the

very concerns they demanded Cardwell disclose, among other issues a jury will evaluate.

      And, evidence related to other associates' concerns and Defendants knowledge of such

concerns are relevant to the credibility of Defendants and others who deny discussing Cardwell's

concerns and complaints but who otherwise routinely discussed other associates' concerns.

      ***Martinez* v. *Davis Polk & Wardwell LLP* (E.D.N.Y. No. 1:14-cv-03741)**. The *Martinez*

case is relevant to show motive, opportunity, intent, preparation, plan, knowledge, and absence

of mistake, as permitted under FRE 404(b)(2). Bick and Reid, as members of the management

committee were required by Firm policy to have knowledge of the *Martinez* case.[16]  Material

events and disputes in this case are "inextricably intertwined" with the knowledge Davis Polk

and its Management Committee obtained in the motion for summary judgment Davis Polk filed

---

the Diversity Committee and Firm leaders were systemically seeking and receiving feedback from the
Firm's minority affinity groups and routinely providing reports to the management committee about the
concerns and feedback they received. *See, e.g.,* (PTX220), (PTX221) (PTX223) (PTX465) (PTX466)
(PTX484) (PTX305) (PTX306)

[13] *See* ECF 305 at 66; ECF 259 Ex. 105 at 212:3–16).

[14] *See* ECF 259 "#5 Exhibit 102" or PTX312 and PTX313.

[15] *See* ECF 259 "#5 Exhibit 102" or PTX312 and PTX313.

[16] "It is the policy of the Firm that all claims or potential claims…be promptly reported to a member of
the Management Committee." Dkt. No. 256-9 at 45, Jeffries Decl. Ex. 10.

in August 2015—one month before Plaintiff's September 2015 complaint (and won in September 2016).[17] Some of these events and disputes include when, how, and why certain Defendants (i) gave Plaintiff an unscheduled mid-year June 2016 performance review cycle to lay the foundation to fire him; (ii) threatened Plaintiff to stop making complaints or be "off the field," (iii) overstated which reviews were contemporaneously to Cardwell to the NYSDHR, and, ultimately, (iv) decided to fire Plaintiff shortly after his EEOC/NYSDHR complaints. The steps Defendants took during Plaintiff's employment are directly connected to them having **knowledge** of how they planned to win the *Martinez* case in August 2015 and later won the *Martinez* case in September 2016. Plaintiff will not argue the merits of Defendants' actions or defenses in *Martinez*. Rather, FRE 404(b)(2) permits the knowledge they obtained from *Martinez* —as lawyers and management committee members—and the plan they implemented with that knowledge to be considered as part of Plaintiff's theory for Defendants' intent and various employment actions involving Plaintiff and the steps they took to retaliate and fire him.

Also, the Martinez case is relevant as it tends to show Defendants did not merely make a mistake or forget to document poor performance in Plaintiff's fall 2016 reviews. During periods that overlapped the *Martinez* case and Plaintiff's employment, Defendants knew the legal and business reasons for creating written reviews for its employees. They did not document poor performance in the fall of 2016 in Plaintiff's written reviews because that defense is pretext. Facts related to the Firm winning the *Martinez* case based on written reviews makes it more likely for a jury to conclude Defendants arguments about (i) Plaintiff's fall 2016 performance and (ii) why they did not create written reviews for Plaintiff in 2016 are pretext and undermines Defendants' credibility and defenses. Evidence related to the *Martinez* case and Defendants'

---

[17] The Firm won summary judgment on Sept. 23, 2016, just weeks after Plaintiff's Sept. 2016 complaint.

knowledge, as well as how such knowledge connects to retaliation Plaintiff experienced, are relevant. Any prejudice to Defendants does not outweigh *Martinez's* highly probative value.

## DEFENDANTS' MIL <u>NO. 5</u> SHOULD BE DENIED IN ITS ENTIRETY

This motion should be denied in its entirety. Plaintiff's EEOC and NYSDHR charges and the EEOC Right to Sue Letter (among other administrative responses) are clearly relevant, not being offered for the truth of the matters asserted, fall within hearsay exceptions, are probative and not outweighed by prejudice, and, therefore, should be admitted.

Plaintiff's EEOC/NYSDHR may be admitted for non-hearsay purposes—"for example, to establish the dates Plaintiff engaged in protected activity and to establish the dates Defendants had knowledge of Plaintiff's EEOC charges." *See Mugavero v. Arms Acres, Inc.*, 2009 WL 1904548, at *5 (S.D.N.Y. July 1, 2009). Plaintiff's original charge of August 3, 2017, rebuttal to Davis Polk's NYSDHR Position Statement of January 10, 2018 ("NYSDHR Brief"), supplemental charge with the EEOC of April, 2018, and the EEOC and NYSDHR responses are admissible because they are not being introduced for the truth of the matter asserted, but to show that (i) Plaintiff engaged in protected activity and his protected activity explicitly mentioned the names of Defendants along with his allegations, (ii) that Plaintiff's protected activity also alleged retaliation, (iii) Defendants had knowledge of his protected activity (including that their names were mentioned in Plaintiff's charges prior to their decision to fire Plaintiff), (iv) there is a causal connection between Defendants' knowledge of protected activity and certain alleged materially adverse actions, such as Defendants firing Plaintiff, (v) the EEOC and/or NYSDHR communicated to Defendants that Plaintiff had certain rights under certain laws, and (vi) Defendants made materially adverse actions with (a) the requisite amount of awareness that their actions might violate the law or (b) a conscious disregard of Plaintiff's rights to warrant punitive

damages. *See, e.g.*, PTX118 (Charge); PTX120 (Rebuttal to NYSDHR Brief); PTX121

(Supplemental Charge). The charges are clearly relevant and highly probative for these reasons.

The Court has already acknowledged the relevancy of Plaintiff's charges, as the Court

has held that "Cardwell has introduced direct evidence that individuals at Davis Polk viewed his

complaints as threatening, which a jury could find supports an inference of retaliation." ECF 305

at 66. And, "Bick stated in his testimony that after Cardwell filed his EEOC complaint (the

August 2017 complaint), people at the firm 'recognized' that "if [Cardwell] went public with his

complaints, there would be news coverage and [people] could have [their] reputation harmed

through these complaints… A reasonable jury could view these facts as evidence that Davis Polk

was concerned about Cardwell's complaints of race discrimination, and was therefore motivated

(by retaliatory animus) to terminate Cardwell." ECF 305 at 66-67.

Defendants argue that "neither the Charges nor the Right to Sue Letter constitute

substantive findings and are, as a result, irrelevant, likely to confuse the jury, and their probative

value is substantially outweighed by the risk of unfair prejudice to Defendants." ECF 325 at 30.

First, Plaintiff is not attempting to use his Charges for the truth of the matter asserted, or to argue

that there was an administrative finding that Defendants engaged in discrimination or retaliation.

*See Ayton v. Lenox Hill Hosp.*, No. 93 Civ. 6601 (BSJ), 1997 WL 10000, at *4 (S.D.N.Y. Jan.

10, 1997) ("To establish that an activity was protected, a plaintiff need not prove the merit of her

underlying discrimination complaint, but only that she was acting under a good faith, reasonable

belief that a violation existed").  Second, the fact that certain underlying discrimination claims

were dismissed at the summary judgment stage does and would not create inherent confusion,

prejudice, or waste in this case. Plaintiff's proposed jury instructions (or other appropriate

instructions would) make clear the case is about retaliation. *See* ECF 339 (Charge Nos. 26-29).

23

To support Defendants' Motion *In Limine* No. 5, and specifically the argument that there is "little to no probative value because it is duplicative of evidence and testimony that Plaintiff will present at trial" (ECF 325 at 32-33), Defendants' motion cited *Elam* v. *Concourse Vill., Inc.*, 2017 WL 1383984, at *2 (S.D.N.Y. Apr. 7, 2017), *Dollman* v. *Mast Industries, Inc.*, 2011 WL 3911035, at *1 (S.D.N.Y. Sept. 6, 2011), and *Targonski* v. *City of Oak Ridge*, 921 F. Supp. 2d 820, 825 (E.D. Tenn. 2013), among other inapposite cases.[18]  *Elam* is a case where the Plaintiff moved to preclude his charges and the EEOC's Right to Sue letter under FRE 403 because of the plaintiff's concerns (i) about the appearance of plaintiff changing the basis of their complaint and (ii) that the agency's finding might "improperly suggest to the jury that it should reach the same conclusion as the administrative body." *Elam*, 2017 WL 1383984, at *2. These are not issues in this case, nor is Plaintiff "sole purpose" of using the Right-to-Sue letter "to prove that plaintiff has satisfied the jurisdictional prerequisites to bringing suit." *Id*.

*Dollman* is also misplaced, as it is a case about excluding the NYSDHR's "Determination After Investigation and Final Investigation Report." This is not an issue in this case. Also, Plaintiff will not ask the jury to reach the same conclusion as the NYSDHR and there was no similar determination where such determination could be used to "suggest to the jury that it should reach the same conclusion as the agency." *See Dollman*, 2011 WL 3911035, at *1.

---

[18] Defendants also cited to *Paolitto* v. *John Brown E & C, Inc.*, 151 F.3d 60, 65 (2d Cir. 1998) and *Spruill* v. *Winner Ford of Dover, Ltd.*, 175 F.R.D. 194, 197 (D. Del. 1997). *Paolitto* is a case where the Second Circuit rejected an appellant's argument that a lower court abused its discretion in excluding the findings of a state agency's investigation, which the employer-appellant in that case wanted included because the state agency's finding was favorable to the employer and the employer lost at trial. The Second Circuit upheld the lower court's ruling (excluding the agency's determination), in part, because the employer argued the "EEOC or state-agency determinations must be admitted categorically," the employer "sought to admit the…investigative file only as a foundation for the introduction of the [agency's] ultimate finding of no probable cause," and "the evidence [employee] introduced at trial undercut many of the [state agency's] factual findings and [the employer] had a full opportunity to present to the jury all the evidence it had submitted to the [state agency]." *Paolitto*, at 151 F.3d at 66. These issues are not part of this case.

Lastly, *Targonski* is not applicable either, as it is a case where the plaintiff's "hostile work environment claim" was "the only claim that will be in front of the jury" and the plaintiff argued her charges were relevant because "the filing of her EEOC charge evidences that she complied with Title VII's procedural requirements." *Targonski*, 921 F. Supp. 2d at 825. Plaintiff's claims have different elements, and there is no procedural requirements issue.

To the extent Defendants seek the exclusion of Plaintiff's Right-to-Sue letter based on the argument that *all* EEOC or NYSDHR *determinations* are inadmissible, including the mere notice of a Right-to-Sue letter, that argument is neither the accepted view in the Second Circuit nor the accepted view in the cases Defendants cite. In *Paolitto*, the Second Circuit explicitly held that "Judge Goettel might well have been within his discretion in admitting the [agency's] determination in these circumstances." *Paolitto*, at 151 F.3d at 66. Ultimately, in this case, unlike *Paolitto*, the administrative agencies letters and communications do not violate FRE 403, as there will not be a "protracted and unproductive struggle over how the evidence admitted at trial compared to the evidence considered by the agency." Moreover, the EEOC and NYSDHR letters and communications are admissible under applicable rules of evidence as public records (and do not include investigative findings or opinions). *See Paolitto*, at 151 F.3d at 65; FRE 803(8).[19]

Defendants can make objections during trial. And, no prejudice to Defendants outweighs its probative value. Plaintiff's respectfully request this motion be denied in its entirety.

### DEFENDANTS' MIL <u>NO. 6</u> SHOULD BE DENIED IN ITS ENTIRETY

---

[19] The Right-to-Sue Letter and all of the EEOC and NYSDHR agencies letters are admissible under FRE 803(8), as they are public records and Defendants' do not and cannot show that there is a lack of trustworthiness around the communications themselves (which do not detail any investigative findings or opinions). *See Spruill*, 175 F.R.D. at 197.

Defendants seek to exclude Davis Polk's NYSDHR Brief to Plaintiff's dual-filed EEOC and NYSDHR complaints for irrelevant and unsupported reasons. *See* ECF 325 at 34. Notably, Defendants' own omnibus motion recognizes that a party may use another party's EEOC and NYSDHR administrative submissions against such party as a party admission. *See* ECF 325 at 31 n. 7 ("Defendants may...use the Charges...as a party admission.").

"Rule 801(d)(2) excludes certain statements from the definition of hearsay if "[t]he statement is offered against an opposing party and: (A) was made by the party in and individual or representative capacity; (B) is one the party manifested that it adopted or believed to be true; (C) was made by a person whom the party authorized to make a statement on the subject; (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed...." FRE 801(d)(2)." *Belabbas v. Inova Software Inc.*, 2019 WL 13258046, at *2 (S.D.N.Y. Oct. 1, 2019). "Defendants' position statements—if offered by Plaintiff—are not hearsay because they are [party] admissions." *Mugavero*, 2009 WL 1904548, at *4.

Plaintiff seeks to offer Defendants' NYSDHR Brief and administrative responses as party admissions. The Court already recognized the Firm's NYSDHR Brief was relevant to several issues, including because "[t]hat the Firm appears to have, at the least, overstated the extent to which early...performance reviews were contemporaneously communicated to Cardwell could lead a reasonable jury to doubt the Firm's broader statements that Cardwell's performance was, in fact, disappointing from the start." ECF 305 at 67-68. There are other statements in the NYSDHR Brief that could lead a reasonable jury to doubt the Firm's defenses.

Also, there is additional "evidence [that] could support a conclusion that Cardwell's performance was not viewed particularly negatively by the Firm until he filed his EEOC complaint," including the statement appearing in the Firm's NYSDHR Brief that claimed "even

as of 2016, Cardwell's performance was so poor 'that it would have warranted giving Cardwell a message that it was time for him to look for another job" at that time.'") *Id*. at 68

A jury should be allowed to consider Defendants' party admissions in the context of other evidence. For example, "Bick stated in his testimony that after Cardwell filed his EEOC complaint (the August 2017 complaint), people at the firm 'recognized' that 'if [Cardwell] went public with his complaints, there would be news coverage and [people] could have [their] reputation harmed through these complaints.'" ECF 305 at 66; ECF 259 Ex. 105 at 212:3–16). Plaintiff agrees with the Court that "[a] reasonable jury could view these facts as evidence that Davis Polk was concerned about Cardwell's complaints of race discrimination, and was therefore motivated (by retaliatory animus) to terminate Cardwell." *Id*. at 66-67. This is especially true when a jury considers that Davis Polk filed a "Position Statement" to the NYSDHR that is full of factual inaccuracies about its own business practices (e.g., performance review system and what was communicated to Cardwell)—inaccuracies that are contradicted by many internal documents that (i) Defendants' personally saw and knew about in the ordinary course and prior to Davis Polk filing the NYSDHR Brief and (ii) that describe a different performance review system than the one described by Defendants in the NYSDHR Brief. *See, e.g.*, PTX045-PTX047, PTX051, PTX053, PTX054, PTX061 - PTX063, PTX066, PTX070, PTX072, and PTX076.

To deal with these truths, Defendants' motion asserts that "Cardwell did, however, acknowledge that the Answer was prepared by counsel for Davis Polk." ECF 325 at 34. First, Davis Polk's NYSDHR Brief includes a "Factual Background" section that is about fifteen pages. ECF 271-1 at 6-22 (PTX115). If Defendants intend to or do argue at trial that it was "counsel," not Defendants, who were responsible for the "Factual Background" section of the Firm's official response to Plaintiff's protected activity, then such "counsel" are fact witnesses

and should be allowed to be called as witnesses, as requested by Plaintiff in the proposed joint

pretrial order. ECF 334 at 33; *see also Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28,

38 (E.D.N.Y. 2013), aff'd, 29 F. Supp. 3d 142 (E.D.N.Y. 2014) ("[W]hen an attorney is used as

a business consultant, the resulting attorney-client communications will not be privileged.); *In re*

*Cnty. of Erie,* 473 F.3d 413, 421 (2d Cir. 2007) ("When an attorney is consulted in a capacity

other than as a lawyer, as (for example) a policy advisor, media expert, business consultant,

banker, referee or friend, that consultation is not privileged.").  Plaintiff flagged this issue for the

Court in the parties' proposed joint pretrial order. ECF 334 at 33. ("Plaintiff's primary concern

relates to Defendants using "privilege" as a sword-and-shield").

 Further, Plaintiff previously alerted the Court to the issue regarding Defendants' attempts

to use "privilege" in impermissible ways, after Defendants repeatedly used "privilege" assertions

to block facts and the identities related to Plaintiff's protected activity. *See* ECF 238 at 20

(counsel for Plaintiff informing the Court on December 17, 2021, "They objected during the

deposition…That information was not given to us. They objected to it on the basis of privilege;

privilege surrounding the names of people that would have been involved in the investigation.");

*Id* at 22 (the Court noting that "[i]n the letter, plaintiff articulates a concern about the assertion of

privilege by defendants); ECF 242-17 at 13 (Defendants' counsel on April 16, 2021 blocking

facts and instructing witnesses not to answer questions about the NYSDHR Brief, stating,

"Objection to the extent it calls for the disclosure of any communications with counsel or any

work product that led to the creation of the answer. All of that is privileged."); ECF 242-13

(counsel for Defendants on April 8, 2021 objecting and stating, "I'm going to object and instruct

the witness not to answer on the grounds of privilege. The investigation that was conducted was

a privileged investigation."); ECF 242-15 at 12 (Defendants' counsel on April 13, 2021 blocking

testimony about facts and instructing witnesses not to answer, stating, "If counsel briefs you on the facts, it is privileged and I direct you not to answer…. Take that to the judge, David."; *Id*. at 14 (counsel for Defendants' blocking testimony after Bick was asked "counsel drove the core arguments. What do you mean by that?" and stating, "[O]bjection to the extent the question calls for the disclosure of information and discussions with counsel, information learned from counsel, I direct the witness not to answer on privileged grounds."); ECF 246-16 at 3 (Defendants' counsel on April 14, 2021 blocking facts and instructing witnesses not to answer questions about the NYSDHR Brief, stating, "I'm going to instruct you not to answer, to the extent that any such knowledge comes from a conversation with counsel, because that information is privileged.")**.**

Critically, the Second Circuit does not allow "[a] defendant [to] use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes." *See United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). Defendants are doing just that in their motion and will attempt to do so at trial. Tellingly, Defendants' motion points the Court to *their* selective disclosure of counsel's role in the Firm's NYSDHR Brief as a basis for why Plaintiff should not be allowed to use the Defendants' NYSDHR Brief at trial— while also claiming facts or testimony from or about "counsel" are blocked on the basis of "privilege." This is an impermissible sword-and-shield/reliance on counsel mechanism. If used or put forth at trial by Defendants, waiver of the "privilege" should result.[20]

As noted above, Defendants selectively quote their own testimony, not Plaintiff's, to make the case for what Plaintiff supposedly acknowledges. Bick's full testimony on the quote

---

[20] Defendants explicitly argued, "The statements contained in the Answer are responses to Cardwell's Charges based on the information that Davis Polk gathered in order to defend itself in that proceeding." ECF 325 at 36. Defendants used "privileged" designations to block evidence related to how Davis Polk "gathered" "information" to "defend itself." Defendants' weaponization of "privilege" is not proper.

Defendants attributed to Cardwell states, "The only answer would be that Paul Weiss and litigators in the general counsel's office from Davis Polk would have been drafting sort of the work on it." ECF No. 242-15 at 14-15 (Bick Tr. 238:25-239:5). Bick, not Cardwell, pointed the finger at "litigators…from Davis Polk" who are also partners who serve as generators of business and policy and business advisors for the Firm. Davis Polk's NYSDHR Brief can appropriately be used as a party admission against Davis Polk. *See* FRE 801(d)(2).

Moreover, the NYSDHR Brief is also party admission against defendants Reid and Bick. As the Court knows, Defendants have already admitted to having knowledge of Plaintiff's EEOC/NYSDHR charges, as well as the fact that Plaintiff's EEOC Charge "mentioned" Reid, Bick, and Brass. *See* Defs.' Answer at ¶ 475 (ECF 209 at 73); ECF 305 at 60. Both Bick and Reid testified that Davis Polk's NYSDHR Brief reflected their authorization, review, and/or approval. Reid testified that after he received and read a copy of Cardwell's administrative complaint, "[he] read it and **made sure** it was being handled by internal and external counsel." ECF 297-41 (Reid Tr. 272:25-273:4) (emphasis added). Reid also testified that "I'm sure I reviewed it, which is part of the creation" and "if I'd seen something in that answer that I was not comfortable with, did not think represented facts, I would have said something." ECF 297-34 (Reid Tr. 279:11). Bick testified that he "read the document and gave comments[] [and] [he] believe[d] most of [his] comments would be of a factual nature." ECF. 242-15 (Bick Tr. 238:11-240:4).  Bick further testified: "I read the complaint and didn't object to what they stated." *Id*. The NYSDHR Brief is a party admission against defendants Davis Polk, Reid and Bick.[21]

---

[21] *See* FRE 801(d)(2) (showing that Defendants' motion *in limine* argument that "no Defendant signed [Davis Polk's NYSDHR Brief] or swore to its contents" is irrelevant in light of Defendants' testimony. Davis Polk, Reid and Bick, the NYSDHR Brief was "was made by the party in an individual or representative capacity", "the party manifested that it adopted or believed to be true," "was made by a person whom the party authorized to make a statement on the subject," or "was made by the party's agent

Defendants attempt to make several other arguments to persuade the Court to backtrack on its summary judgment ruling, including an argument that Davis Polk's NYSDHR Brief is "irrelevant" because "Davis Polk has not changed its explanations over the course of the administrative proceeding or the litigation for the adverse employment actions alleged." ECF 325 at 36. Defendants' citation to *Zann Kwan*, 737 F.3d at 845–46 should nudge the Court to reach the opposite conclusion in Defendants request. *See Zann Kwan*, 737 F.3d at 845–46 (finding that the defendant's change in position, testimony, and professed motive for terminating the plaintiff between the EEOC position statement and in the course of the instant litigation was evidence of pretext). Defendants attempt to "wave off" their conscious misrepresentation of which reviews were contemporaneously communicated to Cardwell by putting forth another misrepresentation about its performance review system, namely that (i) "those reviews formed the basis of his summary review" and (ii) Defendants consistently believed "Cardwell's performance was, in fact, disappointing from the start." ECF 325 at 326. Here, Defendants ignore their own "consensus" review forms and admissions in the course of the instant litigation, including the May 2015 "consensus" review that "described Cardwell's evaluation as: "Generally positive - organized, high quality work, good attention to detail, hard worker[]" and their June 2016 "consensus" mid-year review that described Cardwell's performance by stating, "Kaloma generally received positive reviews…." *See* ECF Nos. 305 at 5; 223-9 at 33. Defendants have indeed "change[d] in position, testimony, and professed motive," as they admitted years after their NYSDHR Brief that "Kyrwood provided an accurate summary of the in-person review meeting conducted with plaintiff in May 2015." Defs.' Answer at ¶ 198.

---

or employee on a matter within the scope of that relationship and while it existed"); *see also Belabbas*, 2019 WL 13258046, at *2 (applying FRE 801(d)(2), denying defendants' motion *in limine*, and rejecting same argument about a party admission not being a "sworn" statement).

Kyrwood's "accurate summary" is not the same position that attempts to assert "Cardwell's performance was, in fact, disappointing from the start." That latter position is not "reflected in the summary review forms" that Cardwell received in any years prior to the filing of Cardwell's EEOC and NYSDHR Complaints, and, therefore, the Davis Polk's NYSDHR Brief would not "be needlessly *cumulative* and prejudicial." *See* ECF 305 at 40.

For the reasons noted herein, including because Defendants have indeed changed their assessment of Plaintiff's first "consensus" review since submitting their NYSDHR Brief, the NYSDHR Brief is evidence of pretext and should not be limited to impeachment purposes.

Finally, Defendants cite "Pin v. Hunt" [sic] to argue there is an "absolute privilege[]" over "statements made by parties, attorneys, and witnesses in the course of a judicial or quasi-judicial proceeding . . . notwithstanding the motive with which they are made, so long as they are material and pertinent to the issue to be resolved in the proceeding." ECF 325 at 37. In *Lipin v. Hunt*, the Court was addressing defamation law in the context of a plaintiff who "docketed dozens of frivolous submissions which fill thousands of pages" and went on to conclude that the "alleged conduct here—defamation by virtue of an attorney's motion for sanctions—by definition occurred in the course of judicial proceedings." *Lipin v. Hunt*, 2015 WL 1344406, at *8 (S.D.N.Y. Mar. 20, 2015). Neither *Lipin* nor *Bernstein,* [22] which they cite for their "absolute privilege" argument, have any bearing on the issues in this case and do not support a finding that in this case there is "an absolute privilege" that applies to the NYSDHR Brief.

---

[22] Defendants cited to *Bernstein* v. *Seeman*, 593 F. Supp. 2d 630, 636 (S.D.N.Y. 2009). This case is inapposite, as it is about an "absolute privilege that attaches to 'defamatory statements made prior to, in the institution of, or during the course of, a proceeding.'" *See Bernstein*, 593 F. Supp. 2d at 636.

Defendants' efforts to (i) minimize the NYSDHR Brief to the context of "an adverse employment action", (ii) contend that their position statement is "irrelevant,"[23] or (iii) argue NY defamation law is binding authority, does not change the fundamental analysis needed in this case. Davis Polk's NYSDHR Brief is relevant and probative for the reasons noted in the Court's SJ opinion, the reasons noted herein, the reasons noted in Defendants' testimony regarding their role in creating the NYSDHR Brief, as well as various remaining issues to be decided or considered by a jury—such as issues of whether Defendants' decision to fire Cardwell was based on pretext or reflected a conscious disregard of Plaintiff's rights.

**FRE 403**. Defendants separately ask the Court to "exclude the [NYSDHR Brief] as it would unfairly prejudice Defendants, will confuse the issues as the remaining claims are substantially narrower than what was at issue before the EEOC/NYSDHR, will cause undue delay, and will waste the jury's time." ECF 325 at 38. Most of Defendants' 403 arguments and cited cases have been addressed above, including Defendants' arguments which ignore Defendants' testimony about their role in authorizing, reviewing, fact checking, and contributing to the creation of the fifteen-page "factual background" section in the Firm's NYSDHR Brief. Regarding Defendants' argument that "admitting the [NYSDHR Position Statement] would be

---

[23] Defendants' motion asserts that "[r]egardless of the extent to which Cardwell's early negative performance reviews were contemporaneously communicated to him (directly, in summary form, or otherwise), those reviews formed the basis of his summary review." ECF 325 at 36. This is also not how Davis Polk's review system work, and this years-long retaliatory position is flatly contradicted by Defendants' internal communications and sworn testimony to date, all of which make clear that not every individual review is accepted or adopted as the Firm's conclusion or consensus about an associate's performance. *See, e.g.*, PTX068 (showing Reid, in March 2017, stating "[g]ot it" after the Firm's Executive Director of Personnel told him that "as you know, the individual reviews are discussed among partners, and a consensus is reached as to what the message should be. Some individual reviews are given more weight than others. Some are disregarded in part…") (emphasis added.) The fact that Defendants attempted to change how some individual reviews were "discarded" in the ordinary course in order to argue in the aftermath of his EEOC Complaint that every individual review that had a constructive feedback in it was the Firm's adopted or accepted conclusion about Plaintiff's performance, is evidence of retaliatory animus, not Cardwell receiving "reviews…that formed the basis of his summary review."

confusing to the jury and highly prejudicial to Defendants," Court's have denied defendants' motion to exclude their position statements where "Defendants have not identified any specific prejudice they would suffer if their own statements to the EEOC concerning Plaintiff's charges were admitted into evidence." *Mugavero*, 2009 WL 1904548, at *4. The same ruling is warranted here, particularly in light of Defendants' counsel's representation to the NYSDHR about who was working to "provide a thorough and detailed **factual** response to the charges [Cardwell] has alleged." *See* PTX119 (emphasis added).[24]

Defendants' NYSDHR Brief and administrative responses are party admissions that are relevant, have high probative value, and will not cause any unfair prejudice to Defendants on the core issue in this case--which is retaliation in connection with Plaintiff's protected activity.

### DEFENDANTS' MIL <u>NO. 7</u> SHOULD BE DENIED IN ITS ENTIRETY

Plaintiff requests that the Court deny this motion in its entirety. On the purported basis that such evidence is "irrelevant," Defendants' seek to "preclude Plaintiff from introducing any evidence, testimony, or argument related to the identities of Davis Polk's past or present clients and the details of any particular client matters or representations." ECF 325 at 40. Defendants' motion is also based on the argument that "Lawyers have an 'ethical obligation to maintain the 'confidences' and 'secrets' of clients and former clients…'" *Id*. Defendants' blanket request is plainly improper, unsupported, and, if granted, unfairly prejudicial to Plaintiff under FRE 403.

The parties have addressed this issue several times. On one such occasion, counsel for Defendants remarked "[i]n terms of the references to the client names…we appreciate your

---

[24] There is no binding or persuasive authority to justify Defendants' extraordinary request that "Cardwell should be permitted, at most, to offer an excerpted page of the Answer with just the quoted passage identified in this Court's opinion and nothing more." The Court should reject Defendants' attempts to turn Plaintiff's opposition to their MSJ and the Court's MSJ ruling into a binding representation about every relevant argument or piece of evidence that appeared at the summary judgment stage. Their request, if granted, would unfairly prejudice Plaintiff. (FRE 403)

Honor's observation that the names of clients may not in all circumstances be entitled to protection." ECF 156 at 6. Yet, Defendants' request identifies no "circumstance" in which clients' names may be disclosed at trial. Once again, Defendants want to exclude information, "confidences" and "secrets" that are not confidential, confidences, or secrets. "[T]he fact of representation is generally neither privileged nor confidential." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 145 (2d Cir. 2016); *see also In re Shargel*, 742 F.2d 61, 62 (2d Cir. 1984) ("The identification of . . . clients . . . neither discloses nor implies a confidential communication."). The Court should once again deny Defendants' request to shield information that is already public or that Defendants and their former and current lawyers routinely discuss without violating any rules or laws. *See, e.g.*, PTX141, PTX144, PTX180, PTX181, PTX194, PTX198, PTX202, PTX207, PTX225, PTX257, PTX279, PTX390 (showing Firm press releases disclosing the names of clients and specifics related to various Firm matters and deals Cardwell worked on—without violating "privilege" or ethical rules).

**Relevance**. This evidence is relevant to whether a jury will be more likely to believe Plaintiff or Defendants on questions related to whether the staffing coordinators and partners thought Cardwell could or should be staffed on matters involving (i) complex transactions, (ii) clients the Firm considered important, (iii) matters that could trigger significant consequences for clients if the work Cardwell did was not done accurately or on time, and (iv) the Firm's efforts to "put its best foot forward," such as when attempting to secure new clients, among other considerations related to the specifics of the matters Cardwell worked on. *See* ECF 305 at 27. Such evidence will impact how a jury evaluates when and why Defendants' assessments may have shifted as a result of Plaintiff's protected complaints, as well as their broader statements about Plaintiff's performance, staffing, and decision to fire Plaintiff when and how they did.

35

Lastly, the evidence is relevant to the credibility of the parties, and ultimate issues related to a jury's determination as to whether Defendants' should be held liable and pay damages.

**403**. Defendants argue "relevance would be outweighed by the risk of unfair prejudice to Defendants, as jurors may have preconceived notions about particular clients or representations." ECF 325. Defendants have not and cannot meet their burden to justify excluding the identities of Davis Polk's clients, or non-privileged details of specific representations. First, as noted above, Defendants routinely tell the public about their clients and the Firm's representations. There is no legal basis to assume any "preconceived notions" will be unfair or prejudicial to Defendants. Second, our judicial system routinely empowers juries to follow and apply the law in accordance with the law. *See, e.g.*, ECF 339 at 5, Plaintiff's proposed jury instruction No. 4 ("You may not discriminate between a company and natural individuals. Each are persons…entitled to the same fair and impartial consideration, and to justice by the same legal standard.")

On the other hand, if Defendants' motion is granted, Plaintiff will be unfairly prejudiced (FRE 403). Defendants are effectively asking the Court to give them free reign to argue Cardwell could not and did not meet either the Firm's or client's expectations regarding the specific matters referenced in performance reviews and Defendants' testimony, while restricting Cardwell to general descriptions that are stripped of their context and key non-privileged facts. That outcome would be misleading, create confusion for a jury that often needs specifics to place arguments and evidence in their proper context, and unfairly prejudicial to Cardwell.

## DEFENDANTS' MIL <u>NO. 8</u> SHOULD BE DENIED IN ITS ENTIRETY

In this motion, Defendants seek to exclude several broad, vague, and improper categories of evidence.[25] Defendants want to exclude relevant evidence that goes directly to the credibility

---

[25] To the extent MIL No. 8 seeks to preclude Plaintiff from testifying about how events and people related to the NYSDHR Brief impacted his employment, reputation, and health, Plaintiff objects. (FRE 403)

of Defendants and their witnesses, among other relevant issues. The Court should deny this

motion for reasons noted below and, for any remaining issues, on premature grounds.

**Evidence Related to Discovery**. The Court should deny Defendants' request to exclude

evidence or issues that are subject to or impacted by Plaintiff's pending motion *in lmine* before

the Court. ECF 327. If successful, Plaintiff's motion is undoubtedly relevant.

**Party Admissions**. The Court should deny Defendants' motion regarding the following

list of evidence, as each will be offered against Defendants at trial and are party admissions (FRE

Rule 801(d)(2)): (i) statements of fact contained within Defs.' Answer (ECF 209, PTX026);[26] (ii)

Defendants' and/or their counsel's post-termination declarations[27] (Kreynin's Declaration, ECF

228 (PTX009); Duggan's Declaration, ECF 224, PTX010; Wolfe's Declaration, ECF 229,

(PTX011); Butler's Declaration, ECF 226, (PTX012); Chudd's Declaration, ECF 227 (PTX013);

Brass's Declaration, ECF 225 (PTX014)), among other declarations all made with first-hand

knowledge of the information within them; (iii) verified responses to Plaintiff's interrogatories

(PTX016 – PTX024); (iv) responses to Plaintiff's requests for admissions (PTX025); (v)

Defendants' Initial Disclosures (PTX027); and (v) Davis Polk's Privilege Log (which

independently contain statements of fact, some of which Defendants' refer to in several

statements of fact contained in their Answer to Plaintiff's Third Amended Complaint) (PTX015).

**Statements Regarding this Litigation**. At the least, the court should deny Defendants'

attempt to exclude evidence Defendants have admitted to, including the admitted statement in

---

[26] *See Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528-29 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding."); *Kwiecinski v. Chung Hwang*, 885 N.Y.S.2d 783 (App. Div. 2009) (holding "Supreme Court erred in precluding defendants' admissions in their original answer"); Fed. R. Civ. P. 8(b)(6); N.Y. C.P.L.R. 3018(a)
[27] *See Spitzer v. Saint Francis Hospital*, 94 F.Supp.2d 423 (S.D.N.Y.2000) (denying attempts to strike affidavits submitted in connection with party's summary judgment motion)

Davis Polk's RFA regarding management committee member Neil Barr. *See* ECF 223-74-75 (RFA No. 73) (PTX025). Barr's statement is relevant to the harms to Plaintiff's reputation and health, as well as the liability, credibility, and state of mind of Defendants and their witnesses.

**FRE 403**. Defendants will not be unfairly prejudiced by their own statements. But, if Defendants' requested categories of evidence are excluded, unfair prejudice to Plaintiff, confusion to the jury, and waste would result. Plaintiff would not have relevant facts available at trial and would have to call many more witnesses to re-establish facts and admissions Defendants' have already admitted. This would be unfairly prejudice Plaintiff. (FRE 403)

## DEFENDANTS' MIL <u>NO. 9</u> SHOULD BE DENIED IN ITS ENTIRETY

Defendants seek to exclude evidence of Defendants' wealth or financial status. This evidence is relevant and admissible to provide context and credibility to Plaintiff's decisions, protected activity, and harms suffered, among other reasons. At the onset, as a former employee, Plaintiff had independent knowledge of Defendants' wealth and such evidence was relevant to his state of mind regarding when and how he engaged in protected activity and the impact Defendants' threats and actions had on his health. Also, Defendants' Answer includes judicial admissions regarding their wealth (PTX026, ECF 209 ¶ 718) ("The Firm's profits, on average per partner, were at least $3 million dollars per year in 2015, 2016, 2017, and 2018.).

Also, this evidence is relevant and admissible to show or provide context to (i) Defendants' liability (i) the profit motive for Defendants' retaliation, (ii) their motive for wanting to protect their reputation (which Bick testified about), (iii) Defendants' conscious disregard of Plaintiff's rights,[28] (iv) the manner and timing surrounding their decision to fire Cardwell, (v) the

---

[28] Evidence of a financial motive to lie is highly probative of actual malice. *See Harte-Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 668 (1989).

incentives and loyalties of Defendants and their witnesses[29] and, therefore, (vi) Defendants and

their witnesses credibility. *See Surgery Ctr. at 900 N. Mich. Ave. v. American Physicians*

*Assurance Corp.,* 317 F.R.D. 620, 625-626 (N.D. Ill. 2016) ("Not surprisingly, therefore, the

employment of an individual and/or the compensation he or she receives are *always* relevant to

bias and credibility. An employee of the defendants is not a disinterested witness. She is subject

to their influence, in a sense in their power...") (internal citations omitted and emphasis added);

*Dedmon v. Continental Airlines,* 2016 WL 47199, at *9 (D. Colo. Feb. 6, 2016) ("Certainly

witnesses who are employees of a party can be impeached through an inference that they are

testifying in a manner designed to avoid displeasing their employer"); *Oregon v. Crum,* 403 P.3d

405, 453 (Or. App. 2017) (*en banc*) (similar). This Court should admit the evidence here.

**Bifurcation**. Defendants' request for bifurcation is procedurally improper, [30] unfairly

prejudicial to Plaintiff, meritless, and would cause confusion and waste judicial resources.

Defendants have not met their burden. The ordinary "presumption is that all claims in a case will

be resolved in a single trial, and it is only in exceptional instances where there are special and

persuasive reasons for departing from this practice that distinct causes of action asserted in the

same case may be made the subjects of separate trials." *Martinez v. Robinson*, No. 99civ11911,

2002 WL 424680, at *2 (S.D.N.Y. Mar. 9, 2002); *see also Pavone v. Gibbs*, No. CV 95-0033,

1997 WL 833472, at *2 (E.D.N.Y. Sept. 29, 1997) ("The moving party bears the burden of

establishing that separate trials are necessary to prevent prejudice or confusion."); *Dollman*, 2011

WL 3911035, * 2 ("bifurcation remains the exception rather than the rule").

---

[29] *See* Plaintiff's Third Amended Complaint ¶ 699 ("Mr. Reid and Mr. Bick also had enormous power over partners and associates' careers…."); ¶ 717 n. 114 ("Davis Polk management committee members…still have significant power and influence over the careers of their former, junior Davis Polk partners."); ¶ 730 ("a…group of powerful Davis Polk partners convinced other partners to accept, participate in, and turn a blind eye to…retaliation").

[30] If the Court does not reject Defendants' request, Plaintiff respectfully requests additional briefing.

**FRE 403**. Unfair prejudice to Plaintiff, confusion for the jury, and waste for the parties and Court will result if the trial is bifurcated, including because the parties submitted a joint pretrial order that states each witness will only testify once. ECF 334 at 10. For reasons noted in this omnibus opposition, evidence and issues relating to liability and damages is undoubtedly intertwined. *See Vichare v. AMBAC, Inc.*, 106 F.3d 457, 466–67 (2d Cir. 1999) (bifurcation inappropriate where "issues of liability and damages are intertwined"). Though no unfair prejudice will flow to Defendants, any prejudice to Defendants arising from the presentation of damages evidence can be obviated through a curative instruction. *See Cole–Hoover v. State of N.Y. Dep't of Correctional Servs.,* No. 02 Civ. 826, 2011 WL 3360002, at *5 (W.D.N.Y. Aug.3, 2011) ("Bifurcation is thus unnecessary to avoid any undue prejudice to the parties").

On the other hand, there is no curative measure to account for the unfair prejudice that Plaintiff would suffer if a jury does not hear—at the liability stage—evidence related to Defendants' and their witnesses' incentives (including financial), credibility, and bias during and after Plaintiff's employment. In this employment retaliation case, the vast majority of witnesses are current or former employees or partners of Defendants. There is no fair way to conduct this type of case in a bifurcated trial. Further, Defendants' request would require the same witnesses to testify on both the issue of liability and damages and documents introduced would be the same for both, particularly with respect to decisions, actions, and motivations that occurred over several years. As the Court in *Dollman* held, there is "no compelling reason to depart from the normal course," and bifurcation should be denied. *Dollman*, 2011 WL 3911035, * 2.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendants' motions in limine be denied in their entirety.

September 28, 2023

Respectfully submitted,

By: _/s/ David Jeffries_____
    David Jeffries

 1345 Avenue of the Americas 33rd Flr
 New York, New York 10105
 (212) 601-2770
 Djeffries@jeffrieslaw.nyc