UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                                         :

KALOMA CARDWELL,                  :

                            Plaintiff,    :        1:19-cv-10256-GHW

                            -v –           :        <u>ORDER</u>

DAVIS POLK AND WARDWELL LLP, *et al.*,  :

                           Defendants.  :

------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

### I. INTRODUCTION

This case was filed almost four years ago. Fact discovery closed two and a half years ago. Now, just months before trial, Plaintiff has filed a purported motion *in limine* for the imposition of discovery sanctions with respect to documents of which he has long been aware, but failed to pursue earlier. Because Plaintiff has not shown good cause for the Court to entertain this tardy motion, the motion is denied.

### II. BACKGROUND

This case was filed on November 4, 2019. Dkt. No. 1. The Court held an initial pretrial conference in the case on December 20, 2019. At the initial pretrial conference, the Court provided the parties a lengthy description of its expectations regarding the conduct of discovery in the case. The Court advised the parties that the deadlines that it was setting were real deadlines and that they were deadlines for the completion of fact and expert discovery. The Court explained that where the case management plan said that discovery would be completed by a certain date, "[t]hat means that there will be no more of it after that date." Transcript of December 20, 2019 Conference, Dkt. No. 29, at 36. The Court then explained some corollaries to that general rule, namely:

    [T]o the extent that there are any disputes regarding the [adequacy] of your

> adversary's production of any discovery or any third-party responses to your requests, do not forward or sit on those discovery disputes until the end of much less after the close of fact discovery. That's because this is, again, the deadline for completion of discovery. If you sit on or hoard a discovery dispute until late in the discovery period, you may find that I will take the position that you've waived the opportunity to ask the Court to call for production of documents and materials, because it's the deadline for completion of fact discovery, not the date for commencement of litigation about discovery. So be mindful of that.

*Id.* at 36–37. The Court also explained that it would only grant extensions to the discovery deadlines "for good cause shown and only if the application is made timely and consistent with the case management plan itself and my individual rules." *Id.* at 38. The Court entered a case management plan and scheduling order following the conference pursuant to Federal Rule of Civil Procedure 16 ("Rule 16"). Dkt. No. 27. Pursuant to that scheduling order, fact discovery was to be completed by September 16, 2020.

Throughout the course of discovery, Plaintiff filed four requests for the extension of the discovery deadlines. Plaintiff's first request was filed in July of 2020, four months *after* the original March 2, 2020 deadline for fact discovery had expired. Dkt. Nos. 61, 64. The Court granted that request on July 29, 2020, extending the deadlines by approximately five months—a lengthy period of time. Dkt. No. 66. The principal basis for Plaintiff's request was the impact of COVID-19. The Court questioned whether Plaintiff had a viable basis for his argument that he was unable to present discovery requests and found that Plaintiff had "only barely" met the good cause requirement.

At that conference, the Court directed the parties to review its comments during the initial pretrial conference regarding my expectations for discovery. The Court reiterated that the discovery deadlines "are real deadlines. They're not notional deadlines. They're not deadlines that you can miss without consequences." Transcript of July 28, 2020 Conference, Dkt. No. 68, at 22. The Court explained that "[i]f you choose not to meet a deadline going forward, you should not expect that I'll extend the deadlines. As I told you during the initial pretrial conference, I will grant extensions of these deadlines only for good cause shown, and I do scrutinize requests to ensure that

2

there is actually good cause." *Id.* at 22–23. The Court again emphasized that "if there are any discovery disputes with your adversary or any third party, you should bring them to my attention promptly if you're unable to resolve them so you can get the information during the discovery period. You should not expect that I'll add extra time to discovery to permit you to litigate discovery disputes that you sat on or hoarded until late in the discovery period." *Id.* at 24.

Plaintiff filed a second request to extend the discovery deadlines on January 21, 2021. Dkt. No. 136. The Court granted that request on February 2, 2021, extending the deadlines by seven weeks. At that conference, the Court again referred the parties back to its comments at the initial pretrial conference and stated that "you should not expect further extensions [of] time for discovery in [this] case." Transcript of February 1, 2021 Conference, Dkt. No. 153, at 32.

Plaintiff filed a third request to extend the time to complete discovery on April 9, 2021. Dkt. No. 180. The Court denied Plaintiff's request with one limited exception because the Court found that Plaintiff did not have good cause for an extension. Dkt. No. 187. At the conference, the Court walked the parties through the same procedural history recited above. The Court quoted heavily from the transcript of the initial pretrial conference and noted that "I gave a version of the same deadline speech at both of the conferences at which we discussed prior extensions of time." Transcript of April 14, 2021 Conference, Dkt. No. 188, at 8. In denying the majority of Plaintiff's request, the Court explained that it had made it very clear "that discovery disputes were to be brought to the Court's attention during discovery, not after; and that the parties should not expect that I would begin a new round of litigation about discovery after the close of discovery." *Id.* at 28. Because Plaintiff had known of his concerns regarding Defendants' discovery productions for months but had not timely raised those issues to the Court, Plaintiff was unable to establish diligence. Thus, the Court denied the request.

Plaintiff made a fourth motion to extend discovery on January 3, 2022. Dkt. No. 240. After

3

briefing from the parties, the Court denied Plaintiff's application in a conference held on February 14, 2022. During that conference, the Court laid out the procedural history of the case, as described above. After reviewing the applicable law, the Court denied Plaintiff's request for an extension, finding that he had not made a showing of good cause that justified the application. The Court noted the following:

> Plaintiff has now heard my clear and express expectations regarding the conduct of discovery on four separate occasions. I have clearly explained that discovery disputes were to be brought to the court's attention during discovery, not after. I expressly warned the parties that they should not expect that I would allow litigation about discovery after the close of discovery. Plaintiff knows of this consequence. I previously denied a majority of plaintiff's request to extend the discovery deadlines for this very reason . . . . Plaintiff's concerns regarding defendants' discovery productions were known months ago. Yet, plaintiff[] failed to bring a discovery motion until December 2021, eight months after the close of fact discovery. The heart of a finding of good cause is a showing of diligence. I have not seen a showing of diligence regarding plaintiff's choice to not bring these discovery disputes to my attention, despite being aware of these discovery issues for months.

Transcript of February 14, 2022 Conference, Dkt. No. 283, at 48-49.

On March 3, 2023, after resolving Defendants' summary judgment motion, the Court set a schedule for trial in this matter. Dkt. No. 309. The order scheduled trial to begin on January 8, 2023. *Id.* And it required that motions *in limine* be filed by September 22, 2023. That deadline was later advanced to September 15, 2023. *See* Dkt. No. 320.

On September 15, 2023, Plaintiff filed a two-part motion *in limine* seeking sanctions for spoliation of evidence. Dkt. No. 329 ("Plaintiff's Motion"). In Plaintiff's Motion, he claims that Defendants failed to preserve and produce records related to Sophia Hudson, one of Plaintiff's former supervisors at Defendants' law firm, and (2) a performance review that Plaintiff asserts may have been created by Len Kreynin (the "Alleged Discovery Materials"). Despite the lengthy litigation process for this case, which involved the resolution of several discovery-related disputes, Plaintiff never raised with the Court any concern that Defendants' productions were deficient as a result of a failure to collect or produce the Alleged Discovery Materials. Instead, he waited to raise

the issue for the first time through Plaintiff's Motion.

On September 19, 2023, Defendants submitted a short, two-page letter to the Court in response to Plaintiff's Motion. In it, Defendants argued that Plaintiff's Motion was "an untimely, improper, and frivolous attempt to litigate discovery issues" years after the close of discovery. Dkt. No. 331 at 1. Defendants requested that the Court summarily deny Plaintiff's Motion because it was untimely in order to avoid the need to brief the merits of the motion. *Id.* at 2. Later the same day, Plaintiff responded, arguing, among other things, that Defendants' application should be denied because it was contained in a cursory letter without citation to supporting caselaw. Dkt. No. 332. The Court agreed and therefore invited the parties to submit briefing on the timeliness of Plaintiff's Motion. Dkt. No. 333. Defendants filed a letter on September 25, 2023 arguing that Plaintiff's Motion was untimely. Dkt. No. 341 ("Defendants' Letter"). Plaintiff responded on September 27, 2023. Dkt. 342 ("Plaintiff's Letter").

### III.  LEGAL STANDARD

"Where a party seeks to make a discovery motion after the close of discovery, that party must show good cause." *Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.*, 301 F.R.D. 31, 43 (S.D.N.Y. 2014), *objections overruled*, 301 F.R.D. 47 (S.D.N.Y. 2014). As Judge Cott explained in *Gucci Am., Inc. v. Guess?, Inc.*, 790 F. Supp. 2d 136, 139 (S.D.N.Y. 2011):

> Under Rule 16(b), district courts are required to enter scheduling orders "that limit the parties' time to complete discovery." *McKay v. Triborough Bridge & Tunnel Auth.*, No. 05 Civ. 8936(RJS), 2007 WL 3275918, at *1 (S.D.N.Y. Nov. 5, 2007). Reopening discovery after the discovery period has closed requires a showing of good cause. *Gray v. Town of Darien,* 927 F.2d 69, 74 (2d Cir. 1991). Though Rule 37 does not establish time limits for such a motion, a party seeking to file a motion to compel after discovery has closed must similarly establish good cause. *See, e.g., Eng–Hatcher v. Sprint Nextel Corp.,* No. 07 Civ. 7350(BSJ) (KNF), 2008 WL 4104015, at *3 (S.D.N.Y. Aug. 28, 2008).

"The 'good cause' inquiry turns on the diligence of the party seeking to modify the scheduling order." *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 174 (S.D.N.Y.

5

2014) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000)).  Specifically, the movant must demonstrate that the court's deadlines could not "be reasonably be met despite the diligence of the party seeking the extension."  *Id.* (quoting Rule 16(b) advisory committee's notes).  "A party is not considered to have acted diligently" where the proposed motion "is based on information that the party knew, or should have known, in advance" of the court's deadlines.  *Id.* (quoting *Christians of Cal., Inc. v. Clive Christian N.Y., LLP*, No. 13 Civ. 0275 KBF JCF, 2014 WL 3605526, at *4 (S.D.N.Y. July 18, 2014).  While "the primary consideration is whether the moving party can demonstrate diligence[,] [i]t is not . . . the only consideration."  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).  The court may also consider whether granting the motion will cause "prejudice or hardship" to the other party.  *Id.*

Balancing these considerations, many courts have denied late motions for discovery-related sanctions because they were untimely.  *See, e.g.*, *Ferrari Club of Am., Inc. v. Bourdage*, No. 6:12-CV-06530 EAW, 2017 WL 6419053, at *4 (W.D.N.Y. Apr. 20, 2017) (denying motion *in limine* for adverse inference instruction that required resolution of "a number of complex issues" that "should have been dealt with during discovery proceedings"); *Tri-County Motors, Inc. v. Am. Suzuki Motor Corp.*, 494 F. Supp. 2d 161, 178 (E.D.N.Y. 2007) (finding that where the alleged discovery issues "were neither brought to the attention of [the magistrate judge] nor were they the subject of an appeal during discovery," "[i]t is, quite simply, too late to raise them now" in a motion *in limine* before trial).

IV.     ANALYSIS

The Court is unable to find good cause to permit Plaintiff to raise this discovery dispute so long after the close of discovery and so near to the eve of trial.  Discovery closed nearly two and a half years ago.  As described above, the discovery period in this matter was extended multiple times at Plaintiff's request.  The Court expressly advised the parties not to "hoard" discovery disputes.  Yet, before filing Plaintiff's Motion, Plaintiff neither sought to compel the production of the Alleged

6

Discovery Materials, nor sought any other assistance from the Court with respect to their production. Instead, Plaintiff waited until the deadline for the submission of motions *in limine* to raise the issue. *Cf. Shamis v. Ambassador Factors Corp.,* 34 F. Supp. 2d 879, 886 (S.D.N.Y.) (finding a motion for sanctions timely because it was "brought promptly at the close of discovery as it was only then apparent that the obstructed discovery could not be obtained from other sources."), *on reargument,* 187 F.R.D. 148 (S.D.N.Y. 1999).

Plaintiff's decision to raise a discovery dispute related to the Alleged Discovery Materials for the first time shortly before trial appears to be a tactical decision to sandbag his adversaries. For Plaintiff's Motion demonstrates that he had notice of the Alleged Discovery Materials before the close of discovery. In support of his motion, Plaintiff cites to transcripts of depositions his counsel took during fact discovery in which, he asserts, the Alleged Discovery Materials were discussed.[1] *See* Plaintiff's Motion at 8–9, 32. Rather than actively pursue the Alleged Discovery Materials that he argues were not produced, Plaintiff chose to raise the issue for the first time as a motion for sanctions. But "[a] motion for sanctions after the close of discovery should not be brought as a substitute for [movants]' attentive pursuit of evidence during discovery." *Kennedy v. Supreme Forest Prods., Inc.*, No. 3:14-cv-01851 (JAM), 2017 WL 2225557, at *2 (D. Conn. May 22, 2017). Because Plaintiff was aware of this issue and failed to raise it during the years of fact discovery or the years that followed, Plaintiff has not demonstrated diligence, and therefore, cannot show good cause for the Court to entertain the motion at this late date. *See, e.g.*, *Werking v. Andrews*, 526 F. App'x 94, 96 (2d Cir. 2013) (summary order) ("[D]espite having sufficient notice of the relevant facts . . . [movant]

---

[1] In, his letter, Plaintiff claims that Defendant attached as exhibits to its motion for summary judgement performance reviews that are "**not** 'copies'" of the reviews Plaintiff received during discovery, because the exhibits were "similar but different documents with different headers and page numbers." Plaintiff's Letter at 3 (emphasis in the original). Plaintiff asserts that exhibit version of the reviews "provided new information that raised questions about Defendants having different 'copies' of review documents for Plaintiff during Plaintiff's employment." *Id*. Plaintiff does not explain how the exhibits provided him notice of the Discovery Materials. In any event, Plaintiff's Motion demonstrates that he had notice of the Discovery Materials before the close of fact discovery.

7

inexplicably failed to file his motion . . . [movant's] actions hardly evince diligence.").

Any prejudice resulting from the Court's decision is, as Defendants argue, of Plaintiff's own making. Plaintiff choose to act in a markedly dilatory fashion. He might have raised a concern about the asserted non-production of the Alleged Discovery Documents at any time over the course of years. Instead, he chose not to raise the issue until shortly before trial. Resolving Plaintiff's Motion on the merits at this point would impose a substantial burden on the Court and the parties during the period when they are expected to be preparing for trial. As Defendants cogently argue in their letter:

> Plaintiff's motion would call on the Court to assess a lengthy discovery record, parse countless meet and confers between the parties regarding discovery requests, and essentially evaluate the merits of discovery disputes the Plaintiff never brought to the Court during the discovery period or which the Court previously resolved against the Plaintiff. Forcing Defendants, who are preparing for trial, to litigate and re-litigate these issues at this stage would be highly prejudicial to them, not to mention an inefficient and wasteful use of judicial resources, particularly in this case where the Court repeatedly admonished the parties to bring discovery and other disputes to the Court's attention in a timely fashion, and warned that the parties have to live with the consequences of their litigation choices if they failed to do so.

Defendants' Letter at 2. The extensive discovery period would have allowed sufficient time to engage in the substantial work required to resolve Plaintiff's Motion. But, at this point, litigating the merits of Plaintiff's Motion would be highly prejudicial to Defendants during the short period before trial.

Plaintiff's strategic decision to hoard a discovery dispute in the way that he has raises substantial issues, as Judge Kaplan recognized in *Nemec v. Shrader*, No. 09 CIV. 7466 LAK, 2015 WL 1650391 (S.D.N.Y. Apr. 13, 2015). Permitting such a delayed motion for sanctions creates a "problem of incentives." *Id.* at *3. Considering such a motion on the merits "would encourage parties to stay silent as to some discovery disputes during pretrial proceedings, and thus to lie in wait until long after discovery is complete only to ambush their unsuspecting adversaries with charges of wrongdoing." *Id.* This is just what Plaintiff seems to have done here: he chose to lie in wait and to

8

ambush Defendants with an issue that he might easily have surfaced earlier. This unfair litigation tactic should not readily be condoned.

Plaintiff makes a number of arguments in support of his request that the Court consider his untimely motion. None are persuasive. Two merit a brief response. First, in support of his position that his motion is timely, Plaintiff argues that unlike movants in some cases in which courts have found sanctions motions untimely, he has not waited until the "eve of trial" to make his motion. Plaintiff's Letter at 2. But Plaintiff ignores that in a case of this complexity, which commenced nearly four years ago and in which trial is anticipated to last for several weeks, three months before the start of trial—straddling the year-end holidays—is quite close to the "eve of trial." The Court has many other matters to attend to during the next three months and imagines the parties do as well. The Court established a schedule to prepare for trial with the expectation that the parties would not be engaged in further discovery-related motion practice.

Second, Plaintiff points to a single case, *Castro v. Smith*, in which the court granted a motion seeking sanctions for spoliation of video evidence long after the close of discovery. No. 16-CV-8147 (JGLC), 2023 WL 5371311, at *1 (S.D.N.Y. Aug. 22, 2023). But that case is distinguishable in many ways. Most significantly, the plaintiff in Castro was litigating the case *pro se* for much of his litigation and was therefore entitled to special solicitude. *Id.* at *4. Mr. Cardwell has been represented by counsel throughout this case. As such, Plaintiff's failure to follow the rules of civil procedure and the Court's clear instructions are much harder to justify.[2]

## V.    CONCLUSION

For the foregoing reasons, the Court grants Defendants' request to deny Plaintiff's Motion.

---

[2] In his letter, Plaintiff alleges that the Discovery Materials were deleted before Plaintiff filed his complaint and argues that as a result, he need not demonstrate "good cause" to permit his belated discovery motion. Plaintiff's Letter at 4. Unsurprisingly, Plaintiff cites to no caselaw to support the proposition that Rule 16 does not apply to scheduling orders insofar as they may affect discovery issues related to documents created (or deleted) prior to the commencement of litigation. It is a frivolous argument.

9

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 329 and 330.

    SO ORDERED.

Dated: October 13, 2023
       New York, New York

_____
GREGORY H. WOODS
United States District Judge