**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **KALOMA CARDWELL,** | |
| Plaintiff, | |
| **v.** | |
| **DAVIS POLK & WARDWELL LLP, Thomas Reid, John Bick, and Daniel Brass,** | 1:19-cv-10256-GHW |
| Defendants. | |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' REQUEST TO PRECLUDE WITNESSES AND TESTIMONY

Dated: November 24, 2023

David Jeffries, Esq.
1345 Avenue of the Americas, 33rd Floor
New York, New York 10105
Tel: 212-601-2770
djeffries@jeffrieslaw.nyc


*Attorney for Plaintiff*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

LEGAL STANDARD.............................................................................................................. 1

ARGUMENT……………………………………………………………………………...2

    I.   WITNESSES' IDENTITIES AND SCOPE OF INFORMATION
        WERE TIMELY DISCLOSED……………………………………………………2

          A.  Plaintiff's Rule 26(a) Disclosures…………………………………………..4

          B.  Neil Barr's Testimony Should Be Not Be Precluded…………………………4

          C.  Kathleen Ferrell's Testimony Should Not Be Precluded……………………..6

          D.  James Rouhandeh's Testimony Should Not Be Precluded…………………...8

          E.  Arthur Golden's Testimony Should Not Be Precluded……………………...11

          F.  Charles Duggan's and Gina Caruso's Testimony Should Not
              Be Precluded…………………………………………………………………12

          G.  Michael Flynn's Testimony Should Not Be Precluded……………………...16

          H.  Larry Jacobs's Testimony Should Not Be Precluded………….…………….21

    II.   THE TESTIMONY OF THE WITNESSES SHOULD NOT
        BE PRECLUDED BECAUSE THEIR TESTIMONY IS
        IMPORTANT……………………………………………..…………………22

    III.   DEFENDANTS HAVE SUFFERED NO PREJUDICE BY PLAINTIFF'S
         INCLUSION OF THE WITNESSES—ALL CURRENT
         OR FORMER DAVIS POLK PARTNERS AND EMPLOYEES…..…………24

    IV.   THERE IS NO RISK OF CONTINUANCE………..……………………………25

CONCLUSION………...…..……………………….……...……………………………......25

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*American Stock Exch., LLC v. Mopex, Inc.*,
    215 F.R.D. 87, 93 (S.D.N.Y. 2002) …………………….…………………………………….2

*Fleet Capital Corp. v. Yamaha Motor Corp., U.S.A.*,
    01-CV-1047, 2002 WL 31108380, at *2 (S.D.N.Y. Sept. 23, 2002) …………...…………...24

*Lore v. City of Syracuse*,
    No. 5:00-CV-1833, 2005 U.S. Dist. LEXIS 30328, at *5-6 (N.D.N.Y Nov. 17, 2005)……..24

*Morgenstern v. Cty. of Nassau*,
    04-CV-0058, 2008 WL 4449335, at *2 (E.D.N.Y. Sept. 29, 2008)……..…..……………….25

*Patterson v. Balsamico*,
    440 F.3d 104 (2d Cir. 2006)………………….……………….…………………..……..2

*Preuss v. Kolmar Labs., Inc.*,
    970 F. Supp. 2d 171 (S.D.N.Y. 2013) ……………….……………..……….…….…..24

*Wright v. Aargo Sec. Servs., Inc.*,
    No. 99 Civ. 9115 (CSH), 2001 WL 1035139, at *2 (S.D.N.Y. Sept. 7, 2001)...........…..…..24

**Rules**

Fed. R. Civ. P. 26(a) .................................................................................................................1, 2

Fed. R. Civ. P. 26(e) ....................................................................................................................2

Fed. R. Civ. P. 37(c) ....................................................................................................................2

Plaintiff Kaloma Cardwell, by and through his undersigned counsel, hereby submits this memorandum of law in opposition to Defendants Davis Polk & Wardwell, Thomas Reid, John Bick, and Daniel Brass's ("Defendants") application[1] to preclude the testimony of eleven witnesses on the basis that such "witnesses never properly disclosed under Rule 26(a)(1)(A) or Rule 26(e)(1)."[2] *See* ECF 351 and ECF 334 at 35.[3]

## LEGAL STANDARD

A party in a civil action "must, without awaiting a discovery request, provide to the other parties . . . the name . . . of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P 26(a)(1)(A). "A party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ."

---

[1] Defendants did not seek to exclude witnesses in their September 2023 motions *in limine*. ECF 325. In response to counsel for Plaintiff's contention that Defendants did not file a motion or sufficiently establish that they were seeking to exclude witnesses at trial, the Court ruled during a November 17, 2023 hearing that certain statements made by Defendants in the parties' proposed joint pretrial order were sufficient for Defendants to meet the requirements of and/or be considered a motion to exclude eleven of Plaintiff's proposed witnesses at trial. Plaintiff respectfully objects and disagrees that Defendants' statements in the parties' proposed joint pretrial order satisfies the requirements of a motion *in limine* or other motions needed to exclude or strike witnesses at trial. Plaintiff files this memorandum of law in opposition to Defendants' objection pursuant to the Court's November 17, 2023 order permitting Plaintiff to do so. *See* ECF 351.  Further, Plaintiff respectfully notes that if Defendants file a reply to this opposition, Plaintiff objects to any new arguments being considered by the Court to the extent such arguments or grounds did not appear in Defendants' portion of the proposed joint pretrial order. *See* ECF 351 and ECF 334 at 35.

[2] In this case, fact discovery closed on April 15, 2021 (with one exception). ECF 143.

[3] For all ECF filings, this memorandum cites to the page number(s) set forth in a document's ECF header.

Fed. R. Civ. P. 26(a)(1)(A). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). However, "[p]reclusion of evidence is generally a disfavored action." *American Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002).

In determining whether testimony should be excluded, courts consider: (1) the explanation for the failure to adhere to the disclosure requirement; (2) the importance of the testimony; (3) prejudice to the movant resulting from the need to prepare to respond to the new testimony; and (4) whether a continuance is possible. *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (internal quotation marks and citation omitted).

## ARGUMENT

### I.    Witnesses' Identities and Scope of Information Were Timely Disclosed

Defendants objected to certain witnesses testifying at trial—nearly all of whom are current or former Davis Polk partners or employees—on the basis that such "witnesses [were] never properly disclosed under Rule 26(a)(1)(A) or Rule 26(e)(1)." ECF 334 at 35. As to the first factor, for at least 8[4] of the witnesses addressed in this opposition,[5] Plaintiff supplemented his

---

[4] These witnesses include Neil Barr, Kathleen Ferrell, James Rouhandeh, Arthur Golden, Charles Duggan, Gina Caruso, Michael Flynn, and Larry Jacobs.

[5] Plaintiff agrees to not call Martin Dellacona as a witness, unless the use would be solely for impeachment (Rule 26(a)(1)(A)(i)). Plaintiff also agrees to remove Bruce Birenboim and Susanna Buergel Plaintiff from his witness list in the parties' proposed joint pretrial order, as Plaintiff does not intend to call Bruce Birenboim or Susanna Buergel to testify at trial unless Defendants' testimony at trial asserts or suggests that counsel for Paul Weiss was responsible for the factual misrepresentations in Davis Polk's NYSDHR Statement or any other employment decisions related to Plaintiff's employment. Plaintiff reserves all rights to argue that waiver has been triggered or implicated and to (i) call any relevant counsel as witnesses or (ii) receive any relevant communications, including any relevant communications noted on Defendants' privilege log. Accordingly, this memorandum does not address Birenboim, Buergel, or Dellacona.

26(a) disclosures in compliance with Rule 26(e), including by identifying and describing individuals and the scope of discoverable information concerning such individuals during discovery or in writing.  As of the time of this filing, Defendants have not provided Court with any arguments or explanations as to why the Court's prior statements on the issue of supplementing disclosures under Rule 26(e) should only apply to Defendants.

On December 13, 2021, Defendants argued the following to the Court:

> [T]he obligation to supplement arises only where 'the additional or corrective information has not otherwise been made known to the parties during the discovery process or in writing,' Fed. R. Civ. P. 26; that we had provided considerable additional information in writings…, via our productions and in meet and confers; that the act of asking us to transcribe already-provided information into the format of interrogatories was wasteful make-work; and that our written discovery was fully in compliance with Rule 26.

ECF 232 at 4. During a December 17, 2021 hearing, the Court suggested Defendants' arguments about Rule 26(e) were consistent with applicable law. The Court remarked:

> [A]s I understand defendants' argument, they're arguing that they're not under an obligation to supplement because their answers were complete when made and that, from their perspective, the additional discovery materials that they provided have satisfied that requirement. This is the thing that they describe in the portion of the letter about Rule 26(e)….The quotation from Moore's on this point . . . is -- quote, 'a party does not have a duty to amend if additional or corrective information has otherwise been made known to the other parties during the discovery process or in writing.' That's from 6 Moore's Federal Practice Civil Section 26.131….
>
> I understand your argument to be that you got a lot of discovery and that they did not update the responses to the interrogatories to include the responses to that load of discovery. So if that's your argument -- which is what I understood from the letter -- I don't fully understand your argument that you did not get the information as opposed to you got it in a form that you did not believe was an adequate supplement or that did not comply with this portion of the rule…. If you know that there were more, based on the documents or deposition testimony, why doesn't that fit into the carve-out that I've pointed out?

ECF 238 at 17-19.

Accordingly, for the reasons stated in this memorandum, Plaintiff respectfully requests that Defendants' request to bar testimony from Neil Barr, Kathleen Ferrell, James Rouhandeh, Arthur Golden, Charles Duggan, Gina Caruso, Michael Flynn, and Larry Jacob—all of whom were partners or employees of Davis Polk when Plaintiff filed his EEOC and NYSDHR complaints against Davis Polk in 2017—be denied.

### A.  Plaintiff's Rule 26(a) Disclosures

Plaintiff's Second Amended Rule 26(a) Disclosures, dated August 21, 2020 ("Plaintiff's 26(a) Disclosures"), expressly reserved the right to (i) "identify documents or call as witnesses individuals in addition to those identified herein"; (ii) "call as witnesses individuals in addition to those identified herein to the extent such witnesses are required to authenticate an exhibit offered into evidence or to establish chain of custody of an exhibit offered into evidence"; and "supplement, amend, correct, or otherwise modify these Initial Disclosures as investigation and discovery are conducted, and as this action proceeds, and to rely on witnesses or documents identified in the initial or other disclosures of Defendants." ECF 223-74 at 3.

In a footnote to the statement "Plaintiff identifies the following individuals that may have information concerning Plaintiff's claims or defenses," Plaintiff's 26(a) Disclosures states, "[i]n addition to the persons identified below, other persons whose names appear in documents produced and the documents to be produced, if any, also may have knowledge of the facts concerning the claims or defenses at issue." *Id* at 4 n.1.

### B.  Neil Barr's Testimony Should Be Not Be Precluded

The parties' proposed joint pretrial order ("Proposed JPTO") indicates Plaintiff seeks to question Neil Barr during trial about "the basis for the assertions in [Barr's] emails concerning Mr. Cardwell, his performance, and the reasons the Firm fired Mr. Cardwell," among other

topics. ECF 334 at 22. During the discovery process and in writing, Plaintiff supplemented his disclosures in compliance with Rule 26(e), including but not limited to giving notice to Defendants that Neil Barr likely had discoverable information about these subjects.

Letters to Defendants; Meet and Confers: During discovery, Plaintiff informed Defendants that Barr had information relevant to "(i) plaintiff's tenure at Davis Polk; (ii) plaintiff's work and performance . . . [and] (iv) the associate performance review process at Davis Polk" and described Barr as someone who was "indsiputabl[y] relevan[t] to the parties' claims and defenses." *See* Jeffries Decl. Ex. A at 4 n.6 (December 2020 letter to Defendants).

Plaintiff's Request for Admissions ("RFAs"):[6] In Plaintiff's RFAs, Plaintiff asked Defendants to admit that on or around November 5, 2019, [the Firm] circulated an email . . . on behalf of Barr that stated "Mr. Cardwell[] . . . was terminated for legitimate, nondiscriminatory reasons following negative performance reviews given in the ordinary course." ECF 223-75 at 40 (RFA No. 73). Defendants provided their response to this RFA and admitted that "Davis Polk employees received an email from managing partner Neil Barr, on November 5, 2019," containing the quoted text above and also a representation by Neil Barr that he and others at the Firm would "defend ourselves vigorously and will show, based on the record, that the claims are not supported by the facts or the law." *Id*. at 41.

Depositions: During Plaintiff's March 23 and 24, 2021 deposition ("Plaintiff's Deposition"), Plaintiff explicitly identified Barr and Barr's email. *See* ECF 297-1 at 26 and 31, Cardwell Tr. 243:18-247:11; 271:9-22 (Plaintiff answering, "I have had to deal with the practical

---

[6] In Plaintiff's first request for admissions, dated April 15, 2021 ("Plaintiff's RFAs), Plaintiff also asked Defendants to admit that Neil Barr was a partner at Davis Polk between 2014-2018, and has been a partner at Davis Polk from 2008 through the present. Defendants provided their response and admission on May 17, 2021. ECF 223-75 at 33-34 (RFA No. 59).

reality of Neil Barr's November 5th email…" and  "[t]hat statement applies to Neil Barr's November 5th, 2019 statement in which he claimed I was terminated . . . based on performance reviews done in the ordinary course. I believe that statement is false. The performance reviews that I received were not in the ordinary course, for one.").

<u>Conclusion</u>: Regarding Barr's testimony, Defendants are not being "sandbagged" or "ambushed." For the reasons stated in this section and memorandum, Plaintiff respectfully requests that the Court deny Defendants' request to preclude Barr's testimony.

### C.  Kathleen Ferrell's Testimony Should Not Be Precluded

The Proposed JPTO indicates Plaintiff seeks to question Kathleen Ferrell during trial about her position as "the Firm's head of Personnel Committee…a contact person in the Firm's complaint procedure policies…a person who completed an individual review for Mr. Cardwell in 2017, and the author/presenter of emails, presentations, and memos related to the Firm's review process." ECF 334 at 13-14. During both the discovery process and in writing, Plaintiff supplemented his disclosures in compliance with Rule 26(e), including but not limited to giving notice to Defendants that Ferrell likely had discoverable information about these subjects.

<u>Plaintiff's Fist Set of Requests for Production</u> ("Plaintiff's RFPs"). In Plaintiff's RFPs, dated August 11, 2020, Plaintiff asked Defendants to produce "Documents and communications, between 2012 and 2018, relating to any memoranda from Kathleen Ferrell or others which described the annual review process, including the memoranda made available through Renee DeSantis's email to "corp.associates" on October 27, 2017." ECF 242-2 at 110 (RFP No. 129).

<u>Letters to Defendants; Meet and Confers</u>: During discovery, Plaintiff informed Defendants that Plaintiff had identified Ferrell as an individual who should have been included or considered in several of Defendants' interrogatory and RFP responses, and Plaintiff explicitly

informed Defendants that Plaintiff considered Ferrell to be a "manager" with information related to her position as "head of Personnel Committee" and the Firm's "policy handbook." *See* Jeffries Decl. Ex. A at 4 (December 2020 letter to Defendants) (listing Ferrell); *Id* at 9-10, 19-20 (Defendants "cannot credibly assert that" Definition No. 25 (in their Rog responses) or 31 (in their RFP responses) of "("manager") does not include and refer to . . .  Kathleen Ferrell (referred to as the "*head* of Personnel Committee" in the Firm's policy handbook (ECF 52-3))").

In a letter dated January 11, 2021 Plaintiff informed Defendants that Plaintiff had identified and considered Kathleen Ferrell as a Firm "manager[]" who possessed relevant information regarding "the Firm's (i) policy handbook, (ii) internal employment structure, and (iii) dozens of documents that Defendants produced to Plaintiff." *See* Jeffries Decl. Ex. B at 18 n.9 (January 11, 2021 letter to Defendants ("Defendants have . . . reinterpreted the RFPs' definition of "manager" in a way the excludes non-partner managers who were mentioned in or part of the Firm's (i) policy handbook, (ii) internal employment structure, and (iii) dozens of documents that Defendants produced to Plaintiff… Such managers include . . . Kathleen Ferrell")). Moreover, Plaintiff explicitly negotiated with Defendants over the inclusion of Ferrell in their search for responsive communications and Defendants agreed to search Ferrell's email account, including for words such as "review[s]." *Id*. at 9-10 (showing Ferrell's name in "Plaintiff's Request, Defendants' Modifications, and Plaintiff's Response" columns).

<u>Defendants' Production</u>: In response to Plaintiff's RFPs, letters, and meet and confers about Ferrell,[7] Defendants produced requested documents related to Ferrell's communications about the Firm's annual review process and how associates would receive feedback, confirming

---

[7] In a January 2022 filing to the Court, Defendants acknowledged these negotiations and productions, stating, "defendants agreed to review the additional requested custodians' files…. This process ran from December 2020 to on or about January 25, 2021." *See* ECF 248 at 6 n. 2.

their understanding that Plaintiff had identified Ferrell as an individual with relevant information regarding the testimony he seeks to question her at trial. See, e.g., ECF 242-2 at 110 ("Defendants will conduct a reasonable search for formal written Davis Polk policies, procedures, or memoranda concerning the annual review process...") Indeed, Defendants did not object to several Ferrell-related documents that appear on Plaintiff's and Defendants' exhibits lists. *See, e.g.*, (i) presentation entitled "Feedback: How to Get it, Give it and Interpret it...Presented by Kathleen Ferrell" listed as PTX639/DPW_SDNY–000142624 at ECF 334-1 at 18 or DTX015/DPW_SDNY-000142624 at ECF 334-2 at 1; and (ii) presentation by Ferrell entitled "Welcome to Davis Polk Fall 2014 Presentation"  listed as PTX635/ DPW_SDNY– 000164486 at ECF 334-1 at 18 or DTX012/ DPW_SDNY–000164486 at ECF 334-2 at 1.

Plaintiff's Deposition: During Plaintiff's March 23 and 24, 2021 deposition, Plaintiff explicitly answered questions about Ferrell and the very communications that Plaintiff sought in discovery and his letters to Defendants. ECF 297-1 at 13-14, Cardwell Tr. 120:15-124:5 (discussing PTX635 and Plaintiff being told "If you look further down on the same page, you will see in brackets some wording that begins with the word 'Kathleen.' Do you see that?").

Conclusion: Regarding Ferrell's testimony, Defendants are not being "sandbagged" or "ambushed." For the reasons stated in this section and memorandum, Plaintiff requests that the Court deny Defendants' request to preclude Ferrell's testimony.

### D.  James Rouhandeh's Testimony Should Not Be Precluded

The Proposed JPTO indicates Plaintiff seeks to question James Rouhandeh during trial about Rouhandeh being "a member of the Management Committee and participat[ing] in several communications and interactions related to the Diversity Committee's formal and informal "Management Committee Reports"... Mr. Cardwell's complaints and concerns, including the

March 2017 complaint that Bick[8] testified he reported to the Management Committee; and the Firm's decision to fire Mr. Cardwell, which several Defendants and discovery responses indicated involved the participation of the Management Committee." ECF 334 at 22. During both the discovery process and in writing, Plaintiff supplemented his disclosures in compliance with Rule 26(e), including but not limited to giving notice to Defendants that James Rouhandeh likely had discoverable information about these subjects.

<u>Letters to Defendants; Meet and Confers</u>: During discovery, Plaintiff negotiated with Defendants over the inclusion of Rouhandeh in their search for responsive communications and Defendants agreed to search Rouhandeh's email account. *See* Jeffries Decl. Ex. B at 6-8 (January 11, 2021 letter to Defendants, showing Rouhandeh's name in the "Plaintiff's Request, Defendants' Modifications, Plaintiff's Response" columns);[9] Jeffries Decl. Ex. A at 4 (listing Rouhandeh).

<u>Plaintiff's RFAs</u>: In Plaintiff's RFAs, Plaintiff asked Defendants to admit that Rouhandeh was a partner at Davis Polk between 2014-2018, and has been a partner at Davis Polk from 1996 through the present. Defendants provided their admission on May 17, 2021. ECF 223-75 at 33.

<u>Plaintiff's Third Amended Complaint (TAC)</u>: In the TAC, which was proposed in a filing on March 17, 2021 (ECF 167 - 167-2) after receiving late produced documents and filed (with Court approval) as the operative complaint in this action on October 4, 2021 (ECF 200), Plaintiff identified Rouhandeh by name and/or position and specified Rouhandeh had relevant information related to (i) "policy formulation and [] compliance with Firm policies in the areas

---

[8] This is a typo in the Proposed JPTO. This statement refers to Reid's, not Bick's, testimony.
[9] In a January 2022 filing to the Court, Defendants' acknowledged these negotiations and productions, stating, "defendants agreed to review the additional requested custodians' files…. This process ran from December 2020 to on or about January 25, 2021." *See* ECF 248 at 6 n. 2.

of personnel, associate development, and firm management";[10] (ii) "discrimination and

retaliation complaints and concerns";[11] (iii) "personnel-related developments and updates"

discussed with the Firm's Executive Director of Personnel (Sharon Crane);[12] (iv) "emails . . . and

. . . discussions" that occurred "[b]etween March 3, 2017 and March 21, 2017 . . . related to Mr.

Cardwell's 'performance and staffing' and 'performance reviews and employment at the

Firm'";[13] and (v) Rouhandeh's personal discussions with "Ms. Crane to understand and address

Black associates' experiences, grievances, and requests."[14]

Plaintiff's Deposition: Plaintiff identified Rouhandeh by name, among others, as a

decision-maker in response to a questions that asked, "Who made [the] decision" at Davis Polk

to "deny [Cardwell] hours because of the complaints [Cardwell] had made[?]" *See* Jeffries Decl.

Ex. C, Cardwell Tr. 398:7 – 399:8.

---

[10] "At all times during Mr. Cardwell's employment at the Firm, Davis Polk's Executive Director of Personnel [Sharon Crane] worked closely with and reported to the Firm's three-person management committee (i.e., … Jim Rouhandeh). In connection with the Firm's policy and practices and her official duties, Davis Polk's Executive Director of Personnel worked with the management committee…on (i) policy formulation and (ii) compliance with Firm policies in the areas of personnel, associate development, and firm management." TAC ¶ 61, ECF 200 at 19.
[11] The "Firm's Executive Director of Personnel (i.e., Ms. Crane)…official human resource and business duties required her to address and discuss discrimination and retaliation complaints and concerns with the Firm's Management Committee members…." TAC ¶ 82, ECF 200 at 26.
[12] "In order to address Mr. Cardwell's and the other Black associates' September 30, 2015 complaints and concerns, the Associate Development Department (through Ms. DeSantis) informed Davis Polk's Executive Director of Personnel that the Department would "schedule meeting[s]" with Management Committee members….Davis Polk's Executive Director of Personnel's role at the Firm included obligations to routinely communicate personnel-related developments and updates to the Firm's management committee." TAC ¶ 83, ECF 200 at 26-27.
[13] "Between March 3, 2017 and March 21, 2017, Davis Polk's management committee…; in house general counsel team; Executive Director of Personnel (i.e., Ms. Crane); and Associate Development Department (e.g., Ms. DeSantis and Ms. Fenner) were sending emails between each other and having discussions related to Mr. Cardwell's 'performance and staffing' and 'performance reviews and employment at the Firm.'" TAC ¶ 386, ECF 200 at 113.
[14] "[A]mong the Firm's Black associates in particular…it was widely understood within the Firm that the Firm's management committee…utilized Ms. Crane to understand and address Black associates' experiences, grievances, and requests." TAC ¶ 626 n. 97, ECF 200 at 176.

Defendants' Answer to the TAC (filed November 19, 2021): Defendants admitted that "[D]uring plaintiff's time as an associate at the Firm, the management committee consisted of three people; that Reid, Bick, and Rouhandeh served on the management committee; and that Crane worked with the Firm's management." ECF 209 at 61. Defendants also admitted that "Davis Polk's November 16, 2020 Responses and Objections to Plaintiff's Interrogatories contains the text . . . 'the message they delivered to plaintiff regarding the difficulties staffing him and his future at the firm reflected input from the Management Committee.'" *Id.* at 620.

Conclusion: Regarding Rouhandeh's testimony, Defendants are not being "sandbagged" or "ambushed." For the reasons stated in this section and memorandum, Plaintiff respectfully requests that the Court deny Defendants' request to preclude Rouhandeh's testimony.

**E.  Arthur Golden's Testimony Should Not Be Precluded**

The Proposed JPTO indicates Plaintiff seeks to question Arthur Golden during trial about "[Golden's] experience working with Plaintiff, Plaintiff's job performance, [and] the instructions and communications he received regarding the Firm's Lawyer Review System," among other topics. ECF 334 at 17. During both the discovery process and in writing, Plaintiff supplemented his disclosures in compliance with Rule 26(e), including but not limited to giving notice to Defendants that Arthur Golden likely had discoverable information about these subjects.

Plaintiff's Third Amended Complaint (TAC): Plaintiff's TAC specifically identifies Arthur Golden and various assignments that Plaintiff and Golden worked on together, as well as

Golden's responses to Plaintiff's communications and work product. *See* ECF 200, TAC ¶¶ 244,[15] 245,[16] 246,[17] 249.[18]

  <u>Letters to Defendants and Meet and Confers with Defendants</u>: During discovery, Plaintiff's negotiations with Defendants over various search terms led Defendants to produce the emails referenced in the TAC's allegations regarding Golden.

  <u>Defendants' Answer</u>: In response to the TAC, Defendants admitted various facts regarding Golden and Plaintiff's assignments, including that "Golden relayed edits on the document to the senior associate referenced in paragraph 246 of the [TAC]." ECF 209 ¶¶ 246-49.

  <u>Conclusion</u>: Regarding Golden's testimony, Defendants are not being "sandbagged" or "ambushed." For the reasons stated in this section and memorandum, Plaintiff respectfully requests that the Court deny Defendants' request to preclude Golden's testimony.

### F.  Charles Duggan's and Gina Caruso's Testimony Should Not Be Precluded

  The Proposed JPTO indicates Plaintiff seeks to question Charles Duggan during trial about Duggan's (i) December 3, 2021 "declaration," (ii) Duggan's role as a person "listed in various presentations and handbooks as a person associates should or could speak with if they had issues related to the Firm's complaint procedure policies or other ethical and legal considerations and questions"; and "his and Defendants' knowledge and responses to Mr.

---

[15] "On August 18, 2016…Mr. Cardwell emailed M&A partners Arthur Golden…[i]n connection with the June 28, 2016 assignment that Mr. Cardwell was staffed on….Neither Arthur Golden…responded to Mr. Cardwell's email or otherwise communicated with Mr. Cardwell."

[16] "On September 7, 2016, . . . Mr. Cardwell emailed M&A partners Arthur Golden…with a follow-up reminder regarding Mr. Cardwell's email…. Again, neither Arthur Golden…responded to Mr. Cardwell's email or otherwise communicated with Mr. Cardwell."

[17] "[T]hough it was clear…that…Cardwell was the primary reviewer and editor of the documents, … Golden chose to…exclusively discuss with the senior associate his edits…."

[18] "Arthur Golden's…lack of communication with Mr. Cardwell cannot be explained by the quality of Mr. Cardwell's work on the assignment or the senior attorney's conclusions…"

Cardwell's complaints concerning discrimination and retaliation," among other potential topics. Regarding Caruso, the Proposed JTPO notes similar topics and communications and presentations that were specific to Caruso (and not Duggan).

Plaintiff's RFAs: Defendants admitted that "The Firm's Complaint Procedure, as applied to associates, is set forth in the Lawyers' Handbooks, produced as of Mr. Cardwell's first (DPW_SDNY-000000724) and last (DPW_SDNY-000000577) days at the Firm," of which the "firm's General Counsel or Deputy General Counsel" (i.e., Duggan and Caruso) are listed as contact persons for associates. ECF 223-75 at 22 (RFA No. 24); ECF 256-10 at 80.

Plaintiff's RFPs: Plaintiff requested, and Defendants agreed to search for and produce, "documents sufficient to show internal trainings in the Relevant Period, for partners and for associates in departments in which Plaintiff rotated or to which he was assigned, concerning prohibitions against discrimination, harassment, or retaliation." ECF 242-2 (RFP No. 170). Caruso's presentations fall under this category. Plaintiff also requested "[d]ocuments and communications relating to any policies or practices that govern or apply to the 'General Ethical Considerations and Questions' section (or its equivalent) in Davis Polk's Policy Handbook…including the part that states 'The Firm prohibits any form of retaliation against any individual who raises any question concerning legal compliance or professional ethics in good faith.'" ECF 242-2 at 13 (RFP No. 2). The "firm's General Counsel or Deputy General Counsel" (i.e., Duggan and Caruso) are listed as contact persons under this policy. *See* ECF 256-10 at 69.

Defendants' Admissions: In Defendants' January 10, 2022 filing to the Court, counsel for Defendants admitted that "[i]n November 2020— before custodial document production had begun, and with months remaining for plaintiff to engage in the process of securing documents and other discovery—the Firm explicitly confirmed, in responses and objections to plaintiff's

13

interrogatories…that internal counsel had knowledge regarding the information and materials referenced in the Firm's responses." ECF 248 at 5.

     <u>Letters to Defendants; Meet and Confers</u>: During discovery, Plaintiff rejected many of Defendants' discovery responses and identified Duggan and Caruso as an individuals who possessed relevant information related to the following categories: "(i) plaintiff's tenure at Davis Polk; (ii) plaintiff's work and performance; (iii) associate rotation and staffing at Davis Polk; (iv) the associate performance review process at Davis Polk; (v) diversity and inclusion at Davis Polk; and (vi) the allegations in plaintiff's Complaint…." *See* Jeffries Decl. Ex. A at 2 n. 3. (December 2020 letter to Defendants). For example, the letter explicitly stated, "Defendants' Initial Disclosures are critically deficient and fail to name many individuals who have information related to **these categories**, as well as other categories related to the claims and defenses in this action." *Id*. (emphasis added). The letter explicitly requested that Defendants "promptly provide Plaintiff with supplemental and corrected responses to Defendants' Initial Disclosures—including the full names of any individuals with knowledge who previously served or currently serves as 'internal counsel.'" *Id*. at 4.

     Further, Plaintiff's letter stated that "[f]or several responses to Plaintiff's interrogatories, Davis Polk has acknowledged that (i) "internal . . . counsel for Davis Polk" has "certain information or documents addressed in these responses and objections to Plaintiff's Interrogatories" or that this group of "internal counsel" otherwise has knowledge of information related to the claims and defenses in this action…Please promptly provide Plaintiff with supplemental and corrected responses to Defendants' Initial Disclosures—including the full names of any individuals with knowledge who previously served . . . as 'internal counsel.'" *Id* at 3-4 (under the header "Davis Polk Has Failed to Disclose Its 'Internal Counsel'").

14

Further, in addition to references to "internal counsel," Plaintiff's December 2020 letter explicitly identified Charles Duggan and Gina Caruso as being related to "several claims related to [Plaintiff's] allegations" and "Defendants' defense that Defendants did not retaliate against Plaintiff…."  *Id* (under the header "'Gina,' 'Charles' and Geo Group").

Consistent with the fact that Plaintiff had identified Charles Duggan and Gina Caruso as individuals with relevant information regarding the parties claims and defenses, Plaintiff's January 2021 Letter and various meet and confers ensured Duggan's and Caruso's email accounts would be searched for communications that were responsive to Plaintiff's discovery requests. *See* Jeffries Decl. Ex. B at 6-10. (January 11, 2021 letter to Defendants). Specifically, the letter informed Defendants that Plaintiff had identified Duggan and Caruso as individuals who likely had discoverable communications related to "discrimination," "retaliation," "review[s]," and "[m]eet[ings]" with Reid and several other witnesses. *Id*. Notably, during discovery, Defendants confirmed that they ran searches on Duggan's and Caruso's email accounts in response to Plaintiff's requests. *See* ECF 242-18 (Defendants' counsel stating on February 1, 2021, "We used computer technology to try to identify terms that were yielding probable mis-hits, sent you a proposed revision, reviewed your proposed response, met and conferred with you for nearly three hours on January 19, 2021, and sent you, on January 21, 2021, a proposal pursuant to which we agreed . . .  to search nearly all of the terms you had requested we search." [19]

---

[19] In a January 2022 filing to the Court, Defendants' further acknowledged these negotiations and productions, stating, "defendants agreed to review the additional requested custodians' files…. This process ran from December 2020 to on or about January 25, 2021." *See* ECF 248 at 6 n. 2.

Plaintiff's Third Amended Complaint (TAC): Plaintiff's TAC specifically described and made allegations related to the Firm's "Lawyer Handbook," "complaint policies," and certain antiretaliation policies related to "General Ethical Considerations and Questions." *See* TAC, ECF 200 at 22 n. 9, ECF 200 at 25 ¶ 78, ECF 200 at 99 ¶ 334. As noted above, the "firm's General Counsel [and] Deputy General Counsel" (i.e., Duggan and Caruso) are listed as contact persons for associates. ECF 200-10 at 29 and 34.  Also, the TAC specifically identified the Firm's "in house general counsel" and alleged they and individuals with knowledge of Plaintiff's protected complaints were "sending emails between each other and having discussions related to Mr. Cardwell's 'performance and staffing' and 'performance reviews and employment at the Firm.'" ECF 200 ¶ 386. To this allegation, Defendants have admitted that, "on March 6, 2017, Fenner, Crane, DeSantis, Reid, and Davis Polk's Deputy General Counsel [Caruso] sent and/or received one or more emails related to the referenced topics." ECF 209 ¶ 386 at 61.

Conclusion: Regarding Duggan's and Caruso's testimony, Defendants are not being "sandbagged" or "ambushed." For the reasons stated in this section and memorandum, Plaintiff requests that the Court deny Defendants' request to preclude Duggan's and Caruso's testimony.

### G.  Michael Flynn's Testimony Should Not Be Precluded

The Proposed JPTO indicates Plaintiff seeks to question Michael Flynn during trial about Fynn's role "in investigating, collecting documents, and coordinating responses to Mr. Cardwell's protected activity; his role and other's role related to how the Firm identified the basis for the 'Factual Background' section in Firm's NYSDHR Brief; and his communications with the Firm's M&A partners in 2017 shortly before M&A partners completed performance evaluations for Mr. Cardwell that rated him as 'behind,' as well as other communications and issues related to Mr. Cardwell's employment, the Firm's policies, and the Firm's responses to his protected

activity that are not protected by attorney-client privilege." During the discovery process and in writing, Plaintiff supplemented his disclosures in compliance with Rule 26(e), including but not limited to giving notice to Defendants that Flynn had discoverable information about these subjects.

<u>Defendants' Admissions</u>: Counsel for Defendants have already admitted that, during discovery, Defendants received notice that Plaintiff considered Flynn to be relevant and in possession of the types of facts referenced in Plaintiff's witness list (see the Proposed JPTO). On January 10, 2022, counsel for Defendants admitted the following to the Court:

> On March 9, 2021—with more than a month remaining before the close of fact discovery—plaintiff's counsel sent a lengthy letter taking issue with defendants' assertion of privilege on various grounds, including with respect to communications involving internal counsel. Plaintiff's counsel argued . . . that Mr. Flynn's role as internal counsel was not disclosed or explained and that the privilege log suggested that internal counsel were involved in human resources roles and not the provision of legal advice. Defendants responded, refuting the various arguments plaintiff made.

ECF 248 at 6. In the same filing, Defendants further admitted the following:

> In virtually an identical argument to one plaintiff and his counsel put forth in this motion, Mr. Jeffries stated in his March 9, 2021 letter to counsel for defendants the following: Mr. Flynn, a Davis Polk litigation partner, was designated as counsel on Defendants' 'Attorney List' despite having no official role in the Firm's General Counsel's Office. Based on Defendants' Privilege Log descriptions, Mr. Flynn appears to have been involved in HR-related roles concerning (i) Mr. Cardwell's 'performance reviews and employment,' (ii) termination, and (iii) instructing various partners and personnel (including M&A partners Louis Goldberg, Len Kreynin, Daniel Brass, Phillip Mills, as well as Renee DeSantis, Sharon Crane, and Carolina Fenner) on issues related to what should be documented and communicated in connection with Cardwell's EEOC Complaint. See Categories 4 and 6–9…. Mr. Flynn's communications should be produced immediately."[20]

---

[20] Defendants' counsel pointed the Court to this March 9, 2021 letter to argue that Plaintiff's request to re-open fact discovery is untimely. Plaintiff's motion sought—in advance of trial—*additional* and specific types of discovery related to Flynn and others. Plaintiff was not required

ECF 248 at 7 n.4. Defendants' admissions did not stop there, as they further admitted that "[t]he issues of which plaintiff now complains were known to him for months prior to the close of fact discovery and were the subject of prior correspondence between counsel." These are the types of "additional information in writings . . . and . . . meet and confers"—when ruling in favor of Defendants—both Defendants and the Court suggested "satisfied the requirement" under Rule 26(e). *See* ECF 232 at 4; ECF 238 at 17-19.

To be clear, Plaintiff seeks testimony about non-privileged facts, and Defendants' deposition testimony during discovery has already provided a non-speculative factual basis for Flynn and others to be questioned at trial. For example, Reid provided the following responses in his deposition:

> Q: Did Davis Polk investigate complaints of discrimination . . . from 2014 through 2018?
> A: The firm had policies in place to investigate those kinds of complaints and I'm sure did so when they were made….
>
> Q: What steps would be taken in an investigation, what would an investigation entail?
> A: So if a complaint was brought to a partner or internal counsel, there would have been some initial inquiry to see whether there were substantiating facts or corroborating facts. And depending on that it would go further, it would go step by step depending on what was found as specific factual support.
>
> Q: Who conducted such investigations?
> A: It would vary but it would be some combination of internal counsel and the professional development people working for Sharon Crane.

ECF 242-17 at 4. Reid testified about "a partner or internal counsel" inquiring about "substantiating facts or corroborating facts" and conclusions or decisions related to "factual support." *Id*. Reid testimony also including the following:

---

to depose Flynn, let alone every relevant potential or actual trial witness who possessed discoverable facts and information.

A: I did not tell [Cardwell] the complaint was pointless and . . . I realized this
   was a very different kind of conversation, and this as not a pointless complaint
   and needed to be reported by me to the other members of the management
   committee and to our internal counsel, I believe.

Q: And is that what you did?
A: I believe I did.

Q: What's the basis of your belief you reported this to either the management
   committee or internal counsel?
A: I recall discussions about the meeting shortly in the days that followed.

ECF 242-17 at 5. Further, Reid's testimony included the following:

Q: Did the firm conduct an investigation into Mr. Cardwell's discrimination
   complaint?
A: It was looked into, I believe.

Q: What's your basis for that belief?
A: There were a number of people who had -- who were -- who this was reported
   to. And in their follow-up, which I left them to do, I would imagine they would
   make sure themselves that there had been no racial bias at work in his
   performance reviews...

ECF 242-17 at 6-7. Lastly, Reid's testimony included the following:

Q: How did you react to Mr. Cardwell's EEOC complaint?
A: React to it? I read it and made sure it was being handled by internal and
   external counsel.

ECF 242-17 at 9-10.[21] Reid's deposition testimony is consistent with the March 9, 2021 letter

Defendants received, a letter that stated "it also appears that some of the withheld

communications concerned advice on human resources issues, summaries of fact-related

communications and instructions from … counsel on conducting … internal investigations."

ECF 242-11 at 11. Whether the documents on Defendants' privilege log are indeed covered by

privilege is irrelevant to the fact that, during discovery, Plaintiff informed Defendants that Flynn

---

[21] If Davis Polk's partners (i.e., people with ownership interests), including partners labeled
"internal counsel," fired or contributed to Plaintiff being fired because of his protected activity, a
reasonable jury could find, at a minimum, defendant Davis Polk liable for unlawful retaliation.

and other internal counsel had been identified as being involved in "internal investigations" and "HR-related roles" related to Plaintiff, his employment, and his protected activity. *Id*. at 10-11. Defendants' desire to use privilege assertions to cloak "what was found as specific factual support" and the "substantiated facts" that Reid testified about, including those "facts" in Davis Polk's nearly 15-page "Factual Background" section of the Firm's NYSDHR Statement (see ECF 271-1 at 6-22), is not a sufficient basis to—categorically or pre-trial— preclude Flynn and other relevant individuals from testifying about when and how they "substantiated facts" and made HR-decisions in connection with Plaintiff's employment and his protected activity.[22]

   <u>TAC</u>: The TAC, proposed in a motion on March 17, 2021 (ECF 167 - 167-2), plainly alleges that, "among other[]" communications, Flynn's September 7, 2017, September 11, 2017, August 8, 2017 communications with M&A partners who completed performance reviews for Plaintiff after both these dates and also Plaintiff's August 2017 complaint (i) "contributed to th[ese] partner[s] having knowledge that Mr. Cardwell filed an EEOC and/or NYSDHR complaint" and (ii) that such reviews were "adverse employment action that triggered Defendants' decision and ability to terminate Mr. Cardwell's employment."  ECF 200 ¶¶ 487-92. Defendants denied these allegations but admitted that "M&A partner[s] received an email" on these dates from "in-house counsel" and "refer to that privilege log for its content." ECF 209 at 75-76 ¶¶ 488-92. The privilege log clearly indicates that such communications involved Flynn

---

[22] Responding to a question about who made the decision to fire Plaintiff, Bick testified:"[I]t was a group discussion. It would be certainly management committee because of the EEOC complaint and focusing on impact of termination on those proceedings, and then also getting consensus from a handful of people, staffing partners, Louis Goldberg, Oliver, who had given him the reviews, **everyone who had input**, and ultimately, the consensus was that he should go get another job…." ECF 256-4 at 46 (emphasis added).

and the M&A partners on the dates alleged in the TAC. *See* ECF 232-6 at 16 and 20 (Davis Polk's privilege log, rows 222, 300-318).

Conclusion: Regarding Flynn's testimony, Defendants are not being "sandbagged" or "ambushed." For the reasons stated in this section and memorandum, Plaintiff respectfully requests that the Court deny Defendants' request to preclude Flynn testimony.

### H.  Larry Jacobs Testimony Should Not Be Precluded

The Proposed JPTO indicates Plaintiff seeks to question Larry Jacobs during trial about "the presentations that he created or present[ed] to Mr. Cardwell, his and Defendants' knowledge and responses to Mr. Cardwell's complaints concerning discrimination and retaliation; as well as Davis Polk's operations and business model, including preserving or preventing the destruction of documents through litigation holds." ECF 334 at 25.[23]

Plaintiff's TAC and Defendants' Answer: The TAC, proposed in a filing on March 17, 2021 (ECF 167 - 167-2), plainly alleges that "On June 7, 2017, about 15 M&A partners— including Mr. Chudd, Mr. Wolfe, Mr. Birnbaum, Mr. Hochbaum, Mr. Mills, Mr. Goldberg, and Mr. Amorosi—received communications related to 'document preservation notices' relating to Mr. Cardwell's complaints and the fact that Davis Polk had been informed that Mr. Cardwell obtained legal counsel around that time." ECF 200 at 132 ¶ 465. This allegation relates to these M&A partners' alleged knowledge and/or anticipation of Plaintiff's protected activity, including his August 2017 EEOC/NYSHDR complaints, and are relevant to issues related to the jury's evaluation of Defendants' credibility and the timing and reasons for their decision to fire

---

[23] Defendants erroneously interpret this description as a representation that Plaintiff will relitigate the timeliness of Plaintiff's sanction's motion *in limine*. This language describes the nature and purpose of a litigation hold, which fundamentally is about preserving or preventing the destruction of documents for various reasons. Defendants' relevancy objections can be made at, and are more appropriate for, trial (once various lines of questioning are revealed).

Plaintiff. Defendants' denied these allegations, but admitted that "the individuals named in paragraph 465 received" the referenced communications related to "document preservation notices" "on July 7, 2017 from Lawrence Jacobs." ECF 209 at 71 ¶ 465.

Letters to Defendants: Plaintiff's March 9, 2021 letter to Defendants explained that there are many scenarios in which Jacob's document preservation communications involve non-privileged facts and issues. ECF 242-11 at 15.[24] Defendants have already admitted that they received such notice during discovery and disagreed with Plaintiff's position regarding Jacob's communications. ECF 248 at 6 ("On March 9, 2021 . . . plaintiff's counsel sent a lengthy letter taking issue with defendants' assertion of privilege on various grounds.").

Conclusion: Regarding Larry Jacobs's testimony, Defendants are not being "sandbagged" or "ambushed." For the reasons stated in this section and memorandum, Plaintiff respectfully requests that the Court deny Defendants' request to preclude Jacobs's testimony.

## II.     The Testimony of the Witnesses Should Not Be Precluded Because Their Testimony is Important

The second potentially relevant factor is whether the testimony of each disputed witness is important. In this case, the testimony of the disputed witnesses (regarding the categories and scope of information described for each witness in this memorandum and the Proposed JPTO) is highly relevant and critical to the jury's determination of issues related to (i) key elements of Plaintiff's retaliation claims (e.g., knowledge of protected activity among Defendants and non-

---

[24] Regardless of whether the referenced documents on Defendants' privilege log are protected by privilege, Jacob's personal knowledge about related or underlying facts about his preservation notice-related communications are not privileged. "[W]here the notice has been sent to large groups of employees and merely described document retention practices or instructions for preservation, courts have rejected claims of attorney-client and work product protection." *United Illuminating Co. v. Whiting-Turner Contracting Co.*, No. 3: 18 CV 327 (RNC), 2020 WL 8611045, at *3 (D. Conn. Oct. 30, 2020).

defendants who interacted with Defendants, causal factors of various employment decisions (including termination)); (ii) Defendants' credibility and liability; and (iii) whether Defendants' actions warrant punitive damages. To the extent Defendants will argue that certain named defendants or uncontested witnesses can and will testify about the same topics as the disputed witnesses, this argument has significant flaws. First, Defendants are not unbiased observers of the facts or evidence—they are alleged to be participants in unlawful retaliation and are trying to avoid liability.[25] Also, Defendants do not know which specific questions Plaintiff intends to ask each witness, do not know if certain witnesses will remember certain facts and events that took place years ago, and have not accounted for the fact that Defendants' preferred witnesses and the disputed witnesses do not have the same incentives to answer certain questions the same way.

Ultimately, without the testimony of the witnesses discussed in this memorandum, the jury (and possibly the Court[26]) will not have all the relevant facts and information needed to determine if Defendants are credible, liable, or the appropriate damage award, and Plaintiff will be unfairly and severely prejudiced. This is especially true regarding individuals who had knowledge of Plaintiff's March 2017 and EEOC complaints, of which (i) Plaintiff timely requested that they be identified in interrogatories,[27] (ii) Defendants' admitted to such individuals having such knowledge in disclosures (including as noted herein),[28] and, as noted herein, (iii)

---

[25] "That the Firm appears to have, at the least, overstated the extent to which early . . . performance reviews were contemporaneously communicated to Cardwell could lead a reasonable jury to doubt the Firm's broader statements that Cardwell's performance was, in fact, disappointing from the start." ECF 305 at 67. "Cardwell has adduced some evidence relevant to the question of whether Davis Polk or other Defendants' acted with "conscious knowledge [they were] violating the law[.]" *Id*. at 75.

[26] That is, if Defendants file a motion for directed verdict following Plaintiff's case-in-chief.

[27] See, e.g., ECF 242-3 at 20 (Defendants' responses and objections to Plaintiff's interrogatories).

[28] Defendants' counsel admitting that "in November 2020—before custodial document production had begun, and with months remaining for plaintiff to engage in the process of

Plaintiff informed defendants during discovery that such individuals were relevant to the claims

and defenses and had knowledge of such protected activity and other discoverable information

and decisions related to Plaintiff's employment, including the termination of his employment.[29]

III.   **Defendants Have Suffered No Prejudice By Plaintiff's Inclusion of the Witnesses—All Current or Former Davis Polk Partners and Employees**

The third potentially relevant factor is whether the opposing party will suffer prejudice as

a result of a delayed disclosure of witnesses, or if it was "harmless." Prejudice is mitigated when

the identities of the witnesses have been made to the party during the discovery process. *See*

*Wright v. Aargo Sec. Servs., Inc.*, No. 99 Civ. 9115 (CSH), 2001 WL 1035139, at *2 (S.D.N.Y.

Sept. 7, 2001) (no harm when party was aware that witnesses had relevant knowledge, even

when opposing party failed to identify the witnesses in their interrogatory responses). "A failure

to disclose witness information is 'harmless' if the other party was well aware of the identity of

the undisclosed witness and the scope of their knowledge well before trial." *Fleet Capital Corp.*

*v. Yamaha Motor Corp., U.S.A.*, 01-CV-1047, 2002 U.S. Dist. LEXIS 17502, 2002 WL

31108380, at *2 (S.D.N.Y. Sept. 23, 2002) (citing 6 *Moore's Federal Practice* § 26.27[2][d] at p.

26-93). S*ee Preuss v. Kolmar Labs., Inc.*, 970 F. Supp. 2d 171, 177 (S.D.N.Y. 2013) (holding that

failure to disclose potential witnesses did not warrant preclusion where opposing party was

aware of potential witnesses' identities and scope of their knowledge); *Lore v. City of Syracuse*,

No. 5:00-CV-1833, 2005 U.S. Dist. LEXIS 30328, at *5-6 (N.D.N.Y Nov. 17, 2005) (finding that

---

securing documents and other discovery—the Firm explicitly confirmed, in responses and objections to plaintiff's interrogatories…that internal counsel had knowledge regarding the information and materials referenced in the Firm's responses." ECF 248 at 5.

[29] Duggan and Flynn are Davis Polk partners who generate business for the Firm in non-counsel related roles. If either of them influenced Davis Polk to fire Plaintiff because of his protected activity (e.g., EEOC/NYSDHR complaints against Davis Polk), a reasonable jury could conclude that, at a minimum, defendant Davis Polk is liable for unlawful retaliation. Excluding Duggan and Flynn as witnesses, among the other disputed witnesses, would significantly and unfairly prejudice Plaintiff and materially alter the jury's evaluation of the evidence at trial.

preclusion of witnesses was unwarranted because although the "plaintiff failed to adhere to the letter of the discovery rules, . . . [the] defendants were sufficiently aware of the existence and relevance of the persons in question so that defendants are not being subjected to trial by ambush."); *Morgenstern v. Cty. of Nassau*, 04-CV-0058, 2008 WL 4449335, at *2 (E.D.N.Y. Sept. 29, 2008) (finding harmless error where opposing party was aware of individuals role in lawsuit and served document requests related to witnesses).

Based on information Plaintiff communicated to Defendants in Plaintiff's TAC and during discovery—not to mention that all the witnesses are current or former partners or employees of defendant Davis Polk, many of whom participated in either an investigation concerning Plaintiff or dozens of communications with or about Plaintiff during his employment—Defendants have been aware for years of the identities and scope of knowledge that the disputed witnesses possessed. Defendants were not "sandbagged" or "ambushed" by either the witnesses or types of topics, issues, or evidence noted on Plaintiff's witness list.

IV.     **There is No Risk of Continuance**

For the foregoing reasons, Defendants received notice of the relevancy of the disputed witnesses during both Plaintiff's employment and in discovery, and there is no reason that trial would have to be delayed if the Court permits the disputed witnesses to testify.[30]

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendants' request to bar testimony from Neil Barr, Kathleen Ferrell, James Rouhandeh, Arthur Golden, Charles Duggan, Gina Caruso, Michael Flynn, and Larry Jacobs be denied.

---

[30] If Defendants assert they do not have enough time to prepare these witnesses for the currently scheduled January 8, 2024 trial, Plaintiff is willing to consider agreeing to a later trial start date.

DATED:      November 24, 2023              Respectfully submitted,

                                                /s/ David Jeffries

                                                David Jeffries

                                                *Attorney for Plaintiff*

cc (via ECF):

Jeh C. Johnson
Bruce Birenboim
Susanna M. Buergel

*Attorneys for Defendants*

26