NCL4CARC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    KALOMA CARDWELL,

4                   Plaintiff,

5            v.                              19 Civ. 10256 (GHW)

6    DAVIS POLK AND WARDWELL LLP,
     *et al*,
7                                           Telephone Conference

8                   Defendant.

9    ------------------------------x
                                            New York, N.Y.
10                                          December 21, 2023
                                            3:30 p.m.
11
     Before:
12
                          HON. GREGORY H. WOODS,
13
                                            District Judge
14
                              APPEARANCES
15
     DAVID JEFFRIES
16        Attorney for Plaintiff

17   PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
          Attorneys for Defendants
18   BY:  BRUCE BIRENBOIM
          JEH JOHNSON
19        MARTHA GOODMAN
          SUSANNA BUERGEL
20

21   ALSO PRESENT:   INTERPRETER/MISC.
                     EXTRA PEOPLE
22

23

24

25

NCL4CARC

 1          (Case called)

 2          THE COURT:  Who is on the line for plaintiff?

 3          MR. JEFFRIES:  Good afternoon, your Honor.  David

 4     Jeffries for Mr. Kaloma Cardwell, present with Mr. Cardwell.

 5          THE COURT:  Thank you.

 6          And who is on the line for defendant?

 7          MR. BIRENBOIM:  Good afternoon Bruce Birenboim from

 8     Paul Weiss, and I'm here representing defendants with my

 9     parters Jeh Johnson, Susanna Buergel, and Martha Goodman.

10          THE COURT:  First off, let me begin with a few brief

11     remarks about the rules I would like the parties to follow

12     during this conference.  At the outset, please remember this is

13     a public proceeding.  Any member of the public or press is

14     welcome to dial into this conference.  I'm not presently

15     monitoring whether third parties are auditing the conference,

16     but they are welcome to do so.  The parties should keep that

17     possibility in mind.

18          Second, please state your name each time that you

19     speak.  Please do that regardless of whether or not you've

20     spoken previously.

21          Third, please keep your lines on mute at all times

22     except when you are speaking.

23          Fourth, please abide by instructions by our court

24     reporter that are designed to help the court reporter do his

25     job.

NCL4CARC

1           Finally, I'm ordering that there be no recording or

2     rebroadcast of all or any portion of today's conference, there

3     will be a transcript.

4           Counsel, I scheduled this as an opportunity to take

5     further action on the parties' motion*s in limine*, really the

6     defendants' motion *in limine*.  We had an extended argument

7     regarding the motions at our last pretrial conference, but

8     pressing time left me unable to do more than provide a brief

9     summary of my expected rulings with respect to the motion *in

10    limine*.  My hope for this conference is to provide a more

11    feedback regarding the motion*s in limine* to explain my views

12    based on the parties' arguments, both orally at our conference,

13    and in your written submissions.

14          So let me just start by confirming that neither side

15    has anything additional that you would like to add to the

16    written submissions or the oral arguments that was presented at

17    our conference on the 10th or 11th.

18          In any event, counsel for defendant, let me start with

19    you.  Did you have anything else that you would like to add?

20          MR. BIRENBOIM:  No, your Honor.  We are fine where we

21    are.  Thank you.

22          THE COURT:  Thank you.

23          Counsel for plaintiff, let me hear from you.

24          MR. JEFFRIES:  Your Honor, just for a point of

25    clarification, is this with respect to all of the motions *in*

NCL4CARC

1    *limine*, or is this oriented to any one in particular?

2                 THE COURT:  This is all of them.

3                 MR. JEFFRIES:  No, your Honor.

4                 THE COURT:  Thank you.  Good.

5           So I expect to now deliver some decisions on the

6    motion*s in limine*.  Let me first say that my general rule is

7    that I require that the trial lawyers for each side participate

8    in each conference.  Because I expect to only engage the

9    parties in a very limited way, if at all, as I get through my

10   analysis of the remaining motion*s in limine* and business

11   records issue, I'm happy to excuse anybody from the call that

12   does not want to be on the call.  I don't member think all

13   members of each team need to be on the line.  A single lawyer

14   can potentially respond to questions on either side I'm sure

15   will suffice.  So I'm about to begin a rather lengthy

16   discussion of my analysis of the motion*s in limine*.  So I'm

17   happy, for the sake of efficiency, to excuse anyone who either

18   side thinks is surplusage.  Please feel free to disconnect.

19   You need not let me know that you are disconnecting.  I just

20   wanted to make sure that each side has at least one lawyer

21   representing it on the call as we go through the remainder of

22   today's conference.

23          With that, I'm going to begin with an introduction.

24          One, introduction.  I will now deliver my decisions on

25   defendants' motion *in limine*.  I will do so orally.  Defendants

NCL4CARC

1  filed an omnibus motion on September 15, 2023, where Defendants

2  raised nine motions in limine.  Dkt. No. 325 ("Motion"); see

3  also Dkt. No. 324 (notice of motion).  Plaintiff filed his

4  opposition to those motions on September 28, 2023.  Dkt. No.

5  343 ("Opposition").  Defendants filed their reply on October 3,

6  2023.  Dkt. No. 344 ("Reply").  Defendants also filed a letter

7  on October 9, 2023 asking for the Court's ruling on the

8  admissibility of Plaintiff's performance reviews as business

9  records.  Dkt. No. 345.  Plaintiff objected in his October 11,

10 2023 letter. Dkt. No. 346.  We briefly discussed this issue at

11 the November 27, 2023 conference, at which Defendants stated

12 they would submit their certification for the performance

13 reviews that week.  On November 29, 2023, Defendants submitted

14 a letter attaching the certification and further arguments on

15 this point.  Dkt. No. 360.  Plaintiff objected again in his

16 December 1, 2023 letter.  Dkt. No. 362.

17      During a pretrial conference on December 11, 2023, I

18 heard oral argument on the pending motions *in limine* and the

19 admissibility of the performance reviews as business records.

20 At the conference, I previewed my rulings on a number of the

21 motions *in limine* and the business records question.

22 Defendants subsequently submitted an amended certification for

23 the performance reviews.  Dkt. No. 368.  I have reviewed all

24 these materials and heard the parties' arguments, and I am

25 prepared to rule on the motions today.

1          The parties are familiar with the underlying facts.

2     Therefore, I will not recite those in detail.  To the extent

3     that any additional facts in this case are pertinent to my

4     decision, those facts are embedded in my analysis.

5          Two, Legal Standard. "The purpose of an *in limine*

6     motion is to aid the trial process by enabling the Court to

7     rule in advance of trial on the relevance of certain forecasted

8     evidence, as to issues that are definitely set for trial,

9     without lengthy argument at, or interruption of, the trial."

10    *Hart v. RCI Hospital Holdings, Inc.*, 90 F. Supp. 3d 250, 257-58

11    (S.D.N.Y. 2015) (quoting *Highland Capital Management, L.P. v.*

12    *Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008)).

13    "Evidence should not be excluded on a motion *in limine* unless

14    such evidence is 'clearly inadmissible on all potential

15    grounds.'"  *Id.* (quoting *Nat'l Union Fire Insurance Company of*

16    *Pittsburgh, Pa. v. L.E. Myers Company Group*, 937 F. Supp. 276,

17    287 (S.D.N.Y. 1996)).  Courts considering a motion *in limine*

18    may reserve judgment until trial, so that the motion is placed

19    in the appropriate factual context.  See National Union Fire

20    Insurance Co., 937 F. Supp. at 287 (citation omitted).

21    Further, "[a] ruling [on a motion *in limine*] is subject to

22    change when the case unfolds, particularly if the actual

23    testimony differs from what was contained in the [party's]

24    proffer."  *Luce v. United States*, 469 U.S. 38, 41 (1984).

25          The Federal Rules of Evidence govern the admissibility

of evidence at trial.  Under Rule 402, evidence must be relevant to be admissible.  Fed. R. Evid. 402.  The "standard of relevance established by the Federal Rules of Evidence is not high." *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985).  If the evidence has "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action," it is relevant.  Fed. R. Evid. 401.  Nonetheless, under Rule 403, relevant evidence may be excluded if "its probative value is substantially outweighed by a danger of one or more of the following:  Unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed R. Evid. 403.

The Second Circuit has instructed that "[d]istrict courts have broad discretion to balance probative value against possible prejudice" under Rule 403.  *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008) (citation omitted).  Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be unfair.  See Fed. R. Evid. 403; Weinstein's Federal Evidence Section 403.04(1)(a) (2019) (citing cases).  "The unfairness contemplated involves some adverse effect beyond tending to prove a fact or issue that justifies admission." *Costantino v. David M. Herzog*, M.D., P.C., 203 F.3d 164, 174-75 (2d Cir. 2000).  Further, as the advisory committee notes to Federal

NCL4CARC

1  Rule of Evidence 403 explain, "'Unfair prejudice' within its

2  context means an undue tendency to suggest decision on an

3  improper basis, commonly, though not necessarily, an emotional

4  one."

5  3, Defendants' Motions *in Limine*.  A. Defendants'

6  Motion *in Limine* No. 1.

7  Defendants' first motion *in limine* seeks to exclude

8  evidence, testimony, or argument relating to Plaintiff's

9  dismissed discrimination claims.  Motion at 1-2.  In their

10  reply, Defendants clarify that they are seeking to exclude a

11  "narrow set of evidence," consisting of evidence relating to

12  alleged comparators or statistical or quantitative information

13  regarding other Black or minority associates at Davis Polk,

14  media articles concerning the legal profession and implicit

15  bias or diversity in the profession, and documents related to

16  the September 2015 Black Affinity Group and Diversity Committee

17  meeting.  Reply at 1-4.  This motion is granted, with the

18  qualifiers and some exceptions that I will describe.

19  As an initial matter, I want to frame this motion

20  narrowly, as the defendants have done in their briefing.  There

21  is no dispute that any evidence, testimony, or argument that

22  only goes to proving or disproving Plaintiff's discrimination

23  claims but not retaliation claims is inadmissible under the

24  Federal Rule of Evidence 403 balancing test.  Those claims have

25  been dismissed, and it would confuse the issues to permit

NCL4CARC

| 1 | Plaintiff to try claims that have been dismissed.  The parties |
| 2 | do not disagree about this.  But I should not categorically |
| 3 | exclude evidence of the underlying discriminatory conduct that |
| 4 | triggered the plaintiff's alleged protected activity.  As the |
| 5 | Supreme Court of the United States has emphasized, "The |
| 6 | significance of any given act of retaliation will often depend |
| 7 | upon the particular circumstances.  Context matters." |
| 8 | *Burlington North & Santa Fe Railway Co. v. White*, 548 U.S. 53, |
| 9 | 69 (2006). |

"The real social impact of workplace behavior often
depends on a constellation of surrounding circumstances,
expectations, and relationships which are not fully captured by
a simple recitation of the words used or the physical acts
performed.  A schedule change in an employee's work schedule
may make little difference to many workers, but may matter
enormously to a young mother with school-age children.  A
supervisor's refusal to invite an employee to lunch is normally
trivial, a non-actionable petty slight.  But to retaliate by
excluding an employee from a weekly training lunch that
contributes significantly to the employee's professional
advancement might well deter a reasonable employee from
complaining about discrimination."

*Id.* ; see also *Orsaio v. New York State Department of
Corrections & Community Supervision,* 2022 WL 351827, at *3
(N.D.N.Y. Jan. 14, 2022) (permitting some evidence of

background for plaintiff's complaints based on sexual

orientation), aff'd, 2023 WL 3410554 (2d Cir. May 12, 2023).

Evidence of the underlying discriminatory conduct that

triggered the plaintiff's alleged protected activity cannot be

excluded categorically.  It is relevant to the retaliation

claim that remains to be tried.  The parties agree that it is

irrelevant whether plaintiff was correct in accusing Defendants

of discriminatory behavior.  See Opposition at 2.  The parties

dispute, however, to what extent evidence of Plaintiff's state

of mind is relevant.  At least, originally they disputed that.

Plaintiff argues that it is relevant at least in part to show

his "motivations and reasonable good faith belief that he and

others were being discriminated against at Davis Polk" and "the

reasons he expressed his concerns and made complaints."

Opposition at 3.  In their Reply, Defendants argue that

Plaintiff's state of mind is irrelevant to proving his

retaliation claims.  Reply at 4.

At the December 11 conference, however, Defendants

conceded that, to succeed on a claim of retaliation under Title

VII, plaintiff must prove that his complaint of discrimination

was "motivated by a good faith, reasonable belief that the

underlying employment practice was unlawful."  *Zann Kwan v.*

*Andalex Group LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (citation

omitted); see also *Kelly v. Howard I. Shapiro & Assocs.*

*Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) ("An

NCL4CARC

1    employee's complaint may qualify as protected activity,

2    satisfying the first element..., so long as the employee has a

3    good faith, reasonable belief that the underlying challenged

4    actions of the employer... [were] made unlawful by Title VII."

5    (citation omitted)).  "The reasonableness of the plaintiff's

6    belief is to be assessed in light of the totality of the

7    circumstances."  Kelly, 716 F.3d at 14-15.  Therefore, for the

8    purposes of this motion *in limine* at least, I will note that I

9    believe that Plaintiff's state of mind is relevant to his case.

10        Defendants cite to *Potenza v. City of New York*, but

11   that case is inapposite.  2009 WL 2156917, at *6 (E.D.N.Y. July

12   15, 2009).  There, the court excluded evidence of a non-party

13   witness receiving potentially retaliatory threats, because that

14   was irrelevant to demonstrate plaintiff's injuries from the

15   alleged retaliatory acts.  *Id.*  The Court also noted that the

16   plaintiff's perception of the threats against another

17   individual was irrelevant to determining whether the threats

18   were adverse employment actions.  *Id.*  What is at issue now,

19   however, is Plaintiff's state of mind to show that he engaged

20   in a protected activity, an entirely different analysis.

21   Defendants' citation to *Gronowski v. Spencer* for the

22   proposition that the employer's state of mind is relevant to a

23   retaliation claim also misses the point.  424 F.3d 285, 293 (2d

24   Cir. 2005).  That is not the issue.  Gronowski does not discuss

25   whether the employee's state of mind is relevant to a

NCL4CARC

1    retaliation claim.

2            Evidence regarding the context of the plaintiff's

3    alleged protected activity, including the alleged

4    discriminatory conduct that led him to complain, may be

5    introduced.  On the other hand, the Court must remain vigilant

6    against unfair prejudice to Defendants, so that evidence does

7    not "unduly inflame the passion of the jury, confuse the issues

8    before the jury, or inappropriately lead the jury to [reach a

9    verdict] on the basis of conduct not at issue in the trial."

10   *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006).

11           I provide all of this discussion as context for my

12   ruling on the defendant's motion *in limine*.  Notwithstanding

13   the broad heading that Defendants used in their briefing to

14   headline this motion ("To Exclude Evidence, Testimony, or

15   Argument Relating to the Dismissed Discrimination Claims"), I

16   understand it to be cabined to the specific categories of

17   evidence identified in the motion itself and the Reply, not a

18   broad application to exclude all evidence of discrimination at

19   the firm, as plaintiff has construed the motion.

20           With this framework established, I will now turn to

21   the specific evidence at issue.

22           1.Purported Comparators' Performance Reviews.

23           Defendants' motion to exclude the performance reviews

24   of alleged comparators is granted.  The parties spend a lot of

25   their focus on debating the admissibility of the performance

NCL4CARC

1    reviews of other Davis Polk associates, such as those found at

2    PTX523 and PTX555.  Plaintiff is precluded from introducing all

3    such reviews as part of his direct case in chief.  At the

4    outset, these reviews have very limited probative value.  As

5    plaintiff acknowledges in his opposition, plaintiff received

6    these reviews in the discovery process.  Opposition at 6-7.

7    Plaintiff has not proffered any basis to conclude that

8    plaintiff knew of the content of these reviews at the time that

9    he engaged in his protected activity.  They have essentially no

10   probative value with respect to whether he had a reasonable

11   belief that he was engaged in protected activity at the time.

12   Therefore, the principle probative value of these reviews would

13   be to show that Davis Polk did, indeed, discriminate.  To the

14   extent that this evidence has any probative value here, it is

15   substantially outweighed by countervailing considerations of

16   prejudice, jury confusion, wasting time, and the like for a

17   substantial number of reasons.  I will outline some here.

18        First, the Court has concluded that the purported

19   comparators were not shown to have been sufficiently similarly

20   situated to plaintiff to constitute proper comparators for

21   purposes of supporting Plaintiff's discrimination claim.

22   Plaintiff cannot now introduce this evidence for the purpose of

23   proving that it is more likely than not that his beliefs

24   regarding the content of his protected activity were

25   reasonable.  The comparator evidence does not sufficiently

NCL4CARC

1     support a claim that Defendants engaged in discrimination.

2     Permitting Plaintiff to attempt to prove through these reviews

3     that Defendants engaged in discrimination-the dismissed

4     claims-would result in substantial jury confusion.  Plaintiff's

5     other argument regarding the probative value of the

6     introduction of these reviews shows that the probative value of

7     the reviews themselves is very limited.  Plaintiff argues that

8     the reviews are evidence of the firms' review practice and the

9     components of a review.  But, as we have discussed, there are

10    numerous witnesses who have been identified by plaintiff who

11    can speak about the review process as a whole.  The marginal

12    probative value of introducing up to 100 individual exhibits of

13    people not otherwise involved in this case to illustrate the

14    review process as a whole is very limited.

15          Moreover, the introduction of these reviews would risk

16    confusing the issues and a profound waste of time.  Plaintiff's

17    exhibit list includes nearly 100 exhibits reflecting

18    performance reviews for the alleged comparators.  The

19    introduction of all of the proposed comparator evidence would

20    result in a substantial waste of time and encourage juror

21    confusion.  That is not only because of the volume of the

22    exhibits, but because the introduction of each of these reviews

23    would invite mini-trials regarding the nature of the substance

24    of the work done in each of the reviews, the background of the

25    person doing the work, and the like.  For example, even if

NCL4CARC

1   Plaintiff were to offer up an associate in the same year who

2   received poor performance reviews but was not terminated from

3   employment—which could make the performance review at question

4   arguably more probative than others—the parties would still

5   have to engage in whether that associate's performance review

6   was warranted, whether it differed in material parts from

7   Plaintiff's, whether that associate's review reflected more

8   complex or difficult assignments compared to Plaintiff's, and

9   other fact-intensive questions.  Engaging in such "mini-trials"

10  would have limited probative value but bring significant

11  concerns of unduly prejudicing Defendants by having them defend

12  their treatment of other non-parties, confusing the jury as to

13  the issues to be decided, and ultimately wasting the jury's

14  time.  See, e.g., *Dooley v. Columbia Presbyterian Medical*

15  *Center,* 2009 WL 2381331, at *2 (S.D.N.Y. July 29, 2009)

16  (holding that evidence of different error with other patients

17  in medical malpractice suit was inadmissible where the doctor

18  "would be forced to simultaneously defend against two separate

19  sets of claims, inviting a distracting 'mini-trial' into the

20  course of the main proceedings"); *Martinelli v. Penn Millers*

21  *Insurance Co.*, 2007 WL 9759057, at *7 (M.D. Pa. March 19, 2007)

22  (excluding evidence of another employee's experience in part

23  because "the proceeding would be unduly delayed by the

24  resulting mini-trial, and the jury's attention would have been

25  diverted from the real issues of this case").

NCL4CARC

1          Plaintiff argues that some of these reviews should be

2     introduced for the specific purpose of attempting to show that

3     Mr. Kreynin filled out reviews for other associates in 2016,

4     arguably making, in Plaintiff's view, the lack of one for

5     Mr. Cardwell for 2016 suspicious.  Opposition at 9-12.

6     Mr. Kreynin is expected to testify during trial, and the only

7     probative value of these other reviews from the end of 2016 is

8     their existence, not their contents.  Therefore, the same Rule

9     403 concerns of undue prejudice, wasted time, and confusion of

10    the issues substantially outweigh the limited probative value

11    of the reviews.

12          I am not precluding the plaintiff from asking

13    Mr. Kreynin about whether he filled out performance reviews for

14    other associates, and I leave open what I would permit to be

15    shown to him to refresh his recollection or to impeach him on

16    his testimony in response to the question.  But at this point,

17    all of the concerns that I identified earlier regarding the

18    introduction of these performance reviews substantially

19    outweigh the very limited probative value for which the

20    plaintiff seeks to introduce them, which is just to prove that

21    Mr. Kreynin completed reviews for other associates in 2016.

22    The content of the reviews has very little probative value.

23          In any case, I also note that plaintiff has asserted

24    that his performance reviews are inadmissible hearsay.  While I

25    will address that objection later, I will note that Plaintiff's

1    objections apply just as much to these performance reviews.

2    Defendants' Rule 902(11) certification for Plaintiff's

3    performance reviews does not list these reviews that plaintiff

4    seeks to enter into evidence.  Therefore, at this point,

5    plaintiff has provided the Court with no basis to conclude that

6    the reviews constitute non-hearsay or hearsay subject to an

7    exception.

8              2.Statistical Evidence and Context Evidence of

9    Diversity in the Legal Profession.

10             Defendants' motion to exclude asserted "statistical"

11   evidence about the number of Black and other minority attorneys

12   at Davis Polk and in the legal industry at large is granted.

13   This evidence has some, but limited, probative value:  That

14   probative value is substantially outweighed by the

15   countervailing considerations described in Rule 403.  At the

16   outset, the protected activities that plaintiff engaged as

17   alleged in the complaint did not involve complaints regarding

18   the number of Black or other minority associates at the firm.

19   See Dkt. No. 305 ("Summary Judgment Opinion") at 46.

20   Therefore, the evidence regarding the number of minority

21   associates and partners at the firm and in the legal industry

22   as a whole provides some context for Mr. Cardwell's alleged

23   protected activities, but they are not the subject of such

24   protected activities.  Thus, the probative value of this

25   evidence is limited.  And detailed information about those

NCL4CARC

1    statistics is not necessary in order to provide the context for

2    the plaintiff's protected activity.

3         But there are other substantial risks of introducing

4    this evidence that outweigh its probative value.  First, this

5    evidence risks undue prejudice, juror confusion, and wasting

6    time.  At the outset, this trial is about the retaliation

7    claims brought by plaintiff.  Big law is not on trial here for

8    the lack of its racial diversity.  Plaintiff's desire to

9    introduce evidence of the lack of representation of minority

10   groups in the legal industry at large and at Davis Polk in

11   particular raises profound concerns that plaintiff seeks to

12   introduce the evidence in order to suggest a verdict based on

13   improper purposes-namely, to punish Davis Polk and the legal

14   industry for its lack of diversity.  Suggesting a verdict on

15   those grounds would be unduly prejudicial, confusing, and waste

16   the jury's time.  It appears that the purpose and effect of the

17   introduction of this evidence is to "inflame the passion of the

18   jury... or inappropriately lead the jury to render a decision

19   on the basis of conduct not at issue."  Dooley, 2009 WL

20   2381331, at *1.  The evidence that Defendants seek to exclude

21   is highly suggestive of a desire by plaintiff to litigate his

22   remaining claim on that basis, which is unduly prejudicial.

23   Second, again, the discrimination claims themselves have been

24   dismissed.  In dismissing those claims, I noted that the

25   probative value of the purported "statistical" evidence was

NCL4CARC

1    very limited-it was just raw data without any kind of analysis

2    or controls.  See, e.g., Summary Judgment Opinion at 43.

3    Third, the introduction of the kind of numerical evidence that

4    plaintiff wishes to present will lead to a waste of juror time

5    and confusing the issues as the defendants respond with their

6    own evidence.  For example, defendants' answer to the EEOC

7    charge touts the Firm's many alleged good works in the

8    diversity space, and its high percentage of new diverse

9    partners and the diversity of its associate staff.  The

10   introduction by plaintiff of this category of evidence only

11   invites expansive, time wasting, and juror-confusing response

12   by Defendants to rebut it and its imputations.

13           This categorical ruling applies to many exhibits and

14   areas of proposed testimony.

15           Because the parties have identified several specific

16   exhibits in their briefing, I will respond to those arguments

17   now.  The public articles that the parties cite to have very

18   little probative value to the case and carry significant risk

19   of undue prejudice or confusion for the reasons that I have

20   described. See PTX107, PTX137.  For example, the diversity of

21   Davis Polk's partnership is not an issue at trial, but it may

22   inflame the biases of jurors or confuse them as to whether it

23   is relevant to determining Plaintiff's claims.  To the extent

24   that plaintiff discussed one of the articles with defendant

25   Mr. Reid, plaintiff may elicit testimony as to the contents of

NCL4CARC

1   that discussion.  See Opposition at 4.  The articles themselves

2   are also hearsay, to the extent that plaintiff seeks to

3   introduce them for the truth of the contents of the articles,

4   and plaintiff does not argue otherwise.  See Opposition at 5.

5   Therefore, these articles are also excluded.

6           As for certain documents related to the September 2015

7   Black Affinity Group and Diversity Committee meeting, plaintiff

8   argues that they are relevant for showing that Davis Polk "was

9   systematically and routinely seeking and receiving feedback

10   from the Firm's minority affinity groups and routinely

11   providing reports to the Management Committee about the

12   concerns and feedback they received."  Opposition at 3 n.3.  At

13   the December 11 conference, plaintiff was not able to proffer

14   any significant probative value for most of these documents.

15           For PTX220, an email invitation to the September 2015

16   meeting, and PTX221, an agenda for the same meeting, plaintiff

17   argued that the documents were relevant to show defendants'

18   knowledge of protected activity in the September 2015 meeting,

19   including that Alicia Fabe coordinated the meeting.  But the

20   email invitation and agenda themselves, which precede the

21   September 2015 meeting, do not show any evidence of Plaintiff's

22   alleged protected activity, nor any follow-up that might

23   demonstrate defendants' knowledge of such activity.  Multiple

24   witnesses, including plaintiff himself, are expected to be able

25   to testify regarding the attendance at, contents of, and

NCL4CARC

follow-up to the September 2015 meeting.  At most, these

documents may simply be necessary to refresh the recollection

of a witness.  Therefore, plaintiff has not shown any probative

value for these documents as exhibits, and any limited

probative value will be significantly outweighed by the risks

of cumulativeness and wasted time.

        For PTX223, PTX305, and the attached PTX306, the Court

finds that plaintiff has made enough of a showing of potential

probative value that they should not be excluded at this time.

PTX223 contains handwritten notes from Ms. Fabe from the

September 2015 meeting, including the memorialization of

Plaintiff's alleged protected activity.  PTX305 and PTX306

contain a slide deck purportedly presented by the Diversity

Committee to the Management Committee at Davis Polk, along with

its cover email, that in part references "suggestions/concerns"

raised at the September 2015 meeting, arguably suggesting that

the recipients were already aware of the September 2015 meeting

and its contents.  Therefore, these documents appear to be

potentially relevant to Plaintiff's claims and do not appear to

be substantially outweighed by a countervailing concern at this

time.

        Finally, PTX465 and PTX484, which contain email

correspondence related to a presentation made to a different

affinity group at Davis Polk and a list of affinity group or

diversity events, respectively, are excluded.  Plaintiff argue

NCL4CARC

1    that these documents demonstrate the firm "culture," including

2    a "pattern" of affinity groups sharing concerns to the firm

3    leadership and of the firm tracking affinity group or

4    diversity-related events.  But these have limited, if any,

5    probative value.  Again, the trial is focused on certain of

6    plaintiff's actions and the firm's reactions to those actions,

7    not the firm's involvement in other affinity groups or

8    diversity efforts in general.  Plaintiff did not proffer any

9    probative value these documents would provide to Plaintiff's

10   case.  On the other hand, introducing these documents would

11   only invite substantial risks of confusing the jury and wasting

12   time.

13          The Court clarifies that excluding these specific

14   categories of evidence does not foreclose plaintiff from

15   introducing some context, for example through his own testimony

16   on the stand, for his retaliation claims that might also touch

17   upon what would have been his discrimination claims.   In

18   particular, as noted, plaintiff must show that he was

19   "motivated by a good faith, reasonable belief that the

20   underlying employment practice was unlawful," and the

21   "reasonableness of the plaintiff's belief is to be assessed in

22   light of the totality of the circumstances."  Zann Kwan, 737

23   F.3d at 843; Kelly, 716 F.3d at 14-15.  And I am specifically

24   not excluding all evidence of the types of issues that the

25   Diversity Committee and Mr. Cardwell were working to address -

NCL4CARC

1    the Court is not now precluding plaintiff from testifying about

2    his perceived need to increase the diversity of the legal

3    profession as part of the description of his work in

4    furtherance of that goal at the firm, nor am I precluding the

5    elicitation of such evidence from others.  That the Diversity

6    Committee was working to enhance the diversity of the firm is

7    arguably an important piece of contextual information.  But the

8    categories of evidence just discussed are not needed to tell

9    that story or to provide the needed context for Plaintiff's

10   alleged protected activity.  The Court will make a case-by-case

11   determination at trial as to other specific testimony and

12   evidence.

13       Accordingly, the Court grants in part and denies in

14   part defendants' first motion *in limine*.

15       B.  Defendants' Motion *in Limine* No. 2.

16       Defendants' second motion *in limine* seeks to preclude

17   plaintiff from presenting arguments or evidence of alleged

18   adverse employment actions that the Court has already

19   dismissed.  Motion at 8.  This motion is granted.

20       As the defendants argue, plaintiff originally

21   presented 11 purported adverse actions in support of his

22   retaliation claims.  The Court held that six of them did not

23   constitute adverse employment actions either as a matter of

24   fact or as a matter of law.  Summary Judgment Opinion at 60-61.

25   Because the Court has held that those actions are not adverse

NCL4CARC

1    employment actions, plaintiff may not argue at trial that any

2    of those actions constituted an adverse employment action.

3    See, e.g., *Rhee-Karn v. Lask*, 2023 WL 4238908, at *2 (S.D.N.Y.

4    June 28, 2023) (precluding arguments of dismissed claims as

5    moot).

6          Plaintiff's only objection is that defendants' motion

7    is overbroad and too generalized, and that the Court must make

8    a case-by-case determination based on the specific evidence at

9    issue.  Opposition at 16-17.  But I think that on this too,

10   plaintiff's opposition misreads the motion.  Defendants have

11   not moved for the Court to exclude evidence of each of the

12   events that they listed:  They have only moved to preclude

13   evidence or argument that they constituted adverse employment

14   actions.  The facts may have relevance in proving other parts

15   of the parties' claims.  For example, Mr. Chudd and Ms.

16   Hudson's reviews are not retaliatory actions in themselves, but

17   they may have probative value to determining whether

18   plaintiff's eventual termination (and other alleged adverse

19   employment actions) were justified or retaliatory.  And as the

20   Court previously recognized, defendant Mr. Reid's alleged

21   comment to plaintiff that he would be "out of the game," too,

22   is not a retaliatory act in itself but could be probative for

23   understanding whether defendants' other alleged adverse actions

24   were retaliatory in nature.  So, again, I am granting

25   Defendant's motion, which is to prevent the plaintiff from

NCL4CARC

1    contending that the incidents listed in their motion

2    constituted adverse employment actions.  In granting the

3    motion, I am not precluding the introduction of these facts for

4    other purposes.

5            C. Defendants' Motion *in Limine* No. 3.

6            Defendants' third motion *in limine* seeks to exclude

7    testimony and evidence of plaintiff's "moral" or "good

8    character."  Motion at 11.  This motion is granted.  But again,

9    I am concerned that plaintiff has misconstrued the scope of the

10   motion itself, so I will spend a little time reminding the

11   parties that I am granting only the motion made, which is to

12   exclude the introduction of evidence to show Plaintiff's

13   character.

14           Federal Rule of Evidence 404(a)(1) provides that

15   "Evidence of a person's character or character trait is not

16   admissible to prove that on a particular occasion the person

17   acted in accordance with the character or trait."  However, any

18   party "may attack the witness's credibility," or a witness's

19   truthfulness or untruthfulness may be presented in certain

20   circumstances.  See Fed. R. Evid. 404(a)(3), 607, 608.

21   Therefore, any evidence or argument that Mr. Cardwell was a

22   "good" "moral" person or that he had a positive reputation is

23   properly excluded, as defendants argued in their motion.

24   Reputation or opinion testimony regarding plaintiff's character

25   would have very limited probative value for the issues in the

NCL4CARC

1    case, and any such probative value is substantially outweighed

2    by the risk of confusing the jury and confusing the issues

3    presented.  Reputation evidence regarding his truthfulness

4    might be introduced under some circumstances – see FRE 608 –

5    but evidence of his alleged "good" character is not to be

6    admitted.

7              Plaintiff's opposition again confuses the issue

8    presented by defendants' motion.  Plaintiff argues that he

9    should be permitted to present specific evidence regarding the

10   work that he did at the firm.  But the specific evidence that

11   he cites is not character or reputation evidence that would be

12   excluded as a result of the motion – it is evidence about

13   things that he did at the firm.  See, e.g., Opposition at 17–18

14   (referring to evidence, for example, of defendants' "positive

15   and favorable assessments and discussions about Plaintiff's

16   competencies").  Plaintiff cites several specific exhibits in

17   his opposition as well, none of which were described in

18   defendants' motion as having been the target of this motion.

19   Since plaintiff raised the admissibility of certain exhibits,

20   defendants responded.  As they describe, some of that evidence

21   may be properly admissible as evidence "that plaintiff was

22   engaged in diversity and inclusion activities outside of work."

23   Plaintiff misapprehends the nature of the motion.

24              The same is true with respect to prospective evidence

25   regarding plaintiff's concern that the effect of this motion

NCL4CARC

 1    *in limine* would to preclude him from offering evidence related

 2    to his "understanding, training and expertise concerning Davis

 3    Polk and law firm dynamics."  This is not testimony about his

 4    reputation for being a good or moral person, and was not the

 5    subject of the motion.  On this point too, plaintiff seems to

 6    misapprehend the nature of the motion and what it sought to

 7    preclude.

 8         But I think that it is important for me to comment

 9    briefly on one part of this argument:  Mr. Cardwell has not

10    been qualified as an expert witness by the Court.  He is a lay

11    witness and may, as a result, testify about things that a lay

12    witness can testify about.  In particular, I do not understand

13    that he has disclosed himself as an expert in the area of "law

14    firm dynamics."  I have not found him to be qualified as an

15    expert in that arena or any other.  As far as I know,

16    Mr. Cardwell only worked at one law firm, he made it through

17    only four years, and his experience at a single law firm does

18    not seem to qualify him as an expert in "law firm dynamics"

19    generally.  I flag this issue because I am concerned that

20    Mr. Cardwell may believe that he can testify as if he were a

21    qualified expert – he may not unless I permit him to do so.

22    And he has made no application to permit him to do so.

23         The parties discuss one letter by Sheila Adams, a

24    black attorney who was a senior associate during the relevant

25    time and is currently a partner at Davis Polk.  At the December

NCL4CARC

 1    11 conference, plaintiff stated that the letter will not be

 2    presented as evidence, but Ms. Adams will be questioned about

 3    it.  The letter is quoted in the parties' pleadings as

 4    describing Mr. Cardwell's "ability to connect people to

 5    actionable ideas," "exhibit leadership among more senior

 6    attorneys and partners," and help Ms. Adams as a "go-to person

 7    for key decision points... [in] navigating the politics of

 8    potential partnership consideration or troubleshooting ways to

 9    get better to ensure the success of our diverse peers."  Motion

10    at 12; Opposition at 18.  The Court recognizes that testimony

11    and evidence regarding Mr. Cardwell's active involvement in the

12    local city bar association and Davis Polk's associate

13    community, particularly in pushing forward diversity and

14    inclusion initiatives at Davis Polk, may have some probative

15    value for Plaintiff's case.  But, again, this is not reputation

16    or character evidence.

17           Accordingly, the Court grants defendants' third motion

18    *in limine*.

19           D. Defendants' Motion *in Limine* No. 4.

20           Defendants' fourth motion *in limine* seeks to exclude,

21    in essence, evidence, testimony, or argument related to any

22    alleged discrimination or retaliation experienced by any other

23    Davis Polk employee.  Motion at 13-20.  This motion is granted

24    in part and denied in part.

25           Federal Rule of Evidence 404(b) provides that

NCL4CARC

"evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, the "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. at 404(b)(2). "The Second Circuit's 'inclusionary' rule allows the admission of such evidence 'for any purpose other than to show a defendant's criminal propensity, as long as the evidence is relevant and satisfies the probative-prejudice balancing test of Rule 403 of the Federal Rules of Evidence.'" *United States v. Greer*, 631 F.3d 608, 614 (2d Cir. 2011) (quoting *United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994)). "The district court has wide discretion in making this determination...." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000).

In order to assess the admissibility of "other acts" evidence under Rule 404(b), a district court follows a multi-step process:

First, the district court must determine if the evidence is offered for a proper purpose, one other than to prove the defendant's bad character or criminal propensity. If the evidence is offered for a proper purpose, the district court must next determine if the evidence is relevant to an

NCL4CARC

issue in the case, and, if relevant, whether its probative

value is substantially outweighed by the danger of unfair

prejudice.  Finally, upon request, the district court must give

an appropriate limiting instruction to the jury.

United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir.

1992); accord United States v. Schlussel, 2008 WL 5329969, at

*2 (S.D.N.Y. Dec. 15, 2008).  "Even under th[e] [inclusionary]

approach, however, district courts should not presume that

[other act] evidence is relevant or admissible." United States

v. Curley, 639 F.3d 50, 56 (2d Cir. 2011).

Plaintiff argues that he should be permitted to

introduce evidence of "other associates' concerns and

Defendants['] knowledge of such concerns."  Opposition at 20.

He claims that such evidence is relevant to the jury's

assessment of defendants' credibility.  Id.  He also argues

that this category of evidence will help provide context for a

series of specific acts taken by Defendants.  Id. at 19-20.

The probative value of this evidence is very limited.

At the outset, plaintiff does not identify any specific

testimony that he wants to provide regarding "other associates'

concerns" other than the existence of the Martinez litigation,

which I will discuss in more detail in a moment.  Absent a

proffer regarding the specific nature of this evidence, the

Court does not ascribe it substantial probative value.  Second,

to the extent that plaintiff is suggesting that he may talk

NCL4CARC

about things that other associates told him they experienced,

that will likely introduce substantial hearsay issues. (As an

aside, such evidence would have to be offered for the truth of

the matter asserted in order to be considered by the jury, as

plaintiff argues, to evaluate the credibility of defendants'

testimony.)

In the absence of any proffer by plaintiff regarding

other evidence that he might offer with probative value in

response to this motion, the parties focus on the admissibility

of the decision *Martinez v. Davis Polk & Wardwell LLP*, a

discrimination and retaliation action brought against Davis

Polk that was ultimately dismissed on summary judgment. 208 F.

Supp. 3d 480 (E.D.N.Y. 2016), aff'd, 713 F. App'x 53 (2d Cir.

2017).

At the December 11, 2023 hearing, plaintiff stated

that he is not seeking to admit any of the filings in the case,

other than for impeachment. Plaintiff argues, however, that

general facts about the case and defendants' awareness of the

case during relevant time periods should be admitted.

Specifically, plaintiff points out that Davis Polk filed its

motion for summary judgment in August 2015, one month before

Mr. Cardwell made his September 2015 alleged complaint and

before Plaintiff's unscheduled mid-year review in June 2016.

*Id*. at 20-21. The *Martinez* case's retaliation claim was

dismissed, and affirmed, on the grounds that the unfavorable

NCL4CARC

1    performance review the plaintiff received after filing her EEOC

2    charge was not a retaliatory action because the plaintiff

3    already knew to expect the unfavorable review at the time she

4    filed her EEOC complaint. *Martinez*, 208 F. Supp. 3d at 489-90.

5    The Second Circuit, on appeal, also noted that the plaintiff

6    had received some critical feedback in her performance reviews

7    prior to her EEOC filing. *Martinez*, 713 F. App'x at 57.

8            During our conference on December 11, plaintiff agreed

9    that he would not offer the filings in *Martinez*, except, again,

10   potentially for impeachment purposes.  Plaintiff's decision not

11   to offer the filings in the *Martinez* case in this case makes

12   good sense.  Those have very little probative value.

13   Introducing such documents carries significant risk of

14   distracting the jury from the merits of plaintiff's case and

15   therefore wasting the jury's time and confusing or misleading

16   the jury with the arguments and allegations of a separate,

17   distinct case that is not at trial.  The court filings, which

18   may appear official and formal, may also carry the risk of

19   carrying undue weight with the jury, whether it be to give

20   extra weight to the factual allegations within or to the

21   ultimate dismissal of the case.  The former scenario presents a

22   risk of inflaming prejudices against defendants, while the

23   latter could unfairly prejudice plaintiff by suggesting that

24   his case, too, may fail.  The extremely limited probative value

25   of the filings in the *Martinez* case, if any, are substantially

NCL4CARC

1   outweighed by the risk of undue prejudice, confusing the jury

2   and the other concerns described in Rule 403.  So, I appreciate

3   plaintiff's concession that he will not offer them.

4         The probative value of the facts underlying the

5   *Martinez* lawsuit is extremely limited.  First off, the case

6   bears very little factual similarities to this matter.  It does

7   not involve a claim of discrimination by a lawyer, but by a

8   non-lawyer employee of the firm.  The are no substantial

9   similarities regarding the nature of the allegations asserted.

10  The relevant time period ended in about 2013, before

11  Mr. Cardwell's time at the firm, and involved allegations of

12  low pay and lack of promotions rather than termination.  Motion

13  at 17.  Second, the case was dismissed, so the claims were not

14  found to have any merit–the mere fact that a lawsuit was

15  brought does not mean that the party named as a defendant

16  engaged in the conduct asserted in the complaint.

17        However, the fact that *Martinez* was a public lawsuit

18  alleging discrimination and retaliation against defendant Davis

19  Polk could be probative of defendants' heightened sensitivity

20  to similar allegations and, support plaintiff's contention that

21  defendants learned from the case that ginning up fake

22  performance reviews would protect them in potential future

23  litigation brought by plaintiff.  In particular, as plaintiff

24  argued at the December 11 conference, the central role of

25  performance reviews in the *Martinez* dismissal, which occurred

NCL4CARC

in September 2016, could arguably be probative to defendants'
state of mind in giving plaintiff negative performance reviews
in the fall of 2016 and at his December 2016 annual feedback
meeting, provided that plaintiff is first able to introduce
evidence of defendants' knowledge of *Martinez* at trial.
Notably, plaintiff alleges that, on November 7, 2016, Mr. Bick
specifically asked that Mr. Cardwell be added to a list of M&A
associates who would receive a performance-based mid-year
review in 2017, though he was not initially on the list.  Dkt.
No. 220  282-283.

        Therefore, the probative value of a fact, if proven,
that the actors at Davis Polk were aware of the value of
adverse performance reviews in rebutting claimed retaliation is
real.  The defendants' alleged knowledge of that fact by
itself, it does not necessarily risk the same degree of
prejudice as the introduction of the content of the filings in
that case.

        On the other hand, given the differences in the nature
of the facts, the probative value of the particular facts of
the *Martinez* case is not as great as the plaintiff posits: in
particular, the *Martinez* case did not involve a lawyer, so the
argument that the partners learned from the existence of
*Martinez* that they should drum up negative reviews for
Mr. Cardwell is weaker.  And, as defendants argued at the
December 11 conference, defendants could suffer undue prejudice

NCL4CARC

         1    by the introduction of the *Martinez* case by putting into the
         2    jury's mind that defendants have dealt with similar lawsuits
         3    and complaints of employment discrimination.  Still,
         4    recognizing these distinctions, I believe that the evidence of
         5    the existence of the Martinez action should be excluded, but
         6    listen to the scope of exclusion here, after applying the Rule
         7    403 balancing test.  The prejudicial effect of the fact of a
         8    particular lawsuit substantially outweighs the probative value.
         9    Evidence of the fact of a lawsuit against the firm raises the
        10    prospect that the jury will render a verdict against Davis Polk
        11    and the other defendants on the basis of conduct that's not at
        12    issue here in this case–conduct that was shown to be
        13    unsubstantiated and that was, in any event, factually distinct
        14    from the allegations in this case.  Mentioning a particular
        15    lawsuit opens the door to the kind of mini-trial that I
        16    described earlier, even if the filings themselves are not
        17    admitted, the parties, in particular the defendants, will
        18    likely want to elaborate on the nature of the underlying claim
        19    and its merit in order to rebut an argument that the claim had
        20    merit.  That reaction, which would be natural and
        21    understandable, would result in a substantial waste of time and
        22    confuse the issues for the jury.
        23         So, in sum, I am going to grant the motion in part
        24    insofar as it pertains to the particular *Martinez* litigation.
        25    Again, I want to be clear that I am not excluding examination

NCL4CARC

now regarding the defendants' motivations, and their general

understanding about potential risks to the firm and themselves

when handling a claim of discrimination, including the prospect

of litigation generally.  I am limiting references to to the

*Martinez* litigation in particular, as follows:

Plaintiff may inquire of pertinent witnesses whether

they were aware of the existence of a litigation against Davis

Polk for retaliation; that the claim was unsuccessful; and that

part of the reason for the fact that the claim was unsuccessful

was the fact that the firm had kept adverse performance

reviews.  I think that this limited line of inquiry should

suffice to elicit the probative value of the defendant's

understanding of the case or knowledge of the case without

opening the door to an extensive exploration of the case or its

facts.  Further inquiry regarding the case might be permitted

to refresh a witnesses' recollection.  Permitting this limited

set of information about *Martinez* will also curb, I hope, the

danger of any wasted time and confusion to the jury.

SO I'm going to grant in part and deny in part and

denies in part defendants' fourth motion *in limine*.  If the

defendants wish for the Court to administer any kind of a

limiting instruction regarding this, you make such a request.

I'd be happy to answer more questions about this at a later

point.

E. Defendants' Motion in Limine No. 5.

NCL4CARC

1    Defendants' fifth motion *in limine* seeks to exclude

2    Plaintiff's EEOC and NYSDHR submissions as well as the EEOC's

3    "right to sue" letter.  Motion at 20-21.  This motion is

4    granted, but specifically as to the use of these documents as

5    evidence for plaintiff's case.

6    Plaintiff filed his complaint with the EEOC (the

7    "Charge") on August 3, 2017, filed a written rebuttal to Davis

8    Polk's response on January 10, 2018, and filed a supplemental

9    charge with the EEOC on April 25, 2018.  Motion at 20-21.

10    Plaintiff has listed the parties' submissions to the EEOC

11    (which were referred to the NYSDHR) among his exhibits.  See

12    PTX118, PTX120, PTX121.

13    Plaintiff cannot offer these submissions as evidence

14    of the truth of the matter asserted in the submissions because

15    they are inadmissible hearsay under Federal Rules of Evidence

16    801 and 802.

17    Plaintiff does not dispute this and instead argues

18    that he would introduce the submissions not for the "truth of

19    the matter asserted" but because their existence, essentially,

20    is relevant to his claims.  Opposition at 22-23.  The Court

21    agrees in part, in that the fact that plaintiff filed his

22    Charge with the EEOC on August 3, 2017, and filed a rebuttal on

23    January 10, 2018, as well as the general nature of the

24    allegations and arguments in these submissions, is highly

25    probative to his case.

NCL4CARC

1          The Charge is an alleged protected activity.  The

2     timing of these actions is also in close proximity to the

3     negative performance review plaintiff received during his

4     annual meeting on January 11, 2018 as well as his receipt of

5     the "time to go" meeting from Davis Polk on February 8, 2018.

6     See, e.g., *Zann Kwan*, 737 F.3d at 847 (finding that "the very

7     close temporal proximity between [plaintiff's] protected

8     conduct and her termination" helps defeat summary judgment on a

9     retaliatory termination claim).

10          However, the Court finds the remainder of plaintiff's

11     arguments as to why his EEOC and NYSDHR submissions are

12     relevant to his case to be unpersuasive.  The submissions

13     themselves are not required for plaintiff to establish that he

14     engaged in protected activity, as he and others can simply

15     testify to the dates and other relevant facts as needed.

16          Also, the EEOC's "right to sue" letter has no

17     probative value.  "Its sole purpose is to prove that plaintiff

18     has satisfied the jurisdictional prerequisites to bringing

19     suit, and that is not an issue for the jury." *Elam v.*

20     *Concourse Village, Inc.*, 2017 WL 1383984, at *2 (S.D.N.Y. April

21     7, 2017).

22          On the other hand, the probative value of the

23     introduction of this such evidence is substantially outweighed

24     by the risks of undue prejudice, confusing the issues, and

25     misleading the jury, as well as resulting in wasted time.

NCL4CARC

1    Plaintiff's submissions contain arguments and assertions that

2    are not at issue in this trial – including facts that refer to

3    the underlying claims of discrimination that have been

4    dismissed.  Indeed, such submissions as the ones at issue are

5    routinely excluded from employment cases.  See, e.g., *Reilly v.*

6    *Revlon, Inc.*, 2009 WL 2900252, at *2 (S.D.N.Y. September 9,

7    2009).

8         Accordingly, the Court grants defendants' fifth motion

9    *in limine* as to plaintiff's use of his submissions to the EEOC

10   and NYSDHR and the EEOC's "right to sue" letter as evidence for

11   his case.  The probative value of the evidence at issue is

12   substantially outweighed by the danger of undue prejudice,

13   confusing the issues, misleading the jury, and wasting time.

14        To clarify, however, plaintiff may induce testimony

15   regarding the basic facts of his EEOC submissions.  Defendants

16   may also use plaintiff's charge as non-hearsay evidence or for

17   impeachment, provided that other admissibility requirements are

18   met.  See Fed. R. Evid. 801(d)(2).

19        Separately, I understand that defendants offered to

20   stipulate to the underlying facts involving the EEOC charge,

21   including its date, and that plaintiff refused to do so.  To

22   the extent the decision not to agree to the proposed

23   stipulation was influenced by a desire to strengthen the

24   argument for the introduction of the documents themselves, I

25   encourage plaintiff to reconsider whether he is willing to

NCL4CARC

stipulate to the pertinent undisputed facts.

F. Defendants' Motion *in Limine* No. 6.

Defendants' sixth motion *in limine* seeks to exclude Davis Polk's answer (the "answer"), found at PTX115, submitted on December 5, 2017 in response to Plaintiff's EEOC Charge. Motion at 25-30.  This motion is granted in part and denied in part.

As an initial matter, defendants acknowledge that the answer is admissible as a party admission for Davis Polk under Federal Rule of Evidence 801(d)(2).  Defendants contest the admission of the answer for individual Defendants Mr. Reid, Mr. Bick, or Mr. Brass.  Reply at 12 n.8.  At the December 11 conference, plaintiff also confirmed that he is only seeking to admit portions of the factual background in the answer, namely Section III.B to E.

Inconsistencies between Davis Polk's answer and defendants' later explanation of the reasoning for the firm's termination of plaintiff may be probative of their motive and potential pretext for any retaliatory action.  In *Zann Kwan*, the Second Circuit explicitly pointed to inconsistencies in the offered reason for the plaintiff's termination from the defendant company between the defendant's EEOC submission and the defendant's representations during discovery and found that, "based on the discrepancies between the EEOC statement and subsequent testimony, a reasonable juror could infer that

NCL4CARC

1    the explanation given by the defendant was pretextual."  737

2    F.3d at 847; see *Graziadio v. Culinary Institute of America*,

3    817 F.3d 415, 430 (2d Cir. 2016) (quoting Zann Kwan).

4              Defendants acknowledge this, both in their briefing

5    and at the December 11 conference.  However, defendants argue

6    that Davis Polk has been consistent in its explanation for

7    plaintiff's termination and that therefore this principle is

8    not applicable.  At the December 11 conference, plaintiff

9    specifically asserted that the answer is inconsistent in two

10   places in which quoted language appears, describing

11   Mr. Cardwell's performance at Davis Polk in his initial years

12   at the firm, and the answer then represents that: "The firm

13   delivered this feedback to Cardwell at the end of his credit

14   rotation, as part of its routine professional development and

15   training initiatives"; and "Once again, the firm delivered this

16   feedback to Cardwell, both in real time and at the end of his

17   third rotation." PTX115 at 7, 9.  Plaintiff argues that these

18   two statements are inconsistent with the evidence.  Plaintiff

19   also argues that the answer's assertion that his 2016 mid-year

20   feedback meeting was in response to Mr. Cardwell's own request

21   for feedback was another inconsistent statement.  PTX115 at 9

22   n.9.

23             All three alleged inconsistent statements, along with

24   the surrounding context of the feedback that was purportedly

25   delivered to plaintiff, appear at Section III.B.1 and at the

NCL4CARC

second, third, and fourth paragraphs of Section III.B.3 of the
answer.

On the other hand, the Court has ruled that Davis
Polk's filing of the answer is not an adverse employment
action.  *Id.* at *33.  Introducing the action therefore carries
the risk of confusing or misleading the jury into thinking that
Davis Polk's answer, filed before Mr. Cardwell was terminated,
constituted one of Davis Polk's retaliatory actions.
Defendants argue that this danger is heightened by certain of
plaintiff's pretrial submission drafts, which reflected a
potential desire to reintroduce this argument into the case.
Motion at 26.  I have granted the motion *in limine* that
precludes him from doing so.

The Introduction to the answer (Section I), the
description of the parties, including Davis Polk's preening
description of itself (Section II), and the recitation of
Mr. Cardwell's claims (Section III.A) have very little
probative value.  What little value they have is substantially
outweighed by the risk of confusing the jury and wasting time.

The portions of the answer (principally in Section IV
of the answer) that contain the firm's legal argument have very
limited probative value – they are clearly argument applying
the law to the facts.  That very limited probative value is
substantially outweighed by the risk of confusing the jury.
Similarly, the partition of the recitation of the facts that

NCL4CARC

1    specifically responds to Mr. Cardwell's direct claims of

2    discrimination (Section III.E) should not be presented to the

3    jury.  That section describes complaints by Mr. Cardwell

4    regarding allegedly discriminatory treatment that are not at

5    issue in the case.  The recitation of his complaints and the

6    firm's response will result in undue prejudice and confuse the

7    jury by introducing a discussion of specific allegations of

8    discrimination that are not being tried.  It may suggest a

9    verdict on the basis of an improper purpose – namely to

10   sanction the defendants for that asserted conduct that is not

11   being tried.

12          So what might be introduced is the text in Section

13   III.B.-D., which is the firm's description of Mr. Cardwell's

14   work history at the firm and the firm's review of his work

15   history.  Some of that description includes allusions to

16   plaintiff's claim of discrimination, but most of it is

17   substantively the firm's account of Mr. Cardwell's employment

18   at the firm.  I'm not completely sure why Mr. Cardwell wants to

19   introduce the firm's crafted description of his work history

20   and performance, but I understand that he does.  The question

21   is whether the prejudicial effect of that is greater than the

22   asserted probative value of the alleged discrepancy between the

23   position that the firm took there and took at the time of his

24   termination.

25          In considering the balancing factors of Federal Rule

NCL4CARC

1  of Evidence 403, the Court finds that the facts surrounding the

2  answer, including when it was filed, that it generally

3  contained Davis Polk's responses to Plaintiff's EEOC complaints

4  against the firm, and that Mr. Reid and Mr. Bick reviewed the

5  answer before it was filed, are admissible.  As for whether the

6  specific contents of the answer can be admitted, however, the

7  Court finds that only those specific portions of the answer may

8  be admitted to the extent that plaintiff can demonstrate that

9  it is inconsistent with other representations by defendants.

10         The only probative value of the answer itself is the

11  degree to which it was consistent or inconsistent with

12  defendants' representations of how Mr. Cardwell was treated,

13  including why he received poor performance reviews and was

14  ultimately terminated.  While the Court previously identified

15  one portion of the answer that appears to contain an

16  inconsistency, plaintiff does not point to any other specific

17  inconsistencies, except to vaguely allege that that the answer

18  contains "factual inaccuracies about its own business practices

19  (e.g., performance review system and what was communicated to

20  Cardwell)," which appear to only go toward the details of how

21  the performance review system mechanically operated at Davis

22  Polk and the inconsistency the Court already flagged.

23  Opposition at 27.

24         So here's what I will do, Mr. Cardwell may introduce

25  those sections of the answer into evidence, together with the

NCL4CARC

```
1    fact of when it was filed, that it generally contained Davis

2    Polk's responses to Plaintiff's EEOC complaints against the

3    firm, and that Mr. Reid and Mr. Bick reviewed the answer.

4    Again, assuming these things are true.

5           Plaintiff may not present evidence or argument

6    regarding the process by which the answer was prepared or

7    suggest that it's preparation or underlying investigation was

8    insufficient.  Plaintiff argued at the December 11 conference

9    that the answer is probative for showing that defendants did

10   not conduct a proper investigation of the underlying facts

11   before making the representations in the answer.  An effort to

12   use the answer to support such an argument would be problematic

13   and would be so confusing, and unduly prejudicial that its

14   probative value would be substantially outweighed, justifying

15   its exclusion.

16          Defendants' process of preparing the answer is not at

17   issue at trial.  To introduce such evidence or argument would

18   take up substantial time on irrelevant issues, particularly by

19   inviting a mini-trial into defendants' decision making process

20   in preparing a submission for an adversarial proceeding, as

21   they were entitled to do.  It would also invite issues of

22   privilege, which defendants are reasonably concerned about, as

23   well as unfair prejudice and confusion of the issues by tending

24   to suggest that defendants' conduct in preparing and filing the

25   answer was an adverse employment action, even though the Court
```

NCL4CARC

1    has already found it is not.

2            So I am not excluding at this time the sections of the

3    answer that I have described, but I am limiting the scope of

4    evidence or argument that can be made regarding its

5    preparation.  Again, plaintiff may not argue that it was an

6    adverse employment action or take up the jury's time with the

7    confusing, wasteful issue of the nature of its preparation.  I

8    hope that this balances the probative value of showing the

9    purported discrepancies between the defendant's statements in

10   the answer and its position here to support showing of pretext,

11   against the risk of prejudice, confusion, and wasting time.

12           Accordingly, the Court grants in part and denies in

13   part defendants' sixth motion *in limine*.  Specifically,

14   plaintiff may only introduce those sections of the answer into

15   evidence.  Plaintiff may only introduce these portions for the

16   purpose of showing defendants' alleged motive in their conduct

17   toward Mr. Cardwell, and only to the extent that they are

18   inconsistent with other evidence adduced at trial.  Plaintiff

19   may not use the answer to show, or present arguments on,

20   defendants' process of preparing the answer, including any

21   underlying investigation of the facts, or whether the answer

22   constitutes retaliatory conduct.  If a limiting instruction to

23   the jury would be helpful to enforce these guardrails,

24   defendants are invited to propose such an instruction.

25           G. Defendants' Motion *in Limine* No. 7.

NCL4CARC

1          Defendants' seventh motion *in limine* seeks to exclude

2     the identity of Davis Polk's clients and details of specific

3     client matters or representations.  Motion at 31.  This motion

4     is granted.

5          Putting aside for now whether client identities are

6     privileged information, plaintiff points to no concrete

7     probative value that the identity of a Davis Polk client, and

8     specific and potentially identifying details of client matters

9     or representations, would have on his case.  Nor can the Court

10    identify any.  Plaintiff argues that such information is

11    relevant to provide context on the matters that he was staffed

12    on.  Opposition at 35.  But Plaintiff provides no specific

13    example or authority for this assertion.  In any case, witness

14    testimony and other evidence that describe the nature of the

15    assignment, project, or, if relevant, the client itself would

16    provide the probative value.  For example, a witness who can

17    describe the requirements and complexity of a specific task

18    that was assigned to Mr. Cardwell, how he did or did not

19    succeed at that task, and the significance of that task to a

20    client's specific corporate deal would provide the relevant

21    context for Plaintiff's claims.  The identity of that client,

22    however, or other details of the deal that did not affect

23    Mr. Cardwell directly, would not add any significant probative

24    value to the case.  The Court notes that, thus far in this

25    litigation, the parties and the Court have been able to engage

NCL4CARC

1    in substantive discussions over the merits of plaintiff's

2    claims without the disclosure of a client's identity.  The

3    Court sees no reason why that cannot be maintained during trial

4    and before the jury.

5         Balanced against this minimal probative value is the

6    significant risk of unfair prejudice to defendants, given that

7    the identity of clients may elicit biases or other preconceived

8    notions from jurors that affect the jury's judgment but are not

9    relevant to the case.  Jurors may not like the clients for whom

10   the defendants [and Mr. Cardwell] worked or the nature of their

11   work.  Introducing evidence of their identities might provoke

12   decision based on an unfavorable reaction to the firm's wealthy

13   clientele, rather than to the facts at issue.  Perhaps more

14   significantly, defendants will be forced to proceed with

15   extreme caution at trial, to ensure that potentially privileged

16   information and evidence are not accidentally disclosed, which

17   may significantly impede defendants' ability to present their

18   case.

19        The Court also notes that the disclosure of client

20   identities may hamper plaintiff's presentation of his case as

21   well, in that he is under the same obligation as other

22   attorneys barred in New York to "not knowingly reveal

23   confidential information... or use such information... for the

24   advantage of the lawyer or a third person...."  Rule 1.6, N.Y.

25   Rules of Professional Conduct.  "Confidential information"

includes "information gained during or relating to the

representation of a client, whatever its source, that is... to

be embarrassing or detrimental to the client if disclosed,

or... information that the client has requested be kept

confidential."  *Id.*

Therefore, the probative value of the evidence at

issue is substantially outweighed by the danger of unfair

prejudice, confusing the issues, misleading the jury, and

wasting time.

Plaintiff also does not object to defendants' request

to preclude evidence, testimony, or argument regarding Davis

Polk's representation of a for-profit prison.  Motion at 32.

Therefore, this request is granted.

Accordingly, the Court grants defendants' seventh

motion *in limine*.

H. Defendants' Motion *in Limine* No. 8.

Defendants' eighth motion *in limine* seeks to exclude

evidence of their post-termination, post-complaint litigation

conduct, such as discovery disputes, arguments and conduct

during this litigation, public statements made by defendants or

their representatives, and evidence regarding defendants'

counsel.  Motion at 17.  This motion is granted.

The last of the potential retaliatory actions taken by

Defendants is Mr. Cardwell's termination.  See Summary Judgment

Opinion at 60-63.  Mr. Cardwell was terminated, or at least

NCL4CARC

1    encouraged to leave, from Davis Polk on February 8, 2018, and

2    his final day of employment at Davis Polk was August 10, 2018.

3    *Id.* at 3.  This litigation did not commence until 2019.  Dkt.

4    No. 1.  How defendants have conducted themselves after

5    Mr. Cardwell's alleged termination is not probative to proving

6    any element of Plaintiff's retaliation claims.  At most, and as

7    defendants concede, plaintiff may be permitted to introduce

8    statements by defendants for impeachment purposes.  Motion at

9    35.  Plaintiff's assertions that certain of defendants'

10   post-termination statements are "relevant to the harms to

11   plaintiff's reputation and health, as well as the liability,

12   credibility, and state of mind of defendants and their

13   witnesses" are vague and unsupported in the record.  Opposition

14   at 38.

15          On the other hand, introducing such evidence carries

16   significant risk of confusing and misleading the jury, by

17   presenting arguments and statements that appear to be related

18   to but are not probative evidence to the jury's determination

19   of Plaintiff's claims, and at the very least would result in

20   significant wasted time.  To the extent that plaintiff merely

21   seeks to include statements by defendants that are consistent

22   with their arguments and representations to be presented at

23   trial, that is also cumulative.

24          Finally, the jury's opinions of the conduct of defense

25   counsel would likely be unfairly prejudicial.  See, e.g., *In*

NCL4CARC

*re: Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 8130449, at

*5 (S.D.N.Y. December 3, 2015) ("Jurors may seek to punish

[defendant] for what they view as an overly aggressive

litigation strategy by a large company against two grieving

parents.").

      Accordingly, the Court grants defendants' eighth

motion *in limine*.  The probative value of the evidence is

substantially outweighed by the danger of unfair prejudice,

confusing the issues, misleading the jury, wasting time, and

presenting unnecessary cumulative evidence.

      I'm going to go off script for a brief moment.  I'm

going to go to talk a little bit about one of plaintiff's

arguments here, which is the suggestion that this litigation

and the reputational harm or the like that is associated with

his prosecution of this litigation can form the basis for his

damages.  I may seek further briefing from the parties on that

point.  The question it to a degree whether all of the sequelae

of alleged damages here, to the extent they are magnified by

plaintiff's decision to take up this stressful and public

process of engaging in this kind of litigation should be

compensable or if not to the extent they grow out of a parties'

choice.  I may seek further briefing on that as we get toward

the charge.

      Thank you for indulging me with that aside.  Let me

turn to I.

NCL4CARC

1

2          I. Defendants' Motion *in Limine* No. 9.

3          Defendants' ninth motion *in limine* seeks to bifurcate

4     the issue of punitive damages and preclude plaintiff from

5     introducing financial information until and unless the jury

6     determines that punitive damages are warranted.  Motion at 36.

7     This motion is granted.

8          Under Rule 42(b) of the Federal Rules of Civil

9     Procedure the Court, in its discretion, can bifurcate the trial

10    of an action for "convenience or to avoid prejudice, or when

11    separate trials will be conducive to expedition and economy."

12    Fed. R. Civ. P. 42(b).  "Bifurcation requires the presence of

13    only one of these conditions, and the decision to bifurcate a

14    trial rests firmly within the discretion of the trial court."

15    *Crown Cork & Seal Co. Master Ret. Tr. v. Credit Suisse First*

16    *Bos. Corp.*, 288 F.R.D. 335, 337 (S.D.N.Y. 2013) (cleaned up).

17         "Factors to be considered include:  (1) whether the

18    issues sought to be tried separately are significantly

19    different from one another; (2) whether the severable issues

20    require the testimony of different witnesses and different

21    documentary proof; (3) whether the party opposing the severance

22    will be prejudiced if it is granted; and (4) whether the party

23    requesting the severance will be prejudiced if it is not

24    granted."

25         *Lewis v. Triborough Bridge & Tunnel Authority*, 2000 WL

NCL4CARC

423517, at *2 (S.D.N.Y. Apr. 19, 2000) (internal citations and
quotation marks omitted).  The party seeking bifurcation bears
the burden of establishing that bifurcation is warranted.  See
*id*.

Applying these factors, and as previewed at the
December 11 conference, it is appropriate to bifurcate the
jury's assessment of punitive damages and save the introduction
of any evidence regarding defendants' financials until the jury
is considering punitive damages.  Defendants do not dispute
that their financial status can be considered in calculating
the amount of punitive damages, but point out that such
evidence is irrelevant to the determination of defendants'
liability and whether punitive damages are warranted.  The
Second Circuit has emphasized this: "Punitive damages are to be
tailored to the defendant's ability to pay, and normally that
class of evidence is not admitted or desirable during the
liability and compensatory damages phase of the case."
*Vasbinder v. Ambach*, 926 F.2d 1333, 1344 (2d Cir. 1991).

As to whether evidence of defendants' financial
information can be introduced in the liability stage of the
trial, plaintiff argues that such information is probative to
show defendants' profit and reputation-oriented motives for
engaging in the retaliatory conduct, "Defendants' conscious
disregard of plaintiff's rights," "the manner and timing
surrounding their decision to fire Cardwell," "incentives and

NCL4CARC

1    loyalties of defendants and their witnesses," and "Defendants

2    and their witnesses' credibility."  Opposition at 38-39.  I

3    think that it is true that the amount of money earned by the

4    firm and by the individual defendants does have probative value

5    for those reasons - their financial incentives to protect

6    themselves and the firm may motivate their conduct here.  I do

7    not believe, however, that it is necessary to present to the

8    jury the specific amount of the revenues of the firm or the

9    profits per partner of each of the defendants or other

10   witnesses.

11       Plaintiff also argued, at the December 11 hearing,

12   that defendants' wealth and financial stature are probative for

13   showing plaintiff's emotional damages, particularly in

14   litigating against defendants throughout this case.  I

15   understand that litigation is very stressful.  But plaintiff

16   cannot recover for any emotional injuries suffered from this

17   litigation.  "The majority of courts addressing

18   litigation-induced stress have treated it as a non-compensable

19   component of damages regardless of whose actions necessitate

20   the litigation." *Rainville v. Boxer Blake & Moore PLLC*, 2021 WL

21   949415, at *10 (D. Vt. Mar. 12, 2021).  Again, I solicit

22   further briefing on this.  It appears as a result that

23   plaintiff must disentangle emotional injury suffered from

24   defendants' retaliatory conduct, if any, from the emotional

25   effect of litigating this case, and present evidence only of

NCL4CARC

1    the former.  Therefore, plaintiff's argument regarding the

2    effect of litigating against defendants appears to have very

3    limited probative value here.

4          On the other hand, introducing evidence and arguments

5    related to defendants' wealth and financial information is

6    likely to inflame the jury's biases and introduce the danger of

7    having defendants' ability to pay improperly affect the jury's

8    determination of liability and, if appropriate, compensatory

9    damages.

10          Davis Polk and its partners make a gobsmacking amount

11   of money.  I understand that the profits per partner at Davis

12   Polk were in the range of $3 million or more per partner in the

13   relevant time period, putting them well above the top 1 percent

14   of earners.  Indeed, as other courts have recognized, having a

15   specific number as a reference point, whether or not reasonable

16   or intentional, can have a dangerous "anchoring effect" on a

17   person's judgment, including that of the jury.  See, e.g.,

18   *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2018 WL

19   6250657, at *2 (S.D.N.Y. Nov. 29, 2018) ("[I]t is well

20   established that an initial numerical reference, whether or not

21   it is reasonable, can have an 'anchoring' effect on a person's

22   subsequent judgments."); see also *United States v. Ingram*, 721

23   F.3d 35, 40 (2d Cir. 2013) (Calabresi, J., concurring) ("When

24   people are given an initial numerical reference, even one they

25   know is random, they tend (perhaps unwittingly) to 'anchor'

1    their subsequent judgments... to the initial number given.").

2           For better or for worse – but substantially for worse

3    for the defendants in this case – there is a substantial

4    likelihood that the sheer wealth of the defendants will lead to

5    an improper verdict here for a couple of reasons:  Their wealth

6    is so substantial that jurors may find for plaintiff simply

7    because they believe that a plaintiff's verdict will be

8    functionally costless to them, and/or that the case provides

9    them an opportunity to "soak the rich."  Plaintiff's argument

10   that defendants' financials are relevant to "defendants'

11   conscious disregard of Plaintiff's rights" and their

12   credibility, among other factors, only showcases this further.

13   Plaintiff seemingly suggests that defendants' wealth make them

14   less likely to respect individual rights or be credible, which

15   is neither supported nor an appropriate inference to draw for

16   the jury.

17           I would be happy to talk about other ways that

18   plaintiff can make his underlying point – he might ask for

19   example whether they are well compensated, or whether the firm

20   is successful.  He can make that underlying point without using

21   the specific dollar figures during his case in chief.

22           Accordingly, the Court grants defendants' ninth motion

23   *in limine* and related request to bifurcate the proceeding, so

24   that the jury will determine the appropriate amount of punitive

25   damages if it first determines that defendants are liable and

NCL4CARC

1    punitive damages are warranted.

2          IV. Plaintiff's Performance Reviews As Business

3    Records.  Turning now to the business records issue, I have

4    reviewed the parties' submissions on this, including

5    defendants' October 9, November 29, and December 18 letters and

6    plaintiff's October 11 and December 1 letters.  Dkt. Nos. 345,

7    346, 360, 362, 368.  I have also heard oral argument from the

8    parties.

9          The primary issue here is whether plaintiff's

10   performance reviews are admissible hearsay under the "business

11   records" exception.  At the December 11, 2023 pretrial

12   conference, I previewed that plaintiff's performance reviews

13   fit under the hearsay exception of Federal Rule of Evidence

14   803(6) as business records, assuming that defendants would

15   supplement or amend their prior Rule 902(11) certification,

16   which they now have done.  Dkt. No. 368-1 ("Amended

17   Certification").

18         "The Court must decide any preliminary question about

19   whether a witness is qualified, a privilege exists, or evidence

20   is admissible.  In so deciding, the court is not bound by

21   evidence rules, except those on privilege."  Fed. R. Evid. 104.

22         Hearsay evidence is generally not admissible at trial.

23   *Id*. 802.  Hearsay is a statement that is offered for the truth

24   of the matter asserted in the statement and is not made by the

25   declarant while testifying at trial.  *Id*. 801(c).  One of many

NCL4CARC

exceptions to this "hearsay rule" is what is called the

"business records" exception.  Under this exception, a "record

of an act, event, condition, opinion, or diagnosis" is

admissible hearsay if it satisfies a series of conditions

described in Rule 803(6).

    The Second Circuit has made clear that "Rule 803(6)

favors the admission of evidence rather than its exclusion if

it has any probative value at all." *United States v. Kaiser*,

609 F.3d 556, 574 (2d Cir. 2010).  The parties do not appear to

dispute that the performance reviews at issue fit under the

description of, "a record of an act, event, condition, opinion,

or diagnosis."  Indeed, I have previously found, also in an

employment case, that the plaintiff's performance review was

admissible as a business record.  *Ramsaran v. Booz & Co. (N.A.)

Inc.*, 2015 WL 5008744, at *8 (S.D.N.Y. August 24, 2015)

("Courts have accepted personnel files and employee review

documents as business records under Rule 803(6).").

    I will now briefly address each of the Rule 803(6)

elements.  Based on the parties' submissions to the Court,

including the amended certification, I find that the Rule

803(6) elements are met as to all but one of plaintiff's

performance reviews.

    A. Timeliness.  The first prong imposes a "timeliness"

requirement, which reflects the assumption that "any

trustworthy habit of making regular business records will

NCL4CARC

ordinarily involve the making of the record contemporaneously."

*United States v. Strother,* 49 F.3d 869, 876 (2d Cir. 1995)

(emphasis added) (quoting *Seattle-First Nat'l Bank v. Randall,*

532 F.2d 1291, 1296 (9th Cir. 1976)).

In *Abascal v. Fleckenstein,* the Second Circuit found

that the district court had committed reversible error in

admitting a third-party report generated on the conditions of a

prison as a "business record," where the underlying

fact-finding work was conducted six months prior to the report.

820 F.3d 561, 565 (2d Cir. 2016).  In so holding, the Second

Circuit found that the report did not satisfy the elements of

Rule 803(6), including the timeliness requirement, because a

"six-month delay is too long a time to be considered a

contemporaneous recording."  *Id.*

Through the amended certification, defendants submit

that the performance reviews at issue were "prepared at or near

the time of the work performed that is the subject of the

reviews."  Amended certification Paragraph 6.  Plaintiff argues

that, nonetheless, certain of the performance reviews were not

timely recorded.

In my view, plaintiff's timeliness concerns

encapsulate two separate issues.  First, there is the issue of

summary reports, reflecting a summary of plaintiff's in-person

feedback meeting, that may have been created months after the

feedback meeting.

NCL4CARC

1          Second, there are performance reviews that summarize

2    and evaluate events, such as plaintiff's work on specific

3    assignments, that occurred months before the performance

4    review.

5          As for the first issue, it appears that there is at

6    least one summary review, DTX163, that raises serious

7    timeliness concerns.  According to the parties' pleadings,

8    Mr. Cardwell's December 20, 2016, feedback meeting appears to

9    have only been memorialized on March 28, 2017, more than three

10   months later.  See Dkt. No. 200 404 ("Third Amended Complaint"

11   or "TAC"); Dkt. No. 209 Paragraph 404 ("Answer to TAC").  For

12   context, March 28 was also less than 3 weeks after

13   Mr. Cardwell's meeting with Mr. Reid, where they discussed

14   Mr. Cardwell's low staffing, and the day before Mr. Cardwell's

15   follow-up meeting with Mr. Reid and joined by Mr. Kreynin, who

16   I believe was then the Managing Partner of Davis Polk.  See

17   Dkt. No. 305 at 24-25.

18         It is hard to say that a three-month delay in

19   memorializing a meeting is contemporaneous.  Indeed, in an

20   unpublished opinion, the Second Circuit has indicated that two

21   or three months is still untimely.  See *Grant v. Lockett*, 2021

22   WL 5816245, at *2 (2d Cir. December 8, 2021) (finding error in

23   admitting a third-party annual report that in part reported on

24   the incident in question, where there was a two-month delay in

25   providing an internal report of the incident within the

NCL4CARC

1   third-party entity).

2           At the December 11 hearing, defendants argued that a

3   two to three-month delay is still timely in the context of an

4   annual review schedule, and that any concerns are mitigated by

5   the availability of the authors as witnesses at trial.  But

6   this does not address the concerns I have explained here.  The

7   fact that the feedback review meetings occur annually does not

8   explain why the summary of the meeting was not drafted until 3

9   months after, and the opportunity to cross-examine the author

10  does not address the failure of the author at the time of

11  creating the record to do so on a contemporaneous basis.

12  Accordingly, I conclude that the March 28, 2017, summary report

13  does not fit under the "business records" exemption, as it

14  cannot be said that the summary report "was made at or near the

15  time" of what was recorded.

16          The second category of timeliness concerns does not

17  present as much of an issue, however.  Absent a showing to the

18  contrary, which plaintiff has not provided, the testimony or

19  here the certification supporting the timeliness of the reports

20  suffices to satisfy the foundational requirements under Rule

21  803(6).

22          I think I will leave it at that.  So there is

23  certification stating that these reviews satisfy the

24  requirements and unlike the other document with a substantial

25  gap, I don't have a reason to discredit the certification.

1          Accordingly, the Court finds that Plaintiff's

2    performance reviews are not inadmissible under this element of

3    Rule 803(6), except that the March 28, 2017 summary review is

4    inadmissible.

5          3. Kept in the Course of a Regularly Conducted

6    Activity of a Business.

7          Defendants represent that "it is the regular practice

8    of the Professional Development Department and Davis Polk to

9    make [performance reviews] by requesting that Davis Polk

10   employees or partners complete performance reviews of

11   associates who worked on the same matters as the reviewing

12   attorneys."  Amended Certification Paragraph 7.

13         Plaintiff does not dispute that Davis Polk generated

14   and kept performance reviews in the course of a regularly

15   conducted activity of its business.  And, as noted, this and

16   other courts have admitted performance reviews as business

17   records, which necessarily includes a finding that they were

18   kept in the course of a regularly conducted activity of a

19   business.  See, e.g., *Zamora v. Open Door Family Medical*

20   *Center, Inc.*, 2018 WL 4684131, at *1 n.2 (S.D.N.Y. 2018)

21   (finding performance appraisals admissible under business

22   records exemption based on deposition of the defendant's

23   director of human resources).  It is immaterial that the

24   performance reviews were not automatically generated or not all

25   associates received mid-year reviews.  "A business record need

NCL4CARC

1    not be mechanically generated to be part of a 'regular

2    practice.'"  *Kaiser*, 609 F.3d at 575.

3        Accordingly, the Court finds that Plaintiff's

4    performance reviews are not inadmissible under this element of

5    Rule 803(6).

6        B. Whether the record was a regular practice of that

7    activity.  Defendants represent that plaintiff's performance

8    reviews specifically "were made and are kept by the

9    professional development department at Davis Polk in the

10   ordinary course of business as part of the filing system for

11   the professional development department for performance reviews

12   of Davis Polk associates."  Amended Certification Paragraph 7.

13   Plaintiff does not dispute this.  To the extent that plaintiff

14   argues that his reviews were fabricated or false in any way,

15   that goes to concerns of trustworthiness and the weight of the

16   evidence, which I will address shortly.

17       Accordingly, the Court finds that plaintiff's

18   performance reviews are not inadmissible under this element of

19   Rule 803(6).

20       C. Conditions shown by witness testimony or by rule

21   902 certification.  Defendants have submitted an amended

22   declaration and certification by Lindsay H. Tomenson, the chief

23   professional development officer of Davis Polk, or what I am

24   calling the amended certification.  Dkt. No. 368-1.

25       The amended certification is sufficient to meet the

NCL4CARC

requirements of Rule 803(6)(D) and to show that the

requirements of Rule 803(6)(A) through (C) are generally met.

Rule 902(11) provides that the following evidence is

self-authenticating and requires that no extrinsic evidence of

authenticity to be admitted:

"The original or a copy of a domestic record that

meets the requirements of Rule 803(6)(A)-(C), as shown by a

certification of the custodian or another qualified person that

complies with a federal statute or a rule prescribed by the

Supreme Court. Before the trial or hearing, the proponent must

give an adverse party reasonable written notice of the intent

to offer the record – and must make the record and

certification available for inspection – so that the party has

a fair opportunity to challenge them." *Id.* 902(11).

The Court finds that defendants have satisfied the

notice requirement of this rule. Defendants have shared the

underlying performance reviews with plaintiff in the course of

discovery, which plaintiff does not dispute. See Dkt. No. 360

at 2 n.1.

Defendants also have provided the amended

certification to plaintiff well before trial by filing it on

the docket, which constitutes "reasonable written notice of the

intent to offer the record" and "a fair opportunity to

challenge." Fed. R. Evid. 902(11); see also *United States v.*

*Komasa*, 767 F.3d 151, 155 (2d Cir. 2014) (finding adequate

1    notice even where written notice was not provided but the party

2    had actual knowledge of the other party's intent to proffer

3    self-authenticating documents before trial began).

4         Plaintiff has taken full advantage of the opportunity

5    to challenge the certification, at least as originally filed,

6    in two separate letters and oral argument.

7         The Court also finds that Ms. Tomenson is properly a

8    "custodian or another qualified person" who can authenticate

9    the performance reviews.  Ms. Tomenson is the Chief

10   Professional Development Officer at Davis Polk and has worked

11   in the Professional Development Department since July 2018.

12   Amended Certification 1.  Ms. Tomenson is "knowledgeable about

13   the matters set forth herein and about the relevant

14   record-keeping practices of Davis Polk in my capacity as Chief

15   Professional Development Officer."  Id.  3.  In particular, she

16   is "personally familiar with Davis Polk's practice of

17   collecting and maintaining performance reviews of attorneys,"

18   which are regularly kept and maintained in the Professional

19   Development Department, the Department she supervises and

20   manages.  Id.  3-4.  This is sufficient to recognize that Ms.

21   Tomenson is a "custodian or another qualified person" under

22   Federal Rule of Civil Procedure 902(11).  See, e.g., Biggs v.

23   Midland Credit Management, Inc., 2018 WL 1225539, at *4

24   (E.D.N.Y. March 9, 2018) (finding individual was custodian or

25   another qualified person to authenticate the records where he,

NCL4CARC

1  in his position, was responsible for maintaining and overseeing

2  the specific types of records in question).  Notably, the

3  standard is fairly low, as the Second Circuit has even

4  recognized that an automatically generated record can be a

5  business record without an individual who serves the role of a

6  custodian or other qualified witness.  See *United States v.*

7  *Komasa*, 767 F.3d 151, 156 (2d Cir. 2014) ("[A]s a practical

8  matter, the fact that the documents were obtained by an

9  automated process does not affect their admissibility in this

10  case.").

11      Plaintiff argues that Ms. Tomenson, whose role as

12  chief professional development officer began after Mr. Cardwell

13  left Davis Polk, lacks sufficient first-hand knowledge of the

14  underlying facts and records.  But the weight of the authority

15  on this issue is that "the custodian need not have personal

16  knowledge of the actual creation of the document." *Phoenix*

17  *Associates III v. Stone*, 60 F.3d 95, 101 (2d Cir. 1995); see

18  also *Miss Jones LLC v. Stiles*, 2020 WL 4704886, at *2 (S.D.N.Y.

19  Aug. 13, 2020) ("A person who testifies to the admissibility of

20  business records need only show that he or she is familiar with

21  the record-keeping system of the business in question and knows

22  how the records were created." (cleaned up)).  Ms. Tomenson

23  does not need to demonstrate personal familiarity with

24  plaintiff's performance reviews or their creation and

25  maintenance to authenticate them under Rule 902(11).

NCL4CARC

1        Finally, the Amended Certification is sufficient to

2   lay a foundation for the performance reviews under Rule

3   803(6)(A) through (C), the elements discussed so far.  The

4   Amended Certification represents that all the elements of Rule

5   803(6)(A) through (C) are met, and courts have not required

6   anything more.  See, e.g., *Miss Jones LLC*, 2020 WL 4704886, at

7   *2 (quoting the relevant portions of the custodian

8   certification and finding the "perfunctory" requirement of the

9   business records exception was met).

10       Accordingly, the Court finds that the amended

11   certification is sufficient to permit defendants to

12   self-authenticate plaintiff's performance reviews under Rule

13   902(11) and that, through the certification, defendants have

14   demonstrated that the performance reviews are admissible as

15   business records, with the exception of the March 2017 summary

16   review and provided that plaintiff has not shown a sufficient

17   lack of trustworthiness in the records.  I proceed to that

18   analysis now.

19       D. Trustworthiness.  Plaintiff bears the burden of

20   showing that the performance reviews are not sufficiently

21   trustworthy, as Rule 803(6) requires that "the opponent does

22   not show that the source of information or the method or

23   circumstances of preparation indicate a lack of

24   trustworthiness."  Plaintiff has failed to show a "lack of

25   trustworthiness" behind his performance reviews to justify

NCL4CARC

1   inadmissibility under this hearsay exception.

2          "The principal precondition to admission of documents

3   as business records... is that the records have sufficient

4   indicia of trustworthiness to be considered reliable."

5   *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627,

6   632 (2d Cir. 1994).

7          Plaintiff fails to show that his performance reviews

8   were so contrived or biased that they are, on balance,

9   sufficient to be inadmissible as business records.  Plaintiff

10  does not contest that the purported performance reviews are, in

11  fact, performance reviews created and maintained as part of

12  Davis Polk's regular records.  Plaintiff takes issue with the

13  accuracy of the contents of his performance reviews, and not

14  that the performance reviews actually existed or that the

15  exhibits in question were altered from the performance reviews

16  as they were originally drafted.  In *Potamkin Cadillac Corp.*,

17  which Plaintiff cites, the Second Circuit affirmed a finding of

18  untrustworthiness where an alleged compilation of computer data

19  showed differences from the underlying data, indicating that

20  the "compilation" was more than just a rote processing of the

21  data.  38 F.3d at 633; see also *United States v. Reyes*, 157

22  F.3d 949, 953 (2d Cir. 1998) (affirming admission of prison

23  visitation logbook despite irregularities such as missing names

24  or different names written in the same handwriting or an

25  alleged incentive by visitors to log incorrect information).

1  Plaintiff does not point to any such errors.

2        The Court recognizes that it is possible that

3  performance reviews or other records might be "ginned up" to

4  manufacture a record that supports a certain narrative, as

5  plaintiff alleges defendants have done.  Plaintiff raises

6  questions about the trustworthiness of defendants' narrative

7  about his work performance, including whether his performance

8  reviews might have been influenced by some motivation to

9  justify his eventual termination.  But plaintiff does not raise

10 enough concerns to render the performance reviews inadmissible

11 as untrustworthy.  Instead, the arguments and evidence he

12 points to go toward the weight of the evidence.  *Kaiser*, 609

13 F.3d at 576 ("*Kaiser* has succeeded in raising questions about

14 the trustworthiness of the [records], but... [not] that the

15 district court abused its discretion in finding that the they

16 were sufficiently trustworthy under Rule 803(6).. Residual

17 doubts on the question... Would go to the weight of the

18 evidence, not its admissibility.").

19       To the extent that the authors of some of the

20 performance reviews will testify on the stand, this further

21 weighs in favor of admissibility under this prong of Rule

22 803(6), as the "degree of reliability necessary for admission

23 is greatly reduced where... the declarant is testifying and is

24 available for cross-examination, thereby satisfying the central

25 concern of the hearsay rule." *Kaiser*, 609 F.3d at 576.

NCL4CARC

1          At the December 11 conference, Plaintiff specifically

2    objected to DTX271, a four-page document among the performance

3    reviews listed in the amended certification.  The first page is

4    titled "Lawyer Reviews – Summary Reviews" and appears to be an

5    annual review summary delivered by Oliver H. Smith on January

6    12, 2018 to Mr. Cardwell.  On the first page, under the two

7    sections titled, "Substance of evaluation" and "Comments from

8    the reviewee regarding his or her evaluation of his or her

9    performance," it says: "click here and for follow-up discussion

10   click here."  "Click here" is underlined in each instance.  The

11   second page of DTX271 is identical to plaintiff's exhibit

12   PTX505 and appears to reflect an email from Oliver Smith

13   summarizing an undated review meeting with Mr. Cardwell.  The

14   third and fourth pages of DTX271 is identical to plaintiff's

15   exhibit PTX512 and appears to be a third document containing a

16   summary of Louis Goldberg and Oliver Smith's February 8, 2018,

17   meeting with Mr. Cardwell at which Mr. Cardwell was given the

18   "time to go" message.

19          Plaintiff objects to DTX271 –- notwithstanding by the

20   way that it's his exhibit PTX512 –- and argues that it is not a

21   business record because it lacks the usual indicia of it being

22   a performance review, particularly given the lack of

23   identifying markers on pages 2 to 4 of the document.  Plaintiff

24   also argues that these documents were created in anticipation

25   of litigation and therefore are not business records.  At the

NCL4CARC

December 11 conference as well as in the Amended Certification,

Defendants explain that the two documents appearing at pages 2

to 4 in DTX271 are part of the review summary on page 1, as

they correspond to the hyperlinks on page 1.  Amended

Certification  9.  In short, all four pages of DTX271 are part

of one complete document, which is a business record of Davis

Polk's summary of the annual feedback to Mr. Cardwell.

Plaintiff has raised some questions about the

trustworthiness of DTX271.  For example, pages 2 to 4 of DTX271

do not resemble the other summary reviews in the record.  See,

e.g., DTX116.  Defendants also do not explain why the review

summary on page 1 is dated January 12, 2018, but the feedback

meeting appears to have occurred afterwards, on February 8,

2018.  Given that Plaintiff filed his EEOC complaint in August

2017, it is also possible that a potential litigation was on

the horizon for defendants at the time DTX271 was created.

However, these concerns over the trustworthiness of

DTX271 are not sufficient to disqualify DTX271 as a business

record.  Plaintiff does not proffer any anticipated testimony

that DTX271 was created for litigation or that defendants are

incorrect about pages 2 to 4 reflecting documents hyperlinked

on page 1.  Oliver Smith and Louis Goldberg, the purported

author of the review summary and the participants in the

February 8, 2018, meeting, are both expected to testify at

trial, which further mitigates much of the concerns over the

NCL4CARC

1    record.  The questions that plaintiff raises as to the

2    trustworthiness of the document are issues regarding the weight

3    of the evidence and are better addressed through

4    cross-examination of the witnesses.

5         So I think I'll leave it at that.  There is a little

6    bit to be said on whether or not these documents are

7    non-hearsay.  I largely think that they are with some

8    exceptions, and I think I'll wait to talk to you about that in

9    January.

10        I want to just take a couple of brief minutes before

11   we end, counsel, to talk about two things.  One, I received

12   your comments on the *voir dire* questions and summary of the

13   law.  As a general matter, I'm happy to make those changes.  I

14   do want to ask for the view of the defendants regarding

15   plaintiff's proposed change to the description of law.

16        Counsel, I'm sorry to change gears so quickly, but do

17   you have any concerns about that proposed modification that

18   changes the clause "motivated, in part, by retaliation" to

19   "motivated in part by his or her protected activity"?  I should

20   say, in my prior opinions, for example in the summary judgment

21   opinion, I've used the phrase "motivated by retaliatory

22   animus," which is another phrase that I've used.

23        But let me hear from you, counsel for defendants, if

24   we can pivot after this brief filibuster to that topic.  What

25   do you think about the plaintiff's proposed change to the

NCL4CARC

1    summary of the law?

2        MR. BIRENBOIM:  Your Honor, we don't agree with the

3    proposal.  I will admit that I don't have it in front of me,

4    and I wasn't prepared to address it.

5        THE COURT:  That's fine.  So please write me.

6        This dovetails into a separate question that I wanted

7    to ask of the parties.  The parties submitted your feedback on

8    the *voir dire* questions and the summary of the law by email.  I

9    appreciate that may have been the response to the fact that

10   I've circulated the things to you by email.  The fact that I

11   circulated the *voir dire* questions to you by email though was

12   not an invitation to you to communicate with me by email.  I

13   prefer that you not, my rules ask that you not.  So what I

14   would ask is that the parties submit to me a joint letter

15   relatively promptly with all of your proposed modifications

16   including those previously presented to the Court in email and

17   each of your respective views regarding them.  That way, the

18   world will see what changes you've proposed, and also I'll be

19   able to get your response, counsel for defendants, to

20   plaintiff's proposed modification to the statement of the law.

21       Counsel for plaintiff, do you have any concerns about

22   the request to modify the jury *voir dire* questions?  They had

23   three that were relatively modest.  Do those look OK to you?

24       MR. JEFFRIES:  From what I recall, your Honor, we were

25   fine with those.  Thank you.

NCL4CARC

1          THE COURT:  So what I'm going to do is I'm going to

2     send you all a version of the questionnaire that will

3     incorporate those changes from the defendants and will

4     otherwise be formatted to look like a questionnaire.  I will

5     get that to you maybe not today, maybe either later today or

6     tomorrow.  I ask that you let me know by letter -- and I

7     apologize because I understand that many people will be away,

8     but I ask that you let me know by letter no later than next

9     Tuesday, if that questionnaire is OK.  The substance of it is

10    what you've seen before.  So substantively I'm hoping that it

11    won't take much time for to you review it, although I welcome

12    more eyes on it.  But largely I'll be looking for any concerns

13    about the formatting of the document that I'll be sending to

14    you.  I'm asking for you to get that to me during the course of

15    next week so that my staff and I can print out enough copies of

16    the questionnaire so we can hand it to the jury department

17    before the following weekend so that they have them in hand for

18    the process on the 2nd.  In order for us to be in that position

19    we need to make sure you the parties don't have any problems

20    with the documents before we begin the copying process.

21          So please, look at what we'll send you and give us any

22    comments by next Tuesday.  Please send us promptly a summary of

23    your comments on those documents which include your prior

24    comments and your responses, counsel for defendant, to

25    plaintiff's proposed modification.  Again, I point the parties

NCL4CARC

1    to the language that I used in the summary judgment decision as

2    a possible alternative should the parties disagree about this

3    proposal.

4            Very good.  Thank you for your patience.

5            Anything else, first counsel for plaintiff.

6            MR. JEFFRIES:  Not at this time, your Honor.

7            I do respectfully ask that the Court note our

8    objections.

9            THE COURT:  I'm sorry?

10           MR. JEFFRIES:  Note our objections.

11           THE COURT:  To what, everything that goes against you?

12           MR. JEFFRIES:  Specifically with respect to Sophia

13   Hudson's reviews, your Honor, and the timeliness aspect.

14           THE COURT:  Thank you very much, noted.

15           And on that, again, I said it during my comments, the

16   Court makes these decisions under Rule 104 based on the

17   information presented.  The certification says the magic words,

18   as to the information included in those reviews.  In the one

19   instance where I had an admission, that the delay was

20   substantial, I have not found that the documents could be

21   admitted as a business record, but as for the other things, the

22   certification checks the box, for one of four purposes

23   regarding compliance with 803(6), and argument alone does not

24   uncheck the box.

25           Anything else counsel for defendants?

NCL4CARC

1           MR. BIRENBOIM:  No, your Honor.  Thank you.

2           THE COURT:  Very good.  Thanks a lot.

3           (Adjourned)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25